SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc.

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, and JANE DOE V, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and THE PERMANENTE MEDICAL GROUP, INC.,

Defendants.

Case No. 3:23-cv-02865-EMC

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFF JOHN DOE'S CLAIMS AGAINST DEFENDANTS AND REQUEST TO STAY**

*Filed concurrently with Decls. of Duane Walker, Karen Urban, Barry Osharow, and Wynter L. Deagle, and [Proposed] Order*

Date: March 14, 2024
Time: 1:30 p.m.
Courtroom: 5

District Judge: Hon. Edward M. Chen
Magistrate Judge: Hon. Peter H. Kang
FAC Filed: September 15, 2023
Trial Date: Not Set

## NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION

PLEASE TAKE NOTICE that, on March 14, 2024, at 1:30 pm, or as soon thereafter as the matter may be heard in Courtroom 5 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Kaiser Foundation Health Plan, Inc. ("KFHP"), Kaiser Foundation Hospitals ("Hospitals"), and The Permanente Medical Group, Inc. ("TPMG") (collectively, "Defendants") will, and hereby do, move to compel arbitration of all claims asserted by Plaintiff John Doe ("Plaintiff"), and stay this case as to John Doe's pending arbitration. Pursuant to the Federal Arbitration Act ("FAA"), Kaiser brings this Motion on the grounds that John Doe should be compelled to abide by his agreement to arbitrate all his claims against Defendants. John Doe's claims arise from and/or relate to his agreement for a medical plan containing an arbitration provision. This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declarations of Duane Walker, Karen Urban, Barry E. Osharow, and Wynter L. Deagle and exhibits thereto, and [Proposed] Order filed concurrently herewith, all other pleadings, records, and papers on file, deemed to be on file or of which the Court may or must take judicial notice at the time the Motion is heard, and upon such further evidence and arguments as may be presented at or before the time of the hearing.

## ISSUE PRESENTED

Whether under the FAA: (i) a valid agreement to arbitrate exists, and if it does, (ii) whether the agreement encompasses the claims asserted by John Doe in this litigation such that all of John Doe's claims must be arbitrated on an individual basis.

# TABLE OF CONTENTS


**Page**

Table of Authorities ........ ii

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. The Parties ........ 2

B. John Doe Enrolled in a KFHP Health Plan ........ 2

C. John Doe Agreed to Arbitrate All Disputes with Defendants ........ 4

D. John Doe files suit against Defendants ........ 6

III. LEGAL STANDARD ........ 8

IV. ARGUMENT ........ 9

A. John Doe Agreed to Arbitrate the Claims Alleged in the FAC ........ 9

1. John Doe Entered into a Valid Arbitration Agreement Agreeing to Submit This Dispute to Binding Arbitration ........ 9

2. Defendants Can Enforce the Arbitration Agreement as its Intended Third-Party Beneficiaries ........ 11

3. The FAC's Claims "Touch Matters" Covered by the Arbitration Agreement ........ 12

B. The Court Should Compel Individual, Non-Class Arbitration ........ 16

C. The Court Should Issue a Stay of John Doe's Claims Pending the Outcome of the Arbitration Proceeding ........ 17

V. CONCLUSION ........ 18

TABLE OF AUTHORITIES

Page(s)

Cases

*Allied-Bruce Terminix Cos., Inc. v. Dobson*
513 U.S. 265 (1995) .......... 8

*Am. Exp. Co. v. Italian Colors Rest.*
570 U.S. 228 (2013) .......... 9

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) .......... 16

*Dean Witter Reynolds, Inc. v. Byrd*
470 U.S. 213 (1985) .......... 9

*Drissi v. Kaiser Found. Hosps., Inc.*
543 F. Supp. 2d 1076 (N.D. Cal. 2008) .......... 10

*First Options of Chicago, Inc. v. Kaplan*
514 U.S. 938 (1995) .......... 10

*Gilmer v. Interstate/Johnson Lane Corp.*
500 U.S. 20 (1991) .......... 12

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*
232 Cal. App. 4th 1332 (2015) .......... 11

*Hajibekyan v. BMW of N. Am., LLC*
839 F. App'x. 187 (9th Cir. 2001) .......... 12

*Harris v. Super. Ct.*
188 Cal. App. 3d 475 (1986) .......... 11

*Hunter v. Kaiser Found. Health Plan, Inc.*
434 F. Supp. 3d 764 (N.D. Cal. 2020) .......... 9, 10

*Johnson v. Charter Commc'ns, Inc.*
No. 21-cv-06135, 2022 WL 2673091 (N.D. Cal. June 2, 2022) .......... 12

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*
174 F.3d 907 (7th Cir. 1999) .......... 9

*Lamps Plus, Inc. v. Varela*
139 S. Ct. 1407 (2019) .......... 16, 17

*Lewis v. UBS Fin. Servs.*
818 F. Supp. 2d 1161 (N.D. Cal. 2011) .......... 17

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*
363 F.3d 1010 (9th Cir. 2004) .... 9

*Loucks v. Kaiser Found. Hosps.*
No. 20-cv-01216, 2020 WL 3469326 (N.D. Cal. June 25, 2020) (Chen, J.) .... 10, 11

*Madden v. Kaiser Found. Hosps.*
17 Cal. 3d 699 (1976) .... 11

*Magno v. Kaiser Found. Health Plan, Inc.*
No. 22-cv-017996, 2023 Cal. Super. LEXIS 76990 (Alameda Cnty. Super. Ct. Feb. 7, 2023) .... 10, 11, 14, 15

*Martinez v. BaronHR, Inc.*
51 Cal. App. 5th 962 (2020) .... 10

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*
109 Cal. App. 4th 1705 (2003) .... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983) .... 9, 18

*Nguyen v. Barnes & Noble, Inc.*
763 F.3d 1171 (9th Cir. 2014) .... 9

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*
22 Cal. App. 5th 1096 (2018) .... 8

*Piterman v. Gold Coast Exotic Imps. LLC*
No. 5:20-cv-07724, 2021 WL 1853769 (N.D. Cal. May 10, 2021) .... 11

*Rice v. Downs*
248 Cal. App. 4th 175 (2016) .... 12

*Roman v. Super. Ct.*
172 Cal. App. 4th 1462 (2009) .... 11, 15

*Ronay Fam. Ltd. P'ship v. Tweed*
216 Cal. App. 4th 830 (2013) .... 12

*Sanchez v. Valencia Holding Co., LLC*
61 Cal. 4th 899 (2015) .... 16

*Sandquist v. Lebo Automotive*
1 Cal. 5th 233 (2016) .... 18

*Smith v. Watanabe*
No. 21-cv-07872, 2022 WL 6282201 (N.D. Cal. Sept. 27, 2022) .... 10, 11, 15, 17

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*
559 U.S. 662 (2010) ........ 16

*Toledo v. Kaiser Permanente Med. Grp.*
987 F. Supp. 1174 (N.D. Cal. 1997) ........ 8, 10

*Valencia v. Smyth*
185 Cal. App. 4th 153 (2010) ........ 9, 17

*Volt Info. Sciences v. Leland Stanford Jr. University*
489 U.S. 468 (1989) ........ 8

*Wilson v. Kaiser Found. Hosps.*
141 Cal. App. 3d 891 (1983) ........ 10

*Winninger v. Scott*
No. 21-cv-04689, 2022 WL 3205035 (N.D. Cal. July 5, 2022) ........ 15

Statutes

9 U.S.C. §§ 1, *et seq*. ........ 9

9 U.S.C. § 2 ........ 8

9 U.S.C. § 3 ........ 9, 17

9 U.S.C. § 4 ........ 9

Cal. Civ. Code § 1559 ........ 11

Cal. Civ. Proc. Code § 116.220 ........ 16

Cal. Civ. Proc. Code § 1281.4 ........ 18

California Arbitration Act ........ 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

John Doe's claims must be decided in arbitration on an individual basis. John Doe is enrolled in a health plan issued by KFHP, through which he receives health care coverage. To enroll in KFHP's health plan, John Doe agreed to arbitrate any claim brought against any of the Defendants arising from or relating to an alleged violation of any duty incident to or arising out of or relating to either (i) the health plan agreement with KFHP—the Evidence of Coverage; or (ii) John Does' relationship to KFHP, including any claim relating to the coverage for, or delivery of, services or items, irrespective of the legal theories upon which the claim is asserted. In the First Amended Complaint ("FAC"), John Doe bases all his claims on the assertion that Defendants "installed code from multiple third parties throughout the Kaiser Permanente website and mobile applications that allows third party companies . . . to intercept the content of Plaintiffs and Class Members'" personal health information. FAC ¶ 4. He further alleges that the website and code are used by health plan members, including John Doe, to "perform various tasks" relating to their health care and treatment. *Id.* ¶¶ 52, 63. Based on these allegations, there should be no dispute that the arbitration agreement encompasses John Doe's claims. As such, John Doe's claims must be decided in individual arbitration and his claims stayed in this matter pending the outcome of that arbitration.

First, John Doe knowingly entered into a binding arbitration agreement to enroll in the health plan offered by KFHP. Second, the arbitration agreement is expressly made for the benefit of KFHP, TPMG, and Hospitals, and as a result, can be enforced by all the Defendants against John Doe. Third, the arbitration agreement encompasses John Doe's claims concerning alleged violations of statutes, tort law, and contract provisions stemming from information he provided to Defendants through use of KFHP's website and mobile application that was purportedly disclosed to third-parties. Fourth, while the FAC is pled as a class action, binding U.S. Supreme Court authority requires that it be compelled to individual arbitration instead of class or aggregate arbitration. Finally, the FAA requires that John Doe's claims be stayed pending the outcome of the arbitration proceedings.

For these reasons and the reasons set out below, Defendants respectfully request that the Court compel individual arbitration of all of John Doe's claims and stay his claims in this matter pending the outcome of arbitration.

## II. FACTUAL BACKGROUND

### A. The Parties

KFHP is a health care plan. FAC ¶¶ 41–43. KFHP operates a website with a homepage located at https://healthy.kaiserpermanente.org (the "Site") and a mobile application—the Kaiser Permanente Mobile App (the "App")—through which enrollees in any of the health plans offered by KFHP ("Kaiser Plan Members") can perform various tasks, such as scheduling appointments; checking medical results; reviewing medical histories; researching doctors, locations, and medical services; communicating with providers and paying medical bills. *Id.* ¶¶ 52, 63. TPMG is "comprised of physician-owned, for-profit, partnerships, and professional corporations." *Id.* ¶ 45. Hospitals is a non-profit, public benefit corporation that operates various acute care hospitals and medical offices in California, Colorado, Hawaii, Maryland, Virginia, Oregon, Washington, and the District of Columbia. *Id.* ¶ 44. Kaiser Plan Members have access to the medical offices and hospitals operated by TPMG or Hospitals. *Id.* ¶ 42.

Plaintiff John Doe has been a Kaiser Plan Member since at least April 1, 2021. FAC ¶ 14; Declaration of Barry Osharow ("Osharow Decl.") ¶¶ 8–10, 12; Declaration of Duane Walker ("Walker Decl.") ¶¶ 10–11 & Ex. G. As a Kaiser Plan Member, John Doe has received treatment through Hospitals and TPMG. FAC ¶ 14.

### B. John Doe Enrolled in a KFHP Health Plan

John Doe's union, Teamsters & Food Employers Security Trust Fund (the "Trust") offers its members the option of obtaining health care coverage from KFHP. Osharow Decl. ¶ 2. BeneSys, Inc. ("BeneSys") serves as the third-party administrator of the Trust's health plan. *Id.* In this role, BeneSys oversees the administration of the benefit plans that are provided to members of the Trust. *Id.* As the third-party administrator, BeneSys is responsible for management of the open enrollment process for benefits, including enrollment into the medical plans offered by KFHP for the Trust's members. *Id.*

During the annual open enrollment period for benefits, the Trust sends an enrollment package to each of its members. *Id.* ¶ 3. The enrollment package for each member includes various documents relating to the benefits offered through the Trust. *Id.* Included each year in the enrollment package is the enrollment form that must be filled out to enroll in any of the KFHP health care plans offered through the Trust (the "Trust Enrollment Form"). *Id.*

To enroll in one of the medical plans offered, a member fills out the Trust Enrollment Form and mails it back to BeneSys. *Id.* ¶ 4. Once BeneSys receives the form, BeneSys processes enrollment into the health care plan that was selected by the member. *Id.* BeneSys then provides KFHP with a file containing the enrollment information for that enrollment period. *Id.*

To that end, in January 2021, the Trust's benefits enrollment package was mailed to all of the Trust's members, including John Doe. *Id.* ¶ 7. On or about February 12, 2021, John Doe executed the Trust Enrollment Form which was then returned to BeneSys. *Id.* ¶ 8 & Ex. A. BeneSys received the executed Trust Enrollment Form from John Doe on February 18, 2021. *Id.* ¶ 8 & Ex. A. Thereafter, BeneSys processed John Doe's enrollment into the Kaiser Permanente Traditional HMO Plan and informed KFHP of his enrollment, which was effective April 1, 2021, the start of the new plan year. *Id.* ¶ 10.

Each year since obtaining coverage with KFHP, John Doe has confirmed his enrollment in this plan through the Trust's passive enrollment[1] process. *See id.* ¶¶ 10–12. Each time this occurred, John Doe was sent the then-current Trust Enrollment Form. *Id.* The Trust Enrollment Form for each year contained the same, binding arbitration agreement. *See id.* ¶ 3. Since April 1, 2021, John Doe has been continuously enrolled as a member in the health plan and thus, a Kaiser Plan Member. *Id.* ¶ 12; Walker Decl. ¶¶ 10–11 & Ex. G.

---

[1] "Passive Enrollment" refers to the practice whereby, once a participant enrolls in a health care plan option provided through the Trust, their enrollment in that health care plan option continues until they either lose coverage or change their health care plan option during the annual open enrollment period. This means that if a member chooses not to change his or her elected benefits for a given plan year, the benefits will continue even if the employee does not actively make changes to or reaffirm his or her enrollment choice. Osharow Decl. ¶ 5. That is exactly what occurred here.

Moreover, the Group Agreement between KFHP and the Trust for each plan year required that John Doe receive notice of the then-current Evidence of Coverage applicable to his group health plan coverage. Walker Decl. ¶ 6, Ex. D at D-4; *id.* ¶ 7, Ex. E at E-4; *id.* ¶ 8, Ex. F at F-4; Declaration of Karen Urban ("Urban Decl.") ¶¶ 2, 7–9. In addition, KFHP makes the Evidence of Coverages available to all Kaiser Plan Members on the website www.kp.org/plandocuments. Walker Decl. ¶ 2.

**C. John Doe Agreed to Arbitrate All Disputes with Defendants**

Conspicuously printed in bold letters on the Trust Enrollment Form signed by John Doe, and directly above John Doe's signature, is a notice of the "**Kaiser Foundation Health Plan, Inc., Arbitration Agreement**," alerting enrollees to the fact that, by signing the Trust Enrollment Form, they are subject to a binding arbitration agreement with KFHP and "any contracted health care providers, administrators, or other associated parties." Osharow Decl. ¶ 8, Ex. A. The Trust Enrollment Agreement further advised John Doe that "the full arbitration provision is contained in the *Evidence of Coverage*." *Id.*

The Trust Enrollment Form signed by John Doe contains the following language in bold right above the signature line:

> **I understand that except for Small Claims Court cases, claims subject to a Medicare appeals procedure or the ERISA claims procedure regulation, and any other claims that cannot be subject to binding arbitration under governing law) any dispute between myself, my heirs, relatives, or other associated parties on the one hand and Kaiser Foundation Health Plan, Inc. (KFHP), any contracted health care providers, administrators, or other associated parties on the other hand, for alleged violation of any duty arising out of or related to membership in KFHP, including any claim for medical or hospital malpractice (a claim that medical services were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered), for premises liability, or relating to the coverage for, or delivery of, services or items, irrespective of legal theory, must be decided by binding arbitration under California law and not by lawsuit or resort to court process, except as applicable law provides for judicial review of arbitration proceedings. I agree to give up our right to a jury trial and accept the use of binding arbitration. I understand that the full arbitration provision is contained in the Evidence of Coverage.**

Osharow Decl. ¶ 8, Ex. A.

Further, the Evidence of Coverage for each plan year that John Doe has been enrolled

through the Trust includes the following clear and conspicuous binding arbitration provision:

> For all claims subject to this "Binding Arbitration" section, both Claimants and Respondents give up the right to a jury or court trial and accept the use of binding arbitration. . . . Any dispute shall be submitted to binding arbitration if all the following requirements are met:
>
> - The claim arises from or is related to an alleged violation of any duty incident to or arising out of or relating to this *EOC* or a Member Party's relationship to Kaiser Foundation Health Plan, Inc. ("Health Plan"), including any claim for medical or hospital malpractice (a claim that medical services or items were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered), for premises liability, or relating to the coverage for, or delivery of, services or items, irrespective of the legal theories upon which the claim is asserted;
>
> - The claim is asserted by one or more Member Parties against one or more Kaiser Permanente Parties or by one or more Kaiser Permanente Parties against one or more Member Parties; and
>
> - Governing law does not prevent the use of binding arbitration to resolve the claim.
>
> . . .
>
> "Claimant" refers to a Member Party or a Kaiser Permanente Party who asserts a claim as described above. "Respondent" refers to a Member Party or a Kaiser Permanente Party against whom a claim is asserted.

Walker Decl. ¶ 3, Ex. A at A-83; *id.* ¶ 4, Ex. B at B-85; *id.* ¶ 5, Ex. C at C-77–C-78. "Kaiser Permanente Parties" is defined to expressly include, *inter alia*, KFHP, Hospitals, and TPMG. *Id.* "Member Parties" is defined to include a Member (like John Doe) as well as "[a]ny person claiming that a duty to them arises from a Member's relationship to one or more Kaiser Permanente Parties." Walker Decl. ¶ 3, Ex. A at A-83; *id.* ¶ 4, Ex. B at B-85; *id.* ¶ 5, Ex. C at C-77–C-78. The Binding Arbitration provision further provides:

> Arbitrations shall be governed by this "Binding Arbitration" section, Section 2 of the Federal Arbitration Act, and the California Code of Civil Procedure provisions relating to arbitration that are in effect at the time the statute is applied, together with the Rules of Procedure, to the extent not inconsistent with this "Binding Arbitration" section. In accord with the rule that applies under Sections 3 and 4 of the Federal Arbitration Act, the right to arbitration under this "Binding Arbitration" section shall not be denied, stayed, or otherwise impeded because a dispute between a Member Party and a Kaiser Permanente Party involves both arbitrable and nonarbitrable claims or because one or more parties to the arbitration is also a party to a pending court action with a third party that arises out of the same or related transactions and

presents a possibility of conflicting rulings or findings.

*Id.* ¶ 3, Ex. A at A-85; *id.* ¶ 4, Ex. B at B-87; *id.* ¶ 5, Ex. C at C-79–C-80.

**D. John Doe files suit against Defendants**

Despite agreeing to binding arbitration of all his claims, on June 12, 2023, John Doe filed suit against Defendants in this Court. Dkt. 1. On September 15, 2023, John Doe filed the FAC. Dkt. 44.

In the FAC, John Doe alleges that, "unbeknownst to Plaintiffs and its other patients, Kaiser Permanente[2] has installed code from multiple third parties throughout the Site that allows third party companies such as Quantum Metric, Twitter, Adobe, Bing, and Google (collectively, 'Third Party Wiretappers') to intercept the content of Plaintiffs and Class Members' patient status, identifying information, medical topics researched, choices made, information shared and communications with their medical providers, including personally identifiable medical information and other confidential information and communications, when that information is in transit." FAC ¶ 4. According to the FAC, John Doe regularly uses the Site and App to "access medical information and communicate with his health care providers, including making appointments, reviewing and ordering prescriptions, researching providers and medical conditions, communicating with providers, checking medical results, and reviewing his medical history." *Id.* ¶ 15. John Doe further specifically alleges in the FAC that he logged into the patient portal on the Site on June 6, 2023 and: accessed test results, *id.* ¶ 88; participated in a Social Health Review; *id.* ¶ 92; accessed the Message Center, *id.* ¶ 93; accessed his Medical Summary, *id.* ¶ 94; accessed his bill pay account, *id.* ¶ 95, accessed his medical history/records, *id.* ¶ 127, 159; accessed his medications, *id.* ¶ 129; accessed his prescriptions page, *id.* ¶ 171; and conducted a physician search. *Id.* ¶ 179. He also alleges that on June 7, 2023, John Doe requested an electronic copy of his medical records through the Site. *Id.* ¶ 137.

As the basis for his claims in the FAC, John Doe alleges: "[w]ithout Plaintiff John Doe's

[2] The FAC improperly lumps all Defendants together as "Kaiser Permanente" in its allegations. *See* FAC at 1:2–4.

knowledge or consent, Kaiser Permanente allowed the Third Party Wiretappers to intercept, collect, read, attempt to read, and/or learn the contents or meaning of the contents of his patient status, identifying information, personal and sensitive health information, and confidential communications with his health care providers through Kaiser Permanente's website and mobile application while that information and those messages, reports, and/or communications were in transit." *Id.* ¶ 16. According to the FAC, each time John Doe logged into the Portal or App, his data was sent via "POST" calls and/or "GET" request to servers maintained by Quantum Metric, Adobe, Twitter, Bing, and Google. *Id.* ¶¶ 75–212. John Doe contends that this data included personal and sensitive health information, and confidential communications.

Based on these factual allegations, John Doe asserts ten claims against KFHP: (1) Violation of the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. §§ 2510; (2) Violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.*; (3) Common Law Invasion of Privacy—Intrusion Upon Seclusion; (4) Invasion of Privacy and Violation of the California Constitution, Art. 1, § 1; (5) Breach of Express Contract; (6) Breach of Implied Contract; (7) Negligence Per Se; (8) Violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (9) Violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10; and (10) Statutory Larceny, Cal. Penal Code §§ 484, 496. *Id.* ¶¶ 265, 288, 303, 316, 329, 358, 374, 390, 398, 417.

On July 20, 2023, counsel for Defendants met and conferred with counsel for Plaintiffs regarding case management, including the instant Motion to Compel Arbitration as to John Doe. Declaration of Wynter Deagle ("Deagle Decl.") ¶ 2. On July 26, 2023, counsel for Plaintiffs informed Defendants' counsel of their position that John Doe did not agree to arbitrate any of the claims asserted in the Complaint and requested that Defendants' counsel provide them with the contract containing the arbitration clause on which Defendants rely for this Motion. *Id.* ¶ 3, Ex. A. That same day, Defendants' counsel provided counsel for Plaintiffs with the Evidence of Coverage, the contract containing the arbitration clause on which Defendants rely for this Motion. *Id.* ¶ 3, Ex. B. On November 6, 2023, Defendants' counsel sent an email to counsel for Plaintiffs

requesting that they confirm their position and verify that John Doe would not agree to withdraw his claims and submit them to arbitration. *Id.* ¶ 4, Ex. C. On November 7, 2023, counsel for Plaintiffs responded, indicating that they intend to oppose the instant Motion to Compel Arbitration with regard to John Doe. *Id.* ¶ 4, Ex. D.

## III. LEGAL STANDARD

The arbitration agreement mandates that arbitration "shall be governed by . . . the Federal Arbitration Act . . . " Walker Decl. ¶ 3, Ex. A at A-85; *id.* ¶ 4, Ex. B at B-87; *id.* ¶ 5, Ex. C at C-79–C-80. As such, by the Agreement between the parties, the FAA applies to this matter. *See Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1106 (2018) ("The parties agree the (arbitration provision) is governed by the Federal Arbitration Act . . . Arbitration is a matter of contract, and 'parties are generally free to structure their arbitration agreements as they see fit.'" (quoting *Volt Info. Sciences v. Leland Stanford Jr. University*, 489 U.S. 468, 479 (1989)).

Even apart from the terms of the Agreement, the FAA would apply here. The FAA applies to any arbitration agreement contained in a contract "evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. The U.S. Supreme Court has held that for purposes of section 2 of the FAA, "the word 'involving' is broad and is indeed the functional equivalent of 'affecting.'" *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995). The Supreme Court explained that in enacting the FAA, Congress "took pains to utilize as much of its power as it could." *Id.* at 274–75 (citations omitted). Thus, "the word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *Id.* at 277.

Pursuant to the Evidence of Coverage at issue here, Defendants provided healthcare services and coverage to John Doe. Walker Decl. ¶ 3, Ex. A at A-83; *id.* ¶ 4, Ex. B at B-85; *id.* ¶ 5, Ex. C at C-78. Such services necessarily involve interstate commerce. *See, e.g.*, *Toledo v. Kaiser Permanente Med. Grp.*, 987 F. Supp. 1174, 1180 (N.D. Cal. 1997) (granting motion to compel arbitration despite "frivolous argument" that Kaiser's agreement covering general care and emergencies had no effect on interstate commerce, and finding that "performance of the contract implicate[d] interstate commerce" since physicians "and many necessary supplies and medications

[come] from out of state"); *Hunter v. Kaiser Found. Health Plan, Inc.*, 434 F. Supp. 3d 764, 770 (N.D. Cal. 2020) (applying the FAA and granting motion to compel arbitration per arbitration provisions in Kaiser membership agreements). Therefore, the FAA applies.

## IV. ARGUMENT

### A. John Doe Agreed to Arbitrate the Claims Alleged in the FAC

The FAA codifies the strong federal policy in favor of enforcing arbitration agreements. 9 U.S.C. §§ 1, *et seq*. The overarching principle of the FAA is that "arbitration is a matter of contract." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Section 3 of the FAA requires the Court to stay a court action pending arbitration if the claims asserted in the action are referable to arbitration under a written agreement between the parties. 9 U.S.C. § 3. If necessary, the Court may also enter an order "directing that such arbitration proceed in the manner provided" in the arbitration agreement. 9 U.S.C. §4.

Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists, and if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If both prongs are met, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. 9 U.S.C. §§ 3, 4; *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

#### 1. John Doe Entered into a Valid Arbitration Agreement Agreeing to Submit This Dispute to Binding Arbitration

Under the FAA, courts must stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. *Valencia v. Smyth*, 185 Cal. App. 4th 153, 170 (2010); *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). In determining whether a valid arbitration agreement exists, courts apply ordinary state-law

principles governing the formation of contracts. *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1712 (2003) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of a contract. *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020).

Courts, including this Court and the California Supreme Court, have repeatedly found that Kaiser Plan Members, such as John Doe, agreed to arbitrate their disputes with Defendants and other Kaiser-related entities by entering into membership agreements to obtain healthcare coverage provided by KFHP. *See, e.g.*, *Loucks v. Kaiser Found. Hosps.*, No. 20-cv-01216, 2020 WL 3469326, at *8, *11 (N.D. Cal. June 25, 2020) (Chen, J.) (compelling arbitration brought by Kaiser Plan Member against KFHP, Hospitals, and TPMG based on virtually identical arbitration agreement); *Smith v. Watanabe*, No. 21-cv-07872, 2022 WL 6282201, at *6 (N.D. Cal. Sept. 27, 2022) (compelling arbitration of claims against KFHP brought by Kaiser Plan Members that signed up for coverage through employer with a substantially similar arbitration agreement); *Hunter v. Kaiser Found. Health Plan, Inc.*, 434 F. Supp. 3d 764 (N.D. Cal. 2020) (finding Kaiser Plain Member agreed to arbitrate her claims against KFHP based on enrollment documents and EOCs just like those at issue here); *Drissi v. Kaiser Found. Hosps., Inc.*, 543 F. Supp. 2d 1076, 1077–78 (N.D. Cal. 2008) (compelling arbitration of plaintiffs' claims against KFHP, Hospitals, and TPMG based on a substantially similar arbitration provision); *Toledo v. Kaiser Permanente Med. Grp.*, 987 F. Supp. 1174, 1180–81 (N.D. Cal. 1997) (granting motion to compel arbitration of Kaiser Plan Member's claims against KFHP, Hospitals, and TPMG arising from denial of benefits under the benefit plan); *Magno v. Kaiser Found. Health Plan, Inc.*, No. 22-cv-017996, 2023 Cal. Super. LEXIS 76990, at *1–3 (Alameda Cnty. Super. Ct. Feb. 7, 2023) (compelling arbitration of claims against KFHP based on unauthorized disclosure of protected health information where the agreement applied to any claim arising out of "an alleged violation of any duty incident to or arising out of or relating to a Participant or Dependent Party's relationship" to KFHP); *Wilson v. Kaiser Found. Hosps.*, 141 Cal. App. 3d 891, 899–900 (1983) (finding a child who did not become a Kaiser Plan Member until the time of his birth, was bound by his parent's

agreement to arbitrate claims against Hospitals and TPMG); *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 702–03 (1976) (finding plaintiff, a state employee whose healthcare was covered by a medical services contract, was bound by its arbitration provision, which was entered into between KFHP and the Board of Administration, to arbitrate claims against KFHP, Hospitals, and TPMG).

Further, this Court and others have found that virtually the same arbitration provision as here is neither procedurally nor substantively unconscionable. *See, e.g.*, *Loucks*, 2020 WL 3469326, at *11; *Watanabe*, 2022 WL 6282201, at *4; *Magno*, 2023 Cal. Super. LEXIS 76990, at *3. As such, John Doe's arbitration agreement is enforceable. *See Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1471 (2009) (noting courts applying California law enforce arbitration agreements unless they are both procedurally and substantively unconscionable); *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 n.9 (2015) (noting California courts "recognize that showing a contract is one of adhesion does not always establish procedural unconscionability").

John Doe agreed to arbitrate his claims by enrolling in the health plan and accepting benefits under the stipulations provided in the Trust Enrollment Form and his Evidence of Coverage, including the arbitration agreement. Accordingly, John Doe entered into a valid and enforceable arbitration agreement.

**2. Defendants Can Enforce the Arbitration Agreement as its Intended Third-Party Beneficiaries**

"A nonsignatory who is an intended third-party beneficiary of an arbitration agreement has the right to enforce the arbitration agreement." *Piterman v. Gold Coast Exotic Imps. LLC*, No. 5:20-cv-07724, 2021 WL 1853769, at *7 (N.D. Cal. May 10, 2021); *see* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."); *Harris v. Super. Ct.*, 188 Cal. App. 3d 475, 478 (1986) ("It is well established that a non-signatory beneficiary of an arbitration clause is entitled to require arbitration."). A party seeking to enforce an arbitration agreement as a non-signatory, third-party beneficiary must only show that the contract reflects the express or implied intention of the parties to benefit the third party more than incidentally. *Piterman*, 2021 WL 1853769, at *8 (allowing

non signatory to compel arbitration because the agreement contemplated its involvement in providing warranty coverage and that it was covered by arbitration agreement as a party's affiliate). When an arbitration clause explicitly states that it covers claims involving particular parties, that agreement was made expressly for the benefit of those parties. *Hajibekyan v. BMW of N. Am., LLC*, 839 F. App'x. 187, 188 (9th Cir. 2001) (citing *Ronay Fam. Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838–39 (2013)).

KFHP, Hospitals, and TPMG are all entitled to enforce the arbitration agreement against Plaintiff. The Evidence of Coverage is a contract between KFHP and John Doe. Walker Decl. ¶ 3, Ex. A at A-28; ¶ 4, Ex. B at B-30; ¶ 5, Ex. C at C-21; Osharow Decl. ¶ 8, Ex. A. Further, the Evidence of Coverage specifically states that the arbitration agreement governs claims "asserted by one or more Member Parties," defined to include John Doe, "against one or more Kaiser Permanente Parties," defined to include "Kaiser Foundation Health Plan, Inc.," "The Permanente Medical Group, Inc.," and "Kaiser Foundation Hospitals." Walker Decl. ¶ 3, Ex. A at A-83; *id.* ¶ 4, Ex. B at B-85–B-86; *id.* ¶ 5, Ex. C at C-78. Accordingly, the arbitration agreement is expressly made for the benefit of KFHP, TPMG, and Hospitals and, as a result, can be enforced by all of the Defendants against John Doe.

### 3. The FAC's Claims "Touch Matters" Covered by the Arbitration Agreement

The claims asserted in the FAC fall squarely within the binding arbitration provisions. Generally, courts will compel arbitration of all claims where, as here, the arbitration provision is broadly-worded and covers all the issues at hand. *See Rice v. Downs*, 248 Cal. App. 4th 175, 186 (2016) ("A 'broad' clause includes those using language such as 'any claim arising from or related to this agreement' or 'arising in connection with the agreement.'" (citations omitted)). A dispute is arbitrable if it "touch[es] matters" covered by the arbitration clause, whether the claims asserted are themselves based in contract or tort. *Id.* Under the FAA, the U.S. Supreme Court has held that virtually every type of statutory and tort claim, including intentional torts, is arbitrable under a broadly worded arbitration provision. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *see also Johnson v. Charter Commc'ns, Inc.*, No. 21-cv-06135, 2022 WL 2673091, at *4

(N.D. Cal. June 2, 2022) (granting motion to compel arbitration of California invasion of privacy claims).

The arbitration agreement in this case establishes that claims are within its scope if they meet three requirements: (1) the claim "arises from or is related to an alleged violation of any duty incident to or arising out of or relating to . . . [John Doe's] relationship to Kaiser Foundation Health Plan, Inc. . . . including any claim . . . relating to the . . . delivery of, services or items, irrespective of the legal theories upon which the claim is asserted;" (2) the claim is asserted by one or more Member Parties(defined to include John Doe) against "one or more Kaiser Permanente Parties," (defined to include KFHP, TPMG, and Hospitals) or vice versa; and (3) "[g]overning law does not prevent the use of binding arbitration to resolve the claim." *See* Walker Decl. ¶ 3, Ex. A at A-83; *id.* ¶ 4, Ex. B at B-85–B-86; *id.* ¶ 5, Ex. C at C-78. Additionally, a claim will not be subject to binding arbitration under the Agreement if it is "within the jurisdiction of the small claims court." *Id.* These requirements are met here for each of John Doe's claims.

First, the gravamen of John Doe's claims is his assertion that Defendants violated a "duty" to maintain the confidentiality of his information and communications by disclosing or enabling the disclosure of that information to the third parties through the tracking technology. *See*, *e.g.*, FAC ¶¶ 195, 225, 355(f), 371(f), 543. This is a duty that John Doe admits arose out of or was incident to John Doe's ***relationship to KFHP as a Plan Member and as a patient of TPMG and Hospitals***. *See id.* ¶¶ 232–43 (describing obligations to protect a *patient's* personally identifiable health information *as John Doe's health care providers*); *id.* ¶ 543 (noting "Kaiser Permanente's duty to maintain confidentiality of *patient* data and communications" (emphasis added).) The claims specifically hinge on Defendants' purported disclosure of "personal and sensitive information *relating to medical treatment*." *Id.* ¶ 7 (emphasis added). Indeed, John Doe pleads that "as any reasonable *patient* would expect, Plaintiffs trusted that their medical providers would treat the information that they shared with them as private and confidential." *Id.* ¶ 1 (emphasis added).

Specifically, John Doe's invasion of privacy claims are premised on his alleged expectation of privacy in the information he provided to Defendants ***by virtue of his status as a***

***Kaiser Plan Member/patient***. *See id.* ¶ 232 ("Plaintiffs and Class Members' reasonable expectation of privacy in their personally identifiable data and communications exchanged with Kaiser Permanente and its providers is derived from several sources, including: a. Kaiser Permanente's *status as Kaiser Plan Members' health care provider*; b. Kaiser Permanente's common law obligation to maintain confidentiality of *patient* data and communications . . . ." (emphasis added). John Doe's express and implied contract claims are based on his assertion of the existence of a contractual agreement between him and Defendants—an agreement that was formed when John Doe enrolled ***as a Kaiser Plan Member***. *Id.* ¶¶ 330, 359. John Doe's CLRA claim is predicated on allegedly false misrepresentations made by Defendants in their contractual agreements ***with John Doe***. *Id.* ¶ 394. John Doe further contends that Defendants violated the CMIA, which requires that "a provider of healthcare, health care services plan, or contractor shall not disclose medical information ***regarding a patient of the provider of healthcare*** or an enrollee or subscriber of a health care service plan without first obtaining an authorization." *Id.* ¶ 399. As for his ECPA and CIPA claims, John Doe contends that Defendants violated the statutes when by allowing third parties in intercept "Plaintiffs and Kaiser Operating States Class Members[']  communicat[ions] ***with Kaiser Permanente*** and/or their health care providers." *Id.* ¶ 276; *see also id.* ¶ 295 ("Kaiser Permanente installed the Third Party Wiretappers' code to automatically and secretly spy on, and intercept Plaintiffs and Class Members' communications *with Kaiser Permanente* through the Kaiser Permanente website in real time.").

John Doe's negligence per se claim is based on the alleged violation of statutory duties purportedly owed to him by KFHP. *See id.* ¶ 386 ("But for Defendants' wrongful and negligent ***breach of their duties owed to Plaintiffs and Class Members***, Plaintiffs and Class Member would not have been injured."). John Doe's larceny claim is based on the alleged theft of "private health information" provided to KFHP in his capacity as a patient and/or Kaiser Plan Member. *See id.* ¶ 420. As such, all of his claims arise from or are related to an alleged violation of any duty incident to or arising out of or relating to John Doe's relationship to KFHP.

The court's order granting KFHP's motion to compel arbitration in *Magno v. Kaiser Foundation Health Plan* is directly on point. 2023 Cal. Super. LEXIS 76990. In *Magno*, the

Court compelled a Kaiser Plan Member who brought a purported class action to individual arbitration based on a virtually identical arbitration provision. *Id.* at *1–3. Magno alleged that KFHP had improperly disclosed his (and the class members') personal information to a third party. *Id.* There, the court found that the named plaintiff's claims for (1) negligence; (2) breach of implied contract; (3) violation of the California Confidentiality of Medical Information Act; (4) violation of California Unfair Competition Law; and (5) breach of the implied covenant of good faith and fair dealing were all subject to the arbitration provision. *Id.* Specifically, the court held that the "claims in this case . . . that Kaiser possessed personal information that it obtained in its role as health care provider and that Kaiser failed ot [sic] protect the information adequately" were covered by the arbitration agreement mandating arbitration of "any claim for 'an alleged violation of any duty incident to or rising out of or relating to a Participant or Dependent Party's relationship to Kaiser . . . .'" *Id.* at *3. The exact result is dictated here. John Doe claims that Defendants possessed personal information and communications that they obtained in their roles as John Doe's health care providers and that Defendants failed to protect that information. These claims are expressly covered by the arbitration agreement.

Second, the claims are asserted by John Doe—a Kaiser Plan Member and thus a "Member Party" under the Evidence of Coverage definition—against KFHP, Hospitals, and TPMG —which are expressly covered "Kaiser Permanente Parties" per the Evidence of Coverage. FAC ¶¶ 13–16, 41–46; Walker Decl. ¶ 3, Ex. A at A-83; ¶ 4, Ex. B at B-85–B-86; ¶ 5, Ex. C at C-78.

Third, governing law does not prevent the use of binding arbitration to resolve the claim. The Evidence of Coverage states that "this *EOC* will be governed in accord with California law." Walker Decl. ¶ 3, Ex. A at A-90; ¶ 4, Ex. B at B-93; ¶ 5, Ex. C at C-85. As discussed above, courts applying California law enforce arbitration agreements unless they are both procedurally and substantively unconscionable. *Roman*, 172 Cal. App. 4th at 1471. Courts have found that virtually the same arbitration provision as here is neither procedurally nor substantively unconscionable. *See, e.g.*, *Watanabe*, 2022 WL 6282201, at *4; *Winninger v. Scott*, No. 21-cv-04689, 2022 WL 3205035, at *4–5 (N.D. Cal. July 5, 2022); *Magno*, No. 22-cv-017996, at *3. As such, California law does not prevent the use of binding arbitration to resolve John Doe's claims.

Finally, the claim is not within the jurisdiction of the small claims court, because that court does not have jurisdiction to hear class actions. John Doe alleges that this is a "proposed class action in which there are at least 100 Class Members" and that "the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000." FAC ¶ 47. The potential damages at issue here therefore greatly exceed the small claims court's jurisdictional limit of $5,000. Cal. Civ. Proc. Code § 116.220.

Accordingly, John Doe's claims "touch matters" covered by the arbitration agreement and fall within the scope of the arbitration agreement.

**B. The Court Should Compel Individual, Non-Class Arbitration**

Under the FAA, class action waivers in arbitration provisions are enforceable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 924 (2015).

The arbitration provision here does not contain an express class action waiver. However, under the FAA, a party cannot be compelled to submit to class arbitration where an arbitration provision is entirely silent or ambiguous regarding whether class action claims can be pursued in arbitration. *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019).

In *Stolt-Nielsen*, the Supreme Court held that a court may not compel class-wide arbitration when an agreement is silent on the availability of class arbitration. *Stolt-Nielsen*, 559 U.S. at 684. According to the Court, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id*. This is because "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id*. at 687. "From these principles, it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id*. at 684.

Similarly, in *Lamps Plus v. Varela*, the U.S. Supreme Court reaffirmed and extended its

ruling in *Stolt-Nielsen*. 139 S. Ct. at 1416–17. *In Lamps Plus*, the Court held that under the FAA, "an ambiguous agreement cannot provide the necessary contractual basis for concluding that the parties agreed to submit to class arbitration." *Id*. at 1411, 1416. The Court explained that, "[l]ike silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[] the principal advantage of arbitration."' *Id*. at 1416. The Court "reiterated that courts may not rely on state contract principles to 'reshape traditional individualized arbitration by mandating class wide arbitration procedures without the parties' consent."' *Id*. at 1418.

Applying *Lamps Plus*, the Northern District of California recently compelled a plaintiff to individual arbitration against KFHP under a substantially similar arbitration agreement. *Watanabe*, 2022 WL 6282201, at *6. The court held that the plaintiffs' "individual claims" must be "referred to individual arbitration because the contract is silent on the issue of class-wide arbitration." *Id.* The same reasoning applies here. The arbitration agreement at issue here is silent as to the availability of class-wide arbitration. Thus, there is no contractual or other basis to conclude that the parties intended to arbitrate their disputes on a class-wide basis. Under controlling U.S. Supreme Court authority, the Court should therefore compel arbitration on an individual, non-class basis.

### C. The Court Should Issue a Stay of John Doe's Claims Pending the Outcome of the Arbitration Proceeding

John Doe's claims must be stayed pending resolution of the arbitration proceeding.[3] Under section 3 of the FAA, if a suit is filed upon any issue that is subject to a written arbitration agreement, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Valencia*, 185 Cal. App. 4th at 170; *see Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (quoting 9 U.S.C. § 3).[4] The

[3] Defendants are not requesting that the Court stay the claims of the other named plaintiffs.

[4] The California Arbitration Act similarly provides: "If a court of competent jurisdiction…has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon

rationale for a stay is that dismissal would convert the decision into an appealable order, thus controverting the FAA's policy "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *see Sandquist v. Lebo Automotive*, 1 Cal. 5th 233, 255 (2016). Accordingly, the Court should stay this litigation pending arbitration.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion, compel arbitration of John Doe's claims, and stay John Doe's claims pending completion of the arbitration.

---

motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." Cal. Code Civ. Proc. § 1281.4.

Dated: November 14, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ *Wynter L. Deagle*

WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real, Suite 120
Menlo Park, CA 94025
Telephone: 650.815.2600
Facsimile: 650.815.2601

NOLAN J. WALTER, Cal Bar No. 325021
nwalter@sheppardmullin.com
KEVIN MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc.