1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    WYNTER L. DEAGLE, Cal Bar No. 296501
2   wdeagle@sheppardmullin.com
    ANNE-MARIE D. DAO, Cal Bar No. 282632
3   adao@sheppardmullin.com
    DANE C. BRODY CHANOVE, Cal Bar No. 345843
4   dbrodychanove@sheppardmullin.com
    12275 El Camino Real, Suite 100
5   San Diego, California 92130-4092
    Telephone:    858.720.8900
6   Facsimile:    858.509.3691
7
8   Attorneys for Defendants
    Kaiser Foundation Health Plan, Inc., Kaiser Foundation
9   Hospitals, and The Permanente Medical Group, Inc.
10  *[Additional counsel listed on signature page]*
11              UNITED STATES DISTRICT COURT
12      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| 13  JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, and JANE DOE V, Individually and on behalf of all others similarly situated, | Case No. 3:23-cv-02865-EMC |
| 16              Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| 17          v. | *Filed concurrently with [Proposed] Order* |
| 18  KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and THE PERMANENTE MEDICAL GROUP, INC., | Date:          March 14, 2024<br>Time:          1:30 p.m.<br>Courtroom:      5 |
| 21              Defendants. | District Judge:    Hon. Edward M. Chen<br>Magistrate Judge: Hon. Peter H. Kang<br>FAC Filed:        September 15, 2023<br>Trial Date:       Not Set |

23
24
25
26
27
28

1

## <u>NOTICE OF MOTION & MOTION TO DISMISS</u>

2    PLEASE TAKE NOTICE that, on March 14, 2024, at 1:30 p.m., before the Honorable

3 Edward M. Chen of the United States District Court for the Northern District of California, San

4 Francisco Division, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA

5 94102, Defendants Kaiser Foundation Health Plan, Inc. ("KFHP"), Kaiser Foundation Hospitals

6 (the "Hospitals"), and The Permanente Medical Group, Inc. ("TPMG") (collectively,

7 "Defendants"), will and hereby do, move this Court for an order to dismiss the First Amended

8 Complaint ("FAC") filed by Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III,

9 Jane Doe IV, and Jane Doe V (collectively, "Plaintiffs"), individually and on behalf of others

10 similarly situated, and all causes of action therein alleged against Defendants pursuant to Federal

11 Rules of Civil Procedure 12(b)(1) for lack of standing, 9(b) for failure to satisfy the heightened

12 pleading standard, and 12(b)(6) for failure to state a claim.  This Motion is based on this Notice of

13 Motion and Motion, the Memorandum of Points and Authorities, all pleadings and other papers on

14 file in this action, and such other matters as may properly come before the Court.

15

## <u>ISSUES PRESENTED</u>

16    1.    Whether claims brought by John Doe II, Jane Doe II, Jane Doe III, Jane Doe IV,

17 and Jane Doe V must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of

18 Article III standing.

19    2.    Whether Plaintiffs' claims against Defendants should be dismissed for failure to

20 state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and

21 whether dismissal should be with prejudice because amendment would be futile.

22

23

24

25

26

27

28

1

2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

3

Table of Authorities ................................................................................................ iii

4

I.      INTRODUCTION .......................................................................................1

5

II.     FACTUAL BACKGROUND ......................................................................2

6

     A.      The Parties ........................................................................................2

7

     B.      KFHP's Website and Apps ...............................................................2

8

III.    LEGAL STANDARD .................................................................................4

9

IV.     DOE PLAINTIFFS II-V LACK ARTICLE III STANDING .....................5

10

V.      ALL CLAIMS AGAINST HOSPITALS AND TPMG MUST BE DISMISSED ...............8

11

VI.     PLAINTIFFS CONSENTED TO THE DISCLOSURE OF THE INFORMATION ...........9

12

VII.    ALL CLAIMS AS TO ALL DEFENDANTS FAIL FOR ADDITIONAL REASONS ...............14

13

14

     A.      Claim 1: The Federal Wiretap Act .................................................14

15

     B.      Claim 2: California Invasion of Privacy Act Claim ("CIPA") ................15

16

          1.      Defendants Cannot Intercept Their Own Communications .................15

17

          2.      Sharing Communications with Third Parties Is Not an Interception ...........17

18

          3.      The Non-California Plaintiffs Cannot Assert CIPA Claims ...............18

19

     C.      Claim 3: Intrusion Upon Seclusion .................................................20

20

     D.      Claim 4: Invasion of Privacy and Constitutional Right to Privacy ...........22

21

     E.      Claim 5: Breach of Express Contract ..............................................22

22

     F.      Claim 6: Breach of Implied Contract ..............................................24

23

     G.      Claim 7: Negligence Per Se Fails ...................................................25

24

     H.      Claim 8: California Consumer Legal Remedies Act ("CLRA") ...............26

25

     I.       Claim 9: California Confidentiality of Medical Information Act ("CMIA") ...........28

26

     J.       Claim 10: Statutory Larceny ...........................................................30

27

28

K.    Claim 11: D.C. Consumer Protection Procedures Act ("DCCPPA") ....................30

L.    Claim 12: Georgia Uniform Deceptive Trade Practices Act ("UDTPA") ..............31

M.    Claim 13: Georgia Computer Systems Protection Act  ("CSPA") .........................31

N.    Claim 14: Georgia Insurance Information and Privacy Protection Act ..................32

O.    Claim 15: Maryland Wiretapping and Electronic Surveillance Act .......................34

P.    Claim 16: Oregon Unlawful Trade Practices Act ("UTPA")..................................34

Q.    Claim 17: Virginia Computer Crimes Act ("VCCA") ............................................35

R.    Claim 18: Virginia Insurance Information and Privacy Protection Act..................35

S.    Claim 19: Washington Consumer Protection Act ("WCPA") ................................36

T.    Claim 20: Washington Privacy Act ("WPA")........................................................37

          1.    There Was No Private "Communication" Between Two Individuals..........38

          2.    Defendants Did Not Intercept or Record Communications .......................38

          3.    Jane Doe Was Not Injured ........................................................................39

U.    Claim 21: Washington Health Care Information Act ("WHCIA").........................39

VIII.    CONCLUSION .................................................................................................40

SMRH:4861-0154-9956
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

*Adams v. PSP Grp., LLC*
    2023 WL 5951784 (E.D. Mo. Sept. 13, 2023) ........................................................................ 7

5

*Albrecht v. Comm. on Employee Benefits of the Fed. Reserve Employee Benefits Sys.*
    357 F.3d 62 (D.C. Cir. 2004) ................................................................................................ 24

6

7

*Allstate Ins. Co. v. Hague*
    449 U.S. 302 (1981) ............................................................................................................. 19

8

9

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................................................... 4

10

*Attias v. CareFirst, Inc.*
    365 F. Supp. 3d 1 (D.D.C. 2019) ......................................................................................... 31

11

12

*Augustine v. FIA Card Servs., N.A.*
    485 F. Supp. 2d 1172 (E.D. Cal. 2007) ................................................................................. 9

13

*Bard Water Dist. v. James Davey & Assocs.*
    No. 13-cv-2727, 2014 WL 1796709 (S.D. Cal. May 5, 2014) ............................................. 12

14

15

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................................................... 4

16

17

*Benz v. Wash. Newspaper Publ'g Co., LLC*
    No. 05-1760, 2006 WL 2844896 (D.D.C. Sep. 29, 2006) .................................................... 21

18

*Block v. Snohomish Cnty.*
    No. C18-1048, 2019 WL 954809 (W.D. Wash. Feb. 27, 2019) ............................................. 9

19

20

*Boegeman v. Smith*
    No. 3:17-cv-00861, 2018 WL 3140469 (S.D. Cal. June 27, 2018) ....................................... 30

21

22

*Brinkley v. Monterey Fin. Servs., LLC*
    340 F. Supp. 3d 1036 (S.D. Cal. 2018) ............................................................................... 39

23

*Brooks v. Branch Banking & Tr. Co.*
    107 F. Supp. 3d 1290 (N.D. Ga. 2015) ................................................................................ 23

24

25

*Brophy v. JPMorgan Chase Bank Nat'l Ass'n*
    No. 13-CV-0293, 2013 WL 6273583 (E.D. Wash. Dec. 4, 2013) ........................................ 37

26

27

*Brown v. Countrywide Home Loans, Inc.*
    No. 2:15-CV-0199, 2016 WL 1700388 (E.D. Wash. Apr. 27, 2016) .................................... 23

28

SMRH:4861-0154-9956

*Bryant v. Norfolk S. R.R.*
  No. 5:20-cv-00225, 2020 WL 7634588 (M.D. Ga. Dec. 22, 2020) .................................... 25

*Buckley v. Santander Consumer USA, Inc.*
  No. C17-5813, 2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) .................................... 21

*Bunnell v. Motion Picture Ass'n of Am.*
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................ 17

*Byars v. Hot Topic, Inc.*
  No. CV 22-1652, 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ........................... 16, 17

*Byars v. Sterling Jewelers, Inc.*
  No. 5:22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ................................ 6

*Calhoun v. Google LLC*
  526 F. Supp. 3d 605 (N.D. Cal. 2021) .............................................................. 9, 10

*Campbell v. Facebook, Inc.*
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................................ 10

*In re Capital One Consumer Data Sec. Breach Litig.*
  488 F. Supp. 3d 374 (E.D. Va. 2020) ................................................................ 24

*In re Carrier IQ, Inc., Consumer Privacy Litig.*
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................ 38

*Carter v. Bank of Am., N.A.*
  888 F. Supp. 2d 1 (D.D.C. 2012) ........................................................................ 9

*Chandler v. Wash. Toll Bridge Auth.*
  137 P.2d 97 (Wash. 1943) ................................................................................ 24

*Chevron Prods. Co. v. Advanced Corrosion Techs. & Training, LLC*
  No. 20-cv-09095, 2021 WL 2156467 (N.D. Cal. May 27, 2021) ............................... 4

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*
  169 F. Supp. 2d 1119 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004) ...................... 19

*Cook v. GameStop, Inc.*
  No. 2:22-cv-1292, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) ............................. 7

*Cooper v. Slice Techs., Inc.*
  No. 17-cv-7102, 2018 WL 2727888 (S.D.N.Y. June 6, 2018) ................................. 13

*Cousin v. Sharp Healthcare*
  No. 22-CV-2040, 2023 WL 4484441 (S.D. Cal. July 12, 2023) .............................. 7

*Cousineau v. Microsoft Corp.*
  992 F. Supp. 2d 1116 (W.D. Wash. 2012) ........................................................ 38

*Crenshaw v. Lister*
  556 F.3d 1283 (11th Cir. Feb. 6, 2009) ................................................................. 8, 12

*D.S. v. Am. Ass'n Univ. Women*
  No. 15cv1356, 2017 WL 3705850 (S.D. Cal. Aug. 28, 2017) ................................... 25

*Doe v. SuccessfulMatch.com*
  No. 13-CV-03376, 2014 WL 1494347 (N.D. Cal. Apr. 16, 2014) ............................ 26

*Doe v. White*
  440 F. Supp. 3d 1074 (N.D. Cal. 2020) .................................................................... 5

*In re DoubleClick Inc. Priv. Litig.*
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ...................................................................... 15

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................................... 14

*In re Facebook, Inc. Internet Tracking Litig.*
  956 F.3d 589 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct.
  1684 (2021) ....................................................................................................... 16, 23

*Georgia Real Estate Props., Inc. v. Lindwall*
  303 Ga. App. 12, 692 S.E.2d 690 (2010) ................................................................. 24

*In re Gilead Scis. Sec. Litig.*
  536 F.3d 1049 (9th Cir. 2008) .................................................................................... 4

*Gillett v. Tucker*
  317 Or. App. 570 (2022) ........................................................................................... 24

*Gonzales v. Uber Techs., Inc.*
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) .................................................................... 21

*In re Google Assistant Priv. Litig.*
  546 F. Supp. 3d 945 (N.D. Cal. 2021) ................................................................. 5, 23

*In re Google Assistant Privacy Litig.*
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................... 22

*In re Google, Inc. Privacy Policy Litig.*
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................................................................... 20

*Gosha v. Bank of N.Y. Mellon Corp.*
  No. 3:16-CV-00073, 2016 WL 7238927 (D. Or. Dec. 13, 2016) ............................ 34

*Graham v. Noom, Inc.*
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................... 16, 17, 18, 22

*Griffin Industries, Inc. v. Irvin*
    496 F.3d 1189 (11th Cir 2007) ....................................................................... 8, 12

*GW Acquisition Co., LLC v. Pageland Ltd. Liab. Co.*
    No. 1:22-cv-255, 2023 WL 125018 (E.D. Va. Jan. 6, 2023) ................................. 23

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
    896 F.2d 1542 (9th Cir.1989) ............................................................................. 9

*Hammerling v. Google LLC*
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................. 24

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*
    105 Wash. 2d 778 (1986) ............................................................................ 36, 37

*Hanson v. Hanson*
    No. 19-2214, 2020 WL 4734313 (D. Md. Aug. 14, 2020) ................................... 25

*Hartman v. Brady*
    No. 3:15-cv-1753, 2016 WL 6126962 (D. Or. Sep. 19, 2016) ............................. 25

*Hernandez v. Hillsides, Inc.*
    47 Cal. 4th 272 (2002) ............................................................................... 20, 22

*Horton v. Nelson*
    252 Or. App. 611 (2012) ................................................................................... 34

*Hunter v. District of Columbia*
    64 F. Supp. 3d 158 (D.D.C. 2014) .................................................................... 25

*Huong Hoang v. Amazon.com, Inc.*
    No. C11-1709, 2012 WL 1088165 (W.D. Wash. Mar. 28, 2012) ..................... 37, 38

*Inst. of Multidimensional Med. v. Metagenics, Inc.*
    635 F. Supp. 3d 6 (D.D.C. 2022) ...................................................................... 23

*James v. Walt Disney Co.*
    No. 23-cv-02500, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) (Chen, J.) ....... 19, 20

*Javier v. Assurance IQ, LLC*
    No. 4:20-CV-02860, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .............. 10, 11, 13

*John M. Floyd & Assocs., Inc. v. Howard Bank*
    No. 18-2887, 2019 WL 1755968 (D. Md. Apr. 18, 2019) ................................... 24

*Jones v. Ford Motor Co.*
    85 F.4th 570 (9th Cir. 2023) ............................................................................. 38

*Jones v. NVR Incorporation*
    No. 20-453, 2020 WL 2064085 (D.D.C. Apr. 29, 2020) ............................... 25, 39

*Kearney v. Kearney*
   974 P.2d 872 (1999) ................................................................................. 38

*Kearns v. Ford Motor Company*
   567 F.3d 1120 (9th Cir. 2009) ................................................................. 26

*Kee Action Sports, Ltd. Liab. Co. v. Shyang Huei Indus. Co.*
   No. 3:14-cv-00071, 2015 WL 9581808 (D. Or. Dec. 30, 2015) ............................ 23

*Kleffman v. Vonage Holdings Corp.*
   No. 07-cv-2406, 2007 WL 1518650 (C.D. Cal. May 23, 2007), *aff'd*, 387 F. App'x 696
   (9th Cir. 2010) ........................................................................................ 28

*Konop v. Hawaiian Airlines, Inc.*
   302 F.3d 868 (9th Cir. 2002) ................................................................. 17

*Krise v. Sei/Aaron's, Inc.*
   No. 1:14-CV-1209, 2017 WL 3608189 (N.D. Ga. Aug. 22, 2017) ...................... 32

*Lam v. Target Corp.*
   No. 2:15-CV-01922, 2017 WL 4154947 (E.D. Cal. Sep. 19, 2017) ..................... 25

*Licea v. Am. Eagle Outfitters*
   No. CV 22-1702, 2023 WL 2469630 (C.D. Cal. March 7, 2023) ........................ 16

*Licea v. Cinmar*
   No. CV 22-6454, 2023 WL 2415592 (C.D. Cal. March 7, 2023) .................... 16, 17

*Lightoller v. JetBlue Airways Corp.*
   No. 23-cv-00361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ......................... 7

*Little Donkey Enters. Wash. v. US Bancorp*
   136 F. App'x 91 (9th Cir. 2005) ............................................................. 36

*Lloyd v. Navy Fed. Credit Union*
   No. 17-cv-1280, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018) .......................... 27

*Lorenz v. Deutsche Bank Nat'l Tr. Co.*
   No. 3:15-cv-680, 2015 WL 5813174 (D. Or. Oct. 5, 2015) ............................... 34

*Low v. LinkedIn Corp.*
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................... 22

*Main v. Nw. Tr. Servs.*
   No. 14-353, 2014 WL 3752131 (W.D. Wash. July 30, 2014) ............................ 37

*Mastel v. Miniclip SA*
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...................................................... 17

-vii-

*Mazza v. Am. Honda Motor Co.*
   666 F.3d 581 (9th Cir. 2012) ............................................................................... 19

*McCann v. Foster Wheeler LLC*
   48 Cal. 4th 68 (2010) ....................................................................................... 19

*McDonald v. Kiloo ApS*
   385 F. Supp. 3d 1022 (N.D. Cal. 2019 ............................................................... 22

*McKee v. Gen. Motors Co.*
   601 F. Supp. 3d 901 (W.D. Wash. 2022) ........................................................... 38

*Mikulsky v. Noom, Inc.*
   No. 3:23-cv-00285, 2023 WL 4567096 (S.D. Cal. July 17, 2023) ......................... 6

*Morgan v. Kimco Realty Corp.*
   No. 3:21-cv-00073, 2022 WL 716666 (D. Or. Mar. 10, 2022) ............................ 25

*In re Nexus 6P Prods. Liab. Litig.*
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................................. 8

*Noel v. Hall*
   568 F.3d 743 (9th Cir. 2009) ............................................................................. 15

*NovelPoster v. Javitch Canfield Grp.*
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ............................................................... 17

*O'Connor v. Uber Techs., Inc.*
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................................................. 24

*Park v. Thompson*
   851 F.3d 910 (9th Cir. 2017) .............................................................................. 6

*Patton v. Experian Data Corp.*
   No. 27-01559, 2018 WL 6190349 (C.D. Cal. Jan 23, 2018) ............................... 34

*Pena v. Gamestop, Inc.*
   No. 22-CV-1635, 2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) ........................... 15

*People v. Brock*
   143 Cal. App. 4th 1266 (2006) ............................................................................ 9

*People v. Myles*
   89 Cal. App. 5th 711 (2023) .............................................................................. 30

*People v. Williams*
   57 Cal. 4th 776 (2013) ...................................................................................... 30

*Perkins v. LinkedIn Corp.*
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ............................................................... 10

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

*Peterson v. Aaron's, Inc.*
    108 F. Supp. 3d 1352 (N.D. Ga. 2015) .................................................................. 32

*Pinterest, Inc. v. Pintrips, Inc.*
    140 F. Supp. 3d 997 (N.D. Cal. 2015) ..................................................................... 5

*Popa v. Harriet Carter Gifts, Inc.*
    52 F.4th 121 (3d Cir. 2022)........................................................................... 18, 20

*Popa v. PSP Grp., LLC*
    No. C23-0294, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023)............................... 7

*Powell v. Union Pac. R.R. Co.*
    864 F. Supp. 2d 949 (E.D. Cal. 2012) .................................................................. 16

*Purvis v. Healthcare*
    563 F. Supp. 3d 1360 (N.D. Ga. 2021) ................................................................. 21

*Quadrant Info. Servs., LLC v. LexisNexis Risk Sols., Inc.*
    No. C 11-6648, 2012 U.S. Dist. LEXIS 108597 (N.D. Cal. July 31, 2012) ........................ 33

*Rega v. State*
    No. CV 115-087, 2016 WL 1317693 (S.D. Ga. Apr. 1, 2016) ............................... 25

*Ribas v. Clark*
    38 Cal. 3d 355 (1985).......................................................................................... 16

*Rodriguez v. Google LLC*
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........................................................ 18

*Rogers v. Ulrich*
    52 Cal. App. 3d 894 (1975)............................................................................ 16, 18

*Ruiz v. Darigold, Inc.*
    No. C14-1283RSL, 2014 U.S. Dist. LEXIS 155384 (W.D. Wash. Oct. 31, 2014) ................ 9

*Ruiz v. Millennium Square Residential Ass'n*
    No. 1:19-cv-03765, 2022 WL 296200 (D.D.C. Feb. 1, 2022) ............................... 31

*Russo v. Microsoft Corp.*
    No. 4:20-cv-04818, 2021 WL 2688850 (N.D. Cal. June 30, 2021) ........................ 39

*Schuerholz v. Coker*
    No. 15-1990, 2016 WL 6433173 (D. Md. Oct. 31, 2016)...................................... 25

*Se. Wholesale Corp. v. Cox Communs. Hampton Rds., LLC*
    No. 2:12cv701, 2013 WL 2147478 (E.D. Va. May 13, 2013)............................... 35

*Silver v. Stripe Inc.*
    No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .............. 13

1
2
*Slinski v. Bank of Am., N.A.*
    981 F. Supp. 2d 19 (D.D.C. 2013) ..................................................................... 31

3
*Smith v. Facebook, Inc.*
    262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).................. 9, 11

4
5
*Smith v. Facebook, Inc.*
    745 F. App'x 8 (9th Cir. 2018).............................................................................. 10

6
7
*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016) ............................................................................................ 4, 5

8
*Sport Real Estate Mgmt., LLC v. Am. Zurich Ins. Co.*
    No. 21-cv-01183, 2022 WL 409483 (D. Md. Feb. 10, 2022) ................................. 23

9
10
*Sprewell v. Golden State Warriors*
    266 F.3d 979, 988 (9th Cir. 2001), *as amended* at 275 F.3d 1187 (9th Cir. 2001)
    .............................................................................................................. 4, 9, 12

11
12
*Spyre v. Ace Motor Acceptance Corp.*
    No. 423332-V, 2017 Md. Cir. Ct. LEXIS 7 (Montgomery Cnty. Cir. Ct. Sep. 28, 2017)...... 34

13
14
*Stewart v. Electrolux Home Prod., Inc.*
    No. 117CV01213, 2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) .......................... 26

15
*Straubmuller v. JetBlue Airways Corp.*
    No. 23-384, 2023 WL 5671615 (D. Md. Sept. 1, 2023) ......................................... 7

16
17
*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007).............................................................................. 3, 5

18
19
*T.K. v. Adobe Sys. Inc.*
    No. 17-cv-4595, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ........................... 27

20
*Ting v. AT&T*
    319 F.3d 1126 (9th Cir. 2003).............................................................................. 28

21
22
*TransUnion LLC v. Ramirez*
    141 S. Ct. 2190 (2021) ......................................................................................... 5

23
24
*United Fed'n of Churches, LLC v. Johnson*
    522 F. Supp. 3d 842 (W.D. Wash. 2021) ............................................................ 37

25
*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*
    355 F.3d 750 (5th Cir. 2004)............................................................................. 8, 12

26
27
*United States v. Ritchie*
    342 F.3d 903 (9th Cir. 2003)................................................................................ 9

28

*Van Hook v. Curry*
  No. C 06–3148, 2009 WL 773361 (N.D. Cal. Mar. 23, 2009) .......................................... 8, 12

*Vie v. Wachovia Bank, N.A.*
  No. 1:11-CV-3620, 2012 WL 1156387 (N.D. Ga. Apr. 6, 2012) .......................................... 9

*Weisbuch v. Cnty. of Los Angeles*
  119 F.3d 778 (9th Cir. 1997) ............................................................................................... 4

*White v. Soc. Sec. Admin.*
  111 F. Supp. 3d 1041 (N.D. Cal. 2015) ............................................................................. 22

*Williams v. What If Holdings, LLC*
  No. C 22-03780, 2022 WL 17869275 .................................................................................. 17

*Williamson v. Old Brogue, Inc.*
  232 Va. 350 (1986) ............................................................................................................ 25

*Willingham v. Glob. Payments, Inc.*
  2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ........................................................................ 31

*Winter v. Chevy Chase Bank*
  No. C 09-3187, 2009 WL 3517619 (N.D. Cal. Oct. 26, 2009) ............................................. 25

*Wintersteen v. Liberty Mut. Ins. Co.*
  No. 2:21-cv-00185, 2021 WL 4341958 (E.D. Wash. Sep. 23, 2021) .................................... 37

*Witcher v. Reid*
  70 Va. Cir. 415 (2006) ....................................................................................................... 25

*In re Yahoo Mail Litig.*
  308 F.R.D. 577 (N.D. Cal. 2015) .................................................................................. 19, 20

*In re Yahoo Mail Litig.*
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................................. 15

*Zheng-Lawson v. Toyota Motor Corp.*
  No. 17-cv-06591, 2018 WL 2298963 (N.D. Cal. May 21, 2018) ........................................... 8

<u>Statutes</u>

18 U.S.C. § 2510 ....................................................................................................................... 15

18 U.S.C. § 2511 ................................................................................................................... 9, 15

Cal. Civ. Code § 56.05 .............................................................................................................. 28

Cal. Civ. Code § 56.10 ........................................................................................................... 9, 28

Cal. Civ. Code § 56.11 .............................................................................................................. 29

SMRH:4861-0154-9956
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Civ. Code § 56.35 ........................................................................................... 29

Cal. Civ. Code § 1761 ............................................................................................ 27

Cal. Civ. Code § 1770 ............................................................................................ 27

Cal. Pen. Code § 496 .............................................................................................. 30

Cal. Pen. Code § 631 ........................................................................... 9, 15, 17, 18

Cal. Pen. Code § 632 ................................................................................................ 9

D.C. Code § 28-3904 .............................................................................................. 30

D.C. Code § 31-3426 .............................................................................................. 29

Ga. Code Ann. § 16-9-92 .................................................................................. 9, 31

Ga. Code Ann. § 16-9-93 ............................................................................. 9, 31, 32

Ga. Code Ann. § 24-12-1 ....................................................................................... 29

Ga. Code Ann. § 24-12-13 ..................................................................................... 29

Ga. Code Ann. § 33-39-3 ................................................................................. 32, 33

Ga. Code Ann. § 33-39-14 ............................................................................ 9, 32, 33

Md. Code Ann., Cts. & Jud. Proc. § 10-402 ........................................................... 9

Md. Code, Health-Gen. § 4-303 ............................................................................ 29

Md. Code, Health-Gen. § 4-309 ............................................................................ 29

Or. Rev. Stat. § 646.607 ......................................................................................... 34

Or. Rev. Stat. § 746.607 ......................................................................................... 29

Or. Rev. Stat. § 746.680 ......................................................................................... 29

Va. Code Ann. § 18.2-152.2 .................................................................................... 9

Va. Code Ann. § 18.2-152.4 ............................................................................... 9, 35

Va. Code Ann. § 32.1-127.1:03 ............................................................................. 29

Va. Code Ann. § 38.2-602 ...................................................................................... 36

Va. Code Ann. § 38.2-613 ................................................................................. 9, 36

Va. Code Ann. § 38.2-617 ...................................................................................... 29

SMRH:4861-0154-9956

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Wash. Rev. Code Ann. § 9.73.030 ........................................................................ 9, 37, 38

Wash. Rev. Code Ann. § 9.73.060 ................................................................................. 39

Wash. Rev. Code Ann. § 19.86.010 ............................................................................... 36

Wash. Rev. Code Ann. § 70.02.010 ............................................................................... 40

Wash. Rev. Code Ann. § 70.02.020 ........................................................................... 9, 39

Wash. Rev. Code Ann. § 70.02.170 ......................................................................... 29, 40

Other Authorities

Fed. R. Civ. Proc. 9 ....................................................................................................... 5

Fed. R. Civ. Proc. 10 ............................................................................................... 9, 12

Fed. R. Civ. Proc. 12 ..................................................................................................... 4

*Monitor*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/monitor ............. 13

Rest. (2d) of Torts § 652B, Comment b ....................................................................... 21

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     INTRODUCTION

Plaintiffs seek to impose liability on Defendants for the use of commonplace internet technologies. The crux of Plaintiffs' case is the assertion that Defendants installed code provided by Quantum Metric, Twitter, Adobe, Bing, Google, and Dynatrace (the "Vendors") on a website, https://healthy.kaiserpermanente.org (the "Site") and two mobile applications—the Kaiser Permanente App and the Kaiser Permanente Washington App (each an "App" and collectively the "Apps"). Dkt. 44, FAC ¶¶ 4–6, 75–212. The use of these technologies is widely understood, dutifully disclosed by Defendants, and regularly consented-to by users, like Plaintiffs. Unable to overcome this reality, Plaintiffs fail to properly plead any of their twenty-one causes of action. The FAC should be dismissed in its entirety.

As an initial matter, five out of the seven Plaintiffs—John Doe II, Jane Doe II, Jane Doe III, Jane Doe IV, and Jane Doe V ("Does II-V")— lack Article III standing because they have not alleged an injury in fact. As such, they have no standing to assert <u>any</u> claims, and all causes of action must be dismissed as to Does II-V under Federal Rule of Civil Procedure 12(b)(1).

Unable to plead specific allegations against Hospitals and TPMG, Plaintiffs instead resort to improper group pleading without any specific allegations as to each Defendant. This alone warrants dismissal. More importantly, the exhibits attached to the FAC contradict the allegations in the pleadings, and definitively establish that Plaintiffs have not (and cannot) properly plead any claims against the Hospitals or TPMG.

Further, all of Plaintiffs claims fail as a matter of law based on the Terms and Conditions and Privacy Statement that Plaintiffs attached as exhibits to the FAC (collectively, the "Site Terms and Conditions"). The Site Terms and Conditions, which Plaintiffs expressly admit they agreed to, puts any reasonable person on notice that the Site and Apps utilized third-party tracking technology that, among other things, allowed KFHP and third parties to collect personal information and information about users' activities on the Site, their click paths, and the information and pages that they viewed, including for analysis, monitoring, and advertising. By agreeing to the Site Terms and Conditions, Plaintiffs consented to the disclosure of their

1  information to the Vendors as set forth in the FAC.  Consent is a complete defense to Plaintiffs
2  claims.

3      All twenty-one causes of action also fail to satisfy Rule 12(b)(6)'s standard for numerous
4  other reasons.  These deficiencies include, among other flaws: (1) as a matter of law, Defendants
5  cannot eavesdrop on communications that they are a party to, (2) Plaintiffs have not alleged that
6  the Vendors made any independent or unauthorized use of their information, (3) Plaintiffs do not
7  plead that the information purportedly disclosed is individually identifiable, and (4) many of the
8  statutes upon which Plaintiffs base their claims either do not apply to Plaintiffs, do not apply to
9  Defendants, or do not apply to the communications or information allegedly disclosed to the
10 Vendors.  Accordingly, Defendants are entitled to dismissal of all of Plaintiffs' claims.  Because
11 amendment is futile as to many of these claims, the Court should also dismiss them with prejudice.

12 **II.     FACTUAL BACKGROUND[1]**

13     **A.     The Parties**

14     KFHP is a health care plan.  FAC ¶¶ 41–43.  Hospitals is a non-profit, public benefit
15 corporation that operates acute care hospitals and medical offices in California, Colorado, Hawaii,
16 Maryland, Virginia, Oregon, Washington, and the District of Columbia.  *Id.* ¶ 44.  TPMG is a
17 separate entity owned by other physician-owned entities.  *Id.* ¶ 45.  Enrollees in any of the health
18 plans offered by KFHP ("Kaiser Plan Members") have access to the hospitals and medical offices
19 operated by Hospitals, and in Northern California, receive care from TPMG providers.  *Id.* ¶ 42.
20 All seven named Plaintiffs are Kaiser Plan Members who each reside and received treatment in a
21 different state.  *Id.* ¶¶ 13–40, 51.  All purported Class Members are also Kaiser Plan Members.  *Id.*
22 ¶ 51.  According to the FAC, at one time or another, all the Plaintiffs have received medical
23 treatment through the Hospitals and/or TPMG.  *Id.* ¶¶ 13–40.

24     **B.     KFHP's Website and Apps**

25     KFHP owns and operates the Site, through which Kaiser Plan Members and the public can

26

27 _____
   [1] For purposes of this Motion only, Defendants set forth the facts as alleged in the FAC and the
28 documents attached to the FAC.  Defendants do not concede that Plaintiffs' factual allegations are
   accurate.

1    access various information and perform certain tasks.  FAC ¶ 52, Ex. 2 at 1.  The Site's publicly

2    accessible pages provide Kaiser Plan Members and the public with general information about

3    health care services, such as locations of doctors and medical facilities and information about

4    health conditions.  *Id.* ¶¶ 52–56.  The Site also includes a secure patient portal which can only be

5    accessed by Kaiser Plan Members (the "Portal").  *Id.* ¶ 57.  If they sign into the Portal, Kaiser Plan

6    Members can also perform certain tasks, such as scheduling appointments and reviewing

7    prescriptions or test results.  *Id.* ¶¶ 57, 59.  Use of the Site, including the Portal, is governed by the

8    Site Terms and Conditions.  *Id.* ¶¶ 331–32; Ex. 1 at 1, 13; Ex. 2 at 1.  To sign into the Portal,

9    Kaiser Plan Members are required to agree to the Site Terms and Conditions.  *Id.* ¶¶ 64, 66–67.[2]

10        KFHP also owns and operates the Apps, which can only be used by Kaiser Plan Members.

11   *Id.* ¶¶ 62–63.[3]  The Site Terms and Conditions also govern the use of the Apps.  *Id.* ¶¶ 331–32;

12   Ex. 1 at 1, 13; Ex. 2 at 1.  The relevant app store pages for the Apps[4] provide that use of the App is

13   governed by the Site Terms and Conditions.  *Id.* ¶¶ 65, 330–32.  To log-in to the Apps, Kaiser

14   Plan Members must agree to the Site Terms and Conditions.  *Id.*

15        Plaintiffs allege that each of them regularly uses the Site and Apps, and have signed into

16   the Portal.  *Id.* ¶¶ 15, 19, 23, 27, 31, 35, 39.  Each of the Plaintiffs also admits that they agreed to

17   the Site Terms and Conditions, which govern their use of the Site and Apps.  *Id.* ¶¶ 330–32.  As

18   the basis for their claims, Plaintiffs allege that code supplied by the Vendors was installed on the

19   Site and Apps and that the code permitted Vendors to eavesdrop on Plaintiffs' communications

20   with Defendants and causes the disclosure of certain information to the Vendors, such as details

21   concerning their interactions with the Site and Apps.  *Id.* ¶¶ 4–6, 75–212.

22   ///

23

24   [2] The Court may review and consider the contents of the Terms and Conditions and the Privacy
     Statement, attached as Exhibits 1 and 2, respectively to the FAC, in ruling on Defendants' motion

25   to dismiss.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (observing a court may
     consider "exhibits attached to the complaint" in ruling on a motion to dismiss).

26   [3] Kaiser Plan Members in California, Colorado, District of Columbia, Georgia, Hawaii, Maryland,
     Oregon, Virginia, and southwest Washington can use the Kaiser Permanente App.  FAC ¶ 63.

27   Kaiser Plan Members in Washington (outside of southwest Washington) can use the Kaiser
     Permanente Washington App.  *Id.*

28   [4] The Apps can be downloaded from the Apple App Store or Google Play Store.  *Id.*

III.    **LEGAL STANDARD**

Standing is "an issue of subject matter jurisdiction" and may be challenged under Rule 12(b)(1).  As a threshold matter, Plaintiffs bear the burden of demonstrating they have Article III standing, requiring that Plaintiffs have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Further, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring more than a "sheer possibility," "naked assertion," "labels and conclusions," or "a formulaic recitation of the elements").  Rather, the complaint must allege a factual basis for each element of each cause of action.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 687 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").[5]  Even where facts are acceptable as true, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on [her] . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).  Likewise, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Finally, the Court need not accept as true allegations that are contradicted by documents attached to the complaint or subject to judicial notice.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *as amended* at 275 F.3d 1187 (9th Cir. 2001).

Finally, the heightened standard of Rule 9(b) applies.  Even when a complaint does not explicitly make fraud allegations, if a claim is based on intentional misrepresentations, it must meet the heightened pleading requirements of Rule 9(b).  *Chevron Prods. Co. v. Advanced Corrosion Techs. & Training, LLC*, No. 20-cv-09095, 2021 WL 2156467, at *3 (N.D. Cal. May

---

[5] For clarity and ease of reading, Defendants have omitted all internal citations and quotations unless otherwise specifically noted.

27, 2021).[6]  Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," which includes an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  "This means that averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021).  Plaintiffs allege here that while Defendants made "assurances of privacy and confidentiality" in Site Terms and Conditions, Defendants, "contrary to [those] representation[s]," "aided, agreed with, employed, and/or conspired" with the Vendors to break these promises by intentionally installing code to disclose data to the Vendors and to allow them to "secretly spy on" Plaintiffs.  FAC ¶¶4-7, 337-342, 394, 420, 447-449, 517-527.  This sounds in fraud, rendering Plaintiffs claims subject to Rule 9(b).

## IV.    DOE PLAINTIFFS II-V LACK ARTICLE III STANDING

The FAC is devoid of allegations that any specific personal information of Does II-V was actually submitted to Defendants, or disclosed to or intercepted by the Vendors.  As a result, Does II-V lack Article III standing because they have not alleged an injury in fact.  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. 330 at 339.  A plaintiff does not satisfy the injury in fact requirement just because "a statute grants a person a statutory right and purports to authorize that person to sue to indicate that right." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).  "Article III standing requires a concrete injury even in the context of a statutory violation," and "under Article III, an injury in law is not an injury in fact." *Id.*  Accordingly, to establish Article III standing, each plaintiff must "identify the specific personal information" that he or she provided to Defendants that "implicates a protectable

---

[6] Defendants acknowledge that they cite to and rely on unpublished federal court decisions.  However, district courts can and regularly do cite to unpublished federal court decisions as persuasive authority.  *See Doe v. White*, 440 F. Supp. 3d 1074, 1083 (N.D. Cal. 2020) ("Unpublished district court decisions may also inform the court's analysis."); *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1026 n.5 (N.D. Cal. 2015) ("Unpublished Ninth Circuit decisions may be considered for their persuasive value.").

1   privacy interest" that was then intercepted by or improperly disclosed to a third party.  *Byars v.*

2   *Sterling Jewelers, Inc*., No. 5:22-cv-01456, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023)

3   (finding lack of Article III standing where "[p]laintiff does not identify any personal or sensitive

4   information she disclosed on the website").

5          Does II–V do not allege that any specific personal information was actually submitted to

6   Defendants or disclosed to any of the Vendors.  Instead of pleading any facts regarding the

7   interception of their personal information, the New Does attempt to piggyback onto John Doe I

8   and Jane Doe I's allegations, alleging only that their identified information was "similarly

9   intercepted" by each of the Vendors in the manner described for John Doe I and Jane Doe I.  FAC

10  ¶¶ 97, 132, 191.  As to the Kaiser Permanente App, Does II–V plead only "on information and

11  belief," and without the requisite factual support,[7] that their unidentified "communications" were

12  transmitted.  *Id.* ¶ 207.  As to the disclosure of information to Bing, Twitter, and Google, Does II–

13  V cannot even do that, pleading only "on information and belief" that "similar information" is

14  transmitted about *other* unnamed Class Members, not them.  *Id.* ¶ 170.

15         Does II–V's reliance on the bare allegation that Defendants allowed third parties to

16  "intercept, collect, read, attempt to read, and/or learn the contents or meaning of the contents of

17  [their] patient status, identifying information, personal and sensitive health information, and

18  confidential communications with [his or her] health care providers" is misplaced.  *Id.* ¶¶ 20, 28,

19  32, 36, 40.  Since July 2023, four district courts in the Ninth Circuit have dismissed cases for

20  failure to establish Article III standing for the exact pleading defect present in this case—plaintiffs

21  relied on conclusory allegations that unidentified "personal information" was disclosed to or

22  intercepted by a third party and failed to allege that *specific* personal information in which they

23  had a protectable privacy interest was inappropriately disclosed or intercepted.  *See, e.g.*, *Mikulsky*

24  *v. Noom, Inc.*, No. 3:23-cv-00285, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) (dismissing

25

26  ───────────────
    [7] Allegations based on information and belief are only permitted "where the facts are peculiarly

27  within the possession and control of the defendant or where the belief is based on factual
    information that makes the inference of culpability plausible." *Park v. Thompson*, 851 F.3d 910,

28  928 (9th Cir. 2017).  Plaintiffs' allegations regarding information allegedly disclosed by
    Defendants relating to John Doe and Jane Doe demonstrate that this standard is not met here.

complaint where "Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information"); *Cousin v. Sharp Healthcare*, No. 22-CV-2040, 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023) (dismissing claims where plaintiffs provided no facts as to what activities each Plaintiff engaged in on the website and what information each Plaintiff provided that was purportedly intercepted); *Lightoller v. JetBlue Airways Corp.*, No. 23-cv-00361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (finding lack of standing where plaintiff did not allege specific personal information that she provided to the website which was then disclosed to a third-party); *Popa v. PSP Grp., LLC*, No. C23-0294, 2023 WL 7001456, at *5 (W.D. Wash. Oct. 24, 2023) (dismissing for lack of standing where plaintiff "does not allege that she entered any personally identifiable information into PSP's website, that such information was captured by Defendants, or that Defendants were able to connect the information Clarity collected to her identity").  Three district courts outside of the Ninth circuit have dismissed claims for lack of Article III standing for the exact same reason.  *Adams v. PSP Grp., LLC*, 2023 WL 5951784, at *7–8 (E.D. Mo. Sept. 13, 2023) (no standing where the complaint did not allege that plaintiff disclosed any personal information while interacting with defendant's website); *Straubmuller v. JetBlue Airways Corp.*, No. 23-384, 2023 WL 5671615, at *4 (D. Md. Sept. 1, 2023) (no standing where "the Complaint says nothing about the kinds of interactions Plaintiff had with Defendant's website, much less the specific kinds of captured personal information implicating a substantive privacy interest"); *Cook v. GameStop, Inc.*, No. 2:22-cv-1292, 2023 WL 5529772, at *4 (W.D. Pa. Aug. 28, 2023) (no concrete harm where defendant intercepted website usage data including mouse movements, clicks, keystrokes URLs of web pages visited, and other electronic communications).

The same result is dictated here.  Due to their failure to establish injury in fact, and therefore Article III standing, all claims asserted by Does II–V must be dismissed.  Further, the eleventh through seventeenth causes of action must be dismissed entirely because they are brought solely by Does II-V.  FAC ¶¶ 423, 432, 440, 451, 461, 483, 491.

## V.      ALL CLAIMS AGAINST HOSPITALS AND TPMG MUST BE DISMISSED

The claims against Hospitals and TPMG should be dismissed in their entirety because the FAC fails to assert any specific allegations against them and instead relies on impermissible group pleading.  The FAC is based on the alleged disclosure of Plaintiffs' personal information that ensued from their use of the Site and/or Apps.  *See* FAC ¶¶ 1–250.  The Site Terms and Conditions state that the Site and Apps are owned and operated exclusively by KFHP.  Plaintiffs have not (and cannot) allege anything to the contrary.

As an initial matter, Plaintiffs conflate all three defendants and make generalized allegations regarding their collective actions.  This is insufficient, as Plaintiffs are required to allege specific facts as to *each* defendant.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole."); *Zheng-Lawson v. Toyota Motor Corp.*, No. 17-cv-06591, 2018 WL 2298963, at *2 (N.D. Cal. May 21, 2018) (dismissing complaint where plaintiffs sued three separate Toyota entities, but "lump[ed] all three entities together, alleging throughout the pleading that 'Toyota' and 'Defendants' made the actionable misrepresentations").  This deficiency alone warrants dismissal.

Plaintiffs further admit that they agreed to the Site Terms and Conditions, FAC ¶¶ 330–32, 344–45, which expressly state that the Site and Apps are exclusively owned and operated by KFHP.  *Id.* ¶¶ 330–32, 344–45; Ex. 1 at 1, 13; Ex. 2. at 1.  The Terms and Conditions states that "Kaiser Permanente provides a website and a mobile app" and that "Kaiser Permanente" is a registered mark of KFHP.  *Id.*, Ex. 1 at 1, 13.  Similarly, the Privacy Statement expressly states: "This Privacy Statement applies to the Site [defined to include the Site and Apps], which is owned and operated by Kaiser Foundation Health Plan, Inc."  *Id.*, Ex. 2 at 1.  "When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings."  *Van Hook v. Curry*, No. C 06–3148, 2009 WL 773361, at *3 (N.D. Cal. Mar. 23, 2009); *accord United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 750, 754 (5th Cir. 2004) (holding the contents of exhibit attached to pleading trumps inconsistent allegations in that pleading); *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir 2007) (same); *Crenshaw v. Lister*, 556 F.3d

1283, 1292 (11th Cir. Feb. 6, 2009) (same).

Plaintiffs cannot escape the clear text of the documents they attached to the FAC which establish that their claims against Hospitals and TPMG must be dismissed.  *See* Fed. R. Civ. Proc. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *as amended* at 275 F.3d 1187 (9th Cir. 2001) (granting motion to dismiss where attachments to the complaint proved fatal to claims); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (courts may rely on documents attached to the complaint when ruling on a motion to dismiss); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989) (same).  Because Plaintiffs' claims are contradicted by the plain language of the attached documents, the court should dismiss Hospitals and TPMG with prejudice.

## VI.   PLAINTIFFS CONSENTED TO THE DISCLOSURE OF THE INFORMATION

Consent is a complete defense to all of Plaintiffs' claims.[8]  While there "may be subtle

---

[8] *See, e.g.*, 18 U.S.C. § 2511(2)(d) (consent is a complete defense to wiretapping); Cal. Penal Code §§ 631(a), 632(a) (same); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955–56 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (consent bars claims for intrusion upon seclusion and invasion of privacy); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 n.3 (N.D. Cal. 2021) (consent is a complete defense to breach of contract); *Augustine v. FIA Card Servs., N.A.*, 485 F. Supp. 2d 1172, 1174-75 (E.D. Cal. 2007) (dismissing claim under CLRA where allegedly unfair and deceptive business practice was expressly disclosed to Plaintiff in contractual agreement); *People v. Brock*, 143 Cal. App. 4th 1266, 1274 (2006) (consent is a defense to larceny); Cal. Civ. Code § 56.10(a) (CMIA requires covered entities to "obtain[] an authorization" from a patient or enrollee of a covered entity); *Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 27 (D.D.C. 2012) (dismissing claim under DCCPPA where plaintiff failed to adequately plead existence of a misrepresentation); *Vie v. Wachovia Bank, N.A.*, No. 1:11-CV-3620, 2012 WL 1156387, at *3 (N.D. Ga. Apr. 6, 2012) (dismissing UDTPA claim where plaintiff failed to establish any misleading statement); Ga. Code Ann. §§ 16-9-92(18), 16-9-93(a)–(c) (requiring actions be taken "without authority" to be actionable); Ga. Code Ann. § 33-39-14 (permitting disclosure that has been authorized); Md. Code Ann., Cts. & Jud. Proc. § 10-402(c)(3) (permitting interception with consent); *Ruiz v. Darigold, Inc.*, No. C14-1283RSL, 2014 U.S. Dist. LEXIS 155384, at *20 (W.D. Wash. Oct. 31, 2014) (dismissing OUTPA claim for failure to  allege a misrepresentation or omission that amounted to unfair or deceptive conduct); Va. Code Ann. §§ 18.2-152.2, 18.2-152.4 (no computer trespass if person acted with authority); Va. Code Ann. § 38.2-613(A) (VIIPPA permits disclosure of medical information with an authorization); *Block v. Snohomish Cnty.*, No. C18-1048, 2019 WL 954809, at *6 (W.D. Wash. Feb. 27, 2019) (dismissing WCPA claim where plaintiff failed to adequately plead deceptive statements); Wa. Rev. Code Ann. § 9.73.030(1)(A) (WPA) (consent of all the participants in the communication is a complete defense); Wash. Rev. Code Ann. § 70.02.020 (disclosure permitted when authorized by patient).

differences" among the consent doctrines applicable to each claim, the question is "essentially the same": would a reasonable user who viewed the Site Terms and Conditions have understood that Defendants were disclosing the information at issue?  *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014) (dismissing claims based on consent); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018) (same); *Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860, 2021 WL 940319, at *4 (N.D. Cal. Mar. 9, 2021) (same).

      Here, by agreeing to the Site Terms and Conditions, Plaintiffs affirmatively consented to the disclosure of their information to the Vendors as set forth in the FAC.  The disclosures in the Site Terms and Conditions "explicitly notify users of the practice at issue." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (quotes omitted); *see also Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847–48 (N.D. Cal. 2014).  The Site Terms and Conditions includes the Privacy Statement that describes how KFHP "collects and uses the personal information you provide on, and other information that is collected from your use of the Site."[9]  The Privacy Statement makes clear that "[p]ersonal information means information that is individually identifiable."  FAC, Ex. 2 at 2.  The Privacy Statement further discloses that "[w]e will use and disclose your personal information as stated in this Privacy Statement." *Id.* at 3.  In the section titled "Collecting and using and disclosing personal information," the Privacy Statement also explains the exact conduct alleged here:

- Section 3 explains that Kaiser **and third parties** place cookies and similar technologies that, among other things, track users' navigation path and "click path" through the website: "We **and our service providers** <u>may</u> place Internet 'cookies' or similar technologies (JavaScript, HTML5, ETag) on the computer hard drives of visitors to the Site. Information we obtain helps us to tailor our Site to be more helpful and efficient for our visitors. . . . For example, we are able to see the navigation path taken by users, . . . We use two types of cookies, "session" cookies and "persistent" cookies, along with other similar technologies. . . . We use session cookies to help customize your experience on our Site, maintain your signed-on status as you navigate through our features, **and to track your 'click path' through our web pages or mobile screens** . . . ."  FAC, Ex. 2 at 5–6 (emphasis added).

- Section 5 explains: "We have contracted **a third party ad network** to manage our advertising on other sites.  *Our ad network service provider uses cookies, Web beacons, and other tracking technologies* **to collect information about your activities on this and**

---

[9] The term "Site" is defined to include the Website and Apps.  FAC, Ex. 2 at 1.

1

*other websites and to then provide you with KP advertising on other websites*. We <u>may</u> also place a persistent third-party cookie (provided by Google) on your hard drive if you sign on to kp.org.  This cookie will prevent kp.org members from seeing advertising that is targeted towards people who are not members of Kaiser Permanente's health plan, when searching on Google."  *Id.*, Ex. 2 at 6–7 (emphasis added).

2

3

4

- Section 13 explains: "We may disclose personal information to any person performing . . . operational or other services for us. . . . We may also disclose your personal information to third parties who provide services on our behalf to help with our business activities… These companies are authorized to use your personal information only as necessary to provide these services to us…these companies must abide by our data privacy and security requirements, and are not allowed to use your personal information they receive from us for any other purpose.  *These services <u>may</u> include: sending marketing communications . . . conducting research analysis*."  *Id.*, Ex. 2 at 9 (emphasis added).

5

6

7

8

9

10  The Privacy Statement thus puts any reasonable person on notice that KFHP utilized its own and

11  third-party tracking technology on the Site that, among other things, allowed KFHP *and third*

12  *parties* to collect personal information and information about users' activities on the Site, their

13  click paths, and the information and pages that they viewed, including for analysis, monitoring,

14  and advertising.  This is the exact information that Plaintiffs now claim they did not know would

15  be disclosed to third parties.[10]  *See, e.g.*, *id.* ¶¶ 86–96, 115–19, 122–31, 146–69, 171–89, 200–06,

16  209–11.  Given the disclosures in the Privacy Statement, Plaintiffs cannot plausibly claim that

17  they did not consent to the collection of their personal information by, and disclosure of their

18  personal information to, the Vendors as described in the FAC.  Accordingly, Plaintiffs claims must

19  be dismissed with prejudice.  *Smith*, 745 F. App'x at 8–9 ("Plaintiffs do not dispute that their

20  acceptance of Facebook's Terms and Policies constitutes a valid contract. . . . A reasonable person

21  viewing these disclosures would understand that Facebook maintains the practices of (a) collecting

22  its users' data from third-party sites and (b) later using the data for advertising purposes.  Knowing

23  authorization of the practice constitutes Plaintiffs' consent."); *Javier v. Assurance IQ, LLC*, 2021

24  WL 940319, at *2–3 (N.D. Cal. Mar. 9, 2021) (dismissing claims because plaintiffs consented to

25

---

[10] Moreover, the only information that the FAC *actually* alleges was disclosed to third parties (as opposed to general allegations about how the technology functions or what *could* be transmitted) is information about John Doe I and Jane Doe I's activities on the Site or in the Apps—namely, information about the websites those two Plaintiffs viewed, the links they clicked, or the search terms they input into the site.  *See, e.g.*, FAC ¶¶ 86–96, 115–19, 122–31, 146–69, 171–89, 200–06, 209–11.)

26

27

28

SMRH:4861-0154-9956

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    data collection described in privacy policy).

2          Plaintiffs assert they did not consent to the collection and disclosure of their personal

3    information by repeatedly misquoting the Privacy Statement.  Plaintiffs cannot defeat Defendants'

4    motion to dismiss by relying on allegations that are contradicted by the FAC's own exhibits.  *See*

5    Fed. R. Civ. Proc. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part

6    of the pleading for all purposes"); *Sprewell*, 266 F.3d at 988 (granting motion to dismiss where

7    attachments to the complaint proved fatal to claims); *Van Hook*, 2009 WL 773361, at *3 (holding

8    the contents of exhibit attached to pleading trumps inconsistent allegations in that pleading);

9    *United States ex rel. Riley*, 355 F.3d at 754 (same); *Griffin Industries, Inc.*, 496 F.3d at 1206

10   (same); *Crenshaw*, 556 F.3d at 1292 (same); *see also* see *Bard Water Dist. v. James Davey &*

11   *Assocs.*, No. 13-cv-2727, 2014 WL 1796709, at *4 (S.D. Cal. May 5, 2014) (dismissing complaint

12   based on document attached to complaint).  The Privacy Statement trumps Plaintiffs

13   misstatements:

14   - Plaintiffs' claim that the Privacy Statement "assures Kaiser Plan Members" that "all data"
15     collected is "collected on an aggregate basis, which means that no personally identifiable
       information is associated with the data," FAC ¶ 67, rests on self-serving partial quotations
16     from the Privacy Statement that ignore that the Privacy Statement states that KFHP
       "routinely gathers data on Site activity, such as how many people visit the Site, the web
17     pages or mobile screens they visit, where they come from, how long they stay, etc." and
       that that data "is collected on an aggregate basis."  *Id.*, Ex. 2 at 3.  It does not state that "all
18     data" is collected on an aggregate basis.

19   - Plaintiffs' claim that KFHP does not disclose that cookies on its site are being used for
20     marketing purposes again isolates single sentences while ignoring the disclosures in the
       rest of the collection and use of personal information section of the Privacy Statement.  *Id.*
21     ¶ 68.  The Privacy Statement never claims that Kaiser "only" collects personal information
       to tailor the Site.  *Id.*  It discloses that Kaiser "*use[s]* session cookies to help customize
22     your experience on our Site, maintain your signed-on status as you navigate through our
       features, *and to track your 'click path'* through our web pages or mobile screens" and
23     moreover, that third parties set cookies and use other tracking technology "to collect
       information about your activities on this and other websites" for advertising purposes.  *Id.*,
24     Ex. 2 at 6–7.  Kaiser also explains that it discloses personal information to third parties for
25     marketing and analysis purposes.  *Id.*, Ex. 2 at 9.

26   - Plaintiffs take issue with KFHP's explanation of what a cookie is—a unique identifier—
27     claiming it fails to disclose that the cookie transmits information to third parties.  *Id.* ¶ 69.
       This assertion is nonsensical.  What a cookie is, and what information it collects and
28     transmits, are two separate issues.  The information collected and transmitted by cookies
       are clearly disclosed.  *Id.*, Ex. 2 at 5–7, 9.

- Plaintiffs' claim that KFHP falsely claims it "does not collect any personal health information." *Id.* ¶ 70. This is yet more misquoting. In reality, the Privacy Statement states "We do not collect any personal health information *with a Web beacon*, and do not link Web beacons with any other personal health information you've given us." *Id.*, Ex. 2 at 6. Of course Kaiser and its website collect health information, as also explained by the Privacy Statement. *Id.*, Ex. 2 at 4.

- Plaintiffs also cannot manufacture lack of consent by rhetorically describing Kaiser as having "aided, agreed with, employed, and/or conspired with" with third parties, *Id.* ¶ 71, and then claim Kaiser purportedly "did not disclose" that it did *those things*.

- The Privacy Statement also does *not* "expressly and impliedly promise[] Kaiser Plan Members that it will maintain the privacy and confidentiality of the information shared, and the communications engaged in, on the Site, Portal, and mobile applications, and that such information and communications will not be disclosed to or tracked by third parties." *Id.* ¶ 73. The Privacy Statement does the exact opposite—explicitly stating that personal information will be collected by, and disclosed to, third parties, including for tracking, analysis, and advertising. *E.g.*, *id.*, Ex. 2 at 5–7, 9.

Plaintiffs also claim other disclosures in the Privacy Statement were lacking. None of these assertions are accurate. Nor do they obviate Plaintiffs' consent to the Privacy Statement:

- Plaintiffs claim the "third parties" are not defined in the Privacy Statement. *Id.* ¶ 216. But the fact that *third parties* will collect and receive information *is* disclosed. Plaintiffs can cite no requirement that Kaiser disclose the specific third parties by name.

- Plaintiffs claim "disclosing that others may monitor certain information is not the same as disclosing that others do in fact collect user data in real time." *Id.* ¶ 217. The Privacy Statement discloses that third parties may use tracking technology to monitor Plaintiffs' activities on the website and their click stream. Even if there were real-time collection and transmission—which there is not— the word "monitor" clearly encompasses "real time" collection.[11] Moreover, the "use of the word 'may,' as opposed to 'will,' in the privacy policy *does not make it such that the policy gives insufficient notice of the alleged conduct*. Privacy policies often make disclosures by stating what companies 'may' do, and such disclosures have been upheld time and again by courts as sufficient to establish consent." *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (emphasis added).[12]

---

[11] *Monitor*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/monitor ("To watch, keep track of, or check usually for a special purpose.")

[12] *See also Cooper v. Slice Techs., Inc.*, No. 17-cv-7102, 2018 WL 2727888, at *4 (S.D.N.Y. June 6, 2018) ("Plaintiffs argue that the privacy policy is misleading because it says only that UnrollMe may sell consumer data, not that it would do so. But this distinction is without difference. If I ask you if I may enter your house, and you say yes, you have given me permission to enter your house."); *Javier*, 2021 WL 940319, at *4 (rejecting argument that privacy policy states that "Assurance 'may' use third party monitors" as "policy clearly indicates that Assurance tracks

SMRH:4861-0154-9956

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

- Plaintiffs allege Kaiser "falsely claims that information about Kaiser Plan Members' health history is not being transmitted." FAC ¶ 218. But the Privacy Statement does not say this and Plaintiffs do not point to anywhere that it does.

- Plaintiffs claim that alerting users to the possible use of "cookies . . . and other tracking technologies" does not put Kaiser Plan Members on notice of the use of technology like Session Replay, and other technology used by the Third Party Wiretappers, which, unlike first party cookies, (1) communicate information to an external server as a user navigates a website; (2) track users across devices; (3) are not easily disabled by users; and/or (4) essentially creates a recording of all the information that visitors provide or receive from Kaiser Permanente on the Site." *Id.* ¶ 219. As explained above, the Privacy Statement discloses these things, including third parties' ability to set cookies and collect information about "click path" and activity on the website including for marketing purposes.

- Plaintiffs claim that disclosures to third parties "are not made only for the purpose of tailoring the Kaiser Permanente website and mobile applications . . . but are instead used for marketing purposes, including to produce targeted advertising for third parties." *Id.* ¶ 220. Here again, the Privacy Statement explicitly explains that third parties collect information for advertising, and that Kaiser discloses information to third parties for marketing. *Id.*, Ex. 2 at 6–7, 9.

- Plaintiffs allege that Section 3 of the Privacy Statement "does not disclose that Kaiser Permanente sends Plaintiffs and Class Members' information and communications to the Third Party Wiretappers." *Id.* ¶¶ 214–15. However, as explained above, the Privacy Statement discloses that third parties use tracking technology to collect information and that Kaiser discloses information to third parties. *E.g.*, Ex. 2 at 5–7, 9.

In sum, the Privacy Statement expressly disclosed all the conduct upon which Plaintiffs' claims are based. And Plaintiffs admit they agreed to the Privacy Statement. As a result— Plaintiffs' claims necessarily fail and should be dismissed with prejudice.

## VII.    ALL CLAIMS AS TO ALL DEFENDANTS FAIL FOR ADDITIONAL REASONS

### A.    Claim 1: The Federal Wiretap Act

Plaintiffs allege that Defendants violated the Federal Wiretap Act by: (i) intercepting and redirecting Plaintiffs' communications on the Site or Apps to the Vendors; and (ii) disclosing or divulging the communications to the Vendors. FAC ¶¶ 276–84. Under either of these theories, Plaintiffs' claim fails as a matter of law and must be dismissed with prejudice.

First, Defendants cannot be held liable for interception/redirection because they are a party

---

activity on its website and may use third party vendors to do so"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 792–93 (N.D. Cal. 2019) (terms "flagged for users the possibility that other people 'may share' their information 'with applications'").

to the communications.[13]  Section 2511(2)(d) of the Wiretap Act states that it is not unlawful "to intercept a wire, oral, or electronic communication *where such person is a party to the communication*."  18 U.S.C. § 2511(2)(d) (emphasis added).  Here, Plaintiffs plainly allege that Defendants are a party to the communications, as all communications are alleged to have been transmitted from Plaintiffs to Defendants through the Site or Apps.  FAC ¶¶ 275–80.  Accordingly, Defendants cannot be held liable for "intercepting" communications to or from them. *See Pena v. Gamestop, Inc.*, No. 22-CV-1635, 2023 WL 3170047, at *4 (S.D. Cal. Apr. 27, 2023) (finding website operator "squarely within the party exception and barring Defendant's liability under the [Federal Wiretap Act]"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001) (finding website owners are parties to the digital communications sent by users of their website).

Second, assuming disclosure of communications occurred, Plaintiffs' claim still fails because the consent of one party to the communication is a complete defense.  18 U.S.C. § 2511(2)(d).  Plaintiffs allege that Defendants consented to the disclosure.  FAC ¶¶ 275–80.  As an intended recipient of Plaintiffs' communications, Defendants' consent to the disclosure of the communications is a complete defense to the Wiretap Act claim.  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim.").

**B.    Claim 2: California Invasion of Privacy Act Claim ("CIPA")**

Plaintiffs' second claim, for violation of CIPA, Cal. Pen. Code § 631, is based on the same allegations as the Wiretap Act claim.  It, likewise, fails and should be dismissed with prejudice.

**1.    Defendants Cannot Intercept Their Own Communications**

As with the Wiretap Act, Defendants cannot "intercept" their own communications under CIPA.  A party to a communication cannot be held liable under section 631 because "only a third

---

[13] The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  An "acquisition" occurs "when the contents of a wire communication are captured *or redirected* in any way."  *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (emphasis added).

party can listen secretly to a private conversation." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("It is never a secret to one party to a conversation that the other party is listening to the conversation. . . ."); *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) ("Section 631 was aimed at . . . eavesdropping, or the secret monitoring of conversations by third parties."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021); *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) ("Published cases are in accord that Section 631 applies only to third parties and not participants.") (collecting cases). Plaintiffs allege here that they communicated with Defendants through the Site and Apps. FAC ¶¶ 275–80. As participants in the communications, Defendants cannot intercept them.

There is also no liability under CIPA if the third party "intercepting" the communication is a tool, agent, or extension of the website operator. In such case, the service provider is considered a party, not a third-party eavesdropper. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-3 3 (N.D. Cal. 2021) (finding service provider was a party, not a third party where it "provide[d] a tool . . . that allow[ed] [the defendant] to record and analyze its own data in aid of [its] business"). Here, Plaintiffs allege that the Vendors provided code to Defendants that they used for recording and tracking user interactions. FAC ¶¶ 4, 74–77, 83, 108–114, 134–42. For example, the FAC alleges that "[s]ubject to the terms of the Agreement, Quantum is provided a limited license to Customer Data for the purpose of providing the Quantum Service, including the license to collect, process, store and display Customer Data to the extent appropriate in providing the Quantum Service *to Customer*," *id.* ¶ 83 n.17 (emphasis added), and "Twitter summarizes how partners, *such as Kaiser Permanente, can use* its analytic tools for marketing" *Id.* ¶ 142 (emphasis added).

Plaintiffs do not allege any facts that would remove the Vendors from CIPA's party exemption. To do so, Plaintiffs must plead facts showing the Vendors "acted sufficiently independent" from Defendants "as to constitute an unannounced auditor under California law." *Licea v. Cinmar*, No. CV 22-6454, 2023 WL 2415592, at *9 (C.D. Cal. March 7, 2023); *Licea v. Am. Eagle Outfitters*, No. CV 22-1702, 2023 WL 2469630, at *8 (C.D. Cal. March 7, 2023); *Byars v. Hot Topic, Inc.*, No. CV 22-1652, 2023 WL 2026994, at *10 (C.D. Cal. Feb. 14, 2023);

1    *Graham*, 533 F. Supp. 3d at 832.  A Section 631(a) claim fails where the vendor "analyzed or used

2    the data *on behalf of* or *in tangent with*" the website owner.  *Cinmar,* 2023 WL 2415592, at *9

3    (emphasis added); *see also Graham*, 533 F. Supp. 3d at 832 (finding vendor was not a third party

4    where no facts indicated vendor used data itself); *Williams v. What If Holdings, LLC*, No. C 22-

5    03780, 2022 WL 17869275, at *3–4 (same); *Byars*, 2023 WL 2026994, at *10 ("Without alleging

6    a single specific fact in support of the contention that the third party 'harvest[s] data for financial

7    gain,' the allegation is a mere conclusion disregarded under *Twombly* and *Iqbal*.").  Plaintiffs do

8    not allege any ***facts*** showing that Vendors actually ***independently used Plaintiffs' data or***

9    ***communications*** for any purpose other than providing services to Defendants.

10                    **2.**        **Sharing Communications with Third Parties Is Not an Interception**

11                   Sharing communications is not an "interception" under section 631.  To state a section 631

12   claim, Plaintiffs must allege that their communications were intercepted "in transit or passing over

13   a wire, line, or cable."  Cal. Penal Code § 631(a).  Courts in the Ninth Circuit have interpreted the

14   "in transit" requirement narrowly.  Specifically, for an electronic communication to be

15   "intercepted," it must have been "acquired during transmission, not while it is in electronic

16   storage."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (assessing the

17   federal Wiretap Act); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal.

18   2014) (applying *Konop's* analysis of the federal wiretap Act to a CIPA claim).  Even if the storage

19   phase is "transitory and lasts only a few seconds, it is still considered 'electronic storage'" because

20   only the acquisition of a communication "contemporaneous with transmission" falls within the

21   scope of the statute.  *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153 (C.D.

22   Cal. 2007) (citing *Konop*, 302 F.3d at 879).  Thus, "the crucial question under § 631(a)[] . . . is

23   whether [the plaintiff] has plausibly alleged that [the defendant] read one of his communications

24   while it was still in transit, i.e., before it reached its intended recipient."  *Mastel v. Miniclip SA*,

25   549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021).  A section 631 claim necessarily fails if it is based

26   on sharing of communications *after* they were received.  *See, e.g., id*. (dismissing CIPA claim on

27   the basis that acquiring communications from electronic storage does not violate law);

28   *NovelPoster*, 140 F. Supp. 3d at 953–54 (dismissing CIPA claim because "subsequent reading or

1    forwarding of those emails by the defendants does not constitute an illegal 'interception'").

2         This is precisely the case here.  Plaintiffs repeatedly allege that Defendants "disclosed[]

3    and sent" data to third parties.  FAC ¶ 89, 133, 192, 208, 277.  Courts consistently reject this

4    theory.  *See, e.g.*, *Graham*, 533 F. Supp. 3d at 833 ("[S]haring a record is not eavesdropping"

5    under Section 631); *Rogers*, 52 Cal. App. 3d at 898 (dismissing § 631 claim where the defendant

6    shared a recording of his conversation with plaintiff with a third party); *Rodriguez v. Google LLC*,

7    2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) (dismissing complaint without leave to amend

8    where plaintiff's "theory is essentially one of recording *and then* transmission, not interception"

9    (emphasis added)).

10         **3.        The Non-California Plaintiffs Cannot Assert CIPA Claims**

11         The CIPA claim of the six plaintiffs who reside outside California should be dismissed

12    because they fail to allege (and cannot allege) an interception in California, and even if they did,

13    they cannot assert a CIPA claim under choice of law principles.  First, with respect to the merits,

14    as an element of their Section 631 claim, non-California Plaintiffs must allege that the contents of

15    their communications were intercepted while in transit in California.  Cal. Penal Code § 631(a)

16    (requiring interception while a communication "is in transit . . . or is being sent from, or received

17    at any place within this state").  Plaintiffs' only allegation as to where the third parties'

18    "interception" allegedly occurred is a bare recital of the text of Section 631.  FAC ¶ 299.[14]  Non-

19    California Plaintiffs provide no facts to support this conclusory allegation, and since they do not

20    reside in California there is no reason that this conclusory allegation is plausible.  Rather, the

21    interception would occur on Non-California Plaintiffs' devices, which are located where they

22    reside, outside California.  *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022)

23    (holding that, with respect to the same type of technology at issue here, the "[vendor] intercepted

24    [plaintiff's] communications at the point where it routed those communications to its own servers.

25    ***And that was at [plaintiff's] browser, not where the signals were received at [vendor's] servers.***"

26

27    ─────────────────────────
[14]  Plaintiffs' allegation concerning Kaiser's location in California, FAC ¶ 293, is irrelevant
28    because Plaintiffs allege that the "Third Party Wiretappers" did the interception, not Kaiser.  At
      any rate, as shown below, the interception occurred where Plaintiffs reside.

1  (emphasis added)).  Accordingly, non-California Plaintiffs cannot meet the element of Section 631

2  requiring interception in California.

3        Even if they could adequately allege a CIPA claim, choice of law principles still bar non-

4  California Plaintiffs from asserting such claim.  As a preliminary matter, the Due Process Clause

5  "prohibits application of a state law unless that state has a significant contact or significant

6  aggregation of contacts" with the claims of each Plaintiff.  *Allstate Ins. Co. v. Hague*, 449 U.S.

7  302, 308 (1981).  Furthermore, "California law embodies a presumption against the extraterritorial

8  application of its statutes."  *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126

9  (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004).  Non-California Plaintiffs have not

10  established that California has any significant connection to their claims that the third party

11  Vendors (with unspecified locations) "intercepted" their communications in their home states.

12  They do not meet even the Due Process minimum standard for making a claim under California

13  law.  Even if non-California Plaintiffs met the forgoing standard, the Court must then undertake a

14  choice of law analysis:  "First, the court must determine whether the foreign law differs from

15  California law.  Second, . . . whether both states have a legitimate interest in applying their own

16  law to the case at hand.  Third, [if] both states have a legitimate interest . . . [the Court] applies the

17  law of the state whose interest would be more impaired if its law were not applied."  *McCann v.*

18  *Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010); *Mazza v. Am. Honda Motor Co.*, 666 F.3d

19  581, 590 (9th Cir. 2012) (same).

20        First, "there are material differences between CIPA and the wiretapping statutes of the

21  other 49 states."  *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) (summarizing

22  differences that "spell the difference between the success and failure of a claim."); *James v. Walt*

23  *Disney Co.*, No. 23-cv-02500, 2023 WL 7392285, at *17 (N.D. Cal. Nov. 8, 2023) (Chen, J.)

24  (same).

25        Second and third, non-California Plaintiffs' home states have an interest in having their

26  laws applied, and that interest would be most impaired by not having their laws applied.  Non-

27  California Plaintiffs' home states have a strong interest in determining the appropriate balance for

28  their citizens between concerns for privacy as opposed to concerns for free speech and creating a

1    favorable business environment.  *In re Yahoo Mail Litig.*, 308 F.R.D. at 605.  By contrast,

2    "California has a comparatively lesser interest in applying CIPA to non-residents in the statute

3    itself.  Plaintiffs fail to acknowledge that in enacting CIPA, the California legislature specifically

4    stated that its intent was to 'protect the right of privacy of the people of this state.'"  *Id.* at 604

5    (quoting Cal. Penal Code § 630).  "This statement of intent 'lie[s] at the heart of virtually all the

6    decisions construing [CIPA].'"  *Id.* (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)).  Thus,

7    California's interest is weak.  Moreover, to the extent that "the place of the wrong" (the state

8    where the last event necessary for liability occurred) provides an important factor to consider, that

9    place is the non-California Plaintiffs' *home states*, not California.  *See Popa*, 52 F.4th at 131

10   (interception occurs on plaintiffs' browsers).

11        Accordingly, non-California Plaintiffs cannot assert a CIPA claim.  For the same reasons

12   non-California class members cannot bring CIPA claims, and the Kaiser Operating States Class

13   allegation should be dismissed.  *James*, 2023 WL 7392285, at *17–18; *In re Yahoo Mail Litig.*,

14   308 F.R.D. at 605 ("Each nonresident class member's state law claims should be governed by and

15   decided under the wiretapping laws of the state in which the class member resides.")

16        **C.    Claim 3: Intrusion Upon Seclusion**

17        Plaintiffs' intrusion upon seclusion claim fails for two reasons: (1) Plaintiffs do not plead

18   an "intrusion" and (2) Plaintiffs fail to allege that the Vendors were acting as anything but service

19   providers to Defendants.  A claim for intrusion upon seclusion requires allegations that a

20   defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff

21   has a reasonable expectation of privacy" and that the intrusion "occur[red] in a manner highly

22   offensive to a reasonable person."  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2002).  The

23   crux of an intrusion upon seclusion claim is that a defendant intruded into a private area where he

24   was not supposed to be.  *See In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987

25   (N.D. Cal. 2014) (noting plaintiff must allege "intrusion into a private place, conversation or

26   matter").  As the Restatement of Torts explains, an intrusion is where a defendant "oversee[s] or

27   overhear[s] the plaintiff's private affairs, as by looking into his upstairs windows with binoculars

28   or tapping his telephone wires[,] . . . opening his private and personal mail, searching his safe or

1   his wallet, examining his private bank account, [etc.]."  Rest. (2d) of Torts § 652B, Comment b.

2        First, Plaintiffs do not allege an ***intrusion*** by Defendants, they allege an improper

3   ***disclosure of information***.  Specifically, Plaintiffs allege that Defendants somehow "intruded"

4   when they "***disclosed*** communications [they] received from Plaintiffs" to the Vendors.  FAC ¶ 305

5   (emphasis added).  That assertion fails to allege an intrusion.  Defendants did not look though

6   Plaintiffs' windows, or open their mail.  Rather, Defendants received data that Plaintiffs

7   voluntarily submitted to Defendants.  Defendants were a party to, and intended recipient of, the

8   information at issue.  Thus, Plaintiffs have not plausibly alleged Defendants committed an

9   "intrusion."

10       A disclosure does not establish an intrusion upon seclusion claim regardless of which state

11  law is applied.[15]  As under California law, under the laws of Washington D.C., Georgia,

12  Maryland, Oregon and Washington, Plaintiffs' claim fails because in each of these jurisdictions

13  alleging that a defendant improperly disclosed information is insufficient to establish the requisite

14  intrusion upon seclusion.  *See Benz v. Wash. Newspaper Publ'g Co., LLC*, No. 05-1760, 2006 WL

15  2844896, at *8–9 (D.D.C. Sep. 29, 2006) (dismissing intrusion upon seclusion claim where

16  plaintiff alleged defendant disclosed that plaintiff suffered from a disease); *Purvis v. Healthcare*,

17  563 F. Supp. 3d 1360, 1377 (N.D. Ga. 2021) (rejecting intrusion upon seclusion claim where

18  plaintiff alleged that defendants disclosed private information to unauthorized parties); *Buckley v.*

19  *Santander Consumer USA, Inc*., No. C17-5813, 2018 WL 1532671, at *7 (W.D. Wash. Mar. 29,

20  2018) ("To the extent that Buckley complains that Santander deliberately passed this information

21  along to an unauthorized third party, that is not a claim for intrusion but rather disclosure.").

22       Second, Plaintiffs fail to allege an intrusion that was "highly offensive" to a reasonable

23  person because they fail to allege that the Vendors were acting as anything but service providers to

24  Defendants.  *See supra* Section VII.B.1; *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078,

25  1092–93 (N.D. Cal. 2018) ("Without more allegations as to what, if anything, [the Vendors] did

26

27  ───────────────
[15] As set forth below, the elements of intrusion upon seclusion under the law of Washington D.C.,
28  Georgia, Maryland, Oregon and Washington are substantially similar to that of California.  This
    claim is not brought on behalf of the Virginia Sub-Class or Jane Doe IV.

1    with this information, [plaintiffs] ha[ve] not plausibly alleged a serious invasion of privacy."); 
2    *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015).[16]  It is not highly 
3    offensive for service providers to use website data as an extension of Defendants to provide 
4    services to Defendants—and Plaintiffs allege nothing more than this.  *See supra* Section VII.B.2. 
5    Plaintiffs claim for intrusion upon seclusion should be dismissed with prejudice.

6    **D.    Claim 4: Invasion of Privacy and Constitutional Right to Privacy**

7         Plaintiffs plead insufficient facts to state a plausible claim for invasion of privacy.  Claims for 
8    common law invasion of privacy and invasion of privacy under the California Constitution are 
9    often evaluated together due to the similarity of their elements.  *See McDonald v. Kiloo ApS*, 385 
10   F. Supp. 3d 1022, 1033 (N.D. Cal. 2019) ("[T]he California Supreme Court has moved toward 
11   treating the tort and constitutional privacy inquiries as functionally identical. . . .").  When 
12   assessing these claims, courts consider "(1) the nature of any <u>intrusion</u> upon reasonable 
13   expectations of privacy, and (2) the offensiveness or seriousness of the <u>intrusion</u>, including any 
14   justification and other relevant interests." *Hernandez*, 47 Cal. 4th at 288 (emphasis added).  As 
15   these elements make clear, just like intrusion upon seclusion, a claim for invasion of privacy under 
16   the California Constitution is an ***intrusion*** claim—not a ***disclosure*** claim—and requires a highly 
17   offensive intrusion to be actionable.  As such, Plaintiffs' invasion of privacy claim fails for the 
18   same reasons as the intrusion upon seclusion claim.

19   **E.    Claim 5: Breach of Express Contract**

20        Plaintiffs assert breach of express contract claims under California, DC, Georgia, 
21   Maryland, Oregon, and Virginia law.  Plaintiffs allege that Defendants breached the Parties' 
22   agreement, namely the Privacy Statement, by intentionally incorporating code and technology

23   _____

24   [16]  Indeed, because Plaintiffs' ECPA and CIPA claims fail, their privacy claims also fail.  *See, e.g.*, 
     *Graham*, 533 F. Supp. 3d at 836 ("Because there was no plausible wiretapping by [vendor 
25   defendant], the plaintiffs did not plausibly plead that they possess a legally protected privacy 
     interest."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024–25 (N.D. Cal. 2012) ("The 
26   California Constitution and the common law set a high bar for an invasion of privacy claim.  Even 
     the disclosure of personal information . . . does not constitute an 'egregious breach of the social 
27   norms' to establish an invasion of privacy claims") (collecting cases); *see also In re Google 
     Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (dismissing intrusion upon 
28   seclusion claim where Plaintiffs failed to state Federal Wiretap claim and CIPA claim).

provided by the Vendors on the Site and Apps and then disclosing Plaintiffs' information and communications to the Vendors.  FAC ¶ 342.  However, as shown in Section VI, Plaintiffs consented to everything that Defendants did.  Moreover, Plaintiffs cannot identify any term of the Privacy Statement that Defendants breached.

Under each states' law, the basic elements of a breach of express contract claim are: (1) the existence of a contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract; and (4) damages caused by the breach.[17]  To survive a motion to dismiss, Plaintiffs must identify specific terms in the Privacy Statement and allege facts to show that Defendants violated those terms.  *See Davis v. Facebook, Inc.*, 956 F.3d 589, 610 (9th Cir. 2020) (dismissing breach of contract claim because Facebook never made an explicit promise not to collect data).

Plaintiffs allege that Defendants breached the Privacy Statement by disclosing "patient data" that was not "aggregated" as promised, and by failing to provide Plaintiffs . . . with the secure method of communication it agreed to provide."  FAC ¶¶ 350, 352.  Plaintiffs again misquote the Privacy Statement which makes no such promises.  First, the Privacy Statement only says that Defendants will collect aggregate data when gathering data ***on site activity***.  *Id.*, Ex. 2 at 3.  It does not promise to only collect aggregated data in any other context.  *Id.*  Second, the Privacy Statement contains twenty sections explaining Defendants' collection, use and/or disclosure of ***personal information***, not just aggregated data.  *Id.*, Ex. 2 at 4.  Third, the Privacy Statement never asserts that Defendants will provide a "secure method of communication."  It states a variety of ways in which information is collected by and shared with third parties, including that Defendants "may disclose personal information to any person performing . . . operational or other services for us . . . may also disclose [] personal information to third parties who provide services on our behalf to help with our business activities," *id.*, Ex. 2 at 9, and that

---

[17] *See, e.g.,  In re Google Assistant Privacy Litig.*, 546 F. Supp. 3d 945, 963 (N.D. Cal. 2021); *Inst. of Multidimensional Med. v. Metagenics, Inc.*, 635 F. Supp. 3d 6, 13 (D.D.C. 2022); *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015); *Sport Real Estate Mgmt., LLC v. Am. Zurich Ins. Co.*, No. 21-cv-01183, 2022 WL 409483, at *3 (D. Md. Feb. 10, 2022); *Kee Action Sports, Ltd. Liab. Co. v. Shyang Huei Indus. Co.*, No. 3:14-cv-00071, 2015 WL 9581808, at *4 (D. Or. Dec. 30, 2015); *GW Acquisition Co., LLC v. Pageland Ltd. Liab. Co.*, No. 1:22-cv-255, 2023 WL 125018, at *17 (E.D. Va. Jan. 6, 2023); *Brown v. Countrywide Home Loans, Inc.*, No. 2:15-CV-0199, 2016 WL 1700388, at *2 (E.D. Wash. Apr. 27, 2016).

1    Defendants allow third party advertising networks to collect personal information about activities

2    on Defendants' and other websites for advertising purposes.  *Id.*, Ex. 2 at 6–7.  Because Plaintiffs

3    have not identified any terms in the Privacy Statement that Defendants violated, their breach of

4    contract claim fails.

5            **F.        Claim 6: Breach of Implied Contract**

6            "[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie

7    where there exists between the parties a valid express contract covering the same subject matter."

8    *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 999 (N.D. Cal. 2014).  Courts routinely

9    dismiss breach of implied contract claims when plaintiffs also allege a breach of express contract

10   claim covering the same subject matter.  *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069,

11   1095–96 (N.D. Cal. 2022) (implied contract claim failed because "Plaintiffs clearly allege that

12   they had an enforceable contract with Google; indeed, they cite and quote from the Terms of

13   Service and Privacy Statement throughout their Complaint.  Moreover, these documents also

14   govern the subject matter of Plaintiffs' implied contract claim—scope and purpose of data

15   collection").  The same is true under the law of each state in the FAC.[18]

16           Here, Plaintiffs allege that a valid, enforceable contract exists between the Parties.  FAC

17   ¶ 330 ("There exists an express contract between [Defendants] and [Plaintiffs].").  Plaintiffs'

18   breach of implied contract claim covers the same subject matter as Plaintiffs' breach of express

19   contract cause of action, alleging that Defendants breached an agreement (contained in the Privacy

20   Statement) to not disclose Plaintiffs' identifiable personal information to third parties.  *Id.* ¶¶ 331–

21   38.  Similarly, the breach of implied contract claim alleges that Defendants breached an implied

22   contract by failing to provide Plaintiffs with a "secure Portal . . . which [Plaintiffs] could

23   confidentially" use without exposing personally identifiable information to third parties.  *Id.* ¶ 359.

24

25   _____
     [18] *Georgia Real Estate Props., Inc. v. Lindwall*, 303 Ga. App. 12, 15, 692 S.E.2d 690 (2010)
     (internal quotation marks omitted); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F.
26   Supp. 3d 374, 413 (E.D. Va. 2020); *Albrecht v. Comm. on Employee Benefits of the Fed. Reserve
     Employee Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004); *John M. Floyd & Assocs., Inc. v.
27   Howard Bank*, No. 18-2887, 2019 WL 1755968, at *5 (D. Md. Apr. 18, 2019); *Chandler v. Wash.
     Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943); *Gillett v. Tucker*, 317 Or. App. 570, 582
28   (2022).

                                          -24-              Case No. 3:23-cv-02865-EMC

1    Plaintiffs clearly allege the existence of an enforceable contract which covers the same subject

2    matter as Plaintiffs' implied contract claim.  Accordingly, the breach of implied contract claim

3    must be dismissed with prejudice.

4    **G.    Claim 7: Negligence Per Se Fails**

5        Plaintiffs' negligence per se claim fails as a matter of law for three independent reasons:

6    (1) negligence per se is not a separate cause of action; (2) intentional conduct cannot support a

7    negligence claim; and (3) Plaintiffs fail to plead injury and damages.

8        First, negligence per se is not a separate cause of action.  "Without a valid claim for

9    negligence, a claim for negligence per se cannot stand."  *Winter v. Chevy Chase Bank*, No. C 09-

10   3187, 2009 WL 3517619, at *3 (N.D. Cal. Oct. 26, 2009); *accord D.S. v. Am. Ass'n Univ. Women*,

11   No. 15cv1356, 2017 WL 3705850, at *11 (S.D. Cal. Aug. 28, 2017) (dismissing negligence per se

12   claim because "[n]egligence per se is not an independent cause of action and Plaintiffs'

13   independent claim for negligence has been dismissed").  Plaintiffs' failure to include a claim for

14   negligence is fatal regardless of which law governs this claim. [19]

15       Second, Plaintiffs' negligence per se claim cannot be based on intentional conduct.  A

16   negligence claim cannot be based on intentional conduct.[20]  *See Lam v. Target Corp.*, No. 2:15-

17   CV-01922, 2017 WL 4154947, *8 (E.D. Cal. Sep. 19, 2017) (holding that "intentional conduct

18   _____

19   [19]  The claim must also be dismissed to the extent governed by D.C., Georgia, Maryland, Oregon,
     or Virginia law.  *See Hunter v. District of Columbia*, 64 F. Supp. 3d 158, 188 (D.D.C. 2014)

20   ("[N]egligence *per se* is not in and of itself a separate legal claim."); *Bryant v. Norfolk S. R.R.*, No.
     5:20-cv-00225, 2020 WL 7634588, at *9 (M.D. Ga. Dec. 22, 2020) ("To be clear, 'negligence per

21   se' is not a stand-alone tort."); *Hanson v. Hanson*, No. 19-2214, 2020 WL 4734313, at *2 (D. Md.
     Aug. 14, 2020) ("Thus, despite Plaintiffs' assertions to the contrary, violation of a statute or

22   ordinance is merely evidence of negligence—not an independent claim for negligence per se.");
     *Morgan v. Kimco Realty Corp.*, No. 3:21-cv-00073, 2022 WL 716666, at *2 (D. Or. Mar. 10,

23   2022) ("Negligence *per se* is not a separate claim for relief, but is simply shorthand for a
     negligence claim in which the standard of care is expressed by a statute or rule."); *Williamson v.*

24   *Old Brogue, Inc.*, 232 Va. 350, 355 (1986) ("[T]he doctrine of negligence *per se* does not create a
     cause of action where none otherwise exists.").

25   [20] This is true in all relevant states.  *See*, *e.g.*, *Jones v. NVR Incorporation*, No. 20-453, 2020 WL

26   2064085, at *6 (D.D.C. Apr. 29, 2020) ("Intentional conduct cannot form the basis of a negligence
     claim."); *Rega v. State*, No. CV 115-087, 2016 WL 1317693, at *4 (S.D. Ga. Apr. 1, 2016)

27   (same); *Hartman v. Brady*, No. 3:15-cv-1753, 2016 WL 6126962, at *5 (D. Or. Sep. 19, 2016)
     (same); *Schuerholz v. Coker*, No. 15-1990, 2016 WL 6433173, at *3 (D. Md. Oct. 31, 2016)

28   (same); *Witcher v. Reid*, 70 Va. Cir. 415, 419 (2006) (same).

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1  cannot support a claim for negligence").  Plaintiffs allege Defendants acted intentionally with the

2  intent to deceive.  *See, e.g.*, FAC ¶ 197 ("Kaiser Permanente intentionally deploys Bing, Google,

3  and Twitter code on its website . . ."); *id.* ¶ 395 ("Kaiser Permanente acted willfully in engaging in

4  trade practices, knowing they are deceptive."); *id.* ¶ 414 ("Kaiser Permanente knowingly and

5  willfully disclosed medical information without consent.").  These allegations preclude a

6  negligence cause of action.  This claim should be dismissed with prejudice.

7      **H.      Claim 8: California Consumer Legal Remedies Act ("CLRA")**

8          As grounds for their CLRA claim, Plaintiffs allege that Defendants' installation of the

9  Vendor code on the Site and Apps, which "allow[ed] it to, without authorization and contrary to

10  its representation in the Site Terms and Conditions, intercept, disclose, and transfer private health

11  information belonging to Plaintiff[s]" to the Vendors, is an unfair or deceptive act or practice.

12  FAC ¶ 394.  Plaintiffs further allege Defendants "acted willfully" and knew their actions "were

13  deceptive."  *Id.* ¶ 395.  As pled, Plaintiffs' CLRA claim fails.

14          First, Plaintiffs fail to plead detrimental reliance.  Because Plaintiffs allege intentional

15  deception, their CLRA claim must meet the heightened pleading requirements of Rule 9(b).  *See*

16  *Kearns v. Ford Motor Company*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that CLRA claim

17  based fraudulent misrepresentations must satisfy the particularity requirement of Rule 9(b)).  As a

18  result, Plaintiffs must allege actual reliance, which—in the context of a CLRA claim—requires

19  that a plaintiff allege "that she (1) was exposed to (*e.g.*, heard, read, or saw) a defendant's

20  representation regarding a product, (2) that was false and/or misleading, (3) to which a reasonable

21  person would attach importance (materiality), and (4) incurred economic injury as a result (*e.g.*, by

22  purchasing the product for more money than the plaintiff would have (or not purchasing the

23  product at all) but for the misrepresentation)."  *Stewart v. Electrolux Home Prod., Inc*., No.

24  117CV01213, 2018 WL 1784273, at *5 (E.D. Cal. Apr. 13, 2018).  Here, Plaintiffs fail to assert

25  that they viewed or relied on any of the alleged misrepresentations in the Site Terms and

26  Conditions or that they would not have used the Site or Apps but for the alleged

27  misrepresentations.  That failure alone warrants dismissal of the CLRA claim.  *See Doe v.*

28  *SuccessfulMatch.com*, No. 13-CV-03376, 2014 WL 1494347, at *5 (N.D. Cal. Apr. 16, 2014)

1    (dismissing CLRA claim where plaintiffs failed to "allege[] that they viewed or relied on any of

2    the alleged misrepresentations").

3          Second, there was no transaction between Plaintiffs and Defendants that could give rise to

4    a CLRA claim.  The CLRA "applies only to a limited set of consumer transactions, and is not a

5    law of general applicability."  *T.K. v. Adobe Sys. Inc.*, No. 17-cv-4595, 2018 WL 1812200, at *6

6    (N.D. Cal. Apr. 17, 2018).  The CLRA only prohibits a defendant from undertaking a list of

7    deceptive acts "in a transaction intended to result or that results in the sale or lease of goods or

8    services to any consumer[.]"  Cal. Civ. Code § 1770(a).  "CLRA liability is limited to transactions

9    involving the actual or contemplated sale or lease of goods and services."  *Lloyd v. Navy Fed.*

10   *Credit Union*, No. 17-cv-1280, 2018 WL 1757609, at *19 (S.D. Cal. Apr. 12, 2018).  A

11   "transaction" is defined as "an agreement between a consumer and another person[.]"  Cal. Civ.

12   Code § 1761.  Here, Plaintiffs fail to allege any "agreement" for the purchase of "goods or

13   services."  Plaintiffs never allege they made a purchase through the Site or Apps.  Plaintiffs'

14   allegations that they "accessed" the Site and Apps do not convert Plaintiffs' privacy allegations

15   into a consumer transaction covered by the CLRA.  Plaintiffs do not allege that they were

16   deceived *to buy* goods—the required foundation of a CLRA claim—but rather that *in the course of*

17   *using* the Site and Apps, they experienced a privacy violation.

18         Third, the FAC does not allege the misrepresentation of any good or service.  CLRA

19   §1770, subsections (a)(5) and (a)(16) prohibit a defendant from representing that "goods or

20   services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that

21   they do not have" and "the subject of a transaction has been supplied in accordance with a

22   previous representation when it has not."  The FAC alleges Defendants violated these sections by

23   representing the Site and Apps had "characteristics, ingredients, uses, benefits, [etc.]" they did not

24   have.  *See* FAC ¶¶ 393–94.  But the Site and Apps are not a "good or service" as defined by the

25   CLRA.  *See* Cal. Civ. Code § 1761(a) (defining "goods" as "tangible chattels"); *id.* § 1761(b)

26   (defining "services" as "work, labor, and services for other than a commercial or business use").

27         Fourth, Plaintiffs are not "consumers" under the CLRA.  *See id.* § 1761(d) (defining

28   "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services

-27-

1   for personal, family, or household purposes"). Only consumers may assert claims for violation of

2   the CLRA. *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003). Plaintiffs never allege that they

3   made a purchase of any good or service, nor do they allege they used the Site or App with the

4   intention of making a purchase of any good or service. "It is not enough that the plaintiff is a

5   consumer of just any goods or services; rather, the plaintiff must have acquired or attempted to

6   acquire the goods or services in the transaction at issue" to be a consumer for CLRA purposes.

7   *Kleffman v. Vonage Holdings Corp.*, No. 07-cv-2406, 2007 WL 1518650, at *4 (C.D. Cal. May

8   23, 2007), *aff'd*, 387 F. App'x 696 (9th Cir. 2010).

9        Plaintiffs cannot cure these deficiencies through amendment. Accordingly, the CLRA

10  claim must be dismissed with prejudice.

11       **I.      Claim 9: California Confidentiality of Medical Information Act ("CMIA")**

12       Plaintiffs' CMIA claim fails because: (1) they have failed to allege that medical

13  information (as defined in the CMIA) was disclosed; and (2) that they each sustained economic

14  loss or personal injury. Further, the non-California Plaintiffs cannot assert a CMIA claim. Under

15  the CMIA, "[a] provider of health care, health care service plan, or contractor shall not disclose

16  medical information regarding a patient of the provider of health care or an enrollee or subscriber

17  of a health care service plan without first obtaining an authorization." Cal. Civ. Code § 56.10(a).

18  "Medical information" is defined as "any individually identifiable information . . . regarding a

19  patient's medical history, mental health application information, mental or physical condition, or

20  treatment." Cal. Civ. Code § 56.05(i). Information is "individually identifiable" if it "includes or

21  contains any element of personal identifying information sufficient to allow identification of the

22  individual, such as the patient's name, address, electronic mail address, telephone number, or

23  social security number, or other information that, alone or in combination with other publicly

24  available information, reveals the identity of the individual." *Id*.

25       First, Plaintiffs rely only on conclusory allegations that any "individually identifiable

26  information" was exposed. Plaintiffs never allege, as to each of them, what information was

27  disclosed that, alone or in combination, would reveal their identity. Accordingly, Plaintiffs have

28  failed to adequately allege that the requisite "medical information" was disclosed to the Vendors.

1          Second, Plaintiffs allege they are entitled to damages under Cal. Civ. Code § 56.35.

2   Plaintiffs however, do not allege an essential element of a claim under section 56.35—that they

3   "sustained economic loss or personal injury."  Plaintiffs instead rely exclusively on the conclusory

4   statement that they "sustained economic loss therefrom," without any further explanation of what

5   those losses were.  FAC ¶ 415.  While Plaintiffs claim their personal information is valuable, they

6   do so in a conclusory fashion, and never allege that the supposed value has been reduced, that

7   Defendants intend to monetize their personal data, or that Plaintiffs have been precluded from

8   deriving value from their data.  Given there are no factual allegations describing the supposed

9   "economic loss" Plaintiffs' sustained, their CMIA claim must be dismissed.

10          Third, the non-California Plaintiffs cannot assert a CMIA claim for the same reason they

11  cannot assert a CIPA claim: the laws of their home states, not California law applies.  Each of the

12  states that comprise the Kaiser Operating States Class have laws that regulate the disclosure of

13  medical information in materially different ways from the CMIA.[21]  This is demonstrated by Jane

14  Doe's claim for violation of the Washington Health Care Information Act.  *See infra* Section

15  VII.U.  Non-California Plaintiffs' home states have the predominant interest in determining how

16  to regulate and protect the medical privacy of their residents, and balance that against competing

17  concerns, such as the costs and ease of accessing health information and care.  California has little

18  or no interest in regulating the privacy of residents of other states.  To the extent the place of the

19

---

20  [21] For example, each state has different rules regarding consent.  *See* Cal. Civ. Code § 56.11
    (consent must be signed and dated, handwritten or in typeface no smaller than 14 point type); D.C.
21  Code § 31-3426 (patient must provide express consent); Ga. Code § 24-12-1 (written authorization
    or other waiver); Md. Code, Health-Gen. § 4-303 (authorization in writing, dated, signed, and
22  states the period for which the authorization is valid); Or. Rev. Stat. § 746.607(1) (disclosure must
    be consistent with authorization provided by individual); Va. Code § 32.1-127.1:03.D (written
23  authorization).  Further, each state has material differences regarding the available remedy for an
    alleged violation.  *See* Cal. Civ. Code § 56.35 (compensatory damages, punitive damages up to
24  $3,000, attorneys' fees up to $1,000, and costs of litigation); D.C. Code § 31-3426 (no private
    right of action for good faith disclosures by a member, agent or employee of a health care review
25  committee); Ga. Code § 24-12-13 (no liability for good faith disclosures based on limited
    consent); Md. Code, Health-Gen. § 4-309 (actual damages for knowing violations); Or. Rev. Stat.
26  § 746.680 (equitable relief and monetary award not to exceed actual damages); Va. Code § 38.2-
    617 (equitable relief and monetary award not to exceed actual damages); Wash. Rev. Code §
27  70.02.170 (actual damages, attorneys' fees, and all other expenses incurred).

28

---

1   wrong would be considered a factor, the CMIA claim is based on the same allegations concerning

2   third-party interceptions as the CIPA claim, and so—as with CIPA—the alleged wrong is not

3   plausibly alleged to have occurred in California but rather in the Non-California Plaintiffs' home

4   states where any "interceptions" occurred.  *See supra* Section VII.B.3.  For the same reasons, the

5   Kaiser Operating States Class allegations and claims should be dismissed.

6   **J.      Claim 10: Statutory Larceny**

7   Plaintiffs assert a claim for larceny under both California Penal Code § 484 and § 496.

8   Larceny requires a trespassory taking.  *People v. Williams*, 57 Cal. 4th 776, 788 (2013); *Boegeman*

9   *v. Smith*, No. 3:17-cv-00861, 2018 WL 3140469, at *9 (S.D. Cal. June 27, 2018) (explaining that

10  larceny cannot be based on alleged misrepresentations).  Under Section 484, Plaintiffs must show

11  that Kaiser: (1) took possession; (2) of personal property; (3) owned or possessed by another; (4)

12  by means of trespass; (5) with intent to steal the property; and (6) carried the property away.

13  *People v. Myles*, 89 Cal. App. 5th 711, 729 (2023).  Plaintiffs merely declare that Defendants

14  "acted in a matter [sic] constituting theft" by use of the Vendor's code on the Site and App, FAC ¶

15  420, but never explain how Kaiser committed a trespassory taking or carried property away.  Nor

16  could they.  Plaintiffs admit they voluntarily and intentionally transmitted information to

17  Defendants through the Site and Apps.  *See, e.g.*, *id.* ¶¶ 15, 19, 23.  Furthermore, under Section

18  496, "[e]very person who buys or receives any property that has been stolen or that has been

19  obtained in any manner constituting theft or extortion, knowing the property to be so stolen or

20  obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any

21  property from the owner, knowing the property to be so stolen or obtained, shall be [guilty]."  Cal.

22  Penal Code § 496(a).  The FAC does not allege that Defendants bought or received stolen

23  property, or concealed, sold, or withheld stolen property.  Accordingly, Plaintiffs' larceny claim

24  fails as a matter of law.

25  **K.      Claim 11: D.C. Consumer Protection Procedures Act ("DCCPPA")**

26  Plaintiff Jane Doe II[22] alleges that Defendants violated DCCPPA, D.C. Code § 28-3904(a),

27  (e), (f-l), by "engaging in unauthorized interception, disclosure, and transfer of private health

28

---

[22] This claim is brought solely by Jane Doe II.  FAC ¶ 424.

1   information in violation of its own Site Terms and Conditions."  FAC ¶ 430.  This claim

2   necessarily fails because a violation of DCCPPA cannot be based on a breach of contract, even if

3   the breach is intentional.  *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 26 (D.D.C. 2019); *Slinski v.*

4   *Bank of Am., N.A.*, 981 F. Supp. 2d 19, 36 (D.D.C. 2013) (dismissing claim based on breach of

5   privacy policy because "an intentional breach of contract is not punishable as an unlawful trade

6   practice under the Consumer Protection Procedures Act"); *Ruiz v. Millennium Square Residential*

7   *Ass'n*, No. 1:19-cv-03765, 2022 WL 296200, at *5 (D.D.C. Feb. 1, 2022) ("The Court thus holds

8   that an intentional breach of contract is not cognizable under the CPPA.").  Plaintiffs admit the

9   Site Terms and Conditions are contracts between Defendants and Plaintiffs.  FAC ¶¶ 329–49.

10  Accordingly, the DCCPPA claim must be dismissed with prejudice.

11          **L.      Claim 12: Georgia Uniform Deceptive Trade Practices Act ("UDTPA")**

12          As discussed in Section VII.H, the FAC does not plead that any of the Plaintiffs relied on a

13  misrepresentation by Defendants.  This omission is fatal to John Doe II's UDPTA claim.[23]  *See*

14  *Willingham v. Glob. Payments, Inc.*, 2013 WL 440702, at *16 (N.D. Ga. Feb. 5, 2013) (dismissing

15  plaintiffs' § 10-1-372 claim because "[p]laintiffs have not pled that they read, relied upon and,

16  thus, were harmed by Defendant's representations").

17          **M.     Claim 13: Georgia Computer Systems Protection Act  ("CSPA")**

18          Plaintiffs allege that Defendants violated the CSPA by engaging in "computer theft" and

19  "computer invasion of privacy."  Ga. Code Ann. § 16-9-93.  Neither assertion has any merit.

20          As to computer theft, the CSPA prevents anyone from using "a computer or computer

21  network with knowledge that such use is without authority" with the intention of taking another's

22  property.  Ga. Code Ann. § 16-9-93(a).  The phrase "without authority" in this context means "the

23  use of a computer or computer network in a manner that exceeds any right or permission granted

24  by the owner of the computer or computer network."  *Id.* at § 16-9-92(18); FAC ¶ 445.  Plaintiffs'

25  conclusory assertion that Defendants acted "without authority" is wholly insufficient.  KFHP is

26  the owner of the Site and Apps.  It cannot act without authority on its own network.

27          As to computer invasion of privacy, the CSPA prohibits "[a]ny person who uses a

28  _____
[23] This claim is brought solely by John Doe II.  FAC ¶ 433.

computer or computer network with the intention of examining any . . . medical . . . or personal

data relating to any other person with knowledge that such examination is without authority shall

be guilty of the crime of computer invasion of privacy."  Ga. Code Ann. § 16-9-93(c).  Plaintiffs'

allegations do not align with the conduct the CSPA seeks to prohibit.  Plaintiffs allege that they

voluntarily sent data to Defendants, who then unlawfully disclosed that data to third parties.  FAC

¶¶ 52–57, 74.  Plaintiffs do ***not*** allege that Defendants used any computer or network to examine

Plaintiffs' information without authority.

Finally, the CSPA claim also fails because Plaintiffs have failed to allege any connection

to Georgia.  The CSPA does not apply extra-territorially.  *Peterson v. Aaron's, Inc.*, 108 F. Supp.

3d 1352, 1354–55 (N.D. Ga. 2015) (dismissing CSPA claim where "none of the alleged conduct

giving rise to Plaintiffs' claims has any relation to the state of Georgia" and plaintiffs "do not

allege that [defendant's] conducted any of the alleged unlawful acts from Georgia"); *Krise v.

Sei/Aaron's, Inc.*, No. 1:14-CV-1209, 2017 WL 3608189, at *9 (N.D. Ga. Aug. 22, 2017) ("The

GCSPA does not apply extraterritorially.").  Plaintiffs have not alleged Defendants' conduct

occurred in Georgia.

**N.      Claim 14: Georgia Insurance Information and Privacy Protection Act**

The Georgia Insurance Information and Privacy Protection Act ("IIPA") states that "[a]n

insurance institution, agent, or insurance-support organization shall not disclose any personal or

privileged information about an individual collected or received in connection with an insurance

transaction" unless the disclosure falls under a set of specific exceptions.  Ga. Code Ann. § 33-39-

14.  To state a claim, John Doe II[24] must show that Defendants (1) disclosed personal or privileged

information; (2) collected or received in connection with an insurance transaction.  *Id.*

First, the FAC does not allege that any disclosure was in connection with an insurance

transaction.  An insurance transaction is defined as "any transaction involving insurance primarily

for personal, family, or household needs rather than business or professional needs which entails:

(A) the individual determination of an individual's eligibility for an insurance coverage, benefit, or

payment; or (B) the servicing of an insurance application, policy, contract, or certificate."  Ga.

---

[24] This claim is brought solely by John Doe II.  FAC ¶ 452.

1   Code Ann. § 33-39-3(13).  The FAC's sole allegation on that front is "Given Kaiser Permanente's

2   integrated care model, Plaintiff's and Georgia Sub-Class members' communications with Kaiser

3   Permanente through the Kaiser Permanente website, Patient Portal, and mobile applications

4   constitute personal or privileged information collected or received in connection with an insurance

5   transaction."  FAC ¶ 458.  This conclusory allegation is devoid of any factual support.  The fact

6   that one Defendant is a health plan does not constitute a factual allegation that any information at

7   issue was "collected or received in connection with an insurance transaction."  The FAC does not

8   allege that the supposed disclosure had anything to do with determination of eligibility for

9   insurance for John Doe II or the servicing of his pre-existing insurance contract.

10       Second, the IIPA does not apply to TPMG or Hospitals.  The IIPA only applies to

11  "insurance institution[s], agent[s], or insurance-support organization[s]."  Ga. Code Ann. § 33-39-

12  14.  Plaintiffs do not plead that TPMG and Hospitals are insurance companies.  *See* FAC ¶¶

13  44–45.  This omission is fatal to the IIPA claim against TPMG and Hospitals.  *Cf. Quadrant Info.*

14  *Servs., LLC v. LexisNexis Risk Sols., Inc.*, No. C 11-6648, 2012 U.S. Dist. LEXIS 108597, at *13

15  (N.D. Cal. July 31, 2012) (no California Insurance Information and Privacy Protection Act claim

16  (which has nearly identical language to the IIPA) where plaintiff did not allege that defendant was

17  an "insurance institution," "agent," or "insurance-support organization").

18       Third, no personal or privileged information was disclosed.  Under the IIPA, "Personal

19  information" is limited to "***individually identifiable*** information ***gathered in connection with an***

20  ***insurance transaction*** from which judgments can be made about an individual's character, habits,

21  avocations, finances, occupation, general reputation, credit, health, or any other personal

22  characteristics."  Ga. Code Ann. § 33-39-3(19) (emphasis added).  "Privileged information" means

23  "***individually identifiable information***" that (i) "[r]elates to a claim for insurance benefits or a

24  civil or criminal proceeding involving an individual"; ***and*** (ii) "[i]s collected in connection with or

25  in reasonable anticipation of a claim for insurance benefits or civil or criminal proceeding

26  involving an individual."  Ga. Code Ann. § 33-39-3(13) (emphasis added).  The FAC does not

27  allege that either personal information or privileged information was disclosed, as those terms are

28  defined in the IIPA.  The data cannot be "personal information" because John Doe II does not

-33-

allege his information was "gathered in connection with an insurance transaction"—he alleges it

was gathered in connection with his use of the Site and Apps.  *See* FAC ¶¶ 52–62.  The FAC also

does not allege any of the information at issue related to or was collected in connection with or in

anticipation of a claim for insurance benefits or civil or criminal proceedings involving John Doe

II.  *See id.*  Finally, because, as discussed in Section IV, the FAC does not allege that John Doe

II's individually identifiable information was disclosed, he has failed to plead disclosure of

privileged or personal information.

### O.    Claim 15: Maryland Wiretapping and Electronic Surveillance Act

Jane Doe III's[25] claim for violation of the Maryland Wiretapping and Electronic

Surveillance Act is defective on its face.  Maryland courts hold that the Act does not have an

extraterritorial effect.  *Spyre v. Ace Motor Acceptance Corp.*, No. 423332-V, 2017 Md. Cir. Ct.

LEXIS 7, at *8–10 (Montgomery Cnty. Cir. Ct. Sep. 28, 2017).  Thus, in order to state a claim

under the Maryland Wiretapping Act, Jane Doe III must allege that communications were

intercepted *in Maryland*.  She make no such allegations.

### P.    Claim 16: Oregon Unlawful Trade Practices Act ("UTPA")

Jane Doe V does not have standing to assert this claim.  Jane Doe V[26] claims that the

installation of code and technology provided by the Vendors on the Apps and Site is "an unlawful

trade practice under Or. Rev. Stat. § 646.607(1)."  FAC ¶ 488.  The Oregon Court of Appeals, and

courts in this Circuit, have repeatedly held that only the state of Oregon can prosecute claims

under section 646.607.  *See Horton v. Nelson*, 252 Or. App. 611, 619 (2012) ("[O]nly the state can

prosecute trade practices declared unlawful by ORS 646.607.")*; Patton v. Experian Data Corp*.,

No. 27-01559, 2018 WL 6190349, at *10 (C.D. Cal. Jan 23, 2018) (dismissing section 646.607

because no private right of action exists); *Gosha v. Bank of N.Y. Mellon Corp*., No. 3:16-CV-

00073, 2016 WL 7238927, at *7 (D. Or. Dec. 13, 2016) (finding Oregon law "does not create a

private right of action for violations of ORS 646.607"); *Lorenz v. Deutsche Bank Nat'l Tr. Co.*,

No. 3:15-cv-680, 2015 WL 5813174, at *6 (D. Or. Oct. 5, 2015) ("Plaintiffs' claim under Or. Rev.

---

[25] This claim is brought solely by Jane Doe III.  FAC ¶ 462.
[26] This claim is brought solely by Jane Doe V.  FAC ¶ 484.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1  Stat. § 646.607 fails because claims under that statute may be prosecuted only by the State of

2  Oregon, and Oregon law does not create a private right of action for violations of ORS 646.607.").

3  Because there is no private right of action for section 646.607 claims, this claim should be

4  dismissed with prejudice.

5      **Q.    Claim 17: Virginia Computer Crimes Act ("VCCA")**

6          Jane Doe IV's[27] VCCA claim must be dismissed because she fails to allege Defendants

7  acted "maliciously" or "through intentionally deceptive means and without authority."  VCCA

8  makes it "unlawful for any person, ***with malicious intent, or through intentionally deceptive***

9  ***means and without authority***," to use a computer or computer network to make an "unauthorized

10 copy" of computer data or to "cause to be installed, or collect information through, computer

11 software that records all or a majority of the keystrokes made on the computer of another."  Va.

12 Code Ann. § 18.2-152.4 (emphasis added).  Jane Doe IV contends that the installation of code and

13 technology provided by the Vendors on the Apps and Site "without authorization and contrary to

14 the Site Terms and Conditions" violates VCCA.  FAC ¶ 498.  But the FAC does not allege that

15 Defendants used "intentionally deceptive means" or "acted with malicious intent."  Further, it is

16 impossible for Defendants to use their own computer or computer networks without authority.  *See*

17 *Se. Wholesale Corp. v. Cox Communs. Hampton Rds., LLC*, No. 2:12cv701, 2013 WL 2147478, at

18 *6–7 (E.D. Va. May 13, 2013) (finding that a party cannot use its own computer network without

19 authority).  The VCCA does not create a cause of action for all alleged torts committed with a

20 computer and the FAC is entirely devoid of allegations of the type of conduct the VCCA is

21 intended to prevent.  *See id.* at *7 ("[T]he Court's review of the VCCA's legislative history

22 suggests that the focus of the law was on hackers.").  Accordingly, this claim should be dismissed.

23     **R.    Claim 18: Virginia Insurance Information and Privacy Protection Act**

24         The Virginia Insurance Information and Privacy Protection Act provides that an "insurance

25 institution, agent, or insurance-support organization shall not disclose any medical-record

26 information or privileged information about an individual *collected or received in connection with*

27 *an insurance transaction* unless the disclosure is with the written authorization of the individual."

28
_____
[27] This claim is brought solely by Jane Doe IV.  FAC ¶ 492.

Va. Code Ann. § 38.2-613(A) (emphasis added).  As with Georgia's similar law, the Georgia

Insurance Information and Privacy Protection Act, "insurance transaction" is "any transaction

involving insurance primarily for personal, family, or household needs rather than business or

professional needs that entails: (1) The determination of an individual's eligibility for an insurance

coverage, benefit or payment; or (2) The servicing of an insurance application, policy, contract, or

certificate." Va. Code Ann. § 38.2-602.  Here, Jane Doe IV[28] makes only the following

conclusory allegation: "Given Kaiser Permanente's integrated care model, Plaintiff's and Virginia

Sub-Class Members' communications with Kaiser Permanente through the Kaiser Permanente

website, Patient Portal, and mobile applications constitute personal or privileged information

collected or received in connection with an insurance transaction." FAC ¶ 508.  The FAC alleges

no facts in support of the conclusion that all the information Defendants collected or received was

in connection with an insurance transaction.  This claim must also be dismissed.

### S.    Claim 19: Washington Consumer Protection Act ("WCPA")

Dismissal is required here because Jane Doe[29] fails to sufficiently allege the second, third,

and fifth elements of her WCPA claim.  To state a claim for relief under the WCPA, a plaintiff

must establish: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce, (3) a

public interest impact, (4) injury to the plaintiff's business or property, and (5) causation.

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784–85 (1986).

"[F]ailure to provide proof on any one of these elements is fatal" to a WCPA claim.  *Little Donkey*

*Enters. Wash. v. US Bancorp*, 136 F. App'x 91, 93 (9th Cir. 2005).

As to the second element, the FAC does not, and cannot, allege any unfair or deceptive act

or practice "**occurring in** trade or commerce."  WCPA defines "trade and commerce" as "the sale

of assets or services, and any commerce directly or indirectly affecting the people of the state of

Washington."  Wash. Rev. Code § 19.86.010(2).  The FAC alleges that Defendants' installation of

code and technology provided by the Vendors allowed Defendants to intercept, disclose, and

transfer" private health information "without authorization and contrary to representation in the

---

[28] This claim is brought solely by Jane Doe IV.  FAC ¶ 502.
[29] This claim is brought solely by Jane Doe.  FAC ¶ 512.

1   Site Terms and Conditions." FAC ¶ 517. It does not allege any misrepresentation in connection

2   with the sale of any asset or service affecting the people of Washington. *See Brophy v. JPMorgan*

3   *Chase Bank Nat'l Ass'n*, No. 13-CV-0293, 2013 WL 6273583, at *3 (E.D. Wash. Dec. 4, 2013)

4   (dismissing WCPA claim where plaintiff made "no allegations that [defendant] engaged in an

5   unfair or deceptive act or practice occurring in trade or commerce").

6          As to the third element, the FAC does not allege any public interest impact whatsoever.

7   This alone is grounds for dismissal of the WCPA claim. *See United Fed'n of Churches, LLC v.*

8   *Johnson*, 522 F. Supp. 3d 842, 854 (W.D. Wash. 2021) (dismissing WCPA claim where plaintiff

9   alleged that defendants "deceive[d] the public with a deliberate, willful intent to disparage or pass

10  off competitor services" as those of plaintiff); *Main v. Nw. Tr. Servs.*, No. 14-353, 2014 WL

11  3752131, at *2 (W.D. Wash. July 30, 2014) (dismissing WCPA claim where "the limited factual

12  allegations against [defendant did not] show a deceptive act occurring in trade or commerce . . .

13  affecting the public interest").

14         Finally, as to the fifth element, the FAC fails to plead that the allegedly deceptive conduct

15  caused an injury to Jane Doe's property or business. The FAC's silence on this point also

16  warrants dismissal of this claim. *See Hangman Ridge*, 105 Wash. 2d at 785, 793 (requiring a

17  causal link between the unfair or deceptive act complained of and the injury suffered for WCPA

18  claim); *Wintersteen v. Liberty Mut. Ins. Co.*, No. 2:21-cv-00185, 2021 WL 4341958, at *2 (E.D.

19  Wash. Sep. 23, 2021) (dismissing WCPA claim where plaintiffs made only "conclusory

20  allegations" related to causation and damages).

21         **T.    Claim 20: Washington Privacy Act ("WPA")**

22         Jane Doe's[30] WPA claim should be dismissed because the FAC fails to allege that

23  Defendants intercepted a private communication between two individuals or that Jane Doe

24  suffered an injury to her business, person, or reputation. To assert a claim for violation of the

25  WPA, Jane Doe must allege, *inter alia,* that Defendants intercepted or recorded a private

26  communication, between two or more individuals, without consent of the participants. Wash.

27  Rev. Code Ann. § 9.73.030(1)(a); *Huong Hoang v. Amazon.com, Inc.*, No. C11-1709, 2012 WL

28  ─────────────────────────
[30] This claim is brought solely by Jane Doe. FAC ¶ 521.

1    1088165, at *5 (W.D. Wash. Mar. 28, 2012).  She must also allege an injury to her business,

2    person, or reputation."  *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023).  Applying these

3    standards, Jane Doe's WPA claim should be dismissed.

4                    **1.    There Was No Private "Communication" Between Two Individuals**

5           Under the WPA, a "private communication" is limited to a communication between ***two***

6    ***individuals***.  Wash. Rev. Code § 9.73.030(1) (emphasis added); *Cousineau v. Microsoft Corp.*,

7    992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (dismissing WPA § 9.73.030 claim and holding

8    that "[w]ithout an individual on the other end of her communication (other than Microsoft), the

9    transmission of [plaintiff's] data cannot be considered a communication under the WPA."); *In re*

10   *Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1093 (N.D. Cal. 2015)

11   (interception of geographical data, websites visited, and web searches were not actionable under

12   Section 9.73.030 of the WPA because that data does not reflect communications between two or

13   more individuals).  Here, the FAC pleads only "internet communications" between Jane Doe and

14   "Kaiser Permanente's Site and mobile applications," not communication with a second individual.

15   FAC ¶¶ 528–31.  These internet communications are not actionable under the WPA.

16                    **2.    Defendants Did Not Intercept or Record Communications**

17          Jane Doe's WPA claim also fails because Defendants were the intended recipients of the

18   "internet communications" between Jane Doe and "Kaiser Permanente's Site and mobile

19   applications."  FAC ¶¶ 528–31.  The FAC does not plead that Defendants "intercepted" or

20   "recorded" any communications; it pleads they "disclosed" communications to the Vendors who

21   intercepted and recorded those communications.  *Id.* ¶¶ 527–31.  The WPA claim fails for this

22   reason alone.  *See Kearney v. Kearney*, 974 P.2d 872, 876 (1999) (Under the WPA, "[l]iability

23   rests with the party recording or intercepting the conversation"); *McKee v. Gen. Motors Co.*, 601

24   F. Supp. 3d 901, 907–08 (W.D. Wash. 2022) (same).  The WPA "which is used, among other

25   ways, to determine whether evidence is admissible in criminal cases, plainly does not apply to

26   Plaintiff's allegations here because, regardless of what they did with her information, Defendants

27   were the intended recipients of the communication." *Hoang*, 2012 WL 1088165, at *5.

28   ///

1

### 3.    Jane Doe Was Not Injured

2        The FAC does not allege any injury to Jane Doe's business, person, or reputation.  Instead

3   Jane Doe pleads only that Defendant's intentionally caused an unauthorized interception and that

4   she "seek[s] statutory damages in accordance with Wash. Rev. Code § 9.73.060, which provides

5   for statutory damages sustained by [Jane Doe] and the Sub-Class in an amount to be proven at

6   trial."  FAC ¶¶ 526–33.  These allegations are insufficient to establish the requisite injury.

7        The statutory text of the WPA makes clear that to bring a claim under the WPA, a plaintiff

8   must show that "a violation of [the WPA] has injured his or her business, his or her person, or his

9   or her reputation" and that only "[a] person so injured shall be entitled to actual damages . . . or

10  liquidated damages."  Wash. Rev. Code § 9.73.060.  Jane Doe cannot establish an injury to her

11  business, person or reputation merely by pleading that a violation of the WPA itself is an invasion

12  of privacy that constitutes an injury.  "An invasion of privacy, without more, is insufficient to

13  meet the statutory injury requirements of Section 9.73.060.  To succeed at the pleading stage of a

14  WPA claim, Plaintiffs must allege an injury to his or her business, his or her person, or his or her

15  reputation."  *Jones,* 85 F.4th (9th Cir. 2023); *see Brinkley v. Monterey Fin. Servs., LLC*, 340 F.

16  Supp. 3d 1036, 1044–45, n.3 (S.D. Cal. 2018) (finding that the invasion of privacy inherent in the

17  unauthorized recording of an individual's conversation, without more, is insufficient to meet the

18  Section 9.73.060 injury requirement); *Russo v. Microsoft Corp.*, No. 4:20-cv-04818, 2021 WL

19  2688850, at *3 n.3 (N.D. Cal. June 30, 2021) (finding that the WPA's cause of action applies only

20  to those who have been injured in their business, person, or reputation).  For all of these reasons,

21  Jane Doe's WPA claim must be dismissed.

22  ### U.    Claim 21: Washington Health Care Information Act ("WHCIA")

23        Jane Doe's[31] WHCIA claim fails because Jane Doe does not plausibly allege she complied

24  with the WHCIA or that Defendants disclosed "health care information" as defined by WHCIA.

25  A health care provider "may not disclose health care information about a patient to any other

26  person without the patient's written authorization."  Wash. Rev. Code Ann. § 70.02.020.  Further,

27

---

28  [31] This claim is brought solely by Jane Doe individually and on behalf of the Washington Sub-Class.  FAC ¶ 521.

1   under Section 70.02.170 of the WHCIA, only "[a] person who has complied with this chapter may

2   maintain an action for the relief provided in this section against a health care provider or facility

3   who has not complied with this chapter."

4        Applying these standards, Jane Doe's WHCIA claim fails.  First, Jane Doe does not plead

5   that she complied with WHCIA, a condition precedent necessary to maintain a WHCIA cause of

6   action.  Second, Jane Doe fails to plausibly allege that any information disclosed was "health care

7   information" which is limited to "information . . . *that identifies or can readily be associated with*

8   the identity of a patient and directly relates to the patient's health care."  Wash. Rev. Code §

9   70.02.010(17) (emphasis added).  Here, Jane Doe alleges that the following information was

10  disclosed to Vendors: (i) unspecified "information," FAC ¶¶ 86, 87; (ii) search terms on the

11  "doctor search page," including searches for "mental health," *id.* ¶¶ 130, 161, 164–68; (iii)

12  unspecified information speculated to relate to bills and payment, *id.* ¶ 91; (iv) the fact that she

13  "had lab tests results available," *id.* ¶ 126; (v) the fact that she had logged into the Site portal, *id.*

14  ¶¶ 146, 150, 153, 156 and (vi) that she had certain procedures and diseases.  *Id.*  ¶¶ 209–11.  Jane

15  Doe does not explain how any of this information "identifies or can readily be associated with"

16  her.  None of the information listed would allow third-parties to identify Jane Doe.  The WHCIA

17  claim must be dismissed.

18  **VIII.   CONCLUSION**

19        For the foregoing reasons, Defendants respectfully request that the Court grant their

20  Motion to Dismiss and dismiss Plaintiffs' entire FAC, and with prejudice, where indicated.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1  Dated:  November 14, 2023

2

3                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4

5                    By         _____/s/ Wynter L. Deagle_____
                                WYNTER L. DEAGLE, Cal Bar No. 296501
6                               wdeagle@sheppardmullin.com
                                ANNE-MARIE D. DAO, Cal Bar No. 282632
7                               adao@sheppardmullin.com
                                DANE C. BRODY CHANOVE, Cal Bar No. 345843
8                               dbrodychanove@sheppardmullin.com
                                12275 El Camino Real, Suite 100
9                               San Diego, California 92130-4092
                                Telephone:    858.720.8900
10                              Facsimile:    858.509.3691

11
                                TENAYA RODEWALD, Cal Bar No. 248563
12                              trodewald@sheppardmullin.com
                                1540 El Camino Real, Suite 120
13                              Menlo Park, CA 94025
                                Telephone:    650.815.2600
14                              Facsimile:    650.815.2601

15
                                NOLAN J. WALTER, Cal Bar No. 325021
16                              nwalter@sheppardmullin.com
                                KEVIN MURPHY, Cal Bar No. 346041
17                              kemurphy@sheppardmullin.com
                                1901 Avenue of the Stars, Suite 1600
18                              Los Angeles, California 90067-6055
                                Telephone:    310.228.3700
19                              Facsimile:    310.228.3701

20                              Attorneys for Defendants
                                Kaiser Foundation Health Plan, Inc., Kaiser
21                              Foundation Hospitals, and The Permanente Medical
                                Group, Inc.

22

23

24

25

26

27

28