SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc.

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, and JANE DOE V, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and THE PERMANENTE MEDICAL GROUP, INC.,

Defendants.

Case No. 3:23-cv-02865-EMC

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' PRELIMINARY INJUNCTION MOTION**

*Filed concurrently with Declarations of Bill D. Vourthis and James Vint and [Proposed] Order*

Date: December 21, 2023
Time: 1:30 p.m.
Courtroom: 5

District Judge: Hon. Edward M. Chen
Magistrate Judge: Hon. Peter H. Kang
FAC Filed: September 15, 2023
Trial Date: Not Set

# TABLE OF CONTENTS

**Page**

Table of Authorities ........ ii
I. INTRODUCTION ........ 1
II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND ........ 3
A. Procedural History ........ 3
B. The Parties ........ 3
C. The Website and Apps ........ 3
D. KFHP Voluntarily Provided the Relief Sought by Plaintiffs ........ 4
III. PLAINTIFFS FAIL TO MEET THE FOUR *WINTER* FACTORS ........ 5
A. Legal Standard ........ 5
B. Plaintiffs Fail to Establish Irreparable Harm ........ 5
1. Plaintiffs' Delay Belies Any Claim of Likelihood of Injury ........ 5
2. Plaintiffs Have Not Shown Disclosure of Protected Health Information ........ 6
3. There Is No Evidence of Use of Any Data Now or In The Future ........ 8
C. Plaintiffs Do Not Show Likelihood of Success on the Merits. ........ 10
1. There Are No Claims Against Hospitals or TPMG ........ 10
2. Plaintiffs Consented to the Disclosure of the Information ........ 10
3. Plaintiffs Fail to Demonstrate Defendants Violated the ECPA ........ 15
4. Plaintiffs' CIPA Claim Cannot Succeed on The Merits ........ 17
5. Plaintiffs' Privacy Claims Fail ........ 19
D. The Balance of Equities Does Not Tip In Plaintiffs' Favor ........ 21
E. Plaintiffs Fail to Show that a Preliminary Injunction Is in the Public Interest ........ 23
IV. PLAINTIFFS' REQUEST FOR CLASS-WIDE RELIEF IS IMPROPER ........ 23
V. AN EVIDENCE PRESERVATION INJUNCTION IS UNNECESSARY ........ 25
VI. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Apartment Ass'n of L.A. Cnty., Inc. v. City of L.A.*
10 F.4th 905 (9th Cir. 2021)....................5

*Aquila, Inc. v. Quanta Svcs. Inc.*
805 A.2d 196, 208 (Del. Ch. 2002)....................9

*Arcamuzi v. Cont'l Air Lines, Inc.*
819 F.2d 935 (9th Cir. 1987)....................9

*Austin v. Atlina*
2021 WL 6200679 (N.D. Cal. Dec. 22, 2021)....................8

*Bernhardt v. Los Angeles Cnty.*
339 F.3d 920 (9th Cir. 2003)....................23

*Brown v. Google LLC*
525 F. Supp. 3d 1049 (N.D. Cal. 2021)....................17, 21

*Byars v. Hot Topic, Inc.*
No. CV 22-1652, 2023 WL 2026994 (E.D. Cal. Feb. 14, 2023)....................18, 19

*Calhoun v. Google LLC*
526 F. Supp. 3d 605 (N.D. Cal. 2021)....................11

*CI Games S.A. v. Destination Films*
No. 16-cv-05719, 2016 WL 9185391 (C.D. Cal. Oct. 25, 2016)....................6

*Citizens for Quality Educ. San Diego v. Barrera*
333 F. Supp. 3d 1003 (S.D. Cal. 2018)....................6, 10

*Colopy v. Uber Tech. Inc.*
No. 19-cv-06462, 2019 WL 6841218 (N.D. Cal. Dec. 16, 2019) (Chen, J.)....................24

*Cook v. GameStop, Inc.*
No. 22-cv-1292, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023), *appeal docketed*, No. 23-2574 (3rd Cir. Aug. 29, 2023)....................7

*Cooper v. Slice Techs., Inc.*
No. 17-cv-7102, 2018 WL 2727888 (S.D.N.Y. June 6, 2018)....................13

*Dish Network Corp. v. Fed. Commc'ns Comm'n*
653 F.3d 771 (9th Cir. 2011)....................5

*Disney Enters. v. VidAngel, Inc.*
224 F. Supp. 3d 957 (C.D. Cal. 2016)....................21

*Doe I v. Google LLC*
No. 23-cv-02431, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023)................................ 2, 16, 17

*Doe v. Kaiser Foundation Health Plan, Inc. et al.*
No. 4:23-cv-02207 (N.D. Cal. May 5, 2023) ................................................................ 3

*Doe v. Regents of the Univ. of Cal.*
No. 23-cv-00598, 2023 WL 3316766 (N.D. Cal. May 6, 2023) ........................................ 21

*In re DoubleClick Inc. Priv. Litig.*
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................................................ 15

*Drissi v. Kaiser Found. Hosps., Inc.*
543 F. Supp. 2d 1076 (N.D. Cal. 2008) ..................................................................... 24

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................................... 13

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021) ............................................................................................................. 18

*Fidelity Nat'l. Title Ins. Co. v. Castle*
2011 WL 5882878 (N.D. Cal. 2011)............................................................................. 6

*First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*
356 F. Supp. 2d 1048 (N.D. Cal. 2005) ....................................................................... 6

*Garcia v. Enter. Holdings, Inc.*
78 F.Supp.3d 1125 (N.D. Cal. 2015) .......................................................................... 10

*Garcia v. Google, Inc.*
786 F.3d 733 (9th Cir. 2015) (en banc)..................................................... 1, 5, 6, 10

*GEC US 1 LLC v. Frontier Renewables, LLC*
No. 16-cv-1276, 2016 WL 3345456 (N.D. Cal. June 16, 2016) ........................................ 9

*Gonzales v. Uber Techs., Inc.*
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................................................................... 9

*In re Google Assistant Privacy Litig.*
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................................................................... 21

*In re Google Inc.*
806 F.3d 125 (3d Cir. 2015)...................................................................................... 17

*In re Google Inc. Gmail Litig.*
No. 13-md-02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .................................. 17

*Graham v. Noom, Inc.*
533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................................. 18, 19, 21

*Harris v. Silva*
No. 22-cv-00204, 2023 WL 7016654 (E.D. Cal. Oct. 25, 2023) ........................................ 6, 10

*Hernandez v. Hillsides, Inc.*
47 Cal. 4th 272 (2002)................................................................................................... 20

*Hicks v. Neal*
No. 12-cv-2207, 2012 WL 3791399 (N.D. Cal. Aug. 31, 2012) ............................................. 6

*Hodges v. Comcast Cable Commc'ns., LLC*
21 F.4th 535 (9th Cir. 2021)............................................................................................ 25

*Hunter v. Kaiser Found. Health Plan, Inc.*
434 F. Supp. 3d 764 (N.D. Cal. 2020) ............................................................................. 24

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................ 21

*Javier v. Assurance IQ, LLC*
No. 4:20-CV-02860, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021).................................. 11, 13

*Johnson v. Macy*
145 F. Supp. 3d 907 (C.D. Cal. 2015)................................................................................. 5

*Lamont v. Krane*
No. 5:18-cv-04327, 2019 WL 2010705 (N.D. Cal. May 7, 2019)......................................... 22

*Licea v. Am. Eagle Outfitters*
No. CV 22-1702, 2023 WL 2469630 (C.D. Cal. March 7, 2023).......................................... 18

*Licea v. Cinmar*
No. CV 22-6454, 2023 WL 2415592 (C.D. Cal. March 7, 2023).......................................... 18

*London v. New Albertson's, Inc.*
No. 08-cv-1173, 2008 WL 4492642 (S.D. Cal. Sept. 30, 2008)........................................ 7, 21

*Loucks v. Kaiser Found. Hosps.*
No. 20-cv-01216, 2020 WL 3469326 (N.D. Cal. June 25, 2020) (Chen, J.) ......................... 24

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 10 (N.D. Cal. 2012) ............................................................................. 7, 21

*M.R. v. Dreyfus*
697 F.3d 706 (9th Cir. 2012)........................................................................................... 23

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
571 F.3d 873 (9th Cir. 2009)............................................................................................. 5

*Massie v. GM LLC*
No. 21-cv-787, 2022 WL534468 (D. Del. Feb. 17, 2022) .......... 8

*In re Meta Pixel Healthcare Litig.*
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 2

*Missud v. Cal.*
No. 12-cv-05468, 2012 WL 5350263 (N.D. Cal. Oct. 29, 2012) (Chen, J.) .......... 24

*Moreno v. S.F. Bay Area Rapid Transit Dis*t.
No. 17-cv-02911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .......... 7, 21

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
762 F.2d 1374 (9th Cir. 1985) .......... 5

*Pena v. Gamestop, Inc.*
No. 22-CV-1635, 2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) .......... 15

*Perkins v. LinkedIn Corp.*
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......... 10, 15

*Planned Parenthood Fed'n of Am., Inc. v. Newman*
51 F.4th 1125 (9th Cir. 2022) .......... 16, 17

*Popa v. PSP Group, LLC*
No. 23-cv-0294, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) .......... 7

*Rodriguez v. Google LLC*
No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 17

*Rogers v. Ulrich*
52 Cal. App. 3d 894 (1975) .......... 18

*Shaterian v. Wells Fargo Bank*
No. C-11-920, 2011 WL 2314151 (N.D. Cal. June 10, 2011) .......... 6

*Silver v. Stripe Inc.*
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 13

*Smith v. Facebook, Inc.*
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) .......... 10

*Smith v. Facebook, Inc.*
745 F. App'x 8 (9th Cir. 2018) .......... 11

*Smith v. Watanabe*
No. 21-cv-07872-HSG, 2022 WL 6282201 (N.D. Cal. Sept. 27, 2022) .......... 24

*Sussman v. Am. Broad. Cos.*
186 F.3d 1200 (9th Cir. 1999) .......... 16

*U.S. v. Staves*
383 F.3d 977 (9th Cir.2004) .......... 15

*U.S. v. Streich*
560 F.3d 926 (9th Cir. 2009) .......... 14

*United States v. Holtzman*
762 F.2d 720 (9th Cir. 1985) .......... 22

*Valeo Intellectual Prop., Inc. v. Data Dep't Corp.*
368 F.Supp.2d 1121 (W.D. Wash. 2005) .......... 6

*White v. Soc. Sec. Admin.*
111 F. Supp. 3d 1041 (N.D. Cal. 2015) .......... 9, 20

*Williams v. What If Holdings, LLC*
No. 22-cv-03780, 2022 WL 17869275 .......... 19

*Winter v. Nat'l. Res. Def. Council, Inc.*
555 U.S. 7 (2008) .......... 1, 2, 5, 21

*In re Yahoo Mail Litig.*
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 16

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*
No. 19-cv-00792, 2020 WL 4458908 (N.D. Cal. May 27, 2020) (Chen, J.) .......... 23, 24

*Zepeda v. U.S. I.N.S.*
753 F.2d 719 (9th Cir. 1983) .......... 24, 25

<u>Statutes</u>

18 U.S.C. § 2511(2)(d) .......... 10, 15, 16

<u>Other Authorities</u>

45 C.F.R. § 160.103 .......... 8

F.R.E. 702(b) .......... 1

Fed. R. Civ. Proc. 65(d)(1) .......... 22

Rest. (2d) of Torts § 652B, Comment b .......... 20

## I. INTRODUCTION

Plaintiffs have not satisfied the "doubly demanding" standard for the "particularly disfavored" remedy of a mandatory injunction. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Four months after filing their initial complaint, Plaintiffs filed a motion asking this Court to issue a sweeping mandatory preliminary injunction. In support of their request, Plaintiffs rely on their unverified First Amended Complaint ("FAC") (which is not evidence and does not meet their burden) and the Declaration of Ross A. Malaga (the "Malaga Declaration" or "Malaga Decl."). However, Mr. Malaga also provides no evidence in support of his conclusions.[1] To obtain the drastic remedy of a mandatory injunction, Plaintiffs must provide ***evidence*** that: (1) they are likely to suffer irreparable harm absent an injunction; (2) they are likely to succeed on the merits of their claims; (3) the hardship they would suffer absent an injunction outweighs the hardship Defendants would suffer from entry of an injunction; and (4) an injunction is in the public interest. *Winter v. Nat'l. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs do not come close to satisfying any of these factors.

First, Plaintiffs cannot establish irreparable harm because: (i) they waited four months to request an injunction; (ii) they have not established that any of the information disclosed was identifiable or protected health information; and (iii) there is no evidence of current use or future disclosure of their data so their future harm is entirely speculative.

Second, Plaintiffs are unlikely to prevail on any of their four claims. Plaintiffs' claims cannot succeed on the merits because they impermissibly rely on group pleading and fail to assert any specific allegations against two of the Defendants. Plaintiffs further agreed to the Privacy Statement and Terms and Conditions and thereby consented to the disclosure of their information. In fact, according to Plaintiffs' evidence, only *nonidentifiable* information about limited actions on the Website or Apps was disclosed. *See infra* Section III.B.2. Plaintiffs also fail to establish

[1] Defendants object to Mr. Malaga's Declaration, and, in particular, the purported conclusion that any evidence was "identifying information," because it is not supported by any evidence and fails to meet the requirements of Federal Rules of Evidence 702 and 703. *See* F.R.E. 702(b) (requiring expert testimony to be "based on sufficient facts or data"); Declaration of James Vint ("Vint Decl.") ¶¶ 6–68.

additional elements of each claim.

Third, the balance of equities is in Defendants' favor because Plaintiffs have already received what they seek. Defendants began removing certain Vendor technologies from the Website and Apps over a month before the FAC was even filed, and the removal has already been completed. The only Vendor technology potentially implicated by this lawsuit that remains is certain source code from Adobe essential to providing the content for the Website and App, and source code from Google providing essential map and pharmacy-selection functionality.

Fourth, a preliminary injunction is not in the public interest because the only impact on the public would be the complete shutdown of the Website and Apps. Plaintiffs have not identified any way the public generally will benefit if Defendants are enjoined. Kaiser Plan Members and the public will be harmed to the extent they rely on the Website and Apps to facilitate medical care.

As *Winter* is a conjunctive test, the failure to meet any one of these factors is an independent ground for denying Plaintiffs' Motion. What is more, Plaintiffs fail to cite any court that has granted injunctive relief in similar circumstances. In fact, two courts in this District recently denied preliminary injunctions sought in cases with similar allegations concerning internet technology on healthcare-related websites. *See Doe I v. Google LLC*, No. 23-cv-02431, 2023 WL 6882766, at *1 (N.D. Cal. Oct. 18, 2023) (denying motion because "[t]here is doubt as to their likelihood of success on the merits and, even if there are serious questions going to the merits, the plaintiffs have failed to show the balance of hardships tips sharply in their favor or that a preliminary injunction would serve the public interest"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 784 (N.D. Cal. 2022) (denying motion because "[w]ithout further factual development, it is unclear where the truth lies, and plaintiffs do not meet the high standard required for a mandatory injunction"). Plaintiffs' Motion should be similarly denied.

Finally, Plaintiffs' Motion should be denied because Plaintiffs improperly seek pre-certification, class-wide relief, which is strongly disfavored. This Court has repeatedly denied similar motions seeking class-wide mandatory injunctions. As class certification briefing is months away, class-wide relief is not available. This result is particularly dictated here because

many of the purported class members are bound by valid and enforceable arbitration agreements.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A. Procedural History

Plaintiffs' counsel initiated this dispute by filing a complaint on May 5, 2023, which was dismissed and then re-filed with new Plaintiffs in this instant matter. (*Doe v. Kaiser Foundation Health Plan, Inc. et al.*, No. 4:23-cv-02207 (N.D. Cal. May 5, 2023).) On June 9, 2023, John Doe and Jane Doe filed their initial complaint. (Dkt. 1.) On September 15, 2023, Plaintiffs filed their FAC, adding five new plaintiffs. (Dkt. 44.) The crux of Plaintiffs' claims remained unchanged. They contend that Defendants installed source code provided by Quantum Metric, Twitter, Adobe, Bing, Google, and Dynatrace (the "Vendors") on https://healthy.kaiserpermanente.org (the "Website"), and two mobile applications (the "Apps" and with the Website, the "Site") and that this code causes the disclosure of their protected medical information to the Vendors. (*Id.* ¶¶ 4–6, 75–212.) On October 4, 2023, Plaintiffs filed their motion for a preliminary injunction. (Dkt. 58, Pls. Memorandum in Support of Mot. for Preliminary Injunction ("Mot.").)

### B. The Parties

Kaiser Foundation Health Plan, Inc. ("KFHP") is a health care services plan. (FAC ¶¶ 41–43.) Kaiser Foundation Hospitals ("Hospitals") is a non-profit, public benefit corporation that operates various hospitals and medical offices. (*Id.* ¶ 44.) The Permanente Medical Group, Inc. ("TPMG") is a separate entity owned by physician partners. (*Id.* ¶ 45.) Plaintiffs are enrollees in one of the health plans offered by KFHP ("Kaiser Plan Members"). (*Id.* ¶¶ 13–40, 51.)

### C. The Website and Apps

KFHP owns and operates the Website through which Kaiser Plan Members can access information and perform certain tasks such as finding information about health care services, locations of medical facilities, and information about health conditions. (*Id.* ¶¶ 52–56; Declaration of Bill Vourthis ("Vourthis Decl.") ¶ 2.) The Website includes a secure patient portal (the "Portal") that Kaiser Plan Members can access and use for tasks like scheduling appointments. (FAC ¶¶ 57, 59.) KFHP also owns and operates the Apps, which provide similar services. (*Id.* ¶¶ 62–63.) The use of the Site is governed by the Site Terms and Conditions, which

Plaintiffs admit they agreed to. (*Id.* ¶¶ 64, 66–67, 330–32; Exh. 1 at 1, 13; Exh. 2 at 1.)

**D. KFHP Voluntarily Provided the Relief Sought by Plaintiffs**

In August 2023, over a month before Plaintiffs filed the FAC, KFHP started the process of removing or modifying certain internet technologies provided by the Vendors from the Site. (Vourthis Decl. ¶ 2.) Removal was completed on November 13, 2023. (*Id.* ¶ 6.) KFHP also migrated the Dynatrace technology to an on-premises deployment, ensuring that no Site visitor data is disclosed to Dynatrace. (*Id.* ¶ 9.) KFHP did not remove certain source code from Adobe from the Site because the Site cannot function without it. (*Id.* ¶ 7.) KFHP also did not remove certain source code from Google, which allows Kaiser Plan Members to obtain the locations of, and directions to, health care services and to select a pharmacy to pick-up prescriptions. (*Id.* ¶ 8.)

KFHP implemented a cookie notice and consent banner on the Website informing visitors that: "Kaiser Permanente uses web tracking technologies on this site and may share such data with its third parties to enhance your experience and optimize our ability to make users aware of our services. By navigating the site, you agree to the use of these web technologies as described in our Privacy Statement." (*Id.* ¶ 10 & Exh. 1.) This banner remains on the screen and prevents navigating the Website until the user either closes it or views the Privacy Statement. (*Id.*)

KFHP also implemented two cookie notice and consent banners on the Apps. (*Id.* ¶¶ 11–12 & Exhs. 2–5.) When a user opens the Apps, a banner is displayed at the top of the log-in page. (*Id.* ¶¶ 11–12 & Exhs. 2, 4.) A second banner also appears on the home page of each of the Apps. (*Id.* ¶¶ 11–12 & Exhs. 3, 5.) Both the banner on the log-in pages of the Apps and the banner on the home pages of the Apps inform App users that: "Kaiser Permanente uses tracking technologies in this application and may share data with its third parties to enhance your experience. By using this application, you agree to the use of these technologies as described in our Privacy Statement." (*Id.* ¶¶ 11–12 & Exhs. 2–5.) This is in addition to the consent KFHP obtains via agreement to its Privacy Statement by all Kaiser Plan Members when they create their accounts.

///

///

## III. <u>PLAINTIFFS FAIL TO MEET THE FOUR *WINTER* FACTORS</u>

### A. Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Apartment Ass'n of L.A. Cnty., Inc. v. City of L.A.*, 10 F.4th 905, 911 (9th Cir. 2021) (quotations and citation omitted). For a party seeking a mandatory injunction—one that, as here, requires "affirmative action," rather than "maintaining the status quo"—the burden is "doubly demanding" and preliminary relief is "particularly disfavored." *Garcia*, 786 F.3d at 740. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases . . . ." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). The "court should deny such relief unless the facts and law clearly favor the moving party." *Garcia*, 786 F.3d at 740. To obtain this drastic remedy, Plaintiffs must establish the *Winter* factors: (1) irreparable harm absent a preliminary injunction; (2) likelihood of success on the merits of their claims; (3) the balance of the equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 24. Plaintiffs must carry the burden of establishing each of the factors, and must provide evidence for each. *Dish Network Corp. v. Fed. Commc'ns Comm'n*, 653 F.3d 771, 776 (9th Cir. 2011) ("To warrant a preliminary injunction, [plaintiff] must demonstrate that it meets all four of the elements of the preliminary injunction test established in *Winter*."); *Johnson v. Macy*, 145 F. Supp. 3d 907, 914 (C.D. Cal. 2015) ("[T]he moving party bears the burden of meeting all prongs of the *Winter* test.").

### B. Plaintiffs Fail to Establish Irreparable Harm

To justify a mandatory injunction, Plaintiffs must show that "extreme or very serious damage will result" without one. *Marlyn Nutraceuticals*, 571 F.3d at 879. Here, Plaintiffs fail to establish that they have been injured, let alone that they will suffer irreparable harm.

#### 1. *Plaintiffs' Delay Belies Any Claim of Likelihood of Injury*

Plaintiffs' nearly four-month delay in filing their motion for a preliminary injunction contravenes their claim of irreparable injury. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (confirming "long delay before seeking a preliminary

injunction implies a lack of urgency and irreparable harm"). Courts have observed that a delay of four months or shorter undermines claims of irreparable injury. *See, e.g.*, *Garcia*, 786 F.3d at 746 (four months of delay "undercut [plaintiff's] claim of irreparable harm"); *First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*, 356 F. Supp. 2d 1048, 1055 (N.D. Cal. 2005) (three month delay "undercuts . . . claims of urgency and irreparable harm"); *Valeo Intellectual Prop., Inc. v. Data Dep't Corp.*, 368 F.Supp.2d 1121, 1128 (W.D. Wash. 2005) ("A three-month delay in seeking injunctive relief is inconsistent with [plaintiff]'s insistence that it faces irreparable harm.").

### 2. *Plaintiffs Have Not Shown Disclosure of Protected Health Information*

Plaintiffs fail to establish disclosure of protected health information, which is their only purported harm. Specifically, Plaintiffs' claimed harm is premised on disclosure of Plaintiffs' "patient status and medical information and communications" in violation of HIPAA. (Mot. at 29.) But Plaintiffs provide no evidence that any information allegedly transmitted to the Vendors identifies any Plaintiff or could be linked to Plaintiffs' identities. This means that the information Plaintiffs allege was transferred is not protected by HIPAA.

Nor do Plaintiffs' unverified FAC or supporting declaration rise to evidence in support of their argument. The allegations in the FAC are not evidence and cannot support the entry of the mandatory injunction Plaintiffs seek. *Fidelity Nat'l. Title Ins. Co. v. Castle*, 2011 WL 5882878, *3 (N.D. Cal. 2011) (a preliminary injunction motion must be supported by "[e]vidence that goes beyond the unverified allegations of the pleadings").[2] In addition, the Malaga Declaration uses the term "identifying" information to describe the information allegedly disclosed. (Malaga Decl. ¶¶ 5, 26.) But Mr. Malaga provides no evidence and no support for any conclusion that the

[2] *See also Hicks v. Neal*, No. 12-cv-2207, 2012 WL 3791399, at *3 (N.D. Cal. Aug. 31, 2012) (noting that a plaintiff must demonstrate, not allege, entitlement to a preliminary injunction because allegations alone are insufficient); *Citizens for Quality Educ. San Diego v. Barrera*, 333 F. Supp. 3d 1003, 1044 n.29 (S.D. Cal. 2018) (allegations are insufficient to satisfy plaintiff's burden at preliminary injunction stage "); *Harris v. Silva,* No. 22-cv-00204, 2023 WL 7016654, at *1 (E.D. Cal. Oct. 25, 2023) (ability to state a claim is insufficient to meet the likelihood of success on the merits burden); *CI Games S.A. v. Destination Films*, No. 16-cv-05719, 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) ("[A preliminary injunction] requires factual support beyond the allegations of the complaint . . . ."); *Shaterian v. Wells Fargo Bank*, No. C-11-920, 2011 WL 2314151, at *4 (N.D. Cal. June 10, 2011) ("[A] plaintiff may not support a motion for a preliminary injunction by merely pointing to his complaint and the facts alleged therein.").

information Plaintiffs claim was disclosed can be associated with an individual Plaintiff's identity:

- He provides no evidence establishing that any of the data allegedly transferred to third parties contained any data identifying Plaintiffs, or that any of the data could be linked to the identity of any of the Plaintiffs. (Vint Decl. ¶¶ 7–9, 24–66, Exh. B.)
- He refers to "Web Fingerprinting" in a few paragraphs of his declaration. However, he provides no evidence, examples, citations, or references demonstrating any of the Vendors at issue implements this theoretical concept, or that they engaged in "Web Fingerprinting" with respect data collected from Plaintiffs on the Website. He fails to show any such techniques could be or were used to identify any of the Plaintiffs with respect to any information from the Website. (*Id.* ¶¶ 6c, 21–23.)
- Aside from bald assertions of "Web Fingerprinting," Mr. Malaga does not discuss identifiability at all. Mr. Vint examined each of the alleged transmissions of information in Mr. Malaga's declaration, and explains that there is no evidence or information in the Malaga Declaration to show that any of the transmissions were identifiable to Plaintiffs or could be linked to Plaintiffs' identities. (*Id.* ¶¶ 7–9, 24–66 & Exh. B.)
- Mr. Malaga provides no support for the assertions that Quantum Metric is implemented on the Site in such a way as to be the "equivalent of peering over the User's shoulder and listening in on the patients' communications with their medical providers." (*Id.* ¶¶ 58–60.)
- He does not support his assertions that any "communications" are "intercepted" or "redirected," or that the contents of communications with health care providers were ever disclosed. (*Id.* ¶¶ 6a–b, 10–20.)

Accordingly, Plaintiffs cannot establish that information was disclosed in any manner capable of causing them irreparable harm because they suffered no violation of their privacy or other cognizable injury. *See Moreno v. S.F. Bay Area Rapid Transit Dis*t., No. 17-cv-02911, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) (collection of "*anonymous* clientid" and location did not violate plaintiff's privacy); *Low v. LinkedIn Corp*., 900 F. Supp. 2d –10, 1025 (N.D. Cal. 2012) (privacy claim failed where information was not directly identifiable); *see also London v. New Albertson's, Inc*., No. 08-cv-1173, 2008 WL 4492642, *8 (S.D. Cal. Sept. 30, 2008) (disclosure of de-identified medical information did not violate plaintiffs' privacy); *Cook v. GameStop, Inc*., No. 22-cv-1292, 2023 WL 5529772, at *4–5 (W.D. Pa. Aug. 28, 2023), *appeal docketed*, No. 23-2574 (3rd Cir. Aug. 29, 2023) (plaintiff did not allege harm sufficient for Article III standing when information disclosed was not linked to her identity); *Popa v. PSP Group, LLC*, No. 23-cv-0294, 2023 WL 7001456, at *5 (W.D. Wash. Oct. 24, 2023) (no injury where plaintiff failed to allege "that she entered any personally identifiable information into Defendant's website .

. . or that Defendants were able to connect the information [the vendor] collected to her identity"); *Massie v. GM LLC*, No. 21-cv-787, 2022 WL534468, at *5 (D. Del. Feb. 17, 2022) ("Plaintiffs do not have a reasonable expectation of privacy over the anonymized data captured by the Session Replay software at issue here.").

Plaintiffs repeatedly allege disclosure of patient status, communications with providers, and medical information protected by HIPAA, but there is no ***evidence*** that any Vendor received protected health information ("PHI")—the only information considered medical information under HIPAA. Significantly, HIPAA does not restrict *all* health-related information from disclosure. Instead, ***to be covered as PHI***, information must be "***individually identifiable*** health information ("IIHI")." *See* 45 C.F.R. § 160.103 (emphasis added). The statute defines IIHI as a "subset of health information" that meets certain criteria. *Id.* Information is considered IIHI if it: (1) is created by a health care provider; (2) relates to the past, present, or future physical or mental health condition of an individual; the provision of health care to an individual; or payment for the provision of health care to an individual; *and also either* (i) identifies the individual or (ii) there is a reasonable basis to believe the information can be used to identify the individual. *Id*.

Accordingly, HIPAA does not proscribe the disclosure of health-related information, provided it does not identify an individual and there is no reasonable basis to believe it could be used to identify an individual. As explained above, Plaintiffs proffer no evidence that any disclosed information was identifiable, or could be linked to Plaintiffs' identities. (Vint Decl. ¶¶ 7–9, 24–66.) Plaintiffs also fail to provide any evidence that "communications with healthcare providers" were disclosed. (*Id.* ¶¶ 10–14, 60.) Therefore, Plaintiffs also fail to show that any information allegedly disclosed is medical information protected by HIPAA.[3]

### 3. *There Is No Evidence of Use of Any Data Now or In The Future*

Plaintiffs fail to provide any evidence supporting their contention that data collected by Vendors was used for marketing or "monetization." (*See* Mot. at 5.) Mr. Malaga's declaration contains no claims, assertions, or evidence that any information was "monetized" or used for

[3] Even if Plaintiffs can establish a HIPAA violation (they cannot), (*see* Mot. at 5–6,) there is no private right of action under HIPAA. *See Austin v. Atlina*, 2021 WL 6200679, at *3 (N.D. Cal. Dec. 22, 2021).

marketing by the Vendors. (*See, e.g.*, Malaga Decl. ¶ 5 (summarizing Mr. Malaga's conclusions and not mentioning anything about monetization or marketing).) Plaintiffs also fail to offer any evidence that any of their personal data was used for purposes other than to provide services to Defendants. Nor do Plaintiffs proffer any evidence that the Vendor's use of data to provide services to Defendants was improper or harmed Plaintiffs. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092–93 (N.D. Cal. 2018) ("Without more allegations as to what, if anything, [the vendors] did with this information, [plaintiffs] ha[ve] not plausibly alleged a serious invasion of privacy."); *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015) (disclosure of personal information including identity documents does not rise to the level of a "highly offensive disclosure of information or a 'serious invasion' of a privacy interest" absent evidence it was improperly used).

Even if Plaintiffs had put forth such evidence (they have not), Plaintiffs cannot demonstrate any future irreparable harm. The party seeking an injunction must demonstrate "a significant threat of irreparable injury." *Arcamuzi v. Cont'l Air Lines, Inc*., 819 F.2d 935, 937 (9th Cir. 1987). The injury must be "imminent and genuine, as opposed to speculative." *GEC US 1 LLC v. Frontier Renewables, LLC*, No. 16-cv-1276, 2016 WL 3345456, at *4 (N.D. Cal. June 16, 2016) (citing *Aquila, Inc. v. Quanta Svcs. Inc.*, 805 A.2d 196, 208 (Del. Ch. 2002)).

Plaintiffs do not come close to satisfying this standard. To the extent they were installed, KFHP voluntarily removed internet technologies provided by Adobe, Bing, Google, Twitter, and Quantum Metric from the Site. (Vourthis Decl. ¶¶ 2–6.) KFHP also migrated the Dynatrace technology to an on-premise deployment. (*Id.* ¶ 9.) Plaintiffs have not provided any evidence that either of the two technologies that remain on the Website or Apps—provided by Adobe and Google—even fit within the injunction that is sought, let alone that they pose a risk of irreparable harm. Finally, Defendants implemented banners on the Site further disclosing that Defendants use tracking technologies and that data is disclosed to third parties—obtaining additional consent on top of that obtained via the Site Terms and Conditions. Given that Plaintiffs are now fully aware of the disclosures in the Site Terms and Conditions, and the information that is being disclosed, their continual use of the Site with this knowledge does not constitute irreparable harm.

### C. Plaintiffs Do Not Show Likelihood of Success on the Merits.

Plaintiffs fail to carry their burden of establishing likelihood of success on the merits, let alone "that the law and facts *clearly favor* [their] position," as required for obtaining a mandatory injunction. *Garcia*, 786 F.3d at 740. "Mere allegations are insufficient" to satisfy Plaintiffs' "burden at the preliminary injunction stage." *Citizens for Quality Educ. San Diego v. Barrera*, 333 F. Supp. 3d 1003, 1044 n.29 (S.D. Cal. 2018). Plaintiffs' ability to "state a cognizable claim is not sufficient to meet the burden of demonstrating a likelihood of success on the merits for purposes of a preliminary injunction." *Harris*, 2023 WL 7016654, at *1. Plaintiffs fail to meet this standard. Plaintiffs' consent is a complete defense to the claims asserted as the basis for the preliminary injunction. Each claim also fails for multiple other reasons.

#### 1. There Are No Claims Against Hospitals or TPMG

Plaintiffs have proffered no evidence establishing any claims against the Hospitals or TPMG. Plaintiffs' claims are based exclusively on the alleged disclosure of information that occurred as a result of their use of the Site. (*See* FAC ¶¶ 1–250.) The Site is owned and operated exclusively by KFHP. (Vourthis Decl. ¶ 2.) Use of the Site is governed by the Site Terms and Conditions. (FAC ¶¶ 64, 66–67, 330–32; Exh. 1 at 1, 13; Exh. 2 at 1.) The Site Terms and Conditions confirm that the Site is owned and operated exclusively by KFHP. (FAC, Exh. 1 at 1, 13; Exh. 2 at 1.) Plaintiffs have not (and cannot) put forth any evidence to the contrary. Plaintiffs have zero likelihood of success on their claims against the Hospitals and TPMG.

#### 2. Plaintiffs Consented to the Disclosure of the Information

Consent is a complete bar to Plaintiffs' claims.[4] While there "may be subtle differences" among the consent doctrines applicable to each claim, the question "is essentially the same: would a reasonable user who viewed the [Site Terms and Conditions] have understood that" Defendants were disclosing the information at issue? *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212

[4] 18 U.S.C. § 2511(2)(d) (consent is a complete bar to ECPA wiretapping claims); *Garcia v. Enter. Holdings, Inc.*, 78 F.Supp.3d 1125, 1136 (N.D. Cal. 2015) (consent is a complete bar for CIPA claims); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955–56 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (consent bars claims for intrusion upon seclusion and invasion of privacy).

(N.D. Cal. 2014) (dismissing claims based on consent); *see Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018) (same); *Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860, 2021 WL 940319, at *4 (N.D. Cal. Mar. 9, 2021) (same). The answer here, is yes. The disclosures in the Site Terms and Conditions "explicitly notify users of the practice at issue." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). Accordingly, by agreeing to the Site Terms and Conditions, Plaintiffs consented to the disclosures listed in Mr. Malaga's declaration, upon which Plaintiffs base their four claims.

The Site Terms and Conditions includes the Privacy Statement that describes how KFHP "collects and uses the personal information you provide on, and other information that is collected from your use of the Site."[5] (FAC, Exh. 2 at 2.) The Privacy Statement makes clear that "[p]ersonal information means information that is individually identifiable." (*Id.*) The Privacy Statement further discloses that "[w]e will use and disclose your personal information as stated in this Privacy Statement." (*Id.* Exh. 2 at 3.) In the section titled "Collecting and using and disclosing personal information," the Privacy Statement also explains the collection and disclosures described in Mr. Malaga's declaration:

- Section 3 explains that Kaiser ***and third parties*** place cookies and similar technologies that, among other things, track users' navigation path and "click path" through the website: "We ***and our service providers*** may place Internet 'cookies' or similar technologies (JavaScript, HTML5, Etag) on the computer hard drives of visitors to the Site. Information we obtain helps us to tailor our Site to be more helpful and efficient for our visitors. . . . . For example, we are able to see the navigation path taken by users, . . . We use two types of cookies, "session" cookies and "persistent" cookies, along with other similar technologies . . . We use session cookies to help customize your experience on our Site, maintain your signed-on status as you navigate through our features, ***and to track your 'click path' through our web pages or mobile screens***. . . ." (*Id.* Exh. 2 at 5–6 (emphasis added).)

- Section 5 explains: "We have contracted ***a third party ad network*** to manage our advertising on other sites. *Our ad network service provider uses cookies, Web beacons, and other tracking technologies* ***to collect information about your activities on this and other websites and to then provide you with KP advertising on other websites***. We <u>may</u> also place a persistent third-party cookie (provided by Google) on your hard drive if you sign on to kp.org. This cookie will prevent kp.org members from seeing advertising that is targeted towards people who are not members of Kaiser Permanente's health plan, when searching on Google." (*Id.* Exh. 2 at 6–7 (emphasis added).)

[5] The term "Site" is defined to include the Website and Apps. (FAC, Exh. 2 at 2.)

- Section 13 explains: "We may disclose personal information to any person performing . . . operational or other services for us. . . . We may also disclose your personal information to third parties who provide services on our behalf to help with our business activities . . . These companies are authorized to use your personal information only as necessary to provide these services to us . . . these companies must abide by our data privacy and security requirements, and are not allowed to use your personal information they receive from us for any other purpose. ***These services may include: sending marketing communications . . . conducting research analysis***." (*Id.* Exh. 2 at 9 (emphasis added).)

The Privacy Statement thus puts any reasonable person on notice that KFHP utilized its own and third-party tracking technology on the Site that, among other things, allowed KFHP ***and third parties*** to collect personal information and information about users' activities on the Site, their click paths, and the information and pages that they viewed, including for analysis, monitoring, and advertising. This is the exact information that Plaintiffs now claim they did not know would be disclosed to third parties. (*See, e.g.*, *id.* ¶¶ 86–96, 115–19, 122–31, 146–69, 171–89, 200–06, 209–11.) As noted above, Plaintiffs admit that they are bound by the Privacy Statement. Thus, even if any identifiable information had been disclosed—and Plaintiffs provide no evidence of this—Plaintiffs actually consented to such disclosure.

Plaintiffs make baseless arguments that the Privacy Statement does not encompass Defendants' alleged activity. First, Plaintiffs argue that Defendants do not obtain consent to allow third parties "to intrude upon, read, intercept, and/or use their medical information or the contents of their communications with their healthcare providers." (Mot. at 13.) They also claim Defendants only state that cookies or similar technologies that do not contain information about health history "may" be used. (*Id.* at 5–6.) However, Plaintiffs provide no ***evidence*** that any identifiable personal or medical information was disclosed. *See supra* Section III.B.2. They provide no evidence that the contents of communications with health care providers was ever disclosed. (Vint Decl. ¶¶ 6a, 10–14, 60.) Plaintiffs provide no evidence that any cookies contained health history—indeed, Mr. Malaga does not even address cookies. (Malaga Decl. at 7, n.5.) According to Plaintiffs' evidence, only *nonidentifiable* information about limited actions on the Website or Apps was disclosed. (Vint Decl. ¶¶ 7–9, 24–66; *see supra* Section III.B.2.) In any event, the Privacy Statement clearly discloses:

- Third parties use tracking technology to collect personal information and that Kaiser discloses personal information to third parties. (*E.g.*, FAC, Exh. 2 at 5–7, 9.) The information collected and transmitted by cookies are clearly disclosed. (*Id.* Exh. 2 at 5–7, 9.)

- Third parties may use tracking technology to *monitor* Plaintiffs' activities on the website including their click stream, and that third parties set cookies and use other tracking technology "to collect information about your activities on this and other websites." (*Id.* Exh. 2 at 6.)

- Moreover, the "use of the word 'may,' as opposed to 'will,' in the privacy policy ***does not make it such that the policy gives insufficient notice of the alleged conduct***. "Privacy policies often make disclosures by stating what companies 'may' do, and such disclosures have been upheld time and again by courts as sufficient to establish consent." *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021).[6]

Second, Plaintiffs argue that Defendants do not disclose the use of technologies "such as Session Replay and other code," which "redirects Users' sensitive, personal communications to external servers as they navigate." (Mot. at 6.) Again, Plaintiffs provide no evidence that Quantum Metric (the alleged "session reply" technology) captures any communications or sensitive information, (Vint Decl. ¶¶ 57–65,) or that any communications were disclosed or that any identifiable information was disclosed. (*Id.* ¶¶ 6a, 7–14, 24–67.) As a result, Plaintiffs cannot claim that any "sensitive, personal" information is even at issue. *See supra* Section III.B.2. The Privacy Statement also states that personal information will be collected by, and disclosed to, third parties and that that third parties may use tracking technology to *monitor* Plaintiffs' activities on the website and their click stream. (FAC, Exh. 2, at 5–7, 9.) Even if there was real-time collection and transmission (there was not), the word "monitor" clearly encompasses "real time" collection such as by any "Session Reply."

Third, Plaintiffs argue that Defendants do not disclose that "personal and medical information" may be "monetized" "in violation of HIPAA and other federal and state laws," and imply information was used for "marketing." (Mot. at 6, 19.) However, Plaintiffs provide no

[6] *See also Cooper v. Slice Techs., Inc.*, No. 17-cv-7102, 2018 WL 2727888, at *4 (S.D.N.Y. June 6, 2018) (rejecting argument that the use of "may" in a privacy policy is misleading and fails to disclose actions will occur); *Javier*, 2021 WL 940319, at *4 (same); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 792–93 (N.D. Cal. 2019) (same).

evidence that any identifiable personal or medical information was disclosed, and as such, they have no basis to claim any violation of HIPAA or other laws. They also provide no evidence that any information was "monetized" or used for marketing.[7] Even if Plaintiffs provided evidence that any of the data at issue was identifiable *and* was monetized or used for marketing (and again, they have no evidence of either factor), the Privacy Statement clearly discloses that third parties set cookies and use other tracking technology "to collect information about your activities on this and other websites" ***for advertising purposes*** and that personal information is disclosed to third parties for marketing and analysis purposes. (FAC, Exh. 2 at 6–7, 9.)

Fourth, there is no merit to Plaintiffs' claim that the Privacy Statement "promises that 'we do not collect any personally identifiable information about visitors to the Site,' 'that no personally identifiable information is associated with the data [gathered on Site activity]' and concerning the cookies placed by its services providers that '[t]he cookie consists of a unique identifier that does not contain information about your health history.'" (Mot. at 27.)

The Privacy Statement states that Defendants "do not collect any personal health information ***with a Web beacon***, and do not link Web beacons with any other personal health information you've given us." (FAC, Exh. 2 at 6 (emphasis added)). Further, the fact that KFHP and the Site collect heath information is explained by the Privacy Statement, (*id.* Exh. 2 at 4), and the fact that various types of information are collected and transmitted by cookies are clearly disclosed.[8] (*Id.* Exh. 2 at 5–7, 9.)

Finally, Plaintiffs claim that they could not give valid consent via notice in the Privacy Statement since explicit authorization is required for healthcare providers to share patient data for marketing purposes. (Mot. at 6; *see also id.* at 15, 17.) Plaintiffs are wrong.

First, Plaintiffs provide no evidence that any information (PHI) covered by HIPAA or the "HHS guidance" was disclosed. *See supra* Section III.B.2. Second, Plaintiffs' continued reference to HIPAA is misplaced because HIPAA provides no private right of action. *See U.S. v.*

[7] The only evidence Plaintiffs submit is the Malaga Declaration which, as noted above, contains no claims, assertions or evidence that any information was "monetized" or used for marketing.

[8] As noted, Plaintiffs provide no evidence that any cookies contain health history.

*Streich*, 560 F.3d 926, 935 (9th Cir. 2009) ("HIPAA does not provide any private right of action . . . ."). For Plaintiffs' Motion, only consent under the ECPA, CIPA, and the common law matter—HIPAA's consent requirement is irrelevant. The ECPA, CIPA, and common law ***do not have a heightened consent requirement for medical information***,[9] meaning Plaintiffs' consent to the Privacy Statement is a complete defense to all of their claims.

In sum, Plaintiffs admit they agreed to the Privacy Statement which put them on notice of the use of internet technologies and the disclosure of the information in Mr. Malaga's declaration to third parties. Accordingly, even if Plaintiffs provided evidence to support their allegations (they do not) each of the four claims on which the motion is based still fail. Plaintiffs' consent to the complained of activity is fatal to Plaintiffs' request for a preliminary injunction.

#### 3. Plaintiffs Fail to Demonstrate Defendants Violated the ECPA

Plaintiffs allege that Defendants violated the Federal Wiretap Act by: (i) intercepting and redirecting Plaintiffs' communications on the Site to the Vendors; and (ii) disclosing or divulging the communications to the Vendors. (FAC ¶¶ 276–84.) Under either of these theories, Plaintiffs' claim fails as a matter of law.

As an initial matter, Defendants cannot be held liable for interception/redirection because they are a party to the communications. Section 2511(2)(d) of the Wiretap Act states that it is not unlawful "to intercept a wire, oral, or electronic communication ***where such a person is a party to the communication***." 18 U.S.C. § 2511(2)(d) (emphasis added). Here, Plaintiffs plainly allege that Defendants are a party to the communications, which are alleged to have been transmitted from Plaintiffs to Defendants through the Site. (FAC ¶¶ 275–80.) Accordingly, Defendants cannot be held liable for "intercepting" communications to or from them. *See Pena v. Gamestop, Inc.*, No. 22-CV-1635, 2023 WL 3170047, at *4 (S.D. Cal. Apr. 27, 2023) (finding website operator "squarely within the party exception and barring Defendant's liability under the [Federal Wiretap Act]"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001)

---

[9] *U.S. v. Staves,* 383 F.3d 977, 981 (9th Cir.2004) ("[C]onsent may be implied where there are surrounding circumstances indicating that the defendant knowingly agreed to the surveillance." (quotations and citation omitted)); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014) (consent to an interception can be explicit or implied).

(finding website owners are parties to the digital communications sent by users of their website).

Even assuming disclosure of communications occurred (it did not), Plaintiffs' claim still fails because the consent of one party to the communication is a complete defense. 18 U.S.C. § 2511(2)(d). Plaintiffs admit that Defendants consented to the disclosure. (FAC ¶¶ 275–80.) As an intended recipient of Plaintiffs' communications, Defendants' consent is a complete defense to the Wiretap Act claim. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim.").

Finally, Plaintiffs' reliance on the "crime-tort" exception in Section 2511(2)(d) of the ECPA is unavailing. Section 2511(2)(d) provides that consent is not a defense where the "communication is intercepted for the purpose of committing any criminal or tortious act." According to Plaintiffs, "the purpose of [Defendants'] interception was . . . to hand over confidential and HIPAA-protected information to Third Party Wiretappers." (Mot. at 10.) This argument cannot resurrect Plaintiffs' fatally deficient ECPA claim.

First, this argument fails because Plaintiffs offer no evidence that any PHI, IIHI or HIPAA-protected information was exposed. *See supra* Section III.B.2. Second, Plaintiffs argument fails because the focus of the crime-tort exception "is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious. . . . Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (citation omitted). Thus, courts will not apply the crime-tort exception unless the defendant's primary motivation was to commit a crime or tort ***independent of the violation of the ECPA***. *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("[Section] 2511(2)(d) requires that the criminal or tortious purpose be independent of and separate from the purpose of the recording.") "It is not enough for the interception itself to have violated the law, the interception must be 'done for the purpose of facilitating some ***further impropriety***' for the criminal or tortious exception to apply." *Doe I v. Google LLC*, No. 23-CV-02431, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) (citation omitted, emphasis added) (holding plaintiffs failed to establish likelihood of prevailing on ECPA claim and denying

preliminary injunction). Defendants offer no evidence to satisfy this standard.

Defendants' alleged ECPA violation is that they purportedly disclosed Plaintiffs' information to the Vendors (which Plaintiffs call the "Third Party Wiretappers"). Plaintiffs also argue that Defendants' alleged criminal/tortious purpose was to "hand over confidential and HIPAA-protected information to Third Party Wiretappers." (Mot. at 10.) Accordingly, Plaintiffs allege no separate criminal or tortious purpose or subsequent use of information. Plaintiffs only assert that the disclosure of information (which is the alleged violation of the ECPA) was *also* the tortious purpose. This is not sufficient. *Doe I*, 2023 WL 6882766, at *2; *Planned Parenthood*, 51 F.4th at 1136 ("The recording party must also have the independent criminal or tortious purpose at the time the recording was made."); *In re Google Inc*., 806 F.3d 125, 145 (3d Cir. 2015) (affirming dismissal where plaintiffs failed to show "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording" even though "the plaintiffs may well plead facts that constitute violations of California [privacy] laws"). Since Plaintiffs identify no "further impropriety"—different from the alleged disclosure itself—the crime-tort exception is inapplicable.[10] And to the extent Plaintiffs might argue that the further purpose was marketing, this argument too would fail.[11] Accordingly, Plaintiffs fail to show they are likely to succeed on the Wiretap Act claim.

### 4. Plaintiffs' CIPA Claim Cannot Succeed on The Merits

Plaintiffs' second claim, for violation of CIPA, Cal. Pen. Code § 631, is based on the same allegations as the Wiretap Act claim. Plaintiffs, likewise, fail to establish they will prevail on it. As with the Wiretap Act, Defendants cannot "intercept" their own communications under CIPA.

---

[10] Plaintiffs rely on *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021), in which plaintiffs alleged that Google intercepted data for the purpose of "associating their data with preexisting user profiles," which the court held was an independent wrong for purposes of the crime-tort exception. Here, Plaintiffs allege no further use of the information, let alone further criminal or tortious use. *Brown* was also decided on a motion to dismiss—the court did not find that plaintiffs had a *likelihood of succeeding on the merits*.

[11] A money-making or advertising motive is not a criminal or tortious purpose. *Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (crime-tort exception inapplicable where alleged interceptions were financially motivated); *In re Google Inc. Gmail Litig*., No. 13-md-02430, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (exception does not apply where the interceptor's purpose was to make money).

A party to a communication cannot be held liable under section 631 because "only a third party can listen secretly to a private conversation." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021) ("Published cases are in accord that Section 631 applies only to third parties and not participants."); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("It is never a secret to one party to a conversation that the other party is listening to the conversation. . . ."). Plaintiffs allege here that they communicated with Defendants through the Site. (FAC ¶¶ 275–80.) As participants in the communications, Defendants cannot intercept them.

There is also no liability for Defendants under CIPA if the third party "intercepting" the communication is a tool, agent, or extension of the website operator. In such case, the service provider is considered a party, not a third-party eavesdropper. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (finding that service provider was a party, not a third party where it "provide[d] a tool . . . that allow[ed] [the defendant] to record and analyze its own data in aid of [its] business"). This is precisely the case here. Plaintiffs assert that Defendants installed software code which allowed Defendants to use the Vendors' services. (FAC ¶¶ 4, 74–77, 83, 108–114, 134–42.) For example, the FAC alleges that "[s]ubject to the terms of the Agreement, Quantum is provided a limited license to Customer Data for the purpose of providing the Quantum Service . . . ***to Customer***," (*id.* ¶ 83 n.17 (emphasis added),) and "Twitter summarizes how partners, ***such as Kaiser Permanente, can use*** its analytic tools for marketing." (*Id.* ¶ 142 (emphasis added).)

To remove the Vendors from the party exemption, Plaintiffs must show the Vendors "acted sufficiently independent" from Defendants "as to constitute an unannounced auditor under California law." *Licea v. Cinmar*, No. CV 22-6454, 2023 WL 2415592, at *9 (C.D. Cal. March 7, 2023); *Licea v. Am. Eagle Outfitters*, No. CV 22-1702, 2023 WL 2469630, at *8 (C.D. Cal. March 7, 2023); *Byars v. Hot Topic, Inc.*, No. CV 22-1652, 2023 WL 2026994, at *10 (E.D. Cal. Feb. 14, 2023); *Graham*, 533 F. Supp. 3d at 832. A Section 631(a) claim fails where, as here, the Vendors merely "analyzed or used the data *on behalf of* or *in tangent with*" the website owner, *Cinmar,* 2023 WL 2415592, at *9 (emphasis added)—that is, where there are no facts to suggest that the

vendor "used the data itself." *Graham*, 533 F. Supp. 3d at 832; *accord Williams v. What If Holdings, LLC*, No. 22-cv-03780, 2022 WL 17869275, at *3–4 (finding vendor was not a third-party where no facts indicated vendor used data itself); *Byars*, 2023 WL 2026994, at *10 (same).

Plaintiffs provide ***no evidence*** that any of the Vendors independently use information from the Site for their own purposes. Mr. Malaga, who provides Plaintiffs' only evidence, does not opine on this issue at all. (*See, e.g.*, Malaga Decl. ¶ 5.) As explained, the FAC is not evidence and cannot demonstrate entitlement to a preliminary injunction. Furthermore, even if credited, the allegations in the FAC are insufficient to remove these service providers from CIPA's party exemption. As noted, Plaintiffs allege in conclusory fashion in the FAC that the Vendors were acting merely as service providers and tools for Defendants, and that the Site utilized each service provider's code and products. (*See, e.g.*, FAC ¶¶ 4, 74–77.) Plaintiffs make no effort to show that any of the Vendors were sufficiently independent from Defendants with respect to data collected from the Site to render them third-party eavesdroppers within the meaning of Section 631(a) in this case. Plaintiffs' failure to provide evidence that the Vendors actually ***independently used Plaintiffs' data or communications*** for any purpose other than providing services to Defendants is fatal. *See Byars*, 2023 WL 2026994, at *10 ("Without alleging a single specific fact in support of the contention that the third party 'harvest[s] data for financial gain,' the allegation is a mere conclusion disregarded under *Twombly* and *Iqbal*."). For this reason, Plaintiffs fail to establish a probability of prevailing on the CIPA claim.

**5. Plaintiffs' Privacy Claims Fail**

Plaintiffs' claims for intrusion upon seclusion and invasion of privacy fail for three reasons. First, Plaintiffs cannot convert Defendants' alleged ***disclosure*** of information to the Vendors into the required ***intrusion***. Second, Plaintiffs fail to show that any information allegedly disclosed was individually identifiable as "their" medical information. Third, Plaintiffs fail to provide evidence that any data was used, except by the Vendors to provide services to Defendants.

A claim for intrusion upon seclusion requires allegations that a defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and that the intrusion "occur[red] in a manner highly offensive to a

reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2002). Similarly, when assessing a Constitutional invasion of privacy claim, courts consider (1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests. *Id.* at 288. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *White*, 111 F. Supp. 3d at 1053. "Both the California Constitution and the common law set a high bar for an invasion of privacy claim. Even disclosure of personal information, including social security numbers, does not constitute an egregious breach of social norms to establish an invasion of privacy claim." *Id.*

As an initial matter, Plaintiffs do not establish an ***intrusion*** by Defendants, they allege only an improper ***disclosure of information***. Specifically, Plaintiffs allege that Defendants somehow "intruded" when they "***disclosed*** communications [they] received from Plaintiffs" to the Vendors. (FAC ¶ 305 (emphasis added).) A disclosure of information does not establish an intrusion.[12] *See* Rest. (2d) of Torts § 652B, Comment b (explaining that an intrusion is where a defendant "oversee[s] or overhear[s] the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires[,] . . . opening his private and personal mail, searching his safe or his wallet, examining his private bank account, [etc.]."). Defendants did not look though Plaintiffs' windows, or open their mail. Defendants received data that Plaintiffs voluntarily submitted to Defendants. Defendants were a party to, and intended recipient of, the information at issue. Thus, while Plaintiffs could conceivably claim ***the Vendors*** invaded their privacy, they have not established an "intrusion" by Defendants.

Moreover, Plaintiffs have not established a "highly offensive" intrusion. Plaintiffs provide no evidence that any identifiable information, PHI or IIHI was disclosed. *See supra* Section III.B.2. This is fatal because there is no protectable privacy interest in deidentified information.

---

[12] Disclosures do not create liability for intrusion upon seclusion because California law recognizes a separate tort for the public disclosure of private facts. Plaintiffs attempt to fit their disclosure allegations into an intrusion tort because they cannot plead or prove their data was ever disclosed to the public—a required element for the disclosure tort.

*In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure to third parties of "unique device identifier number, personal data, and geolocation information" was not "an egregious breach of social norms"); *London*, 2008 WL 4492642, *8 (disclosure of de-identified medical information did not violate plaintiffs' privacy); *Low*, 900 F. Supp. 2d at 1025 (privacy claim failed where information was not directly identifiable); *Moreno*, 2017 WL 6387764, at *8 (disclosure of "clientid" and location did not violate plaintiff's privacy).

Finally, Plaintiffs provide no evidence that any data was used except by the Vendors to provide services to Defendants—and use of data by a vendor to provide services to an intended recipient is not highly offensive. For this reason as well, Plaintiffs' claims fail. Indeed, because Plaintiffs' ECPA and CIPA claims fail, their privacy claims also fail. *See, e.g*., *Graham*, 533 F. Supp. 3d at 836 ("Because there was no plausible wiretapping by [vendor defendant], the plaintiffs did not plausibly plead that they possess a legally protected privacy interest."); *In re Google Assistant Privacy Litig*., 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (dismissing intrusion upon seclusion claim where Plaintiffs failed to state Federal Wiretap claim and CIPA claim).

Plaintiffs rely on two cases addressing motions to dismiss to argue that they have a likelihood of success on the merits, namely *Doe v. Regents of the Univ. of Cal.*, No. 23-cv-00598, 2023 WL 3316766 (N.D. Cal. May 6, 2023) and *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021). These cases applied the motion to dismiss standard and did not concern disclosure of data couched as an "intrusion" as a basis for dismissal. Unlike these cases, Plaintiffs are required *to provide evidence* to establish their claims. They have not provided any *evidence* establishing disclosure of identifiable information, PHI, IIHI or a highly offensive intrusion.

**D. The Balance of Equities Does Not Tip In Plaintiffs' Favor**

The balance of equities factor requires the Court to weigh the "competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). To secure an injunction, Plaintiffs must show that the balance of equities "tips sharply" in their favor. *Disney Enters. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 977 (C.D. Cal. 2016). Plaintiffs fail to do so.

KFHP voluntarily took the steps sought by Plaintiffs' Motion and began doing so over a

month before Plaintiffs filed their FAC, and six weeks before they filed their request for a preliminary injunction. (Vourthis Decl. ¶ 2.) Accordingly, Plaintiffs cannot show they would be harmed without the injunction they seek.

Assuming the Adobe source code remaining on the Site falls within the purview of the proposed injunction, its removal would cause the Site to completely shut down, (*id*.,) and to need to be rebuilt without using the third-party content delivery services. To the extent that is even possible, it would be a massive and expensive undertaking that would certainly be a hardship on Defendants. This would not only have disastrous consequences for Defendants, it would also negatively impact all Kaiser Plan Members who would be unable to use the Site in the meantime.[13]

Finally, Federal Rule of Civil Procedure 65(d)(1) requires that an injunction "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts" to be restrained. This rule requires the language of injunctions to be reasonably clear so that ordinary persons will know precisely what action is proscribed. *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985); *Lamont v. Krane*, No. 5:18-cv-04327, 2019 WL 2010705, at *3–4 (N.D. Cal. May 7, 2019) (declining to issue injunction where it could not be described with particularity). Plaintiffs do not satisfy this Rule. They do not identify, anywhere, the precise technologies that Defendants would be required to remove if the injunction is entered. Their vague references to source code do not satisfy the requirement that they describe in reasonable detail the acts that Defendants would be required to take. As such, the proposed injunction would place an additional hardship on Defendants—figuring out if any additional technologies are required to be removed—with the risk of Plaintiffs playing "gotcha" over any disagreements concerning which technologies the injunction applies to. Plaintiffs' inability to even identify the technologies they are asking that Defendants be ordered to remove demonstrates that the preliminary injunction should not be entered.

///

[13] Similarly, removing the remaining source code from Google would take away important functionality that allows Kaiser Plan Members to select pharmacies and obtain directions to facilities.

**E. Plaintiffs Fail to Show that a Preliminary Injunction Is in the Public Interest**

The "public interest inquiry primarily addresses impact on non-parties rather than parties," and takes into consideration "the public consequences in employing the extraordinary remedy of injunction." *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931–32 (9th Cir. 2003). Plaintiffs do not address the burden on non-parties and instead extol the importance of privacy in general and assert hyperbolically that an injunction would protect members of the public "from the surreptitious harvesting of their private health information." (Mot. at 32.) That rhetoric is misplaced. This case is not a referendum on privacy in general, nor does it have anything to do with enforcing a public interest in privacy rights. (*See id.*) It is about the ways in which KFHP—with full disclosure and user consent—uses common internet technologies to facilitate the collection and use of data concerning Site visitors. Plaintiffs cite no authority for the proposition that an injunction is automatically warranted when privacy issues are implicated, even though that logic is the cornerstone of their entire Motion. Plaintiffs only comprise Kaiser Plan Members. While Plaintiffs vaguely alleged that all website users are tracked, (Mot. at 32), Plaintiffs provide no *evidence* that this actually occurs or that a general member of the public is susceptible to being injured by Defendants' alleged conduct. Plaintiffs cannot rely on vague and rhetorical abstractions as a substitute for the concrete showing necessary to justify a preliminary injunction. The only evidence presented of an effect on members of the public would, in fact, be negative because further action will result in the complete shutdown of the Site. (Vourthis Decl. ¶ 7.)

**IV. <u>PLAINTIFFS' REQUEST FOR CLASS-WIDE RELIEF IS IMPROPER</u>**

Plaintiffs seek a mandatory injunction directing Kaiser to remove the Vendors' "source code embedded in the Site and the Apps . . . . " (Mot. at 11.) This injunction necessarily seeks class-wide relief as it affects every member of the Kaiser Operating States Class, which consists of all Kaiser Plan Members who use the Site. (FAC ¶ 251.) This request is improper and is a separate and independent basis for denying Plaintiffs' Motion.

The issuance of class-wide relief prior to class certification is strongly disfavored. *See M.R. v. Dreyfus*, 697 F.3d 706, 738 (9th Cir. 2012) ("[W]ithout a properly certified class, a court cannot grant relief on a class-wide basis."); *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-

cv-00792, 2020 WL 4458908, at *4 (N.D. Cal. May 27, 2020) (Chen, J.) ("Within the Ninth Circuit, the issuance of class-wide relief prior to the certification of the class is strongly disfavored."). "This is particularly true where, as here, a preliminary injunction is involved." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 n.1 (9th Cir. 1983). This Court has repeatedly denied similar motions for injunctive relief before class certification. *See, e.g.*, *Yeomans*, 2020 WL 4458908, at *4 (denying motion for preliminary injunction where Plaintiffs sought class-wide relief prior to the issuance of class certification); *Colopy v. Uber Tech. Inc.*, No. 19-cv-06462, 2019 WL 6841218, at *1–4 (N.D. Cal. Dec. 16, 2019) (Chen, J.) (same); *Missud v. Cal.*, No. 12-cv-05468, 2012 WL 5350263, at *2 (N.D. Cal. Oct. 29, 2012) (Chen, J.) (same).

Further, as in *Yeomans*, the fact that an unknown number of potential class members are bound by arbitration agreements raises issues of variability amongst putative class members and mandates denial of the Motion. *Yeomans*, 2020 WL 4458908, at *4. Here, John Doe is bound by an arbitration agreement,[14] and as the numerous cases enforcing Kaiser's arbitration agreements make clear, California's Kaiser Plan Members are routinely bound by these agreements. *See, e.g.*, *Loucks v. Kaiser Found. Hosps.*, No. 20-cv-01216, 2020 WL 3469326, at *6–8, *11 (N.D. Cal. June 25, 2020) (Chen, J.) (compelling arbitration based on virtually identical arbitration agreement).[15] Because a large and as-yet-to-be determined number of class members are bound by valid and enforceable arbitration agreements, the "scope of an enforceable injunction is ill-defined at this juncture," and the motion should be denied. *Colopy*, 2019 WL 6841218, at *3 ("Uber's arbitration agreement—to which many members of the putative class are bound—underscores the fact that preliminary injunctive relief is inappropriate at this stage."). Finally, Plaintiffs do not argue in their Motion that they seek public injunctive relief. However, even if Plaintiffs were to improperly argue for the first time on reply that they seek public injunctive relief, their Motion still fails. First, Plaintiffs only seek relief on behalf of themselves and other

[14] *See* Defendants' Motion to Compel Arbitration. (Dkt. 82.)

[15] *Smith v. Watanabe*, No. 21-cv-07872-HSG, 2022 WL 6282201, at *6 (N.D. Cal. Sept. 27, 2022) (compelling arbitration of Kaiser members with a substantially similar arbitration agreement); *Hunter v. Kaiser Found. Health Plan, Inc.*, 434 F. Supp. 3d 764 (N.D. Cal. 2020) (same); *Drissi v. Kaiser Found. Hosps., Inc.*, 543 F. Supp. 2d 1076, 1077–78 (N.D. Cal. 2008) (same).

"Kaiser Plan Members," *not* the general public. *See, e.g.*, *Hodges v. Comcast Cable Commc'ns., LLC*, 21 F.4th 535, 548–49 (9th Cir. 2021) (request for injunction on behalf of cable subscribers did not seek public relief because subscribers are a discrete subset of similarly-situated individuals, not the general public as a whole). Second, Plaintiffs cannot demand relief on behalf a broader group ("the public"), than is covered by the FAC which only seeks relief on behalf of Kaiser Plan Members. *See Zepeda*, 753 F.2d at 728 n.1 ("A district court's power to issue a preliminary injunction should not be broader in scope with respect to nonparties than its powers following a full trial on the merits.").

Plaintiffs' request for an injunction fails on the separate and independent ground that Plaintiffs seeks relief on behalf of the entire class. This is fatal to Plaintiffs' Motion because they cannot seek class-wide injunctive relief prior to class certification.

## V. AN EVIDENCE PRESERVATION INJUNCTION IS UNNECESSARY

Finally, the Court should reject Plaintiffs' argument that an injunction "preventing Kaiser from altering, destroying, or disposing of any evidence, in any form, relating to this litigation" is warranted. (Mot. at 33.) As an initial matter, Plaintiffs do not offer any evidence that Kaiser is resisting its duty to preserve relevant evidence related to this lawsuit. *Id.* Plaintiffs' false assertion is also contradicted by the Joint Rule 26(f) Report and Case Management Statement which states: "On August 28, 2023, Plaintiffs sent a letter to Defendants' counsel, requesting that Defendants preserve, without alteration, all documents, materials, communications, tangible items, and other relevant information, including ESI, that is potentially relevant to this matter. Defendants ***confirmed that they were preserving data***, and mentioned that there are areas where they are finding that preservation costs are extreme and that Defendants would like to engage in further meet and confer, as contemplated by the Court's ESI Guidelines, with respect to whether certain continued preservation is appropriate and/or how to allocated costs associated with preservation." (Dkt. 68, Joint Case Management Statement.)

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiffs' Motion for a Preliminary Injunction.

Dated: November 22, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ *Wynter L. Deagle*

WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real, Suite 120
Menlo Park, CA 94025
Telephone: 650.815.2600
Facsimile: 650.815.2601

NOLAN J. WALTER, Cal Bar No. 325021
nwalter@sheppardmullin.com
KEVIN MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701

CHARLES GLOVER (*Pro Hac Vice)*
cglover@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
Facsimile: 212.653.8701

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc.