UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-02865-EMC   (PHK)<br><br>**ORDER ON JOINT DISCOVERY DISPUTE LETTER BRIEF RE PROTECTIVE ORDER**<br><br>Re: Dkt. No. 73 |

## INTRODUCTION

This action has been referred to the undersigned Magistrate Judge for discovery purposes. *See* Dkt. 56. This is a putative class action brought by Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, and Jane Doe V ("Plaintiffs") against Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc. (collectively, "Kaiser"). *See* Dkt. 44. Plaintiffs allege that Kaiser has unlawfully embedded code in its website, including its patient portal and mobile applications, that allows third-party social media and ad tech companies to intrude upon, read, intercept, and use Plaintiffs' sensitive personal and medical information without Plaintiffs' knowledge or consent. *Id.*

Now pending before the Court is a joint letter brief regarding the Parties' dispute as to the contents of a proposed stipulated protective order. [Dkt. 73]. The Court finds the dispute suitable for resolution without oral argument. Civil L.R. 7-1(b).

**DISCUSSION**

In the instant joint letter brief, the Parties ask the Court to resolve their disputes concerning entry of a proposed protective order. [Dkt. 73]. The Parties agree that a protective order based on one of the Northern District of California's model protective orders should govern discovery but they first disagree as to which model protective order best fits the needs of the case. *Id.* at 1. Next, the Parties present a set of disputes on whether any modifications are warranted to the selected model protective order, and if so, what those modifications should be. *Id.*

### A. The Base Model Protective Order

At a high level, the initial dispute centers on whether the Protective Order in this case should be based on a model order which has more or fewer levels and provisions for confidentiality designations. The Court's website makes available to the public two different model orders for consideration: (1) the Model Stipulated Protective Order for Standard Litigation ("Tier 1 MPO"); and (2) the Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Tier 2 MPO"). *See* https://www.cand.uscourts.gov/forms/model-protective-orders/ ("The protective orders on this page are court-approved model forms.") (last visited November 30, 2023).

Kaiser argues that the Tier 2 MPO should serve as the base model protective order in this case. [Dkt. 73 at 1]. Kaiser argues the Tier 2 MPO is appropriate because Plaintiffs seek discovery of "highly confidential Kaiser materials including detailed information about the function of Kaiser's website that could lead to security risks, source code, and trade secrets and financial and other information that would be harmful to Kaiser if disclosed to competitors or former employees." *Id.* Plaintiffs, on the other hand, propose using the Tier 1 MPO because "this is neither a patent case, nor one between competitors exchanging sensitive competitive data." *Id.* at 3-4.

The Court may, for good cause shown, "protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense" by issuing a protective order which "specif[ies] terms" for how discovery shall occur. Fed. R. Civ. P. 26(c)(1). The Court's Tier 1 MPO is offered for consideration to use in "standard cases" or "standard litigation." By contrast,

the Court's Tier 2 MPO contains "presumptively reasonable conditions" for a Protective Order to be used in a case involving discovery of highly sensitive materials. *Corley v. Google, Inc.*, No. 16-cv-00473-LHK (HRL), 2016 WL 3421402, at *1 (N.D. Cal. June 22, 2016) (quoting *Barnes & Noble, Inc. v. LSI Corp.*, No. 11-cv-02709-LB, 2012 WL 601806, at *1 (N.D. Cal. Feb. 23, 2012)).

While the Court expresses no opinions on the merits of this dispute, the Parties' pleadings and filings discuss the issues to be litigated and indicate that several technological issues are likely to be the subject of discovery. According to Plaintiffs, this lawsuit implicates technical issues surrounding the Kaiser website and mobile apps, as well as healthcare-related information:

> Kaiser has embedded code in Kaiser's Website (the "Site"), including the patient portal, and Mobile Applications (the "Apps") that allows social media and other companies, without patients' authorization or consent, to intrude upon, read, intercept, and/or use patient medical information and records and the contents of patients' communications with Kaiser and providers. Kaiser knew that by embedding this code in their Site and Apps, Kaiser was allowing these Third Party Wiretappers to intercept Site and App users' ("Users") personal and sensitive information and/or information that Kaiser was required to protect under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6.

[Dkt. 68 at 2]; *see also* [Dkt. 44 at 4 ¶ 4 ("Kaiser Permanente has installed code from multiple third parties throughout the Kaiser Permanente website and mobile applications that allows third party companies such as Quantum Metric, Twitter, Adobe, Bing, and Google . . . to intercept the content of Plaintiffs and Class Members' . . . information shared and communications with their medical providers, including personally identifiable medical information and other confidential information and communications[.]")].

Further, according to Plaintiffs, this case implicates code of a third party, Quantum Metric, and technology used by third parties Adobe, Bing, Twitter, Google, and Dynatrace:

> [O]n both Kaiser's public webpage and inside its purportedly "secure" patient portal ("Portal") on the Site, Kaiser installed Quantum Metric's "Session Replay" code, which intercepts and redirects Users' every move on the Site to Quantum Metric's servers. As a result, Quantum Metric essentially received a "live stream" of Users' activities on the Website and inside the Portal. Kaiser also allowed Adobe, Bing, Twitter, Google, and Dynatrace to intercept an array of sensitive, healthcare-related information about Users from both within and outside the Portal using GET and POST requests, and other technology.

3

[Dkt. 68 at 3]; *see also* [Dkt. 44 at 21 ¶ 76 ("Kaiser Permanente has placed Quantum Metric's 'Session Replay' code on its Homepage, Portal Login Page, and other pages on the Site—including within the Portal—which intercepts and records the contents of Kaiser Plan Members' information and confidential communications, and sends that information and those communications to Quantum Metric.")].

Similarly, according to Plaintiffs, this case implicates code "connected with" the Adobe Experience Cloud and activity on Adobe's servers:

> 107. Kaiser Permanente allows Adobe to intercept Kaiser Plan Members' personal and sensitive identifying and medical information and private and confidential communications through code connected with the Adobe Experience Cloud a/k/a Adobe Marketing Cloud service embedded on the Site, including within the Portal.
>
> 108. The Adobe Experience Cloud service is a suite of products offered by Adobe, which allow businesses to personalize and improve their marketing on websites, apps, and social media pages by collecting and analyzing information about website visitors.
>
> ***
>
> 112. The Adobe Experience Cloud collects this information through an array of tracking technologies, including cookies and/or web beacons (also known as tags or pixels), such as the thirdparty cookies omtrdc.net, demdex.net, and the Adobe Experience Platform Launch, which delivers a library containing specified tags for other Adobe Experience Cloud solutions.
>
> ***
>
> 114. Adobe has established subdomains on its own server, such as the subdomain kaiser.tt.omtrdc.net on Adobe's omtrdc.net server, where Adobe receives and stores the communications intercepted from Kaiser Permanente.

[Dkt. 44 at 27 ¶¶ 107-08, 29 ¶¶ 112, 114].

Additionally, the Parties report that Plaintiffs have already served subpoenas on Adobe, Alphabet, Microsoft, X Holdings, and Quantum Metric. [Dkt. 68 at 7]. The Parties state that they "expect that discovery will focus in large part on the types of information provided to third parties about Users of the Kaiser Website and Mobile Applications, as well as Kaiser and the third parties' use of that information." *Id.* Kaiser argues that "Plaintiffs have already sought discovery of highly confidential Kaiser materials including detailed information about the function of Kaiser's website that could lead to security risks, source code, and trade secrets and financial and other information that would be harmful to Kaiser if disclosed to competitors or former employees." [Dkt. 73 at 1].

4

In light of the pleadings, the issues which are reasonably anticipated to be litigated, and the likely scope and types of discovery in this case, the Court finds the Tier 2 MPO to be the most appropriate model protective order, especially given that Plaintiffs seeks to obtain source code information from Kaiser. *See Beautiful Slides, Inc. v. Allen*, No. 17-cv-01091-MMC (LB), 2017 WL 11664921, at *1 (N.D. Cal. Dec. 22, 2017) ("Computer source code can constitute trade secrets and can warrant entry of a protective order warranting heightened trade secret protection."); *see also Hernandez v. Syncrasy*, No. 21-cv-09212-CRB (LJC), 2023 WL 2600452, at *3 (N.D. Cal. Mar. 21, 2023) (rejecting the assertion that a protective order "is only suitable in technology cases, rather than discrimination cases"). The Court notes that discovery and the issues raised in this case appear to potentially implicate source code or other trade secrets of third parties, other highly confidential business information or alleged trade secrets of Kaiser, and personal information of Kaiser patients (including healthcare-related information).

Plaintiffs' argument that the Tier 2 MPO cannot be used except in certain types of cases is mistaken. To the contrary, the Northern District of California's website makes clear that, with the exception of cases governed by Patent Local Rule 2-2 (*i.e.,* patent cases), "the Local Rules do not require the parties to use *any* of the model protective orders and counsel may stipulate to or move for another form or protective order." CAND Model Protective Orders, https://www.cand.uscourts.gov/forms/model-protective-orders/ (emphasis added); *accord Rabin v. Google LLC*, --- F. Supp. 3d ----, 2023 WL 8010231, at *1 (N.D. Cal. 2023); *see also Mironowski v. Ford Motor Co.*, No. 1:22-cv-00675-JLT-CDB, 2023 WL 2957858, at *2 (E.D. Cal. Apr. 14, 2023) (observing that the Northern District of California's "preference" as to the specific base model protective order to be used in a given case "extends only to protective orders in patent cases").

Accordingly, the Court **ORDERS** that the Tier 2 MPO shall be used as the base model protective order in this action.

### B. Disputes Regarding Modifications to the Tier 2 MPO

As an initial matter, the Parties indicate that they both agree that Sections 13.5-13.7 and Section 15 (shown in the redline to the Tier 2 MPO submitted by Kaiser) should be included in the

5

Protective Order in this case. [Dkt. 73 at 3, 5 n.8]. Accordingly, the Court **ORDERS** that the Protective Order in this case shall include these Sections 13.5-13.7 and 15.

However, as noted above, the Parties disagree on several proposed modifications to the Tier 2 MPO, primarily edits proposed by Plaintiffs. [Dkt. 73 *passim*]. Kaiser identifies five such distinct issues in dispute, while Plaintiffs' briefing addresses the issues in four sections in a different order from Kaiser's briefing (and combining two issues relating to expert witnesses into one section). A parsing of the briefing makes clear the Parties dispute the following proposed substantive modifications to the Tier 2 MPO:

(1) a revised definition for "experts" so that Plaintiffs may hire past, current, or anticipated Kaiser employees;

(2) a revised definition of "Attorneys' Eyes Only" ("AEO") to better clarify the materials subject to such designation;

(3) revisions to Section 7.3(b)'s default language to permit the disclosure of AEO and/or Source Code materials to the Receiving Party;

(4) revisions to Section 7.4's default language concerning the prior disclosure of experts who receive AEO and/or Source Code materials; and

(5) revisions to allow the production of Source Code material only at locations that are "reasonably convenient for the Receiving Party."

As noted above, the Court's Tier 2 MPO has "presumptively reasonable conditions" for use in discovery involving potentially highly sensitive information and trade secrets (including source code). Accordingly, the burden is on the party proposing a modification to the Tier 2 MPO to "show 'specific harm or prejudice' will result if the court denies the request; otherwise, the party has failed to show good cause." *Corley*, 2016 WL 3421402, at *1 (quoting *MasterObjects Inc. v. Google, Inc.*, 2012 WL 2958227, at *2-3 (N.D. Cal. Jul. 19, 2012)); *see also Rabin*, --- F. Supp. 3d ----, 2023 WL 8010231, at *1 ("Here, because Google seeks to impose greater restrictions, it bears the burden of showing prejudice or harm that will result if the less restrictive standard order, as modified by Plaintiffs, is imposed."). With these legal standards in mind, the Court addresses the substance of each issue in turn.

6

### 1. Section 2.7 – Experts

The Tier 2 MPO defines an "expert" as "a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor."  Plaintiffs propose deleting subsections (2) and (3) from Section 2.7 which are negative limitations on persons who cannot serve as experts in this matter.  By removing these limitations, this edit would effectively broaden the category of individuals who may be candidate experts.  [Dkt. 73 at 4-5].

Kaiser objects to Plaintiffs' proposed revision to Section 2.7, because "Plaintiffs' change would allow past, current, or prospective employees of Kaiser and Kaiser's competitors to serve as experts against Kaiser and receive Kaiser sensitive Highly Confidential – Attorneys' Eyes Only ("AEO") material and Source Code."  *Id.* at 1-2.  Kaiser argues that Plaintiffs' proposed revision "removes necessary protections for Kaiser by dramatically increasing the risk of inappropriate disclosure to competitors, and the risk of improper disclosures *by* individuals with duties of confidentiality to Kaiser."  *Id.* at 2.

In response, Plaintiffs argue that "there is no need to restrictively define 'experts' in Section 2.7 as Kaiser requests" because other provisions of the Protective Order will safeguard against any improper disclosure of Kaiser's highly confidential information.  *Id.* at 4-5.

Under the Protective Order in this case, the definition of an "expert" must be limited to adequately safeguard against the risk of improper disclosure.  Retaining former employees of Kaiser or of a competitor (or people who are actively seeking employment from Kaiser or a Kaiser competitor) raises legitimate concerns which cannot be adequately addressed by other provisions of the Protective Order.  *See, e.g.*, *Laatz v. Zazzle, Inc.*, No. 22-cv-04844-BLF (VKD), 2023 WL 6391491, at *2 (N.D. Cal. Sept. 29, 2023); *see also Corley*, 2016 WL 3421402, at *2 ("This court has repeatedly ruled that it is usually improper to hire an opponent's former employee as an expert because such an expert is substantially likely to inflict unfair prejudices to which the former employer cannot realistically discover or guard against.") (collecting cases).  Further, Plaintiffs

7

have not argued (and thus have not shown) any specific harm or prejudice in their search for expert witnesses if those provisions of Section 2.7 remain in place; indeed, the Court notes that there appear to be well in excess of two million Computer Science degree holders in the United States workforce.  *See* U.S. Bureau of Labor Statistics, Occupational Outlook Handbook, Computer and Information Research Scientists, https://www.bls.gov/ooh/field-of-degree/computer-and-information/computer-and-information-technology-field-of-degree.htm (last visited November 30, 2023) (2,666,140 computer and information technology degree holders in the U.S. workforce as of 2021); Data USA, https://datausa.io/profile/cip/computer-science-110701 (last visited Nov. 30, 2023) (2,190,000 computer science degree holders in the U.S. workforce as of 2021).  The Court finds that Plaintiffs have not met their burden to justify this proposed modification to the Tier 2 MPO.  Accordingly, the Court **ORDERS** that the Protective Order in this case shall use Section 2.7's default language.

### 2.  Section 2.8 – Attorneys' Eyes Only ("AEO")

The Tier 2 MPO defines AEO information as "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means."  Plaintiffs propose modifying the language of Section 2.8 to clarify that AEO materials may include "information that would compromise website security, trade secrets and 'Protected Health Information' as defined under C.F.R. §§ 160.103 and 164.501."  [Dkt. 73 at 5].

Kaiser proposes competing clarifications regarding materials subject to AEO designation, but concedes that, "in truth, no clarification is necessary."  *Id.* at 2.

The Court adopts Section 2.8's definition of "AEO" materials without the additional language proposed by either Party.  *See Moore v. Trader Joe's Co.*, No. 18-cv-04418-KAW, 2019 WL 914129, at *2 (N.D. Cal. Feb. 25, 2019) (rejecting assertion that the Tier 2 MPO's default definition for Highly Confidential information was overly broad and noting that "[t]his language . . . was approved by all judges of the Northern District of California").  Accordingly, the Court **ORDERS** that the Protective Order in this case shall use the default language of Section 2.8 of the Tier 2 MPO.

8

### 3. Section 7.3(b) – Limits of Disclosure to "Receiving Party"

Section 7.3(b) of the Tier 2 MPO authorizes the disclosure of AEO and Source Code materials to "Designated House Counsel of the Receiving Party (1) who has no involvement in the competitive decision-making, [and] (2) to whom disclosure is reasonably necessary for this litigation[.]" Plaintiffs propose modifying this default language to permit the disclosure of such materials to not just in-house counsel but also to "[t]he Receiving Party and Designated House Counsel of the Receiving Party." [Dkt. 73 at 5]. Confusingly, Plaintiffs argue that their proposal would ***not*** allow the "Receiving Party 'to access any and all AEO materials or Source Code." *Id.*

Kaiser opposes this broadening of the category of persons who can see the confidential information (including source code) to the entire "Receiving Party." *Id.* at 2. Kaiser argues that Plaintiffs' proposed modification "would make the level of protection for AEO and Source Code materials no different from the Confidential level of protection – gutting the protection for Highly Confidential materials." *Id.* The Court agrees. It makes no sense to modify the model order to allow an entire Receiving Party to have access to the most highly confidential designated information of an opponent.

Further, Plaintiffs appear not to have intended this result by their edit – they argue that "in Section 7.3(b), Plaintiffs propose language tracking the Patent PO, which requires disclosure is only made to a Party and Designated House Counsel." *Id.* at 5. Plaintiffs are mistaken – in the model order, Section 7.3(b) allows disclosure ***only*** to "Designated House Counsel of the Receiving Party." *See* https://www.cand.uscourts.gov/forms/model-protective-orders/ (last visited Nov. 30, 2023). The Court acknowledges that the text file for the Tier 2 MPO on the Court website appears to have inadvertently omitted the paragraph numbering for Section 7.3, and thus it may confusingly appear as if that text is part of Section 7.2. In context, it is clear however that Section 7.3(b) of the Tier 2 MPO does indeed omit a "Receiving Party" from the category of persons entitled to have access to Highly Confidential Information of an opponent.

In any event, it is apparent that Plaintiffs did not intend an edit which would provide broad access to Highly Confidential Information to an entire Receiving Party and thus Plaintiffs have not argued (and thus not shown) any harm or prejudice if the modification is denied. Accordingly, the

9

Court **ORDERS** that the Protective Order in this case shall use Section 7.3(b)'s default language without Plaintiffs' proposed modification.

### 4. Section 7.4 – Disclosure of Experts

Section 7.4 of the Tier 2 MPO delineates the procedures for a Party who has produced and designated Highly Confidential materials to object to a Receiving Party's disclosure of Highly Confidential AEO materials and/or Source Code to an expert. The default language of the provision requires the Receiving Party to provide certain information to the Designating Party prior to the Receiving Party's furnishing or disclosing such Highly Confidential materials to any such expert. The purpose of those disclosures is to give the Designating Party sufficient information to make an informed decision on whether or not to object to the disclosure of their Highly Confidential AEO materials or Source Code to that expert, which objection should be served within fourteen days of the request. Section 7.4(a) of the Tier 2 MPO requires the Receiving Party to provide the Designating Party a written request which:

> (1) identifies the general categories of [Highly Confidential materials or source code] that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

Plaintiffs propose limiting this prior disclosure requirement such that it applies only to "an expert who is a current officer, director, or employee of a competitor of a Party or anticipated to become one." [Dkt. 73 at 4]. Plaintiffs argue that, absent such modification to the Tier 2 MPO's default language, Kaiser will end up with "an unfair litigation advantage through unnecessary, early disclosure of all potential experts regardless of whether they have a potential conflict or not." *Id.*

Kaiser objects to any modification of the Tier 2 MPO's default language, arguing that "the

prior disclosure requirement is an appropriate and necessary protection" without which "the risk that highly sensitive information will be misused 'is simply too great.'" *Id.* at 2.

The Court agrees with Kaiser. In cases involving source code, trade secrets, and other technological information, it is this Court's long experience that the normal and typical practice of the bar in such cases is to retain the model language in Section 7.4(a), with at best only minor modifications (such as changing the number of years of the expert's history to be included). That language allows all Parties to receive a reasonable amount of information about opposing Party experts who will receive Highly Confidential information or source code of a Producing/Designating Party before any such exposure of such materials, in order to allow for rational and informed decisions (and reasoned arguments) to be made on whether or not to object to disclosure of a Producing/Designating Party's most sensitive information to that expert.

Plaintiffs' argument to limit the disclosure about experts only to current or anticipated officers/directors or employees of a competitor ignores the many reasons why an expert could be objected to by a Producing/Designating Party, even if that expert is not an employee of a competitor. Technical experts provide not just litigation-related services, but also sometimes, if not often, provide engineering or technical consulting services to companies – some of whom may be among the fiercest competitors of the Producing/Designating Party. Technical experts sometimes become entrepreneurs and start their own technology-based or venture-backed companies which may be a competitor to a Producing/Designating Party. Technical experts sometimes support their customers not only in litigation, but also in development of an intellectual property portfolio and such IP could be the basis of a potential future assertion against a Producing/Designating Party. Expert witnesses (whether technical or damages) sometimes provide repeat litigation-support services for their customers, and those customers may be among the fiercest competitors of a Producing/Designating Party. All these relationships an expert has would likely not be public, are outside or irrelevant to whether or not that expert is an officer, director, or employee of a competitor, and can raise substantial bases for objecting to exposing the most Highly Confidential materials to that expert. The Tier 2 MPO's language is the result of a recognition that there is a practical and substantial need for pre-disclosure identification of experts

11

before they receive Highly Confidential materials or source code in a case, because without such a procedure the expert would be exposed to those materials and, even if later disqualified, it is impossible to erase knowledge of those materials from the expert's mind or memory. Unlike attorneys, expert witnesses are not subject to the Rules of Professional Conduct, are not subject to discipline by a professional bar association or the like, are not uniformly subject to licensure requirements, and are not required to receive training in ethics or professional responsibility.

Plaintiffs' argument that the model order's language would provide "an unfair litigation advantage by requiring Plaintiffs to disclose detailed information about their experts early in the litigation" is not well founded. The model order's disclosure about experts language is ***only*** triggered if and when a Party desires to show Highly Confidential materials or source code to an expert. There are aspects of a case an expert can work on to support a Party without receiving any Highly Confidential information of an opposing Party. The timing for disclosure of Highly Confidential materials to an expert is wholly within the control of the Party (and their counsel) working with that expert. Again, in this Court's experience, there is a significant period of fact discovery between the Parties in a case resulting in some passage of time before source code or other Highly Confidential materials are even produced, which is a predicate before any such materials could even be reviewed by experts.

Further, Plaintiffs mischaracterize the model order's requirements for the information to be provided about an expert as "detailed." An expert's name, address, current employer, and resume are all information which is likely already made publicly available by the expert as part of their own business development and marketing efforts for their services. Again, in this Court's long experience, the litigation matters an expert worked on (and for whom) is fairly standard information which is typically on an expert witness's CV. All the information required by the model order would be typically requested as part of expert discovery, in any event, and would become known to the opposing side regardless. While Plaintiffs argue that there is an "unfair litigation advantage," Plaintiffs fail to explain or identify the nature of that "advantage" or how it is "unfair" where Kaiser would seek that same information about the expert anyway (if it were not required to be disclosed). The Court finds that Plaintiffs have not sufficiently demonstrated

12

specific prejudice or harm if their proposed modification to Section 7.4 is denied.

Fundamentally, this Court's long experience with technology-based and IP litigation (including trade secret litigation and litigation involving source code such as this case) indicates that the practice of the bar and the procedures of this Court do not condone a party's attempt to shield the identities of their expert witnesses until the last possible minute in a case, if that party wants to disclose the opponent's most Highly Confidential materials or source code to that expert. The required disclosure of information about experts (whether early or not) allows for prompt resolution of any potential objections to an expert, allows a Party to seek and retain unobjectionable experts as replacements if needed without prejudicing that Party with limited or short time to work with their new experts, avoids last-minute disputes over experts which could become the basis for requests to modify the case schedule unnecessarily, and clears the path for the case to proceed in an orderly and prompt manner to resolution. The model order's default language promotes the interests of securing a just and speedy determination of a case, and thus, promotes the efficient and fair administration of justice as a matter of reasonable Court-management of civil discovery. *See* Fed. R. Civ. P. 1 & advisory committee's note to 2015 amendment.

Accordingly, the Court **ORDERS** that the Protective Order in this case shall use Section 7.4's default language from the Tier 2 MPO.

### 5. Location of Source Code Production

Finally, Plaintiffs seek to modify the Tier 2 MPO to allow for the production of Source Code "at a location that is reasonably convenient for the Receiving Party and any experts to whom the source code may be disclosed." [Dkt. 73 at 5]. Plaintiffs argue that, if the Tier 2 MPO were used, then the source code could just be delivered to Plaintiffs' counsel. *Id.* But the easy portability of source code (which is often among a company's most important trade secrets) is precisely why source code is treated as Highly Confidential in the Tier 2 MPO because of the risk of inadvertent disclosure or copying – particularly in light of how technically easy it is to copy an electronic file. Rather than support Plaintiffs, their argument further supports the Court's decision to adopt the Tier 2 MPO.

Kaiser objects to Plaintiffs' proposal, arguing instead that Source Code production should occur only in the Northern District of California, because "Kaiser is located in this District, [and] Kaiser's counsel has two offices in this District." *Id.* at 3. Kaiser contends that it "should not be forced to bear the costs" of producing such materials in "an unfamiliar location at Plaintiffs' discretion," given that "secure locations already exist within this District." *Id.*

Among the many disputes presented by the Parties herein, the Court is most disappointed that the Parties were unable to reach a reasonable compromise on this issue, and this causes the Court to question whether lead counsel for both sides fully complied with the Court's meet and confer requirements in the Court's Discovery Standing Order. *See* Dkt. 57. Plaintiffs effectively want full discretion on the location for receiving and inspecting Kaiser's source code. Kaiser wants to limit the locations to only its litigation counsel's offices in the Northern District of California. Kaiser knows that Plaintiffs' counsel are located in Pennsylvania, as well as New Jersey, Chicago, and San Francisco. Plaintiffs' counsel is an international law firm with multiple offices across the United States (including Illinois, New York, Washington, D.C., and California) which advertises an ability to "provid[e] seamless representation in multiple jurisdictions." Sheppard Mullin, About Us, https://www.sheppardmullin.com/about-firm-facts (last visited Nov. 30, 2023). In this Court's experience, the location and logistics for inspection or review of source code is among the type of issues that experienced counsel are able to resolve reasonably without resort to motions practice. If the Parties' counsel demonstrate further inability to reach reasonable negotiated resolution of discovery disputes going forward, the Court may consider modifying the meet and confer requirements in the Court's Standing Order such as requiring all meet and confers (including meet and confers of lead counsel) to be held in-person, requiring the attendance of clients at all meet and confers, requiring meet and confers to take place in Courtroom F on the 15th Floor of this Court in San Francisco, or other modifications as the Court in its discretion deems necessary as a matter of discovery case management.

Accordingly, the Court **ORDERS** the Parties to reasonably cooperate in setting a mutually agreeable location for source code review and inspection. If the Parties are unable to reach agreement, then the Court **ORDERS** that Plaintiffs' expert witness(es) (who are not objected to or

14

otherwise disqualified from such review under the Protective Order) shall review and inspect Highly Confidential-designated source code produced by Kaiser in discovery at any domestic U.S. office of Kaiser's outside counsel of record in this matter. The choice of which office for such inspection and review shall be made by counsel for Plaintiffs (who shall communicate their choice of office to counsel for Kaiser no later than thirty (30) days prior to the first date of requested review). Kaiser's source code shall be made available for review and inspection during local business hours, and counsel for Kaiser shall reasonably cooperate in providing IT support or other logistical support to Plaintiffs' expert witness(es) performing the inspection and review.

## CONCLUSION

In light of the analysis and directions to the Parties herein, the Court **ORDERS** the Parties to coordinate and jointly file with the Court an edited version of the Tier 2 MPO which incorporates and complies with the rulings herein, and includes all other edits to that base model order to which the Parties have already agreed (as well as any other edits for which the Parties reach further agreement). The Parties shall file both a clean and redline version of the edited Tier 2 MPO, and the Parties shall send a Word file of the redline (showing tracked changes "on") of the edited Tier 2 MPO to PHKpo@cand.uscourts.gov. The Parties shall file and email their proposed edited Tier 2 MPO with the Court on or before **December 22, 2023**.

**IT IS SO ORDERED.**

Dated: November 30, 2023

_____
PETER H. KANG
United States Magistrate Judge