1

2

3

4              **UNITED STATES DISTRICT COURT**

5            **NORTHERN DISTRICT OF CALIFORNIA**

6               **SAN FRANCISCO DIVISION**

7

8    JOHN DOE, et al.,

9              Plaintiffs,                    Case No.  23-cv-02865-EMC   (PHK)

10        v.
                                              **ORDER ON JOINT DISCOVERY**
11   KAISER FOUNDATION HEALTH PLAN,           **DISPUTE RE THIRD-PARTY**
     INC., et al.,                            **SUBPOENAS**
12
              Defendants.                     Re: Dkts. 55, 80
13

14

15                              **INTRODUCTION**

16          This action has been referred to the undersigned for discovery purposes.  *See* Dkt. 56.  This

17  is a putative class action brought by Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane

18  Doe III, Jane Doe IV, and Jane Doe V ("Plaintiffs") against Defendants Kaiser Foundation Health

19  Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc. (collectively,

20  "Kaiser").  *See* Dkt. 44.  Plaintiffs allege that Kaiser has unlawfully embedded code in its website,

21  including its patient portal and mobile applications, that allows third-party social media and ad

22  tech companies to intrude upon, read, intercept, and use Plaintiffs' sensitive personal and medical

23  information without Plaintiffs' knowledge and consent.  *Id.*

24          Now pending before the Court is a joint letter brief and subsequently filed joint status

25  report regarding the Parties' disputes concerning substantially identical subpoenas served by

26  Plaintiffs on Adobe, Inc., Alphabet, Inc., Microsoft, Inc., X Holdings, Corp., and Quantum Metric,

27  Inc. ("Third-Party Subpoenas").  [Dkts. 55, 80].  The Court finds the dispute suitable for

28  resolution without oral argument.  Civil L.R. 7-1(b).

**United States District Court**
**Northern District of California**

1 | **DISCUSSION**

2    Shortly after commencing this action, in approximately August 2023, Plaintiffs served the

3 Third-Party Subpoenas at issue on each of the five entities named above. *See* Dkt. 55-1, 55-2.

4 The Third-Party Subpoenas request production of, among other things: "[a]ll data or information

5 collected from visitors to Kaiser Permanente's Website and/or Mobile Application[;]" "[a]ll

6 Documents and/or Communications with Kaiser Permanente concerning the Kaiser Permanente

7 Website and/or Mobile Application and/or the collection of data or information from the Kaiser

8 Permanente Website and/or Mobile Application[;]" "[a]ll Documents and/or Communications

9 describing the function, capability, effect, and/or purpose of the cookies and/or code listed in

10 Appendix B[;]" "Documents, Communications, and/or information concerning the users identified

11 by the IDs: tntID=____, thirdPartyId=____, customerID=____, pzn_id=____[;]" and "[a]ll

12 Documents and/or Communications concerning the parameters, settings, or options selected by or

13 for Kaiser Permanente in connection with your Service[.]" *Id.*

14    On September 28, 2023, the Parties filed the instant joint letter brief regarding Kaiser's

15 objections to and "anticipated motion for a protective order concerning" the Third-Party

16 Subpoenas. [Dkt. 55]. In their letter brief, the Parties ask the Court to determine: "(1) whether

17 [the Third-Party Subpoenas'] requests seeking user information impermissibly threaten the

18 privacy of third parties without justification and should be quashed; and (2) whether numerous

19 other Requests impermissibly seek Kaiser's confidential commercial information that is not

20 relevant." *Id.* at 1.

21    As to the first dispute, Kaiser argues that the Third-Party Subpoenas issued by Plaintiffs

22 improperly seek broad amounts of sensitive personal and medical information pertaining to

23 thousands of individuals who "are not parties to the case, are not represented by Plaintiffs'

24 counsel, and have not consented to the disclosure of their private information." *Id.* at 1-2. Kaiser

25 argues that Plaintiffs have not made an adequate showing as to the relevance of or necessity for

26 this information at this stage of the litigation. *Id.* Kaiser asks for a court order limiting the Third-

27 Party Subpoena's requests seeking user information to the named Plaintiffs only. *Id.*

28    As to the second point of contention, Kaiser complains that the Third-Party Subpoenas

contain numerous requests seeking production of Kaiser's own "commercial information and trade secrets." *Id.* at 2.  Kaiser moves to quash these requests, arguing that Plaintiffs have failed to meet their burden "to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *Id.*  In addition, Kaiser argues that responses with respect to the Third-Party Subpoenas' remaining requests for production "should be stayed until a protective order containing adequate AEO provisions is entered in this Action." *Id.*

Plaintiffs, in their portion of the joint letter brief, argue that the Third-Party Subpoenas "are necessary (i) so that Plaintiffs can obtain relevant information to support their wiretapping and privacy claims; and (ii) to ensure that crucial information is not destroyed." *Id.*  In response to Kaiser's assertion that certain requests improperly seek sensitive personal and medical information from nonparties, Plaintiffs argue that "any sensitive personal and medical information of absent Class members that is produced in response to the [Third-Party Subpoenas] will be protected in this litigation by a Protective Order and will be treated as Attorneys Eyes Only ("AEO")." *Id.* at 2-3.  Plaintiffs stress that they "have already agreed to treat all documents produced by the [subpoenaed parties] as AEO until a formal Protective Order is entered by this Court." *Id.* at 3.

In response to Kaiser's assertion that certain requests improperly seek Kaiser's highly confidential information, Plaintiffs argue that: (1) Kaiser has failed to show that the materials sought constitute confidential commercial information and trade secrets; and (2) even if Kaiser could establish that such confidential materials were at issue, "the protection required would be, at most, AEO—which is how Plaintiffs have already agreed to treat production at this time." *Id.*  Finally, Plaintiffs argue that Kaiser lacks standing to object to the Third-Party Subpoenas based on burden or relevance.  *Id.*

On October 16, 2023, this Court issued an Order directing the Parties to confer with counsel for the five subpoenaed parties (*viz.,* Adobe, Alphabet, Microsoft, X Corp., and Quantum Metric) regarding the instant dispute, and to file a supplemental joint status report regarding the extent to which each of the subpoenaed parties supported or opposed the relief sought by Kaiser and also whether any of the subpoenaed parties intended to intervene in the instant discovery dispute.  [Dkt. 72].  On November 6, 2023, the Parties filed a Joint Status Report advising that:

- "Adobe served objections to all of the requests in the subpoena on grounds separate from those raised by Kaiser.  Adobe is willing to meet and confer at an appropriate time regarding its objections…."  Adobe "takes no position" as to Kaiser's request for a protective order and "does not intend to intervene."

- "Alphabet has served objections to all of the requests in the subpoena asserting additional bases for objection that are separate from those asserted by Kaiser…. Alphabet welcomes a meet and confer about its objections, but believes that meet and confer should wait until Kaiser's motion has been resolved…." Alphabet supports Kaiser's request for a protective order "to the extent it seeks to limit the requests to information regarding the named Plaintiffs" and "does not intend to intervene."

- Microsoft supports Kaiser's request for a protective order to the extent that Kaiser's objections "are consistent with" Microsoft's own objections. Microsoft "welcomes the opportunity to meet and confer with Plaintiffs regarding the scope of the subpoena," but "believes such discussions should wait until after resolution of Kaiser's Motion for a Protective Order."

- Quantum Metric "takes no position as to the specific objections raised by" Kaiser and "does not intend to intervene." "Quantum Metric is actively meeting and conferring with Plaintiffs regarding the subpoena requests that are not implicated by the parties' discovery dispute."

- X Corp. "takes no position on Kaiser's objections" to the Third-Party Subpoenas and "does not intend to move to intervene."  Further, "X Corp. has asserted its own objections to the third party subpoena that plaintiffs served…."

[Dkt. 80 at 1-2].

In the interim (and while the instant dispute was still pending), on October 17, 2023, the Parties filed another joint letter brief regarding their dispute as to the contents of a proposed stipulated protective order.  [Dkt. 73].  On November 30, 2023, this Court issued an Order resolving the protective order dispute and directing the Parties to coordinate and jointly file a modified version of this Court's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Tier 2 MPO"), which includes an AEO provision, by December 22, 2023.  [Dkt. 100].

Under Rule 45, the scope of discovery sought from third parties is generally commensurate with the scope of discovery set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); *see also*

Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b).").  Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

With this background and the proper legal standards in mind, the Court turns to the dispute at hand and, for the reasons discussed herein, **DENIES** Kaiser's requests for relief with respect to the Third-Party Subpoenas.

### A.   Kaiser Lacks Standing To Assert Relevance or Burden Objections to Subpoenas Directed to Third Parties.

First, to the extent that Kaiser objects to the subpoenas directed to third parties based on relevance or burden, the Court agrees that Kaiser lacks standing to do so.  *See, e.g., Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC (RMI), 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019) ("Generally speaking, a party to an action does not have standing to move to quash a subpoena served upon a nonparty unless the party claims a personal right or privilege with respect to the documents requested in the subpoena.") (collecting cases); *see also Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH (DMR), 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012).

Here, as noted, all of the subpoenas are directed to third parties, not Kaiser, and all of the subpoenas seek documents or information allegedly within the custody, possession, or control of each of the subpoenaed parties, and not Kaiser.  All of the subpoenaed parties have notice of their respective subpoenas and this dispute, and all of the subpoenaed parties have asserted their own objections to their respective subpoenas.  [Dkt. 80 at 1-2].  Indeed, most of the subpoenaed parties have started the meet and confer process with Plaintiffs regarding their subpoenas, and most have taken the position that resolution of their objections should wait until after Kaiser's instant motion is resolved.  *Id.*  Most of the subpoenaed parties take no position on Kaiser's objections.  *Id.*

1    The rule that Kaiser lacks standing to object on the grounds of burden or irrelevance to

2    subpoenas directed to third parties has particular force in this situation, where it is not clear to

3    what extent the subpoenaed parties themselves have asserted that any requests in the subpoenas

4    are unduly burdensome or irrelevant and whether those third parties can successfully negotiate a

5    resolution of such issues with Plaintiffs in their direct negotiations.  *See Handloser v. HCL Am.,*

6    *Inc.*, No. 19-cv-01242-LHK (VKD), 2020 WL 4700989, at *4 (N.D. Cal. Aug. 13, 2020) ("[A]s a

7    general matter, a party has no standing to move to quash or for a protective order on the grounds

8    that a subpoena seeks irrelevant information or would impose an undue burden on the non-party. .

9    . . [A]fter receiving [third party] VDart's objections, plaintiffs attempted to address VDart's

10   concerns. . . . These efforts are precisely what Rule 45 requires.").

11   Accordingly, to the extent Kaiser objects to the subpoenas or seeks a motion to quash any

12   of the subpoenas on the grounds that they are overbroad and seek irrelevant personal or medical

13   information of third parties, Kaiser's objections are overruled and Kaiser's motion on these

14   grounds is **DENIED** for lack of standing.

15       **B.    Kaiser Fails to Demonstrate That the Subpoenas Seek Highly Confidential or**

16           **Trade Secrets Information to Such an Extent that Quashing the Subpoenas Is**

17           **Warranted.**

18   Second, Kaiser objects to the subpoenas on the grounds that some of the requests therein

19   seek Kaiser's highly confidential and/or trade secret materials which are so valuable or

20   confidential that the subpoenas should be quashed.  [Dkt. 55 at 2].  Kaiser argues that its financial

21   information concerning Kaiser's costs, financial performance of its website, contract terms with

22   website vendors, and information on Kaiser's customers are allegedly sought by numerous

23   requests in the subpoenas.  *Id.*

24   "[A] party moving to quash a non-party subpoena has standing when the party has a

25   personal right or privilege in the information sought to be disclosed."  *Knoll, Inc. v. Moderno, Inc.*,

26   No. C 12-80193-MISC SI, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) (citing 9A Wright

27   & Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2008)).  Here, Kaiser does not contend

28   that the subpoenas seek Kaiser's attorney-client or otherwise privileged materials.  Accordingly,

1    the focus is on whether Kaiser has a personal right in the information sought by the subpoenas.

2          As the party seeking to quash the subpoenas, Kaiser bears the burden of persuasion. *Id.* at

3    \*1 ("The party moving to quash a subpoena bears the burden of persuasion."). Here, Kaiser's

4    burden is to identify with sufficient particularity the reasons why the allegedly confidential

5    material is "so sensitive that production should not be required." *In re Samsung Elecs. Co.*, No.

6    2:21-cv-00105-JRG, 2022 WL 425579, at \*2 (N.D. Cal. Feb. 11, 2022) ("[Declarant for the

7    subpoenaed party Apple] Mr. Sakimae's statements are generic to all source code and fail to

8    support Apple's argument that the specific source code at issue here is so sensitive that production

9    should not be required.").

10         First, the Court notes that the information sought is in the possession, custody, and control

11   of third parties, not Kaiser. As a matter of basic trade secret law, information disclosed to third

12   parties has by definition lost its secrecy, regardless of whether it was previously a trade secret of

13   Kaiser. *See* 18 U.S.C. § 1839(3)(A) (definition of "trade secret" requires "the owner has taken

14   reasonable measures to keep such information secret"); *see also Contratto v. Ethicon, Inc.*, 227

15   F.R.D. 304, 308 (N.D. Cal. 2005) (holding that a party seeking protection under Rule 26(c) must

16   make a specific factual showing that materials constitute a trade secret or other confidential

17   research, development, or commercial information and "broad allegations of harm with respect to

18   either the document as a whole, or categories of documents" will not suffice). Kaiser's briefing

19   does not explain how information in the possession of third parties about payments or the financial

20   performance of Kaiser's website is a Kaiser trade secret. [Dkt. 55 at 2]. Unlike the unsuccessful

21   objecting party in the *Samsung* case, Kaiser submitted no affidavit or declaration to even try to

22   substantiate the particular harm disclosure under a Protective Order would pose to Kaiser.

23   *Samsung Elecs.*, No. 2:21-cv-00105-JRG, 2022 WL 425579, at \*2 (overruling Apple's objections

24   to subpoena because declarant was too generic to warrant quashing the subpoena).

25         Kaiser's briefing makes no mention of any confidentiality obligation or NDAs between

26   Kaiser and each of the subpoenaed parties, makes no attempt to explain how the subpoenaed

27   information would fall within any confidentiality clauses of any contracts, has no discussion as to

28   whether the subpoenaed information is considered to be owned by Kaiser under any relevant

service contracts between Kaiser and the subpoenaed parties, and undertakes no description of any efforts by Kaiser or the third parties to maintain the secrecy of any of the alleged confidential or trade secrets information.  *Id.*  Instead, Kaiser's brief lists over forty requests in the subpoenas and argues broadly that unspecified "financial" information, unidentified "contract terms with vendors," and unexplained "information about Kaiser's website" are so confidential or constitute such valuable trade secrets as to warrant quashing the subpoenas.  *Id.*

Additionally, Kaiser's briefing provides no evidence to establish that the subpoenas seek Kaiser's "information [which] derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  *See* 18 U.S.C. § 1839(3)(B).  Kaiser has failed to meet its burden and failed to show what, if any, specific, substantiated trade secrets or confidential information are actually at stake here.  *Wells Fargo*, 2012 WL 6115612, at *3 ("As a preliminary matter, the court finds that Defendants lack standing under Rule 45(c) to quash the subpoenas served on the third parties, as Defendants have made no showing that their confidential proprietary commercial information is at risk.").  Accordingly, the Court finds that Kaiser failed to demonstrate standing to object and lacks standing to move to quash the subpoenas here, due to Kaiser's failure to demonstrate a personal right in the information sought.

Further, even if Kaiser had standing, the Court finds that Kaiser has failed on the merits to meet its burden to show that the information is of such high sensitivity as a trade secret or confidential information to justify quashing the subpoenas as the remedy.  "[T]he Ninth Circuit has recognized that '[u]nder federal law, there is no absolute privilege for trade secrets; instead, courts weigh the claim to privacy against the need for disclosure in each case, and district courts can enter protective orders allowing discovery but limiting the use of the discovered documents.'"  *Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*, No. 18-mc-80064-KAW, 2018 WL 2197544, at *6 (N.D. Cal. May 14, 2018) (quoting *Pasadena Oil & Gas Wyo. LLC v. Mont. Oil Props. Inc.*, 320 F. App'x 675, 677 (9th Cir. 2009)).  Here, Kaiser overreaches by seeking a remedy (complete quashing of the subpoenas) without considering protective order provisions which would limit the

United States District Court
Northern District of California

use of discovered documents.

Indeed, on November 20, 2023, the Court issued an Order directing the Parties to submit a Protective Order modeled on the Court's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets.  [Dkt. 100].  That Protective Order will be filed with the Court on or before December 22, 2023.  *Id.* at 15.  Plaintiffs have committed to the Court (and to the subpoenaed parties and to Kaiser) that any documents or materials produced by any of the subpoenaed parties will be kept confidential on an outside counsel only basis until a Protective Order is entered.  [Dkt. 55 at 1].  Plaintiffs argue persuasively that the confidentiality provisions of the Protective Order to be entered on December 22 are sufficient to address Kaiser's generalized concerns that the subpoenas seek confidential or alleged trade secret information.  *See Gradillas*, 2018 WL 2197544, at *6 ("The Court rejects [objecting party] Behmke's proposition that a protective order can never be sufficient to protect trade secrets. As stated in its prior order, it is a reality of litigation that confidential information may be used at a trial; the purpose of the protective order is thus to reduce or eliminate that risk of confidential information falling into the wrong hands.").

Indeed, as noted above, the Court has ordered issuance of a Protective Order based on the Court's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets.  "This order [the Northern District's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets], which was drafted by this court, was designed with precisely the instant scenario in mind, to reduce the risk of exposing confidential information in ways that would harm the producing party."  *Id.*  As the party seeking to quash the subpoenas, Kaiser bears the burden "to demonstrate that the protective order will not sufficiently address the asserted privacy interests."  *Knoll*, 2012 WL 4466543, at *2.  While there was no Protective Order in place at the time of the briefing on this dispute, a Protective Order will be in place shortly.  [Dkt. 100].  Kaiser's briefing relies primarily on the absence of a Protective Order but makes no substantive arguments that a properly entered Protective Order is insufficiently protective of Kaiser's confidential information or trade secrets.  [Dkt. 55 at 2].

United States District Court
Northern District of California

1    Because the subpoenaed parties have apparently all served objections to their respective

2    subpoenas, most of them have taken the position that resolution of their objections should await

3    resolution of Kaiser's objections.  Thus, the Court expects the subpoenaed parties to produce

4    documents or other materials after they finish negotiating with Plaintiffs and thus after the date the

5    Protective Order will finally be entered on the Court docket.  As a matter of realistic timing, there

6    is virtually no likelihood that documents will be produced before December 22.  The Court further

7    anticipates that any substantiated, identified confidential or trade secrets material will presumably

8    be properly designated as Confidential or Highly Confidential – Attorneys' Eyes Only pursuant to

9    the Protective Order.  The production of documents by the subpoenaed parties subject to a

10    Protective Order which properly limits unauthorized use of truly confidential or trade secrets

11    material is typically the normal process for discovery involving such confidential materials, and

12    here Kaiser makes no substantial arguments as to how or why proceeding in this fashion is

13    improper or so ineffective that completely quashing the subpoenas is the only possible remedy.

14    *Compare* [Dkt. 55 at 2], *with Gradillas*, 2018 WL 2197544, at \*6.

15    To address any lingering confidentiality concerns, the Court **ORDERS** that any

16    documents, information, or materials produced by the subpoenaed parties before the Protective

17    Order is entered shall be treated by all Parties as HIGHLY CONFIDENTIAL – ATTORNEYS

18    EYES' ONLY pursuant to the terms of the Court's Model Protective Order for Litigation

19    Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets; and after the

20    actual Protective Order is entered in this case, such materials shall be treated according to their

21    specific designation or confidentiality level pursuant to the terms of the actual final Protective

22    Order expected to be entered on or about December 22, 2023.

23    Accordingly, the Court overrules Kaiser's objections to the subpoenas on the grounds of

24    confidentiality or trade secrecy, and the Court **DENIES** Kaiser's motion to quash the subpoenas

25    on these grounds, first, because Kaiser lacks standing, and second, because even if Kaiser had

26    standing, Kaiser failed to demonstrate that production of the subpoenaed materials pursuant to the

27    Protective Order is so insufficient as to warrant quashing the subpoenas.

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the reasons discussed herein, the Court **DENIES** Kaiser's motion to quash the subpoenas issued by Plaintiffs to the subpoenaed third parties.  The Court further **ORDERS** Plaintiffs to promptly serve a copy of this Order and a copy of the Protective Order (after it is entered) on counsel for each of the five subpoenaed parties.  Finally, the Court **ORDERS** Plaintiffs and the subpoenaed parties to fully and in good faith comply with the Court's Standing Order for Discovery in promptly resolving any objections or disputes regarding those subpoenas. This resolves Dockets 55 and 80.

**IT IS SO ORDERED.**

Dated:  December 15, 2023

_____
PETER H. KANG
United States Magistrate Judge