**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer
jmeltzer@ktmc.com
Melissa L. Yeates
myeates@ktmc.com
Tyler S. Graden
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, PC**
James E. Cecchi
jcecchi@carellabyrne.com
Michael A. Innes
minnes@carellabyrne.com
Kevin G. Cooper
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Counsel for Plaintiffs and the proposed Classes*
[*Additional Attorneys Listed on Signature Page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, AND JANE DOE V, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and THE PERMANENTE MEDICAL GROUP, INC.

Defendants.

Case No. 4:23-cv-02865-EMC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFF JOHN DOE'S CLAIMS AGAINST DEFENDANTS AND REQUEST TO STAY**

Date: March 14, 2024
Time: 1:30 p.m.
Courtroom: 5

Judge: Hon. Edward M. Chen

# TABLE OF CONTENTS


I. INTRODUCTION .......... 2

II. FACTUAL BACKGROUND .......... 4

III. LEGAL STANDARD .......... 5

IV. ANALYSIS .......... 6

A. The Terms and Conditions Creates a Stand-Alone Contract that Governs Plaintiff's Use of the Site and App and Claims Arising Therefrom .......... 6

B. The EOC Clause Does Not Require Arbitration of Plaintiff's Claims .......... 10

1. The EOC Clause Does Not Cover the Claims at Issue .......... 10

2. The EOC Clause Cannot Be Retroactively Applied to Require Arbitration of Claims that Accrued Prior to April 1, 2021 .......... 13

C. The EOC Clause Does Not Preclude Class Arbitration .......... 15

D. A Stay Is Unwarranted .......... 15

V. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*23andMe, Inc. v. Davis-Hudson*,
2015 WL 6094303 (N.D. Cal. Oct. 16, 2015) .......... 15

*Brown v. Google*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 14

*Castro v. ABM Indus., Inc.*,
2018 WL 2197527 (N.D. Cal. May 14, 2018) .......... 13

*Chavez v. Bank of Am.*,
2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) .......... 6

*Doe v. Microsoft*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... 14

*Drissi v. Kaiser Found. Hosps., Inc.*,
543 F. Supp. 2d 1076 (N.D. Cal. 2008) .......... 12

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 5

*Hunter v. Kaiser Found. Health Plan, Inc.*,
434 F. Supp. 3d 764 (N.D. Cal. 2020) .......... 12

*Int'l Ambassador Programs, Inc. v. Archexpo*,
68 F.3d 337 (9th Cir. 1995) .......... 7, 9

*Int'l Brotherhood of Teamsters v. NASA Servs., Inc.*,
957 F.3d 1038 (9th Cir. 2020) .......... 10

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 11

*Jock v. Sterling Jewelers Inc.*,
646 F.3d 113 (2d Cir. 2011) .......... 15

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) .......... *passim*

*JP Express Serv., Inc. v. KG Admin. Servs.*,
2019 WL 8060074 (C.D. Cal. Nov. 5, 2019) .......... 10

*Long v. Fid. Water Sys., Inc.*,
2000 WL 989914 (N.D. Cal. May 26, 2000) .......... 13

*Loucks v. Kaiser Found. Hosps.*,
2020 WL 3469326 (N.D. Cal. June 25, 2020) (Chen, J.) ........ 12

*Madden v. Kaiser Found. Hosps.*,
17 Cal. 3d 699 (1976) ........ 12

*Magno v. Kaiser Found. Health Plan, Inc.*,
2023 LEXIS 76990 (Cal. Super. Feb. 7, 2023) ........ 11

*Morse v. ServiceMaster Glob. Holdings Inc.*,
2012 WL 4755035 (N.D. Cal. Oct. 4, 2012) ........ 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 15, 16

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009) ........ 6

*Newton v. Am. Debt Servs.*,
854 F. Supp. 2d 712 (N.D. Cal. 2012) (Chen, J) ........ 5

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ........ 7

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........ 5

*Rice v. Downs*,
248 Cal. App. 4th 175 (2016) ........ 11

*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*,
172 Cal. App. 3d 914 (1985) ........ 10, 11

*Sandquist v. Lebo Auto., Inc.*,
1 Cal. 5th 233 (2016) ........ 15

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ........ 11

*Smith v. Watanabe*,
2022 WL 6282201 (N.D. Cal. Sept. 27, 2022) ........ 12

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ........ 15

*Toledo v. Kaiser Permanente Med. Grp.*,
987 F. Supp. 1174 (N.D. Cal. 1997) ........ 12

*Universal Sales Corp. v. Cal. Press Mfg. Co.*,
128 P.2d 665 (Cal. 1942) ........ 10

*Valencia v. Smyth*,
185 Cal. App. 4th 153 (2010) .......... 6

*Vazquez v. ServiceMaster Glob. Holding, Inc.*,
2011 WL 2565574 (N.D. Cal. June 29, 2011) .......... 15

*Victoria v. The Super. Ct. of L.A. Cnty.*,
40 Cal. 3d 734 (1985) (en banc) .......... 6

*Walsh v. Ariz. Logistics, Inc.*,
998 F.3d 393 (9th Cir. 2021) .......... 5

*Weeks v. Crow*,
113 Cal. App. 3d 350 (1980) .......... 11, 14

*Wilson v. Kaiser Found. Hosps.*,
141 Cal. App. 3d 891 (1983) .......... 12

**Statutes**

Cal. Civ. Code § 1783 .......... 14

Cal. Civ. Proc. Code § 337(a) .......... 14

Cal. Civ. Proc. Code § 338 .......... 14

## I. INTRODUCTION[1]

Plaintiff John Doe ("Plaintiff") is not bound to arbitrate any of the claims he has asserted here and Kaiser's Motion to Compel Arbitration ("Motion" or "MTC") should be denied.[2]

All of Plaintiff's claims arise from Kaiser's knowing decision to place code on its Site and Apps, which intercepts and redirects Plaintiff's and other Users'[3] communications to third party companies, including Quantum Metric, Twitter, Adobe, Bing, Google, and Dynatrace (collectively, "Third Party Wiretappers"), without consent.[4]

Kaiser conditioned Plaintiff's and all Users' use of the Site and Apps on their agreement to abide by the "Terms and Conditions for our Website and Mobile Application," which incorporates Kaiser's "Website and Mobile Application Privacy Statement" (collectively, "Terms and Conditions").[5] ***Neither the Terms and Conditions nor the Privacy Statement contains an arbitration provision***. This stand-alone contract expressly governs Plaintiff's usage of the Site and App and Kaiser's privacy obligations. Thus, it is the only contract applicable to the privacy claims at issue here. Based on this alone, Plaintiff is properly before this Court and Kaiser's Motion should be denied.

---

[1] Unless otherwise noted, all internal citations and quotations are omitted and all emphases are added.

[2] Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc. (collectively, "Kaiser"), only move to compel arbitration for 1 of the 7 Plaintiffs.

[3] All users of the Site and Apps, regardless of whether they are Kaiser Plan Members, are referred to as "Users." "Kaiser Plan Members" means enrollees in a health plan under which Kaiser Foundation Health Plan, Inc. is financially responsible for payment for medical services provided or in which it has accepted such financial responsibility under contract with one or more of the Kaiser Permanente entities.

[4] Kaiser Permanente operates a website located at https://healthy.kaiserpermanente.org/ (the "Site"). It also offers mobile applications. Kaiser Plan Members in California, Colorado, the District of Columbia, Georgia, Hawaii, Maryland, Oregon, Virginia, and Southwest Washington can use the "Kaiser Permanente App" (herein, "App") offered through the Apple App Store and the Google Play Store. *See Kaiser Permanente*, Apple (last visited Jan. 14, 2024), https://apps.apple.com/us/app/ kaiser-permanente/id493390354; *Kaiser Permanente*, Google (last visited Jan. 14, 2024), https://play.google.com/store/search?q=kaiser+permanente+mobile+app&c=apps. Kaiser Plan Members in Washington outside of Southwest Washington can use the "Kaiser Permanente Washington App," also offered through the Apple App Store and the Google Play Store (together with the Kaiser Permanente App, the "Apps"). *See Kaiser Permanente Washington*, Apple (last visited Jan. 14, 2024), https://apps.apple.com/us/app/ kaiser-permanente-washington/id445899971; *Kaiser Permanente Washington*, Google (last visited Jan. 14, 2024), https://play.google.com/store/ apps/details?id=org.ghc.android.

[5] *See* First Amended Complaint ("FAC"), Ex. 1 ("Terms and Conditions"), Ex. 2 ("Privacy Statement" or "Statement").

Because the Terms and Conditions does not include an arbitration provision, Kaiser tries to shoehorn Plaintiff's claims into arbitration through a provision in his health care insurance plan's Evidence of Coverage ("EOC Clause" or "Clause").[6] But that Clause does not govern Plaintiff's use of the Site and App or the claims at issue here. By its terms, the Clause only covers claims arising from or related to insurance coverage and medical care Kaiser Plan Members receive when visiting Kaiser physicians or hospitals, such as claims for medical or hospital malpractice, premises liability, or coverage disputes. MTC at 5; Declaration of Duane Walker, ECF No. 84 ("Walker Decl.") at A-83. By contrast, Plaintiff's claims arise from Kaiser's privacy violations related to his and other Users' use of the Site and Apps—not the nature of the medical care or insurance coverage being provided.

And, even if the EOC Clause was applicable (it is not), it would not require Plaintiff to arbitrate the claims asserted here. Plaintiff has been a Kaiser Plan Member since 2012 (¶ 14)[7], and has regularly used the Site and App since that time (¶ 15). The arbitration clause cited by Kaiser did not become effective until April 1, 2021 when Plaintiff obtained health care coverage through the Teamsters & Food Employers Security Trust Fund ("Trust"). *See* MTC at 3 ("John Doe's enrollment into the Kaiser Permanente Traditional HMO Plan . . . was effective April 1, 2021"). Accordingly, Plaintiff's claims that accrued before April 1, 2021 would not be subject to arbitration.

Nor would the EOC Clause require individual arbitration. The arbitration provision provides just the opposite, explicitly stating that it shall apply where "[t]he claim is asserted by ***one or more Member Parties*** against one or more Kaiser Permanente Parties." MTC at 5. By its very terms, the EOC Clause does not preclude class arbitrations and Kaiser's request to stay litigation of Plaintiff's claims pending arbitration should be denied—to the extent the Court finds that certain of Plaintiff's claims should be sent to arbitration, class wide arbitration of those claims and litigation of Plaintiff's claims (including those accruing before April 1, 2021) should proceed simultaneously, a process authorized by the Clause. *See* Walker Decl. at A-85; ¶ 4, B-87; ¶ 5, C-79.

---

[6] In its MTC, Kaiser also references arbitration language in the Trust Enrollment Form ("Enrollment Form") that a third-party administrator sends out for enrollment in Kaiser medical plans. *see* MTC at 4. The Enrollment Form, however, provides that "the full arbitration provision is contained in the Evidence of Coverage." *Id.*

[7] All references to ¶ herein refer to paragraphs in the FAC.

Accordingly, Kaiser's Motion and Request to Stay should be denied.

## II. FACTUAL BACKGROUND

Plaintiff is a member of Kaiser Foundation Health Plan and has received medical treatment at Kaiser Foundation Hospitals and/or the Permanente Medical Group since in or around 2012. ¶ 14. Since that time, Plaintiff has regularly used the Site and App to access medical information and communicate with his health care providers, including making appointments, reviewing and ordering prescriptions, researching providers and medical conditions, communicating with providers, checking medical results, and reviewing his medical history. ¶ 15.

As with all Users, when Plaintiff visited the Site and App, Kaiser required that Plaintiff agree to the Terms and Conditions. ¶ 66. The Terms and Conditions are available at the bottom of the webpages on the Site and explicitly provide:

> BY USING THE SITE OR BY CLICKING "I ACCEPT" BELOW, YOU SIGNIFY YOUR AGREEMENT TO THESE TERMS AND CONDITIONS. IF YOU DO NOT AGREE TO THESE TERMS AND CONDITIONS, DO NOT USE THE SITE.

FAC, Ex. 1 at 3. The Terms and Conditions are also presented via hyperlink just below the "Sign In" fields required to be completed in order to access the purportedly secure patient Portal on the Site and Apps, with a notification just below the "Sign In" fields that provides: "By signing in, you agree to our website Terms & Conditions and Privacy Statement." FAC ¶ 64. The Terms and Conditions cover all Users' activities on the Site and Apps, regardless of whether or not they are active Kaiser Plan Members, including topics such as "signing on as or pretending to be another person," "collecting information about others, including email addresses," "using any 'deep-link', 'page-scrape', 'robot', 'spider', data mining tools, data gathering and extraction tools", among other provisions that are relevant to both Kaiser Plan Members and the general public. FAC, Ex. 1 at 5, 7. The Terms and Conditions incorporate the Privacy Statement, stating that: "Any personal information you submit to the Site (for yourself or someone else) is governed by our Website and KP Mobile Application Privacy Statement." ¶ 66. The EOC Clause is not incorporated by reference or a material aspect of either the Privacy Statement or the Terms and Conditions.

On June 9, 2023, after learning that Kaiser installed code that intercepted and redirected personal and health information and communications to the Third Party Wiretappers, Plaintiff

brought suit against Kaiser on behalf of himself, a Nationwide Class, and California Sub-Classes of Kaiser Plan Members who used the Site. Plaintiff alleges: Violation of the Electronic Communications Privacy Act ("ECPA"), Violation of the California Invasion of Privacy Act ("CIPA"), Common Law Invasion of Privacy, Invasion of Privacy in Violation of the California Constitution, Breach of Express Contract, and Breach of Implied Contract. On September 15, 2023, after learning that Kaiser also installed code on the Apps that similarly intercepts and redirects his information and communications to third parties, Plaintiff filed the First Amended Complaint, asserting these same claims on behalf of a class of Kaiser Plan Members in all states where Kaiser operates, as well as the California Sub-Classes, in connection with use of both the Site and Apps, and also included additional claims for violation of the California Legal Remedies Act ("CLRA"), California Confidentiality of Medical Information Act ("CMIA"), Negligence Per Se, and Statutory Larceny.

All of these claims arise from Plaintiff's use of the Site and App, which are governed by the Terms and Conditions and Privacy Statement.[8] *See, e.g.*, Ex. 1 at 5. Neither the Terms and Conditions nor the Privacy Statement contain an arbitration provision.

## III. LEGAL STANDARD

The central purpose of the Federal Arbitration Act ("FAA") "is to ensure that private agreements to arbitrate are enforced according to their terms." *Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 718 (N.D. Cal. 2012) (Chen, J). When considering a motion to compel arbitration, the Court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

The FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms[.]" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010). Courts apply federal substantive law to questions regarding the interpretation and enforceability of arbitration agreements generally, and state contract law to questions concerning whether the parties agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[8] For example, the claim for Breach of Express Contract (Fifth Claim for Relief) is based on breach of the Terms and Conditions. *See* ¶ 330.

Furthermore, the reach of an agreement must be based on its express terms. *Walsh v. Ariz. Logistics, Inc.*, 998 F.3d 393, 396 (9th Cir. 2021). The express terms must be given their usual and ordinary meaning under the plain meaning rule. *Valencia v. Smyth*, 185 Cal. App. 4th 153, 175-76 (2010).

On a motion to compel arbitration, a district court must "treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Chavez v. Bank of Am.*, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 7, 2011). Although there is a presumption in favor of arbitration when resolving ambiguities ***as to the scope*** of arbitration, "[t]he presumption in favor of arbitration . . . does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044-45 (9th Cir. 2009); *Victoria v. The Super. Ct. of L.A. Cnty.*, 40 Cal. 3d 734, 834 (1985) (en banc) ("In addition, '[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.'"). No presumption in favor of arbitration applies where the Court must determine whether there was an agreement to arbitrate, such as where there is more than one contract with the same defendant and not all of those contracts contain an arbitration provision. *Johnson v. Walmart Inc.*, 57 F.4th 677, 683 (9th Cir. 2023).

## IV. ANALYSIS

Plaintiff's claims are predicated on his and other Users' use of the Site and App, which is governed by the Terms and Conditions—an express contract between Plaintiff and Kaiser that does not contain an arbitration provision. For this reason, Kaiser has not, and cannot, direct the Court to a valid agreement to arbitrate the dispute at issue. Instead, Kaiser's Motion is based on a separate agreement containing an arbitration clause that is irrelevant to the dispute here. Kaiser's Motion should be denied and this Court should continue to exercise jurisdiction over all of Plaintiff's claims.

### A. The Terms and Conditions Creates a Stand-Alone Contract that Governs Plaintiff's Use of the Site and App and Claims Arising Therefrom

The Terms and Conditions creates an express contract between Plaintiff and Kaiser regarding Plaintiff's use of the Site and App and does not contain an arbitration provision. *See* FAC, Ex. 1. The Ninth Circuit has long-recognized that when the same parties enter into separate contracts, some with

and some without arbitration agreements, an arbitration clause in one agreement does not require that claims arising out of the other agreement be sent to arbitration. *Int'l Ambassador Programs, Inc. v. Archexpo*, 68 F.3d 337, 340 (9th Cir. 1995). Here, the only agreement relevant to this case is the Terms and Conditions. The EOC Clause is not relevant. As two separate contracts, there is no presumption in favor of arbitration here. *See Johnson*, 57 F.4th at 681 (holding that dispute over whether online terms create a separate contract "contests the existence, not the scope, of an arbitration agreement").

Kaiser requires that anyone accessing the Site and App, including Plaintiff, agree to the Terms and Conditions, which explicitly provides:

> BY USING THE SITE OR BY CLICKING "I ACCEPT" BELOW, YOU SIGNIFY YOUR AGREEMENT TO THESE TERMS AND CONDITIONS. IF YOU DO NOT AGREE TO THESE TERMS AND CONDITIONS, DO NOT USE THE SITE.

FAC, Ex. 1 at 3. The Terms and Conditions is available at the bottom of the webpages on the Site and also presented through a hyperlink before Users log into the purportedly secure patient Portal on the Site and Apps, with a notification just below the "Sign In" fields providing that: "By signing in, you agree to our website Terms & Conditions and Privacy Statement."[9] ¶ 64. The Terms and Conditions explicitly incorporate the Privacy Statement, stating that: "Any personal information you submit to the Site (for yourself or someone else) is governed by our Website and KP Mobile Application Privacy Statement." ¶ 66. Kaiser does not challenge the fact that the Terms and Conditions and incorporated Privacy Statement create a contract between Kaiser and Users, like Plaintiff. *See* Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint at 1, ECF No. 88.

While the disclosures in the Privacy Statement are inadequate, incomplete, and contrary to Kaiser's actual practices (*see* ¶¶ 214-20, 337, 340, 352, 368), the Privacy Statement undeniably contains provisions that govern Kaiser's privacy obligations related to Plaintiff's use of the Site and App—the issue at the heart of this litigation. For example, Kaiser promises Plaintiff in the Privacy Statement that any data provided to third parties "does not contain information about your health

[9] *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586-87 (N.D. Cal. 2020) (holding that the defendant's terms and conditions and privacy statement, presented on the sign-in page in blue and underlined hyperlinks, similar to Kaiser's, formed a binding contract with users).

history." FAC, Ex. 2 at 5. According to the Privacy Statement, Plaintiff's and other Users' "Site activity" "is collected on an aggregate basis, which means that no personally identifiable information is associated with the data." ¶ 67. The Privacy Statement further provides: "Kaiser Permanente is committed to the privacy of the users of the Site." FAC, Ex, 2 at 1. While this language is plainly irreconcilable with Plaintiff's allegations (*see* ¶¶ 69, 127-28, 159-70, 200, 205-06, 209-12, 352), the scope of the Terms and Conditions confirms that it is the contract to evaluate here.

Plaintiff's claims are properly brought in this Court because the Terms and Conditions do not contain an arbitration provision and cover Plaintiff's claims that Kaiser invaded his privacy while he was using the Site and App, in violation of state and federal law, and in breach of its contractual obligations under the Privacy Statement.

As the Ninth Circuit held in *Johnson v. Walmart Inc.*, 57 F.4th 677, 683 (9th Cir. 2023), a website's Terms of Use can be a separate and independent contract from another agreement entered into with the same company, and the arbitration provision in one agreement does not require arbitration of claims arising under the other. In *Johnson*, the plaintiff purchased car tires from Walmart.com, which provided in its Terms of Use: "all disputes arising out of or related to these Terms of Use or any aspect of the relationship between you and Walmart . . . will be resolved through final and binding arbitration." *Id*. at 679. The plaintiff there made a separate purchase from a Walmart employee of a service agreement, which did not contain an arbitration provision, and brought suit after Walmart allegedly failed to comply with the terms of that service agreement. *Id.* at 680. Walmart moved to compel arbitration but, the Ninth Circuit found that even though the Terms of Use purported to cover ***all disputes arising out of or related to the relationship between you and Walmart***, the Terms of Use actually had "a clear, delineated purpose—to regulate use of Walmart's online resources and content," and constituted a separate contract governing web transactions.[10] *Id.* at 682. As such, the arbitration provision did not apply to plaintiff's claims under the service agreement.

---

[10] The court further rejected Walmart's argument that the two contracts were "merely interrelated contracts in an ongoing series of transactions," finding that purchase of the servicing agreement was "negotiated and entered into separately" from the purchase of tires, the two contracts involved separate consideration, and damages sought were exclusively on the terms of the servicing agreement. *Id*. at 683. Here, the EOC was entered into for provision of health care coverage while the Terms and Conditions separately deals with Users' interactions with the Site and Apps. The EOC offers health

A similar analysis applies here. The EOC and the Terms and Conditions are separate agreements such that the "arbitration agreement in the first does not encompass disputes arising from the second." *Johnson*, 57 F.4th at 684. *See also Int'l Ambassador Programs*, 68 F.3d at 340 (finding that arbitration provision in one agreement did not require arbitration of claims covered by other agreement where the proof necessary to establish claims under one agreement is not the same as the proof necessary to establish claims under the other agreement). The EOC Clause, like the Terms of Use in *Johnson*, has a clear, delineated purpose—to regulate Kaiser Plan Members' insurance coverage and health care provided at Kaiser facilities. At nearly 100 pages, the EOC Clause covers multiple topics, including insurance deductibles, premiums, how to obtain routine and urgent care, getting a referral or second opinion, plan facilities, specific health benefits, coordination of benefits, post-service claims and appeals, and termination or continuation of membership. *See* Walker Decl. at A-9-11. It does not cover the use of the Site and Apps.

The EOC also includes a Dispute Resolution section, which is where the EOC Clause appears, and lists sample Grievances to be handled under the section. *Id*. at A-10. Notably, none of the "Grievances" that Kaiser lists comes close to touching on the online privacy violations Plaintiff asserts here, instead listing things like dissatisfaction with the "quality of care" received, receiving insurance denials, how long it took to get medical services, and facing discrimination from staff or membership termination. *Id*. at A-84. The language of the EOC Clause further confirms that its delineated purpose is to cover such disputes concerning insurance coverage and health care provided at Kaiser facilities, providing that it applies to "[a]ny claim for medical or hospital malpractice . . . for premises liability, or relating to the coverage for, or delivery of, services or items. . . ." *Id.* at A-83.

The EOC and Terms and Conditions are separate contracts with wholly different consideration covering different claims and damages. Thus, as in *Johnson* and *International Ambassador Programs, Inc.*, these two contracts have separate purposes and an arbitration clause in the EOC does

---

care coverage at Kaiser facilities in exchange for premiums and other payments, while the Terms and Conditions govern the provision of online functionalities to Users in exchange for increased efficiencies and cost reduction for Kaiser. Lastly, damages sought here exclusively arise out of the Terms and Conditions.

not apply to claims related to Plaintiff's use of the Site and App, which are governed by the Terms and Conditions.

### B. The EOC Clause Does Not Require Arbitration of Plaintiff's Claims

Even if the separate EOC agreement was applicable (it is not), Plaintiff would still not be required to arbitrate his claims because: (1) the scope of the EOC Clause does not encompass the types of claims Plaintiff asserts here; and (2) the EOC Clause only became effective on April 1, 2021 and therefore does not apply to Plaintiff's claims accruing before that date.

#### 1. The EOC Clause Does Not Cover the Claims at Issue

The arbitration provision in the EOC does not cover the claims at issue here. By its terms, the scope of the EOC Clause only applies to disputes over Kaiser Plan Members' insurance coverage and health care delivered at Kaiser facilities, such as claims for medical or hospital malpractice, premises liability, or coverage disputes. MTC at 4-5. By contrast, Plaintiff's claims arise from his and other Users' communications on the Site and App and Kaiser's conduct in installing code that intercepts those communications.[11]

To determine if the dispute falls within the scope of the arbitration agreement, the Court must first ascertain what the parties intended to include as an arbitrable dispute. *See Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914, 930-31 (1985); *Universal Sales Corp. v. Cal. Press Mfg. Co.*, 128 P.2d 665, 671 (Cal. 1942)). The terms of a contract are not required to be stated in the minutest detail, but must evidence a meeting of the minds on the essential features of the agreement. *JP Express Serv., Inc. v. KG Admin. Servs.*, 2019 WL 8060074, at *3 (C.D. Cal. Nov. 5, 2019). "[T]he intention of the parties is to be ascertained from the writing alone, if possible." *Int'l Brotherhood of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020).

When determining whether a specific dispute falls within the scope of arbitration, the court may examine only the agreement and the non-moving party's complaint, while attempting to give effect to both parties' intentions "in light of the usual and ordinary meaning of the contractual

[11] This conduct affects both Kaiser Plan Members and other Users who are non-members. To be clear, Plaintiff only challenges the scope of the arbitration clause to the extent the Court finds that the EOC applies.

language and the circumstances under which the agreement was made." *Weeks v. Crow*, 113 Cal. App. 3d 350, 353 (1980). Then, the factual allegations must "touch matters" covered by the contract containing the arbitration agreement in order for the dispute to be arbitrable. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). The alleged claim must be rooted in "'the relationship between the parties which was created by the contract' before [it] can be deemed to fall within the scope of the arbitration provision." *Rice v. Downs*, 248 Cal. App. 4th 175, 188 (2016). The question is what Plaintiff and Kaiser intended to include in the scope of arbitration when they entered into the EOC. *See Salton Bay Marina, Inc.*, 172 Cal. App. 3d 914, 930-31 (1985).

The EOC clearly does not encompass Plaintiff's claims arising out of his use of the Site and App. This agreement resulted from Plaintiff joining the Trust, opting in to health care coverage from KFHP that was offered by the Trust, signing the benefits enrollment package, and becoming enrolled in a Kaiser health plan. MTC, at 3. The EOC and the EOC Clause is thus singularly focused on Plaintiff's insurance coverage and the healthcare he receives at Kaiser hospitals and physicians' offices through that coverage. By contrast, Plaintiff's claims at issue here involve Kaiser's maintenance and conduct on the Site and App, and Kaiser's relationship with the Third Party Wiretappers. ¶ 12. Indeed, anyone who visits the Site or App, regardless of whether they are currently Kaiser Plan Members, could potentially have the same claims. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1103 (9th Cir. 2023) ("Here, even if Jackson had no contract with Amazon . . . he would be able to bring the same claims for invasion of privacy."). As in *Jackson*, "the alleged misconduct was not related to the [EOC Clause]. Nor was it related to participation . . . or the performance of services under [the EOC Clause]." *Id.* at 1104. The claims at issue, which allege Kaiser's failings and misconduct in connection with its privacy obligations related to Plaintiff's use of the Site and App, are far from the "matters" covered by the EOC Clause.

Kaiser cites the non-binding and conclusory state trial court opinion, *Magno v. Kaiser Found. Health Plan, Inc.*, 2023 LEXIS 76990, at *1-3 (Cal. Super. Feb. 7, 2023), which fails to provide any substantive analysis and does not involve multiple contracts governing the differing aspects of the relationship of the parties as exists here. It instead involves Kaiser's dereliction of duties owed at its physical location—namely failing to prevent a thief from breaking into a Kaiser COVID-19 testing

clinic and stealing an iPad containing sensitive information—more akin to the "premises liability" claims identified in the EOC Clause than the online privacy violations relevant here. *See also Johnson*, 57 F.4th at 682 (distinguishing between transactions made online and transactions at physical locations).

Kaiser's other cited cases only underscore that the EOC Clause is not limitless in scope. The claims in those cases were of the type that would fall under the EOC Clause, or a substantially similar clause, because they involved claims arising out of insurance coverage or problems at Kaiser's physical facilities, such as hospital malpractice, premises liability, or coverage disputes. *See, e.g.*, *Loucks v. Kaiser Found. Hosps.*, 2020 WL 3469326, at *8, *11 (N.D. Cal. June 25, 2020) (Chen, J.) (asserting claims for medical malpractice, dependent adult abuse, negligent infliction of emotional distress, intentional misconduct, violations of the Emergency Medical Treatment and Labor Act, and wrongful death when a patient died after receiving health care); *Smith v. Watanabe*, 2022 WL 6282201, at *6 (N.D. Cal. Sept. 27, 2022) (asserting violations of the Affordable Care Act and the Employee Retirement Income Security Act when wheelchairs were excluded from coverage); *Hunter v. Kaiser Found. Health Plan, Inc.*, 434 F. Supp. 3d 764 (N.D. Cal. 2020) (asserting claims under the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, the California Consumer Credit Reporting Agencies Act, the California Unfair Competition Law, the Rosenthal Fair Debt Collection Practices Act, and California common law when Kaiser sought to collect charges for services); *Drissi v. Kaiser Found. Hosps., Inc.*, 543 F. Supp. 2d 1076, 1077-78 (N.D. Cal. 2008) (asserting claims for wrongful death, concealment, and conspiracy in connection with the alleged mishandling of the patient's need for a kidney transplant); *Toledo v. Kaiser Permanente Med. Grp.*, 987 F. Supp. 1174, 1180-81 (N.D. Cal. 1997) (asserting breach of contract, breach of the implied covenant of good faith, fraud, and infliction of emotional distress when Kaiser refused to pay for plaintiff's surgical and hospital benefits); *Wilson v. Kaiser Found. Hosps.*, 141 Cal. App. 3d 891 (1983) (asserting negligence for plaintiff's injuries sustained shortly before and after birth at a Kaiser Hospital); *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699 (1976) (asserting malpractice for contracting serum hepatitis from blood transfusions following surgery).

Accordingly, the EOC Clause does not cover the claims at issue here.

**2. The EOC Clause Cannot Be Retroactively Applied to Require Arbitration of Claims that Accrued Prior to April 1, 2021**

To the extent the Court determines that the EOC Clause applies (it does not), then it should maintain jurisdiction over claims accruing prior to April 1, 2021. Plaintiff has used the Site and/or App since in or around 2012, but only enrolled in the Trust's health plan as of April 1, 2021. Kaiser does not contend that Plaintiff entered into any arbitration agreement prior to enrolling in the Trust's health plan and the EOC Clause does not "clearly and unequivocally" apply retroactively to claims brought by Kaiser Plan Members; in fact, it does not at all. *Long v. Fid. Water Sys., Inc.*, 2000 WL 989914, at *4 (N.D. Cal. May 26, 2000). *See also* Walker Decl. at A-83 (retroactive only as to claims asserted by Kaiser). Thus, without the power to reach back in time, the arbitration clause can only apply to claims that accrued after April 1, 2021.

An arbitration clause may only apply retroactively when the language "clearly and unequivocally" indicates the retroactive effect. *Long*, 2000 WL 989914, at *4. Where, as here, the clause does not expressly state retroactive application to Plaintiff (and in fact, suggests the exact opposite), courts have found that the arbitration agreement cannot attach retroactively. *See* Walker Decl. at A-83. For example, in *Morse v. ServiceMaster Global Holdings Inc.*, the plaintiff argued that the arbitration agreement cannot apply retroactively to claims he asserted in court 13 days prior to signing the agreement. 2012 WL 4755035, at *3 (N.D. Cal. Oct. 4, 2012). The court agreed, noting that the arbitration language is not "retroactive on its face." *Id.* at *4; *see also Castro v. ABM Indus., Inc.*, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) (holding that the use of a present tense verb in the arbitration agreement, "whenever [claims] arise," suggests coverage of "present and future, but not past, conduct").

The EOC Clause does not "clearly and unequivocally" apply retroactively to claims brought by Kaiser Plan Members, including Plaintiff, as Kaiser must show. *Long*, 2000 WL 989914, at *4. To the contrary, the Clause's express language regarding retroactive application limits that application to claims asserted by Kaiser, stating: "Insofar as this 'Binding Arbitration' section applies ***to claims asserted by Kaiser Permanente Parties***, it shall apply retroactively to all unresolved claims that accrued before the effective date of this *EOC*. ***Such retroactive application shall be binding only***

***on the Kaiser Permanente Parties***." Walker Decl. at. A-83; B-85; C-77. This is far from a clear and unequivocable statement of retroactive applicability for claims asserted by Plaintiff. In fact, under the express terms, the opposite is true: the EOC Clause does not apply retroactively to claims brought by Kaiser Plan Members, like Plaintiff, and instead, only applies to claims brought by Kaiser. *See Weeks*, 113 Cal. App. 3d at 353 (finding omission of a contractual provision constitutes an intention to exclude that particular term from the agreement).

Accordingly, at a minimum, Plaintiff should be permitted to proceed on all of his claims based on injuries sustained prior to April 1, 2021. This includes all claims with statutes of limitations of more than 2 years and 2 months, such as Breach of Express Contract (4 years – Cal. Civ. Proc. Code § 337(a)); violation of the CLRA (3 years – Cal. Civ. Code § 1783); CMIA, Negligence Per Se, and Statutory Larceny (3 years – Cal. Civ. Proc. Code § 338). Additionally, with respect to claims that have shorter statutes of limitations (such as claims for violation of the ECPA, CIPA, Breach of Implied Contract, and Invasion of Privacy), the statute of limitations was tolled by Kaiser's conduct and the delayed discovery rule and those claims should also proceed. ¶¶ 244-250; *see also Brown v. Google*, 525 F. Supp. 3d 1049, 1070-71 (N.D. Cal. 2021) (finding that the statute of limitations was tolled by defendant's fraudulent concealment because "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim"); *Doe v. Microsoft*, 2023 WL 8780879, at *5 n.6 (W.D. Wash. Dec. 19, 2023) ("Accepting Plaintiff's allegations [that website code was highly technical and there was no indication that would alert a reasonable consumer of data collection and interception practices on Kaiser's website] as true, the delayed discovery rule tolls the statute of limitations, making the specific timing of alleged misconduct irrelevant to the analysis."). Accordingly, to the extent the Court applies the EOC Clause to Plaintiff (it should not), such application should be limited to claims that accrued after April 1, 2021 and severed from those claims pre-dating Plaintiff's enrollment in the Trust's health plan.

**C. The EOC Clause Does Not Preclude Class Arbitration**

As explained above, it is the role of courts and arbitrators to "give effect to the intent of the parties." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). Some terms of the agreement, such as an authorization of class-action arbitration, may be implied by operation of law. *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 123 (2d Cir. 2011) (affirming that *Stolt-Nielsen* does not foreclose the possibility that parties may reach an implicit, rather than an express "agreement to authorize class-action arbitration"); *Vazquez v. ServiceMaster Glob. Holding, Inc.*, 2011 WL 2565574, at *3 n.1 (N.D. Cal. June 29, 2011).

Here, the EOC Clause contains an affirmative "contractual basis" determining that class-wide arbitration is appropriate. *Stolt-Nielsen*, 559 U.S. at 684. The EOC Clause lists out three requirements that must be met in order to be submitted to arbitration. MTC at 5. One of those requirements is that the claim in question be asserted by "***one or more*** Member Parties" against Defendants. *Id.* Other provisions within the arbitration clause reference claims brought by multiple "Claimants," demonstrating anticipation of collective actions. *See, e.g.*, Walker Decl. at ¶ 3, A-83; ¶ 4, B-85; ¶ 5, C-78 ("Claimants shall initiate arbitration by serving a Demand for Arbitration"); *23andMe, Inc. v. Davis-Hudson*, 2015 WL 6094303, at *3 (N.D. Cal. Oct. 16, 2015) (upholding the arbitrator's "finding that the plural terms refer to 'more than one arbitration award and therefore more than one party'"). The EOC Clause also does not expressly exclude class arbitration. As such, the EOC Clause does not preclude class arbitration.

**D. A Stay Is Unwarranted**

Plaintiff's claims should not be stayed because there are no arbitrable claims. In the event that the Court determines that one claim is arbitrable and others are not, litigation as to the nonarbitrable claims should proceed. The FAA requires "piecemeal resolution when necessary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) (allowing plaintiff's two disputes to separately proceed via arbitration and litigation). This is in line with the intent of the FAA "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 254 (2016). Thus, to the extent the claims arising after April 1, 2021 are ripe for arbitration under the EOC Clause, the remaining nonarbitrable claims should

proceed in litigation. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20. This result is consistent with the terms of the EOC Clause, which provides that "the right to arbitration . . . shall not be denied, stayed, or otherwise impeded because a dispute . . . involve[s] both arbitrable and nonarbitrable claims." Walker Decl. at ¶ 3, A-88; ¶ 4, B-87; ¶ 5, C-79.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel Arbitration of Plaintiff John Doe's claims and deny the Request to Stay.

Dated: January 15, 2024

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Melissa L. Yeates*
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

-and-

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Michael A. Innes (*pro hac vice* forthcoming)
minnes@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
Jordan M. Steele (*pro hac* forthcoming)
jsteele@carellabyrne.com

5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

*Counsel for Plaintiffs and the proposed Classes*