**KESSLER TOPAZ MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Joseph H. Meltzer
jmeltzer@ktmc.com
Melissa L. Yeates
myeates@ktmc.com
Tyler S. Graden
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI BRODY & AGNELLO, PC**
James E. Cecchi
jcecchi@carellabyrne.com
Michael A. Innes
minnes@carellabyrne.com
Kevin G. Cooper
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Counsel for Plaintiffs and the proposed Classes*
[*Additional Attorneys Listed on Signature Page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, AND JANE DOE V, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and THE PERMANENTE MEDICAL GROUP, INC.

Defendants.

Case No. 4:23-cv-02865-EMC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date: March 14, 2024
Time: 1:30 p.m.
Courtroom: 5

Judge: Hon. Edward M. Chen

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 3

III. LEGAL STANDARD ..... 7

IV. ALL PLAINTIFFS HAVE ARTICLE III STANDING ..... 8

V. ALL DEFENDANTS ARE PROPER DEFENDANTS TO THIS ACTION ..... 10

VI. PLAINTIFFS DID NOT CONSENT TO KAISER'S PRIVACY INVASIONS ..... 11

A. Kaiser Failed to Obtain Signed Written Authorization Required for Valid Consent Under HIPAA and State Law ..... 12

B. The Privacy Statement Cannot Constitute Consent Because it Fails to Disclose the Conduct at Issue ..... 13

VII. KAISER'S ADDITIONAL ARGUMENTS FOR DISMISSAL ALL FAIL ..... 15

A. Plaintiffs Plausibly Allege the ECPA's Crime-Tort Exception Applies ..... 15

B. Kaiser's Arguments for Dismissal of the CIPA Claim Misstate the Law and Facts ..... 18

1. Parties to communications can be liable under CIPA ..... 18

2. Kaiser misstates Plaintiffs' allegations regarding interception ..... 22

3. Kaiser Agreed that California Law Applies to All Plaintiffs' Claims ..... 23

C. Plaintiffs Sufficiently Allege Invasion of Privacy and Intrusion Upon Seclusion ..... 24

D. Plaintiffs Sufficiently Allege Breach of Express Contract ..... 26

E. Plaintiffs Sufficiently Allege Breach of Implied Contract ..... 28

F. Plaintiffs Sufficiently Allege Negligence Per Se ..... 28

G. Plaintiffs Sufficiently Allege Violation of the CLRA ..... 29

H. Plaintiff Sufficiently Alleges Violation of CMIA ..... 30

I. Plaintiffs Sufficiently Allege Statutory Larceny ..... 32

J. Jane Doe II Sufficiently Alleges Violation of the District of Columbia CPPA ..... 33

K. John Doe II Sufficiently Alleges Violation of the Georgia UDTPA ..... 33

L. John Doe II Sufficiently Alleges Violation of the Georgia CSPA ..... 34

M. John Doe II Sufficiently Alleges Violation of the Georgia IIPA Against KFHP ..... 35

N. Jane Doe III Does Not Seek Extraterritorial Application of the Maryland WESA ..... 35

O. Jane Doe V Has Standing to Assert a Claim for Violation of the Oregon UTPA ..... 35

P. Jane Doe IV Sufficiently Alleges Violation of the Virginia CCA ..... 36

Q. Jane Doe IV Sufficiently Alleges Violation of Virginia IIPPA ..... 37

R. Jane Doe Sufficiently Alleges Violation of Washington CPA ..... 37

S. Jane Doe Sufficiently Alleges Violation of the Washington Privacy Act ..... 38

T. Jane Doe Sufficiently Alleges Violation of the Washington HCIA ..... 40

VIII. CONCLUSION ..... 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.G. by & through Galindo v. United States*,
2023 WL 7134927 (S.D. Cal. Oct. 30, 2023) ........ 29

*Adams v. PSP Grp.*,
2023 WL 5951784 (E.D. Mo. Sept. 13, 2023) ........ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8

*Attias v. CareFirst, Inc.*,
365 F. Supp. 3d 1 (D.D.C. 2019) ........ 33

*Bacon v. Dep't of Hum. Servs.*,
2023 WL 2755592 (9th Cir. Apr. 3, 2023) ........ 36

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........ 29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*Bell v. Feibush*,
151 Cal. Rptr. 3d 546 (Cal. Ct. App. 2013) ........ 32

*Benz v. Wash. Newspaper Publ'g Co.*,
2006 WL 2844896 (D.D.C. Sept. 29, 2006) ........ 25

*Boegeman v. Smith*,
2018 WL 3140469 (S.D. Cal. June 27, 2018) ........ 32

*Brophy v. JPMorgan Chase Bank Nat'l Ass'n*,
2013 WL 6273583 (E.D. Wash. Dec. 4, 2013) ........ 37

*Brown v. Google*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........ 26

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ........ 10, 14, 15

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 13

*Brown v. Mortensen*,
30 Cal. App. 5th 931 (2019) ........ 32

*Bryan v. Del Monte Foods, Inc.*,
2023 WL 4758452 (N.D. Cal. July 25, 2023) .......... 36

*Buckley v Santander Consumer USA, Inc.*,
2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) .......... 25

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 10

*Cal. Spine & Neurosurg. Inst. v. United Healthcare Ins. Co.*,
2019 WL 4450842 (N.D. Cal. Sept. 17, 2019) .......... 28

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 13, 23

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 23, 38

*Cook v. GameStop, Inc.*,
2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) .......... 10

*Cousin v. Sharp Healthcare*,
2023 WL 4484441 (S.D. Cal. July 12, 2023) .......... 10, 31

*Cousineau v. Microsoft Corp.*,
992 F. Supp. 2d at 1129 .......... 38

*Curran v. Wells Fargo Bank, N.A.*,
2021 WL 6753480 (D.D.C. Mar. 11, 2021) .......... 33

*Dent v. NFL*,
902 F.3d 1109 (9th Cir. 2018) .......... 29

*Doe v. Beard*,
63 F. Supp. 3d 1159 (C.D. Cal. 2014) .......... 25

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .......... 24

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .......... *passim*

*Doe v. Regents of Univ. of Cal.*,
2023 WL 3316766 (N.D. Cal. May 8, 2023) .......... 25

*In re Double Click Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 17

*Elsner v. Uveges*,
102 P.3d 915 (Cal. 2004) .......... 28

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 8

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 11, 13, 15, 25

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... *passim*

*Friedman v. Zimmer*,
2015 WL 6164787 (C.D. Cal. July 10, 2015) .......... 11

*Garcia v. Yeti Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) .......... 18, 19

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp 3d 1078 (N.D. Cal. 2018) .......... 25

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... *passim*

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 21, 22

*Haw. Reg'l Council of Carpenters v. Yoshimura*,
2016 WL 4745169 (D. Haw. Sept. 12, 2016) .......... 17

*Heller v. NBCUniversal, Inc.*,
2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) .......... 11

*In re iPhone App. Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 30

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .......... *passim*

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 19

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 18, 20, 21, 22

*Krise v. SEI/Aaron's, Inc.*,
2017 WL 3608189 (N.D. Ga. Aug. 22, 2017) .......... 34

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .......... 17

*Lam v. Target Corp.*,
2017 WL 4154947 (E.D. Cal. Sept. 19, 2017) .......... 29

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 8

*McKee v. Gen. Motors Co.*,
601 F. Supp. 3d 901 (W.D. Wash. 2022), *aff'd*,
2023 WL 7318690 (9th Cir. Nov. 7, 2023) .......... 39

*McShannock v. JP Morgan Chase Bank N.A.*,
354 F. Supp. 3d 1063 (N.D. Cal. 2018) (Chen, J.), *rev'd and remanded sub nom. McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020) .......... 27

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 3, 26

*Mikulsky v. Noom, Inc.*,
2023 WL 4567096 (S.D. Cal. July 17, 2023) .......... 10

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) .......... 29

*Nathanson v. Polycom, Inc.*,
2015 WL 12964727 (N.D. Cal. Apr. 16, 2015) .......... 2

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014) .......... 28

*United States ex rel. Osinek v. Kaiser Permanente*,
2023 WL 4054279 (N.D. Cal. June 15, 2023) .......... 2, 10

*Pena v. Gamestop, Inc.*,
2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) .......... 17

*People v. Myles*,
306 Cal. Rptr. 3d 288 (Cal. Ct. App. 2023) .......... 32

*People v. Williams*,
305 P.3d 1241 (Cal. 2013) .......... 32

*Peterson v. Aaron's, Inc.*,
108 F. Supp. 3d 1352 (N.D. Ga. 2015) .......... 34

*Popa v. PSP Grp.*,
2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) .......... 10

*Powell v Union Pac. R.R. Co.*,
864 F. Supp. 2d 949 (E.D. Cal. 2012) .......... 19

*Pride v. Correa*,
719 F.3d 1130 (9th Cir. 2013) .......... 7

*Purvis v. Aveanna Healthcare*,
563 F. Supp. 3d 1360 (N.D. Ga. 2021) .......... 25

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 3, 18, 24

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 19, 20

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1976) .......... 19, 20

*S.G. v. S.F. Unified Sch. Dist.*,
2018 WL 1876875 (N.D. Cal. Apr. 19, 2018) (Chen, J.) .......... 28

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 18, 19

*Semore v. Pool*,
217 Cal. App. 3d 1087 (1990) .......... 29

*Sere v. Grp. Hosp'n, Inc.*,
443 A.2d 33 (D.C. 1982) .......... 33

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
506 F.3d 832 (9th Cir. 2007) .......... 8

*Space Sys./Loral, LLC v. Orbital ATK, Inc.*,
306 F. Supp. 3d 845 (E.D. Va. 2018) .......... 36

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 8

*State v. Roden*,
321 P.3d 1183 (Wash. 2014) (en banc) .......... 39

*Straubmuller v. Jetblue Airways Corp.*,
2023 WL 5671615 (D. Md. Sept. 1, 2023) .......... 10

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) .......... 17

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) .......... 21

*In re Toys R Us, Inc., Priv. Litig.*,
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) .......... 16, 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 9

*Trujillo v. Nw. Tr. Svs.*,
355 P.3d 1100 (Wash. 2015) .......... 37, 38

*Valenzuela v. Nationwide Mut. Ins. Co.*,
2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) .......... 3, 18, 19, 21

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097,1105 (9th Cir.) .......... 8

*In re Vizio, Inc., Cons. Priv. Litig.*,
238 F Supp. 3d 1204 (C.D. Cal. 2017) .......... 26

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) .......... 7

*White v. Soc. Security Admin.*,
111 F. Supp. 3d 1041 (N.D. Cal. 2015) .......... 25

*Williams v. Facebook, Inc*.,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 3, 25

*Willingham v. Glob. Payments, Inc*.,
2013 WL 440702 (N.D. Ga. Feb. 5, 2013) .......... 33

*Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*,
2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) .......... 23

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 28

*In re Yahoo! Inc. Customer Data Sec. Breach Litig*.,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) .......... 30

*Yoon v. Lululemon USA, Inc*.,
549 F. Supp. 3d. 1073 (C.D. Cal. 2021) .......... 18, 20, 21

**Statutes**

18 U.S.C. § 2511(2)(d) .......... 2, 15

42 U.S.C. § 1320d-6 .......... 16

Cal. Civ. Code § 56.05 .......... 12, 30

Cal. Civ. Code § 56.10(d) ........ 16
Cal. Civ. Code § 56.36(a) ........ 16
Cal. Civ. Code § 56.36(b) ........ 31
Cal. Civ. Code § 1761(d) ........ 30
Cal. Civ. Code § 1770(a)(5) ........ 30
Cal. Penal Code § 484(a) ........ 32
Cal. Penal Code § 496(c) ........ 32
Cal. Penal Code § 631(a)[iv] ........ 18, 19
D.C. Code § 28-3904 ........ 33
Ga. Code Ann. § 10-1-373(a) ........ 33
Ga. Code Ann. § 16-9-93(a) ........ 34
Ga. Code Ann. § 33-39-3(13) ........ 35
Ga. Code Ann. § 33-39-14 ........ 35
Md. Code Ann., Cts. & Jud. Proc. § 10-410(a) ........ 35
Md. Code Ann., Health-Gen. § 4-301(k) ........ 12, 16
Md. Code Ann., Health-Gen § 4-303 ........ 16
Or. Rev. Stat. Ann. § 192.558 ........ 12, 16
Or. Rev. Stat. Ann. § 192.556(6) ........ 12
Or. Rev. Stat. Ann. § 646.638 ........ 36
Va. Code Ann. § 32.1-127.1:03 ........ 16
Va. Code Ann. § 38.2-600 ........ 37
Va. Code Ann. § 38.2-613 ........ 37
Wash. Rev. Code Ann. § 9.73.030(1)(a) ........ 38
Wash. Rev. Code Ann. § 9.73.060 ........ 39
Wash. Rev. Code Ann. § 19.86.010(2) ........ 37
Wash. Rev. Code Ann. § 70.02.010(17) ........ 12, 40

Wash. Rev. Code Ann. § 70.02.020 .......... 16, 40

Wash. Rev. Code Ann. § 70.02.050 .......... 12

**Other Authorities**

45 C.F.R. § 160.103 .......... 27

45 C.F.R. § 164.502 .......... 27

45 C.F.R. § 164.508 .......... 2, 7, 12

Fed. R. Civ. P. 8(d)(2) .......... 28

## I. INTRODUCTION

For years, Kaiser secretly allowed third parties to intercept Plaintiffs' and other Users' private health information and communications with their health care providers through code embedded on its Site and Apps.[1] While Kaiser promised in its Privacy Statement that it "is committed to protecting the privacy of the users of the Site," and repeatedly reassured Users that their personal health information that they share on the Site and Apps is kept confidential, Kaiser in fact did just the opposite, sharing the data with third parties and using it for its own benefit. This highly offensive conduct is not only contrary to Kaiser's express and implied promises, but also violates longstanding state and federal laws requiring that Kaiser obtain written authorization—which Kaiser does not even claim to have received—before disclosing or using such information for marketing purposes. Eschewing its obligations to Plaintiffs and other Users, Kaiser chose to criminally and tortiously enrich itself and others by surreptitiously taking sensitive data, without authorization and without providing compensation to Plaintiffs and other Users. After Plaintiffs filed their Complaint, and moved for a Preliminary Injunction, Kaiser finally disabled, deleted, or modified the Third Party Wiretappers' code. Of course, this post-litigation change in business practice—while a positive result of Plaintiffs' litigation efforts—does not absolve Kaiser of its past conduct. Nor does it provide Plaintiffs the full relief to which they are entitled.

Kaiser now takes aim at the claims set forth in Plaintiffs' First Amended Complaint ("FAC"). But the majority of Kaiser's arguments have already been rejected by Your Honor, the Ninth Circuit, and other Article III judges in this Circuit. As an initial matter, while Kaiser claims that it cannot be held liable for using purportedly "commonplace internet technologies[,]" the Ninth Circuit has

[1] "Kaiser" means Kaiser Foundation Health Plan, Inc. ("KFHP"), Kaiser Foundation Hospitals, and the Permanente Medical Group, Inc. The term "Third Party Wiretappers" means Quantum Metric, Twitter, Adobe, Bing, Google, and Dynatrace. Plaintiffs' and other users of the Site and Apps are referred to collectively as ("Users"). "Kaiser Plan Members" means enrollees in a health plan under which Kaiser Foundation Health Plan, Inc. is financially responsible for payment for medical services provided or in which it has accepted such financial responsibility under contract with one or more of the Kaiser Permanente entities. The website located at https://healthy.kaiserpermanente.org/ is referred to as the "Site," Kaiser Plan Members in California, Colorado, the District of Columbia, Georgia, Hawaii, Maryland, Oregon, Virginia, and Southwest Washington can use the "Kaiser Permanente App," and Kaiser Plan Members in Washington outside of Southwest Washington can use the "Kaiser Permanente Washington App," which are collectively referred to as the "Apps." Unless otherwise noted, all internal citations and quotations are omitted and all emphases are added.

unequivocally recognized that use of such technology is not limitless and companies must still comply with the longstanding right to privacy recognized under common law and codified by statute. *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020). Similarly, Your Honor recently rejected Disney's argument that plaintiffs lack Article III standing when they do not allege the specific information disclosed—an argument Kaiser reiterates here—finding that there is no requirement that a plaintiff specifically allege the "exact communications" that were intercepted. *James v. Walt Disney Co*., 2023 WL 7392285, at *11 (N.D. Cal. Nov. 8, 2023). Your Honor also recently rejected similar arguments that plaintiffs improperly "lumped" defendants together, finding such pleading is proper where, as here, the various Kaiser entities engaged in the same basic conduct and Kaiser has sufficient notice to defend itself. *United States ex rel. Osinek v. Kaiser Permanente*, 2023 WL 4054279, at *10 (N.D. Cal. June 15, 2023).

Kaiser also, to no avail, attempts to lean on its Privacy Statement, incorrectly claiming that it fully disclosed Kaiser's practices and serves as consent. This argument fails for several reasons. First, the Privacy Statement does not disclose the conduct at issue. Second, whether the Privacy Statement was sufficient as a disclosure is "a question of fact that cannot be determined at the 12(b)(6) phase of the proceedings." *James*, 2023 WL 7392285, at *9. Finally, it is not sufficient if it did disclose the conduct at issue because, under state and federal law, Kaiser was required to obtain written authorization for disclosure of personal medical information at issue here. *See* 45 C.F.R. § 164.508.

Kaiser's challenges to specific elements of Plaintiffs' claims also fail.[2] Kaiser ignores that under the Electronic Communications Privacy Act ("ECPA"), the party exception does not apply where, as here, the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d); ¶¶233-43, 278, 281, 284.[3] Kaiser also ignores that California Invasion of Privacy Act's ("CIPA") fourth prong applies where a party aids, agrees with, employs, or conspires with a third-

[2] Kaiser's Motion only claims Plaintiffs failed to plead certain elements or aspects of their claims. Accordingly, Plaintiffs only address arguments Kaiser raises in its Motion and Kaiser has waived all other arguments. *See Nathanson v. Polycom, Inc*., 2015 WL 12964727 at *1 (N.D. Cal. Apr. 16, 2015).

[3] All references to ¶ herein refer to paragraphs in the FAC.

party to intercept a communication, notwithstanding whether it was for the party's benefit. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 2023 WL 5266033, at *6-7 (C.D. Cal. Aug. 14, 2023). Plaintiffs have also sufficiently pled that the communications were intercepted "in transit" because the code redirects communications to the third party before reaching their final destination. *James*, 2023 WL 7392285, at *15. And, extraterritorial application of CIPA is proper because Kaiser agreed to a choice-of-law provision that applies California law "WITHOUT REGARD TO ITS PRINCIPLES OF CONFLICTS OF LAW." FAC, Ex. 1 at 12.

Kaiser also ignores relevant caselaw making clear a party can be held liable for intrusion upon seclusion where it allows a third party to listen in on private communications as Kaiser did. The touchstone in determining liability is whether "the challenged conduct was 'highly offensive to a reasonable person' or 'an egregious breach of . . . social norms.'" *Revitch v. New Moosejaw, LLC,* 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). Here, Plaintiffs have made that showing, as state and federal legislators have made clear the importance of safekeeping this information "[b]y enacting criminal and civil statutes forbidding the disclosure of protected health information without proper authorization." *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022). Regardless, determinations about whether particular conduct is "highly offensive" is "best left for a jury." *Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018).

None of Kaiser's remaining arguments for dismissal of Plaintiffs' state statutory and common law claims fare any better. Kaiser's Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion" or "MTD") should be denied in its entirety.

## II. STATEMENT OF FACTS

Plaintiffs visit the Site and Apps for a variety of personal, private medical reasons: to schedule appointments, access medical test results, learn about treatment options, order and review prescriptions, exchange messages and healthcare information with individual providers, participate in online health assessments, pay bills, obtain insurance information, and search for specialists, among other sensitive activities. ¶¶15, 19, 23, 27, 31, 35, 39, 52-63. Unbeknownst to Plaintiffs and against their reasonable expectations, Kaiser embedded code throughout the Site and Apps that allows Third Party Wiretappers to intrude upon, read, intercept, and/or use the content of this information

and communications while in transit. ¶¶4, 5, 75-212. While the technology may be complex, the underlying facts are simple: Kaiser embedded code allowing Third Party Wiretappers—including Quantum Metric, Adobe, Twitter, Bing, Google, and Dynatrace—access to Plaintiffs' and the Classes' personal and medical information and communications in a variety of ways. *Id*.

**Quantum Metric.** Kaiser placed Quantum Metric's "Session Replay" code on its Homepage, Portal Login Page, and other pages on the Site—including within the Portal[4]—that intercepted the contents of personal and medical information, as well as confidential communications, and sent that information and those communications to Quantum Metric. ¶¶76-78. This software captured internet communications between Users and the Site and Portal in real-time while those communications were in transit, and continued to do so as Users moved throughout the Site. ¶¶4, 77, 79-84. As Quantum Metric itself explains:

> At its core, session replay is a technology that allows you to watch an end user's session as they experienced it, similar to how you watch a video. You can pause, rewind, and fast-forward the session (just like a YouTube video) to watch how a user interacts with a website or mobile app.

¶78. For example, John Doe's and all other Users' activity on the Site was captured in real time and transmitted to Quantum Metric while performing tasks such as accessing test results, communicating with their healthcare providers in the Message Center, and reviewing other medical information. ¶¶88-89, 93-94, 97. Far from being merely a passive recording device, even the basic Session Replay technology processes, stores, and displays User data, with more advanced Session Replay tools identify particular friction points, segment Users and quantify loss in conversion and revenue. ¶83. Kaiser did not install Session Replay on the Apps, but allowed Quantum Metric to intercept patient information and communications through other code that transmitted an Adobe Marketing ID so that Plaintiffs and other patients could be tracked across platforms. ¶206.

**Adobe.** Kaiser also embedded code connected with the Adobe Experience Cloud a/k/a Adobe Marketing Cloud service, which permitted Adobe to intercept a patient's personal and sensitive identifying and medical information and private and confidential communications on the Site, including within the Portal, and the Kaiser Permanente App. ¶¶107, 112, 200-01. Adobe assigned

[4] The Portal is only accessible after providing a username and password and not accessible to the general public. ¶¶57-59.

each User unique identifiers and collected details about their browser and device, creating a digital fingerprint which could be used to track that User across different devices, sessions, and even websites. ¶¶115-23. The Adobe Experience Cloud collected an array of information about patients, including activity on the Site, searches on the Site, information about the device and browser, IP and location information, information provided to the Site, and much more. ¶110. For example, when John Doe accessed the Site, Adobe intercepted sensitive information about his medical care, including: that he suffers from headaches and kidney stones, that he is prescribed a certain medication, and the contents of his search for a neurologist in his ZIP code. ¶¶127-29, 131. Similarly, when Jane Doe accessed the Site, Adobe intercepted sensitive information about her medical care, including that she had lab tests available and the contents of her search for "mental health" in the Site's "Find Doctors and Locations" function. ¶¶126, 130. Similar personal and medical information and communications were intercepted and transmitted to Adobe when other Users and Plaintiffs used the Site and Kaiser Permanente App. ¶¶132, 207. Adobe uses the information to further its, and others', advertising business, including by marketing health-related segments used to target advertisements. ¶¶109-11.

**Twitter, Bing, and Google.** Kaiser used code on its Site's Home Page, Portal Login Page, and other pages on the Site and Apps, to send confidential and protected medical information to third parties such as Twitter, Bing, and/or Google. ¶¶134-94, 202-05. Each of these Third Party Wiretappers develop profiles of internet users in order to better target them with advertisements across different devices, sessions, and websites, utilizing the various identifiers and device fingerprints transmitted along with the intercepted communications. ¶¶141, 146-58. Each provides analytic services for free to entities such as Kaiser in exchange for access to the private data received. ¶141. The data collected included sensitive health information. For example, when John Doe visited the Site, Twitter, Bing, and Google intercepted sensitive information about his medical care, including: his first name, that he suffers from headaches and kidney stones, and medications prescribed along with their specific dosage. ¶¶159-169, 171-78. Similar personal and medical information was intercepted and transmitted to Twitter, Bing, and Google for other Plaintiffs and Users. ¶¶191, 207. Twitter, Bing, and Google use the information to facilitate their targeted

advertising efforts, including Plaintiffs' and other Users' sensitive personal and health information and communications. ¶¶135-43, 161, 163, 165, 169, 172, 174, 176, 180, 182, 184, 186, 188.

**Dynatrace.** Kaiser also installed code from Dynatrace on the Kaiser Permanente Washington App, allowing Dynatrace to similarly receive Plaintiffs' and other Users' confidential communications on the mobile application. ¶199. For example, when Jane Doe used the Kaiser Permanente Washington App, Dynatrace intercepted sensitive information about her medical care, including: that she had received a shoulder X-Ray and mammogram, and that she is diagnosed with restless leg syndrome. ¶¶209-11. Similar personal and medical information was sent to Dynatrace when other Users used the Kaiser Permanente Washington App. Dynatrace, according to its Subscription Agreement, may use this information for its own purposes, including to improve its offerings, industry analysis, benchmarking, and analytics. ¶199 n.44.

***None*** of the foregoing was disclosed to Plaintiffs, and no reasonable consumer would assume that the entity they entrust with medical care would allow third parties to intrude on their private communications and medical information for financial gain. ¶¶12, 71-73, 225-32. To the contrary, Kaiser repeatedly assured Plaintiffs that any personal, individually identifiable, protected health information communicated through the Site or Apps would remain private. Kaiser required Plaintiffs—as it does all Users—to agree to its Terms and Conditions upon visiting the Site and Apps, which incorporate the Privacy Statement and provide that "Any personal information you submit to the Site (for yourself or someone else) is governed by our Website and KP Mobile Application Privacy Statement."[5] ¶¶64-66. The Privacy Statement purports to "describe[] how Kaiser Permanente collects and uses the personal information you provide on, and other information that is collected from your use of the Site." *Id.* Ex. 2 at 1.

According to the Privacy Statement, "Kaiser Permanente is committed to protecting the privacy of the users of the Site." *Id*. Kaiser further promises that "use and disclosure of an individual's personal information (including health information) is limited as required by state and federal law."

[5] The Terms and Conditions are available at the bottom of the webpages on the Site and are also presented via hyperlink just below the "Sign In" fields required to access the Portal on the Site and Apps, with a notification that provides: "By signing in, you agree to our website Terms & Conditions and Privacy Statement." ¶64.

*Id.* at 2. The Privacy Statement further states that "data on Site activity . . . is collected on an aggregate basis, which means that no personally identifiable information is associated with the data . . . The information is not shared with other organizations for their independent use." *Id.* at 2-3. It also explains that Kaiser uses "Internet cookies" to "tailor our Site to be more helpful and efficient for our visitors," but notes that the "cookie consists of a unique identifier that does not contain information about your health history." *Id.* at 4. According to the Privacy Statement, persistent cookies, which "remain on your hard drive after you've exited from our Site," do "not contain any personal health information about you." *Id.* at 5. Web beacons are also said to allow Kaiser "to collect non-personal information about your response to our email communications, and for other purposes." *Id.*

The Privacy Statement acknowledges that some communications are subject to greater protections, noting that:

> All of your protected health information maintained by Kaiser Permanente, including information you provide on the Site, is also subject to the Notices of Privacy Practices issued by KP under the Health Insurance Portability and Accountability Act ("HIPAA"). The Notices of Privacy Practices may contain additional provisions relating to the use and disclosure of your information that go beyond the terms of this Privacy Statement.

*Id.* at 1-2. Kaiser's Notices of Privacy Practices recognize that, pursuant to the HIPAA Privacy Rule, all uses and disclosures of protected health information—with narrow exceptions—require written authorization.[6] Marketing is specifically identified as a use which requires written authorization. *Id.*; *see also* 45 C.F.R. § 164.508(a)(3). Plaintiffs have not executed a written authorization related to the disclosure of their protected health information through the Site and Apps. *See* ¶¶16, 20, 24, 28, 32, 36, 40, 213, 231.

## III. LEGAL STANDARD

A Rule 12(b)(1) motion for lack of standing can be facial or factual. *See Pride v. Correa*, 719 F.3d 1130, 1139 (9th Cir. 2013). Here, Kaiser makes a facial attack and as such the Court must "accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

---

[6] *See* ¶72; *see also Notice of Privacy Practices*, Kaiser Permanente (effective Sept. 22, 2023), https://healthy.kaiserpermanente.org/northern-california/privacy-practices.

Under Rule 12(b)(6), a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[H]eightened fact pleading of specifics" is not required. *Twombly*, 550 U.S. at 570. The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Claims brought here primarily allege non-fraudulent conduct, such as privacy violations through the installation of Third Party Wiretappers' code, which does not require fraud as "an essential element of a claim" and "need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,1105 (9th Cir.); *Id.* at 1103-04 (finding in order for Rule 9(b) to apply, a plaintiff must allege and rely entirely on a course of conduct sounding in fraud as the basis of that claim, such as claims under the Securities Act). Rule 8 requires only that a complaint "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The purpose of Rule 8 is "to give the defendant fair notice of the factual basis of the claim[s]" asserted against it. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841-42 (9th Cir. 2007). Under Rule 8, nonfraud claims need only "survive the minimal notice pleading requirements of Rule 8(a)(2) and provide a short and plain statement to survive a motion to dismiss." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1032 (9th Cir. 2016).

To the extent the Court finds that the consumer protection claims sound in fraud (they primarily do not), a plaintiff satisfies Rule 9(b) by identifying the "who, what, when, where, and how" of the misconduct and explain how the statements were false or misleading. *Vess*, 317 F.3d at 1106.

## IV. ALL PLAINTIFFS HAVE ARTICLE III STANDING

Kaiser makes many of the same arguments challenging standing that Your Honor rejected in *James v. Walt Disney Co. See* 2023 WL 7392285, at *3-7. In *James*, Your Honor recognized that Article III standing exists where, like here, a plaintiff alleges that internet tracking and collection practices cause harm or a material risk of harm to the plaintiffs' interest in controlling their personal

information. Plaintiffs' claims here are based on a longstanding and well-established right to control information about one's person, which is recognized by the Ninth Circuit and remains unchanged by *TransUnion*.[7] *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598 (holding that plaintiffs had standing to assert, e.g., their privacy-based claims (both statutory and common law) because the "right to privacy 'encompass[es] the individual's control of information concerning his or her person'"). *See also James*, 2023 WL 7392285, at *5 (finding "[n]othing about *TransUnion* guts the [Ninth Circuit's] holding in *Facebook*, particularly because *Facebook* postdates *Spokeo*, the precedent on which *TransUnion* largely relied" and because "the Ninth Circuit has not disavowed *Facebook* in the wake of *TransUnion*").

Kaiser's argument that Plaintiffs have not sufficiently identified the specific information that was improperly intercepted also fails. Plaintiffs are not required to plead the exact communications they had with the Site or Apps. *Id.* at *11 (citing *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (stating that "there is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"; Plaintiff "merely needs to show that the contents were not record information, such as her name and address")). In *James*, Your Honor found it sufficient that plaintiffs alleged interception of information about webpages viewed and searches conducted because this implicated more than mere record information. *Id.*

Plaintiffs here specifically allege that more than mere record information was collected, and provide specific examples of the types of information that was intercepted: patient status (¶¶86, 115-16, 146-58), searches for healthcare providers and medical information (¶¶96, 130-31, 181-90), specific diagnoses (¶¶127-28, 159-65, 211), past medical procedures (¶¶200-04, 206, 209-10), and prescribed medications (¶¶171-78). Plaintiffs have further alleged that this information can be linked to specific Kaiser members through the unique identifiers assigned by the Third Party Wiretappers. ¶¶117, 119-123, 138, 142, 152, 155, 182; *see also Doe v. Microsoft Corp.*, 2023 WL 8780879, at *3

[7] Under *TransUnion LLC v. Ramirez*, a plaintiff cannot rely solely on a statutory violation to establish standing, because "Article III standing requires a concrete injury even in the context of a statutory violation." 594 U.S. 413, 414 (2021). However, in *TransUnion*, the Supreme Court recognized that intangible harms are sufficiently concrete where they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* at 425.

(W.D. Wash. Dec. 19, 2023) ("Plaintiff repeatedly alleges that 'the unique user identifiers allow [defendant] to link' a Kaiser member's private data 'to a specific user and identify the user.' . . . [T]his is sufficient to allege that [defendant] collects non-anonymized data, thereby giving rise to an injury in fact."); *Brown v. Google LLC*, 2023 WL 5029899, at *20 (N.D. Cal. Aug. 7, 2023) (finding that the GET requests "include[d] much more than just IP addresses or record information"). This collection of Plaintiffs' data with unique identifiers gives rise to injury in fact. *See* ¶¶87, 97, 132, 191, 207, and 212; *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *3.

These facts are far different from the bare allegations in Kaiser's cited authority, and courts have found such cases "clearly distinguishable" in finding standing in cases such as this where defendants have interfered with plaintiffs' rights in controlling their personal information. *Id*. at *3 n.4.[8] Here, "Plaintiffs have sufficiently alleged a clear invasion of the historically recognized right to privacy." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599.

## V. ALL DEFENDANTS ARE PROPER DEFENDANTS TO THIS ACTION

This Court also recently rejected Kaiser's arguments regarding "lumping" various Kaiser defendants. In *United States ex rel. Osinek*, 2023 WL 4054279, at *9-10, Your Honor recognized that although the complaint referred to the defendant Kaiser entities together, "there is no concern here that Kaiser does not have adequate notice as to the general roles played by the health plans and the physician medical groups." *Id*. The Court further recognized that, even under Rule 9(b), the plaintiff still met its pleading standard because:

> There is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct. A good claim against one defendant did not become inadequate simply because a co-defendant was alleged to have committed the same wrongful acts.

---

[8] *See Popa v. PSP Grp.*, 2023 WL 7001456, at *2 (W.D. Wash. Oct. 24, 2023) (plaintiff failed to describe information shared with the site); *Adams v. PSP Grp.*, 2023 WL 5951784, at *2 (E.D. Mo. Sept. 13, 2023) (same); *Straubmuller v. Jetblue Airways Corp.*, 2023 WL 5671615, at *4 (D. Md. Sept. 1, 2023) (no details about plaintiff's interaction with the site or personal information captured); *Cook v. GameStop, Inc.*, 2023 WL 5529772, at *4 (W.D. Pa. Aug. 28, 2023) (plaintiff did not enter personally identifying information "at any point" while visiting site); *Mikulsky v. Noom, Inc.*, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) (plaintiff failed to describe the "personal information" she shared); *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023) (plaintiff failed to explain the information shared); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no personal information alleged); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (no sensitive information alleged).

*Id.*; *see also Friedman v. Zimmer*, 2015 WL 6164787, at *2 (C.D. Cal. July 10, 2015) (dismissal based on lumping permitted only "in situations where the pleadings are largely incomprehensible"). Plaintiffs' claims here involve the interception of communications between Plaintiffs and their health care providers on the Site and Apps and each Defendant is fully aware of its role in that process.[9] Kaiser's arguments are especially disingenuous considering that all three Defendants operate under the name "Kaiser Permanente." ¶46. Although KFHP contends that it owns and operates the Site and Apps, the Terms and Conditions for the Site and Apps does not distinguish between the different Kaiser entities, stating instead: "***Kaiser Permanente*** provides a website and a mobile app" and "***Kaiser Permanente*** provides users with a number of interactive online services to help them better communicate with our practitioners and staff."[10] FAC, Ex. 1 at 1-2. Kaiser's assertion that the FAC relies on "impermissible group pleading" should be rejected, particularly considering that Plaintiffs have not yet had the benefit of discovery. *Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *3 (C.D. Cal. Mar. 30, 2016) (lumping satisfied pleading standards because defendants "cannot reasonably contend that these allegations leave them in the dark as to the conduct at issue" and discovery on each defendant's role was necessary).

## VI. PLAINTIFFS DID NOT CONSENT TO KAISER'S PRIVACY INVASIONS

Kaiser comes nowhere close to satisfying its burden of showing that the purported disclosures in the Privacy Statement constitute consent, much less the written authorization required under state and federal law. *See In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (the burden is on defendant to prove consent). Under HIPAA and applicable state statutes, Kaiser could only use or disclose Plaintiffs' protected health information to the Third Party Wiretappers if it obtained Plaintiffs' ***written, signed authorization***. Kaiser, however, does not claim to have sought or received such written authorization; nor could it as Plaintiffs have never provided written authorization to the conduct alleged in the FAC. Instead, Kaiser points to its Privacy Statement, which does not provide Plaintiffs' written consent and is internally inconsistent, misleading, and susceptible to more than one reasonable interpretation. As such, it cannot serve as Kaiser's basis for dismissal based on consent. *See In re Facebook, Inc., Consumer Priv. User Profile*

---

[9] The FAC also distinguishes between the Defendants and explains their roles. ¶41-46.
[10] Under Kaiser's integrated care model, there is also a significant overlap between Defendants. ¶42.

*Litig.*, 402 F. Supp. 3d 767, 789-90 (N.D. Cal. 2019) (dismissal is improper "if a reasonable . . . user could plausibly have interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct").

**A. Kaiser Failed to Obtain Signed Written Authorization Required for Valid Consent Under HIPAA and State Law**

Kaiser argues that it obtained Users' consent through purported disclosures in the Privacy Statement, but even if the Privacy Statement did explicitly notify Users of the specific practices at issue (it did not), such disclosures are insufficient because disclosure of such HIPAA-protected information requires a specific authorization disclosing what information is shared, by whom, to whom, for what purpose, for how long, and must include the dated signature of the individual whose data is being shared. 45 C.F.R. § 164.508. The HIPAA Privacy Rule imposes strict limits on the "use or disclosure" of protected health information, which includes information that "[r]elates to the past, present, or future physical or mental health or condition of an individual" or the "provision of health care to an individual," and which "identifies the individual; or [w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual."[11] *Id.* § 160.103, § 164.502(a). HIPAA guidance is unequivocal that healthcare providers, such as Kaiser, may not share patient data for the purposes of marketing without patients' explicit authorization. *Id.* § 164.508.

The Privacy Statement recognizes that Kaiser is required to comply with HIPAA and state laws, explicitly providing: "Our use and disclosure of an individual's personal information (including health information) is limited as required by state and federal law." FAC, Ex 2 at 1. It further provides that "your protected health information maintained by Kaiser Permanente, including information you provide on the Site, is also subject to the Notices of Privacy Practices issued by KP under [HIPAA]." *Id*. And, Kaiser's HIPAA Notices, like the Privacy Rule, identify "[m]arketing" as a use for which Kaiser "will not use or disclose your PHI without your written authorization." *See, e.g.*, Notice of Privacy Practices at 9, *supra* note 6. Accordingly, as the Privacy Statement recognizes, federal and

[11] State medical records laws similarly protect medical information. *See* Cal. Civ. Code §§ 56.05(i), 56.10(d); Md. Code Ann., Health-Gen. §§ 4-301(k), 4-302; Or. Rev. Stat. Ann. §§ 192.556(6), 192.558; Va. Code Ann. §§ 32.1-127.1:03(B), (D); Wash. Rev. Code. Ann. §§ 70.02.010(17), 70.02.020, 70.02.050.

state law requires written authorization for any consent to be valid. No such written authorization was provided by Plaintiffs.

### B. The Privacy Statement Cannot Constitute Consent Because it Fails to Disclose the Conduct at Issue

In addition, the Privacy Statement cannot serve as a basis for consent because Kaiser has not met its burden of showing that it sufficiently disclosed the conduct at issue to a reasonable User. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) ("The disclosures must have only one plausible interpretation for a finding of consent."). Any consent must be "actual" and the disclosure must "explicitly notify" users of the practice at issue. *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d at 949. *See also Campbell v. Facebook, Inc*., 77 F. Supp. 3d 836, 847-48 (N.D. Cal. 2014) (explaining that, for a finding of consent, the disclosures must have given users notice of the "specific practice" at issue). Here, the Privacy Statement is internally inconsistent, misleading, and susceptible to more than one reasonable interpretation, rendering dismissal based on consent inappropriate. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d. at 794. ("[I]f a reasonable . . . user could plausibly have interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent).").

At most, Kaiser points to competing interpretations of the Privacy Statement, which is not sufficient to warrant dismissal. For example, according to Kaiser, the Privacy Statement discloses that Kaiser "utilized its own and third-party tracking technology on the Site that, among other things, allowed KFHP and third parties to collect personal information and information about users' activities on the Site, their click paths, and the information and pages that they viewed, including for analysis, monitoring, and advertising." MTD at 11. However, the Privacy Statement also repeatedly assures Users that ***the data it collects will not be individually identifiable or transmit health information***. Notably, Section 3 of the Privacy Statement states—***in language omitted from Kaiser's brief***—that Internet cookies do "***not contain information about your health history***." FAC, Ex. 2 at 4. This section further states that "[p]ersistent cookies ***will not contain any personal health information about you***." *Id.* at 5.

Kaiser's Privacy Statement is riddled with inconsistencies and is misleading to reasonable Users, including Plaintiffs, who would interpret it as informing them that their privacy will be protected—not violated. While Kaiser asserts that Sections 5 and 13 would put a reasonable person on notice that certain data will be collected (MTD at 11), Section 5 states that Kaiser's third-party ad network does so using "cookies"—which Kaiser represents ***will not contain health information***—and "Web beacons," which, according to Section 4 of the Privacy Statement, collect only "non-personal information." FAC, Ex. 2 at 5. In truth, Kaiser's Privacy Statement actually informs Users, including Plaintiffs, that ***personal and health information will not be provided to third parties***.

Further, Kaiser's quotation of Section 13, relating to disclosures of personal information, repeatedly omits the Statement's caveats, which purport to protect Users' privacy, including that such disclosures "***will use information which does not identify the individual for these activities whenever reasonably possible***," and that third parties "are authorized to use your personal information only as necessary to provide these services to us pursuant to written instructions . . . ***and are not allowed to use your personal information . . . for any other purpose***." *Id.* at 8. Moreover, Section 13 explicitly provides that "protected health information" will be subject to the heightened protections of the HIPAA "Notices of Privacy Practices"—which Kaiser failed to provide. *Id.* The Privacy Statement further assures Users that "[s]ite visitor data"—which includes "how many people visit the Site, the web pages or mobile screens they visit, where they come from, how long they stay, etc."—is "collected on an aggregate basis, ***which means that no personally identifiable information is associated with the data.***" *Id.* at 2. Additionally, it states that this "information is not shared with other organizations for their independent use." *Id.* at 3. Similarly, Kaiser promises Users that access to "Web logs," which include sensitive information such as the visitor's "Internet domain" and "IP address," is restricted to "Kaiser Permanente employees or designees on a need-to-know basis for a specific purpose." *Id.* at 4.

Kaiser's representations are contrary to its actual conduct, as alleged in the FAC, and cannot demonstrate consent. ¶¶66-220. In *Brown*, the court, at ***summary judgment***, rejected the defendant's consent defense, despite having "generally disclosed" its data tracking practices, because it also "promote[d] the privacy afforded" by certain aspects of the website and thus "created a situation

where there is a dispute as to whether users' consent of Google's data collection generally [was] 'substantially the same' as their consent to the collection of their private browsing data" at issue. 2023 WL 5029899, at *9. Similarly here, while Kaiser points to certain provisions in the Privacy Statement which it contends disclose the data practices at issue, other provisions tout the privacy protections that Kaiser is purportedly providing to Users, including Plaintiffs. Where, as here, Kaiser has "itself created a situation where there is a dispute as to whether users" have consented to the conduct at issue, it cannot make its required showing that Plaintiffs actually consented to the disclosures. *Id*.

Not only does Kaiser's cherry-picked text fail to disclose its conduct alleged in the FAC, it also fails to support consent when viewed in light of the remainder of the Privacy Statement, which purports ***to protect*** Users' privacy. Kaiser falls far short of satisfying its burden of proving that the only plausible interpretation of the Privacy Statement is one explicitly disclosing the precise conduct at issue. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 789-90, 794. As Judge Coughenouer recognized after reviewing Kaiser's Privacy Statement in a similar case concerning code on Kaiser's Site: "[T]he Court is skeptical that a reasonable user who viewed Kaiser's policies would have understood that [the third party] was collecting protected *health* information." *Doe v. Microsoft*, 2023 WL 8780879, at *6 (emphasis in original).

## VII. KAISER'S ADDITIONAL ARGUMENTS FOR DISMISSAL ALL FAIL

### A. Plaintiffs Plausibly Allege the ECPA's Crime-Tort Exception Applies

Kaiser's sole argument for dismissal of the ECPA claim fails to recognize that parties are liable—even where there is consent to disclosure to the Third Party Wiretappers—where the interception was for a criminal or tortious purpose. *See* 18 U.S.C. § 2511(2)(d). Here, Kaiser remains liable because the communications were intercepted for the purpose of violating HIPAA, a criminal act, and to tortiously collect personal information without consent or compensation to obtain market research and consumer analysis without paying for it. ¶¶68, 108-09, 140, 142, 220, 233-43, 278, 281, 284. Thus, while the ECPA provides that it shall not be unlawful for someone to intercept communications where they are a party, or where one party consents, the ECPA explicitly provides that this exception ***does not apply*** in situations like this where the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the

United States or of any State." 18 U.S.C. § 2511(2)(d). Kaiser wholly ignores the statute's plain language, quoting only the beginning of Section 2511(2)(d), and omitting the remaining language.

The FAC specifically alleges that the interception was for a criminal or tortious purpose. In particular, the HIPAA Privacy Rule "establishes national standards to protect individuals' medical records and other individually identifiable health information," the violation of which carries criminal penalties. ¶¶234-40. This Rule also applies to marketing, which requires "an individual's ***written authorization*** before a use or disclosure of his or her protected health information can be made—which, of course, Kaiser did not obtain from Plaintiffs. ¶¶242-43, 282-84. Here, Plaintiffs allege that Kaiser is criminally liable under HIPAA and state law for knowingly disclosing individually identifiable health information without such authorization and that Kaiser's purpose in installing the code was to violate HIPAA and state law.[12] ¶¶7, 74, 238-40, 277, 279-84; *see also* 42 U.S.C. § 1320d-6 (criminal penalties where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm"). Additionally, as the court recognized in *In re Toys R Us, Inc., Priv. Litig*., 2001 WL 34517252, at *8 (N.D. Cal. Oct. 9, 2001), spying on website users to "collect their personal information without consent or compensation," and "obtain[] detailed, free market research and consumer analysis rather than paying for it" are tortious purposes that fall within the ECPA's crime-tort exception. The same is true here; because Plaintiffs' communications were intercepted for the purpose of circumventing

[12] State laws similarly prohibit disclosure of individually identifiable health information without authorization or consent. Cal. Civ. Code § 56.10(d) ("Except to the extent expressly authorized by a patient, . . . a provider of health care, health care service plan, . . . shall not intentionally share, sell, use for marketing, or otherwise use medical information"); Cal. Civ. Code § 56.36(a) (violations punishable as a misdemeanor); Md. Code Ann., Health-Gen. § 4-303 ("A health care provider shall disclose a medical record on the authorization of a person . . . [A]n authorization shall: (1) Be in writing, dated, and signed"); Md. Code Ann., Health-Gen. §§ 4-309(d)-(e) (violations punishable as a misdemeanor); Or. Rev. Stat. Ann. § 192.558 ("A health care provider or state health plan: (1) May use or disclose protected health information of an individual in a manner that is consistent with an authorization provided by the individual or a personal representative of the individual."); Va. Code Ann. § 32.1-127.1:03 ("No person to whom health records are disclosed shall redisclose or otherwise reveal the health records of an individual, beyond the purpose for which such disclosure was made, without first obtaining the individual's specific authorization to such redisclosure"); Wash. Rev. Code Ann. § 70.02.020 ("Except as authorized elsewhere in this chapter, a health care provider, an individual who assists a health care provider in the delivery of health care, or an agent and employee of a health care provider may not disclose health care information about a patient to any other person without the patient's written authorization.").

and violating HIPAA and Kaiser's obligations under state statutory and common law, and to take Plaintiffs' health information without consent or compensation to obtain free marketing data, the crime-tort exception applies and Kaiser is liable under the ECPA. *See Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (applying crime-tort exception where hospital violated HIPAA by knowingly transmitting individually identifiable health information for financial gain); *Haw. Reg'l Council of Carpenters v. Yoshimura*, 2016 WL 4745169 (D. Haw. Sept. 12, 2016) (applying crime-tort exception to party to communication); *In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *8. As the Ninth Circuit recognized in *Sussman v. Am. Broad. Cos.,* 186 F.3d 1200, 1202 (9th Cir. 1999), "the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose."

None of Kaiser's cited authority holds otherwise. For example, in *Pena v. Gamestop, Inc.*, 2023 WL 3170047, at *5 (S.D. Cal. Apr. 27, 2023), the court found plaintiffs had failed to allege that the purpose of the interception, which was to perform marketing with non-confidential information, was illegal or tortious. Unlike here, the communications in *Pena* did not involve confidential healthcare communications, but instead involved "questions about products, order issues, [and] help with the site." *Id.* at *1. There was no tortious or criminal purpose alleged; plaintiffs solely argued that the interception violated CIPA. *Id.* at *5. ("Plaintiff does not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable."). And while Kaiser cites *In re Double Click Inc. Priv. Litig.*, that case makes clear that where, as here, a criminal or tortious purpose is alleged, the exception applies. 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001). *See id.* at 518 (finding no criminal or tortious purpose alleged where "everything in the Amended Complaint suggests that DoubleClick has been consciously and purposefully executing a highly-publicized market-financed business model in pursuit of commercial gain").[13] Here, Plaintiffs allege Kaiser's purpose was to act criminally by surreptitiously violating HIPAA and tortiously by secretly taking private health information to enrich itself, without obtaining Plaintiffs' authorization or

[13] Kaiser also cites Judge Koh's decision in *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) for the proposition that "the consent of one party is a complete defense to a Wiretap Act claim." MTD at 15. However, the court in *In re Yahoo Mail Litig.*, did not address the crime-tort exception at issue here so that case is inapposite.

providing Plaintiffs with compensation. These allegations support application of the crime-tort exception. Accordingly, Kaiser is liable under the ECPA even though it was a party and even though it consented to the interception pursuant to the crime-tort exception codified at 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception ***unless such communication is intercepted for the purpose of committing any criminal or tortious act*** in violation of the Constitution or laws of the United States or of any State.").

### B. Kaiser's Arguments for Dismissal of the CIPA Claim Misstate the Law and Facts

#### 1. Parties to communications can be liable under CIPA

Kaiser's assertion that it cannot be liable under CIPA as the website operator and party to the communication is wrong, as multiple courts have found parties may be held liable under CIPA. *See, e.g.*, *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *2 (C.D. Cal. Sept. 5, 2023) (finding that website operator can be held liable under CIPA); *Valenzuela*, 2023 WL 5266033, at *7 (same); *In re Google RTB*, 606 F. Supp. 3d at 946 (same); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d. 1073, 1083 (C.D. Cal. 2021) (same); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519-21 (C.D. Cal. 2021) (same); *Revitch*, 2019 WL 5485330, at *2 (same).

Importantly, Plaintiffs bring claims against Kaiser under CIPA's fourth prong based on Kaiser's aiding, agreeing with, employing and conspiring with the Third Party Wiretappers to unlawfully intercept Users' communications on the Site and Apps. ¶¶298-300. While courts have found that CIPA's first and second prongs apply only to third parties, this is not so with respect to the fourth prong, which imposes liability on any person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a)[iv]. Liability under the fourth prong attaches even to parties to the communication, including Kaiser. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) ("[I]f a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong (***and the participant is often liable under the fourth prong***.)"); *Yoon*, 549 F. Supp.

3d. at 1083 ("[A] conversationalist is betrayed equally by a wiretapper and by the willing conversation participant who surreptitiously allows that third party to wiretap."); *Revitch*, 2019 WL 5485330, at *2 ("[I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication.").[14]

CIPA requires prior consent of ***all parties to the communication*** and Plaintiffs did not consent to Kaiser's conduct alleged in the FAC. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022). Accordingly, Plaintiffs have properly alleged that Kaiser, like the website operators in *Garcia*, *Valenzuela*, *In re Google RTB Consumer Priv. Litig.*, *Yoon*, *Saleah*, and *Retvich* can be found liable under CIPA's fourth prong with respect to its conduct on the Site and Apps. *See* ¶300 ("By embedding the Third Party Wiretappers' technology on its website, Kaiser Permanente aided, agreed with, employed, and conspired with Third Party Wiretappers to carry out the wrongful conduct alleged herein in violation of Cal. Penal Code § 631(a)[iv].").

Kaiser's attempt to evade liability by arguing that the Third Party Wiretappers are agents or tools of Kaiser, and should be treated as parties, is also unsupported. MTD at 16-17. "Eavesdropping on a conversation at the time it occurs is a violation of Section 631, even if done for the benefit of a party to the conversation." *Valenzuela*, 2023 WL 5266033, at *7. *See also Saleh*, 562 F. Supp. 3d at 521 ("Here, as in *Revitch*, FullStory did not become a 'party' to the communication simply because it was providing recording and transmission services for Nike."). As the California Supreme Court has found, "the Legislature's express objective in enacting section 631" was to "protect a person

[14] Notably, the courts in both *Yoon* and *Retvich* rejected the Eastern District of California's decade old decision in *Powell v Union Pacific Railroad Company*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012), upon which Kaiser relies here. Moreover, neither *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1976), *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985), nor *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 held that parties cannot be held liable under CIPA § 631(a)[iv]. To the contrary, in *Ribas*, the Court explicitly recognized that Section 631 "was designed to 'protect a person placing or receiving a call from a situation where ***the person on the other end of the line permits an outsider*** to tap his telephone or listen in on the call.'" 38 Cal. 3d. at 363. In *In re Facebook Inc. Internet Tracking Litig.*, the Ninth Circuit held that the "simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception." 956 F.3d at 608. And, in *Rogers*, the defendant was alleged to have violated CIPA ***by recording*** the plaintiffs' conversation, not by ***aiding the interception*** of those communications as alleged here. *See Rogers*, 52 Cal. App. 3d at 897-99; *see also Saleh*, 562 F. Supp. 3d at 520 ("Whereas the defendant[] in *Rogers* . . . recorded the conversations with the plaintiffs, here Plaintiff alleges FullStory—which Plaintiff contends he did not know was a party to the communication—recorded Plaintiff's communications.").

placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call." *Ribas*, 38 Cal. 3d at 363.

Judge Breyer recently explained in *Javier*, 649 F. Supp. 3d at 891, that courts should consider whether the technology at issue (here, code that intercepts and redirects patients' communications to third party marketing, data analytics, and website monitoring software companies) is more comparable to a tape recorder held by a party to the conversation (such as *Rogers*, 52 Cal. App. 3d 894 (1975)) or is actually more akin to allowing a third party friend to listen in to a conversation as it occurs (such as *Ribas*). As Judge Breyer explained:

> In *Rogers v. Ulrich*, Ulrich used ***a tape recorder jack installed in his telephone to record*** a conversation he had with Rogers, and then played the conversation for a third party. Relying on the legislative finding that the law is intended to prevent "eavesdropping," the appellate court held that a party to a conversation cannot "eavesdrop" under the law . . . In *Ribas v. Clark*, which arose out of a feud over a divorce settlement, the wife asked her friend, Clark, ***to listen in (via an extension) to a conversation with her former husband***, Ribas, about a prior conversation Ribas had had with the wife's attorney. The California Supreme Court held that such an act is eavesdropping under the statute, because the statute differentiates between "the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor."

*Javier*, 649 F. Supp. 3d at 898.

Here, the technology is more akin to the friend in *Ribas* listening in to the private conversation because the Third Party Wiretappers are not merely recording, but have capabilities that are "beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081.

The Third Party Wiretappers are not merely storage devices; rather, they possess the capability to process and use that data for an array of marketing and analytics services. For example, Adobe assigned each User unique identifiers and collected details about their browser and device, creating a digital fingerprint that could be used to track that User across different devices, sessions, and even websites. ¶¶115-23. Adobe then uses this information for advertising purposes, including creating health-related segments so that its customers can use them to target ads. ¶¶109-11. Twitter, Bing, and Google develop profiles of Users to better target them with advertisements across different devices, sessions, and websites, utilizing the various identifiers and device fingerprints transmitted along with the intercepted communications. ¶¶141-42, 146-58, 161. Each provides analytic services for free to entities such as Kaiser in exchange for access to the private data received. ¶141. Dynatrace's

Subscription Agreement provides that it may use this information for its own purposes, including to improve its offerings, industry analysis, benchmarking, and analytics. ¶199 n.44. On the Apps, Kaiser also allowed Quantum Metric to obtain patient information transmitted with an Adobe Marketing ID so that Plaintiffs and other patients could be tracked across platforms. ¶206. And even Quantum Metric's basic Session Replay technology processes, stores, and displays User data, with more advanced Session Replay tools identifying particular friction points, segmenting Users, and quantifying loss in conversion and revenue. ¶83. *See also Tanner v. Acushnet Co*., 2023 WL 8152104, at *5 (C.D. Cal. Nov. 20, 2023) (finding that session replay providers actively working with the data they collected and "not just storing it as a tape recorder" implies that they have use beyond the defendant's use). Regardless, this is a question for the jury and cannot support dismissal on the pleadings. *See Yoon*, 549 F. Supp. 3d at 1081 (whether session replay provider is a tape recorder or an eavesdropper "is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay").

As such, Plaintiffs have properly pled allegations against Kaiser under CIPA because Kaiser aided and abetted the Third Party Wiretappers' interception of Plaintiffs' communications, even if the interceptions were also made for Kaiser's benefit. *See, e.g.*, *Valenzuela*, 2023 WL 5266033, at *7 (finding third party software company more akin to the friend in *Ribas*, recognizing that third party technology company "is not a mechanical device being used by a party to a conversation" and that, even in *Ribas*, the friend was acting for the party's benefit).

While Kaiser cites to cases that follow *Graham v. Noom*, 533 F. Supp. 3d 823, 899 (N.D. Cal. 2021), which required that the third parties "use[] the data for their own benefit and not for the sole benefit of the party to the communication[,]" several courts have rejected this reasoning. *See Javier*, 649 F. Supp. 3d at 899 (rejecting reasoning in *Graham*). There are two significant problems with the reasoning in *Graham*, which is divorced from the text of the statute: (1) it improperly looks to the "intentions and usage of the prospective third party" and thus "would add requirements that are not present [in the statute] (and swallow the third prong in the process)" and (2) "it was not the California Supreme Court's stated rationale in *Ribas*" which "did not consider the wife's friend's intentions or the use to which they put the information they obtained" but "[i]instead, it emphasized the privacy

concerns at issue with having an 'unannounced second auditor' listening in on the call." *Id.* at 900; *Doe v. Microsoft*, 2023 WL 8780879, at *7 (agreeing with Judge Breyer's reasoning in *Javier* that CIPA does not require third party use information for its own benefit). What matters is not whether the third party has used the information, but instead whether the third party does or "does not have the capability to use its record of the interaction for any other purpose (just as tape recorder has no independent capability to divulge the recording for any other purposes but that of its owner)." *Javier*, 649 F. Supp. 3d at 900. *Graham* should not be followed.

But, even if the Court were to adopt the *Graham* approach, Plaintiffs have adequately alleged that the Third Party Wiretappers used the data for their own benefit. For example, "[a] main goal for Google, Bing, and Twitter is to develop a profile of users to better target them with ads." ¶¶135-42. Adobe also uses Plaintiffs' data for its own purposes, "mak[ing] available certain health-related segments supplied by companies" like Kaiser so that Adobe's customers can "use these segments to target ads." ¶111. In addition, code on the KP Washington App redirected information to Quantum Metric and included an Adobe Marketing ID that allowed tracking across platforms. ¶206. Indeed, the *Graham* court recognized that CIPA is violated where, as here, third party companies "partnered with e-commerce sites to intercept visitor data and create marketing databases of consumer information," or sold intercepted information for advertising purposes. 533 F. Supp. 3d at 832-33.

**2. Kaiser misstates Plaintiffs' allegations regarding interception**

Kaiser falsely claims that Plaintiffs have not alleged that their communications were intercepted "in transit or passing over a wire, line or cable." MTD at 17. To the contrary, Plaintiffs repeatedly allege that Kaiser did not merely allow "subsequent reading or forwarding" but that the code intercepted and redirected Plaintiffs' communications while they were in in transit. ¶¶3-4, 16, 20, 24, 28, 32, 36, 40, 77, 80-81, 113, 145. Kaiser's citation to a mere five paragraphs in the FAC (out of 545) alleging that Kaiser "disclosed[] and sent" data to third parties in no way contradicts Plaintiffs' clear allegations that their communications were acquired during transmission. As Your Honor recognized in *James*, web tracking technologies, once their code is present on a user's device, "begin[] to intercept communications *when the user makes communications to the website*." 2023 WL 7392285, at *15 (emphasis in original). Kaiser, like Disney, cannot focus on the contents of five

paragraphs while "largely ignoring the other paragraphs." *Id.* Plaintiffs allege throughout the FAC that the code Kaiser installed on the Site and Apps intercepts communications and directs them to the Third Party Wiretappers. ¶¶4-6, 75-212. *See also Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023) (communications intercepted "in transit" where "Wright's communications still traveled their normal path between her device and Ulta's servers, but the communications were tapped and copied and sent to Quantum's servers as well, unbeknownst to her").

Even if Plaintiffs had alleged that the communications were temporarily stored on servers on their way to the Third Party Wiretappers, Kaiser's arguments still fail. As this Court recognized in the context of the ECPA in *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1080 (N.D. Cal. 2015), "a communication in 'transient electronic storage that is intrinsic to the communication process for such communications'" is still in transit. In any event, this issue requires discovery and is not ripe for determination at this stage. *Campbell*, 77 F. Supp. 3d at 841 ("While Facebook may ultimately produce evidence showing that the messages were actually accessed while in storage, not during transmission, that issue is premature at this stage of the case, and would be better addressed . . . with a more developed factual record.").

### 3. Kaiser Agreed that California Law Applies to All Plaintiffs' Claims

Kaiser must abide by its prior agreement that California law covers claims brought by Non-California residents regarding the Site and Apps. Kaiser's Terms and Conditions explicitly provide:

> THESE TERMS AND CONDITIONS ARE GOVERNED BY CALIFORNIA LAW WITHOUT REGARD TO ITS PRINCIPLES OF CONFLICTS OF LAW.

FAC, Ex. 1 at 12. All Users accessing the Site and Apps are required to agree to the Terms and Conditions, which includes this provision. ¶¶64-65; *see also* MTD at 3 ("Use of the Site, including the Portal, is governed by the Site Terms and Conditions."). *See supra* Section II; *see also supra* note 5. As such, CIPA applies to all Plaintiffs' claims.

Even without this provision, CIPA would nevertheless apply to Kaiser's conduct here. CIPA § 631(a)[ii]—which makes it unlawful to read or attempt to read communications without the consent of all parties—explicitly provides that it covers communications "***sent from, or received at*** any place within" California. Regardless of where the Plaintiff is located, all Plaintiffs' communications at issue

here are with Kaiser—which is located in California. ¶¶41-46. That the interception, or certain third parties subject to § 631(a)[ii], were located outside of California is irrelevant because all communications were sent from or received in California. Furthermore, and most importantly, the fourth prong, § 631(a)[iv]—under which Plaintiffs seek to hold Kaiser liable—imposes liability on anyone who "aids, agrees with, employs, or conspires with" anyone in violation of any of the other prior provisions. Kaiser's violation of § 631(a)[iv] occurred in California because that's where Kaiser's offending act of aiding, agreeing with, employing, or conspiring with the Third Party Wiretappers occurred.

Judge Orrick recently rejected a similar argument in *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *6 (N.D. Cal. Sept. 7, 2023) and refused to dismiss CIPA claims brought by non-California residents, explaining the defendant's argument for dismissal was not just premature, but plaintiffs plausibly alleged that the conduct at issue (namely design and marketing of the technology and development and implementation of the Terms of Service), occurred in California which, particularly when coupled with a California choice of law provision, supported allowing non-resident plaintiffs to assert CIPA claims. Although this Court in *James* did not apply CIPA nationwide, different facts were at issue. 2023 WL 7392285, at *18.

### C. Plaintiffs Sufficiently Allege Invasion of Privacy and Intrusion Upon Seclusion

Kaiser only challenges whether Plaintiffs have pled an intrusion and whether that intrusion was highly offensive. *First*, Plaintiffs have pled an "intrusion." ¶¶304-10; 320-24. It is not true, and Kaiser cites no authority to support its position, that a party to a communication cannot be liable for intrusion upon seclusion when they allow a third party to secretly listen in on private conversations. Rather, liability attaches where, as here, "the challenged conduct was 'highly offensive to a reasonable person' or 'an egregious breach of . . . social norms.'" *Revitch*, 2019 WL 5485330, at *3 (holding plaintiff sufficiently stated invasion of privacy and intrusion upon section claims against website owner and third party); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d at 946 (allowing invasion of privacy and intrusion upon seclusion claims, finding "the relevant question here is whether plaintiffs would reasonably expect that Google would use its access to account holders' personal information to share and sell it to third parties").

Kaiser's cited authority from the District of Columbia, Georgia, and Washington does not hold otherwise. For example, in *Benz v. Wash. Newspaper Publ'g Co.*, 2006 WL 2844896 (D.D.C. Sept. 29, 2006), the plaintiff filed suit after private facts about her were published in a newspaper and posted on various websites. The court dismissed invasion of privacy claims because the plaintiff there failed to allege how the facts became known, recognizing that the plaintiff may have been able to state a claim if—like here—those facts were obtained through eavesdropping. *Id*. Similarly, *Purvis v. Aveanna Healthcare*, 563 F. Supp. 3d 1360, 1377 (N.D. Ga. 2021) is wholly inapposite, as that case involved a data breach where "the central narrative of Plaintiffs' factual allegations [was] that Defendant failed to take sufficient precautions to prevent this intrusion." In *Buckley v Santander Consumer USA, Inc.*, 2018 WL 1532671 (W.D. Wash. Mar. 29, 2018), the plaintiff alleged that a bank had disclosed information about her to a third party, but again, there was no allegation that the bank allowed an eavesdropper to listen in, or intrude upon, private communications. None of Kaiser's cases support the proposition that a party cannot be held liable for invasion of privacy or intrusion upon seclusion when they collaborate with third parties to intercept patient's confidential communications with their health care providers. Plaintiffs have properly alleged an intrusion.

*Second*, determinations about whether particular conduct is "highly offensive" is best left to the jury's discretion. *See Facebook Consumer Priv. Litig.*, 402 F. Supp. 3d at 797 ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *Williams*, 384 F. Supp. 3d at 1054 (observing that whether conduct rises to the level of highly offensive "is indeed a factual question 'best left for a jury'"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 (denying motion to dismiss).[15] Regardless, the intrusion here is highly offensive because the information at issue is personal health information. "Personal medical information is understood to be among ***the most sensitive information*** that could be collected about a person." *Doe v. Regents of Univ. of Cal.*, 2023 WL 3316766, at *6 (N.D. Cal. May 8, 2023); *see also Doe v. Beard*, 63 F. Supp. 3d 1159, 1170 (C.D. Cal. 2014) (disclosure of

[15] In *Gonzales v. Uber Technologies, Inc.*, 305 F. Supp 3d 1078 (N.D. Cal. 2018), plaintiff only alleged that Uber could obtain his address. In *White v. Social Security Administration*, 111 F. Supp. 3d 1041 (N.D. Cal. 2015), the plaintiff alleged that an employee of the Social Security Administration made photocopies of personally identifying documents—nothing more.

medical information subverts a public interest favoring confidentiality and thus meets the egregious violation of social norms standard). As Judge Orrick recently found in *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 800, where the plaintiffs brought similar claims against a third party alleged to have intercepted patient's online communications with their health care providers, the plaintiffs "had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of medical information" which supports invasion of privacy and intrusion upon seclusion claims.

Further, Kaiser's intrusive conduct here is significant because a vast array of Plaintiffs' sensitive personal and medical data, including medical conditions, prescribed medications, medical procedures, assigning unique identifiers, and other sensitive health care information, was provided to the Third Party Wiretappers for processing and associating. *In re Vizio, Inc., Cons. Priv. Litig.*, 238 F Supp. 3d 1204, 1233 (C.D. Cal. 2017) (denying motion to dismiss intrusion upon seclusion claim considering the "exceptionally vast array of information about their digital identities and viewing histories").

### D. Plaintiffs Sufficiently Allege Breach of Express Contract

Kaiser disputes only one element of Plaintiffs' breach of contract claim—whether it has breached the terms of the contract.[16] As detailed above, the Privacy Statement—incorporated by reference into Kaiser's Terms and Conditions[17]—repeatedly states that the privacy of Users' personal information will be protected. FAC, Ex. 1, at 2 ("Kaiser Permanente is committed to protecting the privacy of the users of the Site."). Among other representations, it specifically states that the "use and disclosure of an individual's personal information (including health information) is limited as required by state and federal law." ¶337. Further, when discussing the various forms of data collection employed on the Site and Apps, the Privacy Statement repeatedly disclaims the collection of

[16] As discussed above, Kaiser's *Terms and Conditions* provides that the Site and Apps "are governed by California law without regard to its principles of conflicts of law." FAC, Ex. 1 at 13.

[17] Where a "contract 'direct[s]' the parties to a document and the parties 'receive[] the document,' the document is part of the contract." *Brown v. Google*, 2021 WL 6064009, at *9 (N.D. Cal. Dec. 22, 2021). The Terms and Conditions state that "[a]ny personal information you submit to the Site . . . is governed by our Website and KP Mobile Application Privacy Statement. (A link to our Website and KP Mobile Application Privacy Statement is available at the bottom of each page on our Website and on the "Home Screen at the bottom of the KP Mobile Application.)[.]" FAC, Ex. 1 at 3.

personally identifiable or protected health information—Kaiser informed Plaintiffs that Site visitor data, for example, is to be collected "on an aggregate basis, which means that no personally identifiable information is associated with the data." ¶333. Similarly, Kaiser represented that the internet cookies deployed on the Site and Apps do "not contain information about your health history." ¶335. Kaiser further represented that the Web beacons enable it "to collect non-personal information," and that it will "not collect any personal health information" with a Web beacon. ¶336, FAC, Ex. 2 at 5. *See also McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063, 1072 (N.D. Cal. 2018) (Chen, J.) ("[T]o the extent there is any ambiguity . . . it must be construed against [Defendant], the drafter of the contract."), *rev'd and remanded sub nom. McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020).

Despite these promises, Kaiser engaged in unauthorized collection and disclosure of Plaintiffs' personally identifiable and protected health information. ¶¶350-54. These disclosures included: personally identifiable information, such as IP addresses and unique identifiers; information sufficient to disclose the patient status of Plaintiffs; and the contents of Plaintiffs' sensitive communications. ¶351. The information disclosed by Kaiser was both personally identifiable and contained Plaintiffs' health information. ¶¶117, 119-23, 142, 152, 155, 182, 206 (assigning an ID to Kaiser members allowing them to be tracked across the web), 128 (disclosing medical conditions), 129 (disclosing prescribed medications), 167 (disclosing Plaintiffs' first name).

These disclosures were not only contrary to Kaiser's representations in the Privacy Statement, they also ran afoul of federal and state law. ¶¶233-43, 337, 397-415, 534-45. For example, Kaiser agreed to comply with federal law, which includes the HIPAA Privacy Rule, prohibiting disclosure, without written authorization, of information which "[r]elates to the past, present, or future physical or mental health or condition of an individual" or "the provision of health care to an individual." *See* 45 C.F.R. §§ 160.103, 164.502. No such written authorization was obtained and Kaiser does not argue otherwise. Kaiser did not comply with this federal law or the Privacy Statement in breach of its express promises to Plaintiffs and Plaintiffs have properly pled breach. ¶¶330-56.[18]

[18] As discussed above, the Terms and Conditions does not constitute valid written authorizations under these laws, and Kaiser offers no argument that it does. *See supra* part VI.A.

**E. Plaintiffs Sufficiently Allege Breach of Implied Contract**

Kaiser's only argument against Plaintiffs' breach of implied contract claim is that it purportedly overlaps with the breach of express contract claim. However, the federal rules permit Plaintiffs to plead relief in the alternative, rendering dismissal inappropriate. *See* Fed. R. Civ. P. 8(d)(2); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *47 (N.D. Cal. Aug. 30, 2017) (courts "routinely allow plaintiffs to plead both express contract and implied contract theories, as long as those theories are clearly pled in the alternative").[19] Here, Plaintiffs have pled that an implied-in-fact contract "was created by virtue of the relationship and conduct of the parties, as well as the surrounding circumstances." ¶360. It was the "confidential nature" of the parties' relationship, the confidentiality of Plaintiffs' personal and health information, Kaiser's provision of a purportedly secure Patient Portal and Apps, and Plaintiffs' use of said Portal and Apps, which gave rise to the implied contract. *Id.* Even where "the allegations of the implied contract claim rely on the same allegations as the express contract claim, [plaintiff] is entitled to plead different theories of recovery in the alternative." *Cal. Spine & Neurosurg. Inst. v. United Healthcare Ins. Co.*, 2019 WL 4450842, at *4 (N.D. Cal. Sept. 17, 2019).

**F. Plaintiffs Sufficiently Allege Negligence Per Se**

Plaintiffs have alleged that Kaiser violated numerous statutes, including ECPA, HIPAA, and state laws governing wiretapping, computer crimes, insurance information, medical information, and statutory larceny, despite its duty to comply with these laws. ¶¶233-43, 264-301, 375, 397-422, 440-82, 491-510, 520-45. *See Elsner v. Uveges*, 102 P.3d 915, 920 (Cal. 2004) ("[S]tatutes and regulations may be used to establish duties and standards of care in negligence actions."). The FAC further alleges that Kaiser's unauthorized disclosure of Plaintiffs' personal and health information caused their injury, that this injury is the type of harm the statutes were designed to prevent, and that Plaintiffs are within the class of persons whom the statutes are designed to protect. ¶¶383-84, 386. *S.G. v. S.F. Unified Sch. Dist.*, 2018 WL 1876875, at *8 (N.D. Cal. Apr. 19, 2018) (Chen, J.) (denying motion to dismiss negligence per se claim). All of Kaiser's arguments for dismissal fail.

[19] Your Honor's decision in *O'Connor v. Uber Technologies, Inc.* is distinguishable because there the plaintiffs did not plead their breach of implied-in-fact contract in the alternative to an express contract claim. 58 F. Supp. 3d 989, 994 (N.D. Cal. 2014).

First, Plaintiffs do not need to assert a separate claim for negligence, and Kaiser's authority does not hold otherwise. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038 (N.D. Cal. 2019) (finding that claims of negligence and negligence per se are "only one claim," "[c]ollapsing both alleged claims into one," and "allow[ing] the negligence claim to proceed"); *see also Dent v. NFL*, 902 F.3d 1109, 1117 (9th Cir. 2018) ("[W]e construe the [plaintiffs]' claim as a traditional negligence claim, but apply the negligence per se doctrine."). Second, contrary to Kaiser's assertions, "it is not a defense to negligence to contend that the conduct was willful or the harm intended." *A.G. by & through Galindo v. United States*, 2023 WL 7134927, at *12 (S.D. Cal. Oct. 30, 2023) (quoting *Am. Empl.'s Ins. Co. v. Smith*, 163 Cal. Rptr. 649, 653 (Cal. Ct. App. 1980)).[20] Third, Kaiser asserts, without argument, that Plaintiffs have failed to plead injury and damages. This is incorrect. *See* ¶¶221-24, 384, 386-87.

**G. Plaintiffs Sufficiently Allege Violation of the CLRA**

Contrary to Kaiser's assertion, Plaintiffs have sufficiently pled detrimental reliance for their California Consumers Legal Remedies Act ("CLRA") claim. As the Ninth Circuit has recognized, "at the motion to dismiss stage, 'actual reliance . . . is inferred from the misrepresentation of a material fact'" and "[w]hether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020). Therefore, a plaintiff "only need[ ] establish it to be plausible that a 'reasonable man would attach importance to [the] existence or nonexistence [of the misrepresentation] in determining his choice of action in the transaction in question.'" *Id.* Kaiser bears the burden of showing that the undisclosed or hidden information was "an 'obviously unimportant' consideration." *Id.*

As described above, Plaintiffs have plainly alleged that Kaiser misrepresented how it was handling personal and health information submitted through the Site and Apps. *See supra* Sections

[20] Kaiser's authority on this point, *Lam v. Target Corp.*, 2017 WL 4154947 (E.D. Cal. Sept. 19, 2017), relies exclusively on *Semore v. Pool*, 217 Cal. App. 3d 1087, 1105 (1990). *Semore* arises from a line of cases considering whether claims for emotional distress are subsumed by California's workers' compensation regime, "a distinct legal context that is, at best, distantly related to the issues presented here." *See A.G.*, 2023 WL 7134927, at *13. They do not stand for a "general rule that intentional conduct can never support a negligence suit, and it is not clear . . . they intended to." *Id.* at *14.

II, VI.B. Kaiser has not shown—and cannot show—that an individual's right to maintain the confidentiality of the communications with their healthcare providers was "obviously unimportant."

Plaintiffs have also sufficiently alleged an actionable transaction based on Kaiser's misrepresentations. ¶394. Plaintiffs need only allege that Kaiser represented that the services it provided had characteristics or benefits that they do not have, or that Kaiser "represent[ed] that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code §§ 1770(a)(5), (16). There is no requirement that Plaintiffs allege that they made a purchase through the Site or Apps as plaintiffs are consumers engaged in qualified transactions. *See* Cal. Civ. Code § 1761(d); ¶¶14, 18, 22, 26, 30, 34, 38

Here, Kaiser made explicit and implicit promises to maintain the confidentiality of Plaintiffs' information and communications while using the Site and Apps, and Kaiser's deceptive and unfair failure to maintain the confidentiality of these communications is actionable under the CLRA. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1142 (N.D. Cal. 2018) (finding plaintiffs alleged "particular facts" sufficient to find "software at issue falls within the definition of 'service'"); *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012) (holding that the plaintiffs stated CLRA claim where defendant's collection and storage of geolocation data occurred after purchase and was contrary to representations made when purchased).

### H. Plaintiff Sufficiently Alleges Violation of CMIA

Under CMIA, "medical information" is "information [that] includes or contains any element of personal identifying information sufficient to allow identification of the individual . . . ***alone or in combination with other publicly available information***, reveals the identity of the individual" and is "in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental health application information, . . . mental or physical condition, or treatment." Cal. Civ. Code § 56.05. As alleged, Plaintiffs' conditions and medications, searches for treatment, and treatments and vaccinations were all disclosed to the Third Party Wiretappers. Plaintiffs have properly alleged that this information was transmitted alongside specific identifiers that allowed identification of the individual Plaintiffs by the Third Party Wiretappers and Kaiser. *See, e.g.*, ¶¶117-24, 142, 146-49, 151-55, 160-65 (describing identifiers used by the Third Party Wiretappers and Kaiser connecting

communicated medical data to individuals). The very purpose of these identifiers is to track individual patients and is thus "sufficient to allow identification of the individual" and constitutes Plaintiffs' medical information under CMIA. *See Cousin*, 2023 WL 8007350, at *3-4 (finding a similar technology (the Meta Pixel), which connected patient internet activity to an individual with technology specific identifiers, sufficiently "individually identifiable" for CMIA violations).

Kaiser argues that Plaintiffs failed to plead requisite economic damages, ignoring CMIA's plain language that "it is not necessary that the plaintiff suffered or was threatened with actual damages" (Cal. Civ. Code § 56.36(b)(1)). Nonetheless, Plaintiffs do allege that their medical information holds measurable economic value, in particular in Section IV(D) under the heading: "Plaintiffs' and Class Members' Health Information Has Actual, Measurable, Monetary Value." ¶¶221-24. As in *Doe v. Microsoft*, 2023 WL 8780879, at *4, where the court found plaintiffs had sufficiently alleged economic injury in connection with Kaiser's providing patients' health data to third parties, Plaintiffs here have also cited to articles and studies describing the market for personal data, including personal health data (¶¶222-24), and have alleged that the data was used for targeted advertising, which generated revenue and profits (¶¶135, 220), and that Kaiser's actions diminished the value of Plaintiffs' personal information (¶355(g)). Plaintiffs need not specifically allege "the amount of actual damages, if any, sustained by the patient," as CMIA specifies such "actual damages" are separate and apart from the nominal statutory penalty of $1,000. *See* Cal. Civ. Code § 56.36(b). Indeed, the specific quantum of actual damages is an issue of fact, not to be determined at the motion to dismiss stage.

Finally, non-California Plaintiffs may assert CMIA claims for the same reasons that they can assert CIPA claims, particularly since Kaiser has agreed that California law should control "WITHOUT REGARD TO ITS PRINCIPLES OF CONFLICTS OF LAW." FAC, Ex. 1 at 12. *See supra* Section VII.B.3. Moreover, CMIA imposes obligations on California health providers and service plans such as Kaiser and holds no prohibition against out of state residents seeking relief from

such providers. As such, Kaiser's arguments are contrary to CMIA's plain language and do not support dismissal.[21]

### I. Plaintiffs Sufficiently Allege Statutory Larceny

Plaintiffs plausibly allege that Kaiser acquired their data through theft by false pretenses.[22] ¶¶419-20. A claim for theft by false pretenses "requires only that '(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation.'" *Williams*, 305 P.3d at 1248. Kaiser argues (incorrectly) that Plaintiffs must allege that Kaiser "committed a trespassory taking or carried property away". MTD at 30. But theft by false pretense "is the consensual but fraudulent acquisition of property," *Bell v. Feibush*, 151 Cal. Rptr. 3d 546, 552 (Cal. Ct. App. 2013), and Kaiser's own authority explains that "theft by false pretenses . . . has no requirement of asportation." [23] *Williams*, 305 P.3d at 1248. Here, Kaiser made false representations as to the data collection conducted on the Site and Apps, knowing they were false, and in reliance on such assurances, Plaintiffs transferred their personal data to Kaiser. ¶¶66-74, 213-20, 225-26, 419-21. Plaintiffs' allegations are thus sufficient to bring an action pursuant to Cal. Penal Code § 496(c), which authorizes private actions for damages caused by violations of Section 496(a). *Bell*, 151 Cal. Rptr. 3d at 551 (prohibition on receipt of stolen property "extends to property 'that has been obtained in any manner constituting theft,'" which "include[s] theft by false pretense").

---

[21] Kaiser concedes that as a health care provider it must obtain written authorization under CMIA for the disclosure of health information to third parties. MTD at 29 n.21; *see also Brown v. Mortensen*, 30 Cal. App. 5th 931, 936-37 (2019) (written authorization required).

[22] The California legislature has consolidated the three common law crimes of "larceny, false pretenses, and embezzlement" into a single crime called theft. *People v. Williams*, 305 P.3d 1241, 1246 (Cal. 2013); *see also* Cal. Penal Code § 484(a).

[23] Kaiser misreads *Williams*. There, the court explained Section 484 of the California Penal Code consolidated larceny, false pretenses, and embezzlement into a single crime. *Williams*, 305 P.3d at 1246-47. Kaiser lists only the elements of larceny, and not theft by false pretenses which is what Plaintiffs claim here. MTD at 30. *Boegeman v. Smith* similarly distinguishes theft by false pretenses and theft by larceny, explaining that theft by false pretenses requires a defendant to take possession and title of property with permission gained by "false or fraudulent representations." 2018 WL 3140469, at *9 (S.D. Cal. June 27, 2018). Kaiser similarly lists the elements of theft by larceny from *People v. Myles*, again ignoring that Plaintiffs allege theft by false pretenses. 306 Cal. Rptr. 3d 288, 303 n.8 (Cal. Ct. App. 2023) (explaining how Section 484 merged the formerly separate crimes of larceny, embezzlement, and false pretenses into the general crime of theft).

**J. Jane Doe II Sufficiently Alleges Violation of the District of Columbia CPPA**

Plaintiffs allege that Kaiser's interception, disclosure, and transfer of Plaintiff's private health information, contrary to its representations, constituted an unfair or deceptive practice pursuant to D.C. Code §§ 28-3904(a), (e), (f), and (f-1). *See* ¶¶428-29. Kaiser wrongly argues that under *Attias v. CareFirst, Inc*., 365 F. Supp. 3d 1 (D.D.C. 2019), a District of Columbia Consumer Protection Procedures Act ("DC CPPA") claim cannot be based on a breach of contract, ignoring that these cases distinguish between mere breaches of contract and those which "merge[] with, and assume[] the character of, a willful tort." *Sere v. Grp. Hosp'n, Inc*., 443 A.2d 33, 37 (D.C. 1982). In fact, the Court in *Sere* recognized that "willful and outrageous conduct which society finds intolerable," would be sufficient to distinguish a simple breach of contract from the tortious conduct which would warrant protection under the DC CPPA. *Id.* at 37. As described above, Kaiser's willful and intentional distribution of sensitive health information to third parties without Plaintiffs' consent or authorization is outrageous and contrary to societal norms. Accordingly, Kaiser's conduct is not simply an intentional breach of contract, but has assumed the character of a willful tort and thus Plaintiffs have stated a claim under the DC CPPA. *Curran v. Wells Fargo Bank, N.A*., 2021 WL 6753480, at *8 (D.D.C. Mar. 11, 2021) (in light of the "broad spectrum" of practices within CPPA's scope, "the statute should be read broadly to assure that the purposes are carried out").

**K. John Doe II Sufficiently Alleges Violation of the Georgia UDTPA**

John Doe II has properly alleged a Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA") claim, including reliance on Kaiser's implicit and explicit representations that it would maintain the confidentiality of Plaintiffs' sensitive health information. Plaintiff thus expected that his communications through the Site and Apps would be private. ¶¶64-74, 213-20, 225-32, 436-37. Kaiser's citation to *Willingham v. Glob. Payments, Inc*., 2013 WL 440702 (N.D. Ga. Feb. 5, 2013), is inapposite. There, the court's dismissal of the plaintiffs' claim was based on plaintiffs' inability to "sufficiently allege[] future harm." *Id*. at *16. Here, Kaiser makes no such argument and, as a Kaiser member who continues to receive healthcare from Kaiser and seeks to use the Site and Apps, John Doe II is a person likely to be damaged by Kaiser's deceptive trade practice. ¶439; *see also* Ga. Code Ann. § 10-1-373(a). Although Kaiser stopped certain practices as a result of Plaintiffs' filing of this

lawsuit and moving for a preliminary injunction, Plaintiffs are still entitled to a permanent injunction preventing Kaiser from reinstating its practices.

### L. John Doe II Sufficiently Alleges Violation of the Georgia CSPA

John Doe II has sufficiently alleged that Kaiser is liable for computer theft and computer invasion of privacy under the Georgia Computer Systems Protection Act ("Georgia CSPA"). While Kaiser asserts that it cannot act without authority on its own network, Kaiser installed the code on the Site and Apps that transmits and redirects the content of Plaintiffs' and other Users' communications to these Third Party Wiretappers from the very moment that a User first loads the Site or Apps, and continues as the User navigates through researching and sharing sensitive information. ¶5. Although Kaiser had authority over its own network, it did not have full and unfettered authority over Plaintiffs' communications on their computers and mobile devices. ¶¶66-74, 80-81, 113, 115-16, 144-47, 149, 153-54, 199-200, 206, 209, 213-20; *see also id.* ¶¶276-80. Kaiser "use[d] a computer or computer network with knowledge that such use [was] without authority" to: (1) take or appropriate the property of Plaintiff, (2) obtain Plaintiff's property by deceitful means, and (3) convert Plaintiff's property to Kaiser's use in violation of an agreement, and constituted computer theft. *See* Ga. Code Ann. § 16-9-93(a); *see also* ¶¶443, 446-48.

While Kaiser argues it cannot be held liable for computer invasion of privacy because its unlawful disclosure was to third parties, Ga. Code Ann. § 16-2-20 unequivocally provides that "[e]very person concerned in the commission of a crime is a party thereto," including those who "***[i]ntentionally aid[] or abet[]*** in the commission of the crime" or "[i]ntentionally advise[], encourage[], ***hire[]***, counsel[], ***or procure[]*** another to commit the crime." Additionally, Kaiser's contention that "Plaintiffs have failed to allege any connection to Georgia" is unsupported. John Doe II is a citizen and resident of Georgia who has regularly used the Site and Apps in Georgia to access medical information and communicate with his health care providers, which Kaiser allowed the Third Party Wiretappers to intercept, collect, read, attempt to read and/or learn the contents or meaning.[24] ¶¶17-20.

---

[24] Kaiser's authority featuring out-of-state plaintiffs is inapplicable here. *Krise v. SEI/Aaron's, Inc.*, 2017 WL 3608189 (N.D. Ga. Aug. 22, 2017) (plaintiffs from Connecticut and New York); *Peterson v. Aaron's, Inc.*, 108 F. Supp. 3d 1352, 1353 (N.D. Ga. 2015) (plaintiffs not from Georgia).

**M. John Doe II Sufficiently Alleges Violation of the Georgia IIPA Against KFHP**

Kaiser's assertion that John Doe II has not alleged an "insurance transaction" under the Georgia Insurance Information Privacy Protection Act ("Georgia IIPA") is unfounded.[25] Plaintiff has alleged that the Site and App are used to make payments related to insurance transactions. Ga. Code Ann. § 33-39-3(13); ¶¶2, 6, 42, 351(f), 367(g), 457-58. It is also *Kaiser's* position that "the Site and Apps are owned and operated by KFHP"—the Kaiser entity responsible for the payment of medical services provided to its enrollees.[26] MTD at 8. As such, "communications with Kaiser Permanente through the" Site and Apps "constitute personal or privileged information collected or received in connection with an insurance transaction." ¶458. [27]

**N. Jane Doe III Does Not Seek Extraterritorial Application of the Maryland WESA**

Jane Doe III resides and accesses the Site and Apps in West River, Maryland. ¶¶29-32. The Maryland Wiretapping and Electronic Surveillance Act ("WESA") provides a civil cause of action for "[a]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this subtitle." Md. Code Ann., Cts. & Jud. Proc. § 10-410(a). Accordingly, she has alleged that her communications were intercepted or disclosed when sent from or received in Maryland, and thus has stated a claim under WESA.

**O. Jane Doe V Has Standing to Assert a Claim for Violation of the Oregon UTPA**

Kaiser does not dispute any of the elements of this claim, but instead cites ¶488 of the FAC in arguing that Jane Doe V lacks standing to bring a private action under the Oregon Unfair Trade

[25] Under the Georgia IIPA, "an insurance institution . . . shall not disclose any personal or privileged information about an individual collected or received in connection with an insurance transaction unless the disclosure is . . . with the written authorization of the individual." Ga. Code Ann. § 33-39-14. The Georgia IIPA is intended to "maintain a balance between the need for information by those conducting the business of insurance and the public's need for fairness in insurance information practices, including the need to minimize intrusiveness." *Id.* at § 33-39-1.

[26] *See also* FAC Ex. 1 at 1 (the "Site allows users to . . . consent to receive important communications and documents . . . regarding their health plan coverage"); *id.* at 8 (acceptance of the terms and conditions constitutes "consent . . . to receive essential health plan coverage communications via the Website and/or Mobile App"); FAC Ex. 2 at 5 (providing for the treatment of information submitted through the Site and Apps "when seeking health insurance or coverage").

[27] Kaiser also argues that "the IIPA does not apply to TPMG or Hospitals." MTD at 33. As the FAC states, Plaintiff brings this claim only "Against Kaiser Foundation Health Plan, Inc." ¶101.

Practices Act ("Oregon UTPA").[28] Plaintiff alleges that Kaiser violated § 646.608(1)(e) and (u), and brings this cause of action pursuant to § 646.638—for which there is indisputably a private right of action. *See* ¶¶487, 490. That Jane Doe V contends Kaiser also violated Section 646.607(1) does not make Kaiser's conduct any less unlawful, nor does it deprive her of a private right of action under Section 646.648. Kaiser's argument is contrary to Ninth Circuit precedent, which holds that the Federal Rules "'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted' including for failure to invoke the proper authority" and "[w]here a claim is not fully articulated in the complaint, it is sufficient that the 'complaint and subsequent filings provide [defendants] with "fair notice" of that claim.'" *Bacon v. Dep't of Hum. Servs*., 2023 WL 2755592, at *1 (9th Cir. Apr. 3, 2023). Jane Doe V has stated a claim under the Oregon UTPA for violation of § 646.648, with a private right of action under § 646.638.

**P. Jane Doe IV Sufficiently Alleges Violation of the Virginia CCA**

Jane Doe IV sufficiently alleges violation of the Virginia Computer Crimes Act ("VCCA"), as "it is clear that the VCCA's definition of use of a computer network without authority applies when a person acts in a manner ***knowingly exceeding*** such right, agreement, or permission."[29] *Space Sys./Loral, LLC*, 306 F. Supp. 3d at 855-56. As alleged, Kaiser acted beyond the authority outlined in the Privacy Statement and, through the code it installed on the Site and Apps, caused Plaintiff's computer to unlawfully transmit Plaintiff's private health information to the Third Party Wiretappers. ¶¶66-74, 80-81, 113, 115-16, 144-47, 149, 153-54, 199-200, 206, 209, 213-20; *see also* ¶¶276-80. Plaintiff also alleges that Kaiser used "intentionally deceptive means," specifically the false and

[28] "The Oregon UTPA allows a private right of action for persons who have suffered an 'ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608.'" *Bryan v. Del Monte Foods, Inc.*, 2023 WL 4758452, at *8 (N.D. Cal. July 25, 2023) (quoting *Colquitt v. Mfrs. & Traders Tr. Co.*, 144 F. Supp. 3d 1219, 1231 (D. Or. 2015) (quoting Or. Rev. Stat. § 646.638)). Plaintiff has alleged that Kaiser's installation of the Third-Party Wiretappers' code on its Site, without authorization and contrary to its representations in the Privacy Statement, was a violation of Or. Rev. Stat. §§ 646.608(1)(e) and (u), that this deprived them of valuable property in the form of their health information, and that Kaiser's knowing violation of its own Privacy Statement establishes willfulness under the statute. *See* ¶¶221-24, 487-90.

[29] Plaintiff has properly pled a claim under the VCCA, by pleading that Kaiser "(1) used a computer or computer network without authority; (2) with the intent to obtain property or services by false pretenses, embezzle or commit larceny, or convert the property of another." *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 855 (E.D. Va. 2018).

misleading Privacy Statement (¶¶68-74), and that it acted with malicious intent, namely to violate federal and state criminal and civil laws designed to protect individuals' privacy (¶¶239-40).

**Q. Jane Doe IV Sufficiently Alleges Violation of Virginia IIPPA**

As discussed above in responding to Kaiser's similar arguments regarding the Georgia IIPPA claim, Plaintiffs have alleged that the Site and Apps are used to make payments related to KFHP's insurance operations, which is sufficient to state a claim under the Virginia Insurance Information Privacy Protection Act ("Virginia IIPPA").[30] *See supra* Section VII.M.

**R. Jane Doe Sufficiently Alleges Violation of Washington CPA**

"Trade" and "commerce" are defined broadly under the Washington Consumer Protection Act ("Washington CPA") to include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." Wash. Rev. Code Ann. § 19.86.010(2). Kaiser's Site and Apps facilitate the scheduling and payment for healthcare services. Kaiser's sole authority, *Brophy v. JPMorgan Chase Bank Nat'l Ass'n*, 2013 WL 6273583, at *3 (E.D. Wash. Dec. 4, 2013), does not support the proposition that the "trade or commerce" element requires the violation occur at the precise moment when the service was purchased.

Further, Kaiser's privacy violations impact the public interest and this suit serves the public interest "by showing a likelihood that other plaintiffs have been or will be injured in the same fashion." *Trujillo v. Nw. Tr. Svs.*, 355 P.3d 1100, 1108 (Wash. 2015). Courts consider four factors when making this determination, none of which are dispositive: "(1) whether the defendant committed the alleged acts in the course of his/her business, (2) whether the defendant advertised to the public in general, (3) whether the defendant actively solicited this particular plaintiff, and (4) whether the plaintiff and defendant have unequal bargaining positions." *Id.* All of these factors are met, as Kaiser makes the Site and Apps available to all Kaiser members in the course of its business, while uniformly exposing all Users to the interception and disclosure of their private medical

[30] The Virginia IIPA prohibits the disclosure of "any medical-record information or privileged information about an individual collected or received in connection with an insurance transaction unless the disclosure is with the written authorization of the individual." Va. Code Ann. § 38.2-613. The Virginia IIPA seeks to "balance" the information needs of the insurance industry and "the public's need for fairness in insurance information practices, including the need to minimize intrusiveness." Va. Code Ann. § 38.2-600.

information. *See* ¶¶51-63, 89, 97-98, 132-33, 170, 192, 207-08, 212. Kaiser targeted not just Plaintiffs, but all Users, and Users have no bargaining power, being unable to negotiate different privacy terms. *See* FAC, Ex. 1 at 2 ("IF YOU DO NOT AGREE TO THESE TERMS AND CONDITIONS, DO NOT USE THE SITE.").

Finally, Jane Doe has sufficiently alleged causation by pleading that she has been injured by Kaiser's unfair or deceptive acts, including being deprived of the full value of her personal health information. *See* ¶221-24, 519. Jane Doe has thus adequately alleged that "her property interest . . . is diminished as a result of [Kaiser's] unlawful conduct, even if the expenses incurred by the statutory violation are minimal." *Trujillo*, 355 P.3d at 1108.

**S. Jane Doe Sufficiently Alleges Violation of the Washington Privacy Act**

Kaiser's two arguments to escape Washington Privacy Act ("WPA") liability are wrong on the facts and law.[31] First, Jane Doe's communications with her healthcare providers, including messages sent via the Message Center, are among the communications intercepted. *See* ¶¶1, 2, 24, 60-61, 93, 98. These messages plainly constitute communications transmitted "between two or more individuals." Wash. Rev. Code Ann. § 9.73.030(1)(a). In fact, the Privacy Statement recognizes "[t]he Site allows our member and other users to . . . communication with our practitioners and staff." FAC, Ex. 1, at 1. Kaiser's cites to *Cousineau v. Microsoft Corp.* and *In re Carrier IQ, Inc.* are inapposite because the courts there considered data intercepted by the defendants' own "automated system." *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1093. Here, Plaintiff was communicating with her health care providers at Kaiser when those communications were intercepted without consent by third-parties. *See* ¶¶526-32. Thus, the question posed in *Cousineau*—"if Microsoft intercepted Cousineau's communication . . . with whom was Cousineau communicating?"—is irrelevant here. 992 F. Supp. 2d at 1129. That these communications were made between individuals over the internet does not take them outside the WPA's ambit. As the Washington Supreme Court has recognized, the WPA "is

[31] The WPA makes it unlawful to "intercept, or record any . . . [p]rivate communication transmitted by telephone, telegraph, radio, or other device between two or more individuals . . . without first obtaining the consent of all the participants in the communication." Wash. Rev. Code Ann. § 9.73.030(1)(a).

one of the most restrictive electronic surveillance laws ever promulgated." *State v. Roden*, 321 P.3d 1183, 1185 (Wash. 2014) (en banc).

Second, Kaiser argues that it cannot be liable because it did not "intercept" or "record." However, the Washington Supreme Court has recognized that, although the WPA does not define the term "intercept," the ordinary definition of "intercept" means to "stop . . . before arrival . . . or interrupt the progress or course." *Roden*, 321 P3d. at 1188. Under this definition, Kaiser's act of installing code on the Site and Apps that interrupts the progress or course of Plaintiffs' and other Users' electronic communications is "interception." Moreover, the WPA explicitly covers not just those who intercept communications, but also those who use third parties to violate the privacy rights of others, as Kaiser did here. Wash. Rev. Code Ann. § 9.73.060.

Kaiser's factually dissimilar authority does not bar Plaintiff's claim. In *McKee v. General Motors Co.*, the plaintiffs alleged that the defendant intercepts or records their messages via their vehicles' infotainment system. 601 F. Supp. 3d 901, 905 (W.D. Wash. 2022), *aff'd*, 2023 WL 7318690 (9th Cir. Nov. 7, 2023). Importantly, there was "no assertion that the infotainment systems are acting in any capacity on behalf of GM after a vehicle is purchased by an end user . . . because there is no assertion GM . . . reviews, utilizes, benefits from, or even has the ability to retrieve the cellphone data collected and stored by an infotainment system." *Id.* The court thus concluded that, under the WPA, "computer software" is "not an actor with agency," and thus was "incapable of intercepting a communication in violation of the privacy act." *Id.* (citing *State v. Bilgi*, 496 P.3d 1230, 1237 (Wash. Ct. App. 2021)). Because GM itself did not intercept the communications, and the infotainment system was incapable of doing so, there were insufficient facts to establish liability under the WPA. *Id.* Here, the Third Party Wiretappers are each capable of intercepting and recording communications under the WPA, and did so at Kaiser's behest for their benefit, and for Kaiser's. ¶¶526-32.

To be sure, Plaintiff has pled injury, including by being deprived of her valuable health information. *See* ¶¶221-43, 302-14. Kaiser's authority is distinguishable because the plaintiffs in those cases, unlike Jane Doe, solely alleged that the communications were recorded by a device, but were never actually intercepted by or sent to a third party. MTD at 39.

### T. Jane Doe Sufficiently Alleges Violation of the Washington HCIA

Jane Doe has stated a claim under the Washington Health Care Information Act ("HCIA"), which prohibits the disclosure of "health care information about a patient to any other person without the patient's written authorization." Wash. Rev. Code Ann. § 70.02.020(1). "Health care information" is defined as "any information . . . that identifies ***or can readily be associated with the identity of a patient*** and directly relates to the patient's health care." *Id.* § 70.02.010(17). Despite arguing that Plaintiff has failed to allege that she "complied" with the HCIA, Kaiser fails to identify any such non-compliance, and the Section that Plaintiff alleges was violated imposes no requirements on patients. *See id.* § 70.02.020. Plaintiffs have generally alleged, and provided specific examples of, the type of individually identifiable health care information disclosed and that the information disclosed to Third Party Wiretappers through the Site and Apps "can readily be associated with the identity of a patient." ¶537. *See* ¶¶86-87, 91 (Plaintiff's name, medical record number, region, and coverage status), 91 (health related financial information), 126 (lab test results), 130 (search for mental health information), 181-88 (same), 209 (shoulder X-ray), 210 (mammogram), 211 (restless leg syndrome diagnosis); ¶¶117, 119-23, 142, 152, 155, 182. Because Jane Doe has pled disclosure of information that can readily be associated with her identity and relates to her health care, she has stated a claim under the HCIA. Wash. Rev. Code Ann. § 70.02.010(17).

## VIII. CONCLUSION

Accordingly, Plaintiffs respectfully request that Kaiser's Motion be denied in full.

Dated: January 15, 2024

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*<u>/s/ Melissa L. Yeates</u>*
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

-and-

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Michael A. Innes (*pro hac vice* forthcoming)
minnes@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
Jordan M. Steele (*pro hac* forthcoming)
jsteele@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

*Counsel for Plaintiffs and the proposed Classes*