SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc.

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, and JANE DOE V, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and THE PERMANENTE MEDICAL GROUP, INC.,

Defendants.

Case No. 3:23-cv-02865-EMC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date: March 14, 2024
Time: 1:30 p.m.
Crtrm.: 5

District Judge: Hon. Edward M. Chen
Magistrate Judge: Hon. Peter H. Kang
FAC Filed: September 15, 2023
Trial Date: Not Set

# TABLE OF CONTENTS

**Page**


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

I. DOES II–V LACK ARTICLE III STANDING. ..... 1

II. ALL CLAIMS AGAINST HOSPITALS AND TPMG MUST BE DISMISSED. ..... 2

III. PLAINTIFFS CONSENTED TO THE DISCLOSURE OF THE INFORMATION. ..... 3

IV. EACH OF PLAINTIFFS' CAUSES OF ACTION FAIL. ..... 4

- A. Plaintiffs Fail to Allege a Violation of the Wiretap Act. ..... 4
- B. Plaintiffs Fail to Allege a Violation of CIPA. ..... 6
  - 1. Plaintiffs Fail to Plead the Vendors Were Actually Third Parties. ..... 6
  - 2. Plaintiffs' Interception Allegations Are Inadequate. ..... 7
  - 3. The Non-California Plaintiffs Cannot Assert CIPA Claims Based on Alleged Interceptions Occurring Outside the State. ..... 8
- C. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion. ..... 9
- D. Plaintiffs Fail to State a Claim for Breach of Express Contract. ..... 10
- E. Plaintiffs Fail to State a Claim for Breach of Implied Contract. ..... 11
- F. Plaintiffs Fail to State a Claim for Negligence Per Se. ..... 12
- G. Plaintiffs Fail to Allege a Violation of the CLRA. ..... 12
- H. Plaintiffs Fail to Allege a Violation of the CMIA. ..... 13
- I. Plaintiffs Fail to State a Claim for Statutory Larceny. ..... 13
- J. Jane Doe II Fails to Allege a Violation of the DCCPPA. ..... 14
- K. John Doe II Fails to Allege a Violation of the Georgia UDTPA. ..... 14
- L. John Doe II Fails to Allege a Violation of the Georgia CSPA. ..... 15
- M. John Doe II Fails to Allege a Violation of the Georgia IIPPA. ..... 16
- N. Jane Doe III Fails to Allege a Violation of the Maryland WESA. ..... 17
- O. Jane Doe V Fails to Allege a Violation of the Oregon UTPA. ..... 17
- P. Jane Doe IV Fails to Allege a Violation of the VCCA. ..... 17

Q. Jane Doe IV Fails to Allege a Violation of the Virginia IIPPA. ....18

R. Jane Doe Fails to Allege a Violation of Washington Consumer Protection Act....18

S. Jane Doe Fails to Allege a Violation of the Washington Privacy Act....18

T. Jane Doe Fails to Allege a Violation of the Washington HCIA....20

V. CONCLUSION....20

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.G. v. United States*
No. 23-CV-745, 2023 WL 7134927 (S.D. Cal. Oct. 30, 2023) .......... 12

*Bacon v. Dep't of Hum. Servs.*
No. 22-35142, 2023 WL 2755592 (9th Cir. Apr. 3, 2023) .......... 17

*Bass v. Facebook, Inc.*
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 12

*Boegeman v. Smith*
2018 WL 3140469 (S.D. Cal. June 27, 2018) .......... 14

*Brock v. Concord Auto. Dealership LLC*
2016 WL 829074 (N.D. Cal. Mar. 3, 2016) .......... 12

*Brown v. Google LLC*
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 3, 4

*In re Carrier IQ*
78 F. Supp. 3d 1051 (2015) .......... 19

*Cousin v. Sharp Healthcare*
No. 22-CV-2040, 2023 WL 4484441 (S.D. Cal. July 12, 2023) .......... 1, 2

*Curran v. Wells Fargo Bank, N.A.*
2021 WL 6753480 (D.D.C. Mar. 11, 2021) .......... 14

*Dent v. NFL*
902 F.3d 1109 (9th Cir. 2018) .......... 12

*Doe I v. Google LLC*
No. 23-CV-02431, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) .......... 5, 6

*Doe v. Meta Platforms, Inc.*
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .......... 8

*Dornay v. Volkswagen Grp. of Am., Inc.*
2023 WL 7318487 (9th Cir. Nov. 7, 2023) .......... 20

*In re Google Inc. Gmail Litig.*
No. 13–MD–02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 6

*In re Google, Inc. Privacy Policy Litigation*
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 10

*Goussev v. Toyota Motor Sales, U.S.A., Inc.*
2023 WL 7318082 (9th Cir. Nov. 7, 2023) ....................20

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*
323 F.3d 1219 (9th Cir. 2003) ....................9

*Guamataotao v. Dir. of Dep't of Revenue & Taxation*
236 F.3d 1077 (9th Cir. 2001) ....................5

*Hausauer v. City of Mesa*
No. CV-20-00653, 2020 WL 2735970 (D. Ariz. May 26, 2020) ....................3

*Hernandez v. Hillsides, Inc.*
47 Cal. 4th 272 (2002) ....................10

*In re iPhone App. Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................13

*James v. Walt Disney Co.*
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) (Chen, J.) ....................1, 8, 9

*Jones v. Ford Motor Co.*
85 F.4th 570 (9th Cir. 2023) ....................20

*Kearney v. Kearney*
95 Wash. App. 405 (1999) ....................19

*Kurowski v. Rush Sys. for Health*
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ....................5

*Lam v. Target Corp.*
No. 2:15–CV–01922, 2017 WL 4154947 (E.D. Cal. Sept. 19, 2017) ....................12

*McKee v. Gen. Motors Co.*
2023 WL 7318690 (9th Cir. Nov. 7, 2023) ....................20

*Oman v. Delta Air Lines, Inc.*
889 F.3d 1075 (9th Cir. 2018) ....................9

*People v. Williams*
57 Cal. 4th 776 (2013) ....................13, 14

*Perkins v. LinkedIn Corp.*
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................3

*Planned Parenthood Fed'n of Am., Inc. v. Newman*
51 F.4th 1125 (9th Cir. 2022) ....................5

*Popa v. Harriet Carter Gifts, Inc.*
52 F.4th 121 (3d Cir. 2022) ....................8, 9

*Remington v. Mathson*
42 F. Supp. 3d 1256 (N.D. Cal. 2012), *aff'd*, 575 F. App'x 808 (9th Cir. 2014) .................... 14

*Ritch v. Am. Honda Motor Co.*
2023 WL 7318741 (9th Cir. Nov. 7, 2023) .................... 20

*Schmitt v. SN Servicing Corp.*
No. 21-CV-03355, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .................... 9

*Schneider v. California Dep't of Corr.*
151 F.3d 1194 (9th Cir. 1998) .................... 5

*Sere v. Grp. Hosp'n, Inc.*
443 A.2d 33 (D.C. 1982) .................... 14

*Smith v. Facebook, Inc.*
745 F. App'x 8 (9th Cir. 2018) .................... 3

*Space Sys./Loral, LLC v. Orbital ATK, Inc.*
306 F. Supp. 3d 845 (E.D. Va. 2018) .................... 18

*Sprye v. Ace Motor Acceptance Corp.*
2017 Md. Cir. Ct. LEXIS 7 (Montgomery Cnty. Cir. Ct. Sept. 29, 2017) .................... 17

*State v. Roden*
321 P.3d 1183 (Wash. 2014) .................... 19

*Straubmuller v. JetBlue Airways Corp.*
No. 23-384, 2023 WL 5671615 (D. Md. Sept. 1, 2023) .................... 16

*Sussman v. American Broadcasting Companies, Inc.*
186 F.3d 1200 (9th Cir. 1999) .................... 4

*Swarts v. Home Depot, Inc.*
No. 23-cv-0995, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) .................... 7

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007) .................... 3

*In re Toys R Us, Inc., Privacy Litig.*
No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) .................... 6

*United States ex rel. Osinek v. Kaiser Permanente*
No. 13-CV-03891, 2023 WL 4054279 (N.D. Cal. June 15, 2023) .................... 2, 3

*United States v. Korner*
56 F. Supp. 242 (S.D. Cal. 1944) .................... 5

*Valentine v. NebuAd, Inc.*
804 F. Supp. 2d 1022 (N.D. Cal. 2011) .................... 9

*Valenzuela v. Super Bright Leds Inc.*
No. ED CV23-01148, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ....6, 7

*Willingham v. Glob. Payments, Inc.*
No. 1:12–CV–01157, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ....15

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*
2023 WL 5837492 (S.D. Cal. Sept. 8, 2023)....8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ....9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
313 F. Supp. 3d 1113 (N.D. Cal. 2018)....13

<u>Statutes</u>

Ga. Code Ann. § 16-2-20....16

Ga. Code Ann. § 16-9-92(18) ....15

Ga. Code Ann. § 16-9-93(a) ....15

Ga. Code Ann. § 16-9-93(c) ....15, 16

Ga. Code Ann. § 16-9-93(e) ....16

Or. Rev. Stat. § 646.607 ....17

Wash. Rev. Code § 9.73.060 ....20

<u>Other Authorities</u>

45 C.F.R. § 160.103....10, 11

2 James Wm. Moore et al., *Moore's Federal Practice*, § 12.34[2] (3d ed. 1997) ....5

Rest. (2d) of Torts § 652B, Comment b ....10

Plaintiffs' Opposition highlights the pleading deficiencies that pervade the First Amended Complaint ("FAC").[1] Plaintiffs rely on unpled allegations and do not refute their failure to plead sufficient facts to support any of their twenty-one causes of action. The FAC should be dismissed.

## I. DOES II–V LACK ARTICLE III STANDING.

Does II–V do not have standing to assert any claims. There are no specific allegations in the FAC regarding Does II–V, and allegations regarding the interception of John Doe's or Jane Doe's information cannot establish the requisite injury-in-fact for standing. Plaintiffs cite various paragraphs which purport to "specifically allege that more than mere record information was collected, and provide specific examples of the types of information that was intercepted" as the basis for Does II–V's injury-in-fact. (Opp'n at 9.) Those paragraphs, however, only contain allegations made as to the interception or disclosure of ***John Doe*** or ***Jane Doe's*** information. The FAC does not contain a single allegation that any of ***Does II–V's*** specific personal information was intercepted or disclosed.

Plaintiffs' reliance on *James v. Walt Disney Co.*, 2023 WL 7392285, at *5 (N.D. Cal. Nov. 8, 2023) (Chen, J.), is also misplaced. Defendants do not make the "same arguments challenging standing" (Opp'n at 8), made in the *James* case. In *James,* Defendant argued that "Plaintiffs must show that any interception of information was highly offensive in order to have standing." *James*, 2023 WL 7392285, at *5. That is not the argument Defendants make here. Instead, Defendants argue that Does II–V's reliance on conclusory allegations regarding interception of information belonging to other Plaintiffs fails to allege an injury in fact ***as to Does II–V***. *See* Mem. in Supp. Mot. to Dismiss ("MTD") at 5–7.

*Cousin v. Sharp Healthcare*, No. 22-CV-2040, 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023) is directly on point. In *Sharp Healthcare*, the plaintiffs asserted conclusory allegations that Sharp disclosed their personal and medical information, communications and messages with doctors, medical test results, payment information, and password reset information to Meta through the use of the Meta pixel on Sharp's website. The court dismissed the complaint in its entirety,

[1] Defendants are using the same terms as defined in the Motion to Dismiss (Dkt. No. 88) and will not be redefining terms in this Reply.

finding that "these allegations are conclusory and devoid of any factual support" as "Plaintiffs fail to factually support their contention that these activities took place" and "do not explain what information they provided to Defendant." *Id.* The court further reasoned that "[w]hile Plaintiffs provide[d] an example of a search by a hypothetical patient, they fail[ed] to state what information they ***each*** provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta." *Id.* (emphasis added). The same result is dictated here.

Similar to the allegations in *Sharp Healthcare*, Does II–V each allege they used the Site to "access medical information and communicate with their health care providers, including making appointments, researching providers and medical conditions, checking medical results, and reviewing [their] medical history," (FAC ¶¶ 27, 31, 35, 39), and then summarily conclude that Defendants disclosed their "patient status, identifying information, personal and sensitive health information, and confidential communications with their health care providers" through the Technology. *Id.* ¶¶ 20, 28, 32, 36, 40. Like the *Sharp Healthcare* plaintiffs, Does II–V do not explain what information they each provided and offer no facts supporting their contention that these activities took place. Just as the Plaintiffs in *Sharp Healthcare* were not permitted to base their allegations on the search of a hypothetical plaintiff, Does II–V cannot rely on specific searches pled by John Doe and Jane Doe. Accordingly, Does II–V have failed to plead facts to establish injury-in-fact, and therefore lack Article III standing.

## II. ALL CLAIMS AGAINST HOSPITALS AND TPMG MUST BE DISMISSED.

All claims against Hospitals and TPMG should be dismissed with prejudice. Claims in the FAC are based on the alleged disclosure of personal information that ensued from Plaintiffs' use of the Site and Apps. Plaintiffs do not dispute that the clear text of the Site Terms and Conditions (documents Plaintiffs attached to the FAC) explicitly establish that the Site and Apps are exclusively owned and operated by KFHP. *See* MTD at 8. As such, the Site Terms and Conditions are fatal to Plaintiffs' claims against Hospitals and TPMG.

Even setting aside that the Site Terms and Conditions contradict the allegations of the FAC, Plaintiffs' claims must also be dismissed because they have not alleged specific facts regarding the actions of TPMG or Hospitals. Plaintiffs rely on *United States ex rel. Osinek v. Kaiser Permanente*,

No. 13-CV-03891, 2023 WL 4054279 (N.D. Cal. June 15, 2023), for the proposition that "lumping" the defendants is permissible. (Opp'n at 10.) However, in *Osinek*, there was "no concern . . . that Kaiser does not have adequate notice as to the general ***roles*** played by the health plans and the physician medical groups with respect to risk adjustment. ***The FAC provides sufficient details in those regard***." *Id.* at *10 (emphasis added). Here, there is no such clarity. Plaintiffs cite Paragraphs 41–46 of the FAC, (Opp'n at 11 n.9), but these allegations merely describe each Defendant, not what each Defendants' ***role*** was in any of Plaintiffs' twenty-one causes of action. Where defendants did not engage in the ***exact same conduct***, it is impermissible to lump multiple defendants together. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Plaintiffs contend that their claims "involve the interception of communications between Plaintiffs and their health care providers on the Site and Apps and ***each Defendant is fully aware of its role in that process***." (Opp'n at 11.) Thus, Plaintiffs admit that Defendants have different roles, yet fail to allege ***what they claim*** each Defendant's role was. This impermissible group pleading cannot withstand a motion to dismiss. *See Hausauer v. City of Mesa*, No. CV-20-00653, 2020 WL 2735970, at *3 (D. Ariz. May 26, 2020) (dismissing claims where plaintiff "repeatedly lumps [defendants] together as a collective whole" and recognizing that differentiated allegations are not required only when each defendant is alleged to have engaged in precisely the same conduct).

## III. PLAINTIFFS CONSENTED TO THE DISCLOSURE OF THE INFORMATION.

In determining whether Plaintiffs consented to the alleged conduct of Defendants, the relevant inquiry is: would a reasonable user who viewed the Site Terms and Conditions have understood that Defendants were disclosing the information at issue? *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018).[2] Plaintiffs' attempt to highlight supposed inconsistencies in KFHP's Privacy

[2] Plaintiffs misconstrue *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021), to stand for the proposition that "[t]he disclosures must have only one plausible interpretation for a finding of consent." (Opp'n at 13.) However, *Brown* does not hold that only one interpretation of the privacy policy is plausible, but only that the privacy policy must put a reasonable person on notice of the data that would be collected and disclosed to establish consent. The standard articulated by *Brown* is merely a re-wording of the same standard: the court should find consent if a

Statement is unavailing, as a reasonable user who viewed the disclosures made in Section 3, Section 5, and Section 13 of KFHP's Privacy Statement collectively, *see* MTD at 10–11, would understand that KFHP utilized its own and third-party tracking technology on the Site and that these technologies allowed KFHP ***and third parties*** to collect personal information and information about users' activities on the Site, including their click paths and the information and pages that they viewed.

Further, there is no merit to Plaintiffs' assertion that the Privacy Statement somehow obligated Defendants to obtain written, HIPAA-compliant consent from Plaintiffs for disclosure of any information.[3] That argument fails for the simple reason that Plaintiffs have not shown that Defendants actually used or disclosed PHI, let alone did so in a manner that required written authorization from Plaintiffs. As discussed *infra* in Section IV.D, Plaintiffs fail to allege facts sufficient to show that ***<u>any</u>*** information allegedly disclosed to Vendors was identifiable, or could be linked to Plaintiffs' identities. Nor do Plaintiffs show that ***Defendants*** disclosed this information, as the cited identifiers were set by the Vendors.

## IV. EACH OF PLAINTIFFS' CAUSES OF ACTION FAIL.

### A. Plaintiffs Fail to Allege a Violation of the Wiretap Act.

Plaintiffs fail to establish the crime-tort exception based on the assertion that "Defendants intercepted communications for the purpose of violating HIPAA" and intended to tortiously collect Plaintiffs' personal information. (Opp'n at 15.) The crime-tort exception applies only when the "*purpose* for the interception—its intended use—was criminal or tortious" at the time of the interception. *Sussman v. American Broadcasting Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). That the interception itself violates the law is not enough. The interception must be "done for the purpose of facilitating ***some further impropriety***" for the crime-tort exception to apply. *Id.*;

---

reasonable person would have understood the information was being disclosed. *Brown*, 525 F. Supp. 3d at 1063. Kaiser has done so through the Site Terms and Conditions.

[3] The Privacy Statement includes the representation that "use and disclosure of individual's personal information (including health information) is limited as required by state a federal law." (FAC, Exh. 2 at 1.) Plaintiffs attempt to characterize this as subjecting Defendants to HIPAA's written authorization requirement—even for the disclosure of non-HIPAA protected information. It does not.

*Doe I v. Google LLC*, No. 23-CV-02431, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023).[4]

Plaintiffs' newly-minted legal theory[5] fails because the FAC contains no supporting facts that Defendants collected communications for the ***independent*** purpose of violating HIPAA or committing a tort. Instead, Plaintiffs rely on allegations that are impermissibly asserted for the first time as arguments in the Opposition. *See* Opp'n at 15−18. When resolving a motion to dismiss under Rule 12(b)(6), the Court may not consider materials outside the complaint, including new allegations in the opposition memorandum. *Guamataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F.3d 1077, 1083 (9th Cir. 2001) (declining to consider new documents submitted in support of the opposition to the Rule 12(b)(6) motion to dismiss); *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (refusing to consider new factual allegations asserted in the opposition memorandum and noting that the "focus of any Rule 12(b)(6) dismissal—both in the trial court and on appeal—is the complaint"); *see also* 2 James Wm. Moore et al., *Moore's Federal Practice*, § 12.34[2] (3d ed. 1997) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."). Further, it is well established that when a plaintiff attempts to use an exception to defeat a motion to dismiss, the facts supporting the exception ***must be alleged in the operative complaint***. *United States v. Korner*, 56 F. Supp. 242, 248 (S.D. Cal. 1944) ("It is an elementary rule of pleading that when a cause of action is based upon an exception to a general rule, sufficient facts must be alleged to bring the action clearly within the exception."). The FAC does not contain a single factual allegation that Defendants collected communications for the ***independent*** purpose of violating HIPAA or committing a tort. On this basis alone, Plaintiffs'

---

[4] Plaintiffs' reliance on *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) is unavailing because its holding that the crime-tort exception applies merely because there was an alleged violation of HIPAA is expressly contradicted by the Ninth Circuit's decision in *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022).

[5] Plaintiffs' PI Motion (Dkt. No. 58) claimed that "the purpose of [Kaiser's] interception was . . . to hand over confidential and HIPAA-protected information" to the Vendors, meaning the purpose (the *disclosure* of information) is the same as the alleged violation—and thus the crime-tort exception would not apply. (PI Motion at 10.) Plaintiffs now claim, for the first time in their Opposition, that "the communications were intercepted for the purpose of violating HIPAA." (Opp'n at 15.)

Wiretap Act claim must be dismissed.

Second, the crime-tort exception also does not apply because Plaintiffs fail to allege that Defendants had the primary intent of committing a tort or crime independent of the alleged interception. Plaintiffs cite *In re Toys R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001), but that case is inapposite. In *Toys R Us*, plaintiffs alleged that Toys R Us installed software code from Coremetrics on the Toys R Us website that allowed Coremetrics to secretly intercept and access customers' personal information and web activity, and that Coremetrics intercepted the information for the purpose of obtaining free market research rather than paying for it. *Id.* at *8. In that case, the court held that the crime-tort exception applied to Coremetrics, the third-party vendor, ***but it did not apply to Toys R Us, the website operator***, because only the third party had the intent of committing a crime or tort by implementing third-party software on the website. *Id.* Thus, even if Plaintiffs amended the FAC, the crime-tort exception would only potentially apply to the ***Vendors***, not Defendants. Finally, courts in this District make clear that the crime-tort exception cannot be predicated on a defendant's use of the types of common internet technologies alleged in the FAC. *See, e.g.*, *Doe I*, 2023 WL 6882766, at *2 (rejecting crime-tort exception for web tracking because plaintiffs failed to show the interception was "done for the purpose of facilitating some further impropriety"); *In re Google Inc. Gmail Litig.*, No. 13–MD–02430, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (rejecting the crime-tort exception, reasoning that Google did not intend to "perpetuate torts on millions of internet users, but to make money").

### B. Plaintiffs Fail to Allege a Violation of CIPA.

#### 1. Plaintiffs Fail to Plead the Vendors Were Actually Third Parties.

Plaintiffs' CIPA claim fails because Plaintiffs do not adequately allege any Vendor was a third party, rather than an agent providing ***tools*** that ***Defendants used*** for ***Defendants' own purposes***. Under CIPA, "recording or storing a communication is not the same as reading it or learning its contents. Only the latter types of conduct violate CIPA." *Valenzuela v. Super Bright Leds Inc.*, No. ED CV23-01148, 2023 WL 8424472, at *7 (C.D. Cal. Nov. 27, 2023). Therefore, "[e]ven if [a vendor] created software for [the Defendant], and even if that software stored

communications for [Defendant] so [Defendant] could conduct its own data analytics and marketing efforts, this would not be sufficient to show that [the vendor] was eavesdropping on [Defendant's] communications with its customers." *Id*. at *8; *see also Swarts v. Home Depot, Inc.,* No. 23-cv-0995, 2023 WL 5615453, at *7 (N.D. Cal. Aug. 30, 2023) (finding allegation that vendor "accesses and analyzes the recorded conversation[s] to understand what Home Depot customers want, to increase sales, fix inefficiencies, and improve experiences" is not sufficient). Further, Plaintiffs must allege an ***actual*** violation of CIPA with respect to ***their communications***, not a "capability" with respect to other data or other websites. Thus, Plaintiffs must plead facts showing the Vendors "acted sufficiently independent" from Defendants "as to constitute an unannounced auditor" as to their communications. (MTD at 16.) Plaintiffs fail to do so.

For example, Plaintiffs assert that they alleged Adobe uses Plaintiffs' data for its own purposes by "'mak[ing] available certain health-related segments supplied by companies' like Kaiser so that Adobe's customers can 'use these segments to target ads.'" (Opp'n at 22.) That is <u>***not***</u> what the FAC says. The FAC alleges that Adobe ***recorded*** Plaintiffs' actions on the Site. (FAC ¶¶ 115–23.) It also alleges that Adobe ***provides*** data ***to Defendants*** that it receives ***from third-parties***: "Adobe makes available certain health-related segments ***supplied <u>by</u> third-party data providers <u>to</u> the companies*** using the Adobe Advertising Cloud*.*" *Id.* ¶ 111 (emphasis added). The FAC does not allege that Adobe ***used Plaintiffs' data*** from the Site or Apps for its own purposes. Plaintiff's other allegations are similarly deficient:

- There are no facts alleging Quantum Metric did anything with Plaintiffs' data other than record and analyze data for Defendants. (FAC ¶¶ 75–101.)

- Plaintiffs claim Dynatrace's "Subscription Agreement" states Dynatrace can use "Usage Data." *Id.* ¶ 199 n.44. "Usage Data" is technical information about ***Dynatrace's own services***, not any personal data collected from the Site.

- The FAC states "***[a] main goal*** for Google, Bing, and Twitter is to develop a profile of users to better target them with ads." *Id.* ¶ 141. An allegation about a "goal" is not an allegation that the Vendor independently used Plaintiffs' data. Plaintiffs allege only that these third parties recorded information. *Id.* ¶¶ 146–58, 161.

**2. Plaintiffs' Interception Allegations Are Inadequate.**

Plaintiffs fail to plead facts establishing that their communications were intercepted in

transit. A section 631 claim cannot be based on the sharing of communications ***after*** they were initially received. (MTD at 17–18.) If data flows first to Defendants, and from Defendants to third parties, there is no interception under CIPA. *Id*. Therefore, Plaintiffs must allege facts to make it plausible that their communications were intercepted "in transit." But the FAC lacks any such allegations and only includes a conclusory recitation of the element of the claim. Nor does *James v. Walt Disney Co*. support Plaintiffs' position. (Opp'n at 22–23.) That case holds only that allegations that "once BlueKai is on the device, it *then* begins to intercept communications *when the user makes communications to the website*" sufficiently alleged interception in transit. 2023 WL 7392285, at *15. The same is true in *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023), in which the court found allegations that communications sent to Ulta were ***first*** received by the third-party's servers were sufficient. The FAC contains no such allegations of in transit interception.

**3. The Non-California Plaintiffs Cannot Assert CIPA Claims Based on Alleged Interceptions Occurring Outside the State.**

CIPA cannot apply to the Non-California Plaintiffs because they do not (and cannot) plead an element of the CIPA claim—interception ***in California***. (MTD at 18–20.) The Non-California Plaintiffs provide ***no facts*** to plausibly establish that their communications were intercepted in California (or while being sent from California). Rather, any interception occurred on the Non-California Plaintiffs' computers, located where they reside—outside California. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022) ("NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers. And that was at ***Popa's browser***, not where the signals were received at NaviStone's servers.").

Plaintiffs cite *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *6 (N.D. Cal. Sept. 7, 2023), but that case does not support their argument. *See* Opp'n at 24. First, *Doe v. Meta* did not address CIPA's plain text statutory requirement that the ***interception*** must take place ***in California*** with respect to the website operator accused of aiding and abetting. It held that the interception occurred in California because Meta, ***the vendor***, was in California. Second, the location where Defendants allegedly "aided, agreed with, employed or conspired with the Vendors" is irrelevant to

where Plaintiffs' communications were ***intercepted*** by the Vendors.[6] Finally, with respect to Maryland's analogous state wiretapping statute, Plaintiffs assert that the communication was "intercepted" where Jane Doe III resides. *See* Opp'n at 35 ("Jane Doe III resides and accesses the Site and Apps in West River Maryland . . . Accordingly, she has alleged that her communications were intercepted or disclosed when sent from or received ***in Maryland***." (emphasis added)).

Plaintiffs' argument that the alleged choice of law clause in the Terms and Conditions allows Non-California Plaintiffs to assert CIPA claims is meritless. The Terms and Conditions state that that the ***Terms and Conditions themselves*** are governed by California law. They do not state that ***all claims*** relating to the Site or Apps are governed by California law. And even if they did, a choice of law provision cannot provide the Non-California Plaintiffs with the missing element of their claim, or with standing to invoke a law that by its own terms does not apply to them. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003) ("When a law contains geographical limitations on its application . . . courts will not apply it to parties falling outside those limitations, ***even if the parties stipulate that the law should apply***." (emphasis added)); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *47 (N.D. Cal. Aug. 30, 2017) (applying "the rule" articulated in *Gravquick* to the California Customer Records Act, which contains a similar geographical limitation on its application to CIPA). Accordingly, the CIPA claim must be dismissed with prejudice as to all the Non-California Plaintiffs.

### C. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion.[7]

A disclosure is not an intrusion. Plaintiffs' Opposition attempts to obfuscate that fact by

---

[6] Two of the three cases cited by Judge Orrick to support this holding do not involve a claim under CIPA. *See Schmitt v. SN Servicing Corp.*, No. 21-CV-03355, 2021 WL 3493754, at *3 (N.D. Cal. Aug. 9, 2021) (involving claims for negligence, invasion of privacy, and violation of the UCL); *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (involving claims under California Labor Code). The one case involving a CIPA claim, *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011), was decided in 2011 and runs counter to more recent decisions—including a decision by this Court—holding that the relevant inquiry is where the interception occurred. *See James*, 2023 WL 7392285, at *17; *Popa*, 52 F.4th at 129–30.

[7] Claims for common law invasion of privacy and invasion of privacy under the California Constitution are evaluated together. *See* Opp'n at 24. Thus, because Plaintiffs' intrusion upon seclusion claim (Count 3) fails, so does Plaintiffs' invasion of privacy claim (Count 4).

highlighting irrelevant distinctions in the cases Defendants cited and by focusing on the "highly offensive" element of the claim. But Plaintiffs must establish that the intrusion was highly offensive ***and*** that Defendants intentionally intruded into a place where Plaintiffs had a reasonable expectation of privacy. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2002). It is not highly offensive for service providers to use website data as an extension of Defendants. *See* MTD at Section VII.B.2. Moreover, Plaintiffs' claims fail because they cannot establish that Defendants ***intentionally intruded*** into a place where Plaintiffs had a reasonable expectation of privacy.

All the class states follow the Restatement of Torts, which makes clear that the crux of an intrusion claim is that the defendant intruded into a private area. Rest. (2d) of Torts § 652B, Comment b; *see also In re Google, Inc. Privacy Policy Litigation*, 58 F. Supp. 3d 968, 987 (N.D. Cal. 2014) ("[T]o assert an intrusion upon seclusion claim, a plaintiff must plead facts in support of two elements: 1) intrusion into a private place, conversation or matter, and 2) in a manner highly offensive to a reasonable person . . . ." (internal quotations omitted)).[8]

**D. Plaintiffs Fail to State a Claim for Breach of Express Contract.**

Plaintiffs misquote from the Privacy Statement various *qualified* representations. This tactic does not establish a breach. There is no merit to Plaintiff's contention that Defendants breached the provision in the Privacy Statement that the "use and disclosure of an individual's personal information (including health information) is limited as required by state and federal law." Plaintiffs argue that Defendants violated HIPAA when they disclosed Plaintiffs' information without written authorization, *see* Opp'n at 27, but the FAC lacks any facts establishing that Defendants disclosed ***HIPAA-protected*** information.

The HIPAA Privacy Rule prohibits disclosure of Protected Health Information ("PHI"). To be covered as PHI, information must be "individually identifiable health information ("IIHI")." *See* 45 C.F.R. § 160.103. Information is considered IIHI if it: (1) is created by a health care provider;

[8] Illustration 1 to Section 652B to the Restatement illustrates this point with respect to a photographer entering into a patients hospital room and taking a photograph over her objection after she refused to give him an interview. Unlike the photographer, Defendants did not obtain Plaintiffs' information in a manner that fairly could be considered an intrusion. Plaintiffs allege they voluntarily shared information with Defendants and that Defendants then further shared that information without their consent. That is not an intrusion into a private area by Defendants.

(2) relates to the past, present, or future physical or mental health condition of an individual; the provision of health care to an individual; or payment for the provision of health care to an individual; ***and*** (3) *also* either (i) identifies the individual or (ii) there is a reasonable basis to believe the information can be used to identify the individual. *Id*. The FAC fails to allege facts sufficient to show that any information Defendants allegedly disclosed to Vendors was identifiable as to one of the Plaintiffs, or could be linked to Plaintiffs' identities.

There are no factual allegations that Quantum Metric or Twitter received any information that directly identified one of the Plaintiffs or that the information actually received from Defendants could be used to identify the individual. (FAC ¶¶ 142, 206.) With respect to Google and Bing, Plaintiffs allege that the information transmitted from the Site and Apps could be linked to a user though "temporary and session IDs," and in some cases "device fingerprint" information assigned by the third party. *Id.* ¶¶ 152, 155, 182. But that information is not health information that is transmitted by Defendants. And in any event, Plaintiffs do not allege facts showing the information could be used to specifically identify any of the Plaintiffs. Accordingly, the FAC fails to establish that any information allegedly transmitted *by Defendants* was PHI.[9]

**E. Plaintiffs Fail to State a Claim for Breach of Implied Contract.**

As detailed in Defendants' Motion, under the law of each relevant state, an action for breach of implied contract will be dismissed where plaintiffs also allege a breach of express contract claim covering the same subject matter. *See* MTD at 24 & n.18. Even if the court were to determine that a claim for breach of implied contract can be brought with a claim for breach of express contract (it cannot), by Plaintiffs' own admission, "courts 'routinely allow plaintiffs to plead both express contract and implied contract theories, ***as long as those theories are clearly pled in the***

[9] Even if the Court were to find that the information allegedly disclosed to Vendors was identifiable, Plaintiffs make clear that it is the *Vendors*, not Defendants, who assigned the identifiers at issue. *See, e.g.*, FAC ¶ 119 ("The third block (yellow) includes two identifiers ***set by Adobe*** . . . ." (emphasis added)); *id.* ¶ 152 ("The above GET requests includes the URL of the current site (blue highlight), the event type (highlighted in green)—in this case a conversion, as well as data about the browser and device that allows ***Google to produce*** a device fingerprint (highlighted in grey)." (emphasis added)). Accordingly, Plaintiffs cannot allege that ***Defendants*** violated HIPAA because defendants did not provide any PHI or IIHI to the Vendors.

***alternative***.'" (Opp'n at 28 (emphasis added)). The FAC does not plead an implied contract "in the alternative." This claim must be dismissed.

**F. Plaintiffs Fail to State a Claim for Negligence Per Se.**

Plaintiffs fashion their claim as a claim for negligence per se. However, negligence per se is not a standalone cause of action. Plaintiffs argue that they are not required to assert a separate claim for negligence. (Opp'n at 29.) But this argument is directly contradicted by Plaintiffs' own case law. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038 (N.D. Cal. 2019) ("Negligence per se survives as a theory of the asserted negligence claim but not as a standalone claim."); *Dent v. NFL*, 902 F.3d 1109, 1117 (9th Cir. 2018) ("[U]nder California law, negligence per se is a doctrine, not an independent cause of action" and specifically noting that the claims "may be susceptible [] to a . . . motion to dismiss for failure to state a claim under Rule 12(b)(6)").

Further, Plaintiffs cannot allege a claim for negligence because a claim for negligence cannot be based on intentional conduct. Plaintiffs' reliance on *A.G. v. United States*, No. 23-CV-745, 2023 WL 7134927, at *11–14 (S.D. Cal. Oct. 30, 2023) to argue otherwise is misplaced. *A.G. v. United States* merely holds that a defendant could not ***defend*** a negligence claim by arguing that his conduct was intentional. *Id.*[10] This case is inapplicable where, as here, Plaintiffs are improperly attempting to ***base*** a negligence claim on conduct *they specifically allege* was intentional. When a plaintiff attempts to support a negligence claim with allegations of intentional conduct that support intentional torts (as Plaintiffs do here) the negligence claim must fail. *Brock v. Concord Auto. Dealership LLC*, 2016 WL 829074, at *8 (N.D. Cal. Mar. 3, 2016) (dismissing negligence claim based on alleged intentional conduct).

**G. Plaintiffs Fail to Allege a Violation of the CLRA.**

To plead an actionable transaction under the CLRA, Plaintiffs must allege either that Defendants represented the services provided had characteristics or benefits that they do not have or

[10] Plaintiffs also point to an irrelevant distinction in *Lam v. Target Corp.*, No. 2:15–CV–01922, 2017 WL 4154947 (E.D. Cal. Sept. 19, 2017), noting that the case *Lam* cites is purportedly limited to "a distinct legal context that is, at best, distantly related to the issues presented here." (Opp'n at 29 n.20.) Plaintiffs wholly ignore the plethora of cases in California, as well as the cases cited by Defendants out of D.C., Georgia, Maryland, Oregon, and Virginia, holding that a negligence claim cannot be based on intentional misconduct—none of which are so limited. *See* MTD at 25 n.20.

the subject of a transaction between Defendants and Plaintiffs had been supplied in accordance with a previous representation when it had not. Plaintiffs incorrectly argue that that Defendants' purported failure to maintain the confidentiality of Plaintiffs' communications while using the Site and Apps is actionable under the CLRA. *See* Opp'n at 30. It is not.

As discussed in Defendants' Motion, the ***Site and Apps*** are neither a "service" provided by Defendants nor the "subject of a transaction" between Plaintiffs and Defendants. (MTD at 27.) The *service* provided by Defendants is the *provision of healthcare*. The Site and Apps are merely tools with which Kaiser Members are able to access those services—*not* the services themselves. Accordingly, Plaintiffs' reliance on *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1142 (N.D. Cal. 2018) and *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012) is misplaced, because the software at issue in those cases ***was*** the "service" provided to consumers and the "subject of the transaction" between the technology companies and the consumers. The Site and Apps here are not the service nor the subject of the transaction.

### H. Plaintiffs Fail to Allege a Violation of the CMIA.

Plaintiffs fail to allege a CMIA violation and largely rely on the same inadequate allegations supporting their breach of express contract claim. As discussed above, none of those allegations are sufficient to show that any information allegedly disclosed by Defendants to Vendors was identifiable, or could be linked to Plaintiffs' identities. *See supra* Section IV.D. Accordingly, Plaintiffs also fail to allege facts showing that the information allegedly disclosed by Defendants is "sufficient to allow identification of the *individual*" as required under the CMIA's definition of "medical information." In addition, non-California Plaintiffs may not assert a claim under the CMIA for the same reason they cannot assert a claim under CIPA. *See supra* Section IV.B.3.

### I. Plaintiffs Fail to State a Claim for Statutory Larceny.

Despite bringing a claim for statutory larceny, (FAC ¶¶ 416–22), Plaintiffs now impermissibly pivot to a claim for theft by false pretenses. Plaintiffs cite to *People v. Williams*, 57 Cal. 4th 776 (2013), for the proposition that statutory larceny and theft by false pretenses have been combined into a single claim. (Opp'n at 32 n.22.) However, the *Williams* court made clear that the consolidation of larceny and false pretenses into the single crime of theft "did not change the

elements of those offenses" and that there were distinct elements of larceny and false pretenses. *Id*. at 786 (reversing Court of Appeals because the defendant had committed theft by false pretenses, not larceny). To that end, in the civil context, statutory larceny and theft by false pretenses are different causes of action with different elements. *See Boegeman v. Smith*, 2018 WL 3140469, at *9 (S.D. Cal. June 27, 2018) ("[A] key difference between the two theories presented—theft by false pretenses and theft by larceny—is that theft by larceny requires a 'trespassory taking' while theft by false pretenses involves a consensual transfer of title."). Here, the FAC clearly asserts a statutory larceny claim, not a theft by false pretenses claim.[11] (FAC ¶ 95.) As all relevant authority makes clear, statutory larceny requires a trespassory taking, and Plaintiffs admission that they voluntarily and intentionally transmitted information to Defendants through the Site and Apps precludes the possibility of a trespassory taking.

**J. Jane Doe II Fails to Allege a Violation of the DCCPPA.**

A violation of the DCCPPA cannot be based on a breach of contract, even if that breach is intentional. *See* MTD at 31 (collecting cases). Jane Doe II does not dispute that her claims are based on a breach of contract. Instead, she claims that *Sere v. Grp. Hosp'n, Inc*., 443 A.2d 33, 37 (D.C. 1982) distinguishes between "mere breaches of contract" and breaches "assuming the character of, a willful tort" for purposes of the DCCPA. (Opp'n at 33.) But *Sere* ***had nothing to do with DCCPPA claim***. The full quote, conveniently redacted by Plaintiffs, reveals it addressed the availability of punitive damages for breach of contract. *Sere*, 443 A.2d at 37 ("The rule in this jurisdiction is that only where the alleged breach of contract 'merges with, and assumes the character of, a willful tort' will *punitive damages* be available." (emphasis added)).[12]

**K. John Doe II Fails to Allege a Violation of the Georgia UDTPA.**

To state a claim under the Georgia UDTPA, John Doe II must allege that he relied on a

---

[11] A Complaint cannot be amended through allegations made in an opposition to a motion to dismiss." *Remington v. Mathson*, 42 F. Supp. 3d 1256, 1278 n.3 (N.D. Cal. 2012), *aff'd*, 575 F. App'x 808 (9th Cir. 2014) (declining to allow amendment to complaint to add causes of action).

[12] Plaintiff also relies on *Curran v. Wells Fargo Bank, N.A*., 2021 WL 6753480, at *8 (D.D.C. Mar. 11, 2021), which did not involve a DCCPPA claim based on a breach of contract. The fact that the DCCPPA "should be read broadly to assure that the purposes are carried out" does not negate binding caselaw precluding DCCPPA claims based on breach of contract.

misrepresentation. *Willingham v. Glob. Payments, Inc.*, No. 1:12–CV–01157, 2013 WL 440702, at *16 (N.D. Ga. Feb. 5, 2013). Unable to do so, John Doe II instead argues that he had "expectations." (Opp'n at 33.) This is simply insufficient. The FAC does not allege he relied on a ***misrepresentation***, let alone that he is likely to suffer future harm (as required by the statute). Accordingly, John Doe II's Georgia UDPTA claim must be dismissed.[13]

### L. John Doe II Fails to Allege a Violation of the Georgia CSPA.

John Doe II has failed to allege either computer theft or computer invasion of privacy. First, as to computer theft, the CSPA proscribes using "a computer or computer network with knowledge that such use is without authority" with the intention of taking another's property. Ga. Code Ann. § 16-9-93(a). "Without authority" means "the use of a computer or computer network in a manner that exceeds any right or permission granted ***by the owner*** of the computer or ***computer network***." *Id.* at § 16-9-92(18) (emphasis added); FAC ¶ 445. The Site Terms and Conditions establish that KFHP is the owner of the Site and Apps. It is axiomatic that KFHP cannot act on its own computer network without authority. Plaintiffs' contention that KFHP "did not have full and unfettered authority *over Plaintiffs' communications on their computers and mobile devices*," (Opp'n at 34 (emphasis added)), is irrelevant to the subject matter of the statute and does not change this basic fact. The FAC alleges that Plaintiff submitted information and communications to the Site and Apps, which are owned by KFHP. As a result, Defendants could not have exceeded their authority, and John Doe II's computer theft claim fails as a matter of law.

As to computer invasion of privacy, John Doe II similarly attempts to distract the Court from the conduct that the statute seeks to prohibit. Ga. Code Ann. § 16-9-93(c) does not prohibit the ***disclosure*** of personal information. Rather, it prohibits "[a]ny person who uses a computer or computer network with the intention of examining any . . . medical . . . or personal data relating to any other person with knowledge that such examination is without authority." Ga. Code Ann. § 16-

[13] The Opposition mischaracterizes *Willingham*, stating that the case turned on the plaintiffs' inability to allege future harm, seemingly ignoring the court's holding that "Plaintiffs have not pled that they read, relied upon and, thus, were harmed by Defendant's 'representations' and, even if they could replead such facts, Plaintiffs could, at most, demonstrate only past harm which is not a basis for injunctive relief under the UDTPA." 2013 WL 440702, at *16.

9-93(c). John Doe II alleges that he voluntarily sent data to Defendants, who then disclosed that data to third parties. (FAC ¶¶ 52−57.) This is inadequate. He does not allege that Defendants used a computer or network to examine Plaintiffs' information without authority. In an attempt to shoehorn their deficient allegations within the purview of the statue, Plaintiffs rely on Georgia's general aiding and abetting statute. Ga. Code Ann. § 16-2-20. Plaintiffs, however, have not alleged an aiding and abetting claim, and application of Ga. Code Ann. § 16-2-20 here would transform the CSPA into a disclosure statute. This is clearly not what the legislature intended.[14]

**M. John Doe II Fails to Allege a Violation of the Georgia IIPPA.**

To support his claim that his communications through the Site and Apps "constitute personal or privileged information collected or received in connection with an insurance transaction," (FAC ¶ 458), John Doe II relies exclusively on allegations made in the FAC outlining what Kaiser Plan Members *can* do on the Site and Apps. (Opp'n at 35 & n.26.) However, alleging that ***Kaiser Plan Members*** <u>can</u> conduct insurance transactions through the Site and Apps is not the same thing as alleging that ***John Doe II*** <u>actually</u> engaged in an insurance transaction through the Site and Apps. Courts have rejected similar arguments in the context of the capturing of personal information by tracking technology. *See, e.g.*, *Straubmuller v. JetBlue Airways Corp.*, No. 23-384, 2023 WL 5671615, at *4 (D. Md. Sept. 1, 2023) ("Here, it is dispositive that Plaintiff only alleges that Session Replay Code *could* capture personal information, not that it actually captured Plaintiff's personal information."). The same is true of John Doe II's argument that KFHP—the operator of the Site and Apps—is "the Kaiser entity responsible for the payment of medical services provided to its enrollees." (Opp'n at 35.) That one of KFHP's roles is related to the provision of insurance has no bearing on whether or not John Doe II engaged in communications on the Site and Apps connected to an insurance transaction or whether those communications were subsequently disclosed without authorization to third parties. The claim must be dismissed.

---

[14] Indeed, Ga. Code Ann. §16-9-93(e), dealing with "Computer Password ***Disclosure***," demonstrates that the Georgia legislature explicitly envisioned situations involving the disclosure of information to third parties. That § 16-9-93(c) contains no such reference to the disclosure of information therefore evidences that the legislature chose ***not*** to include such situations as grounds for liability under that section.

**N. Jane Doe III Fails to Allege a Violation of the Maryland WESA.**

"On plain reading, Section 10-410 does not reach out-of-state interceptions." *Sprye v. Ace Motor Acceptance Corp.*, 2017 Md. Cir. Ct. LEXIS 7, at *7 (Montgomery Cnty. Cir. Ct. Sept. 29, 2017). To allege a violation of the WESA, Jane Doe III must allege that communications were ***intercepted in Maryland***. She has not done so. The Opposition asserts that "Jane Doe III resides and accesses the Sites and Apps in West River, Maryland." (Opp'n at 35.) But these allegations are not in the FAC, which pleads only that Jane Doe III resides in Maryland, received medical treatment from Defendants, and regularly uses the Site and Apps. (FAC ¶¶ 29–32.) Jane Doe III does not plead any facts showing that she sent the communications at issue from her home in Maryland or that they were intercepted by the Vendors in Maryland. As a result, this claim fails.

**O. Jane Doe V Fails to Allege a Violation of the Oregon UTPA.**

Jane Doe V does not dispute that Or. Rev. Stat. § 646.607(1) does not have a private right of action. Instead, she argues that Defendants somehow should have known she meant to bring a claim under an entirely different provision of the UTPA. The Oregon legislature has specifically decided that violations of section 646.607 (the section of the UTPA that the FAC contends Defendants violated) can only be prosecuted by the state. *See* MTD at 34–35 (collecting cases). Plaintiffs do not cite to a case where a court found that a violation of section 646.607 can be enforced privately through section 608.638 (or any other section of the UTPA). Instead, Jane Doe V argues that "failure to invoke the proper authority" is permissible. (Opp'n at 36.) Jane Doe V did not invoke improper authority, she deliberately chose to bring a cause of action under section 646.607. She cannot change her mind and amend through the Opposition.[15] Jane Doe V's claim for violation of § 646.607(1) of the Oregon UTPA must be dismissed with prejudice.

**P. Jane Doe IV Fails to Allege a Violation of the VCCA.**

Jane Doe IV's claim for violation of the VCCA fails for the same reason that John Doe II's

[15] Jane Does's cited authority, *Bacon v. Dep't of Hum. Servs.*, No. 22-35142, 2023 WL 2755592 (9th Cir. Apr. 3, 2023), is inapposite. In *Bacon*, the plaintiff asserted a cause of action against the wrong defendant, but subsequently put the correct defendant on fair notice of the claim. Here, Jane Doe V brought a claim under a statute with no private right of action and now claims it was a mistake and is improperly trying to amend by filing an Opposition.

Georgia CSPA claim does. KFHP is the owner of the Site and Apps and a cannot act on its own network without authority. *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 855–56 (E.D. Va. 2018), in which a company exceeded its authorized access on ***NASA's server*** to obtain the trade secrets of one of its competitors, is inapposite because it did not involve allegations—and it does not stand for the proposition—that the *owner and operator* of a website can act without authority on its *own* network. It cannot.

**Q. Jane Doe IV Fails to Allege a Violation of the Virginia IIPPA.**

As with John Doe II's argument regarding the Georgia IIPPA, Jane Doe IV alleges only that ***Kaiser Plan Members*** can conduct insurance transactions through the Site and Apps, not that ***Jane Doe IV*** actually engaged in communications with Defendants through the Site and Apps that were made in connection with an insurance transaction. (Opp'n at 37.) As with John Doe II's claim under the Georgia IIPPA, this claim too must fail.

**R. Jane Doe Fails to Allege a Violation of Washington Consumer Protection Act.**

Jane Doe fails to allege any misrepresentation in connection with ***the sale of any asset or service***. As discussed *supra* in Section IV.G, the ***service*** provided by Defendants is the ***provision of healthcare services***. Jane Doe alleges that Defendants' installation of code and technology provided by the Vendors on the Site and Apps was contrary to representations in the Site Terms and Conditions. However, the Site and Apps are not "assets or services" sold by Defendants. They are merely tools with which Kaiser Plan Members are able to access medical services. Accordingly, Jane Doe alleges misrepresentations in connection with this ***tool***, but not in connection with the actual underlying ***services***. Her claim necessarily fails.

**S. Jane Doe Fails to Allege a Violation of the Washington Privacy Act.**

Plaintiff Jane Doe's Washington Privacy Act ("WPA") claim must be dismissed because (1) she fails to allege a private communication between "two individuals," (2) Defendants did not intercept or record communications, and (3) she fails to plausibly allege an injury. (MTD at 37–39.)

First, Jane Doe does not allege that the intercepted a communication were between her and another ***individual***. She alleges interception of her communications with ***the Site and Apps***. (FAC ¶¶ 528–31.) In the Opposition, Jane Doe argues that she sent messages to another individual, her

healthcare provider, via the Message Center and that Quantum Metric intercepted those messages. (Opp'n at 38.) But the FAC does not allege that ***she*** accessed the Message Center. *See* FAC ¶¶ 86–87. The portion of the FAC that she cites in the Opposition only references ***Plaintiff John Doe, not her***. *Id.* ¶ 98. Thus, by never alleging that ***she*** accessed the Message Center, Jane Doe cannot plausibly allege that Quantum Metric intercepted ***her*** messages sent from the Message Center. More importantly, even if Jane Doe had alleged that she accessed the Message Center, she alleges only that Quantum Metric intercepts "website communications" or "internet communications." *Id.* ¶ 76–80. She does not allege that Quantum Metric intercepted a message that she transmitted to a ***healthcare provider***, only internet communications she made to a ***website***. Jane Doe's allegations are akin to the "geographical location, URLs, [and] search term[]" data transmitted to the automated system in *In re Carrier IQ*, 78 F. Supp. 3d 1051, 1093 (2015). She therefore does not plausibly allege what the WPA requires: a communication between two or more individuals.

Second, to the extent Jane Doe asserts her WPA claim based on an allegation that Defendants intercepted or recorded her communications, her claim fails. Under the WPA, "[l]iability rests with the party recording or intercepting the conversation; ***divulging*** such conversations creates no liability under the statute." *Kearney v. Kearney*, 95 Wash. App. 405, 413 (1999) (emphasis added). Thus, Jane Doe's allegation that Defendants disclosed communications to the Vendors does not subject Defendants to liability. (FAC ¶ 528.) Jane Doe's argument that the code Defendants installed on the website amounts to an interception under the WPA is not supported by the case she relies on, *State v. Roden*, 321 P.3d 1183, 1188–89 (Wash. 2014), which concerned a detective who detective intercepted text message before it reached the intended recipient. Here, again, Jane Doe alleges that she communicated with Defendants' Site and that Defendants then disclosed the communications to the Vendors. (FAC ¶¶ 527–31.)

Third, Jane Doe fails to allege an injury beyond the privacy invasion itself. Jane Doe argues that she has alleged damages in the form of "being deprived of her valuable health information." (Opp'n at 39.) But the FAC contains no allegation that she was "deprived" of her information. Jane Doe merely alleges that her information "has monetary value," and that she has "suffered harm and injury." (FAC ¶¶ 221–24, 311.) Jane Doe thus fails to allege an injury beyond the privacy

invasion itself as well as the requisite injury to her business, person, or reputation required under the statute. Wash. Rev. Code § 9.73.060; *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) (holding that "an invasion of privacy, without more, is insufficient to meet the statutory injury requirements of [the WPA]"). Indeed, the Ninth Circuit has upheld its holding in *Jones* ***four separate times*** since the filing of Defendants' Motion to Dismiss. *See Dornay v. Volkswagen Grp. of Am., Inc.*, 2023 WL 7318487, at *1 (9th Cir. Nov. 7, 2023) ("Plaintiffs' allegation that a violation of the WPA itself is enough to satisfy injury to a 'person' under section 9.73.060, without more, is insufficient to meet the statutory requirement."); *McKee v. Gen. Motors Co.*, 2023 WL 7318690, at *1 (9th Cir. Nov. 7, 2023) (same); *Goussev v. Toyota Motor Sales, U.S.A., Inc.*, 2023 WL 7318082, at *1 (9th Cir. Nov. 7, 2023) (same); *Ritch v. Am. Honda Motor Co.*, 2023 WL 7318741, at *1 (9th Cir. Nov. 7, 2023) (same).

### T. Jane Doe Fails to Allege a Violation of the Washington HCIA.

Jane Doe fails to allege that she complied with the HCIA. And while Jane Doe points to numerous paragraphs from the FAC alleging the disclosure of information that "relates to [Jane Doe]'s health care," *see* Opp'n at 40 (citing FAC ¶126 (lab test results); *id.* ¶ 130 (search for mental health information); *id.* ¶¶ 181–88 (same); *id.* ¶ 209 (shoulder X-ray); *id.* ¶ 210 (mammogram); *id.* ¶ 211 (restless leg syndrome diagnosis)), none of this information "identifies or can readily be associated with" Jane Doe. Indeed, the one piece of information cited in Plaintiffs' Opposition that could—Plaintiff's name, *id.* (citing FAC ¶ 86)—is not alleged to have been ***disclosed*** but only to have been displayed to Jane Doe when she logged in to the Portal. (FAC ¶ 86.) The FAC merely alleges that a certain amount of <u>unidentified</u> "data" was then transferred to one of the Vendors. *Id.* Because Jane Doe does not allege the disclosure of "health care information" within the meaning of the statute, her claim for violation of the HCIA fails.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the FAC in its entirety.

/ / /

/ / /

Dated: February 14, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *__/s/ Wynter L. Deagle__*

WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real, Suite 120
Menlo Park, CA 94025
Telephone: 650.815.2600
Facsimile: 650.815.2601

KARI M. ROLLINS *(Pro Hac Vice)*
krollins@sheppardmullin.com
CHARLES L. GLOVER (*Pro Hac Vice*)
cglover@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
Facsimile: 212.653.8701

NOLAN J. WALTER, Cal Bar No. 325021
nwalter@sheppardmullin.com
KEVIN MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc.