UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-02865-EMC   (PHK)<br><br>**ORDER RESOLVING DISCOVERY DISPUTE LETTER BRIEF DATED APRIL 30, 2024**<br><br>Re: Dkt. 128 |

      This case has been referred to the undersigned for discovery. *See* Dkt. 56. Now before the Court is a joint letter brief, filed on April 30, 2024, which raises seven disputes concerning several of Plaintiffs' document requests. [Dkt. 128]. The Court has attempted to schedule a hearing on these matters but has twice continued the hearing date to accommodate counsels' scheduling issues. *See* Dkts. 156, 161, 169. To avoid further delay, the Court determines that the disputes raised by the Parties in the instant joint letter brief are amenable to resolution without oral argument. Civil L.R. 7-1(b). As discussed below, the Court will hold an in-person hearing with counsel (including lead trial counsel) on July 18, 2024 to address other discovery disputes raised by the Parties. *See* Dkts. 184, 187. At the July 18th Hearing, counsel for the Parties shall be prepared to report on their compliance with this Order.

**LEGAL STANDARD**

      Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy, for purposes of discovery, is broadly defined to encompass "any matter that bears on,

or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.

2

1    1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to
2    carry a heavy burden of showing why discovery was denied.").
3          The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar.*
4    *Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude
5    in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of
6    discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its
7    inherent discretion and authority, the Court has broad discretion in determining relevancy for
8    discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)
9    (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to
10   crafting discovery orders that may expand, limit, or differ from the relief requested. *See*
11   *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to
12   tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may
13   limit the scope of any discovery method if it determines that "the discovery sought is unreasonably
14   cumulative or duplicative, or can be obtained from some other source that is more convenient, less
15   burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## DISCUSSION

17         The Parties argue generally about whether Kaiser has delayed discovery and delayed
18   producing documents. On the actual merits of the instant disputes, Plaintiffs raise seven specific
19   disputes and requests for relief.

20   **I.     Requests for Production Nos. 1 and 8**

21         These RFPs seeks contracts between Kaiser and certain identified third-party companies
22   who are vendors to Kaiser, as well as invoices from such third parties. *See* Dkt. 128-1 at 9-10, 19.
23   Kaiser committed to produce the collected contracts and invoices by May 10, 2024, assuming
24   none of the third parties at issue raised objections by April 30, 2024. [Dkt. 128 at 2, 4]. No third
25   party has filed a motion for a protective order to date. Accordingly, to the extent Kaiser has not
26   yet produced any of these contracts or invoices, the Court **ORDERS** Kaiser to produce them
27   within **three (3) business days** of this Order.
28

## II. Requests for Production Nos. 3, 10, and 11

These RFPs seek a range of documents relating to code and data. RFP 3 seeks summary documents regarding the function, capability, effect, and/or purpose of the third parties' code on certain identified website and apps. *See* Dkt. 128-1 at 12. RFP 10 seeks high-level or summary documents showing the impact of the third parties' code on Kaiser's financial performance. *Id.* at 21. RFP 11 seeks summary documents regarding settings, parameters, or options concerning the types of data that can or cannot be sent to the third parties. *Id.* at 23.

First, Plaintiffs argue that they have identified certain third-party "training materials and performance reports" in a letter dated February 7, 2024, which are allegedly responsive to these RFPs. [Dkt. 128 at 2]. Plaintiffs also argue that Kaiser recently disclosed an internal investigation which allegedly would have included documents responsive to these RFPs. *Id.* Finally, Plaintiffs argue that the Kaiser Technology Risk Office performed an investigation in 2019 relevant to these issues and thus should have documents "readily identifiable" for production. *Id.*

It is unclear from the Parties' briefing how much detail was provided in the February 7th letter. If Plaintiffs have identified the third-party training materials and performance reports by author, recipient, date, title, and/or other detailed identifying information sufficient to allow Kaiser to locate these documents without the need for ESI searches, then Kaiser shall treat these as "go get 'em" requests and shall search for and produce any such readily identifiable training materials and performance reports by no later than **ten (10) calendar days** from the date of this Order.

If Plaintiffs have failed to identify these training materials and performance reports with sufficient identifying information to treat them as "go get 'em" requests, then the Parties are **ORDERED** to meet and confer promptly to determine if these documents can be identified or located readily through the collaborative and reasonable exchange of information (and if so, reach agreement on their production).

With regard to the "recently disclosed internal investigation," Plaintiffs argue that, since August 2023, Kaiser has been preparing for discovery the documents which were collected as part of that investigation. *Id.* To the extent the documents previously collected for that investigation have not yet been produced, the Court **ORDERS** Kaiser to produce any non-privileged documents

4

which were collected previously for that investigation by no later than **fifteen (15) calendar days** from the date of this Order.

With regard to the Kaiser Technology Risk Office's investigation from 2019 and "periodic review" of information allegedly sent to advertisers, to the extent these documents have not yet been produced, the Court **ORDERS** Kaiser to search for, collect, and produce from the Kaiser Technology Risk Office: (1) any non-privileged documents which were collected for that 2019 investigation within **fifteen (15) calendar days** of the date of this Order; and (2) any non-privileged documents constituting the "periodic review" within **thirty (30) calendar days** of the date of this Order.

The Court **ORDERS** the Parties to work cooperatively on any reasonable modification or extension of these deadlines as appropriate by stipulation and proposed Order. The Parties **SHALL NOT** alter any of these deadlines absent a demonstration to the Court that they discussed scheduling issues in good faith through reasonable meet and confers. Any proposed reasonable extensions or modifications of these deadlines shall be submitted to the Court by stipulation and proposed Order demonstrating their good faith and reasonable meet and confers, which the Court may, in its discretion, modify, reject, or approve.

Aside from these three subsets of specifically identified documents, Plaintiffs argue that Kaiser should additionally use "targeted searches not limited to the current proposed list of ESI keywords and custodians" to search for and produce documents responsive to these requests. *Id.* Kaiser argues that these documents do not exist in a central repository and that "targeted searches" are only feasible using new search terms which Kaiser would then run against Kaiser's ESI database. *Id.* at 4. Kaiser argues that Plaintiffs have refused to provide any proposed search terms, and that basically it should not be up to Kaiser to figure out what Plaintiffs are seeking. *Id.* at 4-5.

The Court is disappointed that all counsel here, who are expected to negotiate reasonably and work in good faith in resolving discovery disputes, were unable to propose and negotiate search terms for these documents. Because counsel have apparently been so uncooperative that neither side even tried to propose any search terms to start the negotiations, the Parties have forced

the Court to **ORDER** counsel to undertake the normal type of search term negotiation they should have done without the need for Court intervention.

Within **five (5) business days** of the date of this Order, Plaintiffs shall provide Kaiser with a set of up to three search terms directed to these RFPs.  As the Party seeking the discovery, it is generally expected and customary that Plaintiffs should start the discussions by proposing the search terms directed to the documents they are seeking.  Kaiser shall run these proposed search terms against Kaiser's collected ESI database and shall report on the document hit count statistics (after de-duplication) to Plaintiffs within **five (5) business days** of receipt of the proposed search terms.  As the Party in possession of the documents and ESI database from which discovery is sought, it is generally expected and customary that Kaiser should run test searches using the opposing party's proposed search terms to see if they return a reasonable and mutually agreeable hit count (whether too high or too low).  The Court **ORDERS** the Parties to thereafter meet and confer on whether any modifications to the search terms are reasonably warranted in light of the document hit count statistics.  The Parties shall propose and negotiate any such reasonable modifications and finalize the search terms directed to these RFPs within **five (5) business days** of the disclosure of the hit count results.  Once the search terms are finalized, Kaiser shall run the finalized search terms against Kaiser's ESI database and produce the responsive, non-privileged documents resulting from that search on a rolling basis starting no later than **fifteen (15) calendar days** of the date the search terms are finalized.  Kaiser shall complete any such production within **forty-five (45) calendar days** of the date the search terms are finalized.

The Parties **SHALL NOT** alter any of these deadlines absent a demonstration to the Court that they discussed scheduling issues in good faith through reasonable meet and confers.  Any proposed reasonable extensions or modifications of these deadlines shall be submitted to the Court by stipulation and proposed Order demonstrating their good faith and reasonable meet and confers, which the Court may, in its discretion, modify, reject, or approve.

### III. Requests for Production Nos. 2, 3, 4 and 11

These requests seek Jira "tickets" (or requests for technical modifications) relating to the development and maintenance of the identified websites and apps.  *See* Dkt. 128-1 at 11-12, 14,

23. Kaiser does not dispute the relevance of these Jira tickets. [Dkt. 128 at 5]. The dispute here appears to be based on burden and proportionality, as well as practicality. Kaiser argues that the agreed-upon ESI search terms are ineffective to identify the Jira tickets which are actually responsive to the subject matter of these requests, due to the technical language and code used in Jira tickets. *Id.* Plaintiffs do not dispute that the currently agreed ESI search terms are not practical for searching Jira tickets but argue that Jira tickets can be exported to an Excel spreadsheet. *Id.* at 2. As Kaiser points out, exporting the Jira tickets to a spreadsheet does not cure the issue of how to search among the Jira tickets for those which are actually responsive to the subject matter of these document requests. The Court assumes that Plaintiffs are not seeking the production of every single Jira ticket from Kaiser. Accordingly, as discussed above, it was and is incumbent on Plaintiffs to propose search terms that would, consistent with the terminology used in Jira tickets, target the Jira tickets responsive to these requests. It is equally incumbent on Kaiser to transparently provide hit count statistics, provide sample search results, and disclose data to Plaintiffs which would productively assist in negotiating and, if needed, modify the search terms.

Again, the Court is frankly flabbergasted that counsel were unable to engage in the normal negotiations over search terms that litigators nationwide engage in as a matter of course. Neither side proposed any search terms to the other. Neither side proposed search terms for the Court to consider adopting. The Court is even more disappointed that lead trial counsel for both sides, who should know better, failed to at least narrow this dispute in the mandatory meet and confer of lead trial counsel which this Court requires prior to presentation of any discovery dispute. As with the dispute discussed above, the Court is forced to pull the Parties into a formally ordered process for resolving search term disputes:

Within **<u>five (5) business days</u>** of the date of this Order, Plaintiffs shall provide Kaiser with a set of up to four search terms directed to these RFPs. Again, if Plaintiffs want the Jira tickets, they normally should propose the search terms directed to those Jira tickets they are seeking in discovery. Kaiser shall run these proposed search terms against Kaiser's Jira ticket database and shall report on the hit count statistics to Plaintiffs within **<u>five (5) business days</u>** of receipt of the

7

proposed search terms. Again, as the Party with custody, possession, and control over the documents and ESI, it is incumbent on Kaiser to run searches, transparently share document hit count statistics, and propose reasonable modification to search terms where appropriate. The Court **ORDERS** the Parties to thereafter meet and confer on whether any modifications to the search terms are reasonably warranted in light of the hit count. The Parties shall propose and negotiate any such reasonable modifications and finalize the search terms directed to these RFPs within **five (5) business days** of the disclosure of the hit count results. Once the search terms are finalized, Kaiser shall run the finalized search terms against Kaiser's Jira ticket ESI database and produce the responsive, non-privileged documents resulting from that search (whether exported to an Excel spreadsheet or in some other electronic format agreed to by the Parties) within **thirty (30) calendar days** of the date the search terms are finalized.

The Parties **SHALL NOT** alter any of these deadlines absent a demonstration to the Court that they discussed scheduling issues in good faith through reasonable meet and confers. Any proposed reasonable extensions or modifications of these deadlines shall be submitted to the Court by stipulation and proposed Order demonstrating their good faith and reasonable meet and confers, which the Court may, in its discretion, modify, reject, or approve.

### IV. Request for Production No. 12

This RFP seeks communications with governmental regulators "concerning embedded code and/or cookies" on the identified website or apps. *See* Dkt. 128-1 at 24. Kaiser indicates that it has communicated with the Oregon Attorney General and produced that communication. [Dkt. 128 at 5]. To the extent any additional communications (regarding the same investigation or subject matter) between Kaiser and the Oregon Attorney General exist or occurred after the date of the previously produced communication, the Court **ORDERS** Kaiser to produce any such communications within **three (3) business days** of this Order.

Kaiser indicates it has communicated with "certain state Attorneys General and OCR about a breach" but argues that such communications are not relevant to the surviving claims in the First Amended Complaint. *Id.* The Court notes that Plaintiffs have, as of the date of this Order, filed a Second Amended Class Action Complaint. *See* Dkt. 162. Kaiser provides no information about

what breach those communications are about or how (even if they relate to a breach) they fall outside the scope of discovery in this action. As the Party resisting discovery, Kaiser may not rely on conclusory arguments. *Blankenship*, 519 F.2d at 429; *La. Pac. Corp.*, 285 F.R.D. at 485. Aside from the conclusory argument that these communications are outside the scope of the First Amended Complaint, Kaiser makes no argument that the volume of these communications is so large as to constitute a burden to produce. Nor does Kaiser make any argument or showing that the request for these communications lack proportionality.

Accordingly, the Court **ORDERS** Kaiser to produce all correspondence, emails, and communications between Kaiser and these "certain State Attorneys General and OCR about a breach" within **fifteen (15) calendar days** of the date of this Order.

## V.  Phase I ESI Document Production

The Parties dispute the end date for Kaiser to complete production of documents from Kaiser's ESI Review Set. [Dkt. 128 at 3, 5]. Plaintiffs report that Kaiser made an ESI production on April 1, 2024 and Kaiser represents that it has been making rolling productions. *Id.* Presumably, Kaiser has been working diligently to complete its Phase I ESI production.

Given that almost three months have passed since Kaiser started rolling productions, to the extent Kaiser has not substantially completed its Phase I ESI document production by now, the Court **ORDERS** Kaiser to substantially and materially complete all such production of its Phase I ESI documents by no later than **July 15, 2024**.

The Court further **ORDERS** the Parties to work collaboratively on reaching agreement on any clean up production after this deadline, to the extent needed, by stipulation and proposed Order.

## VI.  Phase II ESI Document Production and Additional Custodians

The Parties dispute whether they should start negotiating additional custodians and search terms and when such discovery should commence. *Id.* The Court notes that the revised case schedule sets the hearing on Kaiser's motion to dismiss the Second Amended Complaint for October 10, 2024 and sets the hearing on Plaintiffs' class certification motion for February 7, 2025. [Dkt. 178]. Fact discovery closes on September 24, 2025. *Id.*

9

In light of this revised schedule, the Court **ORDERS** the Parties to begin meeting and conferring in good faith on these Phase II ESI discovery issues starting after **October 11, 2024**, and further **ORDERS** the Parties to file monthly Discovery Status Reports on the status of these negotiations and progress of Phase II discovery, starting on **November 1, 2024** (unless the Court orders otherwise).

**VII.   Discovery Management Conferences**

Plaintiffs ask the Court to set monthly Discovery Management Conferences for this matter. [Dkt. 128 at 1]. Kaiser argues that such regular discovery status conferences are not necessary at this stage of the case. *Id.* at 5.

To the extent not evident from the discussion above, the Court emphasizes that the instant joint letter brief raises a host of discovery issues, several of which the Court believes experienced counsel should have been able to resolve through diligent, reasonable, and good faith negotiations. The Court also notes that the Parties recently filed two additional joint letter briefs raising a further host of issues. *See* Dkts. 183, 185. At the July 18th Hearing, lead trial counsel shall be prepared to discuss the appropriate timing for the Court to start convening monthly Discovery Management Conferences in this case.

**CONCLUSION**

The Parties and their counsel are again admonished to review and comply with the Court's Guidelines for Professional Conduct at Section 9 on Discovery, this Court's Discovery Standing Order, and the Federal Rules of Civil Procedure, particularly Rules 1 and 26. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("It is expected that discovery will be effectively managed by the parties in many cases.").

The Court is concerned by the apparent lack of effective communication between counsel during the mandatory meet and confers. If the Parties demonstrate an inability to resolve discovery disputes in a reasonable manner consistent with Rules 1 and 26 (as well as this Court's directives and Orders), the Court will consider imposing additional meet and confer procedures for future discovery disputes, including but not limited to requiring any counsel directly involved in any of the meet and confers to meet and confer in person; requiring in-person meet and confers by

10

lead trial counsel regardless of lead counsels' geographic proximity; requiring meet and confers to take place in person at the San Francisco courthouse or other location; requiring in-house counsel or Party representatives (or Parties themselves, if any are natural persons) to attend all meet and confers; the imposition of appropriate sanctions (including monetary sanctions) for failure to adequately and reasonably meet and confer; and/or any other sanction or other procedure the Court deems appropriate in the circumstances.

**IT IS SO ORDERED.**

Dated: June 28, 2024

PETER H. KANG
United States Magistrate Judge