SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
KRISTIN P. HOUSH, Cal Bar No. 286651
khoush@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900
Facsimile:    858.509.3691

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation
Hospitals, and Kaiser Foundation Health Plan of
Washington

*[Additional counsel listed on signature page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, and JANE DOE V, Individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON<br><br>      Defendants. | Case No. 3:23-cv-02865-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>*Filed concurrently with Request for Judicial Notice and Proposed Order, Declaration of Wynter L. Deagle, and Proposed Orders*<br><br>Judge:    Hon. Edward M. Chen<br>Date:     October 10, 2024<br>Time:     1:30 p.m.<br>Court:    5<br><br>District Judge:     Hon. Edward M. Chen<br>Magistrate Judge:     Hon. Peter H. Kang<br><br>SAC Filed:     May 9, 2024<br>Trial Date:     July 20, 2026 |

## NOTICE OF MOTION & MOTION TO DISMISS

PLEASE TAKE NOTICE that, on October 10, 2024, at 1:30 p.m., before the Honorable Edward M. Chen of the United States District Court for the Northern District of California, San Francisco Division, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Kaiser Foundation Health Plan, Inc. ("KFHP"), Kaiser Foundation Hospitals (the "Hospitals"), and Kaiser Foundation Health Plan of Washington ("KPWA") (collectively, "Kaiser" or "Defendants"), will and hereby do, move this Court for an order to dismiss the Second Amended Complaint ("SAC") and all causes of action asserted therein filed against Defendants by Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, and Jane Doe V (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim, including: (i) all claims against KPWA and Hospitals; (ii) all claims to the extent they are based on the allegation that Kaiser allowed third-parties to collect and/or use information for their own benefit; (iii) claims 1, 5, 9, 10, 15, and 18 to the extent they are based on disclosures of information to Dynatrace, Quantum Metric, and Adobe; (iv) claims 1–4, 8–11, 15, 18, and 20–23; and (v) Plaintiffs' prayer for punitive damages.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Kaiser's Request for Judicial Notice, all pleadings and other papers on file in this action, and such other matters as may properly come before the Court.

## ISSUES PRESENTED

1.      Whether Plaintiffs' claims against Defendants should be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and whether dismissal should be with prejudice because amendment would be futile.

2.      Whether Plaintiffs' theory of liability involving Dynatrace, Quantum Metric, and Adobe fails as a matter of law.

3.      Whether Plaintiffs' theory of liability involving Google, Twitter, and Microsoft Bings fails as a matter of law.

4.      Whether Plaintiffs' prayer for punitive damages should be dismissed under Federal Rule of Civil Procedure12(b)(6).

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION & MOTION TO DISMISS ...................................................................1

TABLE OF AUTHORITIES ................................................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

I.     INTRODUCTION...................................................................................................1

II.    FACTUAL BACKGROUND ................................................................................2

    A.     The Court's Motion to Dismiss Ruling. ......................................................2

    B.     Allegations in the Second Amended Complaint. .......................................3

        1.     Kaiser, the Websites, and the Apps. ...............................................3

        2.     Plaintiffs' Use of the Site and Apps. ..............................................3

        3.     Defendants Issued a Notice of Breach in April 2024. ....................4

    C.     The HHS Guidance Relied on by Plaintiffs Was Deemed Unlawful........4

III.   LEGAL STANDARD ...........................................................................................5

IV.    ALL CLAIMS AGAINST HOSPITALS AND KPWA MUST BE DISMISSED. ..............6

V.     PLAINTIFFS HAVE NOT ADEQUATELY PLED AN ENTITLEMENT TO PUNITIVE DAMAGES.......................................................................................8

VI.    CLAIMS BASED ON TRANSMISSION OF DATA TO DYNATRACE, QUANTUM METRIC, AND ADOBE FAIL. ........................................................9

VII.   ALL CLAIMS PREMISED ON PLAINTIFFS' THEORY THAT KAISER KNEW AND APPROVED THE USE OF PLAINTIFFS' INFORMATION BY GOOGLE, MICROSOFT BING, AND TWITTER FOR THEIR OWN PURPOSES FAIL. ...............12

VIII.  ALL CLAIMS AGAINST DEFENDANTS FAIL FOR ADDITIONAL REASONS...........................................................................................................15

    A.     Claim One: Plaintiffs Still Fail to State a Claim for Violation of the Federal Wiretap Act. ...............................................................................15

    B.     Claim Two: Plaintiffs Again Fail to State a Claim for Violation of CIPA. .............17

    C.     Claim Three: Plaintiffs Still Fail to State a Claim for Intrusion upon Seclusion. ..................................................................................................17

    D.     Claim Four: Plaintiffs Fail to State a Claim for Invasion of Privacy and Constitutional Right to Privacy. ...............................................................19

    E.     Claim Eight: Plaintiffs Fail to State a Claim for Violation of the CMIA. .............19

F.    Claim Nine: Plaintiffs Fail to State a Claim for Statutory Larceny. ........................20

G.    Claim Ten: Jane Doe II Fails to State a Claim for Violation of the
       DCCPPA. ...........................................................................................................21

H.    Claim Eleven: John Doe II Fails to State a Claim for Violation of the CSPA.........21

I.     Claim Fifteen: Jane Doe IV Fails to State a Claim for Violation of the
       VCCA.................................................................................................................22

J.     Claim Eighteen: Jane Doe Fails to State a Claim for Violation of the WPA..........24

K.    Claim Twenty: Kaiser Did Not Violate the DCCPPA or Breach Notification
       Statute.................................................................................................................25

L.     Claim Twenty One: Kaiser Did Not Violate the Maryland Consumer
       Protection Act......................................................................................................27

M.    Claim Twenty Two: Kaiser Did Not Violate the Oregon Data Breach
       Statute.................................................................................................................28

N.    Claim Twenty Three: Plaintiffs Fail to Allege a Violation of the
       Washington Data Breach Act. ..............................................................................31

IX.   FURTHER LEAVE TO AMEND WOULD BE FUTILE................................................31

X.    CONCLUSION ............................................................................................................32

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Achal v. Gate Gourmet, Inc.*
    114 F. Supp. 3d 781 (N.D. Cal. 2015) ..................................................................... 9

5

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*
    No. 2:16-cv-00148, 2022 WL 398645 (D. Nev. Feb. 9, 2022) ............................... 29

6

7

*American Hospital Association, et al. v. Xavier Becerra, et al.*
    No. 4:23-cv-01110, -- F. Supp. 3d --, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ............ 5

8

9

*Ardds v. Pizano*
    No. 15-cv-00686, 2016 WL 3996990 (N.D. Cal. July 26, 2016) ..................................... 15, 16

10

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .......................................................................................... 5

11

12

*Attias v. CareFirst, Inc.*
    365 F. Supp. 3d 1 (D.D.C. 2019) ....................................................................... 21

13

*Bass v. First Pacific Networks, Inc.*
    219 F.3d 1052 (9th Cir. 2000) ............................................................................. 8

14

15

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................................ 5

16

17

*Caro v. Weintraub*
    618 F.3d 94 (2d Cir. 2010) ............................................................................... 16

18

*City of Carlsbad v. Shah*
    850 F. Supp. 2d 1087 (S.D. Cal. 2012) ............................................................... 8

19

20

*Doe v. Meta Platforms, Inc.*
    No. 22-cv-03580, 2023 WL 5837443 (N.D. Cal. Sep. 7, 2023) ............................ 20

21

22

*Esparza v. Gen Digit. Inc.*
    No. CV 21-1188, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .............................. 18

23

*Ferco Enters., Inc. v. Taylor Recycling Facility LLC*
    No. 05-02980, 2007 WL 9701361 (N.D. Ga. Oct. 16, 2007) ................................ 22

24

25

*In re Gilead Scis. Sec. Litig.*
    536 F.3d 1049 (9th Cir. 2008) ............................................................................. 5

26

27

*Grimberg v. United Airlines, Inc.*
    No. CV 22-8191, 2023 WL 3431912 (C.D. Cal. Feb. 27, 2023) ............................ 9

28

*Gross–Haentjens v. Tharp*
    38 Or.App. 313 (1979) ................................................................................. 29

*Hill v. Novartis Pharm. Corp.*
    No. 1:06-cv-00939-AWI-DLB, 2012 U.S. Dist. LEXIS 38516 (E.D. Cal. Mar. 20,
    2012) ............................................................................................................... 8

*Horton v. Nelson*
    252 Or. App. 611 (2012) ........................................................................ 29, 30

*Huong Hoang v. Amazon.com, Inc.*
    No. C11-1709, 2012 WL 1088165 (W.D. Wash. Mar. 28, 2012) ..................... 24

*Int'l Medcom, Inc v. S.E. Int'l, Inc*
    No. C 13-05193, 2014 WL 262125 (N.D. Cal. Jan. 23, 2014) .......................... 7

*Katz-Lacabe v. Oracle Am., Inc.*
    No. 22-cv-04792, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) ...................... 17

*Lazy Y Ranch LTD v. Behrens*
    546 F.3d 580 (9th Cir. 2008) ........................................................................ 13

*McCluskey v. Hendricks*
    No. CV 21-1188, 2021 WL 6773140 (C.D. Cal. Nov. 17, 2021) ...................... 18

*In re Meta Pixel Healthcare Litig.*
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................... 16

*In re Meta Pixel Tax Filing Cases*
    No. 22-cv-07557, 2024 WL 1251350 (N.D. Cal. Mar. 25, 2024).................. 20, 21

*Metzler Inv. GMBH v. Corinthian Colls., Inc*.
    540 F.3d 1049 (9th Cir. 2008) ................................................................. 13, 28

*Mikulsky v. Bloomingdale's, LLC*
    No. 3:23-CV-00425, 2024 WL 337180 (S.D. Cal. Jan. 25, 2024)................... 19

*In re Nexus 6P Prods. Liab. Litig.*
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ............................................................ 6

*Patton v. Experian Data Corp.*
    No. SACV 17-01559, 2018 WL 6190349 (C.D. Cal. Jan. 23, 2018)................... 29

*Praegitzer Indus., Inc. v. Rollins Burdick Hunter of Oregon, Inc.*
    129 Ore. App. 628, 632 (Or. Ct. App. 1994) .................................................. 29

*Roby v. McKesson Corp.*
    47 Cal. 4th 686 (2009), *as modified* (Feb. 10, 2010) ..................................... 8

*Rodriguez v. Sony Comput. Entm't Am., LLC*
    801 F.3d 1045 (9th Cir. 2015)............................................................................... 14

*Scannell v. County of Riverside*
    152 Cal. App. 3d 596 (1984)..................................................................................... 9

*Slack v. Int'l Union of Operating Eng'rs*
    No. C-13-5001, 2014 WL 4090383 (N.D. Cal. Aug. 19, 2014)................................ 7

*Sprewell v. Golden State Warriors*
    266 F.3d 979, 988 (9th Cir. 2001), *as amended* at 275 F.3d 1187 (9th Cir. 2001)............. 6, 14

*Stossel v. Meta Platforms, Inc.*
    634 F. Supp. 3d 743 (N.D. Cal. 2022) .................................................................. 14

*Sussman v. ABC*
    186 F.3d 1200 (9th Cir. 1999).............................................................................. 16

*Sweet v. Google Inc.*
    No. 17-cv-03953, 2018 WL 1184777 (N.D. Cal. Mar. 7, 2018)............................ 32

*Thomas v. Papa Johns Int'l, Inc.*
    No. 22cv2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ................................ 18

*United States v. Mize*
    No. 1:19-CR-00153-3-NODJ-BAM, 2023 U.S. Dist. LEXIS 229192 (E.D. Cal. Dec. 26, 2023)...................................................................................................... 11

*In re Vantive Corp. Secs. Litig.*
    283 F.3d 1079 (9th Cir. 2002)............................................................................... 31

*Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*
    No. 2:12CV701, 2013 WL 2147478 (E.D. Va. May 14, 2013) ....................... 23, 24

*Wilson v. S. Cal. Edison Co.*
    234 Cal. App. 4th 123 (2015)................................................................................... 9

*Xerox Corp. v. Far Western Graphics, Inc.*
    No. C-03-4059, 2004 WL 2271587 (N.D. Cal. Oct. 6, 2004).................................. 9

*Zetz v. Bos. Sci. Corp.*
    644 F. Supp. 3d 684 (E.D. Cal. 2022) .................................................................... 8

*Zheng-Lawson v. Toyota Motor Corp.*
    No. 17-cv-06591, 2018 WL 2298963 (N.D. Cal. May 21, 2018) ............................ 7

*Zody v. Microsoft Corp.*
    No. 12-cv-00942, 2012 WL 1747844 (N.D. Cal. May 16, 2012) ............................ 7

1

Statutes

2   Civ. Code § 3294(a) ........................................................................................................ 8

3   Civ. Code § 3294(b) ........................................................................................................ 9

4   Civ. Code § 3294(c)(2) ..................................................................................................... 8

5   D.C. Code § 28-3851(1B) ............................................................................................... 26

6   D.C. Code § 28-3851(3)(A) ............................................................................................ 26

7   D.C. Code § 28-3851(3)(A)(1)(V) .................................................................................. 26

8   D.C. Code § 28-3852(a) .................................................................................................. 25

9   D.C. Code § 28-3853(b) .................................................................................................. 25

10  Ga. Code Ann. § 16-9-92(18) ......................................................................................... 22

11  Md. Comm. Code § 14-3501(e)(1) .................................................................................. 27

12  Md. Comm. Code § 14-3501(e)(1)(i)(4) ..................................................................... 27, 28

13  Md. Comm. Code §§ 14-3504(a)(1) ................................................................................ 27

14  Md. Comm. Code § 14-3504(b)(1) ............................................................................. 27, 28

15  Md. Comm. Code §§ 14-3504(b)(2), 14-3504(c)(2) ........................................................ 27

16  Or. Rev. Stat. Ann. § 646.638(1) .................................................................................... 29

17  Or. Rev. Stat. Ann. § 646A.602(12)(a) ........................................................................... 30

18  Or. Rev. Stat. Ann. § 646A.602(12)(a)(vi) ...................................................................... 30

19  Or. Rev. Stat. Ann. § 646A.602(12)(a)(vii) ..................................................................... 30

20  Or. Rev. Stat. Ann. § 646A.604 (11)(a) .......................................................................... 29

21  Va. Code Ann. § 18.2–152.2 ........................................................................................... 23

22  Va. Code Ann. § 18.2–152.4 ........................................................................................... 23

23  Wash. Rev. Code Ann. § 9.73.030(1)(a) ......................................................................... 24

24  Wash. Rev. Code Ann. § 19.255.005(2)(a)(i) .................................................................. 31

25  Wash. Rev. Code Ann. § 19.255.005(2)(a)(i)(G) ............................................................. 31

26  Wash. Rev. Code Ann. § 19.255.005(2)(a)(i)(H) ............................................................. 31

27

28

<u>Other Authorities</u>

45 C.F.R. § 164.502(e)(1)(i) ...................................................................................... 11

45 C.F.R. § 164.504(e)(2)(i)(B) ................................................................................ 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

The renewed claims in the SAC should be dismissed with prejudice because Plaintiffs have failed to cure the deficiencies previously identified by this Court, and claims based on Plaintiffs' new theory of liability—that Defendants disclosed Plaintiffs' personal information in exchange for Defendants' alleged no-cost use of certain online technologies—fail as a matter of law. Likewise, the new claims Plaintiffs assert in the SAC (claims 18 and 20–23) are insufficiently pled and should be dismissed. As Plaintiffs unsuccessfully attempted to do in the First Amended Complaint ("FAC"), in the SAC, Plaintiffs once again seek to hold Defendants liable under a sweeping collection of ill-fitted statutes and legal theories for their limited use of commonplace online technologies.

The SAC's core allegation does not support Plaintiffs' claims. Like the FAC, the SAC alleges that Defendants[1] installed code provided by Quantum Metric, Twitter, Adobe, Microsoft Bing, Google, and Dynatrace (the "Vendors")[2] on a website, https://healthy.kaiserpermanente.org (the "Site") and two mobile applications—the Kaiser Permanente App and the Kaiser Permanente Washington App (each an "App" and collectively the "Apps") which caused certain information to be disclosed to those third parties. Based on this allegation, Plaintiffs' new theory of the case is that Defendants used Plaintiffs' information as currency to receive no-cost use of the third parties' technologies (which Plaintiffs previously alleged were free). However, as in the FAC, Plaintiffs admit that they voluntarily and knowingly sent their information to Defendants. Defendants did not steal information, commit an intentional tort, or hire a third party to steal information on their behalf. Instead, as this Court previously recognized, Defendants hired third parties to help monitor activity on the Site and Apps—something Defendants could have legally done themselves. Plaintiffs further rely on new conclusory allegations that are inconsistent with their

---

[1] Plaintiffs have once again improperly lumped together three separate entities under an impermissible "everyone did everything" scattershot approach to the SAC.

[2] In the SAC, Plaintiffs refer to the Vendors as the "Third-Party Wiretappers."

1   previous allegations, contradicted by documents referenced and incorporated into the SAC, and

2   dependent upon a brew of speculation, additional conclusory statements, and illogical inferences.

3   The resulting unsupported assertion that Defendants swapped data for no-cost use of some

4   technologies—which the Court need not and should not accept as true—is meaningless gloss on

5   the claims that this Court has dismissed once and should dismiss again.[3]

6   **II.     FACTUAL BACKGROUND**

7         **A.     The Court's Motion to Dismiss Ruling.**

8         On April 4, 2024, the Court granted in part Defendants' Motion to Dismiss the FAC,

9   dismissing fifteen of the claims asserted and all allegations against two of the defendants—

10  Hospitals and TPMG.  (ECF No. 124 ["MTD Order"].)

11        The Court rejected Plaintiffs' group allegations.  *See id.* at  8–9.  ("Plaintiffs have alleged in

12  conclusory terms only that all Kaiser entities have a hand in the operation of the website and mobile

13  applications.  But the documents attached to the FAC indicate that the website and mobile applications

14  at issue are owned and operated by KFHP only.").  On that basis, the Court dismissed Hospitals and

15  TPMG from the case, and further cautioned that "[i]f Plaintiffs do amend to assert claims against

16  Hospitals and TPMG, Plaintiffs must have a good faith basis, consistent with their Rule 11 obligations,

17  to allege that Hospitals and TPMG engaged in wrongdoing vis-à-vis the operation of the website and

18  mobile applications."  *Id.* at 9.

19        As for Plaintiffs' theories of liability, the Court opined that there is a "significant problem"

20  with the two alleged factual scenarios: "(1) Kaiser used third parties to collect and/or use information

21  for the benefit of Kaiser (essentially, hiring third parties as vendors); and (2) Kaiser allowed third

22  parties to collect and/or use information for the benefit of the third parties themselves (essentially,

23  selling or otherwise giving information to third parties)."  *Id.* at 12.  The first scenario was problematic

24  because the FAC "does not always make clear which third parties fell into which category above. . . .

25  Although Plaintiffs has made many allegations specific to the various third parties, Plaintiffs do not

26  clearly differentiate among the third parties with respect to the categories above."  *Id.* at 11.  Further,

27  _____

[3] The Court previously dismissed 15 out of the 21 claims and all claims against Defendant The
28  Permanente Medical Group, Inc. ("TPMG").  Plaintiffs have dropped TPMG in the SAC.

1   as to scenario two, the Court's "fundamental concern" was that "[e]ven if Plaintiffs sufficiently alleged

2   that all six of the third parties collected and/or used information about Kaiser plan members for the

3   third parties' own benefit, Plaintiffs have not alleged that the third parties did so with the knowledge

4   and/or approval of Kaiser.  In other words, as the FAC is currently pled, Kaiser simply hired the third

5   parties to do work for Kaiser, which exposed the third parties to personal information about members,

6   but there is no indication that Kaiser then signed off (either explicitly or implicitly) on the third parties

7   taking that information and using it for their own purposes (and not solely for Kaiser's use)."  *Id.* at

8   11–12.  The Court dismissed all claims based on that theory of liability.  *Id.* at 12.

9           **B.      Allegations in the Second Amended Complaint.**

10                  **1.      Kaiser, the Websites, and the Apps.**

11          KFHP is a health care plan.  (SAC ¶¶ 49–51.)  Hospitals is a non-profit, public benefit

12  corporation that operates acute care hospitals and medical offices in California, Colorado, Hawaii,

13  Maryland, Virginia, Oregon, Washington, and the District of Columbia.  *Id.* ¶ 52.  KPWA is a

14  health care plan operating in Washington state.  Enrollees in any of the health plans offered by

15  KFHP ("Kaiser Plan Members") have access to the hospitals and medical offices operated by

16  Hospitals, and in Northern California.  *Id.* ¶ 50.  All seven named Plaintiffs are Kaiser Plan

17  Members who each reside and received treatment in a different state.  *Id.* ¶¶ 20–48.  All purported

18  Class Members are also Kaiser Plan Members.  *Id.* ¶ 61.

19          KFHP owns and operates the Site and Apps, through which Kaiser Plan Members and the

20  public can access information and perform certain tasks.  *Id.* ¶ 62.  The Site's publicly accessible

21  pages provide Kaiser Plan Members and the public with general information about health care

22  services, such as locations of doctors and medical facilities and information about health

23  conditions.  *Id.* ¶¶ 62–69.  The Site also includes a secure patient portal which can be accessed by

24  Kaiser Plan Members (the "Portal").  *Id.* ¶ 67.  If they log-in to the Portal or the Apps, Kaiser Plan

25  Members can also perform certain tasks, such as scheduling appointments and reviewing

26  prescriptions or test results.  *Id.* ¶ 69.

27                  **2.      Plaintiffs' Use of the Site and Apps.**

28          Plaintiffs allege that each of them regularly uses the Site and Apps, and have signed into

the Portal. *Id.* ¶¶ 23, 27, 31, 35, 39, 43, 47. Plaintiffs allege that, as a result of their use of the Site and Apps, code supplied by the Vendors was installed on the Site and Apps and that the code permitted Vendors to eavesdrop on Plaintiffs' communications with Defendants. *Id.* at ¶¶ 3–7. They further allege this caused the disclosure of certain information to the Vendors, such as details concerning their interactions with the Site and Apps. *Id.* Plaintiffs also allege—in conclusory terms only—that Defendants used Plaintiffs' information as an "in kind" payment to Google, Microsoft Bing, and Twitter for "free use" of those companies' technology. *Id.* ¶¶ 185–86. Plaintiffs also allege in conclusory fashion that the Vendors used Plaintiffs data for their own purposes. *See, e.g.*, *id.* ¶¶ 196, 314, 377.

### 3. Defendants Issued a Notice of Breach in April 2024.

In April 2024, KFHP notified its Plan Members and regulators of a "privacy breach involving the unauthorized access to certain limited personal information stemming from Kaiser's prior use of certain third-party online technologies on its website and mobile application." (SAC at Exh. A ["KFHP Breach Notice"].) "Kaiser members and patients consent to the collection of their information by these online technologies[,]" but "in the abundance of caution, Kaiser [issued] notices for its prior use of these third-party online technologies because the limited information collected by these technologies about Kaiser members may be considered Protected Health Information ('PHI') under the Health Insurance Portability and Accountability Act ('HIPAA'), pursuant to recent guidance from the Department of Health and Human Services ('HHS')." *Id.* Importantly, the only information ***potentially*** transmitted was: "IP address, name, information that could indicate a member was signed into a Kaiser Permanente account or service, information showing how the member interacted with and navigated through the website or mobile applications, and search terms used in the health encyclopedia." *Id.* "[A]ccount credentials (username and password), Social Security numbers, financial account information, and credit card numbers were not included in the information transmitted." *Id.*

### C. The HHS Guidance Relied on by Plaintiffs Was Deemed Unlawful.

On June 20, 2024, the Northern District of Texas vacated portions of the HHS guidance on the use of online tracking technologies by HIPAA-covered entities—which Plaintiffs have heavily

1    relied upon in both the FAC and SAC.  Specifically, in the SAC, Plaintiffs allege that the

2    guidance, among other things, "explained that health care providers violate HIPAA when they use

3    tracking technologies that disclose an individual's identifying information, even if no treatment

4    information is included and even if the individual does not have a relationship with the health care

5    provider."  (SAC ¶¶ 15–16.)  However, in *American Hospital Association, et al. v. Xavier*

6    *Becerra, et al.*, No. 4:23-cv-01110, -- F. Supp. 3d --, 2024 WL 3075865 (N.D. Tex. June 20, 2024)

7    (attached to Declaration of Wynter L. Deagle as Exh. B) , the court rejected HHS's assertion that

8    when an online technology connects (1) an individual's IP address with (2) a visit to an

9    Unauthenticated Public Webpage that addresses specific health conditions or healthcare providers,

10   that combination of information (the "Proscribed Combination") is subject to restrictions on use

11   and disclosure under HIPAA.  *Id.* at *11 (holding this guidance "facially violates" HIPAA's

12   unambiguous definition of Individually Identifiable Health Information ("IIHI")).  The court

13   further ruled that HHS may only enforce the HIPAA Privacy Rule as it pertains to IIHI, which is

14   limited to Protected Health Information ("PHI") that: (1) relates to the individual's "past, present,

15   or future physical or mental health or condition," their receipt of healthcare, and/or their payment

16   for healthcare; and (2) either directly "identifies" the individual or could reasonably "be used to

17   identify" them.  *Id*. at *12.  The court found that the Proscribed Combination failed to meet these

18   requirements.  Accordingly, the court granted declaratory relief in favor of plaintiffs, declared

19   HHS's guidance regarding the Proscribed Combination unlawful, and granted plaintiffs request for

20   vacatur.  *Id*. at *16.

21   ### III.    LEGAL STANDARD

22          To overcome a motion to dismiss for failure to state a claim under Rule 12(b)(6), a

23   complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

24   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring more than a "sheer possibility,"

25   "naked assertion," "labels and conclusions," or "a formulaic recitation of the elements").  The

26   complaint must also allege a factual basis for each element of each cause of action.  *See Ashcroft*

27   *v. Iqbal*, 556 U.S. 662, 678–79, 687 (2009).  Courts do not "accept as true allegations that are

28   merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*

*Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Nor does the court accept as true allegations that are contradicted by documents attached to the complaint or subject to judicial notice.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *as amended* at 275 F.3d 1187 (9th Cir. 2001); *see* MTD Order at 9 (dismissing claims against TPMG and Hospitals where "documents attached to the FAC indicate that the website and mobile applications are owned and operated by KFHP only").

## IV.   ALL CLAIMS AGAINST HOSPITALS AND KPWA MUST BE DISMISSED.

The claims against Hospitals and KPWA should be dismissed in their entirety because the SAC fails to sufficiently plead any specific facts against them, and once again relies on impermissible group pleading.[4]  The SAC, like the FAC, is based on the alleged disclosure of Plaintiffs' personal information that ensued from their use of the Site and/or Apps.  *See* SAC ¶¶ 1–377.  As the Court noted in the MTD Order, the Site Terms and Conditions state that the Site and Apps are owned and operated exclusively by KFHP.  (MTD Order at 9).  Plaintiffs have not (and cannot) allege anything to the contrary.

For both Hospitals and KPWA, Plaintiffs only allege that they were "involved in the development and operation of the Site and Apps, for example entering into and executing contracts with certain Third Party Wiretappers, such as Quantum Metric, Adobe, and Dynatrace regarding technologies used on the Site and Apps."  *See* SAC ¶¶ 53, 55.  Again, Plaintiffs conflate the two Defendants and simply repeat the same paragraph to make generalized allegations regarding their collective actions.  This is insufficient, as Plaintiffs are required to allege specific facts as to *each* defendant.  *See* MTD Order at 8–9 (holding Plaintiffs' group pleadings were impermissible because "Plaintiffs have alleged in conclusory terms only that all Kaiser entities have a hand in the operation of the website and mobile applications" and "there [was] no indication that the health care providers [] had anything to do with how the website and mobile applications are run"); *see also In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm,

---

[4] The Court previously dismissed Hospitals and The Permanente Medical Group.  Plaintiffs did not name The Permanente Medical Group in the SAC.

1  without resort to generalized allegations against Defendants as a whole."); *Zheng-Lawson v.*

2  *Toyota Motor Corp.*, No. 17-cv-06591, 2018 WL 2298963, at *2 (N.D. Cal. May 21, 2018)

3  (dismissing complaint where plaintiffs sued three separate Toyota entities, but "lump[ed] all three

4  entities together, alleging throughout the pleading that 'Toyota' and 'Defendants' made the

5  actionable misrepresentations").  Plaintiffs cannot escape this deficiency by repeating the same

6  language throughout the SAC and switching out entity names.  This deficiency alone warrants

7  dismissal of the claims against Hospitals and KPWA.

8          Further, Plaintiffs have not cured the deficiencies the Court identified in its MTD Order by

9  alleging the existence of a contract between Hospitals, KPWA, and certain entities.  In the context

10  of pleadings for a breach of contract, courts have routinely found that simply alleging the

11  existence of a contract is insufficient to put a party on notice of their alleged wrongdoing.  *See*

12  *e.g.*, *Int'l Medcom, Inc v. S.E. Int'l, Inc*, No. C 13-05193, 2014 WL 262125, at *4 (N.D. Cal. Jan.

13  23, 2014) ("Simply alleging that a contract exists, without describing anything about that

14  particular contract (*e.g.*, allegations to at least identify the contract), is not enough . . . This fails to

15  put [defendant] on notice what it allegedly did wrong and is not sufficient."); *Zody v. Microsoft*

16  *Corp.*, No. 12-cv-00942, 2012 WL 1747844, at *4 (N.D. Cal. May 16, 2012) ("To the extent that

17  Plaintiff simply alleges a contract existed, that allegation is itself conclusory because the contract's

18  formation and its terms (among other things) are unclear." (citations and quotations omitted)); *see*

19  *also Slack v. Int'l Union of Operating Eng'rs*, No. C-13-5001, 2014 WL 4090383 (N.D. Cal. Aug.

20  19, 2014) (holding in an analogous context that plaintiffs had no standing where they did not

21  provide any factual allegations that identified how the subject contract led to the alleged harm, as

22  "such a conclusory statement—while couched as a statement of fact—is little more than a naked

23  assertion [ ] devoid of further factual enhancement." (citations and quotes omitted)).  Plaintiffs'

24  bare allegation that Hospitals and KPWA have some unspecified contractual relationship with

25  certain third parties at issue in this case does not "identify how the health care providers

26  specifically have engaged in any wrongdoing" nor does it "suggest that the health care providers

27  have the same exact role vis-à-vis the website and mobile applications that KFHP does."  (MTD

28  Order at 9 (dismissing claims against Hospitals and TPMG where Plaintiffs' contended that each

1   Defendants was "fully aware" of the alleged interception.)  Nor does it plead factual allegations

2   that Hospitals and KPWA participated in the operation of the Site or Apps, let alone explain how

3   Hospitals and KPWA "engaged in any wrongdoing vis-à-vis the operation of the website and

4   mobile applications." *Id.*  The claims against Hospitals and KPWA should be dismissed with

5   prejudice.

6   **V.      PLAINTIFFS HAVE NOT ADEQUATELY PLED AN ENTITLEMENT TO**

7   **PUNITIVE DAMAGES.**

8           Plaintiffs fail to allege a basis for punitive damages under claims seven, eight, ten, thirteen,

9   fourteen, twenty, and twenty-one.  As such, the Court should strike Plaintiffs' request for punitive

10  damages in its entirety.

11          Under California law,[5] "[i]n a civil case not arising from the breach of a contractual

12  obligation, the jury may award punitive damages 'where it is proven by clear and convincing

13  evidence that the defendant has been guilty of oppression, fraud, or malice.  *Roby v. McKesson*

14  *Corp.*, 47 Cal. 4th 686, 712 (2009), *as modified* (Feb. 10, 2010) (citing Civ. Code § 3294(a)).[6]

15  Here, the SAC is devoid of *any* allegations that Kaiser acted with oppression, fraud, or malice

16  required for punitive damages.  *See, e.g.*, SAC ¶¶ 537–70, 579–87, 612–44, 707–32.

17  _____

18  [5] When exercising supplemental jurisdiction over state law claims, courts apply the punitive
    damages law of the forum state.  *See City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1111 (S.D.

19  Cal. 2012) (applying California punitive damages law) (citing *Bass v. First Pacific Networks, Inc.*,
    219 F.3d 1052, 1055 n.2 (9th Cir. 2000) ("[A] federal court exercising supplemental jurisdiction

20  over state law claims is bound to apply the law of the forum state to the same extent as if it were
    exercising its diversity jurisdiction.")).  To the extent the Court is inclined to engage in a choice-

21  of-law analysis, courts routinely find that California's punitive damages laws should be applied
    over other states' laws.  *See Zetz v. Bos. Sci. Corp.*, 644 F. Supp. 3d 684, 723 (E.D. Cal. 2022)

22  ("[T]he Court holds that California's punitive damages law governs in this case."); *Hill v. Novartis*
    *Pharm. Corp.*, No. 1:06-cv-00939-AWI-DLB, 2012 U.S. Dist. LEXIS 38516, at *41 (E.D. Cal.

23  Mar. 20, 2012) ("[T]he Court will apply California's punitive damages law.").  Thus, absent a

24  compelling reason to the contrary, the Court should apply California's punitive damages laws for
    the purposes of this Motion to Dismiss.

25
    [6] Under section 3294,  "oppression" is defined as "despicable conduct that subjects a person to
26  cruel and unjust hardship in conscious disregard of that person's rights."  Civ. Code § 3294(c)(2).
    "Malice" means "conduct which is intended by the defendant to cause injury to the plaintiff or
27  despicable conduct which is carried on by the defendant with a willful and conscious disregard of
    the rights or safety of others."  *Id.* § 3294(c)(1).
28

1    Further, when the defendant is a corporation, "the oppression, fraud, or malice must be

2    perpetrated, authorized, or knowingly ratified by an officer, director, or managing agent of the

3    corporation." *Wilson v. S. Cal. Edison Co.*, 234 Cal. App. 4th 123, 164 (2015) (citing Cal. Civ.

4    Code § 3294(b)).  In other words, the law "does not impute every employee's malice, fraud, or

5    oppression to a corporation." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 817 (N.D. Cal.

6    2015) (citations omitted).  "Instead, punitive damages require proof of ratification of such an act

7    among corporate leaders, who are the corporation's officers, directors, or managing agents." *Id.*

8    Accordingly, as corporations, Defendants are "only liable for punitive damages based upon the

9    acts of [their] employees if 'an officer, director, or managing agent' . . . had advance knowledge of

10   the unfitness of the employee and employed him or her with a conscious disregard of the rights or

11   safety of others or authorized or ratified the wrongful conduct for which the damages are awarded

12   or was personally guilty of oppression, fraud, or malice." *Grimberg v. United Airlines, Inc.*, No.

13   CV 22-8191, 2023 WL 3431912, at *3 (C.D. Cal. Feb. 27, 2023) (quoting Cal. Civ. Code §

14   3294(b)).

15   Plaintiffs have not made a single allegation that the supposed oppression, fraud, or malice

16   was perpetrated, authorized, or knowingly ratified by an officer, director, or managing agent of

17   Defendants.  Without those necessary allegations, Plaintiffs cannot recover punitive damages.  *See*

18   *Grimberg*, 2023 WL 3431912, at *5 (dismissing prayer for punitive damages where plaintiff failed

19   to allege corporate ratification); *Scannell v. County of Riverside*, 152 Cal. App. 3d 596, 614 (1984)

20   (striking allegations pertaining to punitive damages where plaintiff failed to plead that acts of the

21   defendant corporation were done with knowledge or under the express ratification of an officer,

22   director or managing agent of the corporation); *Xerox Corp. v. Far Western Graphics, Inc.*, No. C-

23   03-4059, 2004 WL 2271587, *2 (N.D. Cal. Oct. 6, 2004) (striking request for punitive damages

24   based on plaintiff's failure to allege any conduct by defendant corporation's officer, director or

25   managing agent).

26   **VI.    CLAIMS BASED ON TRANSMISSION OF DATA TO DYNATRACE, QUANTUM**

27   **METRIC, AND ADOBE FAIL.**

28   Plaintiffs have again failed to allege that Dynatrace, Quantum Metric, and Adobe

independently used Plaintiffs' personal information for their own benefit with the "knowledge and/or approval of Kaiser." (MTD Order at 11.) And even if they had, the Dynatrace, Quantum Metric, and Adobe online technologies cannot serve as the source of liability for claims one, five, nine, ten, fifteen, and eighteen because those claims identify Twitter, Google, and Microsoft Bing as the third parties to whom information was allegedly disclosed and which serve as the sole basis of the violation. They do not allege transfers to Dynatrace, Quantum Metric, and Adobe. Accordingly, the Court should dismiss all claims in the SAC to the extent they are pled based on the factual scenario that Kaiser allowed Dynatrace, Quantum Metric, and Adobe to collect and/or use information for their own benefit.

In the MTD Order, the Court determined that "Plaintiffs have essentially asserted two different factual scenarios supporting liability: (1) Kaiser used third parties to collect and/or use information for the benefit of Kaiser (essentially, hiring third parties as vendors); and (2) Kaiser allowed third parties to collect and/or use information for the benefit of the third parties themselves (essentially, selling or otherwise giving information to third parties)." (MTD Order at 11.) As to the second scenario, the Court determined "as the FAC is currently pled, Kaiser simply hired the third parties to do work for Kaiser, which exposed the third parties to personal information about members, but there is no indication that Kaiser then signed off (either explicitly or implicitly) on the third parties taking that information and using it for their own purposes (and not solely for Kaiser's use)." *Id.* at 11–12. Accordingly, the Court dismissed all claims based on the allegation that Kaiser allowed third parties to collect and/or use information for their own benefit because "there is no alleged wrongdoing by Kaiser—i.e., that Kaiser knew and/or approved of third parties collecting and/or using information for their own purposes." *Id.* at 12. As to Dynatrace, Quantum Metric, and Adobe, the SAC has not cured this pleading deficiency.

Like the FAC, the SAC also lacks *any* allegation that Dynatrace, Quantum Metric, or Adobe independently used the data at issue in any way. The only allegations regarding Dynatrace, Quantum Metric, and Adobe indicate that they only collected data for Kaiser's benefit and that they did so subject to contractual limitations. As to Dynatrace, Plaintiffs add no new allegations and instead merely repeat their prior facially insufficient allegation that Dynatrace's "Subscription

1   Agreement" states Dynatrace can use "Usage Data."  *Compare* FAC ¶ 199 n.44, *with* SAC ¶ 314,

2   n.80.  However, the very document that Plaintiffs rely upon defines "Usage Data" as technical

3   information about Dynatrace's own services, ***not*** any personal data collected from the Site.  *Id.* at

4   84 n.80.  As to Adobe, Plaintiffs also allege that in 2019, Kaiser became concerned that certain

5   data might not be ***secure*** enough, and therefore increased the potential for a breach.  (SAC ¶¶ 18,

6   149.)  Such allegations do not indicate that Adobe used any data for its own purposes.

7          Furthermore, the SAC also alleges that Kaiser had "Business Associate Agreements" in

8   place with Quantum Metric and Adobe that restricted how those Vendors used personal

9   information and health information.  (SAC ¶ 106 [Quantum Metric]; *id.* ¶ 152 [Adobe].)

10  Accordingly, Plaintiffs have now expressly pleaded that Defendants ***did not*** allow Quantum

11  Metric and Adobe to collect and/or use information for their own benefit.  *See* MTD Order at 12

12  (dismissing claims where there were no allegations that Kaiser "knew and/or approved of third

13  parties collecting and/or using information for their own purposes" and the "Privacy Statement

14  suggests that Kaiser took some steps to guard against such conduct on the part of third parties.").

15  As this Court noted in the MTD Order, HIPAA "has the stated purpose of protecting a patient's

16  right to the confidentiality of his or medical information, *see United States v. Mize*, No. 1:19-CR-

17  00153-3-NODJ-BAM, 2023 U.S. Dist. LEXIS 229192 (E.D. Cal. Dec. 26, 2023)" yet "even

18  HIPAA allows a covered entity to disclose protected information to a 'business associate' in

19  certain circumstances.  *See* 45 C.F.R. § 164.502(e)(1)(i) ('A covered entity may disclose protected

20  health information to a business associate and may allow a business associate to create, receive,

21  maintain, or transmit protected health information on its behalf, if the covered entity obtains

22  satisfactory assurance that the business associate will appropriately safeguard the information.');

23  *id.* § 164.504(e)(2)(i)(B) ('The contract may permit the business associate to provide data

24  aggregation services relating to the health care operations of the covered entity')."  (MTD Order at

25  26–27.)

26         Plaintiffs have not alleged that Kaiser knew and/or approved of Dynatrace, Quantum

27  Metric, or Adobe using Plaintiffs' information for their own purposes.  Accordingly, the Court

28  should dismiss all claims based on the allegation that Kaiser allowed Dynatrace, Quantum Metric,

1 | and Adobe to collect and/or use information for their own benefit.

2 |       Even if Plaintiffs had alleged Kaiser knew and/or approved of Dynatrace, Quantum Metric,

3 | and Adobe collecting and/or using information for their own purposes—they have not—the

4 | Dynatrace, Quantum Metric, and Adobe online technologies still cannot serve as the basis for

5 | liability, under either factual scenario,[7] for claims one, five, nine, ten, fifteen, and eighteen.  The

6 | SAC defines six third parties—Twitter, Google, Microsoft Bing, Dynatrace, Quantum Metric, and

7 | Adobe—as purported "Third Party Wiretappers."  (SAC ¶ 4.)  Claims one, five, nine, ten, fifteen,

8 | and eighteen of the SAC, however, are exclusively brought based on alleged transfers of data to

9 | Twitter, Google, and Microsoft Bing.  *See, e.g.*, SAC ¶¶ 419–20, 490, 576, 653, 690.

10 | Consequently, regardless of whether Kaiser used third parties to collect and/or use information for

11 | their own benefit or solely for the benefit of Kaiser, the SAC's allegations pertaining to the

12 | Dynatrace, Quantum Metric, and Adobe online technologies cannot serve as the basis of liability

13 | for claims one, five, nine, ten, fifteen, and eighteen.

14 |       As the Court previously emphasized in its order, Plaintiffs do "not always make clear

15 | which third parties [fall] into which category [of Plaintiffs' theory of liability]," which presents a

16 | "significant problem."  (MTD Order at 11.)  Plaintiffs' attempts to cure this problem have now

17 | established that the Dynatrace, Quantum Metric, and Adobe online technologies cannot serve as

18 | the basis for Kaiser's liability for claims one, five, nine, ten, fifteen, and eighteen because those

19 | claims specifically name Twitter, Google, and Microsoft Bing as the third parties to whom

20 | information was allegedly improperly disclosed.  Accordingly, the Court should dismiss claims

21 | one, five, nine, ten, fifteen, and eighteen to the extent Plaintiffs seek to recover based on any

22 | transfers to Dynatrace, Quantum Metric, or Adobe.

23 | **VII.  ALL CLAIMS PREMISED ON PLAINTIFFS' THEORY THAT KAISER KNEW**

24 |               **AND APPROVED THE USE OF PLAINTIFFS' INFORMATION BY GOOGLE,**

25 |

---

26 | [7] The two factual scenarios recounted by the Court in the MTD Order are: "(1) Kaiser used third
parties to collect and/or use information for the benefit of Kaiser (essentially, hiring third parties

27 | as vendors); and (2) Kaiser allowed third parties to collect and/or use information for the benefit of
the third parties themselves (essentially, selling or otherwise giving information to third parties)."

28 | (MTD Order at 11.)

SMRH:4876-5503-5327
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**MICROSOFT BING, AND TWITTER FOR THEIR OWN PURPOSES FAIL.**

Plaintiffs have also failed to allege facts that Google, Microsoft Bing, and Twitter independently used Plaintiffs' personal information for their own benefit with the "knowledge and/or approval of Kaiser." (MTD Order at 11.) The SAC's allegations regarding Kaiser's knowledge and approval are contradictory, conclusory, and based on unreasonable inferences, and should be disregarded by the Court. To the extent Plaintiffs have attempted to plead claims based on the allegation that Kaiser allowed Google, Microsoft Bing, and Twitter to collect and/or use information for their own benefit, those claims fail and must be dismissed.

As discussed herein, in its MTD Order, the Court dismissed all claims that were based on the factual scenario that "Kaiser allowed third parties to collect and/or use information for the benefit of the third parties themselves (essentially, selling or otherwise giving information to third parties)" because "there is no alleged wrongdoing by Kaiser—*i.e.*, that Kaiser knew and/or approved of third parties collecting and/or using information for their own purposes." (MTD Order at 11–12.) As to Google, Microsoft Bing, and Twitter, Plaintiffs now attempt to cure this deficiency by alleging in the SAC that that Defendants allowed these third parties to collect and use Plaintiffs' information for their own purposes in order to obtain the Google, Microsoft Bing, and Twitter online technologies for free. (SAC ¶¶ 188, 420, 490 (alleging Kaiser used Plaintiffs' information as an "in kind" payment for use of Twitter, Google, and Microsoft's technology).) These allegations still do not satisfy Plaintiffs' pleading obligations.

First, as to Google, these allegations are directly contradicted by the Google Cloud Master Agreement referenced in paragraph 233 of the SAC (attached to the Declaration of Wynter L. Deagle as Exhibit A).[8] *See Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (courts "need not accept as true allegations contradicting documents that are referenced in the complaint"). The Google Cloud Master Agreement specifically outlines the fees Google charges for use of its services—contradicting Plaintiffs' allegations that Defendants use Plaintiffs'

---

[8] In ruling on a motion to dismiss, a court may consider "materials incorporated into the complaint by reference . . . ." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

1    information to make "in kind payments" for Google's services.

2          Second, Plaintiffs' allegations are also contradicted by their allegations in the FAC,

3    namely that "Google, Microsoft Bing, and Twitter do not charge to use their services because they

4    are able to generate billions of dollars in revenue each year by selling targeted advertising," (FAC

5    ¶ 135,) and thus should be rejected.  *See Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d

6    1045, 1054 (9th Cir. 2015) ("An amended complaint should aver additional allegations that are

7    consistent with the challenged pleading and that do not contradict the allegations in the original

8    complaint.").  It is implausible that Kaiser needed to use Plaintiffs' information as an "in kind"

9    payment to receive free use of Twitter, Google, and Microsoft's technology (as alleged in the

10   SAC) when that technology is already completely free for everyone (as alleged in the FAC).[9]

11         Plaintiffs' speculation that Defendants use Plaintiffs' information as an "in kind payment"

12   is not supported by any reasonable inferences, let alone actual facts.  It is unreasonable to assert—

13   without any factual support—that Defendants orchestrated a scheme to use Plaintiffs' information

14   to pay for services which Plaintiffs previously asserted are already free.[10]  The Court should reject

15   these conclusory allegations which are based solely on unreasonable inferences.  *See Sprewell v.*

16   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[A] court need not blindly accept

17   conclusory allegations, unwarranted deductions of fact, and unreasonable inferences."); *Stossel v.*

18   *Meta Platforms, Inc.*, 634 F. Supp. 3d 743, 755 (N.D. Cal. 2022) ("[A] court is not required to

19   accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

20   unreasonable inferences.").

21         Finally, Plaintiffs allege that Google disclosed to Plaintiffs in discovery that Google ***did***

22

---

[9] In addition, the new allegations within the SAC are internally inconsistent.  Plaintiffs' new
narrative is that Defendants were intentionally disclosing Plaintiffs' information to receive free use
of online technology.  But the actual allegations in the SAC show that Defendants were just trying
to provide better healthcare services to members.  For example, paragraph 143 demonstrates that
Defendants were using the technology to provide members with email and text reminders to get a
flu shot.  There are no non-conclusory allegations about Defendants, or any third party, actually
misused Plaintiffs' information.

[10] As discussed in Sect. VI, Plaintiffs also do not even attempt to allege that Adobe, Dynatrace, or
Quantum Metric used data for their own purposes.

1    ***not use Kaiser Members' information for its own purposes***, and then claim this fact somehow

2    supports a conclusion that Google must have used Kaiser Members' information for its own

3    purposes.  (SAC ¶¶ 234–35.)  The Court should reject this attempt to create something from

4    nothing.

5         With regard to Microsoft Bing and Twitter, Plaintiffs fail to allege any facts, and instead

6    simply repeat the same conclusory statement that these parties used data "for their own purposes"

7    throughout the SAC.  As the Court recognized in the MTD Order, this is insufficient.  (MTD

8    Order at 12 (dismissing claims based on the factual theory that Kaiser allowed third parties to

9    collect and/or use information for the benefit of the third parties themselves based on the Court's

10   "fundamental concern" that "[e]ven if Plaintiffs sufficiently alleged that all six of the third parties

11   collected and/or used information about Kaiser plan members for the third parties' own benefit,

12   Plaintiffs have not alleged that the third parties did so with the knowledge and/or approval of

13   Kaiser.  In other words, as the FAC is currently pled, Kaiser simply hired the third parties to do

14   work for Kaiser, which exposed the third parties to personal information about members, but there

15   is no indication that Kaiser then signed off (either explicitly or implicitly) on the third parties

16   taking that information and using it for their own purposes (and not solely for Kaiser's use).); s*ee*

17   *Ardds v. Pizano,* No. 15-cv-00686, 2016 WL 3996990, at *2 (N.D. Cal. July 26, 2016) (dismissing

18   claims where the "factual allegations are not sufficient to raise a right to relief above the

19   speculative level" (quotes omitted)).  Plaintiffs have not plausibly alleged that Google, Bing, and

20   Twitter independently used Plaintiffs' personal information for their own benefit with the

21   "knowledge and/or approval of Kaiser."  Accordingly, the Court should dismiss all claims in the

22   SAC to the extent they are based on the allegation that Kaiser allowed third parties to collect

23   and/or use information for the benefit of the third parties themselves.

24   **VIII.  ALL CLAIMS AGAINST DEFENDANTS FAIL FOR ADDITIONAL REASONS.**

25        **A.    Claim One: Plaintiffs Still Fail to State a Claim for Violation of the Federal**

26             **Wiretap Act.**

27        Plaintiffs' claim for violation of the Electronic Communications Privacy Act ("ECPA")

28   should be dismissed because the SAC fails to state sufficient facts to plead a crime-tort exception.

1   The Court previously dismissed Plaintiffs' ECPA claim because: (1) Defendants were a party to

2   the communications at issue; (2) Defendants gave consent to the third-party interception; and

3   (3) Plaintiffs failed to sufficiently allege the applicability of the crime-tort exception.  (MTD

4   Order at 13–16.)  Plaintiffs' new allegations, however, do not cure the deficiencies previously

5   identified by the Court—namely, that the interception itself cannot serve as the crime or tort.  *Id.*

6   at 15 (citing *Sussman v. ABC*, 186 F.3d 1200, 1202–03 (9th Cir. 1999)).

7          To fall within the crime-tort exception, the offending party must make the recording with

8   the intent of using the recording to commit an independent crime or tort, such as making a

9   recording to use for blackmail.  Ninth Circuit law is clear that the purported illegal recording must

10  be made "for the purpose of committing some other ***subsequent*** crime or tort."  *Sussman*, 186 F.3d

11  at 1202–03 ("[T]he focus is not upon whether the interception itself violated another law; it is

12  upon whether the purpose for the interception—its intended use—was criminal or tortious.").

13  Further, as the Second Circuit has clarified: "At the time of the recording the offender must intend

14  to use the recording to commit a criminal or tortious act."  *Caro v. Weintraub*, 618 F.3d 94, 99 (2d

15  Cir. 2010) (cited in MTD Order at 15).  "Congress limited the cause of action to instances where

16  one party to the conversation ***deliberately seeks to harm the other participant*** through the

17  information intercepted."  *Id.* (emphasis added).

18         Here, Plaintiffs have not come close to identifying any tortious purpose.  The SAC, alleges

19  that Defendants' "criminal or tortious purpose was to obtain Twitter, Google, and Microsoft

20  Bing's technology at no cost by providing the third parties with Plaintiffs' . . . [PII] and/or PHI,

21  rather than paying for the technology."[11]  (SAC ¶ 426.)  Plaintiffs concede that the interception

22  itself was not criminal or tortious, but then assert that allowing the interception to take place, in

23  exchange for use of the very technology that performed the interception, was a crime or tort.  *Id.* at

24  ¶¶ 420, 426.  As this Court previously recognized, however, an alleged financial gain does not

25  amount to a crime or tort.  *See* MTD Order at 15–16 (citing *In re Meta Pixel Healthcare Litig.*, 647

26

---

27  [11] As discussed above, this theory should be rejected for numerous reasons.  Most relevant here, it
    is unclear why Defendants would need to provide Plaintiffs' information in order to obtain use of
28  technology which Plaintiffs previously alleged was free.

F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts in this district have found that the crime-tort exception . . . is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously.")); *see also Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024) ("Plaintiffs fail plausibly to allege Oracle's underlying motivation in collecting and selling data about internet users was anything other than to generate revenue.").  Plaintiffs' "in kind payment" theory still does not draw any separation between the alleged tort and the interception itself—Plaintiffs have still only identified one act *and one alleged tort: the interception itself*.  This cause of action should be dismissed with prejudice.

**B.     Claim Two: Plaintiffs Again Fail to State a Claim for Violation of CIPA.[12]**

The CIPA claim of John Doe individually must be stayed and all other CIPA claims must be dismissed.  As to John Doe (the only California plaintiff), Defendants have concurrently moved to compel him to arbitration.  Plaintiffs allege no new facts suggesting that John Doe is not bound to his arbitration agreement.  Accordingly, as before, John Doe should be compelled to arbitration.  Moreover, no remaining plaintiff will have standing to assert a CIPA claim.  *See* MTD Order at 20 (holding that "only a California Plaintiff can bring a CIPA claim".)  Specifically, in the MTD Order, the Court applied California's choice of law analysis and held that (1) "'there are material differences between CIPA and the wiretapping statutes of the other 49 states'"; (2) "a true conflict exists because each of the implicated jurisdictions in the instant case has an interest in the application of its own law"; and (3) "'if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce.'"  *Id*. at 19−20 (citations omitted).  The laws and interests of the states have not changed, so the Court's previous conclusion must still hold.  The claims of all non-California Plaintiffs and class members must be dismissed with prejudice.

**C.     Claim Three: Plaintiffs Still Fail to State a Claim for Intrusion upon**

---

[12] Plaintiffs assert a violation of the California Invasion of Privacy Act ("CIPA") on behalf of the Kaiser Operating States Class, or alternatively on behalf of the California Sub-Class, against KFHP and Hospitals.

1    Seclusion.[13]

2        Plaintiffs fail to cure the deficiencies identified by this Court to state a claim for Intrusion

3    upon Seclusion.  The Court previously dismissed this cause of action because Defendants' conduct

4    was, as a matter of law, not highly offensive.  (MTD Order at 27.)  As the Court observed, "all

5    [Defendants] ha[ve] allegedly done is hire third parties to do a job (collect information) that

6    [Defendants] legally could have done [themselves]."  *Id.*  In the SAC, Plaintiffs now allege that

7    Defendants' conduct was highly offensive because: (1) it violated federal and state law; (2) it was

8    done "through deceit;" and (3) privacy polls and studies show that people believe consent is

9    required before information is collected or shared.  (SAC ¶¶ 454–56.)  None of these arguments

10   change the Court's previous analysis.

11       First, Plaintiffs cite no authority in support of this blanket assertion.  In fact, Plaintiffs'

12   previous complaint also alleged that Defendants had broken several state and federal laws, but the

13   Court nevertheless dismissed the intrusion upon seclusion claim.

14       Second, Plaintiffs make only a conclusory allegation that Defendants' conduct was highly

15   offensive, asserting it was done "through deceit" but without further explanation.  Courts have

16   consistently held conclusory allegations that conduct is highly offensive cannot survive a motion

17   to dismiss.  *See Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012, 2024 WL 2060140, at *7 (S.D.

18   Cal. May 8, 2024) ("Plaintiff's other allegations directed to the 'highly offensive' element are

19   conclusory, and do not defeat Defendant's motion." (citations omitted)); *McCluskey v. Hendricks*,

20   No. CV 21-1188, 2021 WL 6773140, at *6 (C.D. Cal. Nov. 17, 2021) ("Plaintiff has not alleged in

21   a more than conclusory manner that somehow accessing the general posts of a private Instagram

22   account would be considered 'highly offensive' to a reasonable person."); *Esparza v. Gen Digit.*

23   *Inc.*, No. CV 21-1188, 2024 WL 655986, at *5 (C.D. Cal. Jan. 16, 2024) ("Plaintiff conclusorily

24   states 'Defendant's actions were highly offensive to all reasonable persons[,]' but fails to explain

25   what actions were highly offensive, [or] why they were offensive.  Likewise, Plaintiff states

26   'Defendant has acted with oppression, fraud, or malice[,]' ***but fails to explain what acts were***

27   ─────────────────────
[13] Plaintiffs assert a claim for Intrusion Upon Seclusion on behalf of the California, District of
28   Columbia, Georgia, Maryland, Oregon, and Washington Sub-Classes against all Defendants.

1   ***oppressive, fraudulent, or malicious***, when those actions took place, ***and why the acts were***

2   ***oppressive, fraudulent, or malicious***." (citations and quote omitted) (emphasis added)).  Plaintiffs

3   have not identified any new conduct, or asserted any new facts, indicating that Defendants' use of

4   third parties to collect data was highly offensive.

5           Third, Plaintiffs' citation to unnamed privacy polls is unavailing because, if anything, that

6   allegation goes to the "reasonable expectation of privacy" element of the intrusion claim.  The

7   reference to privacy polls does not render Defendants' conduct highly offensive—especially when

8   it takes the form of a conclusory allegation.

9           Finally, courts are increasingly unwilling to find an invasion of privacy violation in data

10  collection cases when the plaintiff voluntarily interacted with the defendant's website.  *See, e.g.*,

11  *Mikulsky v. Bloomingdale's, LLC*, No. 3:23-CV-00425, 2024 WL 337180, at *8 (S.D. Cal. Jan. 25,

12  2024) (dismissing intrusion upon seclusion claim in session replay case and recognizing that

13  "[c]ourts have been unwilling to find a cognizable privacy interest in browsing data from users on

14  Defendant's own website").  "This Court agrees with this approach and declines to find a privacy

15  interest in Plaintiff's interactions with Defendants' own website when they choose to use that

16  website" *Id.* (citations omitted).  Here, the Court should similarly find that Plaintiffs cannot state

17  an intrusion upon seclusion claim where they voluntary interacted with KFHP's website and

18  knowingly sent their data, in addition to the reasons described above.  This claim should be

19  dismissed with prejudice.

20         **D.**     **Claim Four: Plaintiffs Fail to State a Claim for Invasion of Privacy and**

21              **Constitutional Right to Privacy.**[14]

22           As the Court previously ruled, this analysis is the same as the intrusion upon seclusion

23  analysis.  (MTD Order at 28–29.)  For the same reasons articulated above, this claim should be

24  dismissed with prejudice.

25         **E.**     **Claim Eight: Plaintiffs Fail to State a Claim for Violation of the CMIA.**[15]

26  _____

27  [14] Plaintiffs assert an invasion of privacy claim under the California Constitution on behalf of the
Kaiser Operating State Classes, or the California Sub-Class, against KFHP and Hospitals.

28  [15] Plaintiffs assert a claim for a violation of the California Confidentiality of Medical Information

1    Previously, "the Court rule[ed] on the CMIA claim just as it ruled on the CIPA claim: only

2 a California Plaintiff may bring a CMIA claim, and, because the Court compelled John Doe to

3 arbitration, there is no California Plaintiff to assert the CMIA claim." (MTD Order at 38.)

4 Defendants have renewed a motion to compel John Doe to arbitration. Assuming that motion is

5 granted, there is no California Plaintiff to assert a CMIA claim, and this cause of action must be

6 dismissed with prejudice.

7          **F.      Claim Nine: Plaintiffs Fail to State a Claim for Statutory Larceny.[16]**

8    The Court previously dismissed this claim because "Kaiser only authorized third parties to

9 collect information for Kaiser's benefit . . . [meaning] there is no 'theft' when Kaiser who has the

10 authority to collect information, hires a third party to do its work." (MTD Order at 40.) Plaintiffs

11 now assert that Defendants committed theft by not disclosing that they were "providing"

12 Plaintiffs' information to third parties in exchange for "free" use of technology products. (SAC ¶

13 576.) As discussed in more detail above, this new theory is an unsupported, conclusory allegation

14 that is based entirely on speculation, and should be rejected.

15    Moreover, this unsupported new theory does not cure the deficiencies previously identified

16 by the Court. "To plausibly state a theft by false pretenses claim, plaintiffs must allege not only

17 that [defendant] made specific false representations to them, but also that plaintiffs transferred

18 their property to [defendant] in reliance on the representation." *Doe v. Meta Platforms, Inc.*, No.

19 22-cv-03580, 2023 WL 5837443, at *15 (N.D. Cal. Sep. 7, 2023) (citation and quotes omitted).

20 There are no allegations that Plaintiffs relied on alleged misrepresentations, that they would not

21 have sent their data absent Defendants' alleged misrepresentations, or that they were otherwise

22 tricked into doing something against their will. (SAC ¶¶ 571–78.) Without clear allegations of

23 reliance, the theft by false pretenses theory must fail. *In re Meta Pixel Tax Filing Cases*, No. 22-

24 cv-07557, 2024 WL 1251350, at *23 (N.D. Cal. Mar. 25, 2024) ("[P]laintiffs do not currently

25 _____

26 Act ("CMIA") against KFHP and Hospitals on behalf of the Kaiser Operating States Class, or the
California Sub-Class.

27 [16] Plaintiffs assert a cause of action for Statutory Larceny Through False Pretenses against KFHP
28 and Hospitals on behalf of the Kaiser Operating States Class, or the California Sub-Class.

1    plead that they actually saw (or relied on) any of the statements by Meta discussed in the

2    complaint.  Absent a misrepresentation and reliance, the theft by false pretense theory fails.”).

3    This claim must be dismissed with prejudice.

4            **G.        Claim Ten: Jane Doe II Fails to State a Claim for Violation of the DCCPPA.[17]**

5            The Court previously agreed with Defendants that DCCPPA claims cannot be based on a

6    breach of contract theory, even if the breach was intentional.  (MTD Order at 41 (citing *Attias v.*

7    *CareFirst, Inc.*, 365 F. Supp. 3d 1 (D.D.C. 2019)).)  In other words, DCCPPA claims must be

8    supported with conduct that amounts to an intentional tort.  *Id.*  Indeed, the Court provided

9    specific instruction to Jane Doe II: “The primary question, then, is whether Jane Doe II has alleged

10   more than just, *e.g.*, a run-of-the-mill breach or an intent to breach at the time of contract

11   formation and has alleged instead something more along the lines of an intentional tort.”  *Id.* at 42.

12   Finding that Jane Doe II had failed to allege an intentional tort, the Court dismissed Jane Doe II’s

13   DCCPPA claim.  *Id.* at 43.

14           In the SAC, Jane Doe II attempts to amend her claim by stating, without providing

15   supporting details, that Defendants obtained “free” use of Google, Microsoft, and Twitter products

16   by allowing those third parties access to her data.  As discussed above, Plaintiffs’ new legal

17   theory, relied on by Jane Doe II here, is conclusory, devoid of factual support, and should not be

18   accepted as true for purposes of this motion to dismiss.  Accordingly, Jane Doe II has offered no

19   new factual allegations to cure the deficiencies previously identified by the Court.

20           Jane Doe II cannot use the DCCPPA as a tool that renders each alleged breach of contract

21   an automatic unlawful trade practice under District of Columbia law.  This claim should be

22   dismissed with prejudice.

23           **H.        Claim Eleven: John Doe II Fails to State a Claim for Violation of the CSPA.[18]**

24

---

25   [17] Jane Doe II asserts a cause of action under the District of Columbia Consumer Protection

26   Procedures Act (“DCCPPA”) on behalf of the District of Columbia Sub-Class against KFHP and
     Hospitals.

27   [18] John Doe II asserts a claim under the Georgia Computer Systems Protection Act (“CSPA”) on

28   behalf of the Georgia Sub-Class against KFHP and Hospitals.

1    In its MTD Order, the Court dismissed John Doe II's CSPA claim, finding that "Plaintiffs

2    failed to adequately allege that Kaiser acted without authority . . . Kaiser simply hired third parties

3    to do work for the benefit of Kaiser which Kaiser legally could have done itself."  (MTD Order at

4    44.)  The same result is dictated with respect to the CSPA claim as pleaded in the SAC.

5    A key element to a CSPA claim is a defendant's use of a computer or computer network

6    *without authority*.  Ga. Code Ann. § 16-9-92(18) (stating that "without authority" means "the use

7    of a computer or computer network in a manner that exceeds any right or permission ***granted by***

8    ***the owner of the computer or computer network***" (emphasis added)).  As Georgia courts have

9    noted, "it is clear that the Georgia Computer Systems Protection Act is focused on computer

10   crimes such as hacking and the spread of viruses" not at all allegedly improper conduct involving

11   a computer.  *See Ferco Enters., Inc. v. Taylor Recycling Facility LLC*, No. 05-02980, 2007 WL

12   9701361, at *31 (N.D. Ga. Oct. 16, 2007).

13   Here, Plaintiffs do not allege that Defendants even used John Doe II's computer or

14   accessed his computer network.  (SAC ¶¶ 27, 61–83, 588–98.)  The SAC makes clear that John

15   Doe II utilized his own devices to access Defendants' network, not the other way around.  *Id.*

16   John Doe II admits this point by alleging that "Kaiser installed *on the Site and Apps*" the code at

17   issue, not that Defendants installed code, or otherwise accessed, Plaintiffs' personal devices or

18   network.  (SAC ¶ 598 (emphasis added)).  John Doe II offers no new factual allegations

19   establishing that Defendants acted *without authority* within the meaning of the CSPA.  This claim

20   should be dismissed with prejudice.

21   **I.    Claim Fifteen: Jane Doe IV Fails to State a Claim for Violation of the**

22   **VCCA.[19]**

23   As with other causes of actions, Jane Doe IV has failed to cure the key deficiencies in her

24   VCCA claim that were identified by the Court in its MTD Order.  Jane Doe IV again fails to

25   allege Defendants acted "maliciously" or "through intentionally deceptive means and without

26   authority."  Accordingly, her VCCA claim must be dismissed.

27   ――――――――――――――

[19] Jane Doe IV asserts a claim for violation of Virginia Computer Crimes Act ("VCCA") on behalf

28   of the Virginia Sub-Class against KFHP and Hospitals.

1    VCCA makes it "unlawful for any person, **_with malicious intent, or through intentionally_**

2    **_deceptive means and without authority_**," to use a computer or computer network to make an

3    "unauthorized copy" of computer data or to "cause to be installed, or collect information through,

4    computer software that records all or a majority of the keystrokes made on the computer of

5    another."  Va. Code Ann. § 18.2–152.4 (emphasis added).  Under the VCCA, "[a] person is

6    'without authority' when he knows or reasonably should know that he has no right, agreement, or

7    permission or acts in a manner knowingly exceeding such right, agreement, or permission."  *See*

8    *Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, No. 2:12CV701, 2013 WL 2147478, at

9    *6 (E.D. Va. May 14, 2013) (quoting Va. Code Ann. § 18.2–152.2).

10    In its MTD Order, the Court dismissed the VCCA claim because Jane Doe IV failed to

11    allege that Defendants had either the requisite malicious intent or that Defendants acted

12    intentionally and without the requisite authority.  (MTD Order at 46.)  The same failures persist in

13    the SAC.  Jane Doe IV alleges that the installation of code and technology provided by the

14    Vendors on the Apps and Site "without authorization and contrary to the Site Terms and

15    Conditions" violates VCCA because Defendants "should have known" that the third parties would

16    use her data for their own purposes based on (1) the information disclosed; (2) the alleged lack of

17    contractual controls in place; and (3) the nature of the technologies at issue.  (SAC ¶ 654.)

18    As an initial matter, Jane Doe IV only asserts conclusory allegations that the Vendors used

19    her data for their own purposes.  However, she never explains on what basis she alleges the

20    Vendors used her data or any other facts supporting that conclusion.  It is absurd to suggest,

21    without any factual support, that Defendants somehow "should have known" that third parties

22    would essentially steal data from Defendants.[20]  Jane Doe IV essentially suggests that, based on

23    the type of data and technology at issue, the burden was on Defendants to *assume* that

24    sophisticated and legitimate third-party companies like Adobe and Google were going to go rogue

25    and misuse information collected for Defendants' benefit.  By that standard, any company that

26    utilizes third-party technology for data collection (nearly every company with a website, including

27

28    ───────────────
[20] While not able to be challenged on a motion to dismiss, to be clear, this did not happen.

1    Jane Doe IV's counsel) is automatically liable under the VCCA and numerous other statutes.

2         Finally, it is impossible for Defendants to use their own computer or computer networks

3    without authority.  *See Se. Wholesale Corp.*, No. 2:12cv701, 2013 WL 2147478, at *6–7 (finding

4    that a party cannot use its own computer network without authority).  The VCCA does not create a

5    cause of action for all alleged misconduct committed with a computer.  *See id.* at *7 ("[T]he

6    Court's review of the VCCA's legislative history suggests that the focus of the law was on

7    hackers.").  The SAC is entirely devoid of allegations of the type of conduct the VCCA is intended

8    to prevent.  This claim should be dismissed with prejudice.

9         **J.    Claim Eighteen: Jane Doe Fails to State a Claim for Violation of the WPA.[21]**

10        The Court should dismiss Jane Doe's claim for violation of the WPA for the same reason it

11   previously dismissed this claim—as a party to the communication, Kaiser cannot be held liable for

12   "interception."  To assert a claim for violation of the WPA, Jane Doe must allege, *inter alia,* that

13   Defendants intercepted or recorded a private communication, between two or more individuals,

14   without consent of the participants.  Wash. Rev. Code Ann. § 9.73.030(1)(a); *Huong Hoang v.*

15   *Amazon.com, Inc.*, No. C11-1709, 2012 WL 1088165, at *5 (W.D. Wash. Mar. 28, 2012).  This

16   Court previously dismissed this claim, holding that Defendants cannot intercept a communication

17   to which they were a party.  (MTD Order at 54); *see also Hoang v. Amazon.com, Inc.*, No. C11-

18   1709, 2012 WL 1088165, at *5 (W.D. Wash. Mar. 30, 2012) (concluding the WPA did not apply

19   because "regardless of what [Defendants] did with [Plaintiff's] information, Defendants were the

20   intended recipients of the communication").  This Court observed that even if Defendants used

21   third parties as agents, Defendants were still a party to the communication, and the data collection

22   was done pursuant to Defendants' directive.  (MTD Order at 54.)

23        Jane Doe's new allegations fail to cure these deficiencies and are inadequately pled.  Jane

24   Doe now alleges that "Kaiser did not simply hire Third Parties to do what it could do itself, [rather

25   the] third parties used the information transmitted and collected by the code for their own and

26   other third parties' own purposes."  (SAC ¶ 690.)  Plaintiffs now also allege that "for several Third

---

27   [21] Jane Doe asserts a cause of action for violation of the Washington Privacy Act ("WPA") against
28   all Defendants on behalf of the Washington Sub-Class.

1  Party Wiretappers, such as Twitter, Google and Microsoft Bing, Kaiser did not even have

2  contracts with them covering the code at issue." *Id.*  Jane Doe's own allegations, however, only

3  conclusively establish that Kaiser was a party of the communications at issue by alleging that she

4  sent all communications at issue directly to Kaiser.  *See* SAC ¶ 286 (alleging that Microsoft Bing

5  was "able to connect the fact that Plaintiff ***Jane Doe had communicated with Kaiser Permanente***

6  about mental health . . . " (emphasis added)).  In addition, Jane Doe's new allegations that the third

7  parties used the information "for their own . . . purposes" is conclusory, devoid of factual support,

8  and should be rejected.[22]  Jane Doe never alleges what the third parties did with her information

9  with any detail, or why she thinks that the third parties used her data.  This claim must be

10  dismissed with prejudice.

11       **K.**     **Claim Twenty: Kaiser Did Not Violate the DCCPPA or Breach Notification**

12                 **Statute.**

13         Jane Doe II's newly-minted claim for violations of the DCCPPA and District of Columbia

14  Security Breach Notification Act, D.C. Code §§ 28-3851 *et seq.* ("Breach Notification Statute")

15  must be dismissed because the information that Jane Doe II asserts was disclosed by Defendants is

16  not "personal information" as defined by the Breach Notification Statute.  Accordingly, that

17  information cannot form the basis for a violation of the DCCPA or Breach Notification Statute.

18         In relevant part, the Breach Notification Statute requires that an entity that "conducts

19  business in the District of Columbia, and who, in the course of such business, owns or licenses

20  computerized or other electronic data that includes personal information, and who discovers a

21  breach of the security of the system," notify any District of Columbia resident whose personal

22  information was included in the breach "in the most expedient time possible and without

23  unreasonable delay."  D.C. Code § 28-3852(a).  Violation of the Breach Notification Statute is an

24  unfair or deceptive trade practice that violates the DCCPPA.  D.C. Code § 28-3853(b).

25         "Personal Information," however, is strictly defined by the Breach Notification Statute.  It

26  

---

27  [22] To the extent Jane Doe alleges that third parties improperly used the information for their own
purposes, she should assert claims against those third parties.  Holding Kaiser liable for the alleged

28  independent conduct of third parties under the WPA is contrary to the law, especially when she
has not plausibly alleged Kaiser knew or approved of the use of the information.

is limited to: (i) an individual's first name, first initial and last name, or any other personal

identifier in combination with one or more of seven specifically enumerated data elements that can

be used to identify a person or the person's information; or (ii) a user name or e-mail address in

combination with a password, security question and answer, or other means of authentication or

any combination of the seven specified data elements that permits access to an individual's e-mail

account.  D.C. Code § 28-3851(3)(A).  Relevant here, the specifically enumerated data elements

include: (1) "medical information," which is defined as "any information about a consumer's

dental, medical, or mental health treatment or diagnosis by a health-care professional," D.C. Code

§ 28-3851(1B); and (2) "health insurance information, including a policy number, subscriber

information number, or any unique identifier used by a health insurer to identify the person that

permits access to an individual's health and billing information."  D.C. Code § 28-

3851(3)(A)(1)(V).

      Applying these definitions, Jane Doe III's claim fails because she has not alleged that her

"Personal Information" was disclosed a part of a breach of the security system.  In the general

allegations of the SAC, Plaintiffs allege that on April 12, 2024, Kaiser made notification to state

and federal agencies.  Plaintiffs incorporate by reference the KFHP Breach Notice.  (SAC ¶ 8.)

The Breach Notice identified information ***potentially*** transmitted as including only an individual's:

"IP address, name, information that could indicate a member was signed into a Kaiser Permanente

account or service, information showing how the member interacted with and navigated through

the website or mobile applications, and search terms used in the health encyclopedia."  (SAC ¶ 9;

KFHP Breach Notice at 1.)  It also confirmed specific types of information that were *not* involved:

"account credentials (username and password), Social Security numbers, financial account

information, and credit card numbers."  (KFHP Breach Notice at 2.)

      The types of information purportedly transmitted do not fall within the categories of

"health insurance information" or "medical information," and is therefore, not Personal

Information that is regulated by the D.C. Breach Notification Statute.  D.C. Code § 28-

3851(3)(A)(1)(V).  Specifically, an IP address, an individual's name, data indicating a member's

login activity on a Kaiser Permanente account or service, interactions and navigation patterns on

KFHP's website or mobile applications, and search terms used in KFHP's health encyclopedia—all fail to constitute health insurance information or dental, medical, or mental health treatment or diagnosis by a health-care professional.

Plaintiff has failed to plead that the potentially transmitted information qualifies as Personal Information under the D.C. Data Breach Statute.  As a result, notice was never required by the Breach Notification Statute and the timing of the notice KFHP provided under HIPAA cannot be a violation of the Breach Notification Statute.  Accordingly, Jane Doe III cannot allege a violation of the DCCPPA as a matter of law and this claim must be dismissed with prejudice.

L.     **Claim Twenty One: Kaiser Did Not Violate the Maryland Consumer Protection Act.**

This claim must be dismissed because Jane Doe III has not alleged that "personal information" was disclosed or that Defendants determined that "Personal Information" has or will be misused.

In relevant part, PIPA requires a business that has discovered or has been notified of a "breach of the security of the system" to conduct a prompt investigation to determine if "Personal Information" has or will be misused.  Md. Comm. Code § 14-3504(b)(1).  If Personal Information has been or will be misused, "the business shall notify the individual of the breach" and that notification "shall be given as soon as reasonably practical after the business discovers or is notified of the breach of a security system."  Md. Comm. Code §§ 14-3504(b)(2), 14-3504(c)(2).  "Breach of the security of a system" means "the unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of the personal information maintained by a business."  Md. Comm. Code §§ 14-3504(a)(1).  "Personal Information," however, is strictly defined by PIPA.  It is limited to "[a]n individual's first name or first initial and last name" in combination with one or more of fourteen specifically enumerated data elements.  Md. Comm. Code § 14-3501(e)(1).  Applying these definitions, Jane Doe III's claim fails.

Jane Doe III alleges that the following enumerated data elements were disclosed: (1) "[h]ealth information, including information about an individual's mental health, "  Md. Comm. Code § 14-3501(e)(1)(i)(4); or (2) "[a] health insurance policy or certificate number or health

insurance subscriber identification number, in combination with a unique identifier used by an insurer or an employer that is self-insured, that permits access to an individual's health information," Md. Comm. Code § 14-3501(e)(1)(i)(4).  (SAC ¶ 724.)  But, as described above in Section L, *supra*, Plaintiffs' allegations do not identify an individual's health information or health insurance policy in combination with a unique identifier as information that was potentially transmitted to third parties.

None of the items listed in the KFHP Breach Notice constitute "health insurance information" or a "health insurance policy number . . . in combination with a unique identifier . . . . that permits access to an individual's health information."  Jane Doe III does not and cannot contend otherwise.  Accordingly, even if notice was required under HIPAA, notice was never required by PIPA.

Even if it were, Jane Doe III's claim is still fatally deficient.  Notice is only required *if* after conducting an investigation, KFHP determines that the personal information "has or will be misused."  Md. Comm. Code § 14-3504(b)(1).  Jane Doe III does not plead that Kaiser's investigation revealed her personal information was misused or would be misused.  Nor can she. The KFHP Breach Notice specifically states "Kaiser Permanente is not aware of any misuse of your information" and "There is no evidence that your information has been misused." (KFHP Breach Notice at 1.)   By incorporating the KFHP Breach Notice into the SAC, Jane Doe III has plead herself out of this claim.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (In ruling on a motion to dismiss, a court may consider "materials incorporated into the complaint by reference . . .").

Accordingly, Jane Doe III has failed to allege a breach of PIPA, which in turn obviates the claim for violation of MDCPA.  As Jane Doe III cannot cure this pleading deficiency, this claim must be dismissed with prejudice.

/ / /

### M.    Claim Twenty Two: Kaiser Did Not Violate the Oregon Data Breach Statute.

Jane Doe V's claim for violations of the Oregon Consumer Information Protection Act ("OCIPA") and Oregon Unlawful Trade Practices Act ("UTPA") should be dismissed because

1   there is no private right of action for data breaches under these statutes.

2   In Oregon, "an individual has no private remedy for a statutory violation unless the statute

3   expressly provides one." *Praegitzer Indus., Inc. v. Rollins Burdick Hunter of Oregon, Inc.*, 129

4   Ore. App. 628, 632 (Or. Ct. App. 1994). Nor can a private right of action be inferred. An implied

5   right can only be conferred to a Plaintiff if a "statute grants him, as a member of the class the

6   statute is designed to protect, the right to recover damages if noncompliance with the statute

7   results in harm of the kind the statute was designed to prevent." *Patton v. Experian Data Corp*.,

8   No. SACV 17-01559, 2018 WL 6190349, at *28 (C.D. Cal. Jan. 23, 2018) (quoting *Praegitzer*

9   *Indus., Inc.*, 129 Ore. App. at 632 (citations and quotes omitted)).

10  As an initial matter, there is no direct private right of action under OCIPA. The statute

11  dictates that "a person's violation of a provision of ORS 646A.600 [Short title] to 646A.628

12  [Allocation of moneys] is an unlawful practice under ORS 646.607 [Unlawful business, trade

13  practices]." ORS 646A.604 (11)(a). Accordingly, Jane Doe V cannot bring a direct claim for

14  violation of OCIPA under OCIPA itself. Instead, Jane Doe V attempts to bring a claim under

15  section 646.638(1) of Oregon's UTPA for engaging in an unlawful business practice in violation

16  of ORS 646.607. Her reliance on ORS 646.638(1) is misplaced. The UTPA makes it unlawful for

17  a person to engage in business practices declared unlawful by ORS 646.607 or ORS 646.608. The

18  UTPA also includes a private enforcement provision, ORS 646.638(1), which allows individuals

19  to enforce certain UTPA violations. ORS 646.638(1); *Horton v. Nelson*, 252 Or. App. 611, 619

20  (2012) (citing *Gross–Haentjens v. Tharp*, 38 Or.App. 313, 316 (1979)). However, "[b]y its terms,

21  ORS 646.638(1) provides a private right of action to enforce violations of ORS 646.608 ***only***."

22  *Horton v. Nelson*, 252 Or. App. at 619 (emphasis added); ORS 646.638(1) ("[A]ny person who

23  suffers any ascertainable loss of money or property, real or personal, as a result of willful use or

24  employment by another person of a method, act ***or practice declared unlawful by ORS 646.608***,

25  may bring an individual action in an appropriate court to recover actual damages or statutory

26  damages of $200, whichever is greater." (emphasis added)).

27  Like in *Horton v. Nelson*, here, Jane Doe V's claim must be dismissed because "only the

28  state can prosecute trade practices declared unlawful by ORS 646.607." 252 Or. App. 611, 619

1  (Or. Ct. App. 2012); *see also Advanced Steel Recovery*, *LLC v. X-Body Equip., Inc.*, No. 2:16-cv-

2  00148, 2022 WL 398645, at *7 (D. Nev. Feb. 9, 2022) ("In addition, 'only the [state of Oregon]

3  can prosecute trade practices declared unlawful by ORS 646.607.'" (quoting *Horton*, 252 Or. App.

4  at 619)).

5       Even if there were a private right of action, Jane Doe V's OCIPA and UTPA claims still

6  fail because Jane Doe V does not—and cannot—allege that there was disclosure of her personal

7  information.  The Oregon Data Breach Statute defines "Personal Information" as limited to: (1)

8  "[a] consumer's first name or first initial and last name in combination with" one of seven

9  specifically enumerated data elements; (2) a "user name or other means of identifying a consumer

10  for the purpose of permitting access to the consumer's account, together with any other method

11  necessary to authenticate the user name or means of identification"; and (3) any of the specified

12  data elements, alone or in combination, if "[e]ncryption, redaction or other methods have not

13  rendered the data element or combination of data elements unusable" and the element or

14  combination of data elements "would enable a person to commit identity theft against a

15  consumer."  Or. Rev. Stat. Ann. § 646A.602(12)(a).  Relevant here, the specifically enumerated

16  data elements include: (1) "[a] consumer's health insurance policy number or health insurance

17  subscriber identification number in combination with any other unique identifier that a health

18  insurer uses to identify the consumer," Or. Rev. Stat. Ann. § 646A.602(12)(a)(vi); and (2) "[a]ny

19  information about a consumer's medical history or mental or physical condition or about a health

20  care professional's medical diagnosis or treatment of the consumer", Or. Rev. Stat. Ann. §

21  646A.602(12)(a)(vii).  Applying these definitions, Jane Doe V's claim fails because she has not

22  alleged that her "Personal Information" was disclosed a part of a breach of the security system.

23       As explained above, the KFHP Breach Notice did not indicate that any individuals' health

24  information or health insurance policy in combination with a unique identifier was potentially

25  transmitted.  An IP address, an individual's name, data indicating a member's login activity on a

26  Kaiser Permanente account or service, interactions and navigation patterns on KFHP's website

27  or mobile applications, and search terms used in KFHP's health encyclopedia fail to constitute

28  health insurance information or a health insurance policy number coupled with a unique

1  identifier.  Jane Doe V has failed to plead that the potentially transmitted information qualifies as

2  personal information under the Oregon Data Breach Statute.

3        Jane Doe V cannot cure either pleading deficiency.  This claim must be dismissed with

4  prejudice.

5        **N.      Claim Twenty Three: Plaintiffs Fail to Allege a Violation of the Washington**

6               **Data Breach Act.**

7        Jane Doe's claim for violations of the Washington Data Breach Act should be dismissed

8  because the information that Jane Doe asserts was disclosed by Defendants does not meet the

9  definition of "Personal Information" as outlined in the Washington Data Breach Statute.  To state

10 a claim for relief under the Washington Data Breach Act, a plaintiff must allege that their personal

11 information was breached.  The Washington Data Breach Act defines Personal Information as

12 including "[a]n individual's first name or first initial and last name in combination with any one or

13 more" of the listed data elements.  Wash. Rev. Code Ann. § 19.255.005(2)(a)(i).  The listed data

14 elements include an individual's "[h]ealth insurance policy number or health insurance

15 identification number," Wash. Rev. Code Ann. § 19.255.005(2)(a)(i)(G), or "[a]ny information

16 about a consumer's medical history or mental or physical condition or about a health care

17 professional's medical diagnosis or treatment of the consumer."  Wash. Rev. Code Ann. §

18 19.255.005(2)(a)(i)(H).

19       Plaintiffs rely exclusively on the KFHP Breach Notice, which does not identify an

20 individual's health information or health insurance policy in combination with a unique identifier

21 as information that was potentially transmitted.  Jane Doe has failed to plead that the potentially

22 transmitted information qualifies as personal information under the Washington Data Breach

23 Statute.  Jane Doe cannot cure this pleading deficiency, and this claim must be dismissed with

24 prejudice.

25 / / /

26 **IX.    FURTHER LEAVE TO AMEND WOULD BE FUTILE.**

27       Dismissal with prejudice is warranted because any amendment would be futile.  *In re*

28 *Vantive Corp. Secs. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).  Plaintiffs have now had multiple

1   chances to state a claim for causes of action 1–4, 8–11, 15, and 18.  Plaintiffs have asserted

2   various legal theories in a contorted effort to bring Defendants' conduct within the purview of

3   inapplicable statutes and laws, but they have failed.  Denial of leave to amend is warranted

4   because Plaintiffs cannot assert any additional facts in good faith that would permit them to

5   properly plead these state causes of action.  *See Sweet v. Google Inc.*, No. 17-cv-03953, 2018 WL

6   1184777, at *10 (N.D. Cal. Mar. 7, 2018) (dismissing claims with prejudice where the "amended

7   complaint failed to cure the deficienc[ies]" previously identified).  For this same reason, as

8   explained herein, claims 20–23 should also be dismissed with prejudice.  As to the CIPA and

9   CIMA claims, there is no standing for the non-California Plaintiffs, and the only California

10  Plaintiff will—once again—be compelled to arbitrate his claims.  Claims 1–4, 8–11, 15, 18, and

11  20–23 must be dismissed with prejudice.

12  **X.     CONCLUSION**

13          For the foregoing reasons, the Court should dismiss with prejudice: (i) all claims asserted

14  against KPWA and Hospitals; (ii) all claims asserted to the extent they are pled based on the

15  factual scenario that Kaiser allowed third parties to collect and/or use information for their own

16  benefit; (iii) claims 1, 5, 9, 15, and 18 to the extent they are based on disclosures of information to

17  Dynatrace, Quantum Metric, and Adobe; (iv) claims 1–4, 8–11, 15, 18, and 20–23; and (v)

18  Plaintiffs' prayer for punitive damages.

19                          **[REST OF PAGE INTENTIONALLY LEFT BLANK]**

20

21

22

23

24

25

26

27

28

1    Dated:  July 3, 2024

2                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                        By              /s/ Wynter L. Deagle

5                                    WYNTER L. DEAGLE, Cal Bar No. 296501
                                     wdeagle@sheppardmullin.com
6                                    KRISTIN P. HOUSH, Cal Bar No. 286651
                                     khoush@sheppardmullin.com
7                                    ANNE-MARIE D. DAO, Cal Bar No. 282632
                                     adao@sheppardmullin.com
8                                    DANE C. BRODY CHANOVE, Cal Bar No. 345843
                                     dbrodychanove@sheppardmullin.com
9                                    12275 El Camino Real, Suite 100
                                     San Diego, California 92130-4092
10                                   Telephone:     858.720.8900
11                                   Facsimile:     858.509.3691

12                                   TENAYA RODEWALD, Cal Bar No. 248563
                                     trodewald@sheppardmullin.com
13                                   1540 El Camino Real, Suite 120
14                                   Menlo Park, CA 94025
                                     Telephone:     650.815.2600
15                                   Facsimile:     650.815.2601

16                                   KARI M. ROLLINS (Pro Hac Vice)
17                                   krollins@sheppardmullin.com
                                     30 Rockefeller Plaza
18                                   New York, New York 10112-0015
                                     Telephone:     212.653.8700
19                                   Facsimile:     212.653.8701

20                                   NOLAN J. WALTER, Cal Bar No. 325021
21                                   nwalter@sheppardmullin.com
                                     KEVIN MURPHY, Cal Bar No. 346041
22                                   kemurphy@sheppardmullin.com
                                     1901 Avenue of the Stars, Suite 1600
23                                   Los Angeles, California 90067-6055
                                     Telephone:     310.228.3700
24                                   Facsimile:     310.228.3701

25                                   Attorneys for Defendants
26                                   Kaiser Foundation Health Plan, Inc., Kaiser
                                     Foundation Hospitals, and Kaiser Foundation Health
27                                   Plan of Washington.

28