UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-02865-EMC   (PHK)<br><br>**ORDER RESOLVING DISCOVERY DISPUTES REGARDING REQUESTS FOR PRODUCTION**<br><br>Re: Dkts. 183, 185, 211, 212 |

    This is a putative class action brought by Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, and Jane Doe V (collectively, "Plaintiffs") against Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc. (collectively, "Kaiser"). *See* Dkt. 44. Plaintiffs allege that Kaiser has unlawfully embedded code in its website, including its patient portal and mobile applications, that allows third-party social media and ad tech companies to intrude upon, read, intercept, and use Plaintiffs' sensitive personal and medical information without Plaintiffs' knowledge and consent. *Id.*

    Now pending before the Court are the Parties' joint letter briefs and supplemental status reports regarding disputes as to Kaiser's responses to Plaintiffs' First Set of Requests for Production ("RFPs") (served on November 6, 2023), Plaintiffs' responses to Kaiser's First Set of RFPs (served on March 21, 2024), and Kaiser's responses to Plaintiffs' Second Set of RFPs (served on June 10, 2024). [Dkts. 183, 185, 211-12]. The Court held a discovery hearing regarding these disputes on July 18, 2024. *See* Dkt. 213. This Order memorializes the verbal rulings made by the Court (incorporated herein by reference) and provides further guidance to the Parties, consistent with the Court's directions on the record at the July 18th Hearing.

**LEGAL STANDARD**

The undersigned has been referred all discovery in this putative class action. *See* Dkt. 57. With regard to the scope of discovery, Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy, for purposes of discovery, is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

This case is still in the precertification stage; Plaintiffs' class certification motion is due February 7, 2025. *See* Dkt. 128. Precertification discovery lies entirely within the Court's sound discretion. *Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). In the context of class certification, discovery should generally be reasonably directed so as to avoid undue burden on the opposing party. *Valentine v. Crocs, Inc.*, No. 22-cv-07463-TNT (PHK), 2023 WL 7461852, at *1 (N.D. Cal. Nov. 10, 2023) (citing *Montano v. Chao*, No. 07-cv-00735-CMA-KMT, 2008 WL

3

5377745, at *3 (D. Colo. Dec. 19, 2008)).  A court in its sound discretion may permit limited and targeted non-burdensome discovery on class certification, where the proponent demonstrates such discovery is in the interests of justice and consistent with the language and spirit of Rule 23.  *Id.* (citing *Mayo v. Hartford Life Ins. Co.*, 214 F.R.D. 465, 469-70 (S.D. Tex. 2002)).  In analyzing precertification discovery disputes, the Court must consider "the need for discovery, the time required, and the probability of discovery providing necessary factual information."  *Frost v. LG Electronics, Inc.*, No. 16-cv-05206-BLF, 2018 WL 11606311, at *4 (N.D. Cal. Mar. 29, 2018) (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)).

The Court notes that, generally, discovery in a putative class action at the precertification stage is limited to certification issues, such as the number of class members, the existence of common questions, typicality of claims, and the representatives' ability to represent the class.  *Oppenheimer*, 437 U.S. at 359.  Although discovery on the merits is usually deferred until it is certain that the case will be allowed to proceed as a class action, "the merits/certification distinction is not always clear" and "the two do overlap."  *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 WL 273188, at *2 (N.D. Cal. Jan. 20, 2015); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (explaining that the "rigorous analysis" under Rule 23(a) often "will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.").  In this case, discovery has not been bifurcated, although it has been phased.  The Parties, and the Court, recognize that there is overlap between class discovery and merits discovery.

## ANALYSIS

### I. Resolved Disputes

As an initial matter, the Parties originally raised certain disputes with the Court regarding Plaintiffs' responses to Kaiser's first set of discovery requests.  [Dkt. 183].  At the July 18th Hearing, the Parties confirmed that they have resolved all of these issues and thus further Court action is not necessary.  *See* Dkt. 212.  Accordingly, the Court **ORDERS** that Dkt. 183 is **RESOLVED**.

4

## II. Phasing of Discovery

Discovery in this matter is phased. The first phase of discovery ("Phase I")—the scope of which comprises "information the Court believes is necessary for meaningful ADR includ[ing] information about class size and affect upon the class, as well as some high level information about damages"—commenced on October 17, 2023. *See* Dkt. 77. Pursuant to the existing Case Management Scheduling Order, all remaining discovery ("Phase II") began on April 1, 2024. *See* Dkt. 107. On June 17, 2024, Kaiser filed a motion to continue the start date for Phase II discovery until December 9, 2024. [Dkt. 171]. That motion remains pending before the presiding District Judge and will likely be addressed at an upcoming Status Conference set for August 6, 2024. *See* Dkt. 207.

In connection with the instant discovery disputes, the Parties report ongoing disagreement as to whether Phase II discovery has commenced, as well as whether certain discovery requests exceed the scope of Phase I discovery. [Dkt. 185 at 1, 3-4]. The Court defers ruling on these issues, given that Kaiser's request to modify the discovery phasing deadlines remains pending before the presiding District Judge. The Parties are **ORDERED** to submit a Joint Status Report to the undersigned after the August 6, 2024 hearing, and by no later than **August 16, 2024**, to report on the effect of the results of that Status Conference on the disputes regarding phased discovery.

## III. Jira Tickets

The Parties report an ongoing dispute concerning Plaintiffs' first set of discovery requests directed at Kaiser's Jira tickets. [Dkt. 211 at 4-5]. In accordance with this Court's previous Order regarding this dispute, Kaiser agreed to produce responsive Jira tickets using 431 agreed upon search terms, including those Jira tickets sufficient to identify when the relevant web-tracking technologies were removed from Kaiser's website and apps. *Id.*; *see* Dkt. 184. However, Kaiser argues it should not be required to produce any Jira tickets that post-date the filing of the Complaint (or even a privilege log for those materials), claiming that they are protected by attorney client privilege and attorney work product doctrine. [Dkt. 211 at 4-5]. Kaiser likewise refuses to produce any Jira tickets that pre-date January 1, 2019 on statute of limitations, relevance, burden, and proportionality grounds. *Id.* At the July 18th Hearing, Kaiser also raised

5

concerns regarding potential HIPPA violations in connection with the disclosure of other Kaiser patients' medical information contained within any Jira tickets which would need to be reviewed for production (and redaction).

Plaintiffs argue that Jira tickets pre-dating 2019 are highly relevant to this case because they provide critical context for the development of the web-tracking technologies at issue, and because at least one of the relevant web-tracking technologies (Adobe) was (according to Plaintiffs based on other discovery) implemented prior to 2019. Plaintiffs argue that it would not be unduly burdensome for Kaiser to produce these Jira tickets because they are contained within a structured database.

As stated at the July 18th Hearing, the Court **ORDERS** Kaiser to supplement its interrogatory responses for purposes of identifying when each of the relevant web-tracking technologies at issue was first added to or implemented on the Kaiser website and apps at issue in this case, where such supplementation shall be served by no later than **August 8, 2024**. The Court further **ORDERS** the Parties, after Kaiser's timely supplementation of these discovery responses, to promptly meet and confer in a transparent manner for purposes of determining an appropriate procedure for searching for and producing a reasonable scope of relevant Jira tickets which encompass the time frame of the decision to, and then the later implementation of, each of the relevant web-tracking technologies based on a reasonable temporal scope surrounding the introduction of each of these technologies. The Parties **SHALL** file a Joint Status Report regarding the outcome of their meet and confers on these issues by no later than **August 16, 2024**. The Parties are **ORDERED** to include in the meet and confers, where appropriate, any team members, outside eDiscovery vendors, or other consultants knowledgeable about the Jira system and Jira tickets to be able to intelligently discuss feasibility and technical implementation of search and production of the Jira tickets consistent with this Order.

To the extent that Kaiser reasonably believes any responsive Jira tickets are privileged, the Court **ORDERS** Kaiser to produce a privilege log for those withheld materials, whether or not the Jira tickets pre-date or post-date the filing of the Complaint. Kaiser shall produce this privilege log timely pursuant to the Parties' agreed protocol on serving privilege logs.

6

To the extent Kaiser reasonably believes any responsive documents contain HIPPA-protected information, the Court expects the Parties to reasonably meet and confer regarding the appropriate manner for handling those materials in accordance with the governing Protective Order and controlling law regarding HIPPA confidentiality.

### IV. Kaiser's Internal Investigation Documents

The Parties next dispute concerns Plaintiffs' discovery requests for all documents collected in connection with Kaiser's internal investigation leading up to the April 12, 2024 data breach notification to government regulators. [Dkt. 185 at 4; Dkt. 211 at 3-4]. Kaiser refuses to produce any of these materials (or even a privilege log), on the grounds that they are privileged and/or protected work product. Kaiser argues that the internal investigation was "inextricably intertwined" with the investigation into the merits of this lawsuit, as both investigations were conducted by Kaiser's lead trial counsel and involved the same protected attorney analyses and/or privileged communications between Kaiser and its counsel. *See* Dkt. 211 at 3.

Plaintiffs, in response, clarify that they are not actually seeking the internal investigation documents which they concede are likely not discoverable. At the hearing on this matter, Plaintiffs committed that they are not seeking a privilege log of work product by Kaiser's outside litigation counsel in this matter, or work product by any Kaiser in-house lawyers. Similarly, Plaintiffs agreed that they are not seeking a privilege log of attorney-client communications between Kaiser's outside litigation counsel and anyone at Kaiser, nor are they seeking a privilege log of attorney-client communications between any Kaiser in-house lawyers and anyone else at Kaiser. Rather, Plaintiffs confirm that they only seek a privilege log regarding documents generated by Kaiser's non-attorney employees or third-party consultants in connection with Kaiser's internal investigation so that they can determine as an initial step what is being withheld and whether there is a dispute over the assertion of work product by these non-lawyers.

As stated at the July 18th Hearing, the Court **ORDERS** Kaiser to produce a categorical privilege log for responsive internal investigation documents generated by non-attorney Kaiser employees (and, if any documents found during such review are determined not to be subject to the work product doctrine, any subsequent production in connection therewith) by no later than

**September 13, 2024**. Per Plaintiffs' admission, Kaiser is not required to log any documents post-dating the Complaint involving communications between Kaiser personnel and their outside or in-house counsel, or containing attorney work product, relating to the internal investigation.

## V.      Organizational Charts

Plaintiffs seek documents relating to the organizational makeup and reporting structure for all Kaiser employees with any involvement in the development of third-party code. [Dkt. 185 at 3]. Organizational charts are typically the subject of discovery, to the extent they exist. The Court **FINDS** that such charts are within the scope of relevance and that producing such charts is proportional because only one non-redundant copy of each responsive chart need be produced. Searching for and producing responsive charts is not argued to be burdensome. As stated at the July 18th Hearing, the Court **ORDERS** Kaiser to produce responsive, non-duplicative organizational charts (to the extent such materials exist) covering a period from January 1, 2019 through July 18, 2024, by no later than **September 13, 2024**.

## VI.     Miscellaneous Matters

A Further Discovery Management Conference ("DMC") is **SET** for **September 24, 2024 at 1:00 p.m.** in the San Francisco courthouse, Courtroom F, 15th Floor before this Court. The Court **ORDERS** the Parties' lead counsel for discovery, all counsel knowledgeable about discovery disputes that are ripe for the Court's resolution or knowledgeable about issues raised in the DMC Status Report to be discussed, and all counsel involved in the meet and confers regarding such discovery disputes to appear in person at the DMC. The Court encourages the Parties to assign less experienced attorneys (such as associates or attorneys with fewer than seven years of experience) for oral argument at any hearings, including the DMC. *See* Court's Standing Discovery Order at Section I ("Practice Development for Members of the Bar").

In advance of the DMC, and by no later than **September 16, 2024**, the Parties shall file a Joint Status Report on Discovery which shall address: (1) the status of discovery; (2) the Parties' progress in meeting discovery deadlines (including deadlines set by Court order or directive); (3) discovery disputes which are ripe for (and for which the Parties request) resolution; (4) discovery issues which the Parties are still meeting and conferring on and which do not presently require

Court action; and (5) any other issues or obstacles to discovery the Parties have encountered which would risk impacting the overall discovery schedule.

## CONCLUSION

By this Order and for the reasons discussed herein, the Court **RESOLVES** the disputes raised by the Parties in Dkts. 183, 185, 211, and 212.  To the extent the Parties raised new related disputes at the July 18th Hearing, those disputes are either **RESOLVED** as stated at the hearing and as set forth herein, or were withdrawn at the July 18th Hearing.

**IT IS SO ORDERED.**

Dated:  July 23, 2024

_____
PETER H. KANG
United States Magistrate Judge