UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOES 1-5, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-02865-EMC   (PHK)<br><br>**DISCOVERY MANAGEMENT ORDER NO. 1 FOLLOWING DISCOVERY MANAGEMENT CONFERENCE OF OCTOBER 18, 2024**<br><br><u>Upcoming DMC Dates:</u><br>November 15, 2024 at 2:00 pm<br>December 17, 2024 at 1:00 pm<br>January 24, 2024 at 2:00 pm |

On October 18, 2024, this Court held a Discovery Management Conference ("DMC") in the above-captioned matter regarding the status of discovery. *See* Dkt. 242. This Order memorializes and provides further guidance to the Parties, consistent with the Court's directions on the record at the October 18th DMC, regarding the deadlines and directives issued by the Court during that hearing (all of which are incorporated herein by reference).

### I.    Kaiser's Response to Interrogatory No. 1

The Parties report a dispute concerning the adequacy of Kaiser's response to Plaintiffs' Interrogatory No. 1 ("ROG 1"). [Dkt. 240]. ROG 1 asks Kaiser to: "Identify by member number and state of residence all Kaiser Plan Members who logged into the following with the use of a username and password, and provide all dates when each such Kaiser Plan Member logged into: (a) the Portal on the Kaiser Permanente website; (b) the Kaiser Permanente App; and (c) the Kaiser Permanente Washington App." *Id.* at 4. Kaiser has thus far agreed to produce "the aggregate number of member accounts the regions of Georgia, Oregon, Washington, Virginia,

Maryland, and the District of Columbia (*i.e.,* states from which there is a named representative who is not subject to an arbitration clause), where there was any login to an account via the Site or Apps between June 9, 2019 and November 13, 2023—the longest applicable statute of limitations," broken down by state and year. *Id.* at 6.

Plaintiffs argue that Kaiser's response with respect to ROG 1 is inadequate. *Id.* at 4. Plaintiffs argue that they are entitled to personally identifying information (either MRN or GUID) and specific login dates for each Kaiser Plan Member nationwide, rather than just the aggregate data for certain states. *Id.* Plaintiffs argue that they need this information to calculate class-wide statutory damages. *Id.* Specifically, Plaintiffs reference three statutes under which they bring claims—the Federal Wiretap Act, 18 U.S.C. §§ 2150, *et seq.*, which provides for statutory damages in the amount of up to $10,000 or $100 per day of the violation, whichever is greater; and two state statutes, the Maryland Wiretapping and Electronic Surveillance Act, Md. Code Ann., Cts. & Jud. Proc. §§ 10-401, *et seq.*, and the Washington Privacy Act, Wash. Rev. Code §§ 9.73, *et seq.*, both of which provide for liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is greater. *Id.* Plaintiffs argue that they are entitled to discovery from all fifty states because they allege claims for negligence, breach of contract, and breach of implied contract "on behalf of Class Members in all Kaiser Operating States." *Id.* Plaintiffs argue that they are entitled to this information dating back to January 1, 2016, because they have alleged the statute of limitations is tolled. *Id.* at 5. Plaintiffs ask the Court to order Kaiser either to provide "a more fulsome response" to ROG 1, or alternatively, to provide the underlying data pursuant to Rule 33(d) to allow Plaintiffs to identify the requested information sought themselves. *Id.* at 4.

Kaiser argues that Plaintiffs have not demonstrated the relevance of specific login dates, insisting that Plaintiffs can easily compute per diem statutory damages from the cumulative count of login days for all members in a particular region. *Id.* at 6. Kaiser argues that Plaintiffs have not shown entitlement to data from California, Colorado, or Hawaii, because (i) the sole California named Plaintiff has been compelled to arbitration, (ii) there are no named Plaintiffs from either Colorado or Hawaii, and (iii) Plaintiffs have not made a *prima facie* showing that the laws of the

2

states under which they bring claims are substantively similar to the laws of Colorado or Hawaii. *Id.* at 7. Kaiser argues that Plaintiffs' demand for every login date for every Kaiser member nationwide dating back to January 1, 2016 is "unduly burdensome, if not impossible," stressing that the production would implicate "over 1 billion rows of data" across "three distinct databases." *Id.* at 8. In addition, Kaiser claims that it cannot access pre-2019 data, at all, because the data is "archived in plain data form" and "beyond Kaiser's computational capabilities to reactivate and process." *Id.* Kaiser also raises concerns regarding the disclosure of Kaiser patients' protected health information and whether such disclosures, even under the highest designation afforded by the Protective Order governing this action, might violate HIPAA regulations. *Id.*

As stated at the October 18th DMC, the Court **ORDERS** Kaiser to serve a supplemental interrogatory response (or, at their option, produce a document such as a spreadsheet or chart which tabulates this data pursuant to Rule 33(d)) showing the aggregate number of days for which there was a login per each putative class member (identified by MRN or GUID) per state per year.

To the extent that Kaiser argues that the existing Protective Order does not somehow adequately protect the disclosure of Kaiser patients' protected health information for purposes of HIPAA simply because the Protective Order does not parrot all of the exact language of the HIPAA regulations, where no Party has argued that the terms of the Protective Order substantively fail to qualify as a HIPPA qualified protective order, the Court finds these arguments to be without merit. The existing Protective Order in this case prohibits the Parties from using or disclosing any produced protected health information outside of this litigation and requires either the return or destruction of such produced protected health information at the end of this litigation. To the extent the existing Protective Order does not expressly use the exact same language from the HIPAA regulations, the Court **ORDERS** that the Protective Order shall be construed by the Parties to conform to the requirements of 45 C.F.R. § 164.512(e)(1). To that end, the Court **ORDERS** that any information designated at the highest level under the Protective Order in this action shall be deemed produced subject to a qualified protective order and thus compliant with HIPAA.

The Court **ORDERS** Kaiser to communicate with its technical experts regarding the

3

facilitation of production of responsive documents and report to Plaintiffs by no later than **October 22, 2024** regarding how quickly such production can occur. The Parties are directed to include their respective ESI vendors in all future meetings and conferrals on this issue (and any other such issues relating to ESI production that may arise). The Parties shall file a joint proposed Stipulated Order regarding the outcome of this dispute by no later than **November 1, 2024**.

This **RESOLVES** Dkt. 240.

### II. Plaintiffs' Production of Records in Response to RFP Nos. 16 and 18

The Parties also report a dispute regarding the adequacy of Plaintiffs' production of records in response to Request for Production ("RFP") Nos. 16 and 18. [Dkt. 241]. RFP 16 seeks documents sufficient to show all payments made by the named Plaintiffs to Kaiser since January 1, 2019. *Id.* at 4. RFP 18 seeks documents relating to any monetary or financial impacts the named Plaintiffs contend they experienced as a result of the conduct alleged in their operative complaint. *Id.*

Plaintiffs aver that they have already produced all responsive documents to these requests "that could be obtained based on a reasonable search proportional to the needs of this case at this stage of the litigation." *Id.* at 7. At the hearing, Plaintiffs confirmed that they do not intend to rely on any of their payment records for Kaiser-related medical treatment that Plaintiffs have not already produced in this litigation.

Accordingly, to the extent that Kaiser seeks additional medical payment records from the named Plaintiffs beyond those already produced, the request is **DENIED**. To the extent that Kaiser seeks additional documents relating to the named Plaintiffs' monetary or financial impacts resulting from Kaiser's alleged conduct, the request is **DENIED without prejudice** subject to further meet and confers ordered by the Court. It is apparent that the Parties have not sufficiently met and conferred on the types and scope of documents sought by and reasonably responsive to RFP 18. As stated at the October 18th DMC, the Court **ORDERS** the Parties to promptly meet and confer regarding the specific types of documents Plaintiffs intend to rely on (besides medical payment records) to support their damages claims in this case.

This **RESOLVES** Dkt. 241.

### III. Monthly Joint Status Reports

The Court will hold monthly Discovery Management Conferences in this action going forward until further notice. The next DMC is set before this Court on **November 15, 2024 at 2:00 p.m.** The date and time for all future DMCs (beyond those already on the Court's calendar) will be set three months out at each DMC. The Court may alter the dates and/or starting times of any DMC, and counsel are advised to monitor the docket for any Text Orders or other notices of changes to scheduled DMCs.

In advance of each monthly DMC going forward, the Parties shall file with the Court a Joint DMC Statement seven calendar days preceding that month's DMC, advising the Court as to: (1) the status of discovery, meet and confers, proposed protocols yet to be submitted, and other agreements under discussion; (2) the Parties' progress in meeting discovery deadlines; (3) discovery disputes which are ripe for this Court's resolution; and (4) any other issues or obstacles to discovery the Parties have encountered (including unripe disputes on which the Parties are still meeting and conferring) which risk impacting the orderly progress of discovery in this action. To the extent that the Parties have a ripe dispute that they would like to have heard at that month's DMC, the Parties may file separate letter briefing on the dispute and include a brief reference to the dispute in the DMC Statement, or, where the dispute at issue is relatively discrete, the Parties may brief the dispute within the DMC Statement itself. Any dispute for which the Parties file letter briefing less than seven calendar days prior to the DMC will be heard at that DMC only in the Court's discretion.

Lead counsel or other attorneys expected to have speaking roles at a DMC are expected to attend the DMC in person. The Court encourages counsel to develop and implement specific plans to provide opportunities for less experienced lawyers (six years or less of the practice of law) to develop skills by participating meaningfully in court and in the case, including a plan for such lawyers to argue discovery-related motions in court, to take and defend depositions, to represent a Party in court at a DMC, and to participate meaningfully in any other court proceeding. The Parties shall indicate in any discovery motions, DMC Statements, or other filings submitted to the Court if they intend to have a less experienced lawyer present a Party's positions on an issue in

1 | dispute or identified for discussion in such filing.

2 |     **IT IS SO ORDERED.**

3 | Dated:  October 30, 2024

_____
PETER H. KANG
United States Magistrate Judge