UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOES 1-5, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-02865-EMC  (PHK)<br><br>**DISCOVERY MANAGEMENT ORDER NO. 2 FOLLOWING DISCOVERY MANAGEMENT CONFERENCE OF NOVEMBER 15, 2024**<br><br><u>Upcoming DMC Dates:</u><br>December 17, 2024 at 1:00 pm<br>January 24, 2025 at 2:00 pm<br>February 13, 2025 at 1:00 p.m. |

On November 15, 2024, this Court held a Discovery Management Conference ("DMC") in the above-captioned matter regarding the status of discovery. *See* Dkt. 263. This Order memorializes the Court's rulings and provides further guidance to the Parties, consistent with the Court's directions on the record at the November 15th DMC, regarding the deadlines and directives issued by the Court during that hearing (all of which are incorporated herein by reference).

In approaching these monthly DMCs and the disputes discussed at each DMC, the Court exercises its broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## I.   Kaiser's Response to Interrogatory No. 4

Plaintiffs move to compel Kaiser to provide a more fulsome response to Plaintiffs' Interrogatory No. 4 ("ROG 4"). [Dkt. 257]. ROG 4 asks Kaiser to: "Identify all code embedded on the Website or Apps that, at any time, redirects and/or sends data regarding Users' interactions with the Website or Apps to third parties, and for each: (a) Describe the purpose of such code; and (b) Identify the time period such code has been active on the Website or Apps." *Id.* at 4.

Plaintiffs complain that Kaiser has thus far responded to ROG 4 "with only a limited set of technologies" that are specifically named in Plaintiffs' operative complaint—Adobe, Dynatrace, Google, Microsoft, Quantum Metric, and Twitter. *Id.*; *see* Dkt. 130-4. Plaintiffs complain that Kaiser has refused to identify "other similar technologies deployed on its Website and Apps," of which (according to Plaintiffs) "there were many." [Dkt. 257 at 4]. Plaintiffs argue that their operative complaint references numerous other third-party technologies beyond Adobe, Dynatrace, Google, Microsoft, Quantum Metric, and Twitter, both explicitly and implicitly. *Id.*

2

(citing Dkt. 130-4 at ¶¶ 4, 355, 357-77). Plaintiffs argue that additional third-party technologies have also been revealed during discovery. *Id.* Plaintiffs argue that Kaiser should be required to identify *all* of the web technologies installed on its Website and Apps which redirected and/or sent data regarding Users' interactions (not just the "self-selected" six), because "[t]he technologies implanted on Kaiser's Website and Apps are central to Plaintiffs' allegations." *Id.*

Kaiser, in its portion of the joint letter brief, argues that information regarding other third-party technologies beyond Adobe, Dynatrace, Google, Microsoft, Quantum Metric, and Twitter "bears no relevance" to this case, because Plaintiffs' allegations "focus exclusively on those six entities." *Id.* at 6. While acknowledging that Plaintiffs allege injury from third-party technologies "including but not limited to Quantum Metric, Twitter, Adobe, Microsoft Bing, and Google," Kaiser argues that there must be a sufficient factual basis linking each particular technology to each named Plaintiff. Kaiser argues that it is incumbent upon Plaintiffs (rather than Kaiser) to identify the particular technologies that Plaintiffs believe invaded their privacy. Kaiser argues that Plaintiffs' request for information regarding the identities of additional third-party technologies is unduly burdensome because: (1) Kaiser does not possess this information in any singular location; (2) the process of gathering information such as "purpose" relating to additional third-party technologies would require "countless hours of Kaiser employee time and the review of millions of documents;" and (3) Kaiser has borne "significant burden" from its discovery obligations in this case thus far. *Id.* at 7-8.

The Parties agree that ROG 4 is limited to "technologies involved with the log-in/authentication process and located on authenticated portions of the Website and Apps." *Id.* at 8 n.4. Accordingly, the bulk of Kaiser's arguments about burden and overbreadth (which attack the interrogatory as seeking information about every single Kaiser webpage) are already mitigated.

The crux of the Parties' dispute concerns: (1) whether Kaiser should be required to identify additional third-party technologies located on only the log-in/authentication pages of Kaiser's Websites and Apps (beyond Adobe, Dynatrace, Google, Microsoft, Quantum Metric, and Twitter); (2) whether Kaiser should be required to describe "the purpose" of those third-party technologies; and (3) whether Kaiser should be required to identify the dates that those third-party technologies

3

were "active" on the Website and Apps.

First, the Court finds that Plaintiffs' request for the identities of all third-party technologies located on Kaiser's log-in/authentication webpages, as well as the dates that the contracts were entered into, is both highly relevant and proportionate to the needs of this case. Kaiser's argument that ROG 4 should be limited to only the six technologies Kaiser has previously identified because any other technologies are not named in the Second Amended Complaint is not well-taken. Under the Federal Rules of Civil Procedure, the Parties may obtain discovery regarding any matter that is (1) "not privileged" and (2) "relevant to the subject matter involved in the pending action." Fed. R. Civ .P. 26(b)(1). The scope of allowable discovery is broad: it encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)). "Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'" *Lin v. Solta Med., Inc.*, No. 21-cv-05062-PJH, 2023 WL 8374740, at *1 (N.D. Cal. Dec. 4, 2023) (quoting *Oppenheimer*, 437 U.S. at 351) (alteration omitted). Further, Kaiser's argument is inconsistent because Plaintiffs' operative complaint, on its face, identifies at least two other technologies for which Kaiser has refused to provide an interrogatory response. At the November 15th DMC, Kaiser argued that those two other named technologies are beyond the scope of discovery because Plaintiffs' operative complaint only links those technologies to one or two named Plaintiffs (who have since been dismissed from the case). That argument is not persuasive, because by that logic discovery would always be limited to the specific averments in any complaint involving multiple co-plaintiffs, which is a conclusion that is contrary to law.

Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendment to Rule 26 emphasizes the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality

4

requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse."  In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

In this regard, as noted at the hearing, Kaiser argued that the exact date that any particular third-party technology was added to the log-in/authentication webpages is burdensome and difficult to ascertain because there can be a lag time between the time when Kaiser enters into a contract with a third-party technology company (under which their technology is added to the Kaiser webpages) and the time when that technology is actually integrated and implemented.  In the interests of time and to address the burden, the Court **ORDERS** that Kaiser identify the date of the contracts under which each third-party technology was added to the log-in/authentication webpages.  Finding and reviewing a limited set of contracts to determine their effective dates is not unduly burdensome and does not require interviewing a large number of employees.  Kaiser has failed to show any clear burden in providing both the identities of the third parties and the contract dates which contain this information.

Finally, Kaiser argues that determining the "purpose" for which a third-party technology was added to the log-in/authentication webpages is burdensome and difficult to ascertain because it requires interviewing a large number of employees.  Plaintiffs argue that, for the six technologies Kaiser has already identified in its previous interrogatory response, the wording of the "purpose" was limited to just one or two words.  Plaintiffs argue that investigating and determining such a pithy purpose for all of the third-party technologies at issue should not be unduly burdensome.  In the interests of time and to address the burden, the Court **ORDERS** that Kaiser need not identify the "purpose" for which any additionally named third-party technology was added to the log-in/authentication webpages.  However, pursuant to Federal Rule of Civil Procedure 33(d), the Court **ORDERS** Kaiser to produce (if not produced already) and identify by Bates number the contracts under which each identified third-party technology was added to the

5

log-in/authentication pages of the Websites and Apps, in order for Plaintiffs to be afforded an opportunity to see if those contracts recite the purposes of adding the technologies therein.

Accordingly, the Court **ORDERS** Kaiser to serve a supplemental interrogatory response which provides Plaintiffs with the identities of all third-party technologies located on the log-in/authentication portions of the Website and Apps during the relevant period, as well as the dates that those contracts were entered into (and to identify by Bates number all such contracts and produce any not previously produced), by no later than **December 15, 2024** (and Kaiser **SHALL** provide such information on a rolling basis, unless agreed to otherwise by the Parties). The Court expects the Parties to work collaboratively and reasonably to reach agreement on any remaining disputes. Plaintiffs' request for a supplemental interrogatory response for information concerning the "purpose" of the relevant third-party technologies is **DENIED**.

This **RESOLVES** Dkt. 257.

### II.     Kaiser's Designation of Materials as "Attorney Eyes Only"

The Parties report a dispute concerning Kaiser's confidentiality designations in this case. [Dkt. 258 at 6-9]. Plaintiffs argue that Kaiser has engaged in "mass, indiscriminate, and routinized confidentiality over-designation" throughout this litigation in contravention of the express terms of the Parties' Stipulated Protective Order. *Id.* at 6. Plaintiffs complain that Kaiser has designated nearly eighty percent of its document production thus far as Highly Confidential—Attorneys' Eyes Only ("AEO") under the Protective Order, including "hundreds of documents without any content, such as blank meeting invites." *Id.* Plaintiffs argue that Kaiser's over-designation of documents as AEO "has and will continue to significantly hamper Plaintiffs' efforts to prosecute this case, restricting their work with experts, and their ability to use such documents in this litigation." *Id.* at 6-7. Plaintiffs request that the Court order Kaiser to re-review and revise its AEO designations to comply with the Protective Order and prohibit Kaiser from making over-designations in future productions. *Id.* at 7.

Kaiser, in response, argues that Plaintiffs' request for "mass review" of Kaiser's confidentiality designations is "clearly inappropriate" and should be denied. *Id.* at 9. Kaiser argues that Plaintiffs have failed to identify the specific documents with which they take issue or

the basis for their claim that such documents are not worthy of AEO designation, as required by the confidentiality designation dispute resolution procedure outlined in Section 6 of the Protective Order. *Id.* at 7-8. In addition, Kaiser argues that "the 'example' documents identified by Plaintiffs (namely contracts, invoices, and calendar invites attaching proprietary marketing materials and strategies) are precisely the types of documents that courts routinely find are entitled to heightened protection." *Id.* at 8.

As stated at the November 15th DMC, the Court finds that it would be unduly burdensome and distract from ongoing discovery efforts at this time to require Kaiser to re-review its confidentiality designations for eighty percent of the documents already produced. To the extent that Plaintiffs reasonably believe that a particular document is improperly designated as AEO, they and Kaiser **SHALL** follow and comply with the Parties' agreed upon procedure for resolving disputes over confidentiality designations set forth in the Protective Order. Plaintiffs **SHALL NOT** simply list out every single Kaiser-produced document by Bates number and demand that Kaiser justify the AEO designation on a mass of such documents. On the other hand, when presented with a reasonable request to either reconsider or justify whether specific documents have been designated as AEO, Kaiser **SHALL NOT** provide boilerplate responses—Kaiser is expected to promptly and reasonably review any such designation and make good faith efforts to either promptly revise the designation (if appropriate) or provide a sufficient justification for the designation, consistent with the spirit of collaborative negotiations under the Protective Order. A document should only be designated as AEO where the producing party's counsel reasonably believes the document is entitled to such designation. The Parties are encouraged to work collaboratively and transparently in resolving disputes as to AEO designations of produced documents.

Further, as discussed at the hearing, Kaiser is admonished to not engage in mass, indiscriminate over-designation of its document production going forward.

### III.    Disclosures and Conferrals Regarding ESI Sources

At the November 15th DMC, the Parties requested guidance from the Court regarding an unripe dispute as to their disclosures and conferrals regarding ESI sources. *See* Dkt. 258 at 10-11.

The Parties reported that they were having difficulty meeting and conferring on a "newly raised database" that contains information relating to the tracking of users on Kaiser's Website and Apps. Per the Court's discussions with the Parties at the DMC, Kaiser **SHALL** provide a schema or document that identifies the data fields for the newly raised database and Plaintiffs **SHALL** provide a reasonable number of written questions about that database. Upon prompt exchange of that information, the Parties **SHALL** meet and confer regarding that database and the feasibility, burden, and reasonable scope of production of data from that database. In such meet and confers, the Parties **SHALL** include personnel with technical knowledge regarding such eDiscovery to facilitate discussions on the production of data from that database, such as to feasibility, technical burdens, and data formatting.

### IV.     Miscellaneous

The Parties are reminded to use reasonable margins, line spacing, and font sizes with respect to their discovery dispute letter briefing and other submissions directed to this Court.

The Parties' Joint DMC Statements need not include exhaustive lists of date of service of document requests, or dates of completed discovery production (except for information regarding when privilege logs are served).

In Joint DMC Statements, the Parties need only provide the Court with bullet point summaries of their unripe disputes, to reduce burden in drafting the statements.

**IT IS SO ORDERED.**

Dated:  November 20, 2024

_____
PETER H. KANG
United States Magistrate Judge