# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, AND ALEXIS SUTTER, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | Case Nos.: 3:23-cv-02865-EMC<br><br>**JOINT LETTER BRIEF REGARDING PLAINTIFFS' DISCOVERY RESPONSES**<br><br>District Judge:    Hon. Edward M. Chen<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Consolidated Complaint Filed: Dec. 6, 2024<br>Trial Date:    July 20, 2026 |

Dear Judge Kang:

Pursuant to paragraph H of the Court's Standing Order for Discovery in Civil Cases, the Parties submit this joint discovery letter regarding Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, and Jane Doe V's, (collectively, the "Plaintiffs") responses to Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington's (collectively "Kaiser" or "Defendants") Requests for Production ("RFPs") Nos. 11-12 and 23-30. Counsel conferred about these RFPs multiple times, including in writing, and via Zoom on November 4 and December 5, 2024, but could not reach agreement on the issues discussed below.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: December 10, 2024

Respectfully submitted,

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**

/s/ Tyler S. Graden
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com

Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and–

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and–

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Michael A. Innes (*pro hac vice* forthcoming)
minnes@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

*Interim Co-Lead Class Counsel*


**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**


*/s/ Jack F. Burns*
Tenaya Rodewald, Cal Bar No. 248563
trodewald@sheppardmullin.com

1540 El Camino Real, Suite 120
Menlo Park, CA 94025
Telephone:     650.815.2600
Facsimile:     650.815.2601

Wynter L. Deagle, Cal Bar No. 296501
wdeagle@sheppardmullin.com
Kristin P. Housh, Cal Bar No. 286651
khoush@sheppardmullin.com
Anne-Marie D. Dao, Cal Bar No. 282632
adao@sheppardmullin.com
Dane C. Brody Chanove, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:     858.720.8900
Facsimile:     858.509.3691

Kari M. Rollins *(Pro Hac Vice)*
krollins@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone:     212.653.8700
Facsimile:     212.653.8701

Nolan J. Walter, Cal Bar No. 325021
nwalter@sheppardmullin.com
Kevin Murphy, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:     310.228.3700
Facsimile:     310.228.3701

Jack F. Burns, Cal Bar No. 290523
jburns@sheppardmullin.com
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone:     619.338.6500
Facsimile:     619.234.3815

*Attorneys for Defendants*
*Kaiser Foundation Health Plan, Inc., Kaiser*
*Foundation Hospitals, and Kaiser Foundation*
*Health Plan of Washington*

**Defendants' Position:** In this proposed class action with nine Plaintiffs alleging 21 causes of action arising largely out of alleged third-party wiretapping, Plaintiffs refuse to produce all responsive data showing (1) the specific information from Plaintiffs' devices or web browsers that was actually transmitted to third parties and (2) if transmission was blocked from transmission by Plaintiffs' privacy settings and applications. Plaintiffs' refusal to produce is counter to every applicable discovery standard, including the broad scope of relevance in the Ninth Circuit and proportionality considerations. Fed. R. Civ. P. 26(b)(1); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-MD-3047, 2024 WL 4859691, at *1 (N.D. Cal. Nov. 21, 2024) (reciting discovery standards).

Here, much of the information sought is not available to Kaiser and is kept as easily-user-downloaded, machine-generated records by third parties, including Google, Apple, Twitter, Facebook, and Microsoft. Moreover, given the passage of time, it is highly likely much of this information is no longer available to *Plaintiffs* other than through the historical records of these third parties. In comparison to the discovery Plaintiffs have imposed on Kaiser—which has cost Kaiser millions of dollars—and the amount in controversy, Plaintiffs can hardly contend that Kaiser's requests impose a burden or are disproportionate. Indeed, Microsoft, Facebook, Twitter, Google, and Apple have pre-set mechanisms for downloading the files Kaiser seeks in *just a few minutes*. And by bringing this lawsuit, Plaintiffs directly placed their browsing and device data within the realm of discoverability. *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-2827, 2019 WL 3973752, at *2 (N.D. Cal. Aug. 22, 2019) ("Plaintiffs actively put their devices at issue when they chose to sue Apple over Apple's alleged intrusion and trespass to the devices through Apple's software updates. It is well-established that a plaintiff cannot bring suit and then limit the defendant's discovery that is targeted at the subject matter of the plaintiff's claims."). But instead of producing the complete set of pertinent and easily-obtained records, Plaintiffs have entombed discoverable information behind boilerplate objections, including objections based on relevance, burden, disproportionality, and the requests' alleged duplicative nature. If Plaintiffs get their way, *Plaintiffs* will become the ultimate arbiter of what is relevant and produce only a small subset of accessible information to Kaiser based on self-serving assertions that Kaiser somehow has everything it needs to defend against Plaintiffs' staggeringly high damages claims. This is improper, and Plaintiffs should supplement their production.

**RFPs 11-12 and 23-30 Seek Relevant Information:** Kaiser seeks materials directly and narrowly targeted at Plaintiffs' damages and wiretapping allegations. Half of Plaintiffs' 21 causes of action require Plaintiffs to establish actual damages.[1] And Plaintiffs allege they are entitled to their alleged actual damages. Master Compl. ¶¶ 470, 487, 502, 605, 625, 634, 646, 658, 682, 691, 702, 712, 723, 739, 753, 766, 779, 791. To support their damages, Plaintiffs assert that they consider their transmitted data to be "sensitive" and "confidential" and they "intended [it] to remain private." *Id.* ¶¶ 580, 749, 764, 777, 790. Plaintiffs also allege that using data from Kaiser and other data sources, "third party wiretappers" can create a unique "fingerprint" of Plaintiffs' devices. *Id.* ¶¶ 185, 195. **RFPs 11-12** seek materials showing what personal or health information Plaintiffs shared to non-Kaiser wellness-related applications or websites. Similarly, **RFPs 23-30** seek information showing the privacy protections—including browser settings and plug-ins, privacy-protecting applications, and device security features—that Plaintiffs used since January 2019 that prevented or minimized the alleged improper tracking/transmissions. Plaintiffs have identified several wellness apps and websites they used since January 2019,[2] and under RFPs 11-12, Kaiser requested that Plaintiffs produce screenshots of information recorded by those apps and websites. Plaintiffs refuse to produce these responsive materials. In addition, under RFPs 23-30, Kaiser requested that Plaintiffs produce certain data files of popular apps and websites (Google, Apple, Twitter, Facebook, and Microsoft), which record information responsive to these RFPs and have

---

[1] *E.g.*, *Oasis W. Realty v. Goldman*, 51 Cal. 4th 811, 821 (2011) (damages an element of breach of contract); *Varga v. Wells Fargo*, 796 F. App'x 430, 431 (9th Cir. 2020) (same for implied contract); *Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1083 (2017) (negligence); ORS 646.638(1); Wash. Rev. Code Ann. § 9.73.060.

[2] *E.g.*, Apple Health, Zoc Doc, United Health, Fit Bit, INOVA, Soul Cycle, and The Eye Center.

a simple process for users to obtain the information. Plaintiffs agreed to produce certain Google and Apple materials, but have refused to produce *any* Facebook, Twitter, or Microsoft data or their Google Bookmarks.json and History.json files (i.e., the sites they bookmarked and visited while logged into Google). This information is relevant for several reasons:

**1. Transmission of Plaintiffs' data:** Kaiser's requests are targeted at determining whether Plaintiffs used certain browsers or installed certain privacy applications that would have blocked the cookies Plaintiffs complain about. If they did, that fact would be relevant to whether Plaintiffs have suffered any such actual damages. *E.g.*, *In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 28 (D.D.C. 2014) ("Existing case law and legislation support that common-sense intuition: If no one has viewed your private information (or is about to view it imminently), then your privacy has not been violated."); *In re: Facebook Priv. Litig.*, No. 10-cv-2389, 2016 WL 4585817, at *8 (N.D. Cal. Sept. 2, 2016) (denying class certification based in part on evidence showing that, depending on the user's browser and other computer settings, information may not have been conveyed to the third-party's server).

**2. The extent of Plaintiffs' alleged damages:** The information Kaiser seeks will test Plaintiffs' contentions regarding how they treated their data and their stated interest in keeping the data secret. If Plaintiffs willingly disclosed the same data to third parties, that would be relevant to their claimed damages. *Hill v. Nat'l Collegiate Athletics Ass'n*, 7 Cal. 4th 1, 26 (1994) ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy."); *Wilkins v. Nat'l Broad. Corp.*, 71 Cal. App. 4th 1066, 1078-79 (1999) (discussing private matters in a public place, where the conversation could be overheard by others, is inconsistent with maintaining privacy).

**3. Alternative causes for Plaintiffs' alleged damages:** Kaiser seeks information relevant to whether there are alternate potential causes for Plaintiffs' alleged damages, such as Plaintiffs' visiting of other websites, use of third-party browser extensions, or use of mobile device apps that track and disclose data similar to what Plaintiffs contend Kaiser tracked. *O. L. v. City of El Monte*, No. 2:20-cv-797, 2021 WL 926105, at *14 (C.D. Cal. Jan. 11, 2021) ("Plaintiff has placed her injuries allegedly caused by Defendant's alleged conduct . . . at issue. Those conditions and their potential causes, including alternate potential causes, are appropriate subjects of discovery.").

**4. Fingerprinting:** A central theme of Plaintiffs' complaint is that third parties were able to create a "fingerprint" using data from multiple sources—including non-Kaiser sources. As a result, information Plaintiffs transmitted to third-parties is therefore highly relevant.

**<u>Facebook files are relevant and proportional</u>:** To avoid seeking potentially sensitive social media user *content*—i.e, posts, direct messages, likes, photos—Kaiser *only* seeks files that will identify the user-agent strings and IP addresses that Plaintiffs used during the relevant time periods. Facebook logs this information in different places during different parts of users' visits, and Kaiser targets its requests to seek only a few specific, machine-generated files where Facebook logs this information. Consistent with the purposes set forth above, the user-agent string will identify whether Plaintiffs used certain browsers that would have blocked the asserted cookies. It will also identify the devices Plaintiffs used when they accessed Kaiser's website or app, which is also relevant to Plaintiffs' claims. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-cv-9042, 2023 WL 3707181, at *2 (N.D. Cal. May 24, 2023) ("Plaintiff accessed Defendant's website using the smartphone's internet capabilities, not the smartphone's telephonic capabilities. Thus, Plaintiff's argument fails because the [California Invasion of Privacy Act]—by its plain terms—does not apply to technologies other than telegraphs and telephones."). Similarly, the IP address information will identify where Plaintiffs used their accounts and will be relevant to, among other things, Plaintiffs' practices with respect to safeguarding their personal data and whether information transmitted to third parties could have been used for tracking purposes. *Cf. Heeger v. Facebook*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (no privacy interest in IP address).

**<u>Google Takeout history and bookmarks are relevant and proportional</u>:** Plaintiffs' history and bookmarks will show whether Plaintiffs visited other websites that track data similar to what

Plaintiffs contend Kaiser tracked and therefore served as an alternative cause of Plaintiffs' alleged damages. It will also show whether Plaintiffs visited or bookmarked security and privacy websites, which will be relevant to whether, and to what extent, their data was capable of being tracked. And it will show whether Plaintiffs actually accessed and logged into the Kaiser website and if so, when. Indeed, a fulsome response to these RFPs—including production of their Google history and bookmarks data—is the only way to obtain even a glimpse of how Plaintiffs used their devices, including the features and services on the devices, and thereby to even begin to test Plaintiffs' damages and fingerprinting allegations. *By refusing to produce this information, Plaintiffs are precluding Kaiser from conducting any meaningful assessment regarding these allegations.*

**Plaintiffs must produce responsive Twitter and Microsoft data and other native files:** Kaiser provided detailed instructions to Plaintiffs to download data from Twitter, Microsoft, and the wellness websites and apps Plaintiffs have asserted that they have used. This information is responsive in the same manner the above information is, and Plaintiffs must produce it. .

**The requested production is narrower than a forensic inspection:** Kaiser requested—and reserves the right to seek—a forensic inspection of Plaintiffs' devices. Plaintiffs objected on the grounds that the materials Kaiser seeks in RFPs 23-30 overlap with an inspection, but now refuse to produce even materials responsive to RFPs 23-30. In *In re Soc. Media Adolescent Addiction*, in lieu of requiring a forensic inspection of the *adolescent* plaintiffs' devices, the Court ordered the parties to confer regarding a targeted production of "application usage data, browser history data, location data, communication logs, media files, metadata, application settings, and other data files reasonably and in good faith identified by Defendants as relevant to how the device user used that device during the relevant time period." No. 22-MD-3047, 2024 WL 3498235, at *4 (N.D. Cal. July 19, 2024) (Kang, J.). Consistently, Plaintiffs should be ordered to produce the materials Kaiser seeks here to determine if a forensic inspection is needed.

**Plaintiffs' Position**: Kaiser's brief ignores the reality that Plaintiffs have already produced (and continue to produce) files containing the very information about Plaintiffs' browsers, devices, device settings, and potential cookie-blocking privacy settings and/or applications that Kaiser claims it needs. In fact, Plaintiffs have agreed to produce files showing, *inter alia*, Plaintiffs' (1) browsers; (2) browser extensions which would show any cookie-blocking tools installed by Plaintiffs; (3) internet privacy and security tools downloaded by Plaintiffs; (4) IP addresses; and (5) Plaintiffs' device security settings. Still, Kaiser wants more.

In addition to being duplicative, many of the files Kaiser now seeks are not even probative of the information Kaiser claims to want. Indeed, Kaiser seeks Google files that will show only whether Plaintiffs visited or bookmarked various websites—not whether Plaintiffs used any particular privacy or security tool. At best, the Facebook, Twitter, and Microsoft files Kaiser seeks can only show redundant information already contained in the files Plaintiffs have agreed to produce. Kaiser also has no basis for requiring Plaintiffs to engage in the laborious task of screenshotting settings for numerous third-party health and wellness applications that are not part of this litigation. Kaiser already has the information it supposedly seeks and Kaiser's demand for additional irrelevant files is an unwarranted fishing expedition into sensitive and intrusive information about Plaintiffs' general internet usage, documents held by third parties, and health and wellness applications ***not*** at issue in this litigation. The Court should reject Kaiser's improper demands.

**Google Chrome Browsing History and Bookmarked Webpages:** Kaiser has failed to demonstrate why it needs Plaintiffs to produce files showing their internet browsing history and bookmarked webpages. First, Kaiser's assertion that these files are purportedly relevant to whether, and to what extent, Plaintiffs' data was capable of being tracked, is unfounded.

Importantly, Kaiser has not shown how producing these sensitive files—which show that Plaintiffs may have merely visited or bookmarked certain websites—would be probative of relevant issues in this lawsuit. Moreover, as discussed, despite a lack of relevance, Plaintiffs have already produced other files—such as their application download histories and files showing their browser extensions—which Kaiser has asserted show whether Plaintiffs used privacy and/or security tools.

Second, Kaiser's assertion that it needs these files to determine whether and when Plaintiffs accessed the Site and Apps is nonsensical. Kaiser already provided information in this litigation demonstrating that it has at least one database which captures when each Plaintiff accessed its Site and Apps and the methods by which they accessed. *See* DMC Hr'g Tr. (Nov. 11, 2024) at 37:18-21, ECF No. 268. The produced data already confirms that the Plaintiffs accessed Kaiser's Sites and/or Apps. This is plainly not a legitimate basis for Kaiser to seek highly sensitive and intrusive information about Plaintiffs' general internet usage. Fed. R. Civ. P. 26(b)(1); *see also See Blair v. CDCR*, 2018 WL 1959532, at *3 (E.D. Cal. Apr. 25, 2018) (holding "[d]efendants are not required to produce documents that are equally available to Plaintiff.").

Third, Kaiser's assertion that these files will show if Plaintiffs visited websites that allegedly track and disclose similar information to the PII and PHI at issue in this case is purely speculative, unsupported, and irrelevant. Kaiser has failed to demonstrate how Plaintiffs producing their internet browsing history and/or bookmarked webpages would be probative of whether Kaiser wrongfully disseminated Plaintiffs' personal information. Importantly, Kaiser cannot escape liability by pointing to other potential wrongdoers where this action concerns ***Kaiser's*** improper disclosure of Plaintiffs' PII and PHI in violation of statutory and common law.  The Court should deny Kaiser's improper attempt to compel the production of these irrelevant and sensitive files. FRCP 26(b)(1).

**Facebook, Microsoft, and Twitter Data Collection:** While maintaining various objections, previously Plaintiffs agreed in the spirit of compromise to obtain various files from third parties Google and Apple and produced numerous files from these third parties to Kaiser. Kaiser's request that Plaintiffs obtain additional files from Facebook, Twitter, and Microsoft is unfounded. Indeed, Kaiser's assertion that it should obtain this discovery because it can supposedly be obtained in a "few clicks" (beside being inaccurate and misleading)[3] is meritless.

Regarding files from Facebook, in its brief, Kaiser claims that the files will show: (1) a user-agent string which Kaiser claims will identify whether Plaintiffs used certain browsers that would have blocked cookies (2) the devices Plaintiffs used when they accessed the Site or Apps; and (3) IP address information. However, Plaintiffs have already produced multiple files reflecting the browsers they use and Kaiser does not contend otherwise. Moreover, critically, Kaiser has conceded during the parties' meet and confers that files from Facebook will only show browsers used by Plaintiffs to access Facebook, ***not*** Kaiser's Site and Apps and has failed to substantiate its assertion that Facebook would have information about devices used to access ***Kaiser's*** Site and Apps. Regardless, because Plaintiffs have already agreed to produce multiple documents Kaiser sought on the basis that they will reflect information about the devices Plaintiffs use and their

---

[3] Indeed, obtaining this discovery requires Plaintiffs seeking the data from third parties, downloading the data, transmitting the data to counsel for review, counsel reviewing the data, and counsel working with a vendor to produce the data in an ESI protocol complaint format.

devices' security settings there is no basis for Kaiser to demand that Plaintiffs collect and review additional documents from other third-party sources. Moreover, Plaintiffs have already produced many files reflecting their IP address information.

Kaiser's brief is also silent on what supposedly relevant information the files from third-parties Twitter and Microsoft will contain. However, in conferrals, Kaiser demonstrated that these files are, at best, redundant to other files already produced. For example, Kaiser claimed that it was seeking certain Twitter files because they purportedly will show "a list of devices" that Plaintiffs used, which Kaiser claims will "inform" whether those devices have built in "tracking prevention technologies." Setting aside the fact that the devices Plaintiffs used to access Twitter (not Kaiser's Site and Apps) is not relevant, Plaintiffs **have already agreed** to produce documents Kaiser represents will show Plaintiffs' device settings including supposed built in "tracking prevention technologies." Kaiser has also asserted that it seeks a Microsoft file that will supposedly show Plaintiffs' downloaded mobile applications and/or security tools to prevent tracking; but Plaintiffs have already agreed to produce files (including their application download histories) that will show such information. Kaiser's only other disclosed basis for seeking additional Twitter and Microsoft files is that they will once again show IP addresses; but again, Plaintiffs already agreed to produce numerous files reflecting IP addresses. Kaiser has thus failed to demonstrate any legitimate basis for Plaintiffs to obtain, review, and produce these additional third-party documents.

**Screenshots of Information from Unrelated Health and Wellness Applications:** Kaiser has also made an unfounded demand that Plaintiffs provide screenshots of irrelevant information from mobile applications that are not at issue in this litigation. While maintaining various objections to Kaiser's request that Plaintiffs disclose health and wellness applications, Plaintiffs previously agreed **to identify** such applications. After this agreement, Kaiser invented a new demand for Plaintiffs to create and produce screenshots showing incredibly broad information from the health and wellness applications Plaintiffs identified. Again, this is an unwarranted fishing expedition. As documented in correspondence from Kaiser, Kaiser asserts that it wants screenshots showing, *inter alia*: (1) each time Plaintiff(s) checked in at Planet Fitness; (2) Plaintiff(s)' Planet Fitness workout history and Plaintiff(s)' Planet Fitness' workout reminders; (3) attendance records at Crunch Fitness and dates and times Plaintiff(s) checked into Crunch Fitness; (4) a log of classes taken at Soul Cycle and Soul Cycle performance and goal tracking; and (5) other similar information from third-party applications. Kaiser also seeks the information Plaintiffs may have chosen to track on these irrelevant applications, such as heart rate data and the number of daily steps taken by Plaintiffs. This invasive discovery is unwarranted. The mere fact that Plaintiffs may use other applications to assist in their fitness goals and/or to obtain healthcare services is not probative of whether Kaiser violated statutory and common law by sharing and failing to safeguard Plaintiffs' PII and PHI. Moreover, collecting and obtaining this information is unduly burdensome. This demand will require individual meetings between counsel Plaintiffs, a review of numerous unrelated application settings, discussion of what to take a screenshot of, procuring the screenshots, and counsel reviewing the screenshots before production. These burdensome, irrelevant requests are not "proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues" and the Court should deny Kaiser's requests for these screen shots. Fed. R. Civ. P. 26(b)(1).

In sum, the Court should deny Kaiser's boundless request for burdensome, highly intrusive and sensitive discovery that is not relevant to this litigation or proportional.