SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
KRISTIN P. HOUSH, Cal Bar No. 286651
khoush@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900
Facsimile:    858.509.3691

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | **Lead Case No. 3:23-cv-02865-EMC**<br><br>**JOINT STATUS REPORT**<br><br>District Judge:    Hon. Edward M. Chen<br>Magistrate Judge:    Hon. Peter H. Kang<br><br>Consolidated Complaint Filed: December 6, 2024<br>Trial Date: July 20, 2026 |

Plaintiffs John Doe, John Doe II, John Doe III, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V, and Alexis Sutter (collectively, the "Plaintiffs") and Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington (collectively "Kaiser" or "Defendants") (and together with Plaintiffs, the "Parties"), submit this Joint Status Report in advance of the December 17, 2024 Discovery Management Conference to address the following: (I) the status of discovery, meet and confers, proposed protocols yet to be submitted, and other agreements under discussion; (II) the Parties' progress in meeting discovery deadlines; (III) discovery disputes which are ripe for the Court's resolution; (IV) any other issues or obstacles to discovery the Parties have encountered (including unripe disputes on which the Parties are still conferring).

### I.  Status of Discovery

This action commenced on June 9, 2023. (ECF No. 1). On October 17, 2023, discovery commenced following the Initial Case Management Conference. (ECF No. 107).

As of December 10, 2024, Kaiser has made 27 productions consisting of a total of 38,252 documents collected from the following custodians: Kalpa Chobe, Tim Hoang, Bryce McNally, David McWaters, Karla Ruiz, Naveed Sharif, Sid Sheel, and Bill Vourthis. Kaiser has served four operative privilege logs and an additional categorical privilege log. First, Kaiser served a Privilege Log to Kaiser's Production 13 on July 3, 2024. Kaiser also served a Revised Privilege Log to Kaiser's Production 14 on July 30, 2024 and served a Privilege Log to Kaiser's Production 16 on August 10, 2023. Kaiser served a Categorical Privilege Log on September 13, 2024 pursuant to Court Order. (ECF No. 216). Kaiser served a revised Privilege Log to Kaiser's Production 13, a second revised Privilege Log to Kaiser's Production 14, and a Privilege Log to Kaiser's Production 24 on November 1, 2024.

To date, Plaintiffs have made eight productions consisting of a total of 296 documents. Plaintiffs have not served any privilege logs to date. No depositions have occurred to date.

On November 21, 2024, Plaintiffs served Plaintiffs' Amended Notice of Subpoena Directed to Alphabet, Inc. ("Google"), with a December 23, 2024 return date. Counsel for Google has accepted service and Plaintiffs' counsel has agreed to provide Google with a thirty (30) day

extension to respond.

Since the last Discovery Management Conference held on November 15, 2024, the Parties have exchanged multiple emails regarding discovery issues and attended meet and confers via Zoom on November 20, 2024, November 25, 2024, and December 5, 2024.

In January 2024, the Parties reached an agreement on the terms of a Proposed ESI Protocol for this case. The parties anticipate filing the attorney declaration, along with the Parties' Proposed ESI Protocol, pursuant to Section F of this Court's Standing Order for Discovery in Civil Cases shortly.

## II.     The Parties' Progress in Meeting Discovery Deadlines

On June 25, 2024, Judge Chen entered the Parties' Joint Stipulation setting, *inter alia*, a September 24, 2025 deadline for the close of fact discovery, December 17, 2025 deadline for the close of expert discovery, and a July 20, 2026 trial date. (ECF No. 178). An in-person Case Management Conference was held before Judge Chen on October 30, 2024, wherein the Court severed two defendants, Meta and Google, which were named as defendants in one of the cases that has been consolidated with this action. (ECF No. 254.) The Court further directed the Parties to confer and submit a revised Case Management Schedule, including new fact and expert discovery deadlines, as well as a schedule for motion to dismiss briefing on Plaintiffs' Master Consolidated Complaint which Plaintiffs filed on December 6, 2024. The Parties have met and conferred and exchanged drafts of a revised Case Management Schedule and anticipate filing a stipulated revised Case Management Schedule in the coming days.

## III.    Discovery Disputes Which Are Ripe For Resolution

The Parties identify the following discovery disputes that are ripe for the Court's resolution:

   **1.     Plaintiffs' Issue**

   **a.     Kaiser's Relevancy Determinations In Connection with its Production of Documents Using Three Additional Search Terms Pursuant to this Court's June 28, 2024 Order**

**Plaintiffs' Position**

Pursuant to the Court's June 28 Order, the Parties conferred about using three targeted search terms during Phase I discovery to locate specific documents. ECF No. 188. After negotiating the scope of the terms to exclude previously reviewed documents and to include distance limiters for the terms, (i.e., w/25), the search terms reportedly returned 2,527 documents.[1] On August 6, 2024, Kaiser made a production of only 17 documents purportedly based on this search, and subsequently supplemented this production with an additional 5 documents on November 4, 2024, for a total production of just 22 documents out of 2,527 (a mere 0.87%).

This evidences an overly restrictive relevance review by Defendants, particularly as one of the terms consisted solely of highly technical parameters and server addresses for some of the technologies at issue in this litigation. According to the hit report, these highly specific parameters returned 249 additional documents, yet not a single document containing those terms was produced. The fact that not a single document of the 249 identified by the search for these highly targeted and technical terms, such as the cookies used and servers contacted for advertising by Adobe ("demdex"), Alphabet ("g.doubleclick.net"), Microsoft ("bat.bing.com"), or TradeDesk ("insight.adsrvr.org"), or specific names of identifiers (e.g., "MUID" or "TDID"), cookies, or parameters for these technologies, is further evidence that Defendants' purported relevancy review inappropriately excluded responsive documents.

Similarly, the other search terms were created using the language and terminology of documents previously produced by Defendants. Therefore, words such as "YOY" instead of "year over year" were utilized. Yet again, only 22 documents of the 2,527 were deemed relevant by Kaiser. Plaintiffs do not have access to the documents deemed non-relevant and therefore, cannot

---

[1] Kaiser inappropriately argues that the three search terms that the Parties agreed to were "in violation of [this Court's] Order." It is undisputed that, in response to the Court's Order, the Parties agreed to these three search term strings and that Kaiser should have produced responsive documents. Any argument as to the nature of the terms that were agreed-upon and run have been waived. Moreover, Kaiser's request that the Court implement unspecified "measures to ensure future search terms comply with the Court's directives and adhere to the principles of proportionality and relevance" was never raised in the Parties' conferrals on this issue and the first time Plaintiffs' saw this demand was when Kaiser included it in a draft of this exchange.

describe the corpus of the documents returned, but the numbers, particularly considering the specific technical terms used, speak volumes. Plaintiffs accordingly request the remaining 2,505 documents be produced immediately. If the 2,505 purportedly irrelevant documents are "spam" or "subscription notice" documents as Kaiser asserts, there is no harm or detriment to Kaiser associated with making this production.[2]

Moreover, Kaiser's argument that "the overwhelming volume of irrelevant materials highlights the need for more precise and targeted search terms moving forward" only supports Plaintiffs' argument for production of the 2,505 documents in the purportedly null set. To the extent Kaiser is right that Plaintiffs' recent search term proposal "exhibit[s] similar deficiencies," the production of these documents would only help to craft more targeted keywords for Phase II discovery. There are only benefits, and no downside, to requiring this open exchange of discovery.

**Defendants' Position**

The Court's June 28 Order allowed Plaintiffs to propose **three targeted** search terms, beyond the 431 terms already reviewed by Kaiser.  (ECF No. 188 at 6.)  However, in violation of that Order, Plaintiffs submitted dozens of separate search terms, linked by an "OR" connector, disguised as a single search term.[3]  This effectively created multiple distinct search criteria under

---

[2] Kaiser did not provide Plaintiffs with any of its cited cases until shortly before the agreed-to deadline for the Parties to file this Joint Status Report. Plaintiffs reserve all rights.

[3] The 3 purported "search terms" are:
   (1) YOY OR grow* OR measure* OR drive) **w/50** ("quantum metric" OR QM OR bing OR twitter OR "adobe analytics" OR "adobe audience" OR Dynatrace OR doubleclick OR "google analytics" OR "google ads" OR "google tag manager");
   (2) (deployment OR implementation OR settings OR parameters OR options) **w/50** ("adobe analytics" OR "adobe audience" OR "quantum metric" OR QM OR bing OR twitter OR doubleclick OR "google analytics" OR "google ads" OR "google tag manager"); and
   (3) (marketingCloudVisitorId OR tntId OR experienceCloud OR demdex OR AMCV OR everest_g_v2 OR g_surferid OR CMCMID OR analytics.twitter.com OR pl_id OR txn_id OR t.co OR personalization_id OR guest_id_marketing OR g.doubleclick.net OR google-analytics.com OR auid OR bat.bing.com OR MUID OR bf.dynatrace.com OR insight.adsrvr.org OR pixel.rubiconproject.com OR analytics.yahoo.com OR ib.adnxs.com OR TDCPM OR TDID).

the guise of one term. For example, Plaintiffs' third purported "search term"[4] includes 25 distinct terms linked by an "OR" operator, with no additional connectors or operators. Thus, each term functions independently, significantly expanding the search results. Similarly, Plaintiffs' first and second "search terms" employ "OR" operators in combination with proximity operators, further compounding this issue. The first "search term" is comprised of four initial terms, two of which include wildcards that can match multiple words (e.g., "growing," "growth," "measuring," "measurement"). Combined with eleven terms on the opposite side of the proximity operator, this search results in 44 discrete search combinations. The second search term is constructed in a similar manner, resulting in 50 discrete combinations of terms. Nevertheless, in the spirit of compromise, Kaiser agreed to review documents identified by these additional search terms and produce any relevant, responsive, and non-privileged documents. The search terms resulted in 11,635 documents, 2,415 of which had not been previously reviewed, while 3,158 had already been produced as part of the original 431 search terms agreed to by the Parties. Kaiser diligently reviewed the 2,415 new documents, conducted multiple quality checks, and ultimately produced 22 responsive documents.

      Plaintiffs complain about the limited number of responsive documents resulting from this search. However, the limited number of documents produced is not due to overly-restrictive responsiveness or relevance calls on the part of Kaiser, but rather is a product of Plaintiffs' selection of overly broad search terms, including terms that are commonly used in marketing, business, and advertising contexts. The search terms provided by Plaintiffs yielded a plethora of irrelevant materials, including spam emails, newsletters, subscription notices, and other documents that are wholly unrelated to the case. For example, the first search term captured 55 documents from ANA Marketing 360, a daily subscription covering marketing and advertising events. Each document matched the terms "Twitter" and "grow" due to the heading "Upcoming ANA events

---

[4] This search term returned 106 documents, which collectively contain 249 hits. It appears that Plaintiffs have misunderstood the hit report provided for these terms. The report indicates the number of hits, which does not equate to the number of documents. This is because a single document can contain multiple hits for the same term or keyword, leading to a higher hit count than the actual number of documents involved.

that will help you and your brand grow."  Similarly, this search term flagged daily briefings from sources like Bulletin Intelligence, Cybersecurity & Privacy Law360, Adweek's First Things First, Adweek Brand Marketing, Achieve Engagement, Marketing Knowledge Cloud, Marketing Whitepapers, Smartbrief, and Beckers, among others.  Moreover, nearly all the emails captured by this term contain links to social media platforms including Twitter in the footer, rendering every email that contains one of the terms "YOY," "grow*," "measure*," or "drive" a false positive.  The second search term similarly captured numerous subscription emails, such as those from Mistobox, which included "Twitter" and "settings" in the footer, as well as updates from the SANS Institute and CyberArk.  For the final search, Plaintiffs provided a string of terms and links, each capable of capturing documents independently.  For example, "t.co" represents a shortened URL for Twitter websites.  Consequently, any email exchange containing a shared Twitter URL was captured by this search.  Furthermore, the search inadvertently pulled in all documents containing the email of a Kaiser employee with "T.Co" in their email address.  Plaintiffs have imposed an undue burden on Kaiser by submitting excessively broad and improperly constructed search terms, resulting in the unnecessary review of thousands of irrelevant documents, diverting significant resources and delaying the progress of this case.[5]  Despite this, Kaiser has demonstrated good faith and a cooperative spirit by diligently reviewing the documents identified by Plaintiffs' expansive search terms and producing all relevant, responsive, and non-privileged documents.

Plaintiffs now improperly request the production of **all** of the irrelevant and non-responsive documents returned by the purported "three search terms."  That is not how discovery works—as courts have routinely recognized, Plaintiffs are not entitled to irrelevant or non-responsive documents and any suggestion that Kaiser should just "turn it all over" because "what

---

[5] The overwhelming volume of irrelevant materials highlights the need for more precise and targeted search terms moving forward. In light of Plaintiffs' recent proposal of an additional 586 search terms (on top of the 431 terms already used for the Phase I custodians), many of which exhibit similar deficiencies, Kaiser requests that the Court implement measures to ensure future search terms comply with the Court's directives and adhere to the principles of proportionality and relevance.

is the harm" is antithetical to Federal Rule of Civil Procedure 26 and must be rejected. *See, e.g., FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, 2016 WL 6522807, at *7 (S.D. Cal. Nov. 3, 2016) (rejecting Defendants' request to compel Plaintiffs to produce all documents that hit on the parties' agreed-upon ESI search terms without a further relevance review by the Plaintiffs); *Palmer v. Cognizant Tech. Sols. Corp.*, No. CV176848DMGPLAX, 2021 WL 3145982, at *9 (C.D. Cal. July 9, 2021) (rejecting Plaintiff's argument that that compelling Defendants to produce all documents that contain only one search term without a responsiveness review would "speed the production and be fairer" because such a review is not the standard under Rule 26). Moreover, Kaiser cannot just hand over documents deemed to be non-responsive without doing a secondary review and making privilege calls because while a document may not be responsive, it may still be privileged. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2023 WL 2871090, at *3 (S.D.N.Y. Apr. 10, 2023) (rejecting "the suggestion that defendants should be compelled to produce documents before conducting a review for privilege"). Forcing Kaiser to re-review documents that it has already deemed to be irrelevant and non-responsive for privilege or otherwise imposes an undue burden and is not proportional to the needs of this case. *Contra* Fed. R. Civ. Proc. 26(b)(1).

### 2.    Defendants' Issues

    a.    **Plaintiffs' Data shared with other healthcare, medical, wellness-related applications/websites responsive to RFP Nos. 11 and 12**

The Parties have reached an impasse regarding Plaintiffs' production of records of data shared with other healthcare, medical, wellness-related applications/websites, and will submit a joint letter brief outlining their respective positions on this dispute.

    b.    **Plaintiffs' Records from Google, Apple, Facebook, Twitter and Microsoft Responsive to Kaiser's Request for Production Nos. 23-30**

The Parties have reached an impasse regarding Plaintiffs' production of records of data from Google, Apple, Facebook, Twitter, and Microsoft, and will submit a joint letter brief outlining their respective positions on this dispute.

## IV. Other Issues/Obstacles To Discovery, Including Unripe Disputes

The Parties identify the following issues or obstacles to discovery the Parties have encountered which risk impacting the orderly progress of discovery in this action. The Parties have agreed to further meet and confer in an attempt to reach resolution without the need for judicial intervention on the following issues. Any issues that the Parties are unable to resolve will be raised in future joint letter briefs which the Parties anticipate submitting for resolution at the next Discovery Management Conference in January 2025.

**1. Plaintiffs' Issues**

a. Kaiser's designation of approximately 7,700 documents as "Highly Confidential – Source Code," which are only made available for in-person review.

b. The Parties' continued negotiations regarding custodians.

c. The Parties' continued negotiations regarding ESI keywords.

d. Kaiser's privilege logs and documents withheld for privilege.

e. The Parties' planned conferrals about Kaiser databases and systems with technical experts.

f. Kaiser's production of embedded link documents.

g. Kaiser's objection to increased deposition limits beyond the default number under the Federal Rules.

**2. Defendants' Issues**

a. Plaintiffs' review and confirmation of lists of downloaded healthcare, medical, or wellness-related websites and applications responsive to RFP 10.

b. The Parties' continued negotiation of HIPAA releases and stipulations for Defendants' access to Plaintiffs' Kaiser member account responsive to RFP 5.

c. Plaintiffs' objections to allowing a forensic examination of their devices pursuant to Fed. R. Civ. P. 34.

/ / /

/ / /

/ / /

/ / /

Dated: December 10, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  /s/ Kristin Housh

WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
KRISTIN P. HOUSH, Cal Bar No. 286651
khoush@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900
Facsimile:    858.509.3691

TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real, Suite 120
Menlo Park, CA 94025
Telephone:    650.815.2600
Facsimile:    650.815.2601

KARI M. ROLLINS *(Pro Hac Vice)*
krollins@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone:    212.653.8700
Facsimile:    212.653.8701

NOLAN J. WALTER, Cal Bar No. 325021
nwalter@sheppardmullin.com
KEVIN MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701

Jack F. Burns, Cal Bar No. 290523
jburns@sheppardmullin.com
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone:    619.338.6500
Facsimile:    619.234.3815

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser
Foundation Hospitals, and Kaiser Foundation Health
Plan of Washington

| | | |
|---|---|---|
| 1 | DATED: December 10, 2024 | **KESSLER TOPAZ MELTZER & CHECK, LLP** |
| 2 | | |
| 3 | | By: ___/s/ Tyler S. Graden___<br>Joseph H. Meltzer (appearance *pro hac vice*)<br>jmeltzer@ktmc.com |
| 4 | | Melissa L. Yeates (appearance *pro hac vice*)<br>myeates@ktmc.com |
| 5 | | |
| 6 | | Tyler S. Graden (appearance *pro hac vice*)<br>tgraden@ktmc.com |
| 7 | | Jordan E. Jacobson (Bar No. 302543)<br>jjacobson@ktmc.com |
| 8 | | 280 King of Prussia Road<br>Radnor, PA 19087 |
| 9 | | Telephone: (610) 667-7706<br>Facsimile: (610) 667-7056 |
| 10 | | -and– |
| 11 | | **KESSLER TOPAZ<br>  MELTZER & CHECK, LLP** |
| 12 | | Jennifer L. Joost (Bar No. 296164)<br>jjoost@ktmc.com |
| 13 | | One Sansome Street, Suite 1850<br>San Francisco, CA 94104 |
| 14 | | Telephone: (415) 400-3000<br>Facsimile: (415) 400-3001 |
| 15 | | -and– |
| 16 | | **CARELLA, BYRNE, CECCHI,<br>OLSTEIN, BRODY & AGNELLO, P.C.** |
| 17 | | James E. Cecchi (appearance *pro hac vice*)<br>jcecchi@carellabyrne.com |
| 18 | | Michael A. Innes (*pro hac vice* forthcoming)<br>minnes@carellabyrne.com |
| 19 | | Kevin G. Cooper (appearance *pro hac vice*)<br>kcooper@carellabyrne.com |
| 20 | | 5 Becker Farm Road<br>Roseland, New Jersey 07068 |
| 21 | | Telephone: (973)-994-1700<br>Facsimile: (973)-994-1744 |
| 22 | | -and- |
| 23 | | **CARELLA, BYRNE, CECCHI,<br>OLSTEIN, BRODY & AGNELLO, P.C.** |
| 24 | | Zachary Jacobs (appearance *pro hac vice*)<br>zjacobs@carellabyrne.com |
| 25 | | 222 S Riverside Plaza<br>Chicago, Illinois 06606 |
| 26 | | *Interim Co-Lead Class Counsel* |
| 27 | | |
| 28 | | |

**ATTESTATION**

The undersigned attests that concurrence in the filing of the foregoing document was obtained from all signatories.

DATED: December 10, 2024

                                        */s/ Kristin P. Housh*
                                        Kristin P. Housh