UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOES 1-5, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-02865-EMC   (PHK)<br><br>**DISCOVERY MANAGEMENT ORDER NO. 3 FOLLOWING DISCOVERY MANAGEMENT CONFERENCE OF DECEMBER 17, 2024**<br><br><u>Upcoming DMC Dates:</u><br>January 24, 2025 at 2:00 p.m.<br>February 25, 2025 at 1:00 p.m.<br>March 13, 2025 at 1:00 p.m. |

        On December 17, 2024, this Court held a Discovery Management Conference ("DMC") in the above-captioned matter regarding the status of discovery. *See* Dkt. 276. This Order memorializes the Court's rulings and provides further guidance to the Parties, consistent with the Court's directions on the record at the DMC, regarding the deadlines and directives issued by the Court during that hearing (all of which are incorporated herein by reference).

        In approaching these monthly DMCs and the disputes discussed at each DMC, the Court exercises its broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

        The party seeking discovery bears the burden of establishing that its request satisfies the

relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## I. Kaiser Relevancy Determinations

The Parties report a dispute as to the propriety of Kaiser's relevancy determinations in connection with Kaiser's production of documents using three negotiated search terms. [Dkt. 273 at 3-8]. The search terms apparently returned 2,415 new documents. After reviewing for relevance, Kaiser ultimately produced twenty-two documents based on this search. Plaintiffs argue that Kaiser's total production of "just" twenty-two documents "evidences an overly restrictive relevance review" by Kaiser. *Id.* at 4. While conceding that they "do not have access to the documents deemed non-relevant and therefore, cannot describe the corpus of the documents returned," Plaintiffs argue that "the numbers" alone "speak volumes." *Id.* at 4-5. Plaintiffs demand that Kaiser produce the remaining documents "immediately," insisting that "there is no harm or detriment to Kaiser associated with making this production." *Id.* at 5.

Kaiser, in opposing Plaintiffs' request, argues that it "diligently reviewed" all responsive documents and "conducted multiple quality checks" prior to making its production. *Id.* at 6. According to Kaiser, "the limited number of documents produced is not due to overly-restrictive

2

responsiveness or relevance calls on the part of Kaiser, but rather is a product of Plaintiffs' selection of overly broad search terms," which "yielded a plethora of irrelevant materials, including spam emails, newsletters, subscription notices, and other documents that are wholly unrelated to the case." *Id.*

At the DMC, Plaintiffs raised general concerns regarding Kaiser's "restrictive cordoning" of documents, stressing that this case is now entering the second phase of discovery. Plaintiffs confirmed no dispute that Kaiser, as the producing party, is entitled to perform relevance reviews of documents in its possession (though the Court reminds Kaiser that it bears the responsibility to perform such reviews appropriately without unduly restrictive withholding of responsive, relevant, non-privileged documents).

From the discussion at the DMC, it became apparent that the Parties' communications on this dispute are not complete. Accordingly, the Court **ORDERS** the Parties to meet and confer regarding this dispute. To the extent that the Parties determine that any responsive documents have been improperly withheld, Kaiser shall promptly make a supplemental production of such documents.

## II.     Plaintiffs' Responses to RFP Nos. 11-12 and 23-30

The Parties report a dispute concerning the adequacy of Plaintiffs' responses to Kaiser's Request for Production ("RFP") Nos. 11-12 and 23-30. [Dkt. 272].

<u>RFP Nos. 11-12</u>

RFP Nos. 11-12 seek information regarding the personal and/or health information Plaintiffs disclosed to third-party wellness-related applications and websites (fourteen total, including Apple Health, Zoc Doc, United Health, Fit Bit, INOVA, Soul Cycle, The Eye Center, Crunch Fitness, and Planet Fitness) since January 2019. *Id.* at 4 & n.2.

Plaintiffs argue that the discovery sought—screenshots showing, *inter alia*, Plaintiffs' Crunch Fitness attendance records, their Planet Fitness workout reminders, and their Soul Cycle performance and goal tracking—is irrelevant to this litigation, invasive, and unduly burdensome to collect and produce. *Id.* at 8. Plaintiffs also raise concerns regarding the propriety of requiring them to provide screenshots of personal health information that they disclosed to other healthcare

3

providers who are not the subject of this litigation.  *Id.*

Kaiser, in response, argues that because Plaintiffs allege that their data transmitted to third parties from Kaiser's website and apps was "sensitive" and "confidential" in nature, Plaintiffs' expectations of privacy with regard to that data is squarely at issue.  *Id.* at 4-5.  Kaiser argues that it has a right to explore the extent to which Plaintiffs willingly disclosed their personal health information to third parties, including other healthcare providers.  *Id.*  Kaiser argues that the discovery sought will enable it to identify the terms and conditions regarding data disclosure for at least some of the fourteen wellness-related apps, and thus, will allow Kaiser to test Plaintiffs' contentions regarding how they treated their data and their stated interest in keeping that data secret.

The Court finds that at least some of the information sought by these requests—most notably, workout reminders and exercise class attendance records—is only minimally related to healthcare, and thus, is largely irrelevant to this case.  Kaiser argues that Plaintiffs' burden to produce such materials would be minimal, but it is Kaiser's initial burden to demonstrate relevance.  As stated at the DMC, the Court **ORDERS** the Parties to meet and confer for purposes of narrowing the scope of the requests to only those materials that relate to Plaintiffs' health and/or medical care.

To the extent that Kaiser seeks personal health data voluntarily disclosed by Plaintiffs to third-party healthcare providers for purposes of equating such voluntary disclosure with the unauthorized disclosure to fourth and fifth parties that is alleged in this lawsuit, the Court finds the requests insufficiently relevant and disproportionate to the needs of the case.  *See Lineberry v. Addshoppers, Inc.*, No. 23-cv-01996-VC (PHK), 2024 WL 4707986, at *4 (N.D. Cal. Nov. 6, 2024) ("[H]ere the discovery sought is directed to instances where Plaintiffs may have chosen voluntarily to disclose personal information in a different setting and thus Defendant has not made a strong showing of relevance for purposes of discovery. . . . Ultimately, [the] discovery requests conflate Plaintiffs' voluntary sharing of information in other contexts with the involuntary and undisclosed tracking at issue here.").  At the DMC, Kaiser reported that the website terms and conditions for at least some of the third-party health care providers targeted by the instant

4

discovery requests do, in fact, authorize the disclosure of users' personal health information to fourth and fifth parties. The Parties confirmed that they have not met and conferred on this particular issue. Accordingly, the Court **ORDERS** the Parties to promptly do so.

<u>RFP Nos. 23-30</u>

RFP Nos. 23-30 seek information showing the privacy protections—including browser settings and plug-ins, privacy-protecting applications, and device security features—that Plaintiffs used since January 2019 that prevented or minimized allegedly improper tracking/transmissions of personal data. [Dkt. 272 at 4]. Plaintiffs have agreed to produce certain data files from Google and Apple. *Id.* at 5. Kaiser demands that Plaintiffs also produce certain Facebook files (identifying the user-agent strings and IP addresses used by Plaintiffs during the relevant time periods), Google Bookmarks.json and History.json files (showing Plaintiffs' internet browsing history and bookmarked webpages), and similar responsive data from Twitter and Microsoft. *Id.* at 5-6. Kaiser argues that the discovery sought will enable it to determine whether Plaintiffs disclosed their highly sensitive personal data at issue to third parties, as well as to determine whether Plaintiffs used any third-party browsers or privacy applications that would have blocked the cookies Plaintiffs complain about. *Id.* at 5. Kaiser argues that such information is highly relevant to whether Plaintiffs suffered actual damages from the alleged third-party wiretapping of Kaiser's website and apps. *Id.*

Plaintiffs, in response, argue that they have already agreed to produce much of the information sought by these requests, including files showing the settings for Plaintiffs' browsers, their installed browser extensions, their downloaded internet privacy and security tools, their IP addresses, and their device security settings. *Id.* at 6. In addition, Plaintiffs argue that Kaiser's request for information regarding Plaintiffs' entire internet browsing history and bookmarked webpages is unsupported and overly broad. *Id.* at 6-7.

To the extent that Kaiser seeks the named Plaintiffs' entire browsing history or IP address history during the relevant time period, the request is denied because it is not proportional to the needs of the case and is likely to include vast amounts of irrelevant material. *See Lineberry*, 2024 WL 4707986, at *6 ("Seeking review of four years' worth of emails for every advertisement and

seeking lists of every website visited over the last four years, are nevertheless burdensome requests."). As stated at the DMC, Plaintiffs are **ORDERED** to produce the Facebook user-agent string data for any and all named Plaintiffs who used Facebook during the relevant time period. To the extent any named Plaintiff did not use Facebook during the relevant time period, those named Plaintiffs are **ORDERED** to produce their Twitter user-agent string data.

This **RESOLVES** Dkt. 272.

**IT IS SO ORDERED.**

Dated: January 21, 2025

PETER H. KANG
United States Magistrate Judge