SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
KRISTIN P. HOUSH, Cal Bar No. 286651
khoush@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,

Defendants.

Case No. 3:23-cv-02865-EMC

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFF JOHN DOE'S CLAIMS AGAINST DEFENDANTS AND REQUEST TO STAY**

*Filed concurrently with Declaration of Wynter L. Deagle and [Proposed] Order*

Judge: Hon. Edward Chen
Date: May 29, 2025
Time: 1:30 p.m.
Crtrm.: 5

Consolidated Complaint Filed: December 6, 2024
Trial Date: January 25, 2027

**NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION**

PLEASE TAKE NOTICE that, on May 29, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Kaiser Foundation Health Plan, Inc. ("KFHP"), Kaiser Foundation Hospitals ("Hospitals"), and Kaiser Foundation Health Plan of Washington ("KFHPW") (collectively, "Defendants" or "Kaiser") will, and hereby do, move to compel arbitration of all claims asserted by Plaintiff John Doe ("JD"), and stay this case pending arbitration as to JD. Pursuant to the Federal Arbitration Act ("FAA"), Defendants bring this Motion on the grounds that JD should be compelled to abide by his father's agreement to arbitrate his claims against Defendants. JD's claims arise from and/or relate to his father's agreement for medical plans containing arbitration provisions. This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declaration of Wynter Deagle, the exhibits thereto, the [Proposed] Order filed concurrently herewith, all other pleadings, records, and papers on file, deemed to be on file, or of which the Court may or must take judicial notice at the time the Motion is heard, and upon such further evidence and arguments as may be presented at or before the time of the hearing.

**ISSUE PRESENTED**

Whether under the FAA: (i) a valid agreement to arbitrate exists, and if it does, (ii) whether the agreement encompasses the claims asserted by JD in this litigation such that all of JD's claims must be arbitrated on an individual basis.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION ..... i

TABLE OF AUTHORITIES ..... iii

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. RELEVANT PROCEDURAL HISTORY ..... 3

A. This Court Previously Found the Materially Identical Arbitration Agreement to Be Enforceable. ..... 3

B. Plaintiffs Conceded in Their Opposition to Defendants' Second Motion to Compel Arbitration that JD's Claims Must Be Compelled to Arbitration. ..... 4

C. Plaintiffs Filed Their Consolidated Master Class Action Complaint and Reasserted Claims on Behalf of Plaintiff JD. ..... 4

D. Defendants Attempted to Meet and Confer to Avoid The Instant Motion. ..... 6

III. FACTUAL BACKGROUND ..... 6

A. The Parties. ..... 6

B. JD's Father Enrolled in KFHP Health Plans with JD as a Covered Dependent. ..... 7

1. Enrollment through Labor Management. ..... 7

2. The LM EOCs. ..... 8

3. Enrollment through CalPortland. ..... 10

4. The CalPortland EOCs. ..... 11

IV. ARGUMENT ..... 13

A. Legal Standard ..... 13

B. The Arbitration Agreements Are Valid and Enforceable Against JD. ..... 14

1. The EOCs Contain Valid Arbitration Agreements. ..... 14

2. JD Is Bound by the Arbitration Agreements Agreed to by His Father. ..... 16

3. Defendants Can Enforce the Arbitration Agreements as their Intended Third-Party Beneficiaries. ..... 17

4. JD's Claims Still "Touch Matters" Covered by the Arbitration

Agreements......18
C. The Court Should Compel Individual, Non-Class Arbitration. ......22
D. The Court Should Issue a Stay of JD's Claims Pending the Outcome of the Arbitration Proceeding. ......24
V. CONCLUSION ......24

# TABLE OF AUTHORITIES

Page(s)

Cases

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) .......... 22

*Chan v. Charter Communications Holding Company*
No. EDCV 15-0886, 2015 WL 12655701 (C.D. Cal. Aug. 6, 2015) .......... 16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
207 F.3d 1126 (9th Cir. 2000) .......... 14

*Doyle v. Giuliucci*
62 Cal. 2d 606 (1965) .......... 16

*Drissi v. Kaiser Found. Hosps., Inc.*
543 F. Supp. 2d 1076 (N.D. Cal. 2008) .......... 15

*First Options of Chicago, Inc. v. Kaplan*
514 U.S. 938 (1995) .......... 14, 16

*Gilmer v. Interstate/Johnson Lane Corp.*
500 U.S. 20 (1991) .......... 18

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*
232 Cal. App. 4th 1332 (2015) .......... 16

*Harris v. Super. Ct.*
188 Cal. App. 3d 475 (1986) .......... 17

*Hunter v. Kaiser Found. Health Plan, Inc.*
434 F. Supp. 3d 764 (N.D. Cal. 2020) .......... 15

*Johnson v. Charter Commc'ns, Inc.*
No. 21-cv-06135, 2022 WL 2673091 (N.D. Cal. June 2, 2022) .......... 18

*Lamps Plus, Inc. v. Varela*
139 S. Ct. 1407 (2019) .......... 22, 23

*Lewis v. UBS Fin. Servs.*
818 F. Supp. 2d 1161 (N.D. Cal. 2011) .......... 24

*Lim v. TForce Logistics, LLC*
8 F.4th 992 (9th Cir. 2021) .......... 14

*Loucks v. Kaiser Found. Hosps.*
No. 20-cv-01216, 2020 WL 3469326 (N.D. Cal. June 25, 2020) .......... 14, 16

*Madden v. Kaiser Found. Hosps.*
17 Cal. 3d 699 (1976) .......... 15

*Magno v. Kaiser Found. Health Plan, Inc.*
No. 22-cv-017996, 2023 Cal. Super. LEXIS 76990 (Alameda Cnty. Super. Ct. Feb. 7, 2023) .......... 15, 16, 21

*Martinez v. BaronHR, Inc.*
51 Cal. App. 5th 962 (2020) .......... 14

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*
109 Cal. App. 4th 1705 (2003) .......... 14

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*
22 Cal. App. 5th 1096 (2018) .......... 13

*Pietrelli v. Peacock*
13 Cal. App. 4th 943 (1993) .......... 16

*Piterman v. Gold Coast Exotic Imps. LLC*
No. 5:20-cv-07724, 2021 WL 1853769 (N.D. Cal. May 10, 2021) .......... 17

*Rice v. Downs*
248 Cal. App. 4th 175 (2016) .......... 18

*Roman v. Super. Ct.*
172 Cal. App. 4th 1462 (2009) .......... 16, 21

*Ronay Fam. Ltd. P'ship v. Tweed*
216 Cal. App. 4th 830 (2013) .......... 17

*Sanchez v. Valencia Holding Co., LLC*
61 Cal. 4th 899 (2015) .......... 22

*Smith v. Spizzirri*
601 U.S. 472 (2024) .......... 24

*Smith v. Watanabe*
No. 21-cv-07872, 2022 WL 6282201 (N.D. Cal. Sept. 27, 2022) .......... 15, 16, 21, 23

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*
559 U.S. 662 (2010) .......... 22, 23

*Toledo v. Kaiser Permanente Med. Grp.*
987 F. Supp. 1174 (N.D. Cal. 1997) .......... 15

*Volt Info. Sciences v. Leland Stanford Jr. University*
489 U.S. 468 (1989) .......... 14

*Weiler v. Marcus & Millichap Real Estate Inv. Servs., Inc.*
22 Cal. App. 5th 970 (2018) .......... 24

*Wilson v. Kaiser Found. Hosps.*
141 Cal. App. 3d 891 (1983) .......... 15, 16, 17

*Winninger v. Scott*
No. 21-cv-04689, 2022 WL 3205035 (N.D. Cal. July 5, 2022) .......... 21

*Yeh v. Tesla, Inc.*
No. 23-cv-01704, 2023 WL 6795414 (N.D. Cal. Oct. 12, 2023) .......... 16

Statutes

9 U.S.C. § 3 .......... 24

Cal. Civ. Code § 1559 .......... 17

Cal. Civ. Proc. Code § 116.220 .......... 22

Cal. Civ. Proc. Code § 1281.4 .......... 24

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

In March 2024, this Court compelled Plaintiff John Doe's ("JD") pre-April 2021 claims to arbitration, finding that JD's arbitration agreement applied to his claims relating to the use of online technologies on Kaiser Foundation Health Plan, Inc.'s ("KFHP") website and mobile applications. (Order Granting Defendants' Motion to Compel Arbitration ("MTC Order"), ECF No. 119, at 17.) In granting Defendants' initial Motion to Compel Arbitration, (ECF No. 82,) this Court granted JD leave to amend—but with specific instructions that "[t]o the extent JD wishes to amend his claims so that he can plead pre-April 2021 claims . . . he should . . . consider whether there is an arbitration provision that applies to him through his father's health plan." (ECF No. 119 at 17.) JD has now ignored this directive twice.

Prior to consolidation, Plaintiffs filed the Second Amended Complaint ("SAC"), (ECF No. 131,) asserting pre-April 2021 claims that were subject to ***materially identical*** arbitration provisions as the provision enforced by this Court in the MTC Order which compelled JD's post-April 2021 claims to arbitration. Indeed, in his opposition to Defendants' second Motion to Compel Arbitration,[1] JD agreed that the MTC Order resolved the second Motion to Compel JD's claims in the SAC in Defendants' favor. (ECF No. 119 at 17.)

Plaintiffs' Consolidated Master Class Action Complaint ("CMC"), (ECF No. 271) asserts the ***same*** claims on behalf of JD. Each of JD's causes of action is ***still*** based on an alleged duty under an Evidence of Coverage ("EOC") and JD's relationship with KFHP—placing the dispute, as this Court already found in the MTC Order—and as Plaintiffs conceded—squarely within the scope of the arbitration provisions at issue in this Motion. (*See* ECF No. 119 at 13.) JD must be compelled to arbitration, again.[2]

---

[1] This motion was taken off-calendar when the Court ordered Plaintiffs to file a consolidated complaint. (*See* ECF No. 233 at 1.)

[2] JD, for a second time, failed to evaluate whether his pre-April 2021 claims were governed by an enforceable arbitration provision (they are) as instructed by the Court. Plaintiffs' counsel was on notice that the arbitration provision applied—from (1) Defendants' Reply to Plaintiffs' Opposition to its initial Motion to Compel, (ECF No. 112 at 12 n.8,) (2) the Court's note on this issue in the

First, there are valid enforceable arbitration agreements governing JD's relationship with KFHP prior to 2021. At all relevant times, JD was enrolled in a health plan issued by KFHP, through which he received health care coverage. To enroll in KFHP's health plan, JD's father signed an enrollment form and received an EOC that included provisions to arbitrate that are materially identical to the provision adjudicated in the MTC Order. The provisions require arbitration of any claim brought against any of the Defendants arising from or relating to an alleged violation of any duty incident to or arising out of or relating to either (i) the health plan agreement with KFHP—the EOC; or (ii) JDs' relationship to KFHP, including any claim relating to the coverage for, or delivery of, services or items, irrespective of the legal theories upon which the claim is asserted.

Second, JD's claims in the CMC are again covered by the scope of these arbitration provisions. The theory of JD's case has not changed in the CMC. JD's causes of action are all still based on the assertion that Defendants "installed code from multiple third parties throughout the Kaiser website and mobile applications that allows a third party . . . to intercept the content of Plaintiffs and Class Members'" personal information. (CMC ¶ 4.) JD further alleges that he uses KFHP's website, Patient Portal, and Kaiser Permanente App to perform various tasks relating to the health care and treatment he received under his KFHP health plan. (*See id.* ¶ 27.) Based on these allegations alone, there can be no dispute that the "claims relate[] to an alleged violation of a

---

MTC Order, (ECF No. 119 at 17,) and (3) Defendants' second Motion to Compel Arbitration. (ECF No. 195.) Yet, Plaintiffs' counsel took no action to verify the existence of such a provision and have apparently ignored the evidence that a similar arbitration provision likely obligated JD to arbitrate his claims in the CMC. Just as with the SAC, Plaintiffs, again, did not propound any discovery for the relevant enrollment forms or EOCs before filing the CMC (and still have not). (Declaration of Wynter Deagle ("Deagle Decl.") ¶ 2.) Nor did Plaintiffs' counsel ask Defendants' counsel to informally provide the relevant agreements between the parties—as Defendants' counsel willingly did prior to filing the first Motion to Compel. (*Id.*) What is more, Defendants' counsel proactively reached out to Plaintiffs' counsel after the SAC was filed and provided them with the relevant Enrollment Forms and EOCs demonstrating that an arbitration provision—materially identical to the one adjudicated in the MTC Order—required JD to arbitrate his claims in the SAC (and now in the CMC). (*Id.* ¶ 3) Plaintiffs' counsel refused to withdraw JD's claims, and the parties have been unable to reach an agreement as to stipulating to arbitration. (*Id.*) ¶ 4. This conduct demonstrates a clear disregard for counsel's obligation to ensure JD's claims in the SAC, and now the CMC, could properly proceed before this Court and has saddled the Court with yet another unnecessary, wasteful, and repetitive motion.

duty related to the EOC as well as . . . to a Member's relationship to Kaiser"—i.e., the same reason this Court found the arbitration provision in the FAC applied to JD's dispute. (ECF No. 119 at 13.)

Accordingly, Defendants respectfully request that the Court once again compel individual arbitration of JD's claims and stay his claims pending the outcome of that arbitration.

## II. RELEVANT PROCEDURAL HISTORY

### A. This Court Previously Found the Materially Identical Arbitration Agreement to Be Enforceable.

On June 9, 2023, Plaintiffs filed their initial Complaint in this action. (ECF No. 1.) On September 15, 2023, Plaintiffs filed the First Amended Complaint ("FAC") asserting claims for violations of state and federal privacy statutes, tort law, and contract provisions stemming from information Plaintiffs provided to Defendants through the use of KFHP's website and mobile applications that was purportedly disclosed to third parties. (ECF No. 44.)

On March 26, 2024, this Court compelled JD's individual claims to arbitration. (ECF No. 119.) This Court held: (1) the arbitration agreement is governed by the FAA; (2) the arbitration agreement in the EOC extends to the Terms and Conditions ("TAC"); (3) the arbitration agreement is valid and JD's claims fall within the scope of the arbitration agreement, and (4) the arbitration agreement does not allow for class arbitration. (*Id.*) This Court explained that "the arbitration clause as worded is quite broad—covering claims related to an alleged violation of a duty related to the EOC as well as claims related to a Member's relationship to Kaiser. The claims here fall within that broad language. Furthermore, one of the examples given of an arbitrable claim is a claim relating to the coverage for or delivery of services or items. The website and mobile application fall under that category." (ECF No. 119 at 13–14.) The Court granted JD leave to amend—but with specific instructions that "[t]o the extent JD wishes to amend his claims so that he can plead pre-April 2021 claims . . . he should . . . consider whether there is an arbitration provision that applies to him through his father's health plan." (*Id.* at 17.)

/ / /

/ / /

### B. Plaintiffs Conceded in Their Opposition to Defendants' Second Motion to Compel Arbitration that JD's Claims Must Be Compelled to Arbitration.

On May 9, 2024, Plaintiffs filed the SAC. (ECF No. 131.) In the SAC, JD asserted the same causes of action against KFHP and/or Hospitals on the same theory as he did in the FAC.[3] Defendants again moved to compel JD to arbitration. (ECF No. 195.) In their Opposition to Defendants' second Motion to Compel Arbitration, (ECF No. 226,) Plaintiffs "acknowledge[d] that the Court disagreed with Plaintiff's prior positions ***in a manner that effectively resolves the Motion in Kaiser's favor***" and "in light of the Court's prior analysis and decision [Arbitration Order], Plaintiffs refrain[ed] from fully reiterating the arguments made in the prior opposition." (*Id.* at 3:17–20 (emphasis added).) On August 27, 2024, the Court consolidated the actions *John Doe, et al. v. Kaiser Foundation Health Plan, Inc., et al.* (Case No. 3:23-cv-02865), *Christopher Newton, et al. v. Kaiser Foundation Health Plan, Inc.*, *et al.* (Case No. 3:24-cv-03625), and *Alexis Sutter v. Kaiser Foundation Health Plan, Inc.* (Case No. 3:24-cv-03352), (ECF No. 233 at 1)—and Defendants' second Motion to Compel Arbitration was taken off calendar before this Court had a chance to rule on it. (*Id.* at 2.)

### C. Plaintiffs Filed Their Consolidated Master Class Action Complaint and Reasserted Claims on Behalf of Plaintiff JD.

On December 6, 2024, Plaintiffs filed the CMC. (ECF No. 271.)[4] In the CMC, JD once again asserts the same nine causes of action against KFHP and/or Hospitals: (1) Violation of the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act"), 18 U.S.C. §§ 2510, *et seq.*; (2) Violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.*; (3) Common Law Invasion of Privacy—Intrusion Upon Seclusion; (4) Invasion of Privacy in Violation of the California Constitution, Art. 1, § 1; (5) Breach of Express Contract; (6) Breach of

---

[3] In the FAC, JD also asserted a tenth claim for Violation of California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* However, this claim was dropped from the SAC.

[4] The named plaintiff in the *Sutter* action—Alexis Sutter—is not a resident of California, and the named Plaintiffs in the *Newton* action—Christopher Newton, Christa Vital, and Scott Schutza—did not join in the CMC. Therefore, this Motion limits its analysis to JD—the sole California plaintiff in the *Doe* action.

Implied Contract; (7) Negligence (Including Negligence Per Se); (8) Violation of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56.10, *et seq.*; and (9) Statutory Larceny Through False Pretenses, Cal. Penal Code §§ 484, 496. (*Id.* ¶¶ 443, 472, 489, 505, 518, 566, 583, 607, 619.)

As noted above, the CMC reasserts JD's causes of action on the same theory as he did in the FAC. To do so, the CMC leaves unchanged the core allegations of the FAC. (*Compare, e.g.*, CMC ¶ 4 (alleging that "unbeknownst to Plaintiffs and other Kaiser Plan Members, Kaiser[5] has installed code from multiple third parties throughout the Kaiser website and mobile applications that allows third party companies, including but not limited to Quantum Metric, Twitter, Adobe, Microsoft Bing, and Google . . . to intercept the content of Plaintiffs and Class Members' patient status, identifying information, medical topics researched, choices made, information shared and communications with their medical providers, including personally identifiable medical information, Protected Health Information ('PHI') that Kaiser was required to protect under the Health Insurance Portability and Accountability Act of 1996 ('HIPAA'), 42 U.S.C. § 1320d-6, and other confidential information and communications, when that information is in transit"), *with* FAC ¶ 4 (same); CMC ¶ 27 (alleging that JD regularly uses the Site and Kaiser Permanente App to "access medical information and communicate with his health care providers, including making appointments, reviewing and ordering prescriptions, researching providers and medical conditions, communicating with providers, checking medical results, and reviewing his medical history"), *with* FAC ¶ 15 (same); CMC ¶ 139 (alleging that JD logged into the patient portal on the Site on June 6, 2023 and accessed test results), *with* FAC ¶ 88 (same); CMC ¶ 143 (alleging that JD logged into the patient portal on the Site and participated in a Social Health Review), *with* FAC ¶ 92 (same).)[6]

[5] The CMC improperly lumps all Defendants together as "Kaiser" in its allegations. (*See* CMC at 1:3–4.)

[6] Numerous other allegations in the CMC regarding JD's use of the website and mobile application are also identical to the FAC's allegations. (*Compare* CMC ¶ 144, *with* FAC ¶ 93; CMC ¶ 145, *with* FAC ¶ 94; CMC ¶ 146, *with* FAC ¶ 95; CMC ¶¶ 198, 277, *with* FAC ¶¶ 127, 159; CMC ¶ 200, *with* FAC ¶ 129; CMC ¶ 284, *with* FAC ¶ 171; CMC ¶ 288, *with* FAC ¶ 179;

In fact, the only difference between JD's allegations in the CMC and FAC are bald allegations that relate to the time period of his coverage under a KFHP health plan and the time period he used the Kaiser site and mobile application. In the CMC, JD now alleges he obtained medical treatment prior to April 2021 under his father's enrollment in KFHP health plans, and that he first began using the Kaiser website ("Site") and Kaiser Permanente App ("App") in January 2014. (*See* CMC ¶¶ 26–28.)

### D. Defendants Attempted to Meet and Confer to Avoid The Instant Motion.

On December 17, 2024, counsel for Defendants sent a meet and confer email to Plaintiff's counsel asking if Plaintiffs were willing to stipulate to arbitrating JD's claims. (Deagle Decl. ¶ 4.) Counsel for Defendants followed up with Plaintiff's counsel on December 19, 2024. (*Id.*) On December 19, 2024, Plaintiff's counsel responded asking for a draft stipulation that they could consider. (*Id.*) That same day, counsel for Defendants sent Plaintiff's counsel a stipulation regarding arbitration. (*Id.*) The next day, December 20, 2024, Plaintiff's counsel stated they would get back to Defendants after discussing internally. (*Id.*) Defendants did not receive proposed edits to their stipulation until January 22, 2025. (*Id.*) As of the filing of this Motion, the Parties have been unable to reach an agreement as to stipulating to Arbitration. (*Id.*)

## III. FACTUAL BACKGROUND

### A. The Parties.

KFHP is a health care plan. (CMC ¶¶ 70–72.) KFHP operates a website with a homepage located at https://healthy.kaiserpermanente.org (the "Site") and two relevant mobile applications—the Kaiser Permanente App and the Kaiser Permanente Washington App (each an "App" and collectively the "Apps")—through which enrollees in any of the health plans offered by KFHP ("Kaiser Plan Members") can perform various tasks, such as scheduling appointments; checking medical results; reviewing medical histories; researching doctors, locations, and medical services; communicating with providers and paying medical bills. (*Id.* ¶¶ 83, 94.) Hospitals is a non-profit, public benefit corporation that operates various acute care hospitals and medical offices in

CMC ¶ 282, *with* FAC ¶ 166.)

California, Colorado, Hawaii, Maryland, Virginia, Oregon, Washington, and the District of Columbia. (*Id.* ¶¶ 72–73.) Kaiser Plan Members have access to the medical offices and hospitals operated by Hospitals. (*Id.* ¶ 71.) JD does not allege any claims against KFHPW. He is not a Washington resident and does not allege he participated in a KFHPW health plan or used the Kaiser Permanente Washington App.

JD alleges that he has regularly used KFHP's Site, Patient Portal, and Kaiser Permanente App from January 2014 to present. (*Id.* ¶¶ 27–28.)

**B. JD's Father Enrolled in KFHP Health Plans with JD as a Covered Dependent.**

During the relevant time period for this Motion—January 1, 2014 to March 31, 2021—JD's father was enrolled in, and JD was a covered dependent under, two separate Kaiser health plans through two separate employers and/or unions. Beginning April 1, 2021, through the present—and as discussed in the MTC Order—JD was insured by KFHP through his union. (ECF No. 83 ¶¶ 8–10, 12; ECF No. 84 ¶¶ 10–11 & Exh. G; ECF No. 119 at 2.) The Court has already determined that all of JD's claims relating to that time period must be compelled to arbitration, such that Defendants do not address that time period in this Motion.

**1. Enrollment through Labor Management.**

From January 1, 2014 to October 1, 2015, JD's father was enrolled in—and JD was a covered dependent under—the Kaiser Permanente Traditional Plan through the father's union, Labor Management Universal Health Benefits Trust Fund ("LM"). (Declaration of Duane Walker ("Walker Decl."), ECF No. 200, ¶ 4, Exh. A; *id.* ¶ 4, Exh. B.) To enroll in the health plan, JD's father filled out, signed, and returned a "California Region Group Enrollment/Change" form (the "LM Enrollment Form"). (Declaration of Karen Urban ("Urban Decl."), ECF No. 199, ¶ 5; Walker Decl. ¶ 5, Exh. C.)

The LM Enrollment Form that was signed by JD's father to initiate enrollment includes the following notice regarding arbitration of disputes:

> **<u>Kaiser Foundation Health Plan, Inc. and Kaiser Permanente Insurance Company Arbitration Agreement</u>**
>
> I understand that (except for [certain claims not applicable here]) any dispute between myself, my heirs, relatives, or other associated parties on the one hand and

> Kaiser Foundation Health Plan, Inc. (KFHP), Kaiser Permanente Insurance Company (KPIC), any contracted health care providers, administrators, or other associated parties on the other hand, for alleged violation of any duty arising out of or related to membership in KFHP or coverage by KPIC, including any claim for medical or hospital malpractice (a claim that medical services were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered), for premises liability, or relating to the coverage for, or delivery of, services or items, irrespective of legal theory, must be decided by binding arbitration under California law and not by lawsuit or resort to court process, except as applicable law provides for judicial review of arbitration proceedings. I agree to give up our right to a jury trial and accept the use of binding arbitration. I understand that the full arbitration provision is contained in the *Evidence of Coverage* and in the *Certificate of Insurance*.
>
> *Disputes arising from any of the following KPIC products are not subject to binding arbitration: 1) Tiers 2 & 3 of the Point of Service (POS) Plans; 2) the Preferred Provider Organization (PPO) and Out of Area Indemnity (OOA) Plans; and 3) the KPIC Dental plans.

(Walker Decl. ¶ 5, Exh. C.) This provision is *materially identical* to the Trust Enrollment Form that the Court evaluated when granting Defendants' prior Motion to Compel Arbitration of JD's claims. (*See* ECF No. 119 at 2.)[7]

Further, the arbitration provision is in a separate section of the LM Enrollment Form, separated by a printed black line from the other sections. (Walker Decl. ¶ 5, Exh. C.) It has a bolded and underlined heading identifying the provision. (*Id.*) It is located immediately before the signature line that JD's father signed. (*Id.*) Moreover, the Group Agreement between KFHP and LM for each plan year required that JD's father receive notice of the then-current EOC—containing the full arbitration provision. (Walker Decl. ¶ 16, Exh. M at M-4; *id.* ¶ 17, Exh. N at N-4.)[8]

**2. The LM EOCs.**

Following receipt of the Enrollment Form, KFHP enrolled JD's father, and his dependents including JD, into the health plan. (Urban Decl. ¶ 6.) Coverage was provided pursuant to the

---

[7] The only changes relate to the wording of the enumerated exceptions under the provision—which are otherwise the same—and the inclusion of Kaiser Permanente Insurance Company as a party.

[8] In addition, KFHP makes the EOC available to all Kaiser Plan Members on the website www.kp.org/plandocuments. (Walker Decl. ¶ 2.)

then-current EOC, a document that applies to all LM enrollees in the health plan. (*Id.*) The introduction for the EOC for the 2014 plan year (beginning on January 1, 2014), and the EOC for the 2015 plan year (beginning on March 1, 2015), both provide:

> This *Evidence of Coverage* describes the health care coverage of "Kaiser Permanente Traditional Plan" provided under the *Group Agreement (Agreement)* between Health Plan (Kaiser Foundation Health Plan, Inc.) and your Group (the entity with which Health Plan has entered into the *Agreement*).

(Walker Decl. ¶ 6, Exh. D at D-7; *id.* ¶ 7, Exh. E at E-7.) Both EOCs also contain a section on dispute resolution, including binding arbitration (as referenced in the LM Enrollment Form). (Walker Decl. ¶ 6, Exh. D at D-59–D-61; *id.* ¶ 7, Exh. E at E-61–E-63.) Specifically, the arbitration clause in both EOCs provides:

> For all claims subject to this "Binding Arbitration" section, both Claimants and Respondents give up the right to a jury or court trial and accept the use of binding arbitration. Insofar as this "Binding Arbitration" section applies to claims asserted by Kaiser Permanente Parties, it shall apply retroactively to all unresolved claims that accrued before the effective date of this Evidence of Coverage. Such retroactive application shall be binding only on the Kaiser Permanente Parties.

(Walker Decl. ¶ 6, Exh. D at D-59; *id.* ¶ 7, Exh. E at E-61.)[9] The scope of arbitration in both EOCs is described as follows:

> Any dispute shall be submitted to binding arbitration if all the following requirements are met:
>
> The claim arises from or is related to an alleged violation of any duty incident to or arising out of or relating to this *Evidence of Coverage* or a Member Party's relationship to Kaiser Foundation Health Plan, Inc. ("Health Plan"), including any claim . . . relating to the coverage for, or delivery of, services or items, irrespective of the legal theories upon which the claim is asserted.
>
> The claim is asserted by one or more Member Parties against one or more Kaiser Permanente Parties or by one or more Kaiser Permanente Parties against one or more Member Parties.
>
> Governing law does not prevent the use of binding arbitration to resolve the claim.

---

[9] "Claimant" refers to a Member Party or a Kaiser Permanente Party who asserts a claim as described above. "Respondent" refers to a Member Party or a Kaiser Permanente Party against whom a claim is asserted. (Walker Decl. ¶ 6, Ex. D at D-60; *id.* ¶ 7, Ex. E at E-62.)

(Walker Decl. ¶ 6, Exh. D at D-59; *id.* ¶ 7, Exh. E at E-61.)[10]

The arbitration provisions in the EOCs are *materially identical* to those that this Court determined required JD's claims to be arbitrated in its prior MTC Order. (*Compare* Walker Decl. ¶ 6, Exh. D at D-59–D-61 *and id.* ¶ 7, Exh. E, at E-61–E-63, *with* ECF No. 119 at 3–4.) The only differences relate to the abbreviations for names and the procedure for selecting the number of arbitrators. (*Compare* Walker Decl. ¶ 6, Exh. D at D-59–D-61 *and id.* ¶ 7, Exh. E, at E-61–E-63, *with* ECF No. 119 at 3–4.)

**3. Enrollment through CalPortland.**

From October 1, 2015 to March 31, 2021, JD's father was enrolled in—and JD was a covered dependent under—the Kaiser Permanente Deductible HMO Plan through the father's employer, CalPortland Company ("CalPortland"). (Walker Decl. ¶ 4, Exh. A at A-1; *id.* ¶ 4, Exh. B at B-1.) To enroll in the health plan, JD's father filled out, signed, and returned a "2015 Benefits Enrollment/Change" form (the "CalPortland Enrollment Form"). (Declaration of Kurt Peters ("Peters Decl."), ECF No. 198, ¶¶ 8–9 & Exh. A.)

The CalPortland Enrollment Form that was signed by JD's father to initiate enrollment includes the following notice regarding arbitration of disputes:

> **<u>Kaiser Foundation Health Plan Arbitration Agreement</u>**
>
> **I understand that (except for [certain claims not applicable here]) any dispute between myself, my heirs, relatives, or other associated parties on the one hand and the Health Plan, its health care providers, or other associated parties on the other hand, for alleged violation of any duty arising out of or related to membership in the Health Plan, including any claim for medical or hospital malpractice (a claim that medical services were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered), for premises liability, or relating to the coverage for, or delivery of, services or items, irrespective of legal theory, must be decided by binding arbitration under California law and not by lawsuit or resort to court process, except as applicable law provides for judicial review of arbitration proceedings. I agree to give up our right to a jury trial and accept the use of binding arbitration. I understand that the full arbitration provision is contained in the *Evidence of***

[10] "Kaiser Permanente Parties" is defined to expressly include, *inter alia*, KFHP and Hospitals. (Walker Decl. ¶ 6, Ex. D at D-60; *id.* ¶ 7, Ex. E at E-61.) "Member Parties" is defined to include a Member (like JD) as well as "[a]ny person claiming that a duty to him or her arises from a Member's relationship to one or more Kaiser Permanente Parties." (Walker Decl. ¶ 6, Ex. D at D-60; *id.* ¶ 7, Ex. E at E-61.)

***Coverage.***

(*Id.* ¶ 9, Exh. A at A-5.) This provision is again *materially identical* to the Trust Enrollment Form that the Court evaluated when granting Defendants' prior Motion to Compel Arbitration of JD's claims. (*See* ECF No. 119 at 2.)

Further, the arbitration provision is in a separate section of the CalPortland Enrollment Form, enclosed within a printed black box. (Peters Decl. ¶ 9, Exh. A at A-5.) It has a bolded and underlined heading identifying the provision. (*Id.*) It is located immediately before the signature line that JD's father signed. (*Id.*) Moreover, the Group Agreement between KFHP and CalPortland for each plan year required that JD's father receive notice of the then-current EOC—containing the full arbitration provision. (Walker Decl. ¶ 18, Exh. O at O-4; *id.* ¶ 19, Exh. P at P-4; *id.* ¶ 20, Exh. Q at Q-4; *id.* ¶ 21, Exh. R at R-4; *id.* ¶ 22, Exh. S at S-4; *id.* ¶ 23, Exh. T at T-4; *id.* ¶ 24, Exh. U at U-4.)[11]

**4. The CalPortland EOCs.**

Following receipt of the Enrollment Form, KFHP enrolled JD's father, and his dependents including JD, into the health plan. (Peters Decl. ¶ 10.) Coverage was provided pursuant to the then-current EOC, a document that applies to all CalPortland enrollees in the health plan. (*Id.*) The introduction for the EOC for the 2015 plan year (beginning January 1, 2015), and the EOCs for the 2016–2021 plan years (beginning January 1, 2016; January 1, 2017; January 1, 2018; January 1, 2019; January 1, 2020; and January 1, 2021, respectively), all provide:[12]

> This *Evidence of Coverage* describes the health care coverage of "Kaiser Permanente Deductible HMO Plan" provided under the *Group Agreement (Agreement)* between Health Plan (Kaiser Foundation Health Plan, Inc.) and your Group (the entity with which Health Plan has entered into the *Agreement*).

(Walker Decl. ¶ 9, Exh. F, at F-7; *id.* ¶ 10, Exh. G, at G-7; *id.* ¶ 11, Exh. H, at H-13; *id.* ¶ 12, Exh. I, at I-13; *id.* ¶ 13, Exh. J, at J-15; *id.* ¶ 14, Exh. K, at K-31; *id.* ¶ 15, Exh. L, at L-32.) All EOCs

[11] In addition, KFHP makes the EOC available to all Kaiser Plan Members on the website www.kp.org/plandocuments. (Walker Decl. ¶ 2.)

[12] The Kaiser Permanente Deductible HMO Plan Evidences of Coverage for CalPortland enrollees for plan years 2017 through 2021 add a parenthetical after "Evidence of Coverage" with the shortform "EOC."

also contain a section on dispute resolution, including binding arbitration (as referenced in the CalPortland Enrollment Form). (Walker Decl. ¶ 9, Exh. F, at F-63–F-65; *id*. ¶ 10, Exh. G, at G-65–G-67; *id*. ¶ 11, Exh. H, at H-72–H-74; *id*. ¶ 12, Exh. I, at I-75–I-77; *id*. ¶ 13, Exh. J, at J-77–J-79; *id*. ¶ 14, Exh. K, at K-86–K-88; *id*. ¶ 15, Exh. L, at L-88–L-90.) Specifically, the arbitration clause in all EOCs provides:[13]

> For all claims subject to this "Binding Arbitration" section, both Claimants and Respondents give up the right to a jury or court trial and accept the use of binding arbitration. Insofar as this "Binding Arbitration" section applies to claims asserted by Kaiser Permanente Parties, it shall apply retroactively to all unresolved claims that accrued before the effective date of this *Evidence of Coverage*. Such retroactive application shall be binding only on the Kaiser Permanente Parties.

(Walker Decl. ¶ 9, Exh. F, at F-63; *id*. ¶ 10, Exh. G, at G-65; *id*. ¶ 11, Exh. H, at H-72; *id*. ¶ 12, Exh. I, at I-75; *id*. ¶ 13, Exh. J, at J-77; *id*. ¶ 14, Exh. K, at K-86; *id*. ¶ 15, Exh. L, at L-88.)[14] The scope of arbitration in all EOCs is described as follows:[15]

> Any dispute shall be submitted to binding arbitration if all the following requirements are met:
>
> The claim arises from or is related to an alleged violation of any duty incident to or arising out of or relating to this *Evidence of Coverage* or a Member Party's relationship to Kaiser Foundation Health Plan, Inc. ("Health Plan"), including any claim . . . relating to the coverage for, or delivery of, services or items, irrespective of the legal theories upon which the claim is asserted.
>
> The claim is asserted by one or more Member Parties against one or more Kaiser Permanente Parties or by one or more Kaiser Permanente Parties against one or more Member Parties.
>
> Governing law does not prevent the use of binding arbitration to resolve the claim.

---

[13] The Kaiser Permanente Deductible HMO Plan Evidences of Coverage for CalPortland enrollees for plan years 2017 through 2021 abbreviate internal references to "Evidence of Coverage" to "EOC."

[14] "Claimant" refers to a Member Party or a Kaiser Permanente Party who asserts a claim as described above. "Respondent" refers to a Member Party or a Kaiser Permanente Party against whom a claim is asserted. (Walker Decl. ¶ 9, Ex. F, at F-64; *id*. ¶ 10, Ex. G, at G-65; *id*. ¶ 11, Ex. H, at H-73; *id*. ¶ 12, Ex. I, at I-75; *id*. ¶ 13, Ex. J, at J-78; *id*. ¶ 14, Ex. K, at K-87; *id*. ¶ 15, Ex. L, at L-88.)

[15] The Kaiser Permanente Deductible HMO Plan Evidences of Coverage for CalPortland enrollees for plan years 2017 through 2021 abbreviate internal references to "Evidence of Coverage" to "EOC."

(Walker Decl. ¶ 9, Exh. F, at F-63–F-64; *id.* ¶ 10, Exh. G, at G-65; *id.* ¶ 11, Exh. H, at H-72; *id.* ¶ 12, Exh. I, at I-75; *id.* ¶ 13, Exh. J, at J-77–J-78; *id.* ¶ 14, Exh. K, at K-86–K-87; *id.* ¶ 15, Exh. L, at L-88.)[16]

The arbitration provisions in the EOCs are again ***materially identical*** to those that this Court determined required JD's claims to be arbitrated in the MTC Order. (*Compare* Walker Decl. ¶ 9, Exh. F, at F-63–F-65, *id.* ¶ 10, Exh. G, at G-65–G-67, *id.* ¶ 11, Exh. H, at H-72–H-74, *id.* ¶ 12, Exh. I, at I-75–I-77, *id.* ¶ 13, Exh. J, at J-77–J-79, *id.* ¶ 14, Exh. K, at K-86–K-88, *id.* ¶ 15, Exh. L, at L-88–L-90, *with* ECF No. 119 at 3–4.) The only changes relate to the abbreviations for names and the procedure for selecting the number of arbitrators. (*Compare* Walker Decl. ¶ 9, Exh. F, at F-63–F-65, *id.* ¶ 10, Exh. G, at G-65–G-67, *id.* ¶ 11, Exh. H, at H-72–H-74, *id.* ¶ 12, Exh. I, at I-75–I-77, *id.* ¶ 13, Exh. J, at J-77–J-79, *id.* ¶ 14, Exh. K, at K-86–K-88, *id.* ¶ 15, Exh. L, at L-88–L-90, *with* ECF No. 119 at 3–4.)

## IV. ARGUMENT

### A. Legal Standard

The Federal Arbitration Act ("FAA") applies to the arbitration provisions. The arbitration provisions contained in all the relevant EOCs mandate that arbitration "shall be governed by . . . the Federal Arbitration Act . . . " (Walker Decl. ¶ 6, Exh. D at D-61; *id.* ¶ 7, Exh. E at E-63; *id.* ¶ 9, Exh. F, at F-65; *id.* ¶ 10, Exh. G, at G-67; *id.* ¶ 11, Exh. H, at H-74; *id.* ¶ 12, Exh. I, at I-77; *id.* ¶ 13, Exh. J, at J-79; *id.* ¶ 14, Exh. K, at K-88; *id.* ¶ 15, Exh. L, at L-90.) As such, by the Agreement between the parties, the FAA applies to this matter. *See Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1106 (2018) ("The parties agree the [arbitration provision] is governed by the Federal Arbitration Act . . . Arbitration is a matter of contract, and 'parties are generally free to structure their arbitration agreements as they see fit.'")

[16] "Kaiser Permanente Parties" is defined to expressly include, *inter alia*, KFHP and Hospitals. (Walker Decl. ¶ 9, Ex. F, at F-64; *id.* ¶ 10, Ex. G, at G-65; *id.* ¶ 11, Ex. H, at H-73; *id.* ¶ 12, Ex. I, at I-75; *id.* ¶ 13, Ex. J, at J-78; *id.* ¶ 14, Ex. K, at K-86; *id.* ¶ 15, Ex. L, at L-88.) "Member Parties" is defined to include a Member (like JD) as well as "[a]ny person claiming that a duty to him or her arises from a Member's relationship to one or more Kaiser Permanente Parties." (Walker Decl. ¶ 9, Ex. F, at F-64; *id.* ¶ 10, Ex. G, at G-65; *id.* ¶ 11, Ex. H, at H-73; *id.* ¶ 12, Ex. I, at I-75; *id.* ¶ 13, Ex. J, at J-78; *id.* ¶ 14, Ex. K, at K-86; *id.* ¶ 15, Ex. L, at L-88.)

(quoting *Volt Info. Sciences v. Leland Stanford Jr. University*, 489 U.S. 468, 479 (1989)). In its MTC Order, this Court previously found the FAA governed the materially identical arbitration provision. (*See* ECF No. 119 at 6.)

"In deciding whether to compel arbitration under the FAA, a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.' If both conditions are met, 'the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (*citing Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (citations omitted).

### B. The Arbitration Agreements Are Valid and Enforceable Against JD.

In determining whether a valid arbitration agreement exists, courts apply ordinary state-law principles governing the formation of contracts. *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1712 (2003) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of a contract. *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020).

#### 1. The EOCs Contain Valid Arbitration Agreements.

This Court has now found, on at least two separate occasions, that Kaiser Plan Members—***including JD in this case***—agreed to arbitrate their claims based on the arbitration provisions in their enrollment forms and EOCs. (*See* ECF No. 119 (compelling JD's individual claims to arbitration); *Loucks v. Kaiser Found. Hosps.*, No. 20-cv-01216, 2020 WL 3469326, at *8, *11 (N.D. Cal. June 25, 2020) (Chen, J.) (compelling arbitration brought by Kaiser Plan Member against KFHP, Hospitals, and TPMG based on virtually identical arbitration agreement).) Those arbitration agreements are materially identical to the arbitration agreements in the EOCs now at issue. Accordingly, the same result is dictated here.

Further, courts in this District, as well as both California superior and appellate courts (including the California Supreme Court) have repeatedly found that Kaiser Plan Members, such as JD, agreed to arbitrate their disputes with Defendants and other Kaiser-related entities by

entering into membership agreements to obtain healthcare coverage provided by KFHP. *See, e.g.*, *Smith v. Watanabe*, No. 21-cv-07872, 2022 WL 6282201, at *6 (N.D. Cal. Sept. 27, 2022) (compelling arbitration of claims against KFHP brought by Kaiser Plan Members that signed up for coverage through employer with a substantially similar arbitration agreement to those at issue here); *Hunter v. Kaiser Found. Health Plan, Inc.*, 434 F. Supp. 3d 764 (N.D. Cal. 2020) (finding Kaiser Plain Member agreed to arbitrate her claims against KFHP based on enrollment documents and EOCs just like those at issue here); *Drissi v. Kaiser Found. Hosps., Inc.*, 543 F. Supp. 2d 1076, 1077–78 (N.D. Cal. 2008) (compelling arbitration of plaintiffs' claims against KFHP, Hospitals, and TPMG based on a substantially similar arbitration provision); *Toledo v. Kaiser Permanente Med. Grp.*, 987 F. Supp. 1174, 1180–81 (N.D. Cal. 1997) (granting motion to compel arbitration of Kaiser Plan Member's claims against KFHP, Hospitals, and TPMG arising from denial of benefits under the benefit plan); *Magno v. Kaiser Found. Health Plan, Inc.*, No. 22-cv-017996, 2023 Cal. Super. LEXIS 76990, at *1–3 (Alameda Cnty. Superior Ct. Feb. 7, 2023) (compelling arbitration of claims against KFHP based on unauthorized disclosure of protected health information where the agreement applied to any claim arising out of "an alleged violation of any duty incident to or arising out of or relating to a Participant or Dependent Party's relationship" to KFHP); *Wilson v. Kaiser Found. Hosps.*, 141 Cal. App. 3d 891, 899–900 (1983) (finding a child who did not become a Kaiser Plan Member until the time of his birth, was bound by his parent's agreement to arbitrate claims against Hospitals and TPMG); *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 702–03 (1976) (finding plaintiff, a state employee whose healthcare was covered by a medical services contract, was bound by its arbitration provision, which was entered into between KFHP and the Board of Administration, to arbitrate claims against KFHP, Hospitals, and The Permanente Medical Group). As such, a valid arbitration agreement exists between the Parties here by virtue of JD's father's enrollment of JD in the health plan as a beneficiary and his father's acceptance of benefits under the stipulations provided in the Enrollment Forms and Evidences of Coverage, including the arbitration agreement. (*See* Urban Decl. ¶ 6; Peters Decl. ¶ 10.)

Finally, this Court and others have found arbitration provisions that are virtually the same

as the arbitration provisions at issue here neither procedurally nor substantively unconscionable. *See, e.g.*, *Loucks*, 2020 WL 3469326, at *11 (Chen, J.); *Watanabe*, 2022 WL 6282201, at *4; *Magno*, 2023 Cal. Super. LEXIS 76990, at *3. As such, JD's father's arbitration agreements are enforceable. *See Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1471 (2009) (noting courts applying California law enforce arbitration agreements unless they are both procedurally and substantively unconscionable); *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 n.9 (2015) (noting California courts "recognize that showing a contract is one of adhesion does not always establish procedural unconscionability").

**2. JD Is Bound by the Arbitration Agreements Agreed to by His Father.**

State-law principles govern the determination of whether non-signatories may be bound to arbitration agreements executed by others. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In California, "[i]t is settled that nonsignatories may be bound by arbitration agreements executed on their behalf." *Pietrelli v. Peacock*, 13 Cal. App. 4th 943, 947 (1993). Indeed, "[u]nder California law, a nonsignatory can be compelled to arbitrate . . . where a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim. California courts have recognized that ***the parent-child relationship*** is one such relationship." *Yeh v. Tesla, Inc.*, No. 23-cv-01704, 2023 WL 6795414, at *7 (N.D. Cal. Oct. 12, 2023) (emphasis added) (citations and quotes omitted); *accord Chan v. Charter Communications Holding Company*, No. EDCV 15-0886, 2015 WL 12655701, at *5 (C.D. Cal. Aug. 6, 2015).

This is especially true of a child receiving medical coverage under their parent's health care plan. *Doyle v. Giuliucci*, 62 Cal. 2d 606, 610 (1965) ("[T]he power to enter into a contract for medical care that binds the child to arbitrate any dispute arising thereunder is implicit in a parent's right and duty to provide for the care of his child."); *see also Wilson v. Kaiser Found. Hosps.*, 141 Cal. App. 3d 891, 899 (1983) (holding that when "a parent makes an election for the receipt of medical services on behalf of a[] . . . child, such election must be binding regarding the terms of the agreement pursuant to which the services were rendered."). Indeed, at least one court has found a child to be bound by a prior version of the very arbitration agreement at issue in this

case. *Wilson*, 141 Cal. App. 3d at 899 (finding a child was bound by his parent's agreement to arbitrate claims against Hospitals and TPMG). Just as the child in *Wilson* was bound by his parent's agreement to arbitrate claims against Hospitals and TPMG, so too is JD bound here by his father's agreements to arbitrate claims against Defendants.

### 3. Defendants Can Enforce the Arbitration Agreements as their Intended Third-Party Beneficiaries.

"A nonsignatory who is an intended third-party beneficiary of an arbitration agreement has the right to enforce the arbitration agreement." *Piterman v. Gold Coast Exotic Imps. LLC*, No. 5:20-cv-07724, 2021 WL 1853769, at *7 (N.D. Cal. May 10, 2021); *see* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."); *Harris v. Super. Ct.*, 188 Cal. App. 3d 475, 478 (1986) ("It is well established that a non-signatory beneficiary of an arbitration clause is entitled to require arbitration."). A party seeking to enforce an arbitration agreement as a non-signatory, third-party beneficiary must only show that the contract reflects the express or implied intention of the parties to benefit the third party more than incidentally. *Piterman*, 2021 WL 1853769, at *8 (allowing non signatory to compel arbitration because the agreement contemplated its involvement in providing warranty coverage and that it was covered by arbitration agreement as a party's affiliate). When an arbitration clause explicitly states that it covers claims involving particular parties, that agreement was made expressly for the benefit of those parties. *Ronay Fam. Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838–39 (2013).

Defendants are entitled to enforce the arbitration agreements against JD's father and JD. The Evidences of Coverage are contracts between KFHP on the one hand and JD's father and JD on the other. (*See* Walker Decl. ¶ 6, Exh. D at D-7; *id.* ¶ 7, Exh. E at E-7; *id.* ¶ 9, Exh. F, at F-7; *id*. ¶ 10, Exh. G, at G-7; *id*. ¶ 11, Exh. H, at H-13; *id*. ¶ 12, Exh. I, at I-13; *id*. ¶ 13, Exh. J, at J-15; *id*. ¶ 14, Exh. K, at K-31; *id*. ¶ 15, Exh. L, at L-32.) Further, the Evidences of Coverage specifically state that the arbitration agreement governs claims "asserted by one or more Member Parties," defined to include JD's father and JD, "against one or more Kaiser Permanente Parties," defined to include "Kaiser Foundation Health Plan, Inc." and "Kaiser Foundation Hospitals."

Walker Decl. ¶ 6, Exh. D at D-60; *id.* ¶ 7, Exh. E at E-61; *id.* ¶ 9, Exh. F, at F-64; *id.* ¶ 10, Exh. G, at G-65; *id*. ¶ 11, Exh. H, at H-73; *id*. ¶ 12, Exh. I, at I-75; *id*. ¶ 13, Exh. J, at J-78; *id*. ¶ 14, Exh. K, at K-86; *id*. ¶ 15, Exh. L, at L-88. Accordingly, the arbitration agreements are expressly made for the benefit of KFHP and Hospitals and, as a result, can be enforced against JD's father and JD.

**4. JD's Claims Still "Touch Matters" Covered by the Arbitration Agreements.**

As an initial matter, JD's claims in the CMC are still based on the same predicate—his use of the Site and App—as they were in the FAC and still relate to the provision of healthcare under his KHFP health plan and his relationship with KFHP. *See supra* Section II.B. This Court has ***already ruled*** that these types of claims, including specifically claims based on JD's use of the Site and App, fall within the scope of the ***materially identical*** arbitration provision. (ECF No. 119 at 13 (rejecting JD's argument that his claims against Kaiser do not fall within the scope of the materially identical arbitration agreement and noting—"This is especially true given that the arbitration clause as worded is quite broad—covering claims related to an alleged violation of a duty related to the EOC as well as claims related to a Member's relationship to Kaiser. The claims here fall within that broad language. Furthermore, one of the examples given of an arbitrable claim is a claim relating to the coverage for or delivery of services or item[s]. The website and mobile application fall under that category").) As a result, there is no reason to deviate from the Court's analysis in the MTC Order.

Generally, courts will compel arbitration of all claims where, as here, the arbitration provisions are broadly worded and cover all the issues at hand. *See Rice v. Downs*, 248 Cal. App. 4th 175, 186 (2016) ("A 'broad' clause includes those using language such as 'any claim arising from or related to this agreement' or 'arising in connection with the agreement.'" (citations omitted)). A dispute is arbitrable if it "touch[es] matters" covered by the arbitration clause, whether the claims asserted are themselves based in contract or tort. *Id.* Under the FAA, the U.S. Supreme Court has held that virtually every type of statutory and tort claim, including intentional torts, is arbitrable under a broadly worded arbitration provision. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *see also Johnson v. Charter Commc'ns, Inc.*, No. 21-cv-06135,

2022 WL 2673091, at *4 (N.D. Cal. June 2, 2022) (granting motion to compel arbitration of California invasion of privacy claims).

The arbitration agreements in this case establish that claims are within their scope if they meet three requirements: (1) the claim "arises from or is related to an alleged violation of any duty incident to or arising out of or relating to . . . [JD's] relationship to Kaiser Foundation Health Plan, Inc. . . . including any claim . . . relating to the . . . delivery of, services or items, irrespective of the legal theories upon which the claim is asserted;" (2) the claim is asserted by one or more Member Parties (defined to include JD) against "one or more Kaiser Permanente Parties," (defined to include KFHP, Hospitals, and "[a]ny individual or organization whose contract with any of the organizations identified above requires arbitration of claims brought by one or more Member Parties" or "[a]ny employee or agent of any of the foregoing.") or vice versa; and (3) "[g]overning law does not prevent the use of binding arbitration to resolve the claim." (*See* Walker Decl. ¶ 6, Exh. D at D-59–D-60; *id.* ¶ 7, Exh. E at E-61–E-62; *id.* ¶ 9, Exh. F, at F-63–F-64; *id*. ¶ 10, Exh. G, at G-65; *id*. ¶ 11, Exh. H, at H-72–H-73; *id*. ¶ 12, Exh. I, at I-75; *id*. ¶ 13, Exh. J, at J-77–J-78; *id*. ¶ 14, Exh. K, at K-86–K-87; *id*. ¶ 15, Exh. L, at L-88.) Additionally, a claim will not be subject to binding arbitration under the Agreement if it is part of a "Small Claims Court case[]," "subject to a Medicare appeals procedure," or involves a "benefit-related dispute[]" under ERISA. (Walker Decl. ¶ 5, Exh. C; Peters Decl. ¶ 9, Exh. A at A-5; *see also* Walker Decl. ¶ 6, Exh. D at D-59–D-60; *id.* ¶ 7, Exh. E at E-61–E-62; *id.* ¶ 9, Exh. F, at F-63–F-64; *id*. ¶ 10, Exh. G, at G-65; *id*. ¶ 11, Exh. H, at H-72–H-73; *id*. ¶ 12, Exh. I, at I-75; *id*. ¶ 13, Exh. J, at J-77–J-78; *id*. ¶ 14, Exh. K, at K-86–K-87; *id*. ¶ 15, Exh. L, at L-88.) These requirements are met here for each of JD's claims, just as the Court recognized in the MTC Order. (ECF No. 119 at 13–14.) The new allegations in the CMC do not impact the analysis.

First, as noted above, the gravamen of JD's claims have not changed from the FAC. He still asserts that Defendants violated a "duty" to maintain the confidentiality of his information and communications, through his use of the Kaiser website and mobile application, by disclosing or enabling the disclosure of that information to third parties. (*See*, *e.g.*, CMC ¶¶ 327, 374, 563(f), 580(f).) This is a duty that JD admits arose out of or was incident to JD's **relationship to KFHP**

**as a Plan Member and as a patient of Hospitals**. (*See id.* ¶¶ 381–89 (describing obligations to protect a *patient's* personally identifiable health information *as JD's health care providers*).) The claims specifically hinge on Defendants' purported disclosure of "personal and sensitive information *relating to medical treatment*[.]" (*Id.* ¶ 7 (emphasis added).) Indeed, JD pleads that "as any reasonable *patient* would expect, Plaintiffs trusted that their medical providers would treat the information that they shared with them as private and confidential." (*Id.* ¶ 1 (emphasis added).)

Specifically, JD's invasion of privacy claims are premised on his alleged expectation of privacy in the information he provided to Defendants **by virtue of his status as a Kaiser Plan Member/patient**. (*See id.* ¶ 381 ("Plaintiffs and Class Members' reasonable expectation of privacy in their personally identifiable data and communications exchanged with Kaiser and its providers is derived from several sources, including: a. Kaiser's *status as Kaiser Plan Members' health care provider*; b. Kaiser's common law obligation to maintain confidentiality of *patient* data and communications . . . ." (emphasis added)).) JD's express and implied contract claims are based on his assertion of the existence of a contractual agreement between him and Defendants—an agreement that was formed when JD enrolled **as a Kaiser Plan Member**. (*Id.* ¶¶ 519, 567.) JD further contends that Defendants violated the CMIA, which requires that "a provider of healthcare, health care service plan, or contractor shall not disclose medical information **regarding a patient of the provider of healthcare** or an enrollee or subscriber of a health care service plan without first obtaining an authorization." (*Id.* ¶ 608.) As for his ECPA and CIPA claims, JD contends that Defendants violated the statutes by allowing third parties to intercept "Plaintiffs and Kaiser Operating States Class Members['] communicat[ions] **with Kaiser Permanente** and/or their health care providers." (*Id.* ¶ 454; *see also id.* ¶ 480 ("Kaiser installed the Third Party Wiretappers' code to automatically and secretly spy on, and intercept Plaintiffs and Class Members' communications *with Kaiser Permanente* through the Site and Apps in real time." (emphasis added)).) JD's negligence per se claim is based on the alleged violation of statutory duties purportedly owed to him by KFHP. (*See id.* ¶ 603 ("But for Defendants' wrongful and negligent **breach of their duties owed to Plaintiffs and Class Members**, Plaintiffs and Class

Member would not have been injured." (emphasis added)).) JD's larceny claim is based on the alleged theft of "private health information" provided to KFHP in his capacity as a patient and/or Kaiser Plan Member. (*See id.* ¶ 622.) As such—and as this Court has ***already decided***—all of JD's claims arise from or are related to an alleged violation of a duty incident to or arising out of or relating to JD's relationship to KFHP. (*See* ECF No. 119 at 13–14 ("This is especially true given that the arbitration clause as worded is quite broad—covering claims related to an alleged violation of a duty related to the EOC as well as claims related to a Member's relationship to Kaiser. ***The claims here fall within that broad language***." (emphasis added).)

Second, the claims are asserted by JD—a Kaiser Plan Member and thus a "Member Party" under the definition in the Evidences of Coverage—against KFHP and Hospitals—which are expressly covered "Kaiser Permanente Parties" per the Evidences of Coverage. (CMC ¶¶ 24–28, 70–77; Walker Decl. ¶ 6, Exh. D at D-60; *id.* ¶ 7, Exh. E at E-61; *id.* ¶ 9, Exh. F, at F-64; *id.* ¶ 10, Exh. G, at G-65; *id.* ¶ 11, Exh. H, at H-73; *id.* ¶ 12, Exh. I, at I-75; *id.* ¶ 13, Exh. J, at J-78; *id.* ¶ 14, Exh. K, at K-86; *id.* ¶ 15, Exh. L, at L-88.)

Third, governing law does not prevent the use of binding arbitration to resolve the claims. The Evidences of Coverage state that "this *Evidence of Coverage* will be governed in accord with California law." (Walker Decl. ¶ 6, Exh. D at D-67; *id.* ¶ 7, Exh. E at E-68; *id.* ¶ 9, Exh. F, at F-71; *id.* ¶ 10, Exh. G, at G-72; *id.* ¶ 11, Exh. H, at H-80; *id.* ¶ 12, Exh. I, at I-82; *id.* ¶ 13, Exh. J, at J-85; *id.* ¶ 14, Exh. K, at K-94; *id.* ¶ 15, Exh. L, at L-96.)[17] As discussed above, courts applying California law enforce arbitration agreements unless they are both procedurally and substantively unconscionable. *Roman*, 172 Cal. App. 4th at 1471. Courts have found that virtually the same arbitration provision as here is neither procedurally nor substantively unconscionable. *See, e.g.*, *Watanabe*, 2022 WL 6282201, at *4; *Winninger v. Scott*, No. 21-cv-04689, 2022 WL 3205035, at *4–5 (N.D. Cal. July 5, 2022); *Magno*, No. 22-cv-017996, at *3. As such, California law does not prevent the use of binding arbitration to resolve JD's claims.

[17] The Kaiser Permanente Deductible HMO Plan Evidences of Coverage for CalPortland enrollees for plan years 2017 through 2021 abbreviate internal references to "Evidence of Coverage" to "EOC."

Finally, the claims are not within the jurisdiction of the small claims court, because that court does not have jurisdiction to hear class actions. JD alleges that this is a "proposed class action in which there are at least 100 Class Members" and that "the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000." (CMC ¶ 78. ) The potential damages at issue here therefore greatly exceed the small claims court's jurisdictional limit of $5,000. Cal. Civ. Proc. Code § 116.220. Moreover, the claims are not subject to a Medicare appeals procedure and do not involve a benefit-related dispute under ERISA—the only other claims exempted from the arbitration agreement.

Accordingly, JD's claims still "touch matters" covered by the arbitration agreements and fall within the scope of the arbitration agreements.

**C. The Court Should Compel Individual, Non-Class Arbitration.**

As with the other issues discussed in this Motion, the Court need not conduct an independent analysis on the issue of individual versus class arbitration. Indeed, this Court has <u>already held</u> that the ***materially identical*** arbitration provision **does not** contain a clear indication that there is an intent to allow for class arbitration—as required by governing law—when it compelled JD, the first time, to individually arbitrate his claims. (ECF No. 119 at 16 (compelling JD to individual arbitration and finding Plaintiffs' argument that language in the arbitration provision referencing claims by "one or more Member Parties" against Kaiser Permanente Parties is a "thin reed on which to assert that the parties contractually agreed to class arbitration").) There is nothing different about the arbitration provisions at issue here that would change this analysis.

Under the FAA, class action waivers in arbitration provisions are enforceable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 924 (2015). The arbitration provisions here do not contain an express class action waiver. However, under the FAA, a party cannot be compelled to submit to class arbitration where an arbitration provision is entirely silent or ambiguous regarding whether class action claims can be pursued in arbitration. *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019).

In *Stolt-Nielsen*, the Supreme Court held that a court may not compel class-wide

arbitration when an agreement is silent on the availability of class arbitration. *Stolt-Nielsen*, 559 U.S. at 684. According to the Court, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id*. This is because "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id*. at 687. "From these principles, it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id*. at 684.

Similarly, in *Lamps Plus v. Varela*, the U.S. Supreme Court reaffirmed and extended its ruling in *Stolt-Nielsen*. 139 S. Ct. at 1416–17. *In Lamps Plus*, the Court held that under the FAA, "an ambiguous agreement cannot provide the necessary contractual basis for concluding that the parties agreed to submit to class arbitration." *Id*. at 1411, 1416. The Court explained that "[l]ike silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[] the principal advantage of arbitration.'" *Id*. at 1416. The Court "reiterated that courts may not rely on state contract principles to 'reshape traditional individualized arbitration by mandating class wide arbitration procedures without the parties' consent." *Id*. at 1418.

Applying *Lamps Plus*, the Northern District of California recently compelled a plaintiff to individual arbitration against KFHP under a substantially similar arbitration agreement. *Watanabe*, 2022 WL 6282201, at *6. The court held that the plaintiffs' "individual claims" must be "referred to individual arbitration because the contract is silent on the issue of class-wide arbitration." *Id.* In its Order, this Court recognized that under *Lamps Plus* the same language at issue in the arbitration provisions here did not provide for class arbitration. (*See* ECF No. 119 at 16–17.) In doing so, it recognized that the fact that, "claims can be asserted by more than one Member does not mean that a *class* is thereby authorized." (*Id*. at 16 (emphasis in original) (citations omitted).) Thus, just as before, there is no contractual or other basis to conclude that the parties intended to arbitrate their disputes on a class-wide basis.

### D. The Court Should Issue a Stay of JD's Claims Pending the Outcome of the Arbitration Proceeding.

JD's claims must be stayed pending resolution of the arbitration proceeding.[18] Section 3 of the FAA provides that when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.[19] Both California state courts, as well as courts in this District, have reached the same conclusion—finding that, if a suit is filed upon any issue that is subject to a written arbitration agreement, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *See, e.g.*, *Weiler v. Marcus & Millichap Real Estate Inv. Servs., Inc.*, 22 Cal. App. 5th 970, 979 (2018) (noting that, when a court compels a claim to arbitration, the court action "is held in abeyance until the arbitration 'has been had in accordance with the terms of the agreement'"); *see Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) ("Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'"). Indeed, just last year, the United States Supreme Court reaffirmed this—unanimously holding that "[t]he plain text of § 3 requires a court to stay the proceeding upon request. The statute's use of the word 'shall' 'creates an obligation impervious to judicial discretion.'" *Smith v. Spizzirri*, 601 U.S. 472, 472 (2024). Accordingly, the Court should stay JD's claims pending the outcome of arbitration.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant this Motion, compel arbitration of all of JD's claims, and stay JD's claims pending completion of arbitration.

/ / /

[18] Defendants are not requesting that the Court stay the claims of the other named plaintiffs.

[19] The California Arbitration Act similarly provides: "If a court of competent jurisdiction . . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." Cal. Code Civ. Proc. § 1281.4.

Dated: January 28, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By /s/ *Wynter L. Deagle*

WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
KRISTIN P. HOUSH, Cal Bar No. 286651
khoush@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real, Suite 120
Menlo Park, CA 94025
Telephone: 650.815.2600
Facsimile: 650.815.2601

KARI M. ROLLINS *(Pro Hac Vice)*
krollins@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
Facsimile: 212.653.8701

JOHN F. BURNS, Cal Bar No. 290523
jburns@sheppardmullin.com
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone: 619.338.6500
Facsimile: 619.234.3815

NOLAN J. WALTER, Cal Bar No. 325021
nwalter@sheppardmullin.com
KEVIN MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701

MELISSA MEDHAT MIKAIL, Cal Bar No. 323212
mmikail@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130

MARK T. RATWAY (*pro hac vice)*
mratway@sheppardmullin.com
2200 Ross Ave., 20th Floor
Dallas, Texas 75201
Telephone: 469.391.7457

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington