SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
KRISTIN P. HOUSH, Cal Bar No. 286651
khoush@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
DANE C. BRODY CHANOVE, Cal Bar No. 345843
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900
Facsimile:    858.509.3691

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation
Hospitals, and Kaiser Foundation Health Plan of
Washington

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | Case No. 3:23-cv-02865-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED COMPLAINT AND TO STRIKE PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES**<br><br>*Filed concurrently with Declaration of Wynter L. Deagle, Request for Judicial Notice, and [Proposed] Order*<br><br>Judge:    Hon. Edward M. Chen<br>Date:    May 29, 2025<br>Time:    1:30 p.m.<br>Crtrm.:    5<br><br>**[PUBLIC – REDACTED VERSION]**<br><br>Consolidated Complaint Filed: December 6, 2024<br>Trial Date: January 25, 2027 |

SMRH:4897-9404-1090

1

## NOTICE OF MOTION & MOTION TO DISMISS AND STRIKE

2    PLEASE TAKE NOTICE that, on May 29, 2025, at 1:30 p.m., or on a date more

3   convenient for the Court, before the Honorable Edward M. Chen of the United States District

4   Court for the Northern District of California, San Francisco Division, Courtroom 5, 17th Floor,

5   450 Golden Gate Avenue, San Francisco, California 94102, Defendants Kaiser Foundation Health

6   Plan, Inc. ("KFHP"), Kaiser Foundation Hospitals (the "Hospitals"), and Kaiser Foundation

7   Health Plan of Washington ("KPWA") (collectively, "Kaiser" or "Defendants"), will and hereby

8   do, move this Court for an order pursuant to Federal Rules of Civil Procedure 12(b)(6) and

9   12(b)(1) dismissing the following claims and/or relief sought in the Master Consolidated Class

10   Action Complaint (the "CMC") filed by Plaintiffs John Doe, John Doe II, John Doe III, Jane Doe,

11   Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V, and Alexis Sutter ("Plaintiffs"): (i) all Claims

12   for Relief (the "Claims") based on the allegation that Kaiser allowed third parties to collect and

13   use Kaiser Plan Member information for their own purposes because Plaintiffs have not

14   adequately alleged that Kaiser knew about and/or approved of such independent collection and use

15   by the third parties; (ii) Claims 2, 4, 8, 10, and 13 for lack of standing; (iii) Claims 1–4, 8–11, 13,

16   15, and 18–22 for specific deficiencies resulting in a failure to state a claim upon which relief can

17   be granted; and (iv) all claims pleaded against KPWA and Hospitals for failure to sufficiently

18   allege any wrongdoing by those entities.

19    Kaiser further moves the Court for an order pursuant to Federal Rules of Civil Procedure

20   12(f): (i) striking paragraphs 419 through 428 of the CMC on the grounds that Plaintiffs' tolling

21   allegations are redundant, immaterial, impertinent, or scandalous; and (ii) striking Plaintiffs'

22   requests for punitive damages in paragraphs 605, 617, 634, 682, 691, 766 and Plaintiffs' Prayer

23   for Relief on the grounds that they are redundant, immaterial, impertinent, or scandalous.

24   This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

25   Authorities, Declaration of Wynter L. Deagle, all pleadings and other papers on file in this action,

26   and such other matters as may properly come before the Court.

27

## ISSUES PRESENTED

28    1.    Whether all Claims against Kaiser should be dismissed under Federal Rule of Civil

-i-

Case No. 3:23-cv-02865-EMC

SMRH:4897-9404-1090    DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

Procedure 12(b)(6) to the extent based on the allegation that Kaiser allowed third parties to collect and/or use Kaiser Plan Member information for their own purposes because Plaintiffs have not adequately pleaded that Kaiser knew and/or approved of this use by the third parties, and whether dismissal should be with prejudice.

2. Whether Claims 2, 4, 8, 10, and 13 against Kaiser should be dismissed for lack of standing under Federal Rule of Civil Procedure 12(b)(1), and whether dismissal should be with prejudice.

3. Whether Claims 1–4, 8–11, 13, 15, and 18–22 against Kaiser should be dismissed for specific deficiencies resulting in a failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and whether dismissal should be with prejudice.

4. Whether all Claims against Hospitals and KPWA should be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

5. Whether paragraphs 419 through 428 of the CMC should be stricken under Federal Rules of Civil Procedure 12(f) on the grounds that Plaintiffs' tolling allegations are redundant, immaterial, impertinent, or scandalous.

6. Whether Plaintiffs' requests for punitive damages in paragraphs 605, 617, 634, 682, 691, 766, and Plaintiffs' Prayer for Relief should be stricken under Federal Rules of Civil Procedure 12(f) on the grounds that Plaintiffs' tolling allegations are redundant, immaterial, impertinent, or scandalous.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION & MOTION TO DISMISS AND STRIKE ................................................. i

TABLE OF AUTHORITIES ............................................................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I. INTRODUCTION .................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

    A. Plan Members Use KFHP's Website and Apps to Access Plan Benefits. .............. 2

    B. A HIPAA Breach Notice Was Issued in April 2024. ............................................ 3

    C. The Court Dismissed 15 Claims Asserted in the FAC. .......................................... 3

    D. The Court Mooted the Motion to Dismiss the SAC After Consolidation. .............. 4

III. LEGAL STANDARDS ............................................................................................ 4

IV. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT KAISER KNEW
    THE VENDORS USED PLAINTIFFS' DATA FOR THEIR OWN BENEFIT ..... 6

    A. Plaintiffs Fail to Allege That Dynatrace Used Plan Member Information for
        Its Own Purpose or Benefit or That Kaiser Knew of Its Actions. ........................... 6

    B. Plaintiffs Do Not Sufficiently Allege that Quantum Metric Used Plan
        Member Information for Its Own Purposes or that Kaiser Knew It Did. .................. 6

    C. Plaintiffs Fail to Allege that Kaiser Knew Adobe Used Plan Member
        Information for its Own Purpose or Benefit. ............................................................ 8

    D. Plaintiffs Do Not Allege that Kaiser Knew that Google, Bing, and Twitter
        Used Information for Their Own Purposes/Benefits. ................................................ 9

        1. Kaiser's Use of Code on its Website and Apps Does Not Establish
            That Kaiser Knew Third Parties Used Information for Their own
            Purposes. ....................................................................................................... 9

        2. Plaintiffs' Allegations Regarding an "In-Kind" Payment of Personal
            Information In Exchange for Use of the Third Party Online
            Technologies Does Not Establish That Kaiser Knew Third Parties
            Used Information for Their own Purposes. .................................................... 10

V. CLAIMS 1−4, 8−11, 13, 15, and 18−22 FAIL TO ALLEGE SUFFICIENT FACTS
    TO STATE AN ACTIONABLE CLAIM. ............................................................... 13

    A. Claim 1 for Violation of the Federal Wiretapping Act Fails Because
        Plaintiffs Do Not Sufficiently Plead the Crime-Tort Exception. ........................... 13

    B. Claims 2, 4 and 8 Must Be Stayed as to John Doe and Dismissed as to All

-iii-

Case No. 3:23-cv-02865-EMC

SMRH:4897-9404-1090     DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

Other Plaintiffs Because John Doe Must Arbitrate His Claims and No Other
Plaintiffs Have Standing to Assert These California Statutory Claims ...................16

    1.    John Doe Must Arbitrate His Claims ..........................................16

    2.    The Other Plaintiffs Do Not Have Standing to Assert a CIPA Claim .........16

    3.    None of the Plaintiffs Have Standing to Assert a CMIA Claim ................17

    4.    Only California Residents Have Standing to Assert Claims for
Violation of the California Constitutional Right to Privacy ........................17

C.    Claims 3 and 4 For Common Law Intrusion Upon Seclusion and Violation
of the California Constitutional Right to Privacy Both Fail Because
Plaintiffs Do Not Allege a Highly Offensive Intrusion..............................................18

D.    Claim 19 for Statutory Larceny Fails Because Plaintiffs Have Not Alleged
an Actionable Theft. ...................................................................................................21

E.    Claim 10 Under the District of Columbia Consumer Protection Procedures
Act Claim Fails as a Matter of Law. ..........................................................................22

F.    Claim 11 for Violation of the Georgia Computer Systems Protection Act
Fails Because John Doe II Does Not And Cannot Adequately Allege that
Kaiser Acted Without Authority. ................................................................................23

G.    Claim 13 under the Maryland Wiretap Act Fails for Several Reasons. ....................24

    1.    Jane Doe III Lacks Standing for her Wiretap Act Claim. .............................25

    2.    The Wiretap Act Was Designed To Protect Substantive
Communications Between People Regardless of the Mode of
Communication, And No Such Communications Are At Issue....................26

    3.    Plaintiff's Wiretap Act Claim Fails Because There Was no
"Interception." ............................................................................................27

    4.    Plaintiff's Wiretap Act Claim Fails Because the Data Transmissions
at Issue Do Not Have Any Statutorily Protected "Contents.".......................28

    5.    Plaintiff's Wiretap Act Claim Fails Because the Source Code
Involved is Not a "Device" Under the Act....................................................30

    6.    Kaiser is Not a Provider of an "Electronic Communication Service." ........31

H.    Claim 15 for Violation of the Virginia Computer Crimes Act Must Be
Dismissed Because Jane Doe IV and Alexis Sutter Do Not Allege That
Kaiser Acted Maliciously or Through Intentionally Deceptive Means and
Without Authority. ......................................................................................................32

I.    Claim 18 for Violation of the Washington Privacy Act Fails Because The
Communications At Issue Were Between Jane Doe's Browser/Computer
and Kaiser...................................................................................................................34

J.    Claim 19 for Violation of the Washington Health Care Information Act

-iv-

Case No. 3:23-cv-02865-EMC

SMRH:4897-9404-1090      DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

Fails Because Jane Doe Does Not Allege That Defendants Disclosed Her "Health Care Information." ...................................................................35

K.    Claims 20–22 for Violation of State Data Breach Notification Statutes All Fail Because They Cannot Allege an Actionable Breach or the Acquisition of Their Personal Information. ...............................................................37

    1.    Claim 20 for Violation of the D.C. Act Fails. ...............................37

    2.    Claim 21 Under Maryland's PIPA Also Fails. ...............................39

    3.    Claim 22 for Violation of the Washington Act Fails. .................39

VI.    ALL CLAIMS AGAINST HOSPITALS AND KPWA MUST BE DISMISSED. .............40

VII.    THE COURT SHOULD STRIKE PLAINTIFFS' TOLLING ALLEGATIONS................41

VIII.    PLAINTIFFS' REQUESTS FOR PUNITIVE DAMAGES SHOULD ALSO BE STRICKEN FROM THE CMC. ...................................................................43

IX.    FURTHER LEAVE TO AMEND WOULD BE FUTILE. ...................................45

X.    CONCLUSION ...............................................................................45

SMRH:4897-9404-1090          DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
                             PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Abels v. Bank of Am., N.A.*
 No. 11-CV-208 YGR, 2012 WL 691790 (N.D. Cal. Mar. 2, 2012) ...................................... 42

*Achal v. Gate Gourmet, Inc.*
 114 F. Supp. 3d 781 (N.D. Cal. 2015) ................................................................................... 44

*Ahringer v. LoanDepot, Inc.*
 715 F. Supp. 3d 1274 (C.D. Cal. 2024) ................................................................................. 17

*Al -Ahmed v. Twitter, Inc.*
 603 F. Supp. 3d 857 (N.D. Cal. 2022) ............................................................................. 7, 12

*Alexis Sutter v. Kaiser Foundation Health Plan, Inc.*
 Case No. 3:24-cv-03352-EMC ................................................................................................ 4

*American Career College, Inc. v. Medina*
 No. CV 21-698 PSG, 2021 WL 5263858 (C.D. Cal. Sept. 28, 2021).................................... 22

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009) ................................................................................................................ 5

*Bass v. First Pacific Networks, Inc.*
 219 F.3d 1052 (9th Cir. 2000)................................................................................................ 43

*Bell Atl. Corp. v. Twombly*
 550 U.S. 544 (2007) ................................................................................................................ 5

*Benford v. Am. Broad. Companies, Inc.*
 554 F. Supp. 145 (D. Md. 1982) ........................................................................................... 26

*Bettles v. Toyota Motor Corp.*
 645 F. Supp. 3d 978 (C.D. Cal. 2022).................................................................................. 42

*Casillas v. Cypress Ins. Co.*
 770 F. App'x 329 (9th Cir. 2019).......................................................................................... 32

*Christopher Newton, et al. v. Kaiser Foundation Health Plan, Inc., et al.*
 Case No. 3:24-cv-03625-EMC ................................................................................................ 4

*CinTel Fils, Inc. v. Does 1-1,052*
 853 F. Supp. 2d 545 (D. Md. 2012) ...................................................................................... 29

*City of Carlsbad v. Shah*
 850 F. Supp. 2d 1087 (S.D. Cal. 2012) (applying California punitive damages law) ........... 43

*Concha v. London*
    62 F.3d 1493 (9th Cir. 1995) ............................................................................... 19

*Cook v. GameStop, Inc.*
    689 F. Supp. 3d 58 (W.D. Pa. 2023) .................................................................... 29

*Doe I v. Google LLC*
    No. 23-CV-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ..................... 7

*Doe v. Meta Platforms, Inc.*
    No. 22-cv-03580, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ........................... 22

*Doe v. Virginia Mason Medical Center*
    No. 19-2-26674-1 SEA, 2024 WL 3517759 (Wash. Super. June 6, 2024)...... 34, 36

*In re Facebook Internet Tracking Litig.*
    140 F. Supp. 3d 922 (N.D. Cal. 2015) ................................................................. 30

*Fantasy, Inc. v. Fogerty*
    984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ........................ 5

*Ferco Enters., Inc. v. Taylor Recycling Facility LLC*
    No. 05-02980, 2007 WL 9701361 (N.D. Ga. Oct. 16, 2007)................................. 24

*Garner v. Amazon.com, Inc.*
    603 F. Supp. 3d 985 (W.D. Wash. May 6, 2022)................................................. 32

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*
    806 F.3d 125 (3d Cir. 2015)........................................................................... 14, 27

*Grimberg v. United Airlines, Inc.*
    No. CV 22-8191-MWF, 2023 WL 3431912 (C.D. Cal. Feb. 27, 2023) ................. 44

*Hayter v. PHH Mortg. Corp.*
    No. 15-cv-03332-LB, 2016 WL 3902483 (N.D. Cal. July 19, 2016) ..................... 19

*Hemby v. Biotab Nutraceuticals*
    No. 2014-CA-190, 2014 D.C. Super. LEXIS 28 (D.C. Super. Ct. Sept. 10, 2014) ............... 23

*Hernandez v. Hillsides, Inc.*
    47 Cal. 4th 272 (2009)......................................................................................... 18

*Hernandez v. Noom, Inc.*,
    No. 1:23-CV-00641-JRR, 2023 WL 8934019 (D. Md. Dec. 27, 2023)................. 25

*Hill v. Nat'l Collegiate Athletic Ass'n*
    7 Cal.4th 1 (1994)................................................................................................ 18

*Holmes v. State*
    236 Md. App. 636 (2018)..................................................................................... 26

*Hubbard v. Google LLC*
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024)...................... 18, 19, 21

*Huong Hoang v. Amazon.com, Inc.*
No. C11-1709MJP, 2012 WL 1088165 (W.D. Wash. Mar. 28, 2012) ........................... 34, 35

*In re § 2703(d) Order*,
787 F. Supp. 2d 430, 436 (E.D. Va. 2011) .............................................................................. 29

*Int'l Medcom, Inc. v. S.E. Int'l, Inc.*
No. C 13-05193 LB, 2014 WL 262125 (N.D. Cal. Jan. 23, 2014) ........................................ 41

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................................. 20

*Jacome v. Spirit Airlines Inc.*
No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ................... 29, 31

*In re JetBlue Airways Corp. Privacy Litig.*
379 F. Supp. 2d 299 (E.D.N.Y. 2005)..................................................................................... 32

*Katz-Lacabe v. Oracle Am., Inc.*
No. 22-cv-04792-RS, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) ....................................... 15

*Kay v. Wells Fargo & Co. N.A.*
No. C 07-01351 WHA, 2007 WL 2141292 (N.D. Cal. July 24, 2007).................................. 43

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009).................................................................................................. 19

*Kurowski v. Rush Sys. for Health*
659 F. Supp. 3d 931 (N.D. Ill. 2023) ...................................................................................... 32

*Manigault-Johnson v. Google, LLC*
No. 18-cv-01032-BHH, 2019 WL 3006646 (D.S.C. Mar. 31, 2019) ..................................... 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
519 F.3d 1025 (9th Cir. 2008)................................................................................................... 5

*Martin v. State*
218 Md. App. 1 (2014)............................................................................................................. 32

*Mason v. Mach. Zone, Inc.*
140 F. Supp. 3d 457 (D. Md. 2015), *aff'd*, 851 F.3d 315 (4th Cir. 2017).............................. 30

*May v. Google LLC*
No. 24-CV-01314-BLF, 2024 WL 4681604 (N.D. Cal. Nov. 4, 2024) .................................. 42

*McCluskey v. Hendricks*
No. CV 21-1188-MWF, 2021 WL 6773140 (C.D. Cal. Nov. 17, 2021) ................................. 20

-viii-

Case No. 3:23-cv-02865-EMC

SMRH:4897-9404-1090

DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

*McMurray v. Merck & Co.*
  No. C 07-1007 MMC, 2007 WL 1456042 (N.D. Cal. May 17, 2007) .................................. 44

*In re Meta Pixel Healthcare Litig.*
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................ 15

*In re Meta Pixel Tax Filing Cases*
  No. 22-cv-07557, 2024 WL 1251350 (N.D. Cal. Mar. 25, 2024).................................. 22

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*
  540 F.3d 1049 (9th Cir. 2008)................................................................... 7, 12

*Mikulsky v. Bloomingdale's, LLC*
  No. 3:23-CV-00425, 2024 WL 337180 (S.D. Cal. Jan. 25, 2024)........................... 21

*Mikulsky v. Noom, Inc.*
  No. 3:23-CV-00285-H-MSB, 2023 WL 4567096 (S.D. Cal. July 17, 2023) ...................... 25

*In re Nexus 6P Prods. Liab. Litig.*
  293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................................ 41

*Nienaber v. Overlake Hosp. Med. Ctr.*
  No. 2:23-CV-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024) .......................... 15

*Oglesby v. State*
  441 Md. 673 (2015)......................................................................................... 29

*Okash v. Essentia Health,*
  No. CV 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....................... 15

*Patrick Collins, Inc. v. Does 1-22*
  No. 11-cv-01772-AW, 2011 WL 5439005 (D. Md. Nov. 8, 2011) ....................... 29

*People v. Miller*
  81 Cal. App. 4th 1427 (2000)........................................................................... 22

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*
  402 F. Supp. 3d 615 (N.D. Cal. 2019), *aff'd sub nom. Planned Parenthood Fed'n of
  Am., Inc. v. Newman*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022).............. 14

*Plumlee v. Pfizer, Inc.*
  No. 13–CV–00414–LHK, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ............................. 42

*Potter v. Havlicek*
  No. 3:06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008) ......................... 30

*Rhynes v. Stryker Corp.*
  No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ........................... 44

Case No. 3:23-cv-02865-EMC

SMRH:4897-9404-1090

DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

*Ricks v. State of Maryland*
 312 Md. 11 (1988), *superseded on other grounds by Ragland v. State*, 385 Md. 706
 (2005) ............................................................................................................................. 26

*Roby v. McKesson Corp.*
 47 Cal. 4th 686 (2009), *as modified* (Feb. 10, 2010) ............................................................. 43

*Rodriguez v. Sony Comput. Entm't Am., LLC*
 801 F.3d 1045 (9th Cir. 2015)................................................................................................ 10

*Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*
 No. 2:21-CV-07232-SB-AFM, 2022 WL 2199938 (C.D. Cal. Mar. 7, 2022)....................... 45

*Se. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*
 No. 2:12CV701, 2013 WL 2147478 (E.D. Va. May 14, 2013) ....................................... 32, 33

*Seattle Children's Hosp. v. King Cty.*
 16 Wn.App.2d 365 (2020).................................................................................................. 35, 37

*Shabaz v. Polo Ralph Lauren Corp.*
 586 F. Supp. 2d 1205 (C.D. Cal. 2008)...................................................................................... 5

*Smith v. Facebook, Inc.*
 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)...................... 27

*Solomon v. Allstate Prop. & Cas. Ins.*,
 No. 23-CV-3101 (TSC), 2024 WL 4346264 (D.D.C. Sept. 29, 2024) .................................. 38

*Spokeo, Inc. v. Robins*
 578 U.S. 330 (2016) .................................................................................................................... 5

*Sprewell v. Golden State Warriors*,
 266 F.3d 979, 988 (9th Cir. 2001), *as amended* at 275 F.3d 1187 (9th Cir. 2001).................. 5

*State v. Maddox*
 69 Md. App. 296 (1986).......................................................................................................... 26

*Straubmuller v. Jetblue Airways Corporation*
 No. CV DKC 23-384, 2023 WL 5671615 (D. Md. Sept. 1, 2023) ......................................... 25

*Sussman v. ABC*
 186 F.3d 1200 (9th Cir. 1999)................................................................................................. 14

*Sweet v. Google Inc.*
 No. 17-cv-03953-EMC, 2018 WL 1184777 (N.D. Cal. Mar. 7, 2018).................................. 45

*Thomas v. Papa Johns Int'l, Inc.*
 No. 22cv2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ................................................. 20

SMRH:4897-9404-1090

*Town of Chester, N.Y. v. Laroe Ests., Inc.*
  581 U.S. 433 (2017) ........................................................................................... 5

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) ....................................................................................... 5

*Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*
  No. CV SAG-18-2315, 2019 WL 2233535 (D. Md. May 23, 2019) .................... 30

*United States v. Ackies*
  918 F.3d 190 (1st Cir. 2019) ............................................................................ 30

*In re Vantive Corp. Secs. Litig.*
  283 F.3d 1079 (9th Cir. 2002) .......................................................................... 45

*Vargas v. JP Morgan Chase Bank, N.A.*
  30 F. Supp. 3d 945 (C.D. Cal. 2014) ................................................................ 42

*Williams v. Facebook, Inc.*
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ............................................................ 19

*Wilson v. S. Cal. Edison Co.*
  234 Cal. App. 4th 123 (2015) ........................................................................... 44

*Woodford v. Yazam Inc.*
  No. CV 22-3665 (BAH), 2023 WL 8083975 (D.D.C. Nov. 21, 2023) ................. 23

*Wright v. Jeckle*
  121 Wn. App. 624 (2004) .................................................................................. 35

*Zetz v. Bos. Sci. Corp.*
  644 F. Supp. 3d 684 (E.D. Cal. 2022) .............................................................. 43

*In re Zynga Privacy Litig.*
  750 F.3d 1098 (9th Cir. 2014) ................................................................... 28, 29

*In re Zynga*
  750 F.3d at 1107–08 ......................................................................................... 29

Statutes

18 U.S.C. § 2510(8) ............................................................................................. 28

18 U.S.C. § 2511(2)(d) ........................................................................................ 14

18 U.S.C. § 3117 ................................................................................................. 31

Cal. Civ. Code § 56.05(j) ..................................................................................... 17

Cal. Civ. Code § 56.05(m) ................................................................................... 17

Cal. Civ. Code § 56.05(p) ..................................................................................... 17

Cal. Civ. Code § 1798.100 ..................................................................................... 19

Cal. Civ. Code § 3294(a) ........................................................................................ 43

Cal. Civ. Code § 3294(b) ........................................................................................ 44

Cal. Civ. Code § 3294(c)(1) .................................................................................... 44

Cal. Civ. Code § 3294(c)(2) .................................................................................... 43

D.C. Code § 28-3851(1)(A) ............................................................................... 37, 38

D.C. Code § 28-3851(3)(A) .................................................................................... 38

D.C. Code § 28-3852 .............................................................................................. 37

D.C. Code § 28-3904(e) .......................................................................................... 22

Ga. Code Ann. § 16-9-92(18) ................................................................................. 24

Maryland Wiretap Act ............................................................................................ 24

Md. Code Ann., Com. Law § 14-3501(e)(1) ........................................................... 39

Md. Code Ann., Com. Law § 14-3504(a)(1) ........................................................... 39

Md. Code Ann., Cts. & Jud. Proc. § 10-401(4) ...................................................... 28

Md. Code Ann., Cts. & Jud. Proc. § 10-401(10) ............................................... 27, 30

Md. Code Ann., Cts. & Jud. Proc. § 10-402(a)(1) .................................................. 24

Md. Code Ann., Cts. & Jud. Proc. § 10-403 ..................................................... 29, 30

Md. Code Ann., Cts. & Jud. Proc. § 10-404 ........................................................... 30

Md. Cts. & Jud. Pro. § 10-401(5)(ii)(3) .................................................................. 31

Va. Code Ann. § 18.2–152.2 .................................................................................... 32

Va. Code Ann. § 18.2–152.4 .................................................................................... 32

Wash. Rev. Code 70.02.010(15) ............................................................................. 36

Wash. Rev. Code 70.02.010(17) ............................................................................. 35

Wash. Rev. Code 70.02.020(1) ............................................................................... 35

Wash. Rev. Code Ann. § 19.255.005(2)(a)(i) ......................................................... 40

Wash. Rev. Code Ann. § 19.255.010(1) ............................................................... 39

Wash. Rev. Code § 9.73.030(1)(a) ...................................................................... 34

Wash. Rev. Code § 19.255.005(1) ....................................................................... 40

<u>Other Authorities</u>

Fed. R. Civ. P. 12(f) ........................................................................................... 5

U.S. Senate Report No. 99-541 (1986) .............................................................. 26

SMRH:4897-9404-1090

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' core allegation is that Kaiser installed code provided by Quantum Metric, Twitter, Adobe, Microsoft Bing, Google, and Dynatrace on Kaiser's website and two mobile applications which caused certain information to be disclosed to those third parties.  This Court previously dismissed all of Plaintiffs' claims to the extent they were asserted based on the allegation that Kaiser allowed third parties to collect and/or use Kaiser Plan Member information for their own benefit because Plaintiffs had failed to allege any wrongdoing by Kaiser—i.e., that Kaiser knew and/or approved of the third parties using this information for their own purposes.  The CMC still does not establish that Kaiser knew any third-party vendors were using Kaiser Plan Members' data for the vendors' own purposes.

Plaintiffs assert that Kaiser used Plaintiffs' personal information as an "in-kind" payment to Google, Microsoft Bing, and Twitter in exchange for the free use of their online technologies.  This assertion improperly contradicts Plaintiffs' prior assertion in the First Amended Complaint that these vendors provided their technologies for free to demonstrate the effectiveness of their targeted advertising services to advertisers such as Kaiser.  Moreover, the facts alleged in the CMC do not support Plaintiffs' theory that an "in-kind" exchange occurred or that by installing the code for the technology on its website and mobile applications, Kaiser understood that they were making an "in-kind payment" of Plan Member personal information to Google, Bing, and Twitter and that Google, Microsoft Bing, and Twitter would use that information for their own purposes.

The CMC's allegations regarding Dynatrace, Quantum Metric, and Adobe also fail to establish that Defendants knew that these vendors would use Plan Member personal information for their own purposes.  Plaintiffs allege that Dynatrace used technical information about Dynatrace's own services for its own purposes, ***not*** Plan Member information.  Similarly, the CMC does not allege that Kaiser's agreements with Quantum Metric permitted independent use of Plan Member information.  None of the allegations any of *those* agreements permit Quantum Metric to use Kaiser data for its own purposes.  There is also no allegation that Kaiser was aware of or reviewed the statements on Quantum Metric's website or the specific version of the SaaS

SMRH:4897-9404-1090
DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

1  End-User License Agreement.

2      In addition, Claims 1−4, 8−11, 13, 15, 18−22 of the CMC are riddled with pleading

3  deficiencies.  Plaintiffs' new allegations do not cure the deficiencies previously identified by this

4  Court in its order on Kaiser's prior motion to dismiss.  For example, the Court dismissed

5  Plaintiffs' claims for violation of California privacy statutes for lack of standing because the only

6  California resident has been compelled to arbitration.  The non-California Plaintiffs' lack of

7  standing remains unchanged.  Plaintiffs' Claims for violations of state and federal wiretapping

8  laws, invasion of privacy, larceny, violations of various state consumer protection laws, and

9  violations of state data breach notification laws all fail because Plaintiffs have not alleged essential

10  elements of those claims.  Claims 1−4, 8−11, 13, 15, 18−22 should be dismissed with prejudice.

11      Moreover, Plaintiffs have not pleaded any claims against KPWA or Hospitals.  Plaintiffs'

12  claims are based on their use of the website and mobile applications, which are owned and

13  operated by KFHP.  Plaintiffs do not sufficiently allege any direct involvement or control of the

14  Website or Apps by Hospitals or KPWA.  Accordingly, all Claims against them should be

15  dismissed with prejudice.

16      Finally, Plaintiffs' tolling allegations and requests for punitive damages should be stricken.

17  Plaintiffs cannot toll the applicable statutes of limitation because they have not pleaded all of the

18  elements required to invoke the discovery rule.  Similarly, Plaintiffs are not entitled to punitive

19  damages because they have not pleaded that Kaiser's conduct was oppressive, malicious, or

20  fraudulent or that this conduct was committed, authorized, or ratified by an officer, director, or

21  managing agent of Kaiser.  Accordingly, Plaintiffs' tolling allegations and requests for punitive

22  damages should be stricken from the CMC.

23  **II.     FACTUAL AND PROCEDURAL BACKGROUND**

24      **A.     Plan Members Use KFHP's Website and Apps to Access Plan Benefits.[1]**

25      KFHP is a health care plan.  (CMC ¶¶ 70–72.)  Hospitals is a non-profit, public benefit

26  corporation that operates acute care hospitals and medical offices in California, Colorado, Hawaii,

27  Maryland, Virginia, Oregon, Washington, and the District of Columbia.  (*Id.* ¶¶ 72–73.)  KPWA is

28  _____

[1] While Defendants recite certain allegations in the CMC, they do not concede they are accurate.

1   a health care plan operating in Washington.  (*Id.* ¶ 75.)  Enrollees in the health plans offered by

2   KFHP ("Plan Members") have access to the hospitals and medical offices operated by Hospitals

3   and other Kaiser entities.  (*Id.* ¶ 71.)  All nine named Plaintiffs are Plan Members.  (*Id.* ¶¶ 24–69.)

4          KFHP owns and operates the relevant website ("Website" or "Site") and applications

5   ("Apps"), through which Plan Members and the public can access information and perform certain

6   tasks.  (*Id.* ¶ 83.)  The Site's publicly accessible pages provide Plan Members and the public with

7   general information about health conditions and health care services.  (*Id.* ¶¶ 83–90.)  The Site

8   also includes a secure patient portal which can be accessed by Plan Members (the "Portal").  (*Id.* ¶

9   88.)  If Plan Members log in to the Portal or the Apps, they can also perform tasks like scheduling

10  appointments and reviewing test results.  (*Id.* ¶ 90.)  According to Plaintiffs, code supplied by the

11  alleged vendors ("Vendors") was installed on the Site and Apps that permitted Vendors to receive

12  Plaintiffs' communications with Kaiser.  (*Id.* at ¶¶ 3–7.)  Plaintiffs further allege this caused the

13  disclosure of certain information to Vendors, such as details concerning their interactions with the

14  Site and Apps.  (*Id.*)

15         **B.      A HIPAA Breach Notice Was Issued in April 2024.**

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25         **C.      The Court Dismissed 15 Claims Asserted in the FAC.**

26         On April 4, 2024, the Court granted in part Defendants' Motion to Dismiss the First

27  Amended Complaint ("FAC"), dismissing 15 of the claims asserted.  (*See* ECF No. 124 ("MTD

28  Order").)  In its Order, the Court noted that Plaintiffs asserted two factual scenarios to support

1  liability: "(1) Kaiser used third parties to collect and/or use information *for the benefit of Kaiser*

2  (essentially, hiring third parties as vendors)" and "(2) Kaiser allowed third parties to collect and/or

3  use information *for the benefit of the third parties themselves* (essentially, selling or otherwise

4  giving information to third parties)." (*Id.* at 11.)  The Court identified a fatal deficiency with

5  scenario two (third parties using collected information to benefit themselves)—Plaintiffs had not

6  alleged that Kaiser knew about and approved of the third parties' use of Kaiser Plan Members'

7  personal information for their own purposes.  (*Id.*)  The Court elaborated that "as the FAC is

8  currently pled, Kaiser simply hired the third parties to do work for Kaiser, which exposed the third

9  parties to personal information about members, but there is no indication that Kaiser then signed

10  off (either explicitly or implicitly) on the third parties taking that information and using it for their

11  own purposes (and not solely for Kaiser's use)." (*Id.* at 11–12.)  Accordingly, the Court dismissed

12  any claims hinging on scenario two.  As for claims asserted under scenario one (third parties using

13  collected information to benefit Kaiser), 15 claims were dismissed with leave to amend.  The

14  Court also dismissed all claims against two defendants—Hospitals and The Permanente Medical

15  Group ("TPMG").  (*See* MTD Order.)  In doing so, the Court rejected Plaintiffs' group pleading of

16  all Defendants (an issue Plaintiffs have still not addressed in the CMC).  (*See id.* at 8–9

17  ("Plaintiffs have alleged in conclusory terms only that all Kaiser entities have a hand in the

18  operation of the website and mobile applications.  But the documents attached to the FAC indicate

19  that the website and mobile applications at issue are owned and operated by KFHP only.").)

20  **D.    The Court Mooted the Motion to Dismiss the SAC After Consolidation.**

21  Plaintiffs filed a Second Amended Complaint ("SAC") on May 31, 2024.  (ECF No. 162.)

22  On August 27, 2024, the Court consolidated *Christopher Newton, et al. v. Kaiser Foundation*

23  *Health Plan, Inc., et al.,* Case No. 3:24-cv-03625-EMC and *Alexis Sutter v. Kaiser Foundation*

24  *Health Plan, Inc.,* Case No. 3:24-cv-03352-EMC with this matter and ordered Plaintiffs to file a

25  consolidated complaint which mooted Defendants' pending Motion to Dismiss the SAC.  (ECF

26  Nos. 173, 233.)  Plaintiffs filed the CMC on December 6, 2024.  (ECF No. 271.)

27  **III.    LEGAL STANDARDS**

28  To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a

-4-

SMRH:4897-9404-1090      DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring more than a "sheer possibility," "naked assertion," "labels and conclusions," or "a formulaic recitation of the elements"). The complaint must also allege a factual basis for each element of each cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 687 (2009). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The Court does not accept as true allegations that are contradicted by documents attached to the complaint or subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *as amended* at 275 F.3d 1187 (9th Cir. 2001); *see* MTD Order at 9 (dismissing claims where documents attached to the FAC contradicted plaintiffs' allegations).

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff bears the burden of establishing these three elements. *Id.* "If a dispute is not a proper case or controversy, the courts have no business deciding it [] or expounding the law in the course of doing so." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017).

The Court may "strike from a pleading… any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This includes striking parts of the prayer for relief when the relief sought is "not recoverable as a matter of law." *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1208 (C.D. Cal. 2008). Motions to strike are proper where granting the motion would make the trial less complicated or would streamline the action's resolution. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1526–27 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

SMRH:4897-9404-1090    DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

Case No. 3:23-cv-02865-EMC

**IV.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT KAISER KNEW THE VENDORS USED PLAINTIFFS' DATA FOR THEIR OWN BENEFIT.**

The CMC fails to adequately allege that any Vendors used Plaintiffs' personal information for their own benefit with the "knowledge and/or approval of Kaiser." (MTD Order at 11.) Previously, the Court dismissed all claims to the extent they were based on the allegation that Kaiser allowed third parties to collect or to use information for their own benefit because "there is no alleged wrongdoing by Kaiser—i.e., that Kaiser knew and/or approved of third parties collecting and/or using information for their own purposes." (*Id.* at 12.) Plaintiffs have not cured—and cannot amend their complaint to cure—these pleading failures.

**A.    Plaintiffs Fail to Allege That Dynatrace Used Plan Member Information for Its Own Purpose or Benefit or That Kaiser Knew of Its Actions.**

As to the vendor Dynatrace, Plaintiffs allege only that Dynatrace's "Subscription Agreement" states Dynatrace can use "Usage Data." (CMC ¶ 352, n.79.) However, the very document that Plaintiffs rely upon defines "Usage Data" as technical information about Dynatrace's own services, ***not*** any information collected from the Site or Apps. (*Id.* at ¶ 353, n.80.) The CMC also does not allege that Dynatrace used Plan Member personal information for its own purposes. (*See id.* ¶¶ 348–60.) As a result, the CMC fails to allege Kaiser knew of any independent use by Dynatrace.

**B.    Plaintiffs Do Not Sufficiently Allege that Quantum Metric Used Plan Member Information for Its Own Purposes or that Kaiser Knew It Did.**

Plaintiffs fail to plead nonconclusory facts regarding their allegation that Kaiser knew Quantum Metric used protected health data collected from the Website and Apps for its own purposes. ██████████████████████ These allegations do not establish that Quantum Metric used Plaintiffs' personal information for its own purposes or that Kaiser knew that Quantum Metric was using Plaintiffs' personal information for its own purposes.

*Doe I v. Google LLC*, No. 23-CV-02431-VC, 2024 WL 3490744, at *3 (N.D. Cal. July 22, 2024) is directly on point.  In *Doe I*, the court dismissed claims based on transfers of information to Google, holding that reliance on Google product descriptions to allege that Google obtained PHI from health care providers was insufficient to state a claim.  *Id.*  Specifically, the court found that "the complaint adequately alleges that providers **could** configure and use the products in a way that would cause personal health information to be transmitted to Google.  But instead of offering factual allegations about how the plaintiffs' various providers are **actually** using Google's products, the plaintiffs allege hypothetical examples—based on the generic product descriptions— of how various product features could be used in ways that could result in privacy violations."  *Id.* (emphasis in original).  For these same reasons, all claims based on Quantum Metric's collection and/or use of Plaintiffs' information should be dismissed.

Plaintiffs first point to Quantum Metric's website's marketing statements describing "integrations" customers *might* choose to use.  (CMC ¶¶ 122–24.)  However, Plaintiffs do not allege that Kaiser *used* any of those integrations on the Site or Apps (or knew about them).[2]  Similarly, based on Quantum Metric's publicly available SaaS End-User License Agreement, Plaintiffs allege "Quantum Metric also uses Plan Members' communications for its own research and analysis purposes, continuing to build and refine its products for its own profit."  (*Id.* ¶ 125.)  The referenced provision, however, only states that Quantum Metric may use "Aggregated Data"—not Plaintiffs' data.  (*Id.* n. 30.)  The term Aggregated Data means "aggregated statistical information and data that is not identifiable to any person or entity."  (*See* Declaration of Wynter L. Deagle ("Deagle Decl.") at Ex. A.[3])  Furthermore, Plaintiffs do not allege this website's form SaaS agreement even applied to Kaiser or that Kaiser knew about it.  (CMC ¶ 125.)  ■

---

[2] In any event, Plaintiffs do not allege that any of these integrations involve Quantum Metric using any website visitor personal information for its own purposes, so they are irrelevant.

[3] In ruling on a motion to dismiss, a court may consider "materials incorporated into the complaint by reference . . . ."  *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  "The requirements for the documents that are relied on by the complaint to be incorporated is that: '(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.'"  *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 866 (N.D. Cal. 2022) (citations and internal quotations omitted).  All requirements are met here.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17 **C.**     **Plaintiffs Fail to Allege that Kaiser Knew Adobe Used Plan Member**
**Information for its Own Purpose or Benefit.**

18

19     Plaintiffs' also fail to allege that Adobe used Plan Member information for its own

20 purposes, let alone that Kaiser was aware of such use.

21

22

23

24

25

26 _____

27 [4]

28

DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

1  ███████████████████████████████████████████  These allegations

2  do not sufficiently plead that Adobe was *using* Plan Member information for its own benefit, let

3  alone that Kaiser *knew* that Adobe was using Plan Member data for its own benefit.

4  **D.    Plaintiffs Do Not Allege that Kaiser Knew that Google, Bing, and Twitter Used Information for Their Own Purposes/Benefits.**

5

6  The CMC also does not allege facts showing that Kaiser knew that Google, Microsoft

7  Bing, and Twitter were using Plaintiffs' information for their own purposes.  Plaintiffs claim that:

8  (1) Kaiser allowed these companies to collect and use Plaintiffs' information in exchange for free

9  access to their online technologies, effectively using the information as an "in-kind" payment (*see*

10 CMC ¶¶ 217–18, 461–62, 535); and (2) Kaiser should have been aware that Twitter, Google, and

11 Microsoft Bing were independently using Plan Member information due to the nature of how their

12 technologies operate.  These allegations do not satisfy Plaintiffs' pleading obligations.

13 **1.    Kaiser's Use of Code on its Website and Apps Does Not Establish That Kaiser Knew Third Parties Used Information for Their own Purposes.**

14

15 Plaintiffs assert that Kaiser "knew or should have known" that Google, Microsoft Bing,

16 and Twitter would use Plan Member personal information and PHI for their own purposes simply

17 by embedding the code for their technologies onto the Website and Apps.  (*See id.* ¶¶ 225,

18 262–64, 306–08.)  This assertion does not have any factual support in the CMC.

19 Plaintiffs plead their *conclusion* that Kaiser's installation of an online technology provided

20 Kaiser with knowledge that the information collected would be used for the third party Vendors'

21 own purposes, but Plaintiffs do not plead any basis for making these unsupported conclusions.

22 Plaintiffs do not allege any *facts* regarding how Kaiser was or should have been particularly aware

23 of these Vendors' allegedly independent uses of Plan Member information to provide other

24 services.  Plaintiffs do not allege that there were any particular aspects of each vendor's software

25 code that would provide this knowledge or that anyone at Kaiser assessed the code or technology

26 in a manner that would provide notice of the Vendors' independent use to support Plaintiffs'

27 awareness-by-installation-of-code theories.  Plaintiffs' unsupported assertion of automatic

28 knowledge based on the installation of software code is not a sufficient allegation of *facts* showing

-9-

1  that Kaiser knew that Google, Microsoft Bing, and Twitter used Plaintiffs' personal information

2  for their own purposes purely by installing their code on the Website and Apps.

3         **2.**      **Plaintiffs' Allegations Regarding an "In-Kind" Payment of Personal**
                    **Information In Exchange for Use of the Third Party Online**

4                      **Technologies Does Not Establish That Kaiser Knew Third Parties Used**
                    **Information for Their own Purposes.**

5

6        The CMC's assertion that Kaiser knew Google, Microsoft Bing and Twitter would use

7  Plaintiffs' personal information for their own purposes because Kaiser used Plaintiffs' information

8  as an "in-kind" payment to Google, Microsoft Bing, and Twitter for free use of those companies'

9  technology, (*see, e.g.*, *id.* ¶¶ 226, 352, 418, 535), is contradicted by Plaintiffs' allegations in the

10  FAC and also not supported by the facts alleged in the CMC.

11        As an initial matter, in the FAC, Plaintiffs alleged that "Google, Microsoft Bing, and

12  Twitter do not charge to use their services because they are able to generate billions of dollars in

13  revenue each year by selling targeted advertising" to companies such as Kaiser.  (FAC ¶ 135.)

14  According to the FAC, Google, Microsoft Bing, and Twitter "offer free analytics tools" which are

15  "useful to advertisers as they can show how effective certain ads are" and "provide general

16  information about who is visiting the website and what those users are doing on the Site."  (FAC ¶

17  141.)  As the Court previously held, Plaintiffs did not allege that Kaiser knew Google, Microsoft

18  Bing, or Twitter would use Plan Member information for their own purposes.  Plaintiffs alleged

19  only that Google, Microsoft Bing, and Twitter provided their technologies for free to demonstrate

20  the effectiveness of their targeted advertising services to advertisers such as Kaiser.  (FAC ¶ 135.)

21        The CMC's new assertion that Plaintiffs' information was used as an "in-kind payment" in

22  exchange for Defendants' use of Google, Microsoft Bing, and Twitter's analytics technology

23  directly contradicts these allegations and should be disregarded.  *See Rodriguez v. Sony Comput.*

24  *Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) ("An amended complaint should aver

25  additional allegations that are consistent with the challenged pleading and that do not contradict

26  the allegations in the original complaint.")  Moreover, it is implausible that Kaiser needed to use

27  Plaintiffs' information as an "in-kind" payment to receive free use of Twitter, Google, and

28  Microsoft Bing's analytics and advertising technology (as alleged in the CMC) when that

-10-                                Case No. 3:23-cv-02865-EMC

SMRH:4897-9404-1090              **DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES**

technology is provided completely free to demonstrate the effectiveness of other advertising services provided by Google, Bing and Twitter (as alleged in the FAC).  Finally, even if these allegations could be reconciled, the CMC does not allege any facts supporting how Kaiser's use of free technology means Kaiser "understood" that it was exchanging the use of the technology for personal information from Kaiser Plan members "that Google, Microsoft Bing, and Twitter could then monetize."  (*See* CMC ¶ 217.)

In addition, Plaintiffs do not provide any support for their allegation that Kaiser knew it was making an "in-kind payment" of Plan Member personal information to Google, Microsoft Bing, and Twitter.  Plaintiffs claim that Kaiser "understood that, in lieu of monetary payments for the use of the Google, Microsoft Bing, and Twitter code, Kaiser would be paying Google, Microsoft Bing, and Twitter in-kind by providing them with Plaintiffs and other Kaiser Plan Members' identifying information and/or PHI, which Google, Microsoft Bing, and Twitter could then monetize through marketing."  (CMC ¶ 461.)  The facts pleaded to in support this statement, however, do not lead to an inference that Kaiser had any type of "in-kind" payment agreement with Twitter, Google, or Microsoft Bing.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████  Plaintiffs' allegations also do not establish that Kaiser knew that Twitter would use Plan Member personal information or PHI for its own purposes.  Plaintiffs' allegations simply do not establish that Kaiser knowingly sold Plan Member personal information to Twitter in exchange for use of the Twitter pixel.

Plaintiffs' allegations regarding "in-kind" payments to Google are similarly deficient. Plaintiffs allege that Google's code allows Google to use Plaintiffs' and other Kaiser Plan Members' personal information and PHI for targeted advertising and that Kaiser was aware of this when it installed the code on its Site and Apps because Kaiser installed the Google code so that

1    Kaiser could use the technology for its own targeted advertising.  (CMC ¶¶ 262–263.)  These

2    allegations support the inference that Kaiser was allowing Google to collect and use information to

3    provide services *to Kaiser*.  They do not establish that Kaiser knew Google would use Plan

4    Member personal information for its own purposes or that Kaiser made an "in-kind" payment of

5    this information in exchange for use of the Google code.

6         Further, Plaintiffs' assertion that there was an in-kind payment agreement under which

7    Kaiser received Google's code for free in exchange for Google's receipt and independent use of

8    Plan Member personal information is belied by the Google Cloud Master Agreement between

9    Kaiser and Google (attached to the Declaration of Wynter L. Deagle as Exhibit B).[5]  Plaintiffs

10   assert that Kaiser's failure to prohibit Google's independent use of personal information in its

11   Google Cloud Master Agreement means that Kaiser knew Google would use Plaintiffs'

12   information for its own purposes and that Kaiser intended the information to be payment in

13   exchange for free use of Google's code.  (CMC ¶¶ 262–263.)  The Google Cloud Master

14   Agreement, however, specifically outlines the fees Google charges Kaiser for use of its services.

15   (Deagle Decl., Ex. B at p. 2–4.)  This directly contradicts Plaintiffs' allegations that Defendants'

16   used Plaintiffs' information as an "in-kind" payment for these services.

17        Moreover, Plaintiffs' allegations demonstrate that Google did not use Kaiser data for its

18   own purposes.  Plaintiffs admit that Google told Plaintiffs that information from Kaiser's Website

19   "is not used to personalize ads in Google Search, YouTube and Google Display Network," which

20   is the purported benefit that Google allegedly receives from Kaiser as part of the in-kind payment

21   arrangement.  (CMC ¶ 266.)  Plaintiffs further admit that Google classifies portions of Kaiser's

22   Website as sensitive and does not use data from those portions of Kaiser's Website for

23   personalized advertising.  (*Id.* ¶ 267.)  These allegations do not support an inference that Google

24

25   [5] In ruling on a motion to dismiss, a court may consider "materials incorporated into the complaint
     by reference . . . ."  *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir.
26   2008).  "The requirements for the documents that are relied on by the complaint to be incorporated
     is that: '(1) the complaint refers to the document; (2) the document is central to the plaintiff's
27   claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.'"  *Al
     -Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 866 (N.D. Cal. 2022) (citations and internal
28   quotations omitted).  All requirements are met here.

used Plan Member personal information for its own purposes, that Kaiser knew that Google used that information for its own purposes, or that there was an in-kind exchange of personal information or PHI for the use of Google's analytics or advertising code.

Plaintiffs' allegations regarding Microsoft Bing are also deficient.  Plaintiffs allege that Kaiser installed Microsoft Bing's technology to assess its ability to improve *Kaiser's* marketing to visitors to its Website and Apps and the effectiveness of targeted advertising services Bing provided *to Kaiser*.  (*Id.* ¶¶ 305–307.)  As with Google, these allegations do not support an inference or allegation that Kaiser knew that Microsoft Bing would also use Plan Member personal information for its own purposes or that Kaiser made an "in-kind" payment of this information in exchange for use of the Microsoft Bing technology.  Plaintiffs' allegation that Kaiser did not enter into a Business Associate Agreement with Microsoft for the Bing technology but entered into Business Associate Agreements for other technologies, also does not support Plaintiffs' "in-kind" payment theory.  If anything, these allegations support the inference that Kaiser did not know *at that time* that Microsoft would receive PHI through its use of Microsoft Bing, not that Kaiser deliberately violated HIPAA because it knew that Microsoft Bing would use PHI for its own purposes and was "paying" for the Microsoft Bing technology with this information.

Plaintiffs have not plausibly alleged that Google, Microsoft Bing, or Twitter used Plaintiffs' personal information and PHI for their own purposes with the "knowledge and/or approval of Kaiser."  Accordingly, all Claims in the CMC should be dismissed with prejudice to the extent based on these allegations.

## V.    CLAIMS 1−4, 8−11, 13, 15, and 18–22 FAIL TO ALLEGE SUFFICIENT FACTS TO STATE AN ACTIONABLE CLAIM.

Claims 1−4, 8−11, 13, 15, 18−22 all fail to sufficiently allege at least one element of the asserted cause of action.  Each of these Claims fails should be dismissed with prejudice.

### A.    Claim 1 for Violation of the Federal Wiretapping Act Fails Because Plaintiffs Do Not Sufficiently Plead the Crime-Tort Exception.

The Court previously dismissed Plaintiffs' Electronic Communications Privacy Act

("ECPA") claim because: (1) Kaiser was a party to the communications at issue; (2) Kaiser gave consent to the third-party interception; and (3) Plaintiffs failed to sufficiently allege the applicability of the crime-tort exception.  (MTD Order at 13–16.)  Plaintiffs previously conceded that Kaiser was a party to the communications at issue and consented to the purported interception. Accordingly, Plaintiffs' ECPA claim hinges on applicability of the crime-tort exception.  (*Id.*)

The CMC does not cure the pleading failure identified by this Court in its MTD Order—namely, that an interception itself cannot serve as the independent crime or tort required to invoke the crime-tort exception.  (*Id.* at 15 (*citing Sussman v. ABC*, 186 F.3d 1200, 1202–03 (9th Cir. 1999)).)  As a result, the crime-tort exception does not apply.

Under 18 U.S.C. § 2511(2)(d)—ECPA's crime-tort exception—"[i]t shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  To fall within the crime-tort exception, the offending party must make a recording with the intent of using the recording to commit an independent crime or tort, such as making a recording to use for blackmail.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 686 (N.D. Cal. 2019), *aff'd sub nom. Planned Parenthood Fed'n of Am., Inc. v. Newman*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022).  The Ninth Circuit is clear that the purported illegal recording must be made "for the purpose of committing some other **subsequent** crime or tort."  *Sussman*, 186 F.3d at 1202–03 ("[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious.").  In other words, the bad acts must be "secondary to the acquisition of the communication" and involve "tortious or criminal use of the interception's fruits."  *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015).

Here, Plaintiffs still have not identified any separate and subsequent criminal or tortious purpose.  Plaintiffs allege that Defendants' criminal or tortious purpose was "using Kaiser Plan

1    Members' identifying information and/or PHI as consideration for Kaiser obtaining Twitter,

2    Google, and Microsoft Bing's technology."  (CMC ¶ 460.)  According to Plaintiffs' latest theory,

3    Kaiser essentially sold information to Twitter, Google, and Microsoft Bing. (*Id.* ¶ 464.)  Plaintiffs

4    further maintain that Kaiser "acted tortiously by using Plaintiffs and other Kaiser Plan Members'

5    personal information without consent or compensation so that Kaiser could obtain Twitter, Google

6    and Microsoft Bing's market research and consumer analytics technology free or charge, rather

7    than pay for it." (*Id.* ¶ 466.)  These allegations still do not establish the crime-tort exception

8    because they do not demonstrate a distinct and subsequent criminal or tortious act.

9        Plaintiffs still fail to plead a criminal or tortious act that is *separate from the interception*.

10    While Plaintiffs concede the interception itself was not criminal or tortious, they assert that Kaiser

11    allowing the interception to take place, in exchange for use of technology, is an independent and

12    subsequent crime or tort.  (*Id.* at ¶ 468.)  But Plaintiffs' "in-kind" payment theory fails because an

13    alleged financial gain—such as using a technology for free instead of paying for it as Plaintiffs

14    allege—does not amount to a separate crime or tort.  (*See* MTD Order at 15–16 (citing *In re Meta*

15    *Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts in this

16    district have found that the crime-tort exception . . . is inapplicable where the defendant's primary

17    motivation was to make money, not to injure plaintiffs tortiously.")).); *see also Katz-Lacabe v.*

18    *Oracle Am., Inc.*, No. 22-cv-04792-RS, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024)

19    ("Plaintiffs fail plausibly to allege Oracle's underlying motivation in collecting and selling data

20    about internet users was anything other than to generate revenue.").  There are simply no

21    allegations that clearly describe a specific crime or tort that is *separate from the interception*.

22    To the extent Plaintiffs argue that a violation of the HIPAA Privacy Rule is a separate and

23    subsequent crime or tort, this also fails.  As alleged, this violation involves the *simultaneous*

24    *disclosure and interception* of Plaintiffs' information, and is thus, not a separate and subsequent

25    crime or tort that can establish the crime-tort exception.  *See Okash v. Essentia Health*, No. CV

26    23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (holding that the crime-tort

27    exception did not apply where "neither the alleged HIPAA nor privacy violations were

28    independent of the interception[.]"); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-

1  01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) (rejecting Plaintiffs' argument

2  that the act of recording the plaintiffs' communications and the transmission of those

3  communications were distinct enough to make the transmission an independently tortious or

4  criminal act).

5      As the Court previously held, "the tort identified by Plaintiffs . . . inheres in the alleged

6  interception."  (MTD Order at 15.)  Plaintiffs do not plead facts that would demonstrate that the

7  crime-tort exception applies.  Claim 1 should be dismissed with prejudice.

8  **B.     Claims 2, 4 and 8 Must Be Stayed as to John Doe and Dismissed as to All
           Other Plaintiffs Because John Doe Must Arbitrate His Claims and No Other**

9  **Plaintiffs Have Standing to Assert These California Statutory Claims**

10     Claim 2 for violation of the California Invasion of Privacy Act ("CIPA"), Claim 4 for

11 violation of the California Constitutional right to privacy, and Claim 8 for violation of the

12 California Confidentiality of Medical Information Act ("CMIA") all fail.  John Doe, the only

13 California resident, must individually arbitrate his claims.  Further, no other Plaintiff has standing

14 to assert these claims because none of them are California residents.

15                     **1.     John Doe Must Arbitrate His Claims**

16     Kaiser has concurrently moved to compel John Doe (the only California resident) to

17 arbitration.  Plaintiffs allege no new facts demonstrating that John Doe is not bound to his

18 arbitration agreement.  Indeed, Plaintiffs conceded in their previous opposition that the Court's

19 prior order mandated that John Doe pursue his claims in arbitration.  (ECF 226 at 3.)

20 Accordingly, John Doe must be compelled to arbitration and his claims stayed.

21                     **2.     The Other Plaintiffs Do Not Have Standing to Assert a CIPA Claim**

22     This Court already determined that only California residents have standing to assert CIPA

23 claims.[6]  The laws and interests of the states have not changed and the Court's prior

24 determinations regarding the choice-of-law analysis and the requirements for standing to assert

25 CIPA claims still apply.  Plaintiffs previously conceded the CIPA claim must be dismissed and

26 indicated they only intend to preserve this issue for appeal.  (ECF No. 225, Pls.' Opp. to Defs.'

27 Mot. to Dismiss SAC, at 23.)  Other than John Doe, none of the Plaintiffs are California residents.

28

---

[6] MTD Order at 20 (holding that "only a California Plaintiff can bring a CIPA claim").

1    Accordingly, Claim 2 for violation of CIPA should be dismissed with prejudice.

2          **3.    None of the Plaintiffs Have Standing to Assert a CMIA Claim**

3          This Court also already determined that only California residents have standing to assert

4    CMIA claims.[7]  As with the CIPA claim, the Court's analysis and conclusion that only California

5    residents have standing to assert CMIA claims still applies.  Other than John Doe, none of the

6    Plaintiffs are California residents.  Further, the remaining Plaintiffs are not "patients" covered by

7    the CMIA, did not receive treatment from a "provider of health care" as defined in the CMIA, and

8    the information alleged to have been disclosed about them is not "medical information" as defined

9    by the CMIA.  *See* Cal. Civ. Code §§ 56.05(j), 56.05(m), 56.05(p).  Accordingly, Claim 8 for

10   violation of CMIA should be dismissed with prejudice because the remaining Plaintiffs have no

11   standing to assert this claim.

12         **4.    Only California Residents Have Standing to Assert Claims for
              Violation of the California Constitutional Right to Privacy**

13

14         The Court's analysis is equally true with respect to Plaintiffs' claim for invasion of privacy

15   in violation of Article 1, Clause 1 of the California Constitution.  "California's Constitution

16   expressly grants *Californians* a right of privacy.  This right does not apply to people lacking a

17   connection to California.  Accordingly, at most, Plaintiffs may only bring their invasion of privacy

18   claim under the California Constitution only on behalf of California residents or people who were

19   in California when the alleged wrong occurred."  *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d

20   1274, 1285 (C.D. Cal. 2024) (citations and quotations omitted) (emphasis in original).

21         Other than John Doe, none of the Plaintiffs are California residents or were located in

22   California at the time of the purported violations.  Accordingly, none of these Plaintiffs have

23   standing.  Claim 4 for violation of the California Constitution should be dismissed with prejudice.

24   / / /

25   / / /

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] MTD Order at 38 ("…only a California Plaintiff may bring a CMIA claim, and, because the
     Court compelled John Doe to arbitration, there is no California Plaintiff to assert the CMIA
28   claim").

1
2

**C.**    **Claims 3 and 4 For Common Law Intrusion Upon Seclusion and Violation of the California Constitutional Right to Privacy Both Fail Because Plaintiffs Do Not Allege a Highly Offensive Intrusion.**

3    As this Court previously ruled, the analysis for common law intrusion upon seclusion is the

4    same as the analysis as a claim for invasion of the California Constitutional right to privacy.

5    (MTD Order at 28–29.)  "Actionable invasions of privacy must be 'highly offensive' to a

6    reasonable person, and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach

7    of the social norms.'"  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009).  "This standard

8    presents a 'high bar' for Plaintiffs to satisfy."  *Hubbard v. Google LLC*, No. 19-CV-07016-SVK,

9    2024 WL 3302066, at *6 (N.D. Cal. July 1, 2024).  The CMC does not meet it and both claims fail

10    because the purported "intrusions" identified by Plaintiffs do not meet the "highly offensive"

11    standard.

12    Determining whether a defendant's actions were "highly offensive to a reasonable person"

13    requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the

14    degree and setting of the intrusion, the intruder's motives and objectives, and whether

15    countervailing interests or social norms render the intrusion inoffensive.  *Hernandez,* 47 Cal. 4th

16    at 287; *see also Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 25–26 (1994).  While analysis

17    of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly

18    offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of

19    public policy.  *Hernandez*, 47 Cal. 4th at 287 (noting that highly offensive analysis "essentially

20    involves a 'policy' determination as to whether the alleged intrusion is 'highly offensive' under

21    the particular circumstances").

22    The CMC alleges that Kaiser's conduct was highly offensive because: (1) Kaiser violated

23    federal and state law; (2) Kaiser's disclosure was done "through deceit;" (3) Kaiser recklessly

24    disregarded Plaintiffs' privacy; and (4) privacy polls and studies show that people believe consent

25    is required before information is collected or shared.  (CMC ¶¶ 496–99.)  None of these arguments

26    establish that Kaiser's conduct was highly offensive.  They also do not address Plaintiffs'

27    continued failure to allege that "Kaiser knew and/or approved of third parties collecting and/or

28    using information for their own purposes (and not for the limited purpose of Kaiser's use)."

1   (MTD Order at 28.)

2       *First*, "violations of law do not necessarily represent highly offensive behavior." *Hubbard*,

3   2024 WL 3302066, at *8 (collection of children's information through the use of Google's online

4   tracking technology and cookies was not highly offensive); *see also, Manigault-Johnson v.*

5   *Google, LLC*, No. 18-cv-01032-BHH, 2019 WL 3006646, at *6 (D.S.C. Mar. 31, 2019)

6   (dismissing intrusion-upon seclusion claim that plaintiffs "based on nothing more than alleged

7   violations of COPPA"); *Hayter v. PHH Mortg. Corp.*, No. 15-cv-03332-LB, 2016 WL 3902483,

8   at *4 (N.D. Cal. July 19, 2016) (plaintiffs "cannot jury-rig an intrusion claim by tacking on other

9   alleged statutory failures"). Plaintiff's unsupported legal conclusion that Kaiser violated

10  unspecified federal and state privacy laws does not automatically render its conduct highly

11  offensive, especially where no court has determined that Kaiser violated any laws.

12      Further, Plaintiffs contend that all state and federal privacy laws require Kaiser to obtain

13  consent before collecting any personal information or sharing that information with third parties.

14  That assertion is not accurate. *See* Cal. Civ. Code § 1798.100 (businesses not required to obtain

15  consent before collecting or sharing personal information). Indeed, California law does not even

16  require that companies obtain consent if they want to *sell* personal information. *Id.* Other

17  jurisdictions, such as the District of Columbia, do not have any laws regulating collection of

18  personal information online. Finally, the Court already determined that Plaintiffs' prior

19  allegations in the FAC that Kaiser had violated state and federal privacy laws did not establish a

20  highly offensive intrusion. (MTD Order at 28.) The same conclusion is warranted here.

21      *Second*, Plaintiffs make only a conclusory allegation that Kaiser's conduct was highly

22  offensive because it was done "through deceit" without further explanation. As an initial matter,

23  because this claim sounds in fraud, Rule 9(b) applies. *See Concha v. London*, 62 F.3d 1493, 1502

24  (9th Cir. 1995). Accordingly, Plaintiffs are required to plead "a fraud along with the 'who, what,

25  when, where, and how' of its existence." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1052

26  (N.D. Cal. 2018). The fraud must "be specific enough to give defendants notice of the particular

27  misconduct...so that they can defend against the charge and not just deny that they have done

28  anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal

1    quotations omitted).  Plaintiffs' conclusory allegation that the collection and sharing of

2    information was highly offensive because it was done "through deceit" does not satisfy Rule

3    9(b)'s heightened pleading standard.

4          Further, Plaintiffs' conclusory allegation that Kaiser's conduct was highly offensive

5    because information was collected "through deceit" cannot survive a motion to dismiss even if

6    Rule 9(b)'s heightened pleading standard did not apply.  Plaintiffs pleaded no facts in support of

7    their assertion that Kaiser's collection and disclosure of information collected through its Website

8    and Apps "through deceit" was highly offensive.  This allegation cannot withstand a motion to

9    dismiss.  *See Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012, 2024 WL 2060140, at *7 (S.D. Cal.

10   May 8, 2024) ("Plaintiff's other allegations directed to the 'highly offensive' element are

11   conclusory, and do not defeat Defendant's motion." (citations omitted)); *McCluskey v. Hendricks*,

12   No. CV 21-1188-MWF (MRWx), 2021 WL 6773140, at *6 (C.D. Cal. Nov. 17, 2021) ("Plaintiff

13   has not alleged in a more than conclusory manner that somehow accessing the general posts of a

14   private Instagram account would be considered 'highly offensive' to a reasonable person.").

15         *Third*, Plaintiffs' conclusory allegation that Kaiser had a "reckless disregard" for Plaintiffs'

16   privacy is also not tantamount to pleading an intrusion was "highly offensive."  (CMC ¶ 498.)  An

17   allegation of *recklessness*, does not satisfy Plaintiffs' obligation to plead that Kaiser *knew* that the

18   third party Vendors used Plan Member information for their own purposes.  Further, intent is a

19   mandatory element of an invasion of privacy claim.  *See In re iPhone Application Litig.*, 844 F.

20   Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even negligent conduct that leads to theft of highly

21   personal information, including social security numbers, does not 'approach [the] standard' of

22   actionable conduct under the California Constitution.").  (CMC ¶ 498.)  Thus, Plaintiffs' theory

23   that Kaiser's "reckless disregard" for Plaintiffs' privacy was highly offensive is meritless.

24         *Fourth*, Plaintiffs' allegation that "[p]rivacy polls and studies show that the overwhelming

25   majority of Americans believe one of the most important privacy rights is the need for an

26   individual's affirmative consent before personal information is collected or shared" is irrelevant.

27   (CMC ¶ 499.)  Even taking this allegation—and the unidentified "polls and studies"—as true, this

28   broad generalization is not related in any way to the use of common online tracking technologies

1   or the collection of information by a vendor to perform services for Kaiser. Plaintiffs argue that it

2   is highly offensive to collect any personal information when a person visits a website unless they

3   provide express consent. As discussed above, this is not the law in California or any other state.

4   Nor is it a reasonable expectation. Indeed, "contemporary internet browsing involves the

5   collection of users' data, including by tracking users across the internet, and *a reasonable user*

6   *should expect as much*." *Hubbard*, 2024 WL 3302066, at *8 (emphasis original); *see also*

7   *Mikulsky v. Bloomingdale's, LLC*, No. 3:23-CV-00425, 2024 WL 337180, at *8 (S.D. Cal. Jan. 25,

8   2024) (dismissing intrusion upon seclusion claim and declining to "find a privacy interest in

9   Plaintiff's interactions with Defendants' own website when they choose to use that website" and

10  recognizing that "[c]ourts have been unwilling to find a cognizable privacy interest in browsing

11  data from users on Defendant's own website").

12          Plaintiffs have alleged that Kaiser collected information through the use of cookies and

13  other online technologies provided by third parties and shared that information with third parties

14  who used it to provide services to Kaiser. They do not sufficiently allege that Kaiser knew those

15  third parties would use the information for their own purposes. Plaintiffs' allegations do not

16  plausibly allege highly offensive conduct by Kaiser. Accordingly, Claim 3 (for common law

17  intrusion upon seclusion) and Claim 4 (for invasion of privacy in violation of the California

18  Constitution) should be dismissed with prejudice.

19          **D.     Claim 19 for Statutory Larceny Fails Because Plaintiffs Have Not Alleged an**
            **Actionable Theft.**
20

21          The Court previously dismissed Plaintiffs' claim for statutory larceny because "Kaiser only

22  authorized third parties to collect information for Kaiser's benefit . . . [meaning] there is no 'theft'

23  when Kaiser who has the authority to collect information, hires a third party to do its work."

24  (MTD Order at 40.) Plaintiffs now assert that Kaiser committed a "theft" by not disclosing that

25  they were "providing" Plaintiffs' information to third parties in exchange for "free" use of

26  technology products. (*E.g.*, CMC ¶ 623.) As discussed above, this new theory fails because

27  Plaintiffs do not plead any supporting factual allegations. Further, these allegations do not cure

28  other deficiencies that the Court identified in its prior order dismissing this claim.

"To plausibly state a theft by false pretenses claim, plaintiffs must allege not only that [Kaiser] made specific false representations to them, but also that plaintiffs transferred their property to [Kaiser] in reliance on the representation." *Doe v. Meta Platforms, Inc.*, No. 22-cv-03580, 2023 WL 5837443, at *15 (N.D. Cal. Sept. 7, 2023) (citation and quotes omitted). Accordingly, Plaintiffs must allege that Kaiser made misrepresentations in Kaiser's Privacy Statement and Terms and Conditions that were "material in inducing [Plaintiffs] to part with" their data. *People v. Miller*, 81 Cal. App. 4th 1427 (2000). In other words, plaintiffs must show that ***but for*** the alleged misrepresentations in Kaiser's Privacy Statement and Terms and Conditions, they ***would not*** have used the Site and Apps. *See American Career College, Inc. v. Medina*, No. CV 21-698 PSG (SKx), 2021 WL 5263858, at *5 (C.D. Cal. Sept. 28, 2021) (finding misrepresentations were "material" because "Plaintiffs claim they would not have done business with Pronto but for Defendants' representations"). Plaintiffs have not and cannot do so.

Plaintiffs fail to plead that they relied on any alleged misrepresentations in deciding to use the Site and Apps or that they would not have used the Site and App ***but for*** Kaiser's purported misrepresentations. Given Plaintiffs' failure to make clear allegations of reliance, their theft by false pretenses theory fails. *In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557, 2024 WL 1251350, at *23 (N.D. Cal. Mar. 25, 2024) ("[P]laintiffs do not currently plead that they actually saw (or relied on) any of the statements by Meta discussed in the complaint. Absent a misrepresentation and reliance, the theft by false pretense theory fails."). The Court should dismiss Claim 9 for statutory larceny with prejudice.

### E.    Claim 10 Under the District of Columbia Consumer Protection Procedures Act Claim Fails as a Matter of Law.

Under the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), people and businesses are precluded from "misrepresent[ing]" any "material fact which has a tendency to mislead." D.C. Code § 28-3904(e). Jane Doe II's DCCPPA claim fails for two reasons: (1) as this Court decided previously, it is merely a duplicative breach of contract claim; and (2) Plaintiff does not have standing to pursue a DCCPPA claim.

Plaintiff's DCCPPA claim in the CMC is nearly identical to her allegations in the FAC,

therefore she has done nothing to cure the fatal defects the Court found previously.  (*Compare*
CMC ¶¶ 626–34 *to* FAC ¶¶ 423–31.)  As this Court previously held, Plaintiff's allegations amount
to nothing more than that Kaiser allegedly intentionally breached a contract with the Plaintiff, and
her DCCPPA claim must be dismissed.  (*See* MTD Order at 40–42 (in dismissing Plaintiffs'
DCCPPA claim finding "Plaintiffs have pled at most something more akin to a run-of-the-mill
breach.").)  For the same reasons as previously provided by this Court, Plaintiff's DCCPPA claim
must be dismissed.

Plaintiff's DCCPPA claim further fails because she does not allege any causal connection
between the alleged statutory violation and injury.  Plaintiff neither pleads that she read Kaiser's
terms and conditions or privacy statements, nor that she relied on the alleged misrepresentations.
(*See* CMC ¶ 525 (alleging only that Plaintiff "clicked buttons signifying acceptance of Kaiser's
Terms and Conditions," with no allegations she ever read those terms or otherwise relied on
them)); *Woodford v. Yazam Inc*., No. CV 22-3665 (BAH), 2023 WL 8083975, at *4 (D.D.C. Nov.
21, 2023) (finding plaintiff lacked standing where her complaint was "replete with allegations
regarding defendant's statements on its website" in support of her DCCPPA claim, however, the
plaintiff never alleged "***that she reviewed, let alone relied, on these statements before requesting
a driver using defendant's app.***") (emphasis added); *see also Hemby v. Biotab Nutraceuticals*,
No. 2014-CA-190, 2014 D.C. Super. LEXIS 28, at *12–13 (D.C. Super. Ct. Sept. 10, 2014)
(same).  Accordingly, Plaintiff failed to causally connect any misrepresentations to any alleged
injury sustained, and her claim must be dismissed due to lack of standing.

### F.    Claim 11 for Violation of the Georgia Computer Systems Protection Act Fails Because John Doe II Does Not And Cannot Adequately Allege that Kaiser Acted Without Authority.

In its MTD Order, the Court dismissed John Doe II's claim under the Georgia Computer
Systems Protection Act ("CSPA"), ruling that "Plaintiffs failed to adequately allege that Kaiser
acted without authority . . . Kaiser simply hired third parties to do work for the benefit of Kaiser
which Kaiser legally could have done itself.  Nothing in the contract expressly prohibits Kaiser
from contracting out work it could have done itself without violating law."  (MTD Order at 44.)
The CMC's CSPA claim remains deficient.

1    A key element to a CSPA claim is a defendant's use of a computer or computer network

2 *without authority*.  Ga. Code Ann. § 16-9-92(18) (stating that "without authority" means "the use

3 of a computer or computer network in a manner that exceeds any right or permission granted by

4 the owner of the computer or computer network") (emphasis added).  As Georgia courts have

5 noted, "it is clear that the Georgia Computer Systems Protection Act is focused on computer

6 crimes such as hacking and the spread of viruses" not at all allegedly improper conduct involving

7 a computer.  *See Ferco Enters., Inc. v. Taylor Recycling Facility LLC*, No. 05-02980, 2007 WL

8 9701361, at *31 (N.D. Ga. Oct. 16, 2007).

9    Here, Plaintiffs do not allege that Kaiser used John Doe II's computer or accessed his

10 computer network.  (CMC ¶¶ 32, 82–108, 635–646.)  The CMC makes clear that John Doe II

11 utilized his own devices to access Kaiser's network, not the other way around.  (*Id.*)  John Doe II

12 admits this point by alleging that "Kaiser installed *on the Site and Apps*" the code at issue.  (CMC

13 ¶ 645 (emphasis added).)  He does not allege that Kaiser installed code, or otherwise accessed, *his*

14 personal devices or network.  (*See id.*)  John Doe II again offers no new factual allegations

15 establishing that Kaiser acted *without authority* within the meaning of the CSPA.  This claim

16 should be dismissed with prejudice.

17    **G.    Claim 13 under the Maryland Wiretap Act[8] Fails for Several Reasons.**

18    Jane Doe III's Maryland Wiretap Act must be dismissed for at least six reasons: (1) she

19 does not have standing, (2) she has not pleaded disclosure of substantive communications, (3)

20 there was no interception, (4) the data transmissions do not have any statutorily protected

21 "contents," (5) the source code involved is not a "device," and (6) Kaiser does not provide an

22 electronic communications service.[9]

---

[8] The Wiretap Act makes it unlawful for any person to "[w]illfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." Md. Code Ann., Cts. & Jud. Proc. § 10-402(a)(1).

[9] Even accepting as true that the "same policies or practices applied to all Kaiser plan members" as suggested by this Court in its previous opinion, as explained in this section, Maryland courts have consistently held that allegations devoid of specific factual allegations regarding the specific Plaintiff's disclosed information are insufficient as a matter of law to establish standing to pursue a Maryland Wiretap Act claim.

1                  **1.**       **Jane Doe III Lacks Standing for her Wiretap Act Claim.**

2          Jane Doe III lacks Article III standing because her generic allegations fail to allege that she

3  suffered an injury-in-fact.  Maryland courts have found that allegations regarding the interception

4  of data such as mouse movements, keystrokes, and URLs of pages visited are insufficient to

5  confer Article III standing because the collection of that type of generic information does not

6  implicate any privacy interest.  For example, in *Hernandez v. Noom, Inc.*, the plaintiff alleged a

7  "variety of highly sensitive information can be captured in event responses from website visitors,

8  including medical conditions, credit card details, and other personal information displayed or

9  entered on webpages[.]"  No. 1:23-CV-00641-JRR, 2023 WL 8934019, at *8 (D. Md. Dec. 27,

10  2023).  Despite those allegations, the court found that "[a]bsent allegations regarding 'the ***specific***

11  ***kinds of captured personal information*** implicating a substantive privacy interest,' Plaintiff fails

12  to adequately allege that she suffered an intangible injury (i.e., invasion of her privacy) –

13  specifically that her personal information was intercepted and recorded by Defendant."  *Id.*

14  Similarly, the court in *Straubmuller v. Jetblue Airways Corporation* found that the plaintiff's

15  allegations regarding the use of session replay software on the JetBlue website were insufficient to

16  confer standing.  No. CV DKC 23-384, 2023 WL 5671615, at *4 (D. Md. Sept. 1, 2023).  The

17  court found that, "[b]ecause the Complaint says nothing about the kinds of interactions Plaintiff

18  had with Defendant's website, much less the specific kinds of captured personal information

19  implicating a substantive privacy interest, Plaintiff has not alleged that his personal information

20  was intercepted and recorded by Defendant."  *Id.*; *see also Mikulsky v. Noom, Inc.*, No. 3:23-CV-

21  00285-H-MSB, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) (holding that the plaintiff's

22  claims that she suffered concrete harm arising from inputting her personal information in text

23  fields fails to establish standing because she did not identify the specific personal information

24  disclosed).

25          Jane Doe III's allegations in the CMC contain similar generic allegations found to be

26  insufficient for standing under *Hernandez* and *Straubmuller*.  She pleads that she used the Website

27  and App to "access medical information and communicate with her health care providers,

28  including making appointments, researching providers and medical conditions, checking medical

1   results, and reviewing her medical history[.]"  (*See* CMC ¶ 52.)  Plaintiff's allegations are

2   conclusory and contain no alleged specific facts of any medical conditions or specific

3   communications with her health care provider were ever captured, therefore her allegations fail as

4   a matter of law to provide her with standing for her Wiretap Act claim.  For these reasons, her

5   Wiretap Act claim should be dismissed.

6           **2.       The Wiretap Act Was Designed To Protect Substantive**
            **Communications Between People Regardless of the Mode of**
7           **Communication, And No Such Communications Are At Issue.**

8           As the Maryland Circuit Court recently explained, the Maryland Wiretap Act is "not a

9   general privacy statute … it's designed to protect *communications*."  (*See* Deagle Decl., Ex. C,

10  *John Doe II v. MedStar Health Inc.*, Case No. 24-C-20-000591, Transcript ("*MedStar Health Inc.*,

11  Tr.") 129:11–12 (June 26, 2024)) (emphasis added).  Maryland courts have already found that the

12  legislative intent behind the Wiretap Act's intention, from inception to present day, is to protect

13  *communications*, meaning private *conversations* between at least two individual human beings.

14  *See e.g.*, *Benford v. Am. Broad. Companies, Inc.,* 554 F. Supp. 145, 151 (D. Md. 1982) ("One of

15  the clear purposes of the Maryland Act is to prevent, in non-criminal situations, the unauthorized

16  interception of *conversations* where one of the parties has a reasonable expectation of privacy.")

17  (emphasis added); *State v. Maddox*, 69 Md. App. 296, 301 (1986) (same); *Holmes v. State*, 236

18  Md. App. 636, 653 (2018).  The ECPA Senate Report[10] uses the terms "communication" and

19  "conversation" interchangeably, and it makes clear that the "electronic communications" it sought

20  to address were the new forms of electronic hardware able to intercept private conversations

21  between people without being physically in hearing distance.  U.S. Senate Report No. 99-541

22  (1986).  The underlying substantive private conversation the ECPA seeks to protect from

23  interception is between two human people "without regard to which device may be used to

24  accomplish that task."  *Holmes*, 236 Md. App. at 653.

25          Here, Plaintiff's claim is based exclusively on an argument that data transmissions sent

26

27  _____
    [10] The Maryland Wiretap Act is "modeled upon and closely track[s] the provisions of the Federal
    Act," therefore the Congressional intent in amending Title III to include the ECPA is relevant here.
28  *Ricks v. State of Maryland*, 312 Md. 11, 15 (1988), *superseded on other grounds by Ragland v.
    State*, 385 Md. 706, 709 (2005).

Case No. 3:23-cv-02865-EMC

between computer browsers when Jane Doe III browsed through Kaiser's websites constitute protected **communications** under the Maryland Wiretap Act.  (*See* CMC ¶ 52.)  These types of interactions with a website do not involve any other human being meant to receive the alleged communication; instead, Plaintiff just interacts with the website.  (*See* Deagle Decl., Ex. C, *MedStar Health Inc.*, Tr. 8:21–11:11; 49:8–24; 126:14–18; 129:3–12 (holding that similar data transmissions when a patient took actions of the health care entity's website and patient portal did not constitute protected "communications" under the Maryland Wiretap Act) (June 26, 2024).)  Plaintiff's argument runs afoul of the General Assembly's intent and the interpretation and application of the statute to date.  Therefore, Plaintiff's Wiretap claim should be dismissed.

### 3. Plaintiff's Wiretap Act Claim Fails Because There Was no "Interception."

The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  Md. Code Ann., Cts. & Jud. Proc. § 10-401(10).  Plaintiff cannot establish an unlawful "interception" under the Wiretap Act, because the direct transmissions of information from her browser to Quantum Metric, Adobe, Twitter, Google, and Bing cannot satisfy the definition of "interception," even if code on Kaiser's websites and app caused any such transmissions to occur.  *See In re Google Inc. Cookie Placement Consumer Privacy Litig.,* 806 F.3d at 142 ("The cookie doesn't acquire anything . . . The cookie doesn't look for anything.  It just sits on the browser and gets sent along with information that would otherwise be sent.") (alterations in original); *see also Smith v. Facebook, Inc.,* 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (no "interception" of a communication occurs where, as here, there are two separate communications: one between the hospital website and the user's browser and one between the user's browser and the third party).  The information, instead of being intercepted, was instead directly transmitted from Plaintiff's own browser to these other third parties.  (*See e.g.*, CMC ¶¶ 117–18, 172, 182, 228–29, 232, 271, 280, 309, 335, 341 (explaining that the information was sent from Plaintiff to third parties via the use of cookies or GET or POST requests).)  Therefore, Plaintiff's Wiretap Act claim fails for lack of an interception.

1    **4.    Plaintiff's Wiretap Act Claim Fails Because the Data Transmissions at Issue Do Not Have Any Statutorily Protected "Contents."**

2

3    Plaintiff's Wiretap Act claim also fails because they do not allege the interception of the

4    "contents" of a communication as that term is statutorily defined.  The Wiretap Act defines

5    "contents" as "any information concerning the identity of the parties to the communication or the

6    existence, substance, purport, or meaning of that communication."  Md. Code Ann., Cts. & Jud.

7    Proc. § 10-401(4).  The Federal Wiretap Act similarly defines "content" to include "any

8    information concerning the substance, purport, or meaning of that communication."  18 U.S.C. §

9    2510(8).

10    The only Maryland court to address whether the type of browsing history data

11    transmissions at issue in this matter constitute "contents" of a communication under the Maryland

12    Wiretap Act held that they do not, because the data does not concern the identity of the parties to

13    the communication and does not concern the "substance, purport or meaning of a

14    communication."  (*See* Deagle Decl., Ex. C, *MedStar Health Inc.*, Tr. 128:13–129:20 (finding

15    under the Maryland Wiretap Act that URLs created by a person clicking through a patient portal

16    showing they viewed pages such as health records and results did not qualify as "content" under

17    the act).)  The Court's decision in *MedStar Health* is equally applicable to Plaintiff's allegations

18    that fail to allege that information concerning her identity was transmitted or that the substance,

19    purport or meaning of any communication between parties was revealed when she used the Kaiser

20    website and app.

21    The Court's decision in *MedStar Health* is also consistent with other federal court rulings

22    distinguishing between mere record locator information that is not considered protected content of

23    a communication from the substantive meaning of a communication under the ECPA.  The Ninth

24    Circuit addressed this issue in *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014), and

25    concluded that "Congress intended the word 'contents' to mean a person's intended message to

26    another (i.e. the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one

27    intends to convey')."  *In re Zynga*, at 1106. "Contents" does not include "dialing, routing,

28    addressing, or signaling" information, such as "addresses, phone numbers, and URLs ... when they

-28-

DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

1    are performing such a function." *Id.* The Ninth Circuit held that "contents" does not include

2    "record information regarding the characteristics of the message that is generated in the course of

3    the communication." *Id.*

4        The following Courts have found that the information Plaintiff alleges was transmitted to

5    third parties, which amounts to page views as she used and navigated the Kaiser website and app,

6    is mere record locator information and not the protected "contents of a communication":

7    - *In re Zynga*, 750 F.3d at 1107–08 (URL that disclosed a website visitor "view[ed]
         the Facebook page of a gay support group" did not reveal the "contents of a
8         communication" because it was merely "a referrer header automatically generated
         by the web browser.");

9    - Deagle Decl., Ex. C, *MedStar Health Inc.*, Tr. 128:3–20, 130:7–9 (finding as a
         matter of law that the disclosure of a patient's searches on a hospital's website and
10        the pages viewed on the patient portal are not "contents" of any communication
         under the Maryland Wiretap Act);
11
     - *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) ("When a user
12        moves his or her mouse and clicks on a link, that click is a request for the computer
         to take the user to a specific location within the webpage's architecture. Navigating
13        through a website's multiple pages is not the substance of a communication; it's an
         action taken to go to a digital location.");
14
     - *CinTel Fils, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 555, n. 5 (D. Md. 2012)
15        (distinguishing non-content subscriber information, such as names and emails
         associated with IP addresses from content information such as the actual email
16        messages);

17   - *Patrick Collins, Inc. v. Does 1-22*, No. 11-cv-01772-AW, 2011 WL 5439005, at
         **4–5 (D. Md. Nov. 8, 2011) (holding that "information linking an IP address to
18        real identifying information" such as "temporary internal logs that record the date,
         time, and customer identity for each IP address" serviced by an internet provider did
         not qualify as contents of a communication);
19
     - *In re § 2703(d) Order*, 787 F. Supp. 2d 430, 436 (E.D. Va. 2011) (finding that
20        information from Twitter regarding users, including names, IP addresses, records of
         session times and durations, subscriber number or identity, and types of services
21        used were non-content information);

22   - *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *4
         (Fla. Cir. Ct. June 17, 2021) (holding that similar data transmissions generated by
23        analytics software do not constitute "contents" under the Florida Wiretap Act that is
         modeled after the ECPA).

24       Even if the Court considers the Maryland Wiretap Act text to be ambiguous, the rule of

25   lenity requires the Court to resolve any doubts in Kaiser's favor because the act is primarily a

26   criminal statute with criminal penalties. *See* Md. Code Ann., Cts. & Jud. Proc. § 10-403; *Oglesby*

27   *v. State*, 441 Md. 673, 681 (2015) ("Under the rule of lenity, a court confronted with an otherwise

28   unresolvable ambiguity in a criminal statute that allows for two possible interpretations of the

-29-

1   statute will opt for the construction that favors the defendant.").  Plaintiff's allegations do not

2   sufficiently plead that the "contents" of any communication were intercepted, and therefore fail as

3   a matter of law.  At best, the meaning of "contents" within the statute is ambiguous and must be

4   read in favor of Kaiser.

5           **5.      Plaintiff's Wiretap Act Claim Fails Because the Source Code Involved
                      is Not a "Device" Under the Act.**
6

7           Any interception must occur "through the use of any electronic, mechanical, or other

8   device."  Md. Code Ann., Cts. & Jud. Proc. § 10-401(10).  While Maryland courts have not

9   addressed whether software code qualifies as a "device" under the Wiretap Act, "the most natural

10  reading . . . calls to mind a piece of equipment."  *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457,

11  463 (D. Md. 2015), *aff'd*, 851 F.3d 315 (4th Cir. 2017) (analyzing a California statute).

12          Plaintiff's allegation that web-browsers, files, cookies, servers, and computer code are

13  "devices" is refuted by the body of case law analyzing the issue.  (CMC ¶¶ 4, 5, 7.)  Things like

14  cookies and web browsers "cannot be used to intercept communications.  [They] must be installed

15  in a device, such as a computer, to be able to do so."  *Potter v. Havlicek*, No. 3:06-CV-211, 2008

16  WL 2556723, at *8 (S.D. Ohio June 23, 2008); *see also United States v. Ackies*, 918 F.3d 190, 199

17  n.5 (1st Cir. 2019) (rejecting argument that software was a "device" under the Federal Stored

18  Communications Act); *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, No. CV SAG-18-2315,

19  2019 WL 2233535, at *21 (D. Md. May 23, 2019) ("server is not a 'device' used for interception

20  as defined by the Wiretap Act"); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922,

21  937 (N.D. Cal. 2015) (rejecting argument that a cookie was an intercepting device under

22  California's wiretap act).

23          A plain reading of the Wiretap Act's other provisions compels the same conclusion.  For

24  instance, §10-403 subjects any person who "manufactures, assembles, possesses, or sells any

25  electronic, mechanical or other device" that is "primarily useful for the purpose of the surreptitious

26  interception of wire, oral, or electronic communications" to criminal penalties.  And under § 10-

27  404, the devices "used, manufactured, assembled, possessed, or sold, in violation of § 10-402 or §

28  10-403 of this subtitle may be seized and forfeited to the Department of State Police." Md. Code

-30-

1    Ann., Cts. & Jud. Proc. § 10-404.  Thus, device cannot mean web browsers, files, cookies, servers,

2    or computer code because they are not tangible items capable of seizure by the Department of

3    State Police.

4           Further, information transmitted "from a tracking device" is expressly exempted from the

5    definition of an "electronic communication" under both the Maryland and the Federal Wiretap

6    Act. Md. Cts. & Jud. Pro. § 10-401(5)(ii)(3).  While the term "tracking device" is not defined in

7    Maryland, federal law defines it as "an electronic or mechanical device which permits the tracking

8    of the movement of a person or object." 18 U.S.C. § 3117.  Plaintiff seeks to hold Kaiser liable for

9    its use of source code because she claims it *tracks* a website browser's movements when a person

10   uses Kaiser's public website and app.  (CMC ¶¶ 103–04, 172, 190, 311, 316, 318, 404, 498.)  If

11   the code at issue is considered to be an electronic device under the Maryland Wiretap Act, then

12   this Court should hold that it is the type of device that is expressly exempted under the Act and

13   dismiss Plaintiff's claim on this additional ground.  Md. Cts. & Jud. Pro. § 10-401(5)(ii)(3);

14   *Jacome*, 2021 WL 3087860, at *3 (holding that session replay software that "tracks a website

15   browser's movements" on the website falls within the "tracking device" exemption of the Federal

16   Wiretap Act and the Florida Security Act).

17          **6.     Kaiser is Not a Provider of an "Electronic Communication Service."**

18          Plaintiff's complaint also appears to assert an alternative claim against Kaiser for an

19   alleged violation of section § 10-402(d)(1) of the Wiretap Act.  (CMC ¶¶ 664, 668.)  However,

20   other than reciting definitions under the Wiretap Act, Plaintiff provides no facts to support this

21   claim.  A claim under this provision is limited to an "electronic communication service" provider,

22   which Kaiser is not.  Plaintiff does not allege any facts showing that Kaiser was the provider of an

23   electronic service to the public.  To the contrary, she alleges that Kaiser provided medical services

24   or services incidental to provision of medical care.  (*See* CMC ¶¶ 70–73.)  Merely using the

25   Internet to provide those medical services does not transform Kaiser into an electronic

26   communication service provider.  As numerous courts have held in applying the federal provision

27   upon which the Maryland Wiretap Act is based, "[a] company that merely utilizes electronic

28   communications in the conduct of its own business is generally considered a purchaser or user of

1   the communications platform, not the provider of the service to the public."  *Garner v.*

2   *Amazon.com, Inc.*, 603 F. Supp. 3d 985, 996 (W.D. Wash. May 6, 2022); *Kurowski v. Rush Sys.*

3   *for Health*, 659 F. Supp. 3d 931, 940 (N.D. Ill. 2023) (finding a healthcare provider "cannot

4   plausibly be considered an electronic communications service provider within the meaning of the

5   [ECPA]"); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307–08 (E.D.N.Y.

6   2005) (finding that "companies that provide traditional products and services over the Internet, as

7   opposed to Internet access itself, are not 'electronic communication service' providers"); *Casillas*

8   *v. Cypress Ins. Co.*, 770 F. App'x 329, 331 (9th Cir. 2019) (same); *Martin v. State*, 218 Md. App.

9   1, 20 (2014) (finding a cellphone is not a "facility through which an electronic communication

10  service is provided," but instead that is managed by cell phone service providers).  Plaintiff's

11  claim should similarly be dismissed because Kaiser is not an electronic communications service

12  provider under the Wiretap Act.

13          **H.      Claim 15 for Violation of the Virginia Computer Crimes Act Must Be
                      Dismissed Because Jane Doe IV and Alexis Sutter Do Not Allege That Kaiser
14                    Acted Maliciously or Through Intentionally Deceptive Means and Without
                      Authority.**
15

16          Jane Doe IV has failed to cure the deficiencies in her Virginia Computer Crimes Act

17  ("VCCA") claim that were identified by the Court in its MTD Order.  Jane Doe IV, now joined by

18  Alexis Sutter, fails to allege Defendants acted "maliciously" or "through intentionally deceptive

19  means and without authority."  Accordingly, their VCCA claim must be dismissed.

20          Under the VCCA, it is "unlawful for any person, ***with malicious intent, or through***

21  ***intentionally deceptive means and without authority***," to use a computer or computer network to

22  make an "unauthorized copy" of computer data or to "cause to be installed, or collect information

23  through, computer software that records all or a majority of the keystrokes made on the computer

24  of another."  Va. Code Ann. § 18.2–152.4 (emphasis added).  Under the VCCA, "[a] person is

25  'without authority' when he knows or reasonably should know that he has no right, agreement, or

26  permission or acts in a manner knowingly exceeding such right, agreement, or permission."  *See*

27  *Se. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, No. 2:12CV701, 2013 WL

28  2147478, at *6 (E.D. Va. May 14, 2013) (quoting Va. Code Ann. § 18.2–152.2).

1    In its MTD Order, the Court dismissed the VCCA claim because Jane Doe IV failed to

2    allege that Kaiser had either the requisite malicious intent or that Kaiser acted intentionally and

3    without the requisite authority.  (MTD Order at 49.)  Neither Jane Doe IV nor Alexis Sutter have

4    rectified this in the CMC.  They allege that the installation of code and technology provided by the

5    Vendors on the Apps and Site "without authorization and contrary to the Site Terms and

6    Conditions" violates VCCA because Kaiser "should have known" that the third parties would use

7    their information for their own purposes based on (1) the information disclosed; (2) the alleged

8    lack of contractual controls in place; and (3) the nature of the technologies at issue.  (CMC ¶ 701.)

9    Alexis Sutter and Jane Doe IV do not have any basis for their conclusory allegations that

10   the Vendors used *their* information for their own purposes or any factual support for their

11   assertion that Kaiser should have known that third parties would steal data from Kaiser.[11]  They

12   suggest that, based on the type of data and technology at issue, the burden was on Kaiser to

13   *assume* that sophisticated and legitimate third party companies like Microsoft, Quantum Metric,

14   and Dynatrace would misuse information collected for Kaiser's benefit.  By that standard, *any*

15   company that utilizes third party technology for data collection (nearly every company with a

16   website) would be automatically liable under the VCCA and numerous other statutes.

17   Finally, it is impossible for Kaiser to use its own computer or computer networks without

18   authority.  *See Se. Wholesale Corp.*, No. 2:12cv701, 2013 WL 2147478, at *6–7 (finding that a

19   party cannot use its own computer network without authority).  The VCCA does not create a cause

20   of action for all alleged misconduct committed with a computer.  *See id.* at *7 ("[T]he Court's

21   review of the VCCA's legislative history suggests that the focus of the law was on hackers.").

22   The CMC is entirely devoid of allegations of the type of conduct the VCCA is intended to prevent.

23   Because Jane Doe IV and Alexis Sutter do not and cannot cure the exact pleading

24   deficiencies identified by this Court in the MTD Order, this claim should be dismissed with

25   prejudice.

26   ///

27   ///

28
_____

[11] While not able to be challenged on a motion to dismiss, to be clear, this did not happen.

1    **I.**      **Claim 18 for Violation of the Washington Privacy Act Fails Because The**
       **Communications At Issue Were Between Jane Doe's Browser/Computer and**
2       **Kaiser.**

3        Claim 18 for violation of the Washington Privacy Act ("WPA") fails because the

4   communications at issue are not between "two or more individuals" as required by the WPA and

5   as a party to the communication, Kaiser cannot be held liable for "interception."  The WPA make

6   it "unlawful for any individual, partnership, corporation, association … to intercept or record, any

7   … [p]rivate communication transmitted by telephone, telegraph, radio, or other device between

8   two or more individuals between points within or without the state by device, electronic or

9   otherwise, designed to record and/or transmit said communications, regardless of how such device

10  is powered or actuated, without first obtaining the consent of all participants in the

11  communication."  RCW § 9.73.030(1)(a).  To assert a claim for violation of the WPA, Jane Doe

12  must allege, *inter alia,* that Kaiser intercepted or recorded a private communication, between two

13  or more individuals, without obtaining from all participants.  RCW § 9.73.030(1)(a); *Huong*

14  *Hoang v. Amazon.com, Inc.*, No. C11-1709MJP, 2012 WL 1088165, at *5 (W.D. Wash. Mar. 28,

15  2012).  Jane Doe's allegations do not meet this standard.

16       Jane Doe does not allege and cannot allege any communications "between two or more

17  individuals" were intercepted.  She alleges that communications from her computer/browser to

18  Kaiser were intercepted by the Vendors.  Neither of the parties to the communication is an

19  individual.  Accordingly, these communications are not actionable under the WPA.

20       The WPA does not apply to communications between an individual's browser/computer

21  and a corporation.  *Doe v. Virginia Mason Medical Center*, No. 19-2-26674-1 SEA, 2024 WL

22  3517759, at *5 (Wash. Super. June 6, 2024) is directly on point.  As here, in *Virginia Mason*, the

23  plaintiff alleged Virginia Mason, through online technologies installed on its webpage and patient

24  portal, shared patient health care information with third parties such as Facebook and Google

25  without her knowledge or consent.  Based on these allegations, the court held, as a matter of law,

26  that "[e]ven viewing the evidence in the light most favorable to Plaintiff, the information shared

27  here was not, nor ever intended to be, a communication between 'two or more individuals,' rather

28  it was between Plaintiff's computer/browser to Facebook, Google, and/or Virginia Mason."  *Id.*

1    The same result is dictated here.  A communication between Jane Doe's computer/browser and

2    Kaiser is not an actionable "communication between two or more individuals."

3         Even if these communications were between "two or more individuals," Jane Doe's claim

4    still fails.  This Court previously dismissed Jane Doe's WPA claim because Kaiser was a party to

5    the communications and cannot, as a matter of law, intercept a communication to which it is a

6    party.  (MTD Order at 54 ("as a party to the communication, it could not Intercept").); *see also*

7    *Hoang*, 2012 WL 1088165, at *5 (concluding the WPA did not apply because "regardless of what

8    [Defendants] did with [Plaintiff's] information, Defendants were the intended recipients of the

9    communication").  The Court's observation that, even if Kaiser used third parties as agents, Kaiser

10   is still a party to the communication, and the data collection was done pursuant to Defendants'

11   directive, remains true as to the allegations in the CMC.  (MTD Order at 54.)

12        Jane Doe's allegations in the CMC again conclusively establish that Kaiser was a party to

13   the communications at issue because she alleges that she sent the communications at issue directly

14   *to Kaiser*.  (*See* CMC ¶ 320 (alleging that Microsoft Bing was "able to connect the fact that

15   Plaintiff *Jane Doe had communicated with Kaiser Permanente* about mental health . . ."

16   (emphasis added)).)  Because Kaiser was a party to the communications at issue, it cannot be

17   liable for interception under the WPA.  The deficiencies in Jane Doe's claim for violation of the

18   WPA are fatal and cannot be cured.  Her WPA claim should be dismissed with prejudice.

19        **J.     Claim 19 for Violation of the Washington Health Care Information Act Fails**
              **Because Jane Doe Does Not Allege That Defendants Disclosed Her "Health**
20            **Care Information."**

21        Jane Doe's claim under the Washington Health Care Information Act ("HCIA") fails

22   because she does not allege that Kaiser disclosed any of her "health care information" as defined

23   by HCIA.  "[T]he HCIA prohibits health care providers from disclosing health care information

24   without written authorization from the patient."  *Seattle Children's Hosp. v. King Cty.*, 16

25   Wn.App.2d 365 (2020) (citing RCW 70.02.020(1)).  The statute defines "health care information"

26   as "any information, whether oral or recorded in any form or medium, that [1] identifies or can

27   readily be associated with the identity of a patient *and* [2] *directly relates to* the patient's *health*

28   *care*[.]"  RCW 70.02.010(17) (emphasis added); *see also Wright v. Jeckle*, 121 Wn. App. 624, 629

1   (2004).  In turn, the HCIA defines "health care" as "any care, service, or procedure provided by a

2   health care provider: (a) [t]o diagnose, treat, or maintain a patient's physical or mental condition;

3   or (b) [t]hat affects the structure or any function of the human body."  RCW 70.02.010(15).

4        Simply providing information about web pages visited, search terms entered for types of

5   doctors or related to medical issues, and then alleging that information along with data regarding

6   your browser or device was intercepted, as Jane Doe has done here, is not sufficient.  *See Virginia*

7   *Mason Medical Center*, 2024 WL 3517759, at *3 ("Plaintiff fails to explain how knowing that

8   someone visited certain pages related to certain medical issue, without more, is directly related to

9   any 'care, service, or procedure' that that person has been diagnosed with, is being, or has been,

10  treated for, or they are undergoing any maintenance related health care for any physical or mental

11  condition, as is required to meet the definition of 'health care' under the HCIA.  Thus, assuming

12  the combination of this information allows Facebook or Google to identify the individual as a

13  patient of Virginia Mason, it does not necessarily follow that such an identification, without more,

14  directly relates to a patient's health care.").  Here, Jane Doe's claim fails because she does not

15  allege that the information disclosed by Kaiser to the Vendors both (1) identifies her; and (2)

16  "directly relates" to a "care, service, or procedure" provided by Kaiser **to her** to diagnose, treat, or

17  maintain her physical or mental condition; or that affects the structure or any function of her body.

18  (*See* CMC ¶¶ 136–137, 183, 197, 201, 228, 238–242, 271, 274, 309–311, 319–320, 354–356.)  In

19  sum, Jane Doe does not allege in the CMC that Kaiser disclosed her identity in combination with

20  information defined as health care information.

21       Finally, while Jane Doe alleges that Kaiser collected her PHI (CMC ¶¶ 746–47), the

22  definition of PHI under HIPAA is separate and apart from what is considered "health care

23  information" under HCIA.  Courts in Washington have explicitly rejected applying HIPAA as a

24  standard for HCIA claims.  *See Virginia Mason Medical Center*, 2024 WL 3517759, at *3 ("[T]his

25  Court declines Plaintiff's invitation to apply HIPPA by analogy to the HCIA because it would

26  greatly expand the definition of 'health care information,' and our Supreme Court has already

27  rejected a broad reading of the term.  […] This Court is tasked with interpreting Washington law,

28  and will not rewrite the HCIA because it may be less protective than the regulations governing

-36-

1  HIPPA."); *see also Seattle Children's*, 16 Wash. App. 2d at 368 ("[W]e decline to impose

2  judicially the HIPAA guidelines for deidentification of patient information under the HCIA.").

3  Claim 19 should be dismissed with prejudice.

4    **K.    Claims 20–22 for Violation of State Data Breach Notification Statutes All Fail Because They Cannot Allege an Actionable Breach or the Acquisition of Their Personal Information.**

5

6    Claims 20–22 under the District of Columbia Consumer Security Breach Notification Act

7  (the "D.C. Act"), Maryland Personal Information Protection Act ("PIPA"), and Washington Data

8  Breach Act ("Washington Act") all fail for the same reason: the Plaintiff asserting that claim has

9  not sufficiently alleged a "breach of the security of their systems" which resulted in the disclosure

10  of actionable "personal information."  Because Plaintiffs cannot establish that Kaiser was required

11  to comply with the notification provisions of these statutes, Claims 20–22 must be dismissed.

12    **1.    Claim 20 for Violation of the D.C. Act Fails.**

13    Plaintiff Jane Doe II's claim under the D.C. Act fails because Kaiser has not suffered any

14  data breach that would require it to comply with the notification requirements of the statute.  The

15  D.C. Act, like many comparable state statutes, provides notification requirements companies must

16  comply with after they have suffered a data breach.  The statute provides that businesses that

17  discover "a ***breach of the security of [its] system***" must notify others of the breach and shall work

18  to "***restore the reasonable integrity of the data system.***"  *See* D.C. Code § 28-3852 (emphasis

19  added).  A "breach of the security system" is defined as the "***unauthorized*** acquisition of

20  computerized or other electronic data or any equipment or device storing such data that

21  compromises the security, confidentiality, or integrity of ***personal information***" maintained by the

22  business.  D.C. Code § 28-3851(1)(A) (emphasis added).

23    It is clear from the legislative history of the Act that it does not apply in this case—a case

24  where no actual data breach occurred.  A 2020 Committee report explained that "[i]n the context

25  of this bill, 'security breach' means a data breach such as the well-publicized incidents where

26  millions of computerized consumer records have been hacked."  (*See* Deagle Decl., Ex. D,

27  Council of the District of Columbia, Committee of the Whole, Committee Report (Jan. 21, 2020)

28  at 1.)  The legislative history of the bill, therefore, explains that the statute is meant to regulate

1    classic data breach scenarios: where a data system has been hacked, personal information has been

2    stolen by bad actors, and identity theft may result.  Plaintiff pleads no facts suggesting any

3    hacking, data breach, or identity theft has occurred, therefore the D.C. Act does not apply.

4         To the contrary, Plaintiff's claim is premised on an allegation that Kaiser intentionally

5    disclosed information through the use of analytics technologies on its website.  (*See* CMC ¶¶ 104,

6    455, 457, 469.)  Whereas here, the allegations are that the defendant distributed the alleged

7    information to a third party, as opposed to the information being accessed through a data breach of

8    the defendant's systems, the U.S. District Court for the District of Columbia has held that there is

9    no viable claim as a matter of law under the Act.  *See Solomon v. Allstate Prop. & Cas. Ins.*, No.

10   23-CV-3101 (TSC), 2024 WL 4346264, at *3 (D.D.C. Sept. 29, 2024) (finding Plaintiff could not

11   assert a new claim of breach of D.C. Code sections 28-3852 because "none of the allegations in

12   Plaintiffs' Complaint refer to a data breach—to the contrary, Plaintiffs allege that Defendants

13   ***intentionally distributed*** Plaintiffs' personal information.") (emphasis added).  Any voluntary

14   notifications to regulators or consumers that Kaiser made regarding its use of the technologies at

15   issue does not determine whether Plaintiff pled sufficient allegations to satisfy the required

16   elements under the D.C. Act.  Plaintiff fails to plead facts that plausibly allege any unauthorized

17   access to Kaiser's system; therefore, Plaintiffs' alleged violation of the D.C. Act fails as a matter

18   of law.

19        Plaintiff's claim also fails because she fails to allege facts showing that information has

20   been disclosed that can be used to personally identify her or any information as her personal

21   information.  For the D.C. Act to apply, the "security, confidentiality, or integrity of personal

22   information" must be compromised.  D.C. Code § 28-3851(1)(A).  In turn, "personal information"

23   as defined under the statute, includes "[a]n individual's first name, first initial ***and*** last name, or

24   any other personal identifier, which, in combination with any of the following data elements, ***can***

25   ***be used to identify a person or the person's information***."  D.C. Code § 28-3851(3)(A) (emphasis

26   added).  Therefore, the compromise of merely medical information is not sufficient under the D.C.

27   Act, it must be ***in combination*** with an individual's first name, first initial and last name, or any

28   other personal identifier that can be used to identify that person or that person's information.

1    Plaintiff fails to allege facts sufficient to meet that burden.  Plaintiff fails to plead any facts

2    that show her "first name, first initial, and last name" or "any other personal identifier" that "can

3    be used to identify [Jane Doe II] or [Jane Doe II's] information" were compromised.  In fact, she

4    merely states that her name, health insurance information, and medical records are covered under

5    the Act.  (*See* CMC ¶ 758.)  This circular logic does not meet Plaintiff's burden to plead *facts* in

6    support of her claim.

7    The only allegation in the Complaint regarding a name potentially being disclosed was

8    made regarding John Doe, who is not a D.C. resident and claims his name was disclosed when he

9    requested an electronic copy of his medical records.  (*See* CMC ¶¶ 282–83.)  This allegation fails

10   to show the disclosure of Jane Doe II's personal information and Jane Doe II makes no similar

11   allegation.  As such, the allegations are insufficient to show that Jane Doe II's "personal

12   information" was compromised.

### 2.    Claim 21 Under Maryland's PIPA Also Fails.

14   Jane Doe III's Claim fails for the same reasons discussed above.  Maryland's PIPA, Md.

15   Code Ann. Com. Law §§ 14-3501, *et seq*., has language similar in significant respects to the

16   District of Columbia Act.  *See* Md. Code Ann., Com. Law § 14-3504(a)(1) (requiring the

17   "*unauthorized* acquisition of computerized data") (emphasis added); Md. Code Ann., Com. Law §

18   14-3501(e)(1) (requiring the disclosure of "[a]n individual's first name or first initial *and last*

19   *name*") (emphasis added).  The CMC's allegations fail to plausibly allege any "unauthorized

20   acquisition" from Kaiser's system or that Jane Doe III's "personal information" was

21   compromised.

### 3.    Claim 22 for Violation of the Washington Act Fails.

23   Jane Doe's claim under the Washington Act also fails to establish that Kaiser suffered a

24   breach that required it to comply with the statute's notification requirements.  As with the

25   Maryland and D.C. statutes, the Washington Act requires that businesses notify impacted

26   consumers within a reasonable time after discovering "a *breach of the security of [its] system.*"

27   Wash. Rev. Code Ann. § 19.255.010(1).  A "breach of the security of the system" is defined as the

28   "*unauthorized* acquisition of data that compromises the security, confidentiality, or integrity of

-39-

1    *personal information*" maintained by the business.  *Id*. § 19.255.005(1).  In turn, "personal

2    information" is defined as limited to "[a]n individual's first name or first initial ***and*** last name in

3    combination with any one or more" of the listed data elements.  Wash. Rev. Code Ann. §

4    19.255.005(2)(a)(i).  Jane Doe does not allege a breach of the security of Kaiser's systems because

5    she does not allege either ***unauthorized acquisition*** of data or that ***her*** first name or first initial

6    and last name were disclosed.  As a result, her claim fails because Kaiser had no duty to comply

7    with the Washington Act's notification requirements.

8    **VI.    ALL CLAIMS AGAINST HOSPITALS AND KPWA MUST BE DISMISSED.**

9          All claims against Hospitals and KPWA should be dismissed with prejudice.  Plaintiffs'

10   claims are based on the alleged disclosure of their personal information due to their use of the

11   Website and/or Apps.  This Court previously dismissed all claims against Hospitals, noting that

12   the Website Terms and Conditions state that the Website and Apps are owned and operated

13   exclusively by KFHP and Plaintiffs had not plausibly alleged the involvement of other defendants.

14   (MTD Order at 9.)  They still have not.

15         *First*, Plaintiffs are required to allege specific facts as to *each* defendant.  (*See* MTD Order

16   at 8–9.)  Instead of doing so, Plaintiffs merely re-alleged the *identical* allegation that all

17   Defendants were "involved in the development and operation of the Site and Apps, for example

18   entering into and executing contracts with certain Third Party Wiretappers, such as Quantum

19   Metric, Adobe, and Dynatrace regarding technologies used on the Site and Apps."  (*See* CMC ¶¶

20   74, 76.)  Plaintiffs conflate KPWA and Hospitals—with each other as well as KFHP—and again

21   make generalized allegations regarding Defendants' purported collective actions.  The Court

22   already found this group pleading to be insufficient and Plaintiffs have failed to cure this pleading

23   deficiency.  (*See* MTD Order at 8–9 (holding Plaintiffs' group pleadings were impermissible

24   because "Plaintiffs have alleged in conclusory terms only that all Kaiser entities have a hand in the

25   operation of the website and mobile applications" and "there [was] no indication that the health

26   care providers [] had anything to do with how the website and mobile applications are run").)

27   ██████████████████████████████████████████████

28   ██████████████████████████████████████████████

SMRH:4897-9404-1090    DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  (CMC ¶ 76.)[12] The vague and insufficient allegation that KPWA "worked with" KFHP provides

4  no specificity as to what KPWA purportedly did.  *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp.

5  3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that

6  caused Plaintiffs' harm . . . .").  Regardless, these allegations do not show that KPWA participated

7  in the operation of the Website or Apps, let alone explain how KPWA engaged in any wrongdoing

8  vis-à-vis the operation of the Website and Apps.

9        *Third*, Plaintiffs' assertion that Hospitals and KPWA entered into unidentified contracts

10  with certain third party Vendors does not support the allegation or inference that Hospitals and

11  KPWA were involved in the development or operation of the Website and Apps.  Courts have

12  routinely found that simply alleging the existence of a contract is insufficient to put a party on

13  notice of their alleged wrongdoing.  *See, e.g., Int'l Medcom, Inc. v. S.E. Int'l, Inc.,* No. C 13-

14  05193 LB, 2014 WL 262125, at *4 (N.D. Cal. Jan. 23, 2014) ("Simply alleging that a contract

15  exists, without describing anything about that particular contract (e.g., allegations to at least

16  identify the contract), is not enough . . . This fails to put [defendant] on notice what it allegedly did

17  wrong and is not sufficient.").  Plaintiffs' bare allegation that Hospitals and KPWA have

18  unspecified contractual relationships with certain third party Vendors does not "identify how the

19  health care providers specifically have engaged in any wrongdoing" nor does it "suggest that the

20  health care providers have the same exact role vis-à-vis the website and mobile applications that

21  KFHP does."  (MTD Order at 9.)  Plaintiffs have not cured the fatal deficiencies identified by this

22  Court nor have they pled any additional facts that the Court previously identified as missing in its

23  MTD Order.  All Claims asserted against KPWA and Hospitals should be dismissed with

24  prejudice.

25  **VII.    THE COURT SHOULD STRIKE PLAINTIFFS' TOLLING ALLEGATIONS.**

26        Plaintiffs cannot invoke the discovery rule to toll the statute of limitations on each of their

27  Claims.  Plaintiffs' conclusory allegation that Kaiser did not affirmatively disclose the use of

28  _____

[12] The CMC does not include any similar allegations regarding Hospitals.

1   online technologies on its Website and Apps does not establish when Plaintiffs discovered this

2   conduct, their reasonable diligence or that the installation and use of the technologies could not

3   have been discovered with reasonable diligence.  Plaintiffs' tolling allegations should be stricken.

4        "[T]he discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has

5   reason to discover, the cause of action.'"  *Bettles v. Toyota Motor Corp.*, 645 F. Supp. 3d 978, 983

6   (C.D. Cal. 2022) (internal quotations and citations omitted.)  To invoke the discovery rule, a

7   plaintiff must allege "(1) the time and manner of discovery and (2) the inability to have made

8   earlier discovery despite reasonable diligence."  *Plumlee v. Pfizer, Inc*., No. 13–CV–00414–LHK,

9   2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) (detailing the allegations required in a

10  complaint to support the discovery rule); *Abels v. Bank of Am., N.A*., No. 11-CV-208 YGR, 2012

11  WL 691790, at *3 (N.D. Cal. Mar. 2, 2012) ("When a complaint is otherwise time-barred on its

12  face, the plaintiff must allege specific facts explaining the failure to learn of the basis for the claim

13  within the statutory period rather than relying on generalities.").

14       Plaintiffs do not allege when and how they discovered Kaiser's use of the online

15  technologies or the alleged disclosures of information to the third party Vendors.  Instead,

16  Plaintiffs allege that they could not have discovered Kaiser's conduct until "shortly before the

17  filing of this Complaint."  (CMC ¶ 428.)  These vague allegations are not sufficient to plead the

18  discovery rule.  *See Abels,* 2012 WL 691790 at *3 (finding allegations that the offensive conduct

19  was "discovered within the last few months" was "too general and conclusory to avoid the statute

20  of limitations bar" or invoke the discovery rule).

21       Similarly, Plaintiffs also do not allege why Kaiser's purported failure to affirmatively

22  disclose the use of these technologies prevented Plaintiffs from learning about Kaiser's conduct or

23  the basis for their claims.  Plaintiffs allege only that Kaiser had "exclusive and superior

24  knowledge" of the use of the technologies.  Plaintiffs cannot invoke the discovery rule to toll the

25  statute of limitations because of this failure to plead "specific facts explaining the failure to learn

26  the basis for the claim within the statutory period" *Vargas v. JP Morgan Chase Bank, N.A.*, 30 F.

27  Supp. 3d 945, 949 (C.D. Cal. 2014) (dismissing tolling allegations where plaintiff merely alleges

28  an improper disclosure as the basis for equitable tolling); *see May v. Google LLC*, No. 24-CV-

1   01314-BLF, 2024 WL 4681604, at *10 (N.D. Cal. Nov. 4, 2024) (striking tolling allegations

2   regarding consumer claims where plaintiff "failed to allege sufficient facts, such as their diligence

3   or any affirmative deceptive conduct by Defendants" in support of tolling allegations); *Kay v.*

4   *Wells Fargo & Co. N.A.,* No. C 07-01351 WHA, 2007 WL 2141292, at *6 (N.D. Cal. July 24,

5   2007) (granting motion to strike on the basis that plaintiff failed to adequately plead facts to justify

6   equitable tolling such as an alleged scheme or that the putative class members could not have

7   discovered the scheme despite exercising due diligence).

8        Plaintiffs have failed to plead the elements of the discovery and therefore cannot toll the

9   statute of limitations for their Claims.  Accordingly, paragraphs 419–428 of the CMC should be

10   stricken as they are immaterial and impertinent and Plaintiffs' claims must be limited to the

11   applicable statute of limitations periods.

12   **VIII.  PLAINTIFFS' REQUESTS FOR PUNITIVE DAMAGES SHOULD ALSO BE STRICKEN FROM THE CMC.**

13

14        Plaintiffs' requests for punitive damages are fatally deficient for two reasons.  First, the

15   CMC lacks *any* allegations that Kaiser acted with oppression, fraud, or malice which is required to

16   obtain punitive damages.  Second, the CMC does not allege that Kaiser's conduct was authorized

17   or knowingly ratified by an officer, director, or managing agent.

18        *First*, Plaintiffs do not plead that Kaiser acted with oppression, fraud, or malice.  Under

19   California law,[13] "[i]n a civil case not arising from the breach of a contractual obligation, the jury

20   may award punitive damages where it is proven by clear and convincing evidence that the

21   defendant has been guilty of oppression, fraud, or malice."  *Roby v. McKesson Corp.*, 47 Cal. 4th

22   686, 712 (2009), *as modified* (Feb. 10, 2010) (citing Civ. Code § 3294(a)).[14]  Accordingly, the

23

24   [13] When exercising supplemental jurisdiction over state law claims, courts apply the punitive

damages law of the forum state.  *See City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1111 (S.D.

25   Cal. 2012) (applying California punitive damages law) (citing *Bass v. First Pacific Networks, Inc.*,

219 F.3d 1052, 1055 n.2 (9th Cir. 2000)).  To the extent the Court is inclined to engage in a

26   choice-of-law analysis, courts routinely find that California's punitive damages laws should be

applied over other states' laws.  *See Zetz v. Bos. Sci. Corp.*, 644 F. Supp. 3d 684, 723 (E.D. Cal.

27   2022).  Accordingly, the Court should apply California's punitive damages laws.

[14] Under section 3294, "oppression" is defined as "despicable conduct that subjects a person to

28   cruel and unjust hardship in conscious disregard of that person's rights."  Civ. Code § 3294(c)(2).

"Malice" means "conduct which is intended by the defendant to cause injury to the plaintiff or

1  Court should strike Plaintiffs' request for punitive damages in its entirety because Plaintiffs have

2  not pleaded that Kaiser's conduct amounted to oppression, fraud, or malice.

3      *Second*, Plaintiffs have not sufficiently alleged that Kaiser's oppressive, fraudulent, or

4  malicious conduct was authorized, committed, or ratified by an officer, director, or managing

5  agent of Kaiser.  When a defendant is a corporation, "the oppression, fraud, or malice must be

6  perpetrated, authorized, or knowingly ratified by an officer, director, or managing agent of the

7  corporation."  *Wilson v. S. Cal. Edison Co.*, 234 Cal. App. 4th 123, 164 (2015) (citing Cal. Civ.

8  Code § 3294(b)).  The law "does not impute every employee's malice, fraud, or oppression to a

9  corporation."  *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 817 (N.D. Cal. 2015) (citations

10  omitted).  "Instead, punitive damages require proof of ratification of such an act among corporate

11  leaders, who are the corporation's officers, directors, or managing agents."  *Id.*  Accordingly,

12  Kaiser is "only liable for punitive damages based upon the acts of [their] employees if 'an officer,

13  director, or managing agent' . . . authorized or ratified the wrongful conduct for which the

14  damages are awarded or was personally guilty of oppression, fraud, or malice."  *Grimberg v.*

15  *United Airlines, Inc.*, No. CV 22-8191-MWF (JCx), 2023 WL 3431912, at *3 (C.D. Cal. Feb. 27,

16  2023) (quoting Cal. Civ. Code § 3294(b)).

17      Plaintiffs allege that "Kaiser's actions described herein were all intentionally undertaken

18  and knowingly ratified by Kaiser's officers, directors, or managing agents."  (CMC ¶ 108.)  This

19  conclusory allegation is insufficient.  Plaintiffs must plead non-conclusory allegations that an

20  officer, director or managing agent of the defendant authorized or ratified the conduct that

21  constitutes malice, fraud, or oppression.  *See Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL

22  2149095, at *6 (N.D. Cal. May 31, 2011) (holding that "conclusory allegations of authorization or

23  ratification fail to satisfy federal pleading standards" and that Plaintiff must allege facts showing

24  acts taken by "an officer, director, or managing agent"); *McMurray v. Merck & Co., No*. C 07-

25  1007 MMC, 2007 WL 1456042 (N.D. Cal. May 17, 2007) (granting a motion to strike punitive

26  damages where "Plaintiff has failed to plead the allegedly wrongful conduct was authorized or

27

28  ──────────────
   despicable conduct which is carried on by the defendant with a willful and conscious disregard of
   the rights or safety of others."  *Id*. § 3294(c)(1).

ratified by an officer, director or managing agent of defendant."); *Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*, No. 2:21-CV-07232-SB-AFM, 2022 WL 2199938, at *3 (C.D. Cal. Mar. 7, 2022) (holding that conclusory allegations of ratification that fail to identify an officer, director, or managing agent are insufficient).

Plaintiffs' do not sufficiently plead that Kaiser acted with oppression, fraud, or malice or that the oppression, fraud, or malice was perpetrated, authorized, or knowingly ratified by an officer, director, or managing agent of Kaiser.  As a result, Plaintiffs cannot, as a matter of law, recover punitive damages.  Accordingly, the Court should strike Plaintiffs' requests for punitive damages in paragraphs 605, 617, 634, 682, 691, 766 and Plaintiffs' Prayer for Relief.

## IX.    FURTHER LEAVE TO AMEND WOULD BE FUTILE.

Dismissal with prejudice is warranted because any amendment would be futile.  *In re Vantive Corp. Secs. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).  Plaintiffs have now had multiple chances to amend their complaint to attempt to cure their deficient claims and to properly plead both their tolling allegations and their entitlement to punitive damages.  Denial of leave to amend is warranted because Plaintiffs cannot assert any additional facts in good faith that would permit them to properly plead these state causes of action.  *See Sweet v. Google Inc.*, No. 17-cv-03953-EMC, 2018 WL 1184777, at *10 (N.D. Cal. Mar. 7, 2018) (dismissing claims with prejudice where the "amended complaint failed to cure the deficienc[ies]" previously identified).  For this reason, the Court should not grant Plaintiffs' further leave to amend.

## X.    CONCLUSION

For the foregoing reasons, the Court should dismiss all Claims to the extent they are based on the allegation that Kaiser knew third parties collected and/or used information for their own benefit, Claims 1–4, 8–11, 15, and 18–22, and all Claims against Hospitals and KPWA with prejudice under Rule 12(b)(1) and/or 12(b)(6).  In addition, the Court should strike Plaintiffs' insufficient tolling allegations and their requests for punitive damages under Rule 12(f).

///

///

///

Dated:  January 28, 2025                      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By      _____
                    /s/ Wynter L. Deagle
        WYNTER L. DEAGLE, Cal Bar No. 296501
        wdeagle@sheppardmullin.com
        KRISTIN P. HOUSH, Cal Bar No. 286651
        khoush@sheppardmullin.com
        ANNE-MARIE D. DAO, Cal Bar No. 282632
        adao@sheppardmullin.com
        DANE C. BRODY CHANOVE, Cal Bar No. 345843
        dbrodychanove@sheppardmullin.com
        12275 El Camino Real, Suite 100
        San Diego, California 92130-4092
        Telephone:     858.720.8900
        Facsimile:     858.509.3691

        TENAYA RODEWALD, Cal Bar No. 248563
        trodewald@sheppardmullin.com
        1540 El Camino Real, Suite 120
        Menlo Park, CA 94025
        Telephone:     650.815.2600
        Facsimile:     650.815.2601

        KARI M. ROLLINS (Pro Hac Vice)
        krollins@sheppardmullin.com
        30 Rockefeller Plaza
        New York, New York 10112-0015
        Telephone:     212.653.8700
        Facsimile:     212.653.8701

        JOHN F. BURNS, Cal Bar No. 290523
        jburns@sheppardmullin.com
        501 West Broadway, 18th Floor
        San Diego, California 92101-3598
        Telephone:     619.338.6500
        Facsimile:     619.234.3815

        NOLAN J. WALTER, Cal Bar No. 325021
        nwalter@sheppardmullin.com
        KEVIN MURPHY, Cal Bar No. 346041
        kemurphy@sheppardmullin.com
        1901 Avenue of the Stars, Suite 1600
        Los Angeles, California 90067-6055
        Telephone:     310.228.3700
        Facsimile:     310.228.3701

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MELISSA MEDHAT MIKAIL, Cal Bar No. 323212
mmikail@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone:    714.513.5100
Facsimile:    714.513.5130

MARK T. RATWAY (*pro hac vice*)
mratway@sheppardmullin.com
2200 Ross Ave., 20th Floor
Dallas, Texas 75201
Telephone:    469.391.7457

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser
Foundation Hospitals, and Kaiser Foundation Health
Plan of Washington

Case No. 3:23-cv-02865-EMC

SMRH:4897-9404-1090

DEFS' NTC OF MOTION AND MTD CONSOLIDATED COMPLAINT AND TO STRIKE
PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES