UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOES 1-5, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-02865-EMC   (PHK)<br><br>**ORDER RESOLVING DISPUTE REGARDING KAISER PRIVILEGE LOGS**<br><br>Re: Dkt. No. 291 |

This case has been referred to the undersigned for discovery. *See* Dkt. 57. Now pending before the Court is a joint letter brief regarding a dispute between the Parties as to whether Kaiser properly withheld from discovery eight documents on the grounds that they are protected by the attorney-client privilege. [Dkt. 291]. The Court finds the dispute suitable for resolution without futher oral argument. *See* Civil L.R. 7-1(b).

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id*. Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy

for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of

discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)). The privilege attaches when "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

The attorney-client privilege is "narrowly and strictly construed," and the party asserting it has the burden of proving that the privilege applies. *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citations omitted). The privilege protects only communications and not underlying facts. *Upjohn v. United States*, 449 U.S. 383, 396 (1981) (holding that a party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney").

"When dual-purpose communications are involved, there are two potential tests that courts have adopted: the 'primary purpose' test and the 'because of' test." *Grand Jury*, 23 F.4th at 1091. The "primary purpose" test requires the Court to evaluate "whether the primary purpose of the

3

communication is to give or receive legal advice, as opposed to business or tax advice." *Id.* (citing *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). The "because of" test, by contrast, "considers the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* at 1091-92 (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004)).

## ANALYSIS

This is a putative class action brought by Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, and Jane Doe V (collectively, "Plaintiffs") against Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc. (collectively, "Kaiser"). *See* Dkt. 44. Plaintiffs allege that Kaiser has unlawfully embedded code in its website, including its patient portal and mobile applications, that allows third-party social media and ad tech companies to intrude upon, read, intercept, and use Plaintiffs' sensitive personal and medical information without Plaintiffs' knowledge and consent. *Id.*

The instant dispute originally concerned forty-seven documents which were withheld from discovery by Kaiser on the grounds of attorney-client privilege. *See* Dkt. 291 at 4. The Court held a hearing on this dispute on January 24, 2025. *See* Dkt. 296. After that hearing, the Parties submitted a revised privilege log as well as declarations to address the assertion of privilege. *See* Dkts. 309-10. In the privilege log, the Parties highlighted the names of Kaiser attorneys. [Dkt. 309-1]. As discussed below, the disputed documents were attachments to emails and other communications, and thus, per the Parties' request at the hearing, the privilege log also includes the entries for the corresponding email or "parent" communication to which each of the eight documents was attached. *Id.*

The Parties held further meet and confers after the hearing, eventually narrowing this dispute to only eight documents (having reached resolution on the other thirty-nine documents originally in dispute). [Dkt. 318 at 4]. The Court appreciates the Parties' diligence in narrowing this dispute.

The eight documents remaining at issue have been referenced by the Parties according to

4

their entry numbers in Kaiser's privilege log for the document production at issue and the Court will adopt that same set of identifiers—Document Nos. 2, 3, 5, 151, 179, 192, 211, and 213. *See* Dkt. 309-1. On March 3, 2024, the Court ordered Kaiser to submit copies of the documents in dispute for *in camera* review. [Dkt. 312]. Because, as noted above, the eight documents at issue are attachments to various emails and communications, Kaiser also provided for *in camera* review the corresponding "parent" documents for each of the eight documents. *Id.*

The Court's *in camera* review of the exhibits supports the following findings, keeping in mind the applicable legal standards:

Kaiser's declarations regarding these documents all state, with small variations in language, that there existed an internal investigation within Kaiser regarding certain web-tracking technologies and that this investigation was led by a Kaiser in-house lawyer, Mr. Matt. [Dkt. 310 at 2 ¶ 2; Dkt. 310-1 at 2 ¶ 2; Dkt. 310-2 at ¶ 2; Dkt. 310-3 at ¶ 2]. The declarations state that each disputed documents was not created in the ordinary course of business, but rather was created to share with Kaiser's in-house counsel or legal department so that such counsel could provide legal advice about those certain web-tracking technologies. [Dkt. 310 at 2-3 ¶¶ 3-4; Dkt. 310-1 at 2-3 ¶¶ 3-4; Dkt. 310-2 at 2 ¶ 3; Dkt. 310-3 at 2 ¶ 3]. The declarations all state that the documents at issue contain discussions of facts, factual summaries, or factual findings made by Kaiser non-lawyer employees. *Id.*

The Court's *in camera* review further informs the determination of the privilege issue here, because the Court has taken a document-by-document approach to resolving the current dispute. The determination of whether a challenged document is properly the subject of the attorney-client privilege is necessarily case-specific and fact-dependent (or indeed document-dependent). *Upjohn*, 449 U.S. at 396; *see also Fourth Age Ltd. v. Warner Bros. Digital Distrib., Inc.*, No. CV 12-09912 AB (SHx), 2015 WL 12720324, at *10 (C.D. Cal. Aug. 6, 2025) (affirming magistrate judge's ruling as to the application of attorney-client privilege on the grounds that the "document-by-document decisions on attorney-client privilege issues were fact-dependent" and "[f]act dependent determinations are not controlling questions of law or of special consequence to other cases because each attorney-client privilege ruling turns on their own unique facts").

5

Having reviewed the privilege log entries, the declarations, and the disputed documents themselves (along with their corresponding "parent" documents) *in camera*, the Court has applied the applicable legal standards and **FINDS** as follows:

Each of the disputed documents is a mixed-use document, which contains discussion of facts either in whole or in part. None of the documents were created or authored by an attorney, and none contain in their text requests for legal advice from a Kaiser employee addressed directly to a Kaiser attorney. As discussed, the disputed documents are all attachments to internal Kaiser emails or internal chats. Further, as admitted by Kaiser, each document discusses facts, factual findings, or factual summaries, at least in part. While the documents were not created in the ordinary course of business, that issue alone is not dispositive of whether the documents are privileged. *Cf. Aerospace Corp. v. Factory Mut. Ins. Co.*, No. CV 19-9838-DDP (JPRx), 2020 WL 8610842, at *3 (C.D. Cal. Dec. 15, 2020) (The fact that the documents at issue "were prepared in the ordinary course of business" was "another factor counseling against privilege[.]").

Document Nos. 2 and 5

Document Nos. 2 and 5 are identical copies of the same document. The document was authored by a non-lawyer Kaiser employee, specifically, a Senior Manager of Social Media Marketing. [Dkt. 310-1 at 2 ¶ 3]. A non-lawyer, the Kaiser Senior Director of National Brand Advertising, asked that the document be created. *Id.* at 2 ¶¶ 1, 3. The document is an attachment to an internal group chat regarding web-tracking technology as reflected in Entry No. 1 in Kaiser's privilege log (for Document No. 2) and Entry No. 4 (for Document No. 5). [Dkt. 309-1 at 2]. The document itself does not relay legal advice originating from a Kaiser attorney, nor does the document relay a request to seek legal advice. The document is essentially a list of web-tracking technologies. None of the authors or recipients of messages in the chat thread or "parent" document attaching this document are attorneys, nor is there any legal advice originating from a Kaiser attorney evident in this group chat. The document is self-evidently the result of a fact-finding and information-gathering project. While the supporting declaration states that this document was created to send to an in-house Kaiser attorney to obtain legal advice, the "parent" or chat thread does not include that Kaiser attorney. Crediting the declaration, this document, at best,

6

is a collection of factual information which was separately sent to counsel, but not as an attachment to the chat thread at issue. Sending a document separately to a lawyer does not automatically transform that document into a privileged communication, particularly where it was separately sent to non-lawyers. *See Arfa v. Zionist Org. of Am.*, No. CV 13-2942 ABC (SS), 2014 WL 815496, at *6 (C.D. Cal. Mar. 3, 2014) ("[T]he mere 'cc-ing' of counsel on an email or the forwarding of an email to counsel does not extend the attorney-client privilege to an otherwise non-privileged document."). Because the chat messages involving this document are not direct attorney-client communications, this attachment to those chat messages has not been sufficiently shown to be privileged. *See Grand Jury*, 23 F.4th at 1091 ("The attorney-client privilege protects confidential communications between *attorneys* and clients, which are made for the purpose of giving legal advice.") (emphasis added).

Further, factual information itself is not privileged. The document at issue is, as Kaiser admits, a "summary of factual findings." [Dkt. 310-1 at 2 ¶ 3]. "A company cannot shield from discovery facts learned by an attorney in the course of an investigation because the attorney-client privilege protects communications, not facts." *Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798-HSG(DMR), 2016 WL 913377, at *2 (N.D. Cal. Mar. 10, 2016); *see also Doe v. Uber Techs., Inc.*, No. 19-cv-03310-JSC, 2022 WL 767088, at *2 (N.D. Cal. Mar. 11, 2022) (applying California privilege law and finding that "factual information . . . is not privileged"). While "communications *about* facts that relate to potential legal liability may constitute legal advice," the law recognizes that "the underlying facts are not privileged." *City of Roseville Emps.' Ret. Sys. v. Apple Inc.*, No. 19-cv-02033-YGR (JCS), 2022 WL 3083000, at *14 (N.D. Cal. Aug. 3, 2022) (emphasis in original). Taking as true the supporting declaration's statement that this document was sent to a lawyer as part of a separate communication, that fact alone does not transform a summary of facts into a privileged communication. *See United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged.").

Accordingly, the Court **FINDS** that Kaiser has not sufficiently met its burden to show that Document Nos. 2 and 5 are protected from discovery by the attorney-client privilege.

Document No. 3

This document was authored by a non-lawyer Kaiser employee, specifically, a Marketing Consultant at Kaiser Foundation Health Plan. [Dkt. 310-1 at 2-3 ¶ 4]. A non-lawyer, the Kaiser Senior Director of National Brand Adverting, asked that this document be created. *Id.* The document is an attachment to the same internal group chat regarding web-tracking technology as discussed with regard to Document Nos. 2 and 5 above, listed as Entry No. 1 in Kaiser's privilege log. [Dkt. 309-1 at 2]. The document itself does not relay legal advice originating from a Kaiser attorney, nor does the document relay a request to seek legal advice. The document is essentially a spreadsheet of web-tracking technologies. The group chat indicates that the information in this spreadsheet is a compilation of materials received from other business units within Kaiser. None of the authors or recipients of messages in the chat thread or "parent" document involving this document are attorneys, nor is there any legal advice originating from a Kaiser attorney evident in this group chat. As with Document Nos. 2 and 5 above, this document appears to be the result of a fact-finding and information-gathering project. While the supporting declaration states that this document was created to send to an in-house Kaiser attorney to obtain legal advice, the "parent" or chat thread does not include that Kaiser attorney. Crediting the supporting declaration, this document, at best, is a collection of factual information which was separately sent to counsel, but not as an attachment to the chat thread at issue. The Court finds that this spreadsheet is analogous to the documents at issue in the *Nathu* case where a privilege objection was overruled and where the court ordered the production of a set of PowerPoint slides containing facts and figures, but not the legal advice regarding those facts. *See Nathu v. City of Oakland*, No. 4:20-cv-05242-SBA (LB), 2022 WL 2716522, at *4 (N.D. Cal. July 13, 2022). The legal standards discussed above with regard to Document Nos. 2 and 5 apply with equal force here: simply sending a document separately to a lawyer does not automatically transform that document into a privileged communication, particularly where it was separately sent to non-lawyers. Because the chat messages involving this document are not direct attorney-client communications, this attachment to those chat messages has not been sufficiently shown to be privileged.

Further, as with Document Nos. 2 and 5 above, Document No. 3 is, as Kaiser admits, a

"summary of factual findings." [Dkt. 310-1 at 2 ¶ 3]. Sending facts to a lawyer does not automatically make those facts subject to the privilege. *Loop AI Labs*, 2016 WL 913377, at *2; *see also Uber Techs.*, 2022 WL 767088, at *2 ("[F]actual information . . . is not privileged[.]"); *City of Roseville*, 2022 WL 3083000, at *14 ("[T]he underlying facts are not privileged."). Again crediting the supporting declaration's averment that this document was sent to a lawyer as part of a separate communication, that fact alone does not transform a summary of facts into a privileged communication. *Chen*, 99 F.3d at 1501.

Accordingly, the Court **FINDS** that Kaiser has not sufficiently met its burden to show that Document No. 3 is protected from discovery by the attorney-client privilege.

Document No. 151

This document is a set of PowerPoint slides created by the Kaiser Foundation Health Plan's Executive Director of Privacy Compliance. [Dkt. 310-3 at 2 ¶¶ 1, 3]. These slides were sent directly to Kaiser in-house counsel, as an attachment to a communication listed as Entry No. 150 in Kaiser's privilege log. [Dkt. 309-1 at 5]. Having reviewed the materials *in camera*, the Court finds that Document No. 151 was self-evidently part of a direct attorney-client communication. While other Kaiser non-lawyer employees are "cc'd" on this communication, the communication is directly addressed to and directs questions directly from the Kaiser Executive Director to the Kaiser in-house lawyer. Without going into specifics, the communication specifically requests legal advice about the contents of Document No. 151. *See* Dkt. 310-3 at 2 ¶ 3 ("I emailed the presentation to [the Kaiser in-house attorney] . . . and requested that [the Kaiser in-house attorney] provide his legal analysis of the contents of the presentation."). While the document has discussion of facts, that discussion is intertwined with discussion of (and questions about) legal and regulatory risk issues. Documents concerning regulatory compliance can be protected from discovery based on the attorney-client privilege. *See, e.g.*, *City of Roseville*, 2022 WL 3083000, at *11-12.

Accordingly, based on review of all materials submitted an in light of the appropriate legal standards, the Court **FINDS** that Kaiser has sufficiently met its burden to show that Document No. 151 is protected from discovery by the attorney-client privilege.

<u>Document Nos. 179, 192, and 213</u>

Document Nos. 179, 192, and 213 are essentially copies of the same document, with minor, nonsubstantive differences. For ease of reference, the Court will refer to Document No. 179 alone, but the analysis applies equally to all three documents because they are substantively identical.

Document No. 179 is a one-page PowerPoint slide created by the Kaiser Foundation Health Plan's Business Information Security Officer. [Dkt. 310-2 at 2 ¶¶ 1, 3]. These slides were sent directly to Kaiser in-house counsel and other Kaiser employees, as an attachment to a communication listed as Entry No. 178 in Kaiser's privilege log. [Dkt. 309-1 at 6]. Having reviewed the materials *in camera*, the Court finds that this document was self-evidently part of an email string which includes direct attorney-client communications. While other Kaiser non-lawyer employees are both authors and recipients of emails in this thread, the communication includes comments directly addressed to the Kaiser in-house lawyer. *Id.* The internal receipt or sending of an attorney-client communication within the client organization does not obviate the applicability of the attorney-client privilege. *See, e.g.*, *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) (The attorney-client privilege can "protect a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel. Such communications obviously reveal privileged communications."); *Intex Recreation Corp. v. Bestway (USA), Inc.*, No. CV 19-8596-JAK(Ex), 2023 WL 6193018, at *2 (C.D. Cal. Sept. 8, 2023) ("The disclosure of privileged communications among employees of a corporate client does not waive the [attorney-client] privilege, provided that each employee recipient needed to know the content of the privileged communication 'to perform her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication.'"). Without going into specifics, the communication in the cover or "parent" email specifically requests legal advice about the contents of Document No. 179. [Dkt. 310-2 at 2 ¶ 3]. While the document at issue discusses factual matters, that discussion is intertwined with discussion of (and questions about) legal and regulatory risk issues. *See City of Roseville*, 2022 WL 3083000, at *11-12 (documents concerning regulatory compliance can be protected from

discovery based on the attorney-client privilege).

Accordingly, based on review of all materials submitted and in light of the appropriate legal standards, the Court **FINDS** that Kaiser has sufficiently met its burden to show that Document Nos. 179, 192, and 213 are protected from discovery by the attorney-client privilege.

<u>Document No. 211</u>

This document was created by the Kaiser Foundation Health Plan's Executive Director of Privacy Security and Technology Compliance, Mr. Vourthis. [Dkt. 310 at 2 ¶¶ 1, 3]. The document was sent directly to Kaiser in-house counsel and another non-lawyer Kaiser employee, as an attachment to a communication listed as Entry No. 210 in Kaiser's KP_14 privilege log. [Dkt. 309-1 at 6]. Having reviewed the materials *in camera*, the Court finds that this document was self-evidently attached to an email which is part of an email string which includes direct attorney-client communications. Kaiser in-house counsel is the author of the email in the thread, which immediately precedes the email from Mr. Vourthis which attached this Document No. 211. In other words, Mr. Vourthis sent Document No. 211 to Kaiser in-house counsel and another Kaiser employee in direct response to an email from Kaiser in-house counsel. While other Kaiser non-lawyer employees are both authors and recipients of other emails in this thread, those earlier emails in the thread include comments directly addressed to the Kaiser in-house lawyer, Mr. Matt. *Id.* Without going into specifics, the communication specifically requests legal analysis regarding the contents of Document No. 211. [Dkt. 310 at 2 ¶ 3]. While the document discusses factual matters, that discussion is intertwined with discussion of (and questions about) legal and regulatory risk issues. *See City of Roseville*, 2022 WL 3083000, at *11-12 (documents concerning regulatory compliance can be protected from discovery based on the attorney-client privilege).

Accordingly, based on review of all materials submitted and in light of the appropriate legal standards, the Court **FINDS** that Kaiser has sufficiently met its burden to show that Document No. 211 is protected from discovery by the attorney-client privilege.

## CONCLUSION

The Court has undertaken a detailed *in camera* review of the disputed documents and each of their "parent" documents, and has also considered the declarations, privilege logs, and all other

11

submissions from the Parties. Based on the Court's review of these materials, the Court finds that some of the disputed documents have been shown to be privileged, while for others Kaiser has not met that burden. Given the length and number of documents involved, as well as the confidentiality issues under the Protective Order, the Court has endeavored to avoid unnecessary discussion of the details of the documents on a page-by-page or line-by-line basis. Therefore, this Order is not filed under seal.

For the reasons set forth herein, Plaintiffs' motion to compel production is **GRANTED** with respect to Document Nos. 2, 3, and 5. Kaiser **SHALL** produce those documents promptly. The motion is **DENIED in all other respects.**

To avoid arguments about waiver of privilege and out of consideration for the Protective Order, the Court has endeavored to draft this Order in such a manner as to avoid quoting text from (or otherwise revealing the substance of text from) those documents which the Court finds are subject to the attorney-client privilege. To the extent any such material is referenced herein, the Court has summarized it in a way which would be found, for example, in a privilege log. Therefore, there **SHALL** be no argument regarding waiver of privilege with regard to discussion of any of disputed documents herein.

This **RESOLVES** Dkt. 291.

**IT IS SO ORDERED.**

Dated: March 14, 2025

_____
PETER H. KANG
United States Magistrate Judge