SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
KRISTIN P. HOUSH, Cal Bar No. 286651
khoush@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington

*[Additional counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | Case No. 3:23-cv-02865-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CONSOLIDATED COMPLAINT AND TO STRIKE PLAINTIFFS' TOLLING ALLEGATIONS AND REQUESTS FOR PUNITIVE DAMAGES**<br><br>Judge: Hon. Edward Chen<br>Date: May 29, 2025<br>Time: 1:30 p.m.<br>Crtrm.: 5<br><br>District Judge: Hon. Edward M. Chen<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Consolidated Complaint Filed: December 6, 2024<br>Trial Date: January 25, 2027 |

## TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. THE HIPAA NOTICE DOES NOT SUPPORT PLAINTIFFS' CLAIMS ........ 1

III. THE COURT SHOULD DISMISS WITH PREJUDICE ALL "KNOWLEDGE." ........ 2

IV. CLAIMS 1–4, 8–11, 13, 15, and 18–22 FAIL TO STATE CLAIMS FOR RELIEF ........ 4

- A. Claim 1: Plaintiffs Cannot Allege the ECPA Crime Tort Exception ........ 4
- B. Claims 3 and 4: The Invasion of Privacy Claims Should Be Dismissed. ........ 5
- C. Claim 8: Non-California Resident Plaintiffs Cannot Allege CMIA Claims. ........ 6
- D. Claim 9: Plaintiffs Still Fail to Plead Theft by False Pretenses. ........ 7
- E. Claim 10: Jane Doe II's DCCPPA Claim Fails. ........ 8
- F. Claim 11: John Doe II States No GCSPA Claim. ........ 9
- G. Claim 13: Jane Doe III's Claim Under the Maryland Wiretap Act Fails. ........ 9
  - 1. Jane Doe III's Generic Allegations Do Not Establish Standing. ........ 10
  - 2. The Maryland Wiretap Act Was Not Intended to Cover Contentless Data Communications With No Intended Message Between Persons. ........ 11
- H. Claim 15: Plaintiffs Allege No Violation of the VCCA. ........ 12
- I. Claim 18: No Violation of the WPA Fails Because Jane Doe Cannot Allege Interception of Communications Between Two Or More Individuals And, As Pleaded, Kaiser Was a Party to All Communications. ........ 12
- J. Claim 19 for Violation of the Washington HCIA Fails Because Jane Doe Does Not Allege Defendants Disclosed Her "Health Care Information." ........ 13
- K. Claims 20–22: Plaintiffs Have Not Pleaded an Actionable Breach or Acquisition of Each Plaintiff's Personal Information ........ 14

V. PLAINTIFFS STATE NO CLAIM AGAINST HOSPITALS OR KPWA. ........ 15

VI. THE COURT SHOULD STRIKE PLAINTIFFS' TOLLING AND PUNITIVE DAMAGES ALLEGATIONS. ........ 16

- A. Plaintiffs Fail to Allege Facts Tolling The Statute of Limitations. ........ 16
- B. Plaintiffs Fail to Allege Oppression, Fraud, Malice, or Ratification. ........ 17

VII. A FIFTH ATTEMPT AT AMENDMENT WOULD BE FUTILE. ........ 18

VIII. CONCLUSION ........ 18

TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Hosp. Assn. v. Becerra*
738 F. Supp. 3d 780 (N.D. Tex. 2024) .......... 2

*Beyer v. Symantec Corp.*
333 F. Supp. 3d 966 (N.D. Cal. 2018) .......... 3

*Calhoun v. Google, LLC*
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 7

*Chao v. Aurora Loan Servs., LLC*
Case No: C 10-3118 SBA, 2013 WL 5487420 (N.D. Cal. Sept. 30, 2013) .......... 10

*Diamond S.J. Enter., Inc. v. City of San Jose*
395 F. Supp. 3d 1202 (N.D. Cal. 2019) .......... 18

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) .......... 11

*Hernandez v. Hillsides, Inc.*
47 Cal. 4th 272 (2009) .......... 6

*Lacey v. Maricopa County*
693 F.3d 896 (9th Cir. 2012) .......... 10

*In re Meta Pixel Healthcare Litig.*
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 5

*Southeastern Wholesale Corp. v. Cox Commc'ns Rds., LLC*
No. 2:12cv701, 2013 WL 2147478 (E.D. Va. May 14, 2013) .......... 12

*Spice Jazz LLC v. Youngevity Int'l, Inc.*
2020 WL 1180725 (S.D. Cal. Mar. 11, 2020) .......... 10

*State v. Kipp*
317 P.3d 1029 (Wash. 2014) .......... 13

*Sun Kin Chan v. State*
78 Md. App. 287 (1989) .......... 12

*United States v. New York Tel. Co.*
434 U.S. 159 (1977) .......... 12

*Virginia Mason Medical Center*
No. 19-2-296674-1 SEA, 2024 WL 3517759 (Wash. Super. June 6, 2024) .......... 13, 14

*Webb v. Trader Joe's Co.*
999 F.3d 1196 (9th Cir. 2021) ........ 18

*In re Zynga*
750 F.3d 1098 (9th Cir. 2014) ........ 11

Statutes

Civ. Code § 56(a) ........ 7

Civ. Code § 56.05(o) ........ 7

Civ. Code § 56.05(p) ........ 7

Civ. Code § 56.10 ........ 7

Civ. Code, § 3294(c)(3) ........ 17

Ga. Code Ann. § 16-9-93(a) ........ 9

Md. Code Ann., Com. Law 14-3501(e)(1) ........ 14

Wash. Rev. Code Ann. 19.255.005(2)(a)(i) ........ 14

Wash. Rev. Code § 9.73.030(1)(a) ........ 12

Other Authorities

CACI 3943 ........ 17

## I. INTRODUCTION[1]

Plaintiffs' opposition (the "Opposition") fails to adequately oppose any of the relief Kaiser seeks.

Claims Predicated on Kaiser's Knowledge of Third-Party Use: The Court dismissed these claims because Plaintiffs failed to allege that Kaiser "knew and/or approved" of its third party vendors using Plaintiffs' information for their own purposes. (MTD Order at 11–12.) Plaintiffs have not cured this defect. The CMC still does not allege that the vendors *actually* so used the information or (even assuming they did) that Kaiser knew anything about it. Plaintiffs allege only that Kaiser should have realized the *possibility* of such use. The possibility is not enough, and so the Court should dismiss this theory of liability as a whole along with each of the specific causes of action that requires actual knowledge.

Claims that Fail for Lack of Standing and Other Reasons: Plaintiffs also fail to cure other fatal defects specific to particular causes of action. Five claims fail for lack of standing for reasons (such as the plaintiff not being a California citizen) that Plaintiffs cannot avoid, nor do Plaintiffs cure their failure to allege other essential elements of these claims.

Claims against KPWA and Hospitals: Rather than curing the problem that led the Court to dismiss these entities, the CMC compounds it by expressly alleging that it is KFHP (and not these entities) that operates the website and apps in question. There is no basis to keep these entities in the case.

Tolling and Punitive Damages Allegations: Finally, the Court should strike Plaintiffs' tolling allegations and punitive damages claims. Plaintiffs expressly allege they discovered the alleged violations through their own efforts and allege no reason they could not have done so earlier, and their allegations (even liberally construed) do not support punitive damages.

## II. THE HIPAA NOTICE DOES NOT SUPPORT PLAINTIFFS' CLAIMS.

Unable to allege that vendors actually used Plaintiffs' information for their own purposes or that Kaiser knew about such conduct if it occurred, the opposition relies heavily but improperly

[1] All defined terms used in this Reply shall have the same meaning set forth in Defendants' Motion to Dismiss. (ECF No. 302-4.)

on Kaiser's HIPAA notice. As the notice itself shows, Kaiser provided the disclosure "in an abundance of caution" and despite having member consent and no evidence of unauthorized use. (Exs. A–C to Opp.) Further, as the notice also shows, Kaiser did so in reliance on Office of Civil Rights guidance that a court shortly later held partly invalid.[2] (*Id.*) Kaiser's conservatism—the only thing inferable from the HIPAA notice—does not establish any element of any of Plaintiffs' claims. This conservatism cannot be held against Kaiser, nor should it: to do so would undermine Congressional intent by discouraging companies from giving notice. Further, the timing of the HIPAA notice relative to the Court's prior ruling was coincidental and reflects the time Kaiser needed to complete its investigation, assess its legal obligations, then comply with HIPAA.

## III. THE COURT SHOULD DISMISS WITH PREJUDICE ALL "KNOWLEDGE."

Despite repeated attempts, Plaintiffs still fail to allege any facts supporting the inference that Kaiser knew a vendor was using Plaintiffs' information for its own purposes. As a result, the Court should now dismiss with prejudice all claims that depend on such knowledge.

In its MTD Order, the Court dismissed all claims that were based on the theory that "Kaiser allowed third parties to collect and/or use information for the benefit of the third parties themselves (essentially, selling or otherwise giving information to third parties)." (MTD Order at 11–12.) The Court so ruled because of its "fundamental concern" that "Plaintiffs have not alleged that the third parties did so with the knowledge and/or approval of Kaiser." (*Id.*)

Plaintiffs have alleged nothing new justifying a different result this time around. As to whether any of the vendors ever actually used the information for their own purposes, Plaintiffs still fail to allege a single such instance. Nor do they allege anything from which such an instance could be circumstantially inferred—such as alleging that Plaintiffs received targeted ads, e-mails, or any other forms of targeted marketing after using the Site or the Apps. Instead, despite admitting the contractual protections Kaiser employed to prevent unauthorized use, Plaintiffs float hypothetical possibilities that a vendor might possibly have exploited a gap in these protections to use information for its own purposes. But allegations that something *might* have happened are no

---

[2] *See Am. Hosp. Assn. v. Becerra,* 738 F. Supp. 3d 780, 807 (N.D. Tex. 2024).

substitute for allegations that something *did* happen.

Further, even if Plaintiffs *had* alleged some vendor's use of information for its own purposes, Plaintiffs still fail to allege that Kaiser knew anything about it. Their lead argument is that knowledge can be inferred from the HIPAA notice (Opp. at 5), but the HIPAA notice permits no such inference for the reasons above. Their next argument is that "the information was valuable" to the vendors, so they probably used it, and so Kaiser should have suspected that use. (Opp. at 6.) This chain of "might have done" and "should have suspected" is no substitute for alleging actual knowledge on Kaiser's part—an allegation that is still absent. In the same vein, allegations that some of Kaiser's contractual protections governing vendor use of data were imperfect do not amount to actual knowledge.

Plaintiffs' reliance on *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966 (N.D. Cal. 2018), does not solve their inability to allege actual knowledge. In *Beyer*, a false advertising and CLRA case against Symantec for misleading claims about its virus protection software, the court inferred Symantec's likely knowledge of defects in its software based on Symantec's presumably intimate understanding of its own software and its knowledge that it failed to take steps to patch that code when necessary. *Id.* at 981. The situation here is not analogous. The inference that a software company knows how its own code works does not support an inference that Kaiser knew any of its vendors were using information for their own purposes.

Perhaps recognizing that, Plaintiffs retreat to their allegation that Kaiser's allegedly deficient contractual "safeguards" created a "materially enhanced risk" that vendors would use information for their own purposes. (Opp. at 10–11.) An enhanced risk (even assuming such were alleged here) is not the same thing as actual knowledge. To the contrary, the Court held Plaintiffs must allege Kaiser's *knowledge and/or approval* of third party use for claims based on selling or otherwise giving information to third parties. (MTD Order at 11–12.)[3]

[3] The only discussion of "materially enhanced risk" in the MTD Order concerns the narrow issue of whether a vendor can be considered an "eavesdropper" for purposes of CIPA. (MTD Order at 26.) Nothing in the MTD Order suggests the Court deemed an "enhanced risk" to substitute for actual knowledge sufficient to support liability for knowingly permitting vendors to misuse information.

Finally, the Opposition wrongly suggests that Kaiser's actual knowledge does not matter, arguing that Kaiser fails to explain why "lack of knowledge warrants dismissal of any specific claim." (Opp. at 3.) It matters for two reasons. First, Plaintiffs' failure to allege knowledge warrants dismissal of specific claims. After all, lack of knowledge is one reason why the Court dismissed Plaintiffs' intrusion upon seclusion, invasion of privacy, larceny, DCCPPA, CSPA, and VCCA claims—under all of which actual knowledge and/or intent are essential elements. (MTD Order at 28–29, 40, 42, 44, 48–49.) Second, and more broadly, failure to allege knowledge is the reason the Court found Plaintiffs could not state *any* cause of action under their second theory of liability—namely, "selling or otherwise giving information to third parties" for their own use. (MTD Order at 11–12.)

These specific causes of action and the viability of the second theory of liability are as important now as when the Court previously dismissed them. Their presence or absence will define the scope of the case going forward. Because Plaintiffs have failed yet again to allege Kaiser's knowledge, the Court should reach the same result now as it did before—this time dismissing the specific claims and the second theory of liability with prejudice.

## IV. CLAIMS 1–4, 8–11, 13, 15, and 18–22 FAIL TO STATE CLAIMS FOR RELIEF.

Moving to the individual causes of action, the Court should dismiss them—this time with prejudice—because Plaintiffs still fail after repeated attempts to allege essential elements.

### A. Claim 1: Plaintiffs Cannot Allege the ECPA Crime Tort Exception

The Opposition concedes Plaintiffs only have a viable ECPA claim if the crime tort exception applies. But Plaintiffs' only argument for such an exception is one the Court has already rejected.

Plaintiffs argue they have pleaded the exception by alleging that Kaiser received access to some vendors' data for free, which they equate with effectively selling patient information to the vendors in exchange for the marketing data provided to Kaiser by the technology. (Opp. at 18.) But this is the same argument Plaintiffs made in opposing the prior motion to dismiss, and which they support now with many of the same cases cited then. (ECF 109 at 27–28 [arguing for exception based on Kaiser seeking to obtain "free marketing data"].) The Court concluded that the

allegation that Kaiser "obtain[ed] market research and consumer analysis without paying for it" did not trigger the crime tort exception. (MTD Order at 15–16.)

Further, even if the Court had not already rejected the same argument, any argument based on Kaiser making an "in-kind" payment to secure free use of Twitter, Google, and Microsoft's technology should be rejected as implausible. This is because Plaintiffs expressly allege that the technology is already completely free for everyone. (CMC ¶ 213.) Why would Kaiser pay anything, in-kind or otherwise, for something anyone can get for free?

Implausibility aside, Plaintiffs simply fail to allege any impropriety separate from the alleged improper disclosure of information. As the Court explained before, the alleged "criminal or tortious purpose must be separate and independent from the act of the recording [*i.e.*, the act of interception]." (MTD Order at 14.) Plaintiffs themselves give an example of such a separate tortious act: legally videotaping a person, but then using the tape for blackmail. (Opp. at 19.) Plaintiffs allege no such further improper purpose. To the contrary, Plaintiffs expressly allege that Kaiser's purpose was not criminal or tortious; it was "to get information about who is visiting Kaiser's Site and Apps" in order to "harness its own data," "understand its marketing efforts," and "[d]rive membership growth, brand equity & improve efficiency." (CMC ¶¶ 215–216.)

Plaintiffs argue that the requisite "further impropriety" consists of "accessing Twitter, Bing, and Google technology without paying money" (Opp. at 19), but there is nothing criminal or tortious about accessing that technology (for free or otherwise). As the Court observed, "[m]ultiple courts in this district have found that the crime-tort exception . . . is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." (MTD Order at 15–16, quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022).) It follows that Plaintiffs' allegations that Kaiser acted to save money (*i.e.*, on technology licensing fees by offering supposed "in kind" payment) are insufficient. The *only* alleged improper act is the disclosure of information, and so Plaintiffs fail to plead the crime-tort exception. The Court should dismiss the ECPA claim, this time with prejudice.

**B. Claims 3 and 4: The Invasion of Privacy Claims Should Be Dismissed.**

Plaintiffs fail to cure the defects that led the Court to dismiss these claims before. As to

Claim 3 (common law invasion of privacy), the Court identified the essential elements as "intentional" intrusion into a private matter "in a manner highly offensive to a reasonable person." (MTD Order at 27.) The Court dismissed the claim on both elements, finding no allegations that Kaiser "knew and/or approved" of vendors using the information for their own purposes or that the manner of the alleged intrusion—"hir[ing] a third party to do work for Kaiser's own benefit"—was not highly offensive. (*Id.* at 28.)

The CMC fails to cure either defect. As to the intent element, for the reasons in Section III above, Plaintiffs still have failed to allege facts supporting a reasonable inference that Kaiser knew of or intended any unauthorized vendor use of Plaintiffs' information.

Plaintiffs likewise have not alleged that the *manner* of the alleged intrusion was highly offensive. At best, Plaintiffs have alleged certain omissions or lack of controls that were "accidental, misguided, or excusable acts of overstepping" which even Plaintiffs' authority identifies as *not* highly offensive. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). Instead, there must be an "egregious breach of social norms." *Id.* None of the facts alleged here approach that level.

Claim 4 (violation of California Constitutional right of privacy) should be dismissed with prejudice for the same reasons, and also because Plaintiffs now concede that they "do not bring invasion of privacy claims under article 1 section 1 of the California Constitution on behalf of non-California residents." (Opp. at 21, n. 29.) Because John Doe has been compelled to arbitration and all other Plaintiffs are non-California residents, none of the remaining Plaintiffs assert this claim or have standing to do so.

**C. Claim 8: Non-California Resident Plaintiffs Cannot Allege CMIA Claims.**

The Court dismissed the CMIA claim because "only a California Plaintiff may bring a CMIA claim, and, because the Court compelled John Doe to arbitration, there is no California Plaintiff to assert the CMIA claim." (MTD Order at 38.) In so ruling, the Court incorporated its extended analysis of standing for Claim 2 (the CIPA claim) and reached the same result: no standing under either claim. The Opposition does not address, let alone refute, the Court's prior well-reasoned choice-of-law analysis. Indeed, Plaintiffs have now abandoned their CIPA claim—

referring to it only in passing to "preserve this issue for appeal." (Opp. at 19.) They have no better argument for standing under Claim 8 than under Claim 2, which they have abandoned. That, without more, should be the end of the matter.

The Court further found, even apart from standing, that Plaintiffs had failed to allege that individually identifiable medical information was disclosed. (MTD Order at 38.) This is a twofold problem for Plaintiffs.

First, as the Court noted, Plaintiffs had not alleged that any individual's "actual *identities* could be divined" from the unique identifier vendors assigned to persons using the Site and the Apps. (MTD Order at 38 [cross-referencing to discussion at 32].) Plaintiffs still make no such allegation, alleging at most that vendors may assign a unique identifier to a browser or device, but never alleging that the vendors can associate an individual's name to that information.

Second, identifiable medical information under CMIA is limited to information concerning treatment by a *California* provider. That is because Civil Code 56.10 applies only to disclosure of medical information regarding a "patient" (Civ. Code § 56(a)), and a "patient" in turn is someone who received services from "a provider of health care," and a "provider of health care" is limited to persons licensed under various California laws (Civ. Code § 56.05(p) and (o)). Accordingly, unless one of the non-California Plaintiffs was treated by a California provider (which is not alleged), information about them cannot possibly be information covered by the statute.

### D. Claim 9: Plaintiffs Still Fail to Plead Theft by False Pretenses.

The Court previously dismissed Plaintiffs' theft by false pretenses claim because (i) there was no theft if Kaiser "authorized third parties to collect information for Kaiser's benefit, and not for the third parties own use" and (ii) there were no allegations that "Kaiser knew or approved of the use of member information by third parties for their benefit, as opposed to Kaiser's." (MTD Order at 40.) Plaintiffs have not cured this defect for the reasons discussed in Section III above. Plaintiffs' reliance on *Calhoun v. Google, LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) does not help them avoid their failure to allege knowledge, since *Calhoun* involved a direct claim against the alleged wiretapper (Google) and so there was no dispute Google knew about its own unauthorized collection and use of data.

Further, Plaintiffs do not dispute they must allege both "specific false representations" and their reliance on them. General allegations about Plaintiffs' "expectation" of privacy based on federal and state laws or the sensitive nature of health information (CMC ¶¶ 1, 374, 381, and 390) do not help Plaintiffs because those do not involve specific representations by Kaiser. The only allegation even approaching a specific representation by Kaiser is paragraph 101, which references Kaiser's Privacy Statement. But none of the Plaintiffs allege they ever read the Privacy Statement, much less relied upon it.

**E. Claim 10: Jane Doe II's DCCPPA Claim Fails.**

The Court previously held that DCCPPA claims must be based on more than an intentional breach of contract, and instead "something more along the lines of an intentional tort." (MTD Order at 42.) Jane Doe II still fails to allege anything akin to an intentional tort, for the same reasons discussed in Section III above.

Plaintiffs' allegations that Kaiser allegedly traded "information for 'free' access to Google, Bing and Twitter's advertising and analytics services" (Opp. at 26) does not support a contrary conclusion. For starters, it is implausible that Kaiser needed to share information as an "in kind" payment to receive free use of Twitter, Google, and Microsoft's technology because Plaintiffs expressly allege that the technology is already completely free for everyone. (CMC ¶ 213.) But even assuming Kaiser somehow "paid" to use the technology, that does not transform its use of that technology into a tort directed at Jane Doe II.

Finally, Jane Doe II cannot save Claim 10 through allegations based on Kaiser's alleged conduct during this litigation—e.g., "hiding" or "concealing" breaches. (Opp. at 27.) Plaintiffs expressly allege that Kaiser provided a HIPAA notice, which contradicts any argument about "hiding" breaches. Further, a company's responses to possible breach events cannot fairly be considered to fall within the "trade practices" regulated by the DCCPPA. The DCCPPA and similar acts prohibit misrepresentations designed to lure customers into buying goods or services, and cannot fairly be construed to govern how companies respond to allegations of past misconduct. Statements about past alleged breach events are just that—statements about past events—not statements akin to false advertising of goods or services currently for sale.

**F. Claim 11: John Doe II States No GCSPA Claim.**

The Court previously dismissed the GCSPA claim because John Doe II failed to allege facts supporting the "without authority" element of the Georgia statute. (MTD Order at 43.)

The Opposition does not adequately respond. First, it argues that "without authority" extends to using a computer "in a manner that exceeds any right or permission granted by the owner of the computer or computer network," and that Kaiser is liable because it used information "on the Site and Apps" in a way John Doe II did not authorize. (Opp. at 28.) The problem with this argument is simple: John Doe II does not own the Site or the Apps or any computer or network that Kaiser allegedly used. His authorization is not needed to use Sites, Apps, or networks he does not own.

Second, and perhaps realizing that problem, John Doe II argues that Kaiser somehow "commandeered" his computer. (Opp. at 28.) But his actual allegations do not include any "commandeering." Paragraph 5 of the CMC—cited by Plaintiff for the supposed "commandeering"—simply alleges that Kaiser installed code on its own Site and its own Apps that resulted in relaying communications to the vendors. That is not "commandeering" his computer. The fact that he must resort to such an argument demonstrates the claim deserves to be dismissed with prejudice.[4]

**G. Claim 13: Jane Doe III's Claim Under the Maryland Wiretap Act Fails.**

Jane Doe III's Maryland Wiretap Act claim fails for at least two independent reasons: (1) lack of standing; and (2) lack of a protected communication with content.[5] In the Opposition, Jane Doe III ignores that there has never been a case in Maryland under similar facts that has upheld a Maryland Wiretap Act claim. Instead, she argues incorrectly that Kaiser has waived its

---

[4] Further, to violate the GCSPA, Kaiser must have used someone else's computer network "with knowledge" that its use was without authority. Ga. Code Ann. § 16-9-93(a). Even if Kaiser could somehow be deemed to be using someone else's network, John Doe II has not alleged the requisite knowledge for the reasons in Section III above.

[5] The Maryland Wiretap Act should also be dismissed because software code is not a device. No Maryland court has addressed whether software code qualifies as a "device." While the Opposition correctly notes that courts have interpreted what constitutes an intercepting "device" under the ECPA differently, Kaiser submits that the better reasoned opinions on this matter are cited in its brief and conclude that the type of code at issue here are not devices. (Mot. at 30–31.)

arguments as to the Maryland Wiretap Act because its prior 12(b)(6) motion did not include these arguments. Courts in the Ninth Circuit, however, generally do not apply Rule 12(g) to bar motions to dismiss amended complaints because "an amended complaint supersedes the original complaint and renders it without legal effect." *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012). "Relying on that rule, courts within this Circuit have permitted defendants to bring motions to dismiss in response to an amended pleading based on arguments previously made in a prior motion to dismiss and to raise new arguments that were not previously made." *Chao v. Aurora Loan Servs., LLC*, Case No: C 10-3118 SBA, 2013 WL 5487420, at **3–4 (N.D. Cal. Sept. 30, 2013) (collecting cases); *Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2020 WL 1180725, at *2 (S.D. Cal. Mar. 11, 2020) ("filing of an amended complaint [is] an event that revives the defendant's opportunity to raise any defense"). Accordingly, Kaiser is entitled to raise new arguments regarding defects with the Maryland Wiretap Act claim.

**1. Jane Doe III's Generic Allegations Do Not Establish Standing.**

Recognizing this Court's prior ruling that at this stage the Court accepts as true that the "same policies or practices applied to all Kaiser plan members," does not mean that every person who came to the website had all of the same level of content transmitted. As the examples in the CMC reflect, what information is transmitted depends on particular actions by the user. Because Jane Doe III relies on the allegations regarding other plaintiffs and what they claim to have done, without an allegation that she engaged in the same activities, she cannot establish her standing. (Opp. at 29.)

Significantly, there is no allegation that Jane Doe III made any query based searches on Kaiser's websites as opposed to just navigating and clicking through pre-existing content on the website. (CMC ¶ 52.) It was the lack of specific allegations regarding the plaintiffs and lack of distinction between what could potentially be captured versus what specific information was in fact captured that led the U.S. District Court for the District of Maryland to dismiss the plaintiffs' claims for lack of standing in *Hernandez v. Noom, Inc.* and *Straubmuller v. Jetblue Airways Corp*. Her attempt to distinguish these cases by citing the allegations made about what others did on the website misses the point, since she failed to allege that she used the website in the same manner.

**2. The Maryland Wiretap Act Was Not Intended to Cover Contentless Data Communications With No Intended Message Between Persons.**

Further, Jane Doe III concedes in her Opposition that to state a viable Maryland Wiretap Act claim, she must allege that the "contents" of her communication was intercepted, which includes "information concerning the identity of the parties to the communication" or the "substance, purport, or meaning of that communication." (Opp. at 32.) Yet, Jane Doe III has alleged no such facts regarding her use of the Site, and instead refers the Court to allegations about other named plaintiffs, including transmissions reflecting search queries made by other plaintiffs. (Opp. at 33.)

In assessing whether a transmitted URL reflects contents under the ECPA, courts have held that URLs that reflect mere website navigation are not content while URLs that reflect a detailed search query *may* be statutorily protected content. *See, e.g.*, *In re Zynga*, 750 F.3d 1098, 1108–1109 (9th Cir. 2014) (URL showing website navigation is not content); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (URLs that resulted from clicking on links within the website are not content). As addressed in Kaiser's motion, even a URL reflecting search terms does not reflect "content" under the Maryland Wiretap Act because it merely reflects one person's query on a computer system, not an intended communication between two people. (*See* Mot. at 25–27.) Regardless, there are no allegations that Jane Doe III ever conducted any such search queries.

Nor are there allegations that information concerning Jane Doe III's identity was ever transmitted. There is no allegation that Jane Doe III's full name was disclosed in any data transmission. She argues that the transmission of browser fingerprinting data and IP addresses falls within the definition of "content" under the Maryland Wiretap Act because she contends it is "information concerning the identity of the parties to the communication or the existence of the communication." However, this data relates to the identification of a user's *device*, not of the user himself or herself. It does not concern or reveal the identity of Jane Doe III. Moreover, nothing in the statute suggests that IP addresses or browsing fingerprint data is protected content.

In interpreting identical language under a prior version of the Federal Wiretap Statute, on

which the Maryland Wiretap Act was based, the Maryland Court of Special Appeals and the United States Supreme Court held its clear purpose "was to protect the intrinsic subject matter of a communication and not the extrinsic fact that a communication took place. The protection is of the message, not the medium." *Sun Kin Chan v. State*, 78 Md. App. 287, 302 (1989) (citing to *United States v. New York Tel. Co.*, 434 U.S. 159, 166–167 (1977).) Significantly, the Supreme Court held that telephone numbers cannot be "contents" of a communication because they do not disclose the "identities" of the parties to the communication or "the purport of any communication between the caller and the recipient of the call." *United States v. New York Tel. Co.*, 434 U.S. 159, 166–67. Under this precedent, neither can IP addresses or browser finger printing data be considered protected content.

**H. Claim 15: Plaintiffs Allege No Violation of the VCCA.**

Plaintiffs fail to correct the defects the Court previously found or to adequately respond to the further defects shown in Kaiser's opening brief. In dismissing the VCCA claim, the Court focused on the elements of "malicious intent" and lack of "authority" and ruled that Plaintiffs alleged no facts establishing these elements. (MTD Order at 48–49.) The CMC does not cure that failure, nor could it. After all, the VCCA is concerned with maliciously and without authority (i) using a computer network to make unauthorized copies of computer data or software, or (ii) installing a keystroke recorder. (MTD Order at 48.) Plaintiffs cannot allege these elements here because this case has nothing to do with unauthorized use of or access to Plaintiffs' computers. Plaintiffs' allegations concern software that Kaiser had on *its* Site and *its* Apps, and Kaiser did not need Plaintiffs' authority for that. *See Southeastern Wholesale Corp. v. Cox Commc'ns Rds., LLC*, No. 2:12cv701, 2013 WL 2147478, at *6–7 (E.D. Va. May 14, 2013) (finding that a party cannot use its own computer network without authority). The Opposition has no answer to that. Further, Plaintiffs cannot show "malicious intent" for the reasons in Section III above.

**I. Claim 18: No Violation of the WPA Fails Because Jane Doe Cannot Allege Interception of Communications Between Two Or More Individuals And, As Pleaded, Kaiser Was a Party to All Communications.**

Jane Doe is trying to force a claim into a statute where it simply does not fit. The WPA prohibits "intercepting" or "recording" private communications. Wash. Rev. Code §

9.73.030(1)(a). As the Court already held, Kaiser—as a party to these communications—cannot intercept them. (MTD Order at 54.) Nor does Jane Doe allege any "recording" by Kaiser, much less one done without her consent. In statutory context, "recording" plainly refers to secret tape or other recording of others' conversations, as in the case cited by plaintiff involving a man who tape recorded his brother's confession to molestation. *State v. Kipp*, 317 P.3d 1029, 1036 (Wash. 2014). And even assuming "recording" could reasonably be interpreted to include Kaiser retaining an electronic record of messages Jane Doe sent to Kaiser, she does not allege any reasonable expectation that Kaiser would delete her messages. Consequently, her consent to Kaiser retaining them is implied.

### J. Claim 19 for Violation of the Washington HCIA Fails Because Jane Doe Does Not Allege Defendants Disclosed Her "Health Care Information."

The Court previously dismissed Jane Doe's HCIA claim because she had not alleged disclosure of her *individually identifiable* health care information. (MTD Order at 55.) Specifically, the Court noted Plaintiff had not alleged how any information "identified her or could readily be associated with her *personal identity*." (*Id.*, italics supplied.)

Neither the CMC nor the Opposition cures this defect. While Jane Doe argues that her searches concerning restless leg syndrome, an X-Ray, and a mammogram were relayed to vendors. (Opp. at 37), she does not and cannot allege that Kaiser relayed any information tying these searches to her personally, such that a vendor (or anyone else) could identify her.

Jane Doe also fails to allege a separate element of the HCIA: that the information "*directly* relates to the patient's health care." The fact that Jane Doe visited certain pages or used certain search terms does not meet that narrow standard, as interpreted by Washington courts. *Virginia Mason Medical Center*, Case No. 19-2-296674-1 SEA, 2024 WL 3517759, at *3 (Wash. Super. June 6, 2024) (holding that "knowing that someone visited certain pages related to certain medical issue[s], without more" is not "directly related to any 'care, service, or procedure' that that person has been diagnosed with, is being, or has been, treated for, or they are undergoing any maintenance related health care for any physical or mental condition, as is required to meet the definition of 'health care' under the HCIA").

Finally, the HIPAA notice does not supply the essential missing elements. As discussed above, Kaiser provided that notice conservatively and because it could not rule out that no PHI had been disclosed without authorization. Giving notice that some members' PHI *may* have been disclosed implies nothing about *Jane Doe's* PHI in particular. Further, even if it did, that would not matter. PHI under HIPAA is far broader than "health care information" under the HCIA, so even if PHI was disclosed that would not imply that "health care information" was. *Virginia Mason Medical Center*, 2024 WL 3517759, at *3 (declining to use the definition of PHI under HIPAA as a standard for HCIA claims).

### K. Claims 20–22: Plaintiffs Have Not Pleaded an Actionable Breach or Acquisition of Each Plaintiff's Personal Information

The claims for violation of the D.C. Act, PIPA, and Washington Act all fail for the same reason—the Plaintiff asserting the claim has not alleged any "breach of the security of [Defendants'] systems" that resulted in the disclosure of actionable "personal information."

Plaintiffs' allegations simply do not describe a "breach" or "unauthorized acquisition" as those terms are used in any of the three statutes. The gravamen of the CMC is not that the vendors were not authorized to *receive* the information in question, but only that they thereafter used that information for their personal benefit. That cannot fairly be equated with a breach or unauthorized acquisition.

Plaintiffs also fail to allege the requisite personally identifiable information. As Plaintiffs expressly allege, the D.C. Act is not triggered unless the information "can be used to identify a person or their information". (Opp. at 39). Similarly, the Maryland PIPA statute and the Washington Act are not triggered absent disclosure of a person's last name along with first name or initial. Md. Code Ann., Com. Law 14-3501(e)(1); Wash. Rev. Code Ann. 19.255.005(2)(a)(i). None of the Plaintiffs allege such disclosure.

The fact that Kaiser proactively and conservatively provided the HIPAA notice and similar disclosures to state officials does not change any of the foregoing. Disclosures a corporation makes in an abundance of caution should not be turned back against it, because to do so would chill the transparency the disclosure laws exist to serve. The Court should require Plaintiffs to

allege actual facts amounting to a violation of the statutes, which they have not done.

**V. PLAINTIFFS STATE NO CLAIM AGAINST HOSPITALS OR KPWA.**

In the MTD Order, the Court agreed that Plaintiffs had engaged in improper group pleading by lumping all defendants together, without specific allegations justifying the joinder of each. On that basis, the Court dismissed Hospitals and TPMG. (MTD Order at 8–9.)

Since then, Plaintiffs have dropped TPMG but they have done nothing to justify their continued claims against Hospitals. To the contrary, Plaintiffs now expressly allege that it is KFHP (not Hospitals) who "owns and operates" the Site and Apps. (CMC ¶ 72.) Further, the Opposition devotes only a single sentence specific to Hospitals—claiming that Hospitals entered contracts of unspecified content with "Adobe, Dynatrace, and QM." (Opp. at 41.) The mere allegation that Hospitals is a signatory in some capacity to a contract, without any allegation of what rights and responsibilities it has under the contract, does not establish any element of any claim against Hospitals.

The result should be the same for KPWA, which Plaintiffs added after they dropped TPMG. Plaintiffs' lead argument—that KPWA was a signatory to certain contracts, without alleging what its contractual duties and obligations were—fares no better against KPWA than it does against Hospitals. Plaintiffs' further argument—that KPWA *declined* to share information with Facebook for privacy reasons (Opp. at 41, citing CMC ¶ 393)—certainly does not justify a suit accusing it of privacy violations. And Plaintiffs' final argument resorts to mischaracterizing their own allegations. The Opposition argues that KPWA itself "operates its own mobile applications"—namely, the Kaiser Permanente Washington App—as justification to keep it in the case. (Opp. at 41, citing CMC ¶ 94.) That argument contradicts the CMC, where Plaintiffs alleges that it is KFHP (not KPWA) that "owns and operates the Site and the Apps" (CMC ¶ 72) and specifically defines "the Apps" to include the Washington app (CMC ¶ 4 fn. 5). Having alleged that it is KFHP not KPWA that owns and operates the Washington app, there is no justification for Plaintiffs telling the Court the opposite in the Opposition.

Because the CMC lacks any allegations specific to Hospitals or KPWA to justify claims against them, the Court should dismiss those defendants completely regardless of how it rules on

the claims against KFHP.

## VI. THE COURT SHOULD STRIKE PLAINTIFFS' TOLLING AND PUNITIVE DAMAGES ALLEGATIONS.

### A. Plaintiffs Fail to Allege Facts Tolling The Statute of Limitations.

Plaintiffs do not dispute that their claims largely fall outside the statute of limitations. Accordingly, it is of utmost legal and practical importance—including for putting reasonable bounds on discovery and as a parameter for any attempt at settlement—for the Court to decide whether Plaintiffs are entitled to "discovery rule" tolling. Plaintiffs do not dispute the authorities cited by Kaiser showing it is their burden to allege facts tolling the limitations period, including details like when and how they first discovered the alleged conduct and why they could not have done so earlier with reasonable diligence.

Plaintiffs have not met this standard. Indeed, the CMC does not even try to allege the required "when and how." Without knowing when and how Plaintiffs discovered the alleged facts supporting suit, the Court cannot evaluate whether reasonable diligence could have led to the same discovery sooner. For example, if the "how" was some new avenue not previously available, that might support tolling. But if the "how" was simply Plaintiffs belatedly exploring an avenue of discovery long available to them, that likely would not support tolling. Because Plaintiffs are not forthcoming about the "how," they cannot begin to carry their burden.

Plaintiffs' arguments about the supposed difficulty of discovery excuse their failure to allege the "how" and do not otherwise help them. It may be true that the vendors' computer code is "highly technical" and that Kaiser has "superior knowledge," but neither of those things prevented Plaintiffs from discovering the alleged facts by mid-2023, when they first sued. If "technicality" and "superior knowledge" were not obstacles to discovery by mid-2023, why should the Court treat those things as obstacles to earlier discovery? Plaintiffs offer no answer.

Other arguments are equally misplaced, such as the argument that Kaiser waited too long after October 2023 to give the HIPAA notice and supposedly "hid" conduct from Plaintiffs until after the decision on the first motion to dismiss. (Opp. at 42.) Plaintiffs' suit had already been on file for months by October 2023 and for almost a year before the April 2024 MTD Order. Plainly,

nothing Kaiser did or did not do *after* the suit was filed delayed Plaintiffs from discovering facts they had *already* alleged months earlier.

Because Plaintiffs do not meet their burden of pleading tolling of the statute of limitations, the Court should strike the inadequate tolling allegations in CMC ¶¶ 419–428.

**B. Plaintiffs Fail to Allege Oppression, Fraud, Malice, or Ratification.**

There are no obligations remotely meeting the statutory definitions of "fraud" or "malice" needed to state a claim for punitive damages.[6]

"Fraud" for punitive damages purposes requires "an intentional misrepresentation," of a "material fact," "known to the defendant," and "with the intent of" depriving a person of rights or injuring them. (Civ. Code, § 3294(c)(3).) Nothing in the Opposition addresses these elements and nothing in the CMC satisfies them. While Plaintiffs toss around terms like "blatant" and "willful," they do not point to any intentional misrepresentation of anything, much less a material fact known to Kaiser. Nor do they allege that Kaiser intended to deprive them of rights or injure them.

"Malice" means conduct "intended to cause injury" or "despicable conduct." Despicable means "conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people." CACI 3943. None of the allegations show intent to injure or conduct meeting the definition of "despicable," nor does the Opposition try to argue otherwise.

Further, Plaintiffs fail to allege any facts supporting the necessary inference of authorization or ratification by an officer, director, or managing agent. It is not enough to argue (as Plaintiffs do at Opp. 44–45) that it is likely a managing agent was involved in entering vendor contracts. Nothing in the mere act of entering contracts of the sort businesses enter every day with the likes of Google and Adobe justifies punitive damages. That is true even assuming some of those contracts contained imperfect privacy protections, as Plaintiffs allege, since imperfect contracting does not amount to "fraud" or "malice." Plaintiffs needed to allege that an officer, director or managing agent was not merely involved in contracting, but authorized or ratified specific conduct that he or she knew amounted to fraud or malice. They have not done so.

[6] Plaintiffs concede that they are not relying on the "oppression" prong of Civil Code section 3294. (Opp. at 43.)

Because Plaintiffs do not allege conduct meeting the statutory definition of fraud or malice nor the essential element of authorization or ratification, the Court should strike the punitive damages allegations.

## VII. A FIFTH ATTEMPT AT AMENDMENT WOULD BE FUTILE.

Plaintiffs seek yet a further opportunity to amend, arguing that the case is "at an early stage" and "further discover may reveal additional evidence supporting [their] claims." (Opp. at 45.) The Court should decline further leave to amend. Discovery has been going on for over two years. Kaiser has responded to written discovery and produced over 38,000 documents. Plaintiffs have already incorporated such documents and information into the CMC. Speculation about possible evidence from discovery does not justify yet another complaint (their *fifth* attempt). This Court should not "condone the use of discovery to engage in fishing expeditions" to try to cure pleading defects. *Webb v. Trader Joe's Co*., 999 F.3d 1196, 1204 (9th Cir. 2021) (affirming dismissal with prejudice). Where, as here, plaintiffs have had multiple opportunities to cure their pleading deficiencies, leave to amend is properly denied. *See, e.g., Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1222 (N.D. Cal. 2019) (denying leave to amend because litigating a third motion to dismiss on the same deficiencies would be unduly prejudicial to defendants). Kaiser respectfully requests that the Court deny further leave to amend.

## VIII. CONCLUSION

For the reasons argued in Defendants' Motion to Dismiss and in this Reply, Kaiser respectfully requests the relief set forth in its Motion to Dismiss.

Dated: April 11, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/ Wynter L. Deagle*

WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppardmullin.com
KRISTIN P. HOUSH, Cal Bar No. 286651
khoush@sheppardmullin.com
ANNE-MARIE D. DAO, Cal Bar No. 282632
adao@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real, Suite 120
Menlo Park, CA 94025
Telephone: 650.815.2600
Facsimile: 650.815.2601

KARI M. ROLLINS *(Pro Hac Vice)*
krollins@sheppardmullin.com
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
Facsimile: 212.653.8701

JOHN F. BURNS, Cal Bar No. 290523
jburns@sheppardmullin.com
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone: 619.338.6500
Facsimile: 619.234.3815

NOLAN J. WALTER, Cal Bar No. 325021
nwalter@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701

MELISSA MEDHAT MIKAIL, Cal Bar No. 323212
mmikail@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130

MARK T. RATWAY (*pro hac vice)*
mratway@sheppardmullin.com
2200 Ross Ave., 20th Floor
Dallas, Texas 75201
Telephone: 469.391.7457

Attorneys for Defendants
Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington