**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

| | |
|---|---|
| **KESSLER TOPAZ**<br>**MELTZER & CHECK, LLP**<br>Joseph H. Meltzer (appearance *pro hac vice*)<br>jmeltzer@ktmc.com<br>Melissa L. Yeates (appearance *pro hac vice*)<br>myeates@ktmc.com<br>Tyler S. Graden (appearance *pro hac vice*)<br>tgraden@ktmc.com<br>Jordan E. Jacobson (Bar No. 302543)<br>jjacobson@ktmc.com<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Telephone: (610) 667-7706<br>Facsimile: (610) 667-7056 | **CARELLA BYRNE CECCHI**<br>**BRODY & AGNELLO, PC**<br>James E. Cecchi (appearance *pro hac vice*)<br>jcecchi@carellabyrne.com<br>Michael A. Innes (*pro hac vice* forthcoming)<br>minnes@carellabyrne.com<br>Kevin G. Cooper (appearance *pro hac vice*)<br>kcooper@carellabyrne.com<br>5 Becker Farm Road<br>Roseland, New Jersey 07068<br>Telephone: (973) 994-1700<br>Facsimile: (973) 994-1744 |

*Interim Co-Lead Class Counsel*
(*Additional Attorneys Listed on Signature Page*)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | Case No. 3:23-cv-02865-EMC<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, NOTICE TO SETTLEMENT CLASS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Hon. Edward M. Chen<br>Date:   October 23, 2025<br>Time:  1:30 p.m.<br>Court: 5<br><br>CMC Filed: December 6, 2024<br>Trial Date:   January 25, 2027 |

## NOTICE OF MOTION AND UNOPPOSED MOTION

**PLEASE TAKE NOTICE** that on October 23, 2025 at 1:30 p.m., Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V, and Alexis Sutter (collectively, the "Plaintiffs" or "Settlement Class Representatives"), on behalf of the proposed Settlement Class (defined below), will and hereby do move (the "Motion"), before the Honorable Edward M. Chen and pursuant to Federal Rule of Civil Procedure 23, for entry of an Order ("Preliminary Approval Order") that: (1) preliminarily approves the proposed settlement set forth in the Stipulation of Settlement dated August 13, 2025 ("Stipulation" or "Stip.") between Plaintiffs and Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser" or "Defendant" and, together with Plaintiffs, the "Parties");[1] (2) preliminarily certifies the proposed Settlement Class; (3) approves the proposed plan for providing notice of the Settlement to the Settlement Class ("Notice Plan") as set forth in the Stipulation and proposed Preliminary Approval Order, including the retention of Strategic Claims Services, Inc. ("SCS") as the Settlement Administrator; and (4) sets a final approval hearing on a date convenient for the Court no sooner than 100 calendar days after the entry of an order preliminarily approving the Settlement, as well as the schedule for various deadlines in connection with the Settlement. The Parties' agreed-to proposed Preliminary Approval Order is attached as Exhibit A to the Stipulation.

The Motion is based on this Notice of Motion, the incorporated Memorandum of Points and Authorities, the supporting Declarations of Melissa L. Yeates ("Yeates Declaration"), on behalf of Class Counsel, Paul Mulholland, on behalf of SCS ("Mulholland Declaration"), and the eight Plaintiffs (collectively, "Plaintiffs' Declarations"), and all supporting papers, as well as the record in this litigation, and any other matters the Court may consider. Plaintiffs respectfully submit that the proposed Settlement memorialized in the Stipulation is fair, reasonable, and adequate, and should be preliminarily approved so that notice of the Settlement can be provided to the Settlement Class and the Fairness Hearing scheduled.

---

[1] The Stipulation and its exhibits are attached to the accompanying Yeates Declaration. Capitalized terms not defined herein shall have the same meanings as in the Stipulation.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................... 1

II.    RELEVANT BACKGROUND ............................................................................... 2

III.   TERMS OF THE PROPOSED SETTLEMENT ................................................... 5

     A.    Settlement Class Definition ....................................................................... 6

     B.    Released Claims ......................................................................................... 7

     C.    Settlement Benefits.................................................................................... 7

     D.    Dissemination of Notice to The Settlement Class .................................... 8

     E.    Opportunity to Opt-Out and Object.......................................................... 9

     F.    Absence of Collusion ................................................................................ 9

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL ......................... 10

     A.    Standards Governing Approval of Class Action Settlements................... 10

     B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement
          Under Rule 23(e)(2) ................................................................................. 11

          1.    The Settlement Terms Are Adequate ........................................... 11

          2.    Procedural Aspects of the Settlement Satisfy Rule 23(e)(2) ........ 16

V.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE................. 17

VI.   THE COURT SHOULD APPROVE NOTICE TO SETTLEMENT CLASS ..................... 18

     A.    Proposed Forms of Notice and Notice Plan ............................................. 18

     B.    Retention of Settlement Administrator and Estimated Administrative Costs .......... 19

VII.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................... 20

     A.    The Settlement Class Satisfies the Rule 23(a) Prerequisites ................... 20

          1.    The Settlement Class is Sufficiently Numerous ........................... 20

          2.    There Are Common Questions of Law and Fact........................... 21

          3.    Plaintiffs' Claims are Typical of Settlement Class Members' Claims.......... 21

          4.    Plaintiffs and Class Counsel Have—and Will Continue to—Fairly
              and Adequately Protect the Interests of the Settlement Class ....... 22

     B.    The Settlement Class Satisfies Rule 23(b)(3)........................................... 23

1     1.  Common Issues of Law and Fact Predominate ............................... 23

2     2.  Class Treatment is Superior........................................................... 25

3  VIII. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ............................... 25

4  IX.  CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re 23andMe, Inc. Customer Data Sec. Breach Litig.*,
   2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ............................................................ 7

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
   2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) .......................................................... 24

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ................................................................................. 10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................. 25

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................ 13

*Beaver v. Tarsadia Hotels*,
   2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ........................................................ 14

*Betorina v. Randstad US, L.P.*,
   2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ........................................................... 17

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ................................................................................... 9

*Brown v. Wal-Mart Store, Inc.*,
   No. 09-cv-03339 (N.D. Cal. Mar. 28, 2019) ........................................................... 14

*Browning v. Yahoo! Inc.*,
   2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ........................................................ 13

*Chavez v. PVH Corp.*,
   2015 WL 12915109 (N.D. Cal. Aug. 6, 2015) ........................................................ 17

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................... 18

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................... 10, 17

*Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................ 11

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................................. 16, 21

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
    2025 WL 457896 (S.D. Fla. Feb. 11, 2025) .............................................................. 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................... 23, 25

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ................................................................................ 15

*Hashemi v. Bosley, Inc.*,
    2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ...................................................... 13

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .............................................. 10, 16

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) .............................................................................. 7

*Jabbari v. Farmer*,
    965 F.3d 1001 (9th Cir. 2020) ............................................................................ 21

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
    609 F. Supp. 3d 942 (N.D. Cal. 2022) ................................................................. 24

*Lagunas v. Young Adult Inst., Inc.*,
    2024 WL 1025121 (N.D. Cal. Mar. 8, 2024) ...................................................... 20

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) ...................................................... 11

*Manier v. Sims Metal Mgmt.-Nw.*,
    2021 WL 6199657 (N.D. Cal. Sept. 2, 2021) ...................................................... 11

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .............................................................................. 21

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ........................................................................ 21

*In re Netflix Priv. Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .............................................. 12, 17

*Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ...................................................... 17

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ...................................................................... 14, 19

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) .............................................................................. 22

*Perez v. Rash Curtis & Assocs.*,
  2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ............................................................... 14

*Phillips Petroleum Co v. Shutts*,
  472 U.S. 797 (1985) ................................................................................................... 25

*Popa v. PSP Grp.*,
  No. 24-14 (9th Cir. Mar. 15, 2024) ............................................................................ 13

*Rael v. Child.'s Place, Inc.*,
  2020 WL 434482 (S.D. Cal. Jan. 28, 2020) ............................................................... 10

*Reynolds v. Direct Flow Med., Inc.*,
  2019 WL 1084179 (N.D. Cal. Mar. 7, 2019) .............................................................. 11

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................... 15, 16

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ............................................................................... 20

*Stewart v. Applied Materials, Inc.*,
  2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ........................................................... 17

*Stollenwerk v. Tri-West Healthcare All.*,
  No. 03-cv-0185 (D. Ariz. June 10, 2008) .................................................................. 12

*In re TD Ameritrade Acct. Holder Litig.*,
  2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ........................................................... 12

*Trosper v. Styker Corp.*,
  2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ........................................................... 23

*True v. Am. Honda Motor Co.*,
  749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..................................................................... 14

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................................... 23

*Valliere v. Tesoro Ref. & Mktg. Co.*,
  2020 WL 13505042 (N.D. Cal. June 26, 2020) .......................................................... 22

*In re Volkswagen "Clean Diesel" Mktg. Sales Pracs. & Prod. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ..................................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................... 21

*Wren v. RGIS Inventory Specialists*,
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................................................. 15

*In re Yahoo Mail Litig.,*
    308 F.R.D. 577 (N.D. Cal. 2015) ........................................................................... 22

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
    2020 WL 4212811 (N.D. Cal. July 22, 2020) .................................................. 21, 22

**Federal Statutes**

28 U.S.C § 1715(b)............................................................................................................ 9

**Rules**

Fed. R. Civ. P. 23. ...................................................................................................... *passim*

**Other Authorities**

7AA Charles Alan Wright & Arthur R. Miller,
    Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.) ............................................................ 12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs, on behalf of the proposed Settlement Class, respectfully submit this Memorandum of Points and Authorities in support of their unopposed Motion for preliminary approval of the Settlement and request that the Court enter the proposed Preliminary Approval Order that will: (1) preliminarily approve the Settlement between the Parties; (2) preliminarily certify the proposed Settlement Class; (3) approve the proposed Notice Plan; and (4) set a date for the Fairness Hearing.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.    Whether the Court will likely be able to approve the proposed Settlement under Fed. R. Civ. P. 23(e)(2) so that notice of the Settlement's terms and conditions and the date of the Fairness Hearing may be provided to members of the Settlement Class;

2.    Whether the Court will likely be able to certify this Action as a class action for purposes of settlement;

3.    Whether the Court should approve the proposed Notice Plan, including the retention of SCS as the Settlement Administrator;

4.    Whether the Court should preliminarily approve the proposed method for allocating the Net Settlement Fund to eligible Settlement Class Members; and

5.    Whether the Court should schedule the Fairness Hearing to consider final approval of the proposed Settlement, the proposed Plan of Allocation of the Net Settlement Fund, and approval of Class Counsel's request for attorneys' fees, expenses, and Service Awards to Plaintiffs.

## I.    INTRODUCTION

The proposed $46 million Settlement, which may be increased to $47.5 million if certain conditions are met, will resolve the Action which asserts violations of various common and statutory laws of the United States, California, the District of Columbia, Georgia, Maryland, Oregon, Virginia, and Washington against Defendant and certain related entities. Plaintiffs, on behalf of themselves and similarly situated Kaiser Permanente members, allege that when they used Defendant's websites and mobile applications for their health-care related activities, third party code embedded by Defendant disclosed their confidential personal information to third parties, such as Quantum Metric, Twitter, Adobe, Microsoft Bing, and Google (collectively, "Third Party Wiretappers"). Plaintiffs further

allege that the third party code was installed throughout Defendant's websites and mobile applications, including within the patient portal, and that this code transmitted and redirected the content of Settlement Class Members' personal health information ("PHI"), along with their IP addresses and other unique identifiers, as they navigated through the websites/mobile applications.

Plaintiffs and their counsel Kessler Topaz Meltzer & Check, LLP ("KTMC") and Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella Byrne" and together with KTMC, "Class Counsel") vigorously pursued relief on behalf of the Settlement Class against Defendant's challenges. The Parties agreed to the Settlement only after two years of extensive litigation and motion practice, including, *inter alia*, a motion for preliminary injunction and three rounds of motion to dismiss briefing; extensive discovery, including Kaiser's production of nearly 40,000 documents, Plaintiffs' service and negotiation of subpoenas on nine third parties, multiple days of in-person review of designated source-code material by experts, and six in-person discovery conferences before Magistrate Judge Peter H. Kang[2] addressing an array of pressing discovery disputes; and protracted settlement negotiations, including mediations before two separate, highly experienced and respected retired federal judges now serving as JAMS mediators. Resolving the Action now allows the Parties to avoid continued and costly litigation that not only would deplete resources available for a potential resolution of the Action but could result in a recovery less than the Settlement Amount, or no recovery at all. In light of the substantial relief provided by the Settlement and the risks of continued litigation, the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

As set forth below, all prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied. Plaintiffs respectfully submit that the Motion should be granted and notice of the Settlement and Fairness Hearing provided to the Settlement Class.

## II.     RELEVANT BACKGROUND[3]

Plaintiffs—members of Kaiser's health plans, used Kaiser's websites/mobile applications for

---

[2] The Discovery Management Conferences were held on July 19, 2024 (ECF No. 213), October 18, 2024 (ECF No. 242), November 15, 2024 (ECF No. 263), December 17, 2025 (ECF No. 276), January 24, 2025 (ECF No. 296), and March 13, 2025 (ECF No. 322).

[3] Defendant Kaiser Foundation Health Plan, Inc. denies all of Plaintiffs' claims, but has agreed to the Settlement to resolve the class action case to end the burden, expense, and uncertainty of further litigation. The Settlement is not an admission by Defendant.

various healthcare-related functions. *See* Consolidated Master Class Action Complaint ("CMCAC"), ECF No. 271 at ¶¶ 1-2, 24-69. Despite Plaintiffs' reasonable expectation that their interactions and communications through the websites and mobile applications would not be shared, Plaintiffs allege that Kaiser disclosed sensitive personal and confidential patient information and communications to a number of third parties—unbeknownst to Plaintiffs and other Kaiser Permanente members. *Id.* at ¶¶ 3, 23.

Specifically, Plaintiffs allege that Kaiser installed third party code that allowed Third Party Wiretappers to intercept the content of patients' communications with Kaiser in real time as users "access[ed] specific medical information, click[ed] buttons that divulge sensitive and protected patient status, and personal and health information, and enter[ed] information into various fields on Kaiser's [websites] or [mobile applications]." *Id.* ¶ 6. These communications included medical histories, prescriptions and test results, appointment schedules, online medical evaluations, symptoms searches, messages to insurance providers, healthcare-related bills and payments, and information associated with other tasks performed while on the websites and mobile applications. *Id.* And, although Kaiser knew that the third party code would disclose and permit Third Party Wiretappers to intercept and collect the information of its users, it still embedded the code on its websites and mobile applications. *Id.* ¶ 7. Eventually, as noted below, after Plaintiffs moved for a preliminary injunction and succeeded in having Kaiser voluntarily remove the offending code from its websites, Kaiser confirmed a data breach to state and federal regulators on April 12, 2024—just one day after the Court denied in part Kaiser's motion to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC").

Plaintiffs filed their initial complaint in the Action on June 9, 2023 (*see* ECF No. 1), followed by their FAC on September 15, 2023(*see* ECF No. 44).[4] On October 4, 2023, Plaintiffs filed a Motion for a Preliminary Injunction, requesting Kaiser's removal of the offending code from its websites and mobile applications. ECF No. 58. In response to Plaintiffs' motion, defendants confirmed that, by November 13, 2023, Kaiser had removed the trackers at the heart of Plaintiffs' claims and implemented banners to provide more fulsome disclosure of Kaiser's privacy policy. Accordingly,

---

[4] These complaints included defendants: Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc.

1    Plaintiffs withdrew their motion. *See* ECF Nos. 95, 101. On November 14, 2023, defendants filed a

2    Motion to Compel Arbitration of Plaintiff John Doe's claims and a Motion to Dismiss the FAC. ECF

3    Nos. 82, 88. Plaintiffs opposed these motions on January 15, 2024. ECF Nos. 108, 109. On April 11,

4    2024, the Court denied and granted in part defendants' Motion to Dismiss the FAC. ECF No. 124.

5    On April 12, 2024, Kaiser began notifying regulators of the privacy breach. ECF No. 127.

6        On May 9, 2024, Plaintiffs filed their Second Amended Class Action Complaint ("SAC").

7    ECF No. 131. On July 3, 2024, defendants filed a Motion to Compel Arbitration and a Motion to

8    Dismiss the SAC. ECF Nos. 195, 205. Plaintiffs opposed these motions on August 22, 2024. ECF

9    Nos. 223, 226. Defendants' motions, however, were effectively set aside following the consolidation

10   of two related cases with the Action.[5] *See* ECF No. 233. Additionally, KTMC and Carella Byrne

11   moved for appointment as co-lead counsel pursuant to Federal Rule of Civil Procedure 23(g) on June

12   7, 2024. ECF No. 167. Noting counsel's agreement with respect to the related cases and in

13   consideration of their efforts in litigating the Action, the Court appointed KTMC and Carella Byrne

14   as Interim Co-Lead Class Counsel on August 27, 2024. *See* ECF No. 233.

15       On December 6, 2024, Plaintiffs filed the operative CMCAC. ECF No. 271. The CMCAC

16   asserted that Kaiser's disclosure of Kaiser Permanente members' protected information and

17   communications violated their privacy and rights under the Electronic Communications Privacy Act,

18   18 U.S.C. § 2510, HIPAA, and various state statutes. CMCAC ¶ 23. More specifically, Plaintiffs

19   asserted claims under federal and state data privacy statutes, state consumer protection statutes, state

20   data breach statutes, and the common law among others, repleading several claims that had previously

21   been dismissed. On January 28, 2025, defendants filed their third Motion to Compel Arbitration and

22   Request to Stay and Motion to Dismiss the CMCAC. ECF Nos. 300-01, 303-04. Plaintiffs opposed

23   these motions on March 4, 2025. ECF Nos. 313-15. On April 13, 2025, the Court granted defendants'

24   Motion to Compel Arbitration and Request to Stay. ECF No. 335. Oral argument on the Motion to

25   Dismiss was taken off calendar following the Parties' settlement. ECF No. 343.

26       Throughout the Action, the Parties engaged in substantial discovery efforts, including in-

27

28   ---
     [5] *See Sutter v. Kaiser Found. Health Plan, Inc.*, No. 3:24-cv-03352-JCS (N.D. Cal. June 4, 2024); *Newton v. Kaiser Found. Health Plan, Inc.*, No. 24-cv-073453 (Cal. Super. Ct. Apr. 29, 2024).

person attendance at six discovery management conferences, which involved extensive pre-conference negotiations and briefing. The Parties served written discovery requests that were followed by numerous meet-and-confers regarding the scope of the requests, such as privilege log entries. The Parties also engaged in multiple days of in-person, expert-led review of discovery designated as highly confidential source-code by defendants. The Parties brought several unresolved discovery disputes before Magistrate Judge Kang, which involved substantial letter briefing regarding various factual and legal aspects of this case, as well as in-person oral argument regarding the same, which deepened the Parties' understanding of important factual and legal issues at play in this litigation. The Parties also engaged in discovery with respect to the Third Party Wiretappers which was highly contested. In addition, the Parties exchanged expert reports in connection with Plaintiffs' Motion for Preliminary Injunction, and participated in extensive negotiations over ESI keywords and custodians spanning two discovery phases.

In an initial attempt to resolve the Action, the Parties met with retired U.S. District Judge for the Northern District of Illinois, Hon. Wayne R. Andersen in October 2024. The Parties did not reach agreement. Roughly seven months later, on May 13, 2025, the Parties met with retired U.S. Magistrate Judge for the Central District of California, Hon. Jay C. Gandhi in another attempt to resolve the Action. Both before and during the mediation, the Parties exchanged information about the size of the class, the relief to which class members may be entitled if Plaintiffs prevailed at trial or on appeal, the benefits to be provided if a settlement was reached, and the Parties' positions on the merits. The Parties reached an agreement in principle to resolve the Action at the mediation. On May 14, 2025, the Parties filed a joint notice of preliminary settlement with the Court. ECF No. 342.

## III.     TERMS OF THE PROPOSED SETTLEMENT

The Settlement provides that, in exchange for the dismissal of the Action and a release of claims, Defendant will pay $46 million—which amount may increase to $47.5 million if certain conditions are met—into the Qualified Settlement Fund. Stip., ¶¶ 1,17, 2.11. The Settlement Amount, plus interest—after deduction of notice and administrative costs, any taxes, Court-awarded fees, expenses and service awards, and any other fees and costs approved by the Court—will be distributed among Settlement Class Members on a *pro rata* basis in accordance with the proposed Plan of

Allocation (Ex. G to Stip.), or other allocation method approved by the Court. Stip., ¶ 2.12.

### A.    Settlement Class Definition

As set forth in § VII below, the Parties have agreed to certification of the following "Settlement Class" for purposes of effectuating the Settlement:

Any and all Kaiser members[6] in the Kaiser Operating States[7], including those members who have not completed a Perfected Arbitration Claim as defined in Paragraph 1.11 of the Stipulation, who accessed the authenticated pages of the Kaiser Permanente websites or mobile applications listed below from November 2017 to May 2024:

| Websites | |
|---|---|
| | https://wa-member.kaiserpermanente.org |
| | https://healthy.kaiserpermanente.org |
| | https://mydoctor.kaiserpermanente.org |
| Mobile Applications | |
| | Kaiser Permanente Washington App |
| | Kaiser Permanente App |
| | My Doctor Online (NCAL Only) App |
| | My KP Meds App |
| | KP Health Ally App |

Expressly excluded from the Settlement Class are: (1) the Judges presiding over the Action, Class Counsel, Sutter Counsel, and immediate members of their families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents, have a controlling interest, and their current or former officers and directors; (3) Persons who properly execute and submit a request for exclusion prior to the Opt-Out Deadline; (4) the successors or assigns of any such excluded Persons; and (5) Kaiser Permanente members with a Perfected Arbitration Claim.

Stip., ¶¶ 1.18, 1.19. The Settlement Class is similar to the class pled in the operative CMCAC, except that it excludes Kaiser Permanente members who have a Perfected Arbitration Claim. *See* N.D. Cal. *Procedural Guidance for Class Action Settlements* ("N.D. Cal. Guid.") ¶ 1(a); *see also* Appendix A hereto (chart setting forth the N.D. Cal. procedural guidance requirements, along with where the information addressing the requirements can be found in Plaintiffs' preliminary approval papers). The Parties have defined the Settlement Class to include all Kaiser Permanente members except those with a Perfected Arbitration Claim, recognizing that certain Kaiser Permanente members have

---

[6] "Kaiser members" (also referred to in the Stipulation as "Kaiser Permanente members") means current and former enrollees of the Kaiser Foundation Health Plan or any of its affiliates. CMCAC ¶ 72.

[7] "Kaiser Operating States" (also referred to in the Stipulation as "Kaiser Permanente Operating States") means California, Colorado, Georgia, Hawaii, Maryland, Oregon, Virginia, Washington, and the District of Columbia. CMCAC ¶ 72.

1
2
affirmatively chosen to proceed through arbitration and not to litigate. *See In re 23andMe, Inc. Customer Data Security Breach Litig.*, 2024 WL 4982986 at *11 (N.D. Cal. Dec. 4, 2024).

3
### B.    Released Claims

4
5
6
7
8
9
10
11
12
13
14
15
If the Settlement is approved, the Settlement Class will release Defendant and the other Released Parties from all Released Claims, which include "any and all claims, causes of action, suits, . . . [that] have been pled in the Action or that could have been pled in the Action, that arise out of or relate to the causes of actions, allegations, practices, or conduct at issue in the [CMCAC]." Stip. ¶ 1.14. The release is reasonably limited to claims that relate to the same facts plead in the CMCAC and are anchored to the same alleged conduct by defendants. *See* N.D. Cal. Guid. ¶ 1(b) (requiring explanation of differences between claims to be released and claims of the operative complaint).[8] Accordingly, the scope of the release fits squarely within the parameters established by this Circuit. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (settlement may preclude person from bringing related claim in the future "'even though the claim was not presented and might not have been presentable in the action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action'") (citations omitted).

16
### C.    Settlement Benefits

17
#### 1.    Settlement Relief

18
19
20
21
22
The Settlement provides a monetary benefit in the form of a $46 million common fund, which could increase to $47.5 million, to be funded by Defendant and used to pay: (1) Settlement Class Member payments; (2) administrative costs and fees of the Settlement Administrator; (3) Court-awarded attorneys' fees and expenses to Class Counsel; and (4) Court-awarded Service Awards to Plaintiffs. The Settlement Amount represents a significant payment by Defendant and is in line with

23

24
25
26
27
28
---
[8] As noted above in footnote 5, two related cases were filed in California federal and state courts and consolidated with the Action. Class Counsel are also aware of five other cases filed in California state court involving similar issues: *Guevara v. Kaiser Foundation Health Plan, Inc.* (No. 25CV121881, Alameda Sup. Ct.); *Johnson v. Kaiser Foundation Health Plan, Inc.* (No. 25CV115293, Alameda Sup. Ct.); *Colbert v. Kaiser Foundation Health Plan, Inc.* (No. 25CV117332, Alameda Sup. Ct.); *Cipressi v. Kaiser Foundation Health Plan, Inc.* (No. 25CV113042, Alameda Sup. Ct.); and *Beaudreau v. Kaiser Foundation Health Plan, Inc.* (No. 25CV116459, Alameda Sup. Ct.). Class Counsel are not aware of any other state or federal cases that would be affected by the Settlement, including by the release of the Released Claims. *See* N.D. Cal. Guid. ¶ 1(d).

1   recoveries obtained in similar cases where the law regarding recoverable losses continues to evolve.

2   *See infra* § IV.B. Moreover, the Settlement is non-reversionary, i.e., if approved, Defendant will have

3   no right to the return of any portion of the Settlement Amount (or interest earned while in escrow).

4   *See* Stip., ¶ 2.24 & Plan of Allocation; N.D. Cal. Guid. ¶ 1(g) (requiring disclosure of any reversions).

5                              2.    Payment of Service Awards

6          At the final approval stage, Class Counsel will seek the Court's approval of Service Awards

7   for the eight Plaintiffs in an amount of up to $5,000 each. Stip. ¶ 2.13. The Service Awards, if

8   approved, will be paid from the Settlement Amount. *Id*. Plaintiffs have actively participated in the

9   litigation and assisted Class Counsel in drafting the complaints and other documents, consulted with

10  Class Counsel as needed, worked with experts, answered discovery-related requests for information,

11  including gathering sensitive information from third parties, and participated in settlement and

12  strategy discussions. *See generally* Plaintiffs' Declarations filed herewith. Consistent with awards

13  regularly granted under similar circumstances, Plaintiffs believe they should be compensated for their

14  efforts in the Action and for their assistance in achieving a strong Settlement for the Settlement Class,

15  as well as the reputational and other risks they undertook in bringing this Action. *See id*.

16                             3.    Payment of Attorneys' Fees and Expenses

17         Also at the final approval stage, Class Counsel will seek an award of attorneys' fees in an

18  amount not to exceed 33% of the Settlement Fund, plus reimbursement of all reasonable and

19  necessary expenses advanced by counsel and carried for the duration of the litigation, subject to Court

20  approval. Class Counsel prosecuted this Action on a contingent basis with the risk of no recovery if

21  they were not successful in obtaining a recovery for the Settlement Class. Class Counsel estimate that

22  a 33% award will result in a multiplier of less than 1.4 based upon the time Class Counsel devoted to

23  this matter. Counsel's fees and expenses, along with the administrative costs and fees of the

24  Settlement Administrator, will be paid from the Settlement Fund.

25         **D.    Dissemination of Notice to The Settlement Class**

26         Within fifteen days after entry of the Preliminary Approval Order, and subject to Court

27  approval as provided in 45 C.F.R. § 164.512(e)(i), Kaiser will provide the Settlement Administrator

28  with the mailing addresses and emails for the individuals who will receive notice of the Settlement.

Stip. ¶ 2.3. Within thirty days of the provision of the May 2024 Notice List to the Settlement Administrator, Class Counsel will direct the Settlement Administrator to disseminate the Short Form Notice to Settlement Class Members by email (and by first-class U.S. mail to those Settlement Class Members whose emails are not known). *See* Stip. ¶ 2.4; Mulholland Decl. ¶ 13.[9] The Long Form Notice, along with other important information regarding the Settlement, will be posted to the dedicated Settlement Website identified in the Short Form Notice.

### E.    Opportunity to Opt-Out and Object

Settlement Class Members are permitted to object to any aspect of the Settlement. Stip. ¶ 3.8. Any Settlement Class Member who wishes to object to the Settlement (or any aspect thereof) should send their written objection to the Court in accordance with the instructions set forth in the Long Form Notice. N.D. Cal. Guid. 5. Likewise, Settlement Class Members who do not want to remain a member of the Settlement Class may request exclusion from the Settlement Class in accordance with the instructions set forth in the Long Form Notice. Stip. ¶ 2.6; N.D. Cal. Guid. 4. Settlement Class Members who request exclusion from the Settlement Class will not be bound by any judgments or orders of the Court and will not be eligible to receive a Settlement payment.

### F.    Absence of Collusion

None of the Ninth Circuit's indicia of collusion are present here. *See Briseño v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021). Signs of collusion include: "(1) 'when counsel receive[s] a disproportionate distribution of the settlement;' (2) 'when parties negotiate a "clear sailing arrangement,"' under which defendant agrees not to challenge a request for an agreed-upon attorneys' fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Id*. at 1023 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). Class Counsel submit that their 33% fee request is well-merited. Class Counsel vigorously prosecuted the Settlement Classes' claims for two years, expending hundreds of thousands of dollars on litigation costs with no guarantee of recovering any

---

[9] The Action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that defendant serve notice containing certain required information upon appropriate state and federal officials. 28 U.S.C § 1715(b). Stip. ¶ 2.29; N.D. Cal. Guid. ¶ 10.

1   of these costs, and obtained a recovery of up to $47.5 million for the Settlement Class. Moreover,

2   there is no clear sailing agreement, and under the terms of the Stipulation, Defendant has no right to

3   the return of any part of the Settlement Amount if the Settlement becomes final.

4   **IV.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

5          **A.      Standards Governing Approval of Class Action Settlements**

6          The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of litigation.

7   *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015); *Class Plaintiffs v. City of Seattle*,

8   955 F.2d 1268, 1276 (9th Cir. 1992). This "strong judicial policy" is particularly applicable "where

9   complex class action litigation is concerned." *Allen*, 787 F.3d at 1223; *see also Rael v. Child.'s Place,*

10  *Inc.*, 2020 WL 434482, at *10 (S.D. Cal. Jan. 28, 2020) (noting "'overriding public interest in settling

11  and quieting litigation', particularly where resource-intensive class actions are concerned").

12         Rule 23 requires courts to employ a two-step process in evaluating a class action settlement.

13  First, the court performs a preliminary review of the terms of the proposed settlement to determine

14  whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second,

15  after notice to the class and a hearing, the Court determines whether to grant final approval of the

16  settlement. *See* Fed. R. Civ. P. 23(e)(2); *see also, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL

17  4207245, at *8 (N.D. Cal. Sept. 4, 2018).

18         At the first stage of the approval process, a court should grant preliminary approval and

19  authorize notice of a settlement to the class upon a finding that it "*will likely be able to*" (i) finally

20  approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2), and (ii) certify the class

21  for purposes of settlement. Fed. R. Civ. P. 23(e)(1)(B) (emphasis added). In considering whether final

22  approval of a proposed settlement is likely, Rule 23(e)(2) provides that courts consider whether:

23         (A) the class representatives and class counsel have adequately represented the class;
24         (B) the proposal was negotiated at arm's length; (C) the relief provided for the class
           is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii)
25         the effectiveness of any proposed method of distributing relief to the class, including
           the method of processing class-member claims; (iii) the terms of any proposed award
26         of attorney's fees, including timing of payment; and (iv) any agreement required to be
           identified under Rule 23(e)(3); and (D) the proposal treats class members equitably
27         relative to each other.

28

Fed. R. Civ. P. 23(e)(2).[10] As discussed below, each of the Rule 23(e)(2) factors supports approval of the Settlement. Accordingly, preliminary approval is appropriate here.

**B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.    The Settlement Terms Are Adequate**

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here the Settlement represents a favorable result for the Settlement Class. Furthermore, Class Counsel have proposed a method for allocating the net Settlement proceeds that ensures all Settlement Class members will be treated equitably.

**(a)    The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation**

At the preliminary approval stage, the Court need only determine whether it "will likely be able to" approve the Settlement (*see* Fed. R. Civ. 23(e)(1)(B)), or, in other words, whether the Settlement "falls within the range of possible approval." *Reynolds v. Direct Flow Med., Inc.*, 2019 WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019). Because the Settlement represents a favorable recovery for the Settlement Class in light of the significant risks of continued litigation, the Settlement is well within the range of possible approval. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm.'s Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

In ultimately determining whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2), the Court must balance the risks of continued litigation, including the strengths and weaknesses of Plaintiffs' case, against the benefits afforded to Settlement Class Members, including the immediacy and certainty of recovery. *See Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014). Here, although Plaintiffs and Class Counsel believe the Settlement Class's

---

[10] "These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e), which were not intended to 'displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Manier v. Sims Metal Mgmt.-Nw.*, 2021 WL 6199657, at *2 n.1 (N.D. Cal. Sept. 2, 2021) (quoting *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment)).

claims are meritorious and Plaintiffs would have prevailed had the Action continued, defendants raised various factual and legal defenses to Plaintiffs' claims.

For example, Plaintiffs' claims, which allege that Defendants improperly shared Plaintiffs' confidential information with third parties, are brought under federal law, as well as various state statutory laws concerning privacy, common law, and state constitutional law. Throughout the Action, defendants asserted significant legal arguments challenging Plaintiffs' claims under these statutes. *See* ECF Nos. 205, 223, 303, 334. Accordingly, choice of law issues could have presented a potential hurdle for some of Plaintiffs' nationwide claims. *See* 7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.) (noting that class actions requiring application of multiple state laws can implicate Rule 23(b)(3)'s requirements of predominance and superiority).

Similarly, for other claims, defendants would argue that individualized issues predominate. For example, defendants repeatedly sought to compel members to arbitration, relief which the Court granted (ECF Nos. 119, 335), posing a considerable risk for certain Settlement Class Members. Further, even if Plaintiffs successfully certified one or more litigation classes, there was a risk of decertification. *See In re Netflix Priv. Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time, is one that weighs in favor of settlement.") (citation omitted). Despite Plaintiffs' confidence in their ability to achieve class certification in this case, courts have recognized the significant risks that data breach cases face at this stage. *See In re TD Ameritrade Acct. Holder Litig.*, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011) ("[D]efendants in data breach cases have been successful in thwarting plaintiffs' efforts to obtain class certification.") (citing *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify class of banks alleging damages resulting from retailer's data breach because of individual causation issues)); Order at 5-6, *Stollenwerk v. Tri-West Healthcare All.*, No. 03-cv-0185 (D. Ariz. June 10, 2008), ECF No. 139 (finding individualized issues relating to proof of causation predominate over common questions involving theft of computer equipment containing personal information); *see also In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2025 WL 457896, at *9 (S.D. Fla. Feb. 11, 2025) ("[D]ata breach class actions are risky cases.") (citations

1    omitted).[11] Against this backdrop of substantial risks, the Settlement provides a significant recovery.

2    In the FAC, Plaintiffs asserted claims under the Electronic Communications Privacy Act, California

3    Invasion of Privacy Act, and California Confidentiality of Medical Information Act, which provide

4    for statutory damages; however, this Court dismissed these claims. ECF No. 124. Plaintiffs re-pled

5    these claims in the CMCAC, but the risk of dismissal remained.

6         Plaintiffs assert that there is a relatively wide range of possible recoveries if Plaintiffs' claims

7    were successful at trial, ranging from a significant fraction of the Settlement Amount at the low end

8    if only nominal damages were awarded to multiples of the Settlement Amount at the high end if the

9    Court were to find that Plaintiffs had successfully re-pled claims providing for statutory damages.

10    *See* N.D. Cal. Guide. ¶ 1(c). It is highly unlikely that Plaintiffs would be able to obtain the full amount

11    of damages. Plaintiffs and Class Counsel submit that the recovery obtained for the Settlement Class

12    is particularly favorable in light of, and takes into consideration, the significant challenges Plaintiffs

13    would face if the Action continued. Indeed, the Ninth Circuit is currently considering an appeal of a

14    case where the district court dismissed claims involving the interception and disclosure of electronic

15    communications for lack of Article III standing. *See* Appellant's Opening Br. at 4, *Popa v. PSP Grp.*,

16    No. 24-14 (9th Cir. Mar. 15, 2024). The Settlement is also in line with recoveries obtained in cases

17    involving similar claims, as shown in the chart attached as Exhibit 1 hereto. *See* N.D. Cal. Guid. ¶ 11

18    (requiring identification of comparable settlements).

19              **(b)    The Settlement Does Not Favor Any Settlement Class Member**

20         A court may approve a settlement only after considering whether "the proposal treats class

21    members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Courts generally are wary of

22

23    _____

24    [11] Because privacy breach case law is still relatively undeveloped, privacy breach cases are among
the more risky and uncertain areas of class action litigation. *See In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299, 317 (N.D. Cal. 2018) ("Data-breach litigation is in its infancy with threshold issues
still playing out in the courts."). For example, "damages methodologies in data breach cases are
largely untested and have yet to be presented to a jury." *Hashemi v. Bosley, Inc.*, 2022 WL 2155117,
25    at *7 (C.D. Cal. Feb. 22, 2022). As the *Hashemi* court noted, "it is difficult to estimate Plaintiffs'
expected recovery . . . given the relative dearth of precedent and exemplar cases that have proceeded
26    to trial." *Id.* Given these uncertainties, "[c]ourts have noted that legal uncertainty supports approval
of a settlement." *In re Anthem*, 327 F.R.D. at 317. *See Browning v. Yahoo! Inc.*, 2007 WL 4105971,
27    at *10 (N.D. Cal. Nov. 16, 2007) (noting "legal uncertainties at the time of settlement—particularly
those which go to fundamental legal issues—favor approval.").

28

1   settlement agreements where some class members are treated differently than others." *True v. Am.*

2   *Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010). Here, too, the Court can readily find

3   that the Settlement will likely earn approval. It does not improperly grant preferential treatment to

4   Plaintiffs or any segment of the Settlement Class, and all payments to eligible Settlement Class

5   Members will be calculated in the same manner *pro rata*. As set forth in the Plan of Allocation, each

6   eligible Settlement Class Member will receive the same amount from the Net Settlement Fund. At

7   the final approval stage, Plaintiffs will ask the Court to approve the Plan of Allocation. *See infra* § V.

8              **(c)    The Anticipated Requests for Attorneys' Fees, Litigation
9                      Expenses, and Service Awards**

10          The notices advise that Class Counsel will apply for attorneys' fees not to exceed 33% of the

11  Settlement Fund, subject to Court approval. For the reasons to be fully set out in Class Counsel's fee

12  application, an upward adjustment to the Ninth Circuit's 25% benchmark fee award is warranted here

13  in light of Class Counsel's efforts in this Action—without reimbursement of any time/expenses to

14  date—and the outstanding result obtained, including not just monetary recovery but also having

15  Kaiser remove the offending code from its websites and change its privacy notification practices. *See*

16  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (in awarding more

17  than 25% fee, courts consider "the extent to which class counsel 'achieved exceptional results for the

18  class,' whether the case was risky for class counsel, whether counsel's performance 'generated

19  benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some

20  circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration,

21  foregoing other work), and whether the case was handled on a contingency basis").

22          Moreover, Class Counsel have devoted approximately 18,500 hours to this Action, with a

23  total lodestar of approximately $11.7 million, and anticipate that the lodestar multiplier will be less

24  than 1.4. *See, e.g.*, Order at 4-5, *Brown v. Wal-Mart Store, Inc.*, No. 09-cv-03339 (N.D. Cal. Mar. 28,

25  2019), ECF No. 302 (awarding 33% fee representing 2.2 multiplier for $65 million settlement); *Perez*

26  *v. Rash Curtis & Assocs.*, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021) (awarding 37% fee

27  representing 4.8 multiplier for $75.6 million settlement); *Beaver v. Tarsadia Hotels*, 2017 WL

28  4310707, at *13, 17 (S.D. Cal. Sept. 28, 2017) (awarding 33% fee representing 2.89 multiplier for

$51.2 million settlement); *see also* N.D. Cal. Guid. ¶ 6. The Court will have the opportunity to evaluate Class Counsel's fee request on a future motion, after the Settlement Class has had an opportunity to object.[12]

Class Counsel will also seek payment of litigation expenses in an amount not to exceed $900,000. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that 'would normally be charged to a fee paying client'"). Class Counsel's expenses also include significant amounts incurred in connection with the retention of Plaintiffs' experts and consultants, the costs for mediations, online research, data hosting, and travel expenses, including for monthly in-person status conferences.

Class Counsel's application for fees and expenses will also include a request for Service Awards to Plaintiffs in an amount up to $5,000 each as compensation for their involvement in this Action and service on behalf of the Settlement Class. *See* N.D. Cal. Guid. ¶ 7. As noted above, Plaintiffs have provided substantial assistance in the prosecution of this Action—i.e., responding to discovery requests, which among other things, required the collection of highly sensitive data from third parties. *See generally* Plaintiffs' Declarations filed herewith. *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011). In this Circuit, service awards for class representatives are "fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Importantly, if approved, the aggregate maximum requested Service Awards (i.e., $40,000) represents a mere 0.08% of the $47.5 million maximum Settlement Amount and will have a minimal impact on the amount of funds available to Settlement Class Members.

### (d)     Plaintiffs have Identified All Agreements Made in Connection with the Settlement

As part of the Settlement, the Parties have agreed to a confidential provision that gives Defendant the option to terminate the Settlement in the event that requests for exclusion exceed certain agreed-upon conditions. *See* Fed. R. Civ. P. 23(a)(3); Stip. ¶ 2.8. This type of agreement has no negative impact on the fairness of the Settlement and in this case, may result in a greater recovery

---

[12] Class Counsel will provide more detailed information and documentation in connection with their motion for fees, including the number of hours spent on various litigation activities, as well as the case law addressing fee awards in this jurisdiction.

for the Settlement Class—up to $47.5 million. *See Hefler*, 2018 WL 4207245, at *11 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### 2. Procedural Aspects of the Settlement Satisfy Rule 23(e)(2)

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The Settlement embodies a procedurally fair resolution under Rule 23(e)(2).

### (a) Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a settlement, courts consider whether class representatives and class counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To this end, courts consider (1) whether named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) if named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

As set forth above and in their Declarations, Plaintiffs devoted significant time to serving as representatives for the Settlement Class. Further, with Plaintiffs' assistance, Class Counsel vigorously litigated this Action for two years against Defendant and its highly proficient counsel at Sheppard, Mullin, Richter & Hampton LLP and Crowell & Moring LLP. At the time of settlement, Class Counsel had, *inter alia*, conducted significant investigation and discovery, engaged in substantial motion practice, and exchanged expert reports to support their respective positions. Class Counsel— firms with extensive experience litigating complex class actions—were well informed of the strengths and weaknesses of the claims and defenses in this Action and conducted the settlement negotiations seeking to achieve the best possible result for the Settlement Class.[13]

### (b) The Settlement Was Reached Through Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of Mediators

Courts also consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P.

---

[13] The Ninth Circuit recognizes that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (internal modifications omitted).

23(e)(2)(B). A presumption of fairness attaches where a settlement was reached after arm's-length negotiations between experienced counsel and with the assistance of a mediator. *See In re Netflix Priv. Litig.*, 2013 WL 1120801, at *4 ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel.").

Here, the Parties engaged in two mediation sessions. The first mediation before Hon. Wayne R. Andersen (Ret.) was held in October of 2024 over two-days. Following this mediation, litigation continued in earnest, and approximately seven months later, the second mediation before retired Hon. Jay C. Gandhi (Ret.) was held on May 13, 2025. This second mediation was hard fought and ultimately resulted in the resolution of the Action. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Betorina v. Randstad US, L.P.*, 2017 WL 1278758, at *7 (N.D. Cal. Apr. 6, 2017); *see also, e.g.*, *Chavez v. PVH Corp.*, 2015 WL 12915109, at *2 (N.D. Cal. Aug. 6, 2015).

Courts also give considerable weight to the opinion of experienced and informed counsel when deciding to approve a proposed class action settlement. *See Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). Here, in recommending Plaintiffs' acceptance of the Settlement, Class Counsel were informed by a thorough understanding of the merits and risks of the Action to support their conclusion that the guaranteed $46 million recovery (with the possibility of up to $47.5 million) is a fair and reasonable result for the Settlement Class.

## V.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

In considering the Settlement, the Court must also determine whether the proposed plan for allocating the net Settlement proceeds is fair and reasonable to the Settlement Class. A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See, e.g.*, *Class Plaintiffs*, 955 F.2d at 1284-85. Moreover, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). Here, the Plan

1    of Allocation is fair, reasonable, and adequate; each Settlement Class Member will receive his or her

2    *pro rata* share of the Net Settlement Fund, where the *pro rata* share will be calculated by dividing

3    the Net Settlement Fund by the total number of valid Claims. *See* N.D. Cal. Guid. ¶ 1(e).

4        Settlement payments will be issued to eligible Settlement Class Members following the

5    Effective Date. Stip. ¶ 2.17. If any funds remain after an initial distribution, subsequent distributions

6    will be conducted if cost effective. Any amounts that are not cost effective to redistribute to eligible

7    Settlement Class Members will be contributed to a public health non-profit organization identified in

8    the Plan of Allocation, subject to Court approval. *See* Stip., Ex. G.[14] Plaintiffs do not have a

9    relationship with the proposed *cy pres* organization. Defendant has represented to Plaintiffs that it

10   does not have a relationship the *cy pres* organization that would involve any offset of costs Defendant

11   would otherwise incur. *See* N.D. Cal. Guid. ¶ 8.

12   **VI.    THE COURT SHOULD APPROVE NOTICE TO SETTLEMENT CLASS**

13       **A.    Proposed Forms of Notice and Notice Plan**

14       In addition to preliminarily approving the Settlement, the Court must approve the proposed

15   forms and methods of notifying Settlement Class Members of the Settlement. *See* Fed. R. Civ. P.

16   23(I)(2). "Notice [to a class] is satisfactory if it generally describes the terms of the settlement in

17   sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

18   heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Under Rule

19   23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the

20   circumstances, including individual notice to all members who can be identified through reasonable

21   effort." Further, the notice must state:

22       (i) [T]he nature of the action; (ii) the definition of the class certified; (iii) the class
         claims, issues, or defenses; (iv) that a class member may enter an appearance through
23       an attorney if the member so desires; (v) that the court will exclude from the class any
         member who requests exclusion; (vi) the time and manner for requesting exclusion;
24       and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

25

26

27   ───────────────

[14] The Stipulation identifies two possible *cy pres* recipients. To the extent a *cy pres* distribution is
28   required under the terms of the Settlement, the Parties believe that the Institute for Public Health
     Innovation (IPHI) should receive the *cy pres* distribution..

Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed notices collectively meet all of the above requirements. Stip. ¶¶ 2.4-2.5. The notices also conform to this District's Procedural Guidance for Class Action Settlements. *See* N.D. Cal. Guid. ¶ 3. The notices set out the procedures and deadlines for submitting Claims, objecting to the Settlement (or any aspect thereof), and requesting exclusion from the Settlement Class. In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The notices satisfy this requirement as well: the notices specifically advise Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees not to exceed 33% of the Settlement Fund and for expenses in an amount not to exceed $900,000, to be paid from the Settlement Fund. *See* Stip. Exs. B and E.

Following preliminary approval, notice will be sent by email or U.S. First-Class mail to each Settlement Class Member. Stip. ¶ 2.4.; Mulholland Decl., ¶¶ 13-16; *See Online DVD-Rental*, 779 F.3d at 946 (finding notice by email, and regular mail where email bounced back, sufficient). In addition, the Long Form Notice, Claim Form, and other Settlement-related information will be posted on the Settlement Website. Defendant shall also serve CAFA notice. Stip.¶ 2.29. The Parties are not aware of any other such required notices to government entities or others. *See* N.D. Cal. Guid. ¶ 10.

The proposed Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e). The Notice Plan clearly describes: (i) the terms of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the requests for attorneys' fees, litigation expenses, and Service Awards; (iv) the procedure and timing for submitting an objection and requesting exclusion from the Settlement Class; and (v) the date and location of the Fairness Hearing.

**B.      Retention of Settlement Administrator and Estimated Administrative Costs**

Plaintiffs propose that SCS—an independent notice and settlement administrator with extensive experience handling class action administrations—be retained as the administrator for the Settlement. Information regarding SCS and its experience is included on pages 1-3 of the accompanying Mulholland Declaration and a discussion of SCS's data security procedures is provided on pages 4-5 and in Exhibit D thereto. *See* N.D. Cal. Guid. ¶ 2(b).

Class Counsel selected SCS as the Settlement Administrator following a competitive bidding

1    process. *See* Yeates Decl. ¶ 16. KTMC has engaged SCS to serve as the administrator in one case

2    other than this Action in the past two years. *Id.* ¶ 17. And, Carella Byrne has engaged SCS to serve

3    as the administrator in two cases other than this Action in the past two years. *Id.* Class Counsel have

4    found SCS to be a reliable administrator for these types of cases, with competitive pricing compared

5    to similar administration firms. *Id.* ¶ 18. *See also* N.D. Cal. Guid. ¶ 2(a).

6        SCS's costs for administering the Settlement will largely depend on the number of Claims

7    received/payments issued. Accordingly, only an estimate of the total administration costs can be

8    provided at this time. Based on an initial estimate of Claims received, SCS estimates the total notice

9    and administration costs for the Settlement will range from approximately $1.7 million to $2.4 million

10    based on certain assumptions. *See* Mulholland Decl. ¶ 24. This cost will change if the number of

11    Claims received/payments issued are significantly more or less than SCS's estimates, or if the number

12    of notices that must be delivered by regular U.S. mail increases significantly.[15] These costs are

13    necessary to effectuate the Settlement and are reasonable in relation to the value of the Settlement

14    (estimated notice and administrative costs represent between roughly 4% and 5% of the maximum

15    Settlement Amount). All of these costs will be paid from the Settlement Fund. *See* Stip. § 1.10.

16    **VII.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

17        **A.    The Settlement Class Satisfies the Rule 23(a) Prerequisites**

18        In connection with preliminary approval of the Settlement, Plaintiffs request that the Court

19    provisionally certify the Settlement Class for the purposes of effectuating the Settlement. At this

20    stage, the Court should determine whether it "will likely be able" to grant certification to the proposed

21    Settlement Class at final approval. Fed. R. Civ. P. 23(e)(1)(B).

22        **1.    The Settlement Class is Sufficiently Numerous**

23        Numerosity requires the proposed class to be so numerous that joinder is impracticable. Fed.

24    R. Civ. P. 23(a). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g.*,

25    *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000); *Lagunas v. Young Adult Inst., Inc.*,

---

26    [15] SCS estimates that a total of 5%-10% of Settlement Class Members will submit Claims. *See*
27    Mulholland Decl. ¶ 23; *see also* N.D. Cal. Guid. ¶ 1(f). Based on its experience, SCS finds this "claims
      rate" reasonable and typical in these types of cases. Summary information for five comparative
28    settlements is included in the Mulholland Declaration.

2024 WL 1025121, at *3 (N.D. Cal. Mar. 8, 2024) (class of 299 employees sufficiently numerous). Here, the Settlement Class includes approximately 13.1 million individuals. Yeates Decl. ¶ 19.

### 2.    There Are Common Questions of Law and Fact

Commonality requires that the action involve "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). (characterizing commonality as a "limited burden" which "only requires a single significant question of law or fact"). Where claims "derive from a common core of salient facts, and share many common legal issues," commonality is met. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006). Here, the Settlement Class's claims primarily derive from Defendant's failure to implement basic data security policies and measures where it knew, or should have known, its existing policies and measures were inadequate. Thus, "whether [Kaiser] employed sufficient security measures to protect the Settlement Class Members' Personal Information from the Data Breaches lies at the heart of every claim." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020). "Related factual questions about whether [Kaiser] knew that its data security was inadequate and whether [it] timely disclosed and adequately responded to the Data Breaches also apply uniformly across the entire Settlement Class." *Id.* This uniform conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, the commonality requirement is met.[16]

### 3.    Plaintiffs' Claims are Typical of Settlement Class Members' Claims

Rule 23(a)(3) requires that class representatives' claims be typical of the claims of the proposed class. The test is whether other class members have the same or similar injury, whether the action is based on conduct which is not unique to named plaintiffs, and whether class members have been injured by the same course of conduct. *Ellis*, 657 F.3d at 984. Further, the typicality requirement is a "permissive requirement" and "requires only that Plaintiffs' claims be 'reasonably co-extensive,'

---

[16] Although Plaintiffs' CMCAC includes numerous state statutory and other claims, not all claims are likely to be pursued for reasons analyzed herein. *Jabbari v. Farmer*, 965 F.3d 1001, 1008 (9th Cir. 2020) ("Only rarely will a class assert every possible claim that might offer relief").

not 'substantially identical' with the proposed class members' claims." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 593 (N.D. Cal. 2015). Thus, where plaintiff suffered a similar injury and other class members were injured by the same course of conduct, typicality is satisfied. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Here, Plaintiffs' experiences match those of the millions of other Settlement Class Members. Kaiser failed to adopt practices that prevented defendants from improperly sharing Plaintiffs' confidential information with third parties. Because Plaintiffs' allegations involve the "same course of conduct," which is "not unique to the named plaintiffs," typicality is satisfied. *Valliere v. Tesoro Ref. & Mktg. Co.*, 2020 WL 13505042, at *5 (N.D. Cal. June 26, 2020) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

### 4. Plaintiffs and Class Counsel Have—and Will Continue to—Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class" which requires that the named plaintiffs (1) not have conflicts of interest with the proposed class; and (2) be represented by qualified and competent counsel. *In re Volkswagen "Clean Diesel" Mktg. Sales Pracs. & Prod. Liab. Litig.*, 895 F.3d 597, 606 (9th Cir. 2018). Both criteria are readily met here.

Plaintiffs—the proposed Settlement Class Representatives, do not have any interests antagonistic to the other Settlement Class Members, whose interests they will continue to vigorously protect. *See, e.g.*, *Yahoo! Inc.*, 2020 WL 4212811, at *4-5. Plaintiffs are aligned with other Settlement Class Members as they share an interest in proving that Kaiser should have prevented disclosure of Plaintiffs' confidential information to third parties. And, all members of the Settlement Class are aligned in seeking remuneration from Kaiser for the resulting harm. In addition, each Plaintiff understands their duties as a class representative, has agreed to consider and protect the interests of absent Settlement Class Members, and has participated in the prosecution and resolution of this Action. Plaintiffs provided Class Counsel with necessary factual information, reviewed pleadings, had ongoing communications regarding various issues pertaining to this case, and will continue to do so until the case closes. Plaintiffs' participation in the Action easily meets the adequacy requirement.

See *Trosper v. Styker Corp.*, 2014 WL 4145448, at *43 (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a rudimentary understanding of the present action and . . . a demonstrated willingness to assist counsel in the prosecution of the litigation." (quotations omitted)).

Likewise, Class Counsel are highly qualified law firms that have successfully prosecuted complex consumer class actions through the country. Class Counsel have devoted the resources necessary to see this Action through to a resolution despite substantial risk. Class Counsel's work on this case began months before their appointment and has included preparing pleadings, addressing issues of appropriate representative plaintiffs, consulting with experts, evaluating ongoing discovery, preparing for and attending mediations, including analyzing documents produced in connection therewith, evaluating options for settlement benefits that meet the needs of this Settlement Class, and reaching the proposed Settlement. Class Counsel will continue to perform work on behalf of the Settlement Class through the distribution of payments to eligible Settlement Class Members and, if warranted, the proposed *cy pres* recipient. Moreover, Class Counsel have been guided by the Settlement Class's interests throughout the case and present this Settlement as being in the Settlement Class's best interests without reservation.

### B.    The Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that (i) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (ii) that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

### 1.    Common Issues of Law and Fact Predominate

The predominance inquiry under Rule 23(b)(3) focuses on whether the "common questions present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation and quotation omitted). If so, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation and quotation omitted). Even if just one common question predominates, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)

1    (footnotes omitted).

2         As noted above, the common questions in this case can be resolved for all Settlement Class

3    Members in a single adjudication. Kaiser's treatment of patient information was common to all

4    Settlement Class Members, and whether Kaiser improperly shared this information with third parties

5    can be answered on a class-wide basis. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab.*

6    *Litig.*, 609 F. Supp. 3d 942, 997 (N.D. Cal. 2022) (explaining that claims that "require common proof

7    of the defendant's conduct" are appropriate for class certification). Further, whether Kaiser failed to

8    meet contractual obligations to keep Settlement Class Members' information private as well as

9    whether or not the information disclosed is covered by the applicable statutes protecting health

10   information can be resolved on a class-wide basis, using the same expert analysis, documentary

11   evidence, and testimony. *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, 2018 WL

12   8949777, at *5 (N.D. Cal. Oct. 15, 2018) ("Predominance is satisfied because the overarching

13   common question . . . can be resolved using the same evidence for all class members and is exactly

14   the kind of predominant common issue that makes certification appropriate."). Thus, common

15   questions abound.

16        Rule 23(b)(3) also requires a class action to be "superior to other available methods for [the]

17   fair[] and efficient[] adjudicat[ion] of the controversy" and provides the following non-exclusive

18   factors relevant to a predominance finding: "(A) the class members' interests in individually

19   controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

20   concerning the controversy already begun by or against class members; (C) the desirability or

21   undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely

22   difficulties in managing a class action." The applicable factors favor a predominance finding.

23        In this matter, any Settlement Class Member who wants to control their own case can easily

24   request exclusion from the Settlement Class and pursue their own lawsuit, and some will exercise

25   that right. The actions of these individuals do not affect the predominance analysis here, as the large

26   majority of the roughly 13.1 million Settlement Class Members will have no interest in seeking a

27   separate action or otherwise. The efficiencies of collectively adjudicating the many common legal

28   and factual questions, as well as the risks and expense of litigating this case, weigh in favor of

predominance. And where, as here, the Court is deciding certification in the settlement context, it need not consider manageability issues. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 2.    Class Treatment is Superior

Rule 23(b)(3)'s "superiority" element "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. In this Action, a class action is the only reasonable method to efficiently and fairly adjudicate Settlement Class Members' claims against Kaiser. *See, e.g.*, *Phillips Petroleum Co v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually."). To this end, the sheer number of potential separate trials, were they to be pursued, favors certification. Even if Settlement Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Thus, superiority of class treatment is easily shown here.

## VIII.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future Settlement-related events. The schedule for these events and deadlines, as agreed to by the Parties and reflected in the proposed Preliminary Approval Order is attached as Exhibit 2.

## IX.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion and enter the proposed Preliminary Approval Order submitted herewith.

Dated: August 19, 2025                                    Respectfully submitted,

                                                                   **KESSLER TOPAZ**
                                                                    **MELTZER & CHECK, LLP**

                                                                   */s/ Melissa L. Yeates*
                                                                   Joseph H. Meltzer (appearance *pro hac vice*)
                                                                   jmeltzer@ktmc.com
                                                                   Melissa L. Yeates (appearance *pro hac vice*)
                                                                   myeates@ktmc.com
                                                                   Tyler S. Graden (appearance *pro hac vice*)
                                                                   tgraden@ktmc.com

Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

-and-

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Michael A. Innes (*pro hac* forthcoming)
minnes@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
Jordan M. Steele (*pro hac* forthcoming)
jsteele@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

*Interim Co-Lead Class Counsel*

**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey, Cal Bar No. 125961
bobmackeyesq@aol.com
16320 Murphy Road
Sonora, CA 95370
Telephone: (412) 370-9110

-and-

**MIGLIACCIO & RATHOD LLP**
Jason S. Rathod
jrathod@classlawdc.com
412 H Street NE, no. 302
Washington, DC, 20002
Telephone: (202) 470-3520

*Additional Counsel for Plaintiff Alexis Sutter*