Jonathan D. Waisnor (SBN 345801)
jwaisnor@labaton.com
Morris Dweck (Pro Hac Vice Application Forthcoming)
mdweck@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Daniel Bryson (Pro Hac Vice Application Forthcoming)
dbryson@brysonpllc.com
**BRYSON HARRIS SUCIU DEMAY, PLLC**
900 West Morgan Street
Raleigh, NC 27603
Tel.: 919-815-4843

Alex R. Straus (SBN 321366)
astraus@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Telephone: (866) 252-0878
Facsimile: (865) 522-0049

*Counsel for Objectors*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, AND JANE DOE V, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC.,

Defendant.

Case No. 3:23-cv-02865-EMC

CLASS ACTION

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT**

Judge: Hon. Edward M. Chen

**TABLE OF CONTENTS**

**Page**


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY .......... 3

1. Claimants' Initial Efforts to Resolve Disputes with Kaiser .......... 4

2. Claimants' Efforts to Mediate .......... 5

3. Claimants' Attempt to Arbitrate and the Resultant State Court Action .......... 5

4. Introduction of Secret Interim and Supplemental Arbitration Rules .......... 6

5. Claimants' Filing of *Guevara* .......... 9

ARGUMENT .......... 10

A. Class Members Who Have Noticed Individual Arbitrations Against Kaiser Should Be Excluded From the Settlement Class .......... 10

1. Applicable Standard .......... 10

1. The Settlement Class Improperly Does Not Exclude Claimants Who "Demanded or Initiated" Arbitration Prior to Preliminary Approval .......... 11

B. The Proposed Settlement's Opt Out Procedures Unfairly and Unreasonably Burden Class Members, Like Objectors, Who Are Prosecuting Their Own Claims Through Their Own Counsel .......... 14

C. The Proposed Settlement Fails to Allocate Sufficient Settlement Value to California Class Members, Whose Claims Are Higher Value than Non-California Class Members .......... 17

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, No. 24-MD-03098-EMC, 2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ........................ *passim*

*Arena v. Intuit Inc.*, No. 19-CV-02546-CRB, 2021 WL 834253 (N.D. Cal. Mar. 5, 2021) ............................ 11, 15

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 953 (9th Cir. 2011)........................................................................................ 11

*Brooks v. Thompson Reuters Corp.*, No. 3:21-cv-01418-EMC (N.D. Cal. Feb. 21, 2025), ECF No. 280 (Chen, J.) ..................... 19

*In re CenturyLink Sales Practices & Sec. Litig.*, 2020 U.S. Dist. LEXIS 114110 (D. Minn. June 29, 2020) .................................................... 16

*Chabak v. Somnia Inc.*, No. 7:22-CV-9341-PMH, 2025 WL 1272789 (S.D.N.Y. Apr. 28, 2025) ............................. 18

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024)............................................................................................... 14

*Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................... *passim*

*Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757 (N.D. Cal. Aug. 4, 2025), ECF No. 756 ................................................ 17

*Gilleo v. California Pizza Kitchen*, No. 8:21-CV-01928-DOC-KES, 2025 WL 1721880 (C.D. Cal. June 10, 2025) .................. 18

*In re Google Assistant Priv. Litig.*, No. 5:19-CV-04286-BLF, 2025 WL 510435 (N.D. Cal. Feb. 14, 2025)......................... 15, 16

*Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065 (C.D. Cal. 2023) ...................................................................... 18

*Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2020 U.S. Dist. LEXIS 30193 (N.D. Cal. Feb. 20, 2020)............. 14

*Harbour v. California Health & Wellness Plan* No. 5:21-cv-03322-EJD (N.D. Cal. Jan. 16, 2024)........................................................... 18

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) .......... 2, 7, 8

*Jones v. Starz Ent.*,
LLC, 129 F.4th 1176 (9th Cir. 2025) .......... 6

*Lusk v. Five Guys Enters. LLC*,
2021 WL 2210724 (E.D. Cal. June 1, 2021) .......... 17, 18

*Maree v. Castanares*,
No. 23-55795, 2025 WL 2268254 (9th Cir. Aug. 8, 2025) .......... 10, 11, 17

*Newman v. AmeriCredit Fin. Servs., Inc.*,
No. 11-CV-3041-DMS-BLM, 2014 WL 12789177 (S.D. Cal. Feb. 3, 2014) .......... 15

*Newton v. Kaiser Foundation Health Plan, Inc.*,
No. 24-CV-073452 (Super. Ct. Cal., filed Apr. 29, 2024) .......... 7

*In re NFL Players' Concussion Injury Litig.*,
2019 U.S. Dist. LEXIS 652 (E.D. Pa. Jan 3, 2019) .......... 16

*In re Piper Capital Mgmt.*,
71 F.3d 298 (8th Cir. 1995) .......... 14

*Quach v. California Com. Club, Inc.*,
16 Cal. 5th 562 (2024) .......... 13

*Rodriguez, v. Google LLC*,
No. 3:20-cv-04688 (N.D. Cal. Sept. 4, 2025), ECF No. 670 .......... 17

*Rollins v. Dignity Health*,
336 F.R.D. 456 (N.D. Cal. 2020) .......... 20

*Smith-Washington v. TaxAct, Inc.*,
No. 23-CV-00830-VC, 2024 WL 5415448 (N.D. Cal. Dec. 30, 2024) .......... 18

*Smothers v. NorthStar Alarm Servs., LLC*,
No. 2:17-cv-00548-KJM-KJN, 2019 WL 3080822 (C.D. Cal. July 15, 2019) .......... 15

*Taafua v. Quantum Glob. Techs., LLC*,
No. 18-CV-06602-VKD, 2020 WL 95639 (N.D. Cal. Jan. 8, 2020) .......... 19

*In re Tiktok, Inc., Consumer Privacy Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) .......... 16

**Statutes**

9 U.S.C. § 3 .......... 13

9 U.S.C. § 4 .......... 13, 14

Cal. Civ. Code § 56.10. .......... 4, 9, 17, 18, 19

Cal. Civ. Code § 56.36(b) .......... 17

Cal. Civ. Code § 630 .......... 4, 9, 17, 19

Cal. Civ. Code § 1770 .......... 9

Cal. Civ. Code § 1798.100 .......... 9

Cal. Civ. Proc. Code § 1281.91 .......... 8

Cal. Bus. & Prof. Code § 17200 .......... 9

**Other Authorities**

CAL. CONST. art. I, § 1 .......... 4

Fed. R. Civ. P. 23 .......... 10, 11, 17, 20

Jessica Guevara, Nicole Reynolds, Linda Rodriguez, Oscar Ocaranza, Yara Garcia, and Cindy Barkho ("Objectors") respectfully submit this Memorandum of Law in Opposition to the Motion for Preliminary Approval of the Proposed Class Action Settlement (the "Proposed Settlement"). *See* ECF No. 345 (the "Settlement Motion"). Objectors oppose three aspects of the Proposed Settlement: (1) an unnecessarily broad class definition that seeks to subsume the claims of individuals who filed arbitration or noticed an intent to arbitrate; (2) opt out procedures that unduly burden class members such as Objectors who have already retained counsel, mediated with Kaiser, and filed claims, either through arbitration or through a separate state court action; and (3) an apportionment of the settlement amount that does not account for differences between class members.

## PRELIMINARY STATEMENT

Just like in *23andMe*, Kaiser now seeks to force tens of thousands of individuals who have noticed or initiated arbitration into a settlement negotiated without any participation by their counsel. *See In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, No. 24-MD-03098-EMC, 2024 WL 4982986, at *1 (N.D. Cal. Dec. 4, 2024). As in *23andMe*, this Court should hold that any person who invoked or noticed an intent to arbitrate is excluded from the class definition.

Objectors are part of a group of 19,521 California Kaiser members represented by Labaton Keller Sucharow LLP ("Labaton"), 10,349 individuals represented by Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), and other California Kaiser members. Kaiser has known about Objectors since early 2024, when it was moving to compel the *Doe* plaintiffs to arbitration. At that time, it asked Objectors to hold off filing the arbitrations in favor of mediation and agreed that it would not seek to enforce any future modifications of the arbitration rules against them. After mediation failed, thousands of claimants filed arbitration pursuant to the arbitration agreement contained in Kaiser's Evidence of Coverage ("EOC").

In sum, after successfully compelling the California plaintiffs in this action to arbitration under the EOC, Kaiser appears to have realized the then existing rules were too favorable to members seeking arbitration. After Objectors filed for arbitration, Kaiser worked with the Office of the Independent Administrator ("OIA"), its purportedly independent arbitration provider, to rewrite the

rules—unilaterally staying Objectors' arbitrations, imposing new procedural burdens and imposing millions of dollars of new filing fees on members. These were clear violations of both the EOC, other post-dispute agreements between Objectors and Kaiser, and California law. *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 685 (9th Cir. 2024). The Objectors are currently litigating the effect of Kaiser's rule changes in California state court, the appropriate jurisdiction to hear the dispute. *See Guevara v. Kaiser Found. Health Plan, Inc.,* No. 25-CV-121881 (filed May 6, 2025).

The Settlement Motion cites this Court's decision *23andMe* but tries to avoid its key holding through a convoluted class definition that excludes anyone with a "Perfected Arbitration Claim." This definition excludes only individuals who acceded to Kaiser's newly imposed rules. Plainly stated, any settlement that conditions exclusion not on whether a class member initiated arbitration, but whether they did so under disputed rules (the enforceability of which are at issue) runs into the same FAA preemption and due process arguments that this Court already addressed in *23andMe*. Here, Kaiser's tactics are even more egregious because it went to this Court – twice – to compel arbitration under the EOC. Further, Kaiser is not facing the looming threat of bankruptcy or limited pot that motivated 23andMe to attempt to force arbitration claimants into the class. For purposes of this settlement, the proposed class definition must be modified to exclude any class member who noticed or initiated arbitration. The dispute over which rules govern is for the state court to decide.

Additionally, the Proposed Settlement imposes opt out procedures that prevent counsel from opting out on their clients' behalf, even though at the time of the first mediation in this action, Kaiser and class counsel knew a significant number of California class members were represented by undersigned counsel. Courts in this District have either struck down similar opt out procedures where they are clearly designed to increase the burdens on arbitration claimants the parties knew were represented by counsel at the time they entered into a Proposed Settlement, or have allowed arbitration claimants to opt out through counsel despite the opt out provisions. The opt out provisions here should not be approved.

The unique procedural posture of this settlement also warrants a closer look. California residents have the strongest claims against Kaiser because of California statutes that provide for statutory damages, yet the Proposed Settlement allocates the settlement fund to all class members on a pro rata basis. This raises serious concerns that the claims of California residents have been undervalued in this settlement, especially in light of Kaiser's apparent decision to waive arbitration in *Guevara* and recent jury verdicts under California law in other privacy cases in this District.

Objectors respectfully urge the Court to put a stop to Kaiser's procedural gamesmanship and deny preliminary approval of the Proposed Settlement, allowing Objectors to pursue adequate remedies for Kaiser's widespread breaches of medical information privacy in their chosen forum. In the alternative, should the Court be inclined to approve the settlement, Objectors request that the Court modify the class definition to exclude California claimants, or, at minimum, exclude all individuals who have attempted to arbitrate or provided notice of their intent to arbitrate. Regardless of any class definition modifications, the Court should also require that the opt-out procedures be revised to eliminate burdens that currently frustrate represented class members' ability to exercise their right to opt out through counsel.

## FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY[1]

Objectors' claims arise from Kaiser's unlawful and unauthorized disclosure of their sensitive medical information, the same disclosures at issue in this class action. Objectors and tens of thousands of other individuals retained undersigned counsel to seek arbitration of their claims against Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc. (collectively, "Kaiser"), as required by the arbitration agreement in Kaiser's EOC. Waisnor Decl. Ex. B. For more than a year, Objectors engaged in direct negotiations with Kaiser and its counsel to resolve their disputes. When those efforts were unsuccessful, Objectors filed arbitration. However, after Kaiser's unilateral rule amendments effectively foreclosed a fair arbitration process,

[1] Unless otherwise noted, all emphasis is added and internal quotation marks and citations are omitted. References to "Waisnor Decl." are to the supporting Declaration of Jonathan Waisnor filed herein and "Ex.__" are to the supporting exhibits filed with the Waisnor Decl.

Objectors have, for the past several months, been actively litigating a class action against Kaiser in California state court. *See Guevara v. Kaiser Found. Health Plan, Inc.*, No. 25-CV-121881.

**1. Claimants' Initial Efforts to Resolve Disputes with Kaiser**

Objectors' informal attempts to resolve their claims began on February 9, 2024, when 6,847 Claimants represented by Labaton Keller Sucharow LLP ("LKS Claimants") served Kaiser with a detailed notice asserting violations of California's Confidentiality of Medical Information Act ("CMIA"), California Invasion of Privacy Act ("CIPA"), Article I, Section 1 of the California Constitution, and California's consumer protection and right of publicity statutes. Waisnor Decl. ¶2 & Ex. A. The notices informed Kaiser that Claimants suffered harm to their privacy as a result of Kaiser's disclosure, use, and sale of their personal health and medical information to Meta and other third parties and advised that Claimants intended to pursue arbitration under the applicable Arbitration Agreement if the matter could not be resolved. *Id*.

On March 18, 2024, an additional 8,767 LKS Claimants provided notice. Waisnor Decl. ¶3. On March 27, 2024, the LKS Claimants and Kaiser entered into a tolling agreement and agreement to mediate (the "Tolling Agreement," attached to Waisnor Decl. Ex. C), providing:

> "to the extent that each Tolled Claim is subject to an arbitration agreement with [Kaiser], the dispute resolution provisions of the Kaiser Permanente Member Arbitration Agreement that was in effect on February 9, 2024 shall govern the dispute resolution of the Tolling Claimants' Tolled Claims unless the Parties agree in writing to any changes or modifications[.]"

Ex. C ¶10. Shortly thereafter, on April 12, 2024, Kaiser issued its first public notice to state and federal authorities, revealing that it had known since at least October 25, 2023, that third-party technologies on its website and mobile application were transmitting member and patient information to vendors, including Google, Microsoft Bing, and Twitter. Waisnor Decl. ¶6 & Ex. D. On April 26, 2024, a further 5,500 LKS Claimants provided notice of their claims to Kaiser. Waisnor Decl. ¶7. Over the next several months the parties exchanged information in anticipation of mediation, including verification of Claimants in Kaiser's records. Waisnor Decl. ¶8. Each LKS Claimant has individually authorized counsel to execute an opt out in the *Doe* settlement. Waisnor Decl. 28.

On May 23, 2024, 1,293 individuals represented by Milberg notified Kaiser of their claims. Bryson Decl. ¶2. On July 23, 2024, Milberg provided an updated claimant list, with an additional 4,201 claimants, to Kaiser's counsel. Bryson Decl. ¶3.

**2. Claimants' Efforts to Mediate**

The Tolling Agreement was signed on March 27, 2024 and required the parties to engage a mediator within 30 days. Ex. C ¶9. On May 21, 2024, the parties finally agreed to proceed with Judge Wayne Andersen (Ret.) as mediator—at which point Kaiser, for the first time, insisted that Claimants mediate simultaneously with the *Doe* class. Waisnor Decl. ¶8.

The mediation took place on October 1, 2024. The parties mediated on October 1, but were unable to reach resolution. Thereafter, Kaiser retained new counsel. ECF No. 338. When Kaiser returned to mediation with the *Doe* class for a second session on May 15, 2025, it excluded Claimants and their counsel. Waisnor Decl. ¶22.

**3. Claimants' Attempt to Arbitrate and the Resultant State Court Action**

On December 5, 2024, LKS advised Kaiser that it planned to initiate arbitration on behalf of 19,521 Claimants. Waisnor Decl. ¶10. On December 23, 2024, 19,521 LKS Claimants submitted a consolidated demand for arbitration. Waisnor Decl. ¶11 & Ex. E. On December 27, 2024, 7,189 Milberg Claimants filed a consolidated demand for arbitration. Bryson Decl. ¶4.

At the time that the LKS and Milberg Claimants filed arbitrations, the Rules for Kaiser Permanente Member Arbitrations (the "Operative Kaiser Rule(s)," attached as Waisnor Decl. Ex. F) required "a single, non-refundable filing fee of $150 per arbitration payable to 'Arbitration Account' regardless of the number of claims asserted in the Demand for Arbitration or the number of Claimants or Respondents named in the Demand for Arbitration." Kaiser Rule 12(a). The EOC between Kaiser and its members contained a nearly identical provision regarding arbitration fees. Ex. B at 2. The Operative Kaiser Rules further stated that "[t]he Rules in effect on the date the Independent Administrator receives the Demand for Arbitration will apply to that arbitration throughout unless the Parties agree in writing that another version of the Rules applies." Kaiser Rule 50(a). In other words, the Operative Kaiser Rules expressly permitted Claimants to file a single consolidated (as opposed to

a class) demand. *See Jones v. Starz Ent.*, LLC, 129 F.4th 1176, 1184 (9th Cir. 2025) (consolidated arbitration, as opposed to class arbitration, does not violate the FAA if permitted by the rules of the arbitral body and the arbitration agreement).

**4. Introduction of Secret Interim and Supplemental Arbitration Rules**

On January 17, 2025, after receiving no confirmation that Kaiser had served the demand on its purportedly independent arbitration provider, the OIA, within ten days as required by Operative Kaiser Rule 11, LKS Claimants contacted Kaiser for clarification. Waisnor Decl. ¶13. Kaiser responded by transmitting the LKS and Milberg demands to OIA. *Id.*; Bryson Decl. ¶5. That same day, the OIA provided Claimants' counsel with a copy of "Interim Rules: Tracking Technology Cases," (the "Interim Rules," attached as Waisnor Decl. Ex. G), which it claimed now governed Claimants' arbitration. Waisnor Decl. ¶14; Bryson Decl. ¶5. These rules had not been posted on the OIA's public website, and there was no written agreement between Kaiser and Claimants to adopt them, as required by both the Operative Kaiser Rules and the Tolling Agreement. *See* Waisnor Decl. Exs. B ¶10; D, Kaiser Rule 50(a).

In a letter sent to Kaiser and the OIA on January 27, 2025 (attached as Waisnor Decl. Ex. H), LKS Claimants objected to application of the Interim Rules and the forthcoming supplemental rules. Waisnor Decl. ¶15. LKS Claimants explained that the existing Operative Kaiser Rules permit parties to agree to alternative rules adopted after the commencement of a claim, but do not authorize secretive, unilateral amendments. *See* Waisnor Decl. Ex. H at 3 (quoting Kaiser Rule 50(a) ("The Rules in effect on the date the Independent Administrator receives the Demand for Arbitration will apply to that arbitration throughout unless the Parties agree in writing that another version of the Rules applies.")). LKS Claimants also offered to explore efficiencies or alternative rules with notice and an opportunity for comment. *See* Ex. H. LKS Claimants requested the draft Supplemental Rules and asked that approval be deferred so they could review and comment. *Id.* The OIA ignored this request. Waisnor Decl. ¶16.

On February 3, 2025, Kaiser responded to LKS Claimants' letter, citing the OIA's prior rejection of similar objections raised by Potter Handy LLP on behalf of other arbitration claimants, and urging the OIA to "act in accordance with its prior decision."[2] *Id.* at ¶17.

In response, LKS Claimants explained on February 4, 2025, (attached as Waisnor Decl. Ex. I) that binding them to confidential decisions from proceedings in which they had no participation violates fundamental due process principles as articulated in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024). *See* Waisnor Decl. ¶18. Decided under California unconscionability law and FAA principles, *Heckman* held that "mass arbitration" rules enacted after the commencement of claims were unenforceable. 120 F.4th 670. The Ninth Circuit noted the unfairness of asymmetrical access to information and emphasized that "binding litigants to the rulings of cases in which they have no right to participate—let alone cases of which they have no knowledge—violates basic principles of due process." *Id.* at 684.

Despite these concerns, on February 5, 2025, the OIA summarily rejected LKS Claimants' objections and subsequently published the Supplemental Rules Governing Mass Arbitrations, effective February 14, 2025 ("Supplemental Rules" or "Suppl. Rule(s)" attached as Waisnor Decl. Ex. J, together with the Interim Rules, the "New Rules"). Waisnor Decl. ¶19. These rules amended the filing fee structure to require each claimant to pay a $150 filing fee rather than a single fee for each demand, vastly increasing the cost of the proceedings to Kaiser members. They also imposed additional filing requirements, and introduced a new "process arbitrator" procedure. *See* Ex. J at 4-5 (Suppl. Rules 7 & 8).

Beyond the increase in filing fees for members, the New Rules imposed several substantively unconscionable burdens on claimants similar to those found unconscionable by courts. They require claimants—but not Kaiser—to submit a detailed spreadsheet including sensitive identifiers such as Medical Record Numbers, a one-sided procedural hurdle plainly designed to deter arbitration. Suppl. Rule 4. They grant Kaiser the unilateral ability to initially determine whether subsequent arbitration

[2] Potter Handy is counsel to the plaintiffs in *Newton v. Kaiser Foundation Health Plan, Inc.*, No. 24-CV-073452 (Super. Ct. Cal., filed Apr. 29, 2024), also pending before the California superior court.

demands must be consolidated into a pending mass arbitration, undermining mutuality. Suppl. Rule 7. Under the Operative Kaiser Rules, Claimants were entitled to discovery as broad as that permitted under California's rules of procedure. Kaiser Rule 27(a) ("Discovery shall be conducted as if the matter were in California state court."). Under the New Rules, the process arbitrator has sweeping discretion to coordinate and limit discovery, curtailing the fact and expert discovery claimants were previously entitled to under the Operative Kaiser Rules despite the increased complexity of the proceedings. Suppl. Rule 8(b).

Process arbitrators may also consolidate demands for arbitration filed by individuals represented by different law firms, appoint "liaison counsel" for claimants, and bind members to decisions made in prior arbitrations in which they had no opportunity to participate. *Id.*; Suppl. Rule 4. This interferes with claimants' fundamental right to choose their own counsel, forces differently represented claimants into logistical and strategic conflicts, and transforms Kaiser's bilateral arbitration process into a complex procedure that "provide[s] to defendants many of the protections and advantages of a class action, but provide ... plaintiffs virtually none of its protections and advantages." *Heckman*, 120 F.4th at 684-85. Finally, the selection and disqualification process for the process arbitrator violates California law, because all members as a collective whole are permitted only two strikes across a slate of seven, and members who are represented by separate counsel but have their claims consolidated with a prior mass arbitration are not given any right to disqualify the process arbitrator. Suppl. Rules 7, 4; Cal. Civ. Proc. Code § 1281.91; *Heckman*, 120 F.4th at 678.

Unsurprisingly, Kaiser did not disclose to Claimants that it[3] or the OIA was developing either the Interim Rules or the Supplemental Rules during the parties' extensive pre-arbitration negotiations and correspondence. Waisnor Decl. ¶21. Nor did Kaiser obtain written agreement from Claimants to apply the Interim Rules or Supplemental Rules to their disputes, as required by the Tolling Agreement and the Operative Kaiser Rules. *Id.*

---

[3] Kaiser was undoubtedly involved in promulgating the Interim and Supplemental Rules, as Rule 50 of the Kaiser Rules explains that amendments to the Kaiser Rules are made "in consultation with … the Health Plan[,]" e.g. Kaiser, and Rule 4(a) of the Interim Rules further requires that "the Arbitration Oversight Board, in consultation with … the Health Plan [e.g. Kaiser], shall develop and approve Supplemental Rules for the administration of TTC coordination."

On April 13, 2025, this Court, for the second time, compelled the only California plaintiff in the current proceedings to arbitration. ECF Nos. 335, 119. When it filed its motion to compel on January 28, 2025, Kaiser did not disclose the Interim Rules to the Court, even though it intended to apply them to known arbitration claims. *Id*.

**5. Claimants' Filing of *Guevara***

Rather than proceed under rules that Kaiser had developed in order to increase their costs and delay their claims, Claimants filed a putative class action on May 6, 2025, in Alameda County Superior Court. *See* Class Action Complaint For Damages, *Guevara v. Kaiser Found. Health Plan, Inc.,* No. 25-CV-121881 (Super. Ct. Cal., filed May 6, 2025). The case includes causes of action under the CMIA (Civ. Code § 56.10 et seq.), California Privacy Rights Act (Civ. Code § 1798.100 et seq.), California Invasion of Privacy Act (Civ. Code § 630 et seq.), Consumers Legal Remedies Act (Civ. Code § 1770 et seq.), Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.), and common law claims. *Id*.

Kaiser answered the Complaint rather than filing a demurrer. Initially, Kaiser indicated that it would move to compel arbitration under the Supplemental Rules. *See* Defs.' Answer to Pls' Class Action Compl., *Guevara*, No. 25-CV-121881 (attached as Waisnor Decl. Ex. L). After Objectors indicated they would move to strike Kaiser's affirmative defense of arbitration, Kaiser withdrew it. *See* Defs.' First Amended Answer to Pls' Class Action Compl., *Guevara*, No. 25-CV-121881, Aug. 28, 2025 ("Amended Answer," attached as Waisnor Decl. Ex. M). Kaiser's Amended Answer does not raise any other jurisdictional defenses. *Id*.

Since filing their claims and before preliminary approval, Objectors' counsel has engaged in numerous conversations with Kaiser's counsel regarding a potential settlement in the *Doe* action and its impact on the putative *Guevara* state court action. *See* Waisnor Decl. ¶23; Ex. K. Objectors' counsel invited Kaiser to discuss the class definition and opt out requirements of the Proposed Settlement to avoid any objections. Kaiser refused. Waisnor Decl. ¶24.

**ARGUMENT**

The Proposed Settlement is fundamentally flawed and should be rejected for several reasons. First, the settlement class unfairly includes thousands of individuals who have notified and initiated arbitration against Kaiser and should not be in this class. Second, the Proposed Settlement's opt-out procedures are unduly burdensome, specifically designed to discourage class members from pursuing their own, more valuable claims through their retained counsel. Third, the Proposed Settlement fails to provide fair and adequate compensation to California class members, whose statutory privacy claims are significantly stronger and more valuable than those of the nationwide class.

Kaiser has been fully aware for over 18 months that Objectors are represented by counsel in connection with the claims at issue, and it negotiated with Objectors' counsel extensively during that period. Yet, Kaiser and Class Counsel have nonetheless negotiated the settlement of Objectors' claims without their participation, and Kaiser seeks to use the chaos it has created to avoid this Court's *23andMe* decision. This Court should reject such gamesmanship, which is not an appropriate use of Federal Rule of Civil Procedure 23 ("FRCP"), and undermines due process and the interests of tens of thousands of class members.

**A. Class Members Who Have Noticed Individual Arbitrations Against Kaiser Should Be Excluded From the Settlement Class**

**1. Applicable Standard**

"'[S]ettlement class actions present unique due process concerns for absent class members,' and the district court has a fiduciary duty to look after the interests of those absent class members." *Maree v. Castanares*, No. 23-55795, 2025 WL 2268254, at *2 (9th Cir. Aug. 8, 2025) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). Under FRCP 23(e)(2), a court may approve a settlement "only after a hearing and only on finding that" the proposed settlement is "fair, reasonable, and adequate." In assessing whether a proposed settlement is fair, reasonable, and adequate, courts "generally" consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

> presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 953, 946 (9th Cir. 2011) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). "When, as here, a settlement is negotiated before class certification, it 'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under FRCP 23(e) before securing the court's approval as fair.'" *Maree*, 2025 WL 2268254, at *2 (quoting *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048-49 (9th Cir. 2019)). Preliminary approval is only appropriate where a proposed settlement "has no obvious deficiencies, does not improperly grant preferential class treatment to class representatives or segments of the class, and falls within the range of possible approval." *Arena v. Intuit Inc.*, No. 19-CV-02546-CRB, 2021 WL 834253, at *7 (N.D. Cal. Mar. 5, 2021) (quoting *Ruch v. AM Retail Grp., Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016)).

In accordance with this Court's approach in *23andMe*, Objectors did not file a motion to intervene, but instead filed a motion to object. *See 23andMe,* 2024 WL 4982986, at *1 n.3 ("Previously, the Court denied the motions to intervene filed by the Milberg, Levi, and Labaton firms. However, the Court stated that it would still consider the substance of their filings as, in essence, objections.").

**1. The Settlement Class Improperly Does Not Exclude Claimants Who "Demanded or Initiated" Arbitration Prior to Preliminary Approval**

The Proposed Settlement contains an overly expansive class definition that fails to account for the interests of absent class members, including those that sought to arbitrate their claims against Kaiser. As this Court previously held in *23andMe*, a "settlement class definition should be modified so as to exclude those who have demanded or initiated arbitration." 2024 WL 4982986, at *11.

The facts and reasoning in *23andMe* are on point here. Here, much like in *23andMe*, tens of thousands of Objectors retained counsel and notified Kaiser they were pursuing their claims against it in arbitration under the Operative Kaiser Rules. Waisnor Decl. ¶¶2-7; *see also 23andMe*, 2024 WL 4982986, at *1. Here, also like in *23andMe*, the Proposed Settlement seeks a sweeping release of

consumer claims and imposes burdensome opt out procedures on class members, even though many have already acted to preserve their arbitral rights. *Id.*

Indeed, the facts here are even more compelling than in *23andMe*. First, the Claimants mediated their claims separately with Kaiser before Judge Andersen (the same mediation Class Counsel attended). Indeed, unlike in *23andMe*, where the company engaged in preliminary discussions about a tolling agreement with arbitration claimants but did not actually sign one, Kaiser signed a tolling agreement with the LKS Claimants, acknowledging they were represented by counsel and were actively pursuing arbitration separately from the *Doe* action. *See In re 23andMe, Inc., Customer Data Security Breach Litig.*, No. 24-MD-03098-EMC, ECF No. 120-3 ¶¶3-12. Second, Claimants all filed arbitrations under the Operative Kaiser Rules, whereas in *23andMe*, some claimants had noticed but not filed arbitrations at the time of the settlement. 2024 WL 4982986, at *2.

Finally and crucially, *23andMe* took the position that excluding arbitration claimants from the Proposed Settlement was necessary because it did not have enough money to both fund the class settlement and bear the attendant costs of arbitration. *Id*. at *1 (noting "23andMe might, as a practical matter, face insolvency and/or bankruptcy, and thus the putative class might ultimately obtain little or no relief."). However, there is no "limited pot" or bankruptcy risk with Kaiser, which recorded an operating income of $1 billion in the second quarter of 2025, and an operating revenue of $32.1 billion for the three months ended June 30, 2025.[4] Moreover, Kaiser has never stated that the costs of OIA arbitration were prohibitive. And, the current status of *23andMe* belies any argument that the interests of the class requires overriding the rights of arbitration claimants.[5]

---

[4] *See* Kaiser Permanente Q2 2025 Financial Results, DistilINFO Hospital IT (Aug. 12, 2025), https://distilinfo.com/hospitalit/2025/08/12/kaiser-permanente-q2/ ("Kaiser Permanente concluded its second quarter of 2025 with remarkable financial results, posting $1 billion in operating income and an impressive $3.3 billion bottom line. These strong numbers demonstrate the integrated healthcare system's continued financial resilience despite mounting industry pressures and operational challenges.").

[5] The arbitrating objectors in *23andMe* reached a separate, confidential settlement of their claims with the company following this Court's decision on preliminary approval. After 23andMe filed for bankruptcy, it was sold to its former CEO for over $300 million, and reached a settlement with the data breach class in bankruptcy that provides for up to $20 million in additional compensation for the class above the original $30 million class settlement. *See In re 23andMe Holding Co.*, Docket No. 4:25-bk-40976, ECF 1226 at ¶3 (Bankr. E.D. Mo. Mar 23, 2025).

The Proposed Settlement pays lip service to *23andMe* with a bare citation but does not address its fundamental holding. Instead, the parties exclude any class members with a "Perfected Arbitration Claim" (Settlement Mot. at 6-7), an illusory carveout. A "Perfected Arbitration Claim," includes only claimants "included on a Demand for Arbitration on behalf of 25 or more claimants," that complied "with Rule 4(a) of the Supplemental Rules," including having "paid the $150 filing fee" *per claimant*. *Id*. However, the Supplemental Rules are the same rules that Kaiser and the OIA promulgated *after Objectors filed their demands for arbitration*, despite Kaiser's agreement that the Operative Kaiser Rules would apply to their claims. Ex. C. In other words, the class definition was crafted precisely so that thousands of Objectors—who are represented by counsel, filed arbitrations, and then sought to challenge Kaiser's gamesmanship in promulgating the New Rules after it agreed not to—are nonetheless included in the class.

Kaiser may argue that by commencing a court case, Objectors have waived arbitration and that this distinguishes the case from *23andMe*. The filing of the *Guevara* case, and Kaiser's decision to answer and waive enforcement of the New Rules, does not alter the outcome. *23andMe* also attempted a post-dispute change to its arbitration agreement that imposed new "mass arbitration" rules and procedures. However, the dispute over the applicable rules did not stop this Court from excluding the arbitration claimants, including those that were pursuing arbitration under an earlier set of rules and those who had yet to file arbitration, from the settlement class definition. *See 23andMe*, No. 24-MD-03098-EMC, ECF No. 120-3, ¶12 (describing "a dispute between the parties as to which version of 23andMe's Terms of Service applied to users' disputes with it regarding the data breach."). Here, Objectors filed arbitrations first, under the Operative Kaiser Rules, and only turned to court after Kaiser and the OIA attempted to impose unconscionable new rules midstream. Objectors could not have predicted that Kaiser would waive arbitration in *Guevara*. Far from constituting a waiver of arbitration by Objectors, this sequence underscores that Objectors consistently sought to arbitrate and were forced into court due to Kaiser's gamesmanship.[6] *Quach v. California Com. Club, Inc.*, 16 Cal.

[6] Regardless of Objectors ability to pursue arbitration, tens of thousands of Claimants represented by undersigned counsel have certainly not waived their right to arbitrate with Kaiser. Ex. B at 3 ("In accord with the rule that applies under Sections 3 and 4 of the Federal Arbitration Act, the right to arbitration under this 'Binding Arbitration' section shall not

5th 562, 583 (2024). Regardless, the state court is the appropriate forum to determine the rules that will govern these disputes. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 150 (2024) (courts, not arbitrators, determine the applicable arbitration agreement). Kaiser's decision to enter into the Proposed Settlement and waive its arbitration clause simply demonstrates how desperate it is to not face the merits of Objectors' claims.

Consistent with *23andMe* the Court should modify, "the settlement class definition … to exclude those [] customers who have chosen to exercise their right to arbitrate, *whether by making a mere demand for arbitration* or by filing a formal complaint." 2024 WL 4982986, at *12 (emphasis added). In the alternative, the Court can construe "Perfected Arbitration Claims" to include claimants that have attempted to arbitrate by filing a demand or noticed Kaiser of their intent to arbitrate under any version of the rules. Otherwise, a defendant could side-step *23andMe* simply by amending the terms of their arbitration agreements with claimants to include unconscionable provisions, and define the class to exclude only those claimants that have complied with the new terms, no matter how onerous. This result is fundamentally inconsistent with fairness, due process, and the FAA, which provides for the enforcement of arbitration agreements according to their terms. 9 U.S.C. § 4. Objectors must be excluded from the settlement class.

### B. The Proposed Settlement's Opt Out Procedures Unfairly and Unreasonably Burden Class Members, Like Objectors, Who Are Prosecuting Their Own Claims Through Their Own Counsel

"Although the court supervising a class action has wide discretion to control a class action, including the opt-out process, that discretion must be exercised consistent with the policies and principles of the FAA when a class member with an immediate right to arbitrate its claim seeks to opt out." *In re Piper Capital Mgmt.*, 71 F.3d 298, 304 (8th Cir. 1995). Indeed, even in the absence of a clear contractual arbitration right, courts routinely deny class settlements that unreasonably impede class members' right to opt out. *See, e.g., Hadley v. Kellogg Sales Co*., No. 16-CV-04955-LHK, 2020

be denied, stayed, or otherwise impeded because a dispute between a Member Party and a Kaiser Permanente Party involves both arbitrable and nonarbitrable claims, or because one or more parties to the arbitration is also a party to a pending court action with another party that arises out of the same or related transactions and presents a possibility of conflicting rulings or findings.").

U.S. Dist. LEXIS 30193 at *22 (N.D. Cal. Feb. 20, 2020); *Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 3080822, at *8 (C.D. Cal. July 15, 2019); *Newman v. AmeriCredit Fin. Servs., Inc.*, No. 11-CV-3041-DMS-BLM, 2014 WL 12789177, at *6 (S.D. Cal. Feb. 3, 2014). "To that end, any settlement . . . must permit class members to opt out in a manner that is straightforward and respectful of their existing [arbitration] claims. The Proposed Settlement falls short in this regard . . ." *Arena*, 2021 WL 834253, at *10.

The Stipulation of Settlement here requires that, "to be excluded from the Settlement Class, the Settlement Class Member must personally request exclusion by sending a complete request for exclusion (including the Settlement Class Member's full name, mailing address, telephone number, email address, and Unique ID as provided by the Settlement Administrator), signed with a wet ink signature or DocuSigned[.]" ECF No. 345-4 at 17, Stip. 2.6. "An attorney's signature, or typed signature, is not sufficient," and "'Mass' or 'class' opt outs made on behalf of multiple persons or classes of persons will be deemed invalid." *Id.* n.6. These opt out requirements contain many of the same "troubling features" that the court found "unduly burdensome" in *Arena v. Intuit, Inc.,* including an individualized, written opt out statement bearing a unique settlement ID. 2021 WL 834253, at *10; *see also* ECF No. 345-4 at 58 (Exhibit B, Long Form Notice). Moreover, the Court in *Arena* explained that "an expected $28 will not materially change [class members'] lives," and that "class members should not face onerous burdens that, in this context, appear designed to suppress opt outs." 2021 WL 834253, at *11. Similarly, here, class members are due to receive at most an expected $72.52, a sum that does not warrant the onerous opt out procedures.

Each Claimant has authorized their counsel to submit an opt out on their behalf. Waisnor Decl. ¶28; Bryson Decl. ¶9. In similar circumstances, Courts in this district have accepted opt outs through counsel without requiring an individual signature or submission by each class member. Where a significant number of class members have preexisting relationships with counsel and have sought arbitration, courts find that the "individual signature requirement is not necessary," explaining that "common though that requirement may be, the Court does not think such a technical detail should operate to defeat the Claimants' expressed intention to exclude themselves from a Class." *In re*

*Google Assistant Priv. Litig.*, No. 5:19-CV-04286-BLF, 2025 WL 510435, at *3 (N.D. Cal. Feb. 14, 2025). Courts that have expressed concerns with opt outs through counsel all do so in situations where counsel opts out class members *without authorization*, which raises due process concerns.[7] These concerns are inapplicable here, where counsel has attested to *each individual's decision* to authorize counsel to opt them out. *See* Waisnor Decl. ¶¶28-29; Bryson Decl. ¶9. Indeed, as the Court in *In re Google* explained, where, as here, claimants seeking to opt out have made "an individualized decision to retain [counsel's] legal services and to opt out from the Class in order to pursue claims…" there is "no reason" why such claimants "may not act through their attorneys in executing those requests to opt out of the Class." 2025 WL 510435, at *3.

Here, the combination of the class definition—which excludes "Perfected Arbitration Claims"—and the opt out provision illustrates why claimants should be permitted to act through their attorneys. Claimants who have retained counsel to pursue arbitration may reasonably assume they are already excluded. Worse, Claimants may read the settlement notice and its confusing definition of Perfected Arbitration Claims, and conclude that because their arbitration was filed, they were excluded without needing to take any further action. Taken together, the settlement structure and opt out requirements appear designed to exploit that complexity created by Kaiser's gamesmanship and mislead arbitration claimants into inadvertently failing to exercise their opt out rights.

Further, the provision deeming invalid "'mass' … opt outs made on behalf of multiple persons" only serves to create inefficiency for Claimants seeking to exercise their rights and for the class itself (who will bear the expense of paying an administrator to process tens of thousands of individual opt outs). Together, these provisions distort the opt out process, making it more difficult for claimants to exercise their rights through counsel.

[7] *See e.g., In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1093 (N.D. Ill. 2021) (explaining that individual opt outs protects against "*unauthorized* mass opt-outs." (emphasis added)); *In re CenturyLink Sales Practices & Sec. Litig.*, 2020 U.S. Dist. LEXIS 114110, at *9 (D. Minn. June 29, 2020) ("the requirement that a class member must individually sign … avoids a third party or lawyer representing that they have that class member's authority, without the class member making an informed, individual decision."); *In re NFL Players' Concussion Injury Litig.*, 2019 U.S. Dist. LEXIS 652, at *17 (E.D. Pa. Jan 3, 2019) ("to allow Christopher Martin to opt out on [Anita] Martin's behalf—merely because a court consolidated their claims in a single action in furtherance of judicial administration—would infringe upon [Anita] Martin's due process rights").

### C. The Proposed Settlement Fails to Allocate Sufficient Settlement Value to California Class Members, Whose Claims Are Higher Value than Non-California Class Members

FRCP 23(e)(2) provides that, in assessing whether final approval of a settlement is likely, courts consider whether "the proposal treats class members equitably relatively to each other." In doing so, Courts look to "whether the apportionment of relief among class members takes appropriate account of differences among their claims[.]" *Lusk v. Five Guys Enters. LLC*, 2021 WL 2210724, at *9 (E.D. Cal. June 1, 2021) (citing Fed. R. Civ. P. 23(e)(2)(D)). A "concern about a structural division in the class … raises the question whether subclasses are warranted to ensure that the two groups' potentially conflicting interests are adequately represented." *Maree*, 2025 WL 2268254, at *5 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999)).

Here, the Settlement Motion explains that "all payments to eligible Settlement Class Members will be calculated in the same manner *pro rata*" and "each eligible Settlement Class Member will receive the same amount from the Net Settlement Fund." Settlement Mot. at 14. The pro rata distribution fails to give due consideration to the strength of California class members' claims based on robust privacy protections afforded under California state law that offer significant statutory damages. For instance, the operative complaint (ECF No. 271, "Complaint") alleges claims under the California Invasion of Privacy Act ("CIPA"), which entitles California plaintiffs to statutory damages equal to the greater of $5,000 per violation, or three times the amount of damages proven at trial. *See* ECF No. 271 at ¶ 471-87. Under the CMIA, prevailing plaintiffs are entitled to $1,000 in statutory damages per violation. Cal Civ Code § 56.36(b). These and other claims brought in the Complaint arise solely under California law, including California statutory law and the California Constitution. Indeed, recent cases, including a recent finding by a jury that Meta violated CIPA by intercepting the sensitive health information through the Meta Pixel in *Frasco v. Flo Health, Inc.*, show that it is possible to take data privacy cases to trial—and win—under California law. Jury Verdict, *Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757, (N.D. Cal. Aug. 4, 2025), ECF No. 756; *see also* Jury Verdict, *Rodriguez, v. Google LLC,* No. 3:20-cv-04688, (N.D. Cal. Sept. 4, 2025), ECF No. 670 ($425.7 million jury verdict).

Yet, the settlement's pro rata distribution treats all class members equally, without any explanation for why all Settling Class Members are entitled to equal shares of the settlement amount or an analysis of the relative strengths and weaknesses of the various causes of action raised in the Complaint. "What may be equal might not be equitable … as the scheme seemingly does not account for apparent distinctions amongst the class members based on the class claims." *Lusk*, 2021 WL 2210724, at *9; *see also Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1082 (C.D. Cal. 2023) (preliminary approval denied where, *inter alia*, "[t]he Court has concerns about whether the proposed distribution formula adequately compensates participating class members for their injuries, as it may overlook significant differences between class members.").

Indeed, it is routine in nationwide consumer class settlements—and in data privacy settlements in particular—to afford a premium to California class members based on these statutory differences. *See Gilleo v. California Pizza Kitchen*, No. 8:21-CV-01928-DOC-KES, 2025 WL 1721880, at *5 (C.D. Cal. June 10, 2025) ("the Settlement provides for an additional $100 statutory damages award to members of the California Settlement Subclass."); *Chabak v. Somnia Inc.*, No. 7:22-CV-9341-PMH, 2025 WL 1272789, at *2 (S.D.N.Y. Apr. 28, 2025) ("the Court finds that the Settlement treats the Class and the California Subclass equitably" where it "provides pro-rata shares to Californians and non-Californians accounting for the fact that Californians brought claims under the California Confidentiality of Medical Information Act, which includes statutory damages."); *see also Smith-Washington v. TaxAct, Inc.*, No. 23-CV-00830-VC, 2024 WL 5415448, at *2 (N.D. Cal. Dec. 30, 2024) ("the California subclass can assert a tax-preparation claim that the other state subclasses do not have. That additional avenue for relief justifies granting a slightly higher weight to the relief of the California subclass.").

This is further underscored by Class Counsel's own "Comparative Settlements." *See* ECF No. 345-2 (Exhibit 1 of the Settlement Mot.). *Harbour v. California Health & Wellness Plan* established a "California Settlement Class" that received "*twice the amount* of payments made to non-California Class Settlement Members due to the heightened protections afforded to California Class Members under the California state statutory claims asserted in this lawsuit." Order Granting Final

Settlement Approval; Granting Mot. For Attorneys' Fees & Costs, at 3, No. 5:21-cv-03322-EJD (N.D. Cal. Jan. 16, 2024), ECF No. 63. Another "Comparative Settlement" involved a *California settlement class alone*, highlighting California residents' unique and enhanced rights under state privacy laws and underscoring the insufficient value obtained by the proposed settlement for a nationwide class. *See* Order Granting Final Approval of Class Action Settlement, at ¶6, *Brooks v. Thompson Reuters Corp.*, No. 3:21-cv-01418-EMC (N.D. Cal. Feb. 21, 2025), ECF No. 280 (Chen, J.). The Complaint even had a California subclass in it. *See Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *19 (N.D. Cal. Apr. 11, 2024) ("Plaintiffs assert a multistate class claim for invasion of privacy based on the California Constitution. Alternatively, Plaintiffs assert a claim for a California subclass."). Why this approach was abandoned in the Proposed Settlement is unexplained. Instead, Class Counsel assesses the strengths and risks associated with each claim as though they were identical.

Under the unique circumstances of this case, the Proposed Settlement cannot be approved without acknowledging the strength of the California claims. Because of the arbitration clause, this Court dismissed the California claims on the grounds of arbitration and standing. ECF No. 124 at 20-21, 38 (dismissing the CIPA claim "[b]ecause the Court compelled John Doe, the only California Plaintiff to arbitration," and dismissing the CMIA claim "just as it ruled on the CIPA claim"). Procedural developments have since eroded any procedural leverage that Kaiser has from arbitration. Kaiser's Supplemental Rules have never been addressed by any court, and Kaiser has now waived arbitration in *Guevara*. *Compare* Ex. L (Kaiser's Answer, asserting affirmative defense of arbitration) *with* Ex. M (Kaiser's Amended Answer, withdrawing the affirmative defense of arbitration). This procedural posture now means that California residents can move forward with litigating their statutory claims in court. *See Taafua v. Quantum Glob. Techs., LLC*, No. 18-CV-06602-VKD, 2020 WL 95639, at *12 (N.D. Cal. Jan. 8, 2020) ("[T]he Court cannot ignore the strong possibility that in the course of negotiating the settlement of this matter, the potential weakness of Mr. Taafua's claims resulted in a smaller recovery for the class as a whole."). The intra-class conflict between California residents like Objectors, and non-California plaintiffs, is ground alone for denying

preliminary approval. *See Rollins v. Dignity Health*, 336 F.R.D. 456, 467 (N.D. Cal. 2020) (finding "it cannot grant preliminary approval" because "the Court finds a fundamental conflict of interest between the vesting group and the rest of the class").

Additionally, this structural conflict created by Kaiser's misuse of arbitration impacts both whether arbitration claimants were adequately represented under FRCP 23(a)(4) and the fairness of the settlement under FRCP 23(e)(2). It is not appropriate for a company to compel arbitration and then selectively waive its arbitration clause in order to obtain judicial approval of a settlement while building in a class definition that unfairly targets a sizeable group of class members known to be represented by counsel. This is precisely the kind of inequity FRCP 23 was designed to prevent, and it compels denial of preliminary approval. Accordingly, the Court should amend the settlement class definition to exclude all California residents, or at a minimum create a California subclass that adequately accounts for the strength of their statutory claims.

## CONCLUSION

The Proposed Settlement should not be approved. It cannot withstand FRCP 23's standards of fairness, reasonableness, and adequacy. It violates *23andMe* by sweeping in tens of thousands of California Kaiser members who exercised their right to arbitrate into the Settlement Class, imposes unnecessary and burdensome opt-out procedures that deter members from protecting their rights, in disregard of their statutory claims, which this Court held could not be pursued in this action because of Kaiser's arbitration clause.

This Court should not reward Kaiser's gamesmanship with preliminary approval. The settlement must either exclude California Kaiser members—or, at minimum exclude all arbitration claimants and reduce the barriers to opting out.

Dated: September 9, 2025

/s/ *Jonathan D. Waisnor*

Jonathan D. Waisnor (SBN 345801)
jwaisnor@labaton.com
Morris Dweck (Pro Hac Vice Application Forthcoming)
mdweck@labaton.com
**LABATON KELLER SUCHAROW LLP**

140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Daniel Bryson (Pro Hac Vice Application Forthcoming)
dbryson@brysonpllc.com
**BRYSON HARRIS**
**SUCIU DEMAY, PLLC**
900 West Morgan Street
Raleigh, NC 27603
Tel.: **919-815-4843**

Alex R. Straus (SBN 321366)
astraus@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Telephone: (866) 252-0878
Facsimile: (865) 522-0049

*Counsel for Objectors*