**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, PC**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Michael A. Innes (*pro hac vice* forthcoming)
minnes@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Interim Co-Lead Class Counsel*
(*Additional Attorneys Listed on Signature Page*)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,

Defendants.

Case No. 3:23-cv-02865-EMC

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, NOTICE TO SETTLEMENT CLASS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Judge: Hon. Edward M. Chen
Date: October 23, 2025
Time: 1:30 p.m.
Court: 5

CMC Filed: December 6, 2024
Trial Date: January 25, 2027

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. RELEVANT BACKGROUND .......... 5

III. THE PROPOSED SETTLEMENT PROTECTS THE RIGHTS OF INDIVIDUALS ARBITRATING THEIR CLAIMS .......... 7

IV. THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT'S WIDELY-USED OPT-OUT PROCEDURE .......... 10

V. THE SETTLEMENT PROVIDES SUBSTANTIAL RELIEF WHILE BALANCING THE KNOWN RISKS OF CONTINUED LITIGATION .......... 13

VI. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 23andMe, Inc. Customer Data Sec. Breach Litig.*,
2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ........ *passim*

*Agretti v. ANR Freight Sys., Inc.*,
982 F.2d 242 (7th Cir. 1992) ........ 2

*Allen v. Bamtech, LLC*,
No. 25-cv-03861 (C.D. Cal. Apr. 30, 2025) ........ 10

*In re AME Church Emp. Ret. Fund Litig.*,
No. 22-md-03035 (W.D. Tenn. Jan. 15, 2025) ........ 11

*Arena v. Intuit, Inc.*,
2021 WL 834253 (N.D. Cal. Mar. 5, 2021) ........ 8

*In re Cal. Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025) ........ 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2017 WL 3468376 (9th Cir. Mar. 2, 2017) ........ 9, 10

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........ 8

*In re Diet Drugs*,
282 F.3d 220 (3d Cir. 2002) ........ 10

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 5, 13, 15

*Edenborough v. ADT, LLC*,
2017 WL 4641988 (N.D. Cal. Oct. 16, 2017) ........ 9

*In re Facebook Biometric Info. Priv. Litig.*,
No. 15-cv-03747 (N.D. Cal. July 22, 2020) ........ 11

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
2023 WL 8443230 (N.D. Cal. Oct. 10, 2023) ........ 14

*Frasco v. Flo Health, Inc.*,
No. 21-cv-00757 (N.D. Cal. Mar. 21, 2025) ........ 11

*Glass v. UBS Fin. Servs., Inc.*,
2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) .......... 15

*Guevara v. Kaiser Found. Health Plan, Inc.*,
No. 25CV121881 (Cal. Super. Ct) .......... 3, 9, 15

*Julian v. TTE Tech., Inc.*,
No. 20-cv-02857-EMC (N.D. Cal. July 8, 2022) .......... 11, 15

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .......... 13, 14

*Martinez v. Costco Wholesale Corp.*,
No. 19-cv-05624-EMC (N.D. Cal. July 25, 2022) .......... 11

*N.Y. State Teamsters Council Health & Hosp. Fund v. Jazz Pharms., Inc.*,
2024 WL 5150632 (N.D. Cal. Dec. 16, 2024) .......... 11

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*,
910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) .......... 12

*Pearson v. P.F. Chang's China Bistro, Inc.*,
2018 WL 2316885 (S.D. Cal. May 21, 2018) .......... 8

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*,
71 F.3d 298 (8th Cir. 1995) .......... 10, 11

*Remoundos v. LendUS, LLC*,
No. 22-cv-00749-EMC (N.D. Cal. Dec. 20, 2022) .......... 11

*In re Ring LLC Priv. Litig.*,
2024 WL 2845978 (C.D. Cal. May 28, 2024) .......... 14

*Smith v. CRST Van Expedited, Inc.*,
2012 WL 5873701 (S.D. Cal. Nov. 20, 2012) .......... 9

*In re Stable Rd. Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .......... 8

*Stark v. Patreon, Inc.*,
2025 WL 1592736 (N.D. Cal. June 5, 2025) .......... 11

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) .......... 4, 11

*Vigil v. Muir Med. Grp. IPA, Inc.*,
300 Cal. Rptr. 3d 32 (Cal. Ct. App. 2022) .......... 14

*In re VIZIO, Inc., Consumer Priv. Litig.*,
2019 WL 3818854 (C.D. Cal. Aug. 14, 2019) .......... 10

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2016 WL 4376623 (N.D. Cal. Aug. 17, 2016) .......... 9

*Watson v. Checkr, Inc.*,
No. 19-cv-03396-EMC (N.D. Cal. June 16, 2021) .......... 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-md-02752 (N.D. Cal. Apr. 9, 2019) .......... 11

*Yearby v. Am. Nat'l Ins. Co.*,
No. 20-cv-09222-EMC (N.D. Cal. Aug. 11, 2023) .......... 11

*Zamora v. Ryder Integrated Logistics, Inc.*,
2014 WL 9872803 (S.D. Cal. Dec. 23, 2014) .......... 10, 15

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
2024 WL 1245341 (C.D. Cal. Mar. 18, 2024) .......... 8

*In re Zoom Video Commc'ns, Inc. Priv. Litig.*,
2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) .......... 14

**Statutes**

D.C. Code § 28-3905(k)(2)(A) .......... 14

Md. Code Ann., Cts. & Jud. Proc. § 10-410(a)(1) .......... 14

Wash. Rev. Code § 9.73.060 .......... 14

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs, on behalf of the proposed Settlement Class, respectfully submit this Reply Memorandum of Points and Authorities in support of their Motion for preliminary approval of the Settlement and request that the Court enter the proposed Preliminary Approval Order that will: (1) preliminarily approve the Settlement between the Parties; (2) preliminarily certify the proposed Settlement Class; (3) approve the proposed Notice Plan; and (4) set a date for the Fairness Hearing.

### I. INTRODUCTION

As set forth in the Motion for Preliminary Approval, Plaintiffs and Class Counsel have vigorously prosecuted claims in this case for over two years against a well-funded and determined adversary that aggressively exercised all of its available legal defenses.[1] Put simply, the litigation was hard fought and included ***three rounds*** of motion to dismiss briefing, oral argument on the motion to dismiss, extensive discovery, including Kaiser's production and Class Counsel's review of nearly 40,000 documents, Plaintiffs' negotiation of subpoenas with nine third parties, multiple days of in-person review of source-code material by experts, six in-person discovery conferences before Magistrate Judge Peter H. Kang[2] where Class Counsel argued and prevailed on multiple discovery disputes, and protracted settlement negotiations, including mediations before two separate, highly experienced and respected retired federal judges—Hon. Wayne R. Andersen and Hon. Jay C. Gandhi—who served as JAMS mediators. In addition, and of particular relevance to this brief, Plaintiffs filed a successful motion for preliminary injunction which caused Kaiser to end the challenged data collection practices at issue here – a change that occurred long before the purported Objectors' counsel took any action on behalf of any client.

Given the extensive and well-developed factual record, Class Counsel was more than well-equipped to assess the relative strengths and weaknesses of the case and to recommend a proposed

---

[1] Unless otherwise noted, all emphases are added, all internal citations and quotations are omitted, all defined terms have the meaning in Plaintiffs' Motion for Preliminary Approval (ECF No. 345).

[2] The Discovery Management Conferences were held on July 19, 2024 (ECF No. 213), October 18, 2024 (ECF No. 242), November 15, 2024 (ECF No. 263), December 17, 2025 (ECF No. 276), January 24, 2025 (ECF No. 296), and March 13, 2025 (ECF No. 322).

settlement to the Court. The Purported Objectors Opposition to the Motion ("Opp.") (ECF No. 351)[3] is procedurally and substantively without merit. A brief review of the procedural history illustrates some of its flaws. In January 2024, ***after this litigation had been pending for nearly six months and Class Counsel litigated a preliminary injunction motion that resulted in Kaiser's removal of certain challenged technologies from the Site and Apps***, Objector's counsel began advertising for clients to pursue a mass arbitration. *See* Declaration of Joseph H. Meltzer ("Meltzer Declaration"), Ex. 1. But, instead of aggressively prosecuting those arbitrations, the purported Objectors' counsel chose to do no actual substantive work. Instead, they executed a tolling agreement with Kaiser and chose to freeride on the back of Class Counsel who devoted all the time and resources necessary to litigate the case on behalf of the Class.

Significantly, had Objectors' counsel actually proceeded with perfecting the underlying arbitrations ***in the year and a half*** that has elapsed since they began advertising for clients, those arbitrations would have been explicitly excluded from the Settlement consistent with this Court's guidance in *In re 23andMe, Inc. Customer Data Security Breach Litigation*, 2024 WL 4982986 (N.D. Cal. Dec. 4, 2024). But there is a significant difference between amassing arbitration clients and actually doing the work necessary to prosecute a mass arbitration to conclusion. It is a difference of great import here because the purported Objectors' counsel apparently never had any intention of undertaking the actual work of prosecuting their clients' claims. Indeed, although Objectors' counsel goes to great lengths explaining why they think Kaiser's arbitration procedures are unfair, they have never challenged those arbitration procedures by filing a motion to compel compliance with their interpretation of the rules, or by moving for an injunction or any other order which would have defined and clarified the rules governing an arbitration between the parties. By failing to take basic steps to vindicate their clients' rights through arbitration, purported Objectors' counsel reveal that their real game plan was to simply coast in the hope that Kaiser would settle with them after Class Counsel did all the substantive work necessary to develop and prove the validity of the case.

[3] There is no procedural mechanism for this objection to preliminary approval, nor do the objectors have standing or the ability to renegotiate the terms of the settlement. *See Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir. 1992) ("[A] non-settling party does not have standing to object to a settlement between other parties.").

But there is more. Not only did the purported Objectors' counsel fail to undertake the work necessary to protect any purported arbitration rights, the Objectors actually waived any right to arbitrate and filed a purely copy-cat class action case in California state court.[4] Remarkably, the same 6 (six) plaintiffs who are the purported Objectors here, and complain about being included in the class because they allegedly prefer to arbitrate their claims, actually filed their own purported ***class action*** in the Superior Court of California, County of Alameda, on May 6, 2025, mirroring the claims which Class Counsel has prosecuted for years. *See* Meltzer Decl, Ex. 2 (Class Action Complaint, *Guevara v. Kaiser Found. Health Plan, Inc.*, No. 25CV121881 (Cal. Super. Ct)); *compare with* Consolidated Master Class Action Complaint, ECF No. 271. The state action was filed ***just ten (10) days*** after the Parties here advised the Court that they would be engaging in a second mediation on May 13, 2025. *See* ECF No. 338. Notably, the action seeks to ***include Objectors and all of Objectors' counsel's other clients***—as part of the class in state court, defining the putative class to include all "California Citizens who are Kaiser Plan Members and beneficiaries" except for, *inter alia*, "anyone who has previously given notice of an intention to arbitrate and is represented by counsel ***other than [Objectors'] undersigned counsel***." Meltzer Decl., Ex. 2 ¶ 170. In other words, in the state court action, the purported Objectors' counsel explicitly represent that they have abandoned any intention to arbitrate on behalf of the alleged 20,000 clients they say they represent.

What should be made then of their California state class case? Bluntly, nothing -- it is a pure copy-cat action filed years after this case and filed merely to protect the interest of counsel, not the class. These types of cases are routinely folded into the settlement of a first-filed advanced federal action such as this. And—as putative Settlement Class members—purported Objectors' counsel's clients must (as is usual practice) submit individual opt-outs if they do not wish to be part of the Settlement Class. There is no basis for *en masse* objections. As this Court made clear in *In re 23andMe, Inc. Customer Data Security Breach Litigation*:

> Thus, ***the [state court] clients and any other state court litigants appear to fall within the definition of the settlement class here and therefore will be directly issued the***

[4] Despite submitting 19 exhibits with the objection, Objectors omitted the operative pleading in the state court action, which includes copy-cat factual allegations that bear striking similarities to the factual allegations and language used by Plaintiffs in the Complaint here.

> ***class notice(s)*** approved by the Court. The [state court] clients may opt out of the settlement ***but en masse objections will not be permitted***. *See In re CenturyLink Sales Pracs. & Sec. Litig*., MDL No. 17-2795 (MJD/KMM), 2020 WL 3512807 at *3, 2020 U.S. Dist. LEXIS 114110 at *9-10 (D. Minn. June 29, 2020) (explaining that "the requirement that a class member must individually sign is vital, because it ensures that the class member is individually consenting to opt out, and avoids a third party or lawyer representing that they have that class member's authority, without the class member making an informed, individual decision").

2024 WL 4982986, at *25 (Chen, J.).

The purported Objectors are playing an obviously duplicitous game and for that reason it is all the more critical that the normal and effective opt-out procedures outlined in the Settlement Agreement are meticulously followed. There is nothing remotely onerous about these procedures -- they simply insure against fraud by requiring class members to make an informed decision about their legal rights.[5] And, in a further twist of duplicity, it comes as no surprise that ***Objectors' counsel have included nearly identical opt-out procedures*** in class settlements they have advocated on behalf of. *See* Meltzer Decl., Ex 3 (comparing opt-out language in multiple approved classes). Notably, when Objectors' counsel has previously attempted mass opt-outs of class settlements, courts have rejected those efforts. *See, e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1092 (N.D. Ill. 2021) (rejecting attempt by Labaton to opt-out class members *en masse*).

In sum, the Settlement Agreement in this case contains necessary opt-out processes that are routinely utilized and approved by settlement courts. Purported Objectors' counsel know this because they have done the exact same thing when they have been class counsel. That fact tells pretty much the entire story here.

Objectors' final argument that the California class is somehow short-changed in the Settlement fares no better. This Court has previously evaluated all of the claims identified by

---

[5]*See* Ross Weiner, *The Increasing Danger of Fraudulent Claims in Class Action Settlements*, New York Law Journal (July 26, 2023 at 2:00 pm) https://www.law.com/newyorklawjournal/2023/07/26/the-increasing-danger-of-fraudulent-claims-in-class-action-settlements/?slreturn=20250919103546 (highlighting class actions consumers settlements where the claims administrator determined that 47% and 49% of claims filed were fraudulent); *see* Digital Disbursements and Western Alliance Bank, *2024 Annual Report: Digital Payments in Class Actions and Mass Torts* (April 2024) at 5, Digital Disbursements and Western Alliance Bank (April 2024), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.westernalliancebancorporation.com/sites/default/files/2024-04/2024-digital-payments-research-report.pdf (highlighting a growth in Class Action and Mass Tort Claims with Significant Indicia of Fraud by 19,000% from 2021 (421,584) to 2023 (80,879,604)).

Objectors, including several California statutory claims which Objectors' counsel erroneously contend were not properly considered, and Class Counsel is well aware of the strengths and weaknesses of the case. *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *1 (N.D. Cal. Apr. 11, 2024). As detailed below, considering the risks and benefits of further litigation, the Settlement is in all Class members' best interest and Objectors cannot substitute their judgement for that of the Parties, Class Counsel and the experienced mediators who assisted in resolving this action.

Accordingly, Plaintiffs respectfully request that the Motion be granted and that notice of the Settlement and Fairness Hearing be provided to the Settlement Class.

## II. RELEVANT BACKGROUND

Plaintiffs filed their initial complaint on June 9, 2023 (ECF No. 1) and a First Amended Class Action Complaint ("FAC") on September 15, 2023, which included additional plaintiffs and claims (ECF No. 44). After Plaintiffs' investigation in support of their amended complaint revealed that Kaiser's website and mobile applications continued to permit Third Party Wiretappers to intercept Kaiser Permanente members' communications, Plaintiffs moved for a preliminary injunction on October 4, 2023 to compel the removal of the offending code (ECF No. 58). In response to Plaintiffs' motion, Defendants confirmed that, following an investigation, Kaiser had removed the trackers at the heart of Plaintiffs' claims and implemented banners to provide more fulsome disclosure of Kaiser's privacy policy by November 13, 2023 (ECF No. 96); *see also* Disc. Hr'g Tr. at 53:25-54:1 (July 18, 2024), ECF No. 217 (Kaiser counsel admitting "[t]his litigation was part and parcel of what spurred the investigation into those technologies."). Having achieved the relief sought in their proposed preliminary injunction, Plaintiffs withdrew their motion. *See* ECF No. 101. Defendants filed a Motion to Dismiss the FAC (ECF No. 88) on November 14, 2023, which Plaintiffs opposed on January 15, 2024 (ECF No. 109).

These prior proceedings are wholly ignored by purported Objectors' counsel. In fact, it was not until January 2024—seven months after Plaintiffs' action was filed and nearly two months after Plaintiffs' successful preliminary injunction motion—that Labaton Keller Sucharow LLP ("Labaton") commenced an advertising campaign seeking clients for a mass arbitration against Kaiser Permanente. Meltzer Decl., Ex. 1. Shortly thereafter, on March 14, 2024, oral argument was held,

and on April 11, 2024, this Court granted in part and denied in part the Motion to Dismiss. ECF No. 124. The following day, Kaiser submitted notices to regulators informing them about the privacy breach alleged by Plaintiffs. ECF No. 127. Again, ignored by Objectors' counsel, it was Class Counsel's litigation efforts here that prompted the April 11 Notice and undoubtedly led to even more public interest in this action. Indeed, on April 26, two-weeks after the public notice prompted by Plaintiffs' action, Labaton apparently identified another 5,500 potential claimants to Defendants and Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") provided notice to Defendants for the first time on May 23, 2024 of 1,293 potential claims—eleven months after Plaintiffs' action was filed and over one month after the Motion to Dismiss was denied, in part, and Kaiser provided public notice. Milberg provided a second notice on behalf of an additional 4,201 potential claimants on July 23, 2024.

Plaintiffs filed their Second Amended Complaint on May 31, 2024. ECF No. 162. Kaiser moved to dismiss on July 3, 2024 (ECF No. 205), and Plaintiffs opposed the Motion on August 22 (ECF No. 223). During this time, two related cases were filed and consolidated with this Action (ECF No. 233) and KTMC and Carella Byrne were appointed Interim Co-Lead Class Counsel (*Id.*). As a result, the Court ordered Plaintiffs to file a consolidated amended complaint and mooted Kaiser's pending Motion to Dismiss. *Id.*

In October 2024, the Parties attempted to resolve this action with the assistance of retired U.S. District Judge for the Northern District of Illinois, Hon. Wayne R. Andersen, in a two-day mediation. Defendants invited Objectors' counsel to the first day of the Parties' mediation. Neither the Parties, nor Defendants and Objectors' counsel, resolved their disputes at that time. Plaintiffs filed their Consolidated Master Class Action Complaint on December 6, 2024. ECF No. 271 (the "Consolidated Complaint") and continued pursuing discovery, including bringing multiple discovery disputes before Judge Kang.

Without the involvement or knowledge of Plaintiffs and Class Counsel, on December 23, 2024—eighteen months after Plaintiffs' action commenced and nearly three weeks after their Consolidated Complaint was filed—Labaton purported to demand arbitration. Milberg did the same on December 27. While there was apparently a dispute over the arbitration rules, Objectors' counsel

did not seek to compel Defendants to arbitration.

Kaiser moved to dismiss the Consolidated Master Class Action Complaint on January 28, 2025. ECF No. 303. Plaintiffs opposed the Motion on March 4 (ECF No. 314), and Kaiser filed their Reply in support of the Motion on April 11 (ECF No. 334).

On April 25, 2025, the Parties informed the Court in their Joint Status Report that they intended to engage in settlement discussions in a second mediation on May 13, 2025. Almost immediately thereafter, Objectors' counsel then abandoned arbitration—and arbitration proceedings generally—and filed a class action complaint in California state court. The complaint—brought by the six Objectors here, Jessica Guevara, Nicole Reynolds, Linda Rodriguez, Oscar Ocaranza, Yara Garcia, and Cindy Barkho—largely tracks Plaintiffs' Consolidated Complaint and includes factual allegations only made possible by Class Counsel's efforts in vigorously prosecuting this litigation. Further underscoring that they had no real intention to actually prosecute their claims and proceed through arbitration, Objectors' counsel have made no attempt to compel Kaiser to arbitration under their preferred rules or seek a declaratory judgment as to the operative rules.

During the Parties' mediation on May 13 before Hon. Jay C. Gandhi, retired U.S. Magistrate Judge for the Central District of California, the Parties reached an agreement in principle to resolve this litigation. The Parties finalized their agreement and sought preliminary approval in August 2025. ECF No. 345. On September 9, 2025, the same six state court plaintiffs represented by Labaton and Milberg filed an objection to preliminary approval of the Parties' proposed Class Settlement. ECF No. 351.

## III. THE PROPOSED SETTLEMENT PROTECTS THE RIGHTS OF INDIVIDUALS ARBITRATING THEIR CLAIMS

As this Court explained in *In re 23andMe, Inc. Customer Data Security Breach Litigation* when considering a proposed settlement class definition, individuals who have chosen to arbitrate their claims "***have chosen not to litigate***." 2024 WL 4982986, at *11. Specifically, this includes those who have made a "demand for arbitration," but not those who have "simply threaten[ed] to arbitrate." *Id.* at 12. Consistent with this holding, the Parties' Settlement Agreement here excludes from the settlement class definition those with a "Perfected Arbitration Claim," which encompasses

individuals who have formally demanded arbitration pursuant to Kaiser Permanente's dispute resolution procedures and paid the $150 filing fee. Stip., ¶¶ 1.11, 1.18, 1.19.

That is to say, the definition excludes those who have, in fact, chosen to arbitrate their claims. During the two years in which Plaintiffs have vigorously contested this litigation, however, Objectors have ***merely threatened*** arbitration, then abandoned that threat and chose to pursue relief through a putative class action in state court. Despite allegedly providing notice to Kaiser of their potential claims in February 2024—eight months after Plaintiffs filed this action and after Plaintiffs succeeded in having Kaiser remove the offending code from the Site and Apps—Objectors and their counsel did not even attempt to commence an arbitration until December 23 and 27, 2025. Opp. at 4-5. Then, a mere four months later, "[r]ather than proceed" in arbitration "Claimants filed a putative class action on May 6, 2025[,]" choosing to litigate. *Id.* at 9.

Thus, unlike *In re 23andMe* or *Arena v. Intuit, Inc.*, 2021 WL 834253 (N.D. Cal. Mar. 5, 2021) (also cited by Objectors), Objectors are not individuals who have chosen arbitration over litigation—they are simply six litigants in a duplicative state court action filed nearly two years after the initiation of this case. The mere fact of this follow-on litigation is not an obstacle to preliminary approval of the Class Settlement negotiated by the Parties. Federal courts are empowered to "release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (quoting *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir.1982)). Thus, even where a state court exercises independent jurisdiction over a separate class action based on overlapping claims, federal courts are empowered to approve settlements which comply with Rule 23. *See In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *2 (C.D. Cal. Apr. 23, 2024); *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2024 WL 1245341, at *8 (C.D. Cal. Mar. 18, 2024); *Pearson v. P.F. Chang's China Bistro, Inc.*, 2018 WL 2316885, at *1 n.2 (S.D. Cal. May 21, 2018).

Indeed, the history recounted by the Objectors makes clear why the Settlement Class definition here (excluding those with Perfected Arbitration Claims) was necessary to provide

certainty about which Kaiser Permanente members have, in fact, chosen to arbitrate their claims. *See Edenborough v. ADT, LLC*, 2017 WL 4641988, at *2 (N.D. Cal. Oct. 16, 2017) (quoting *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012)) ("[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'"). According to Objectors, Labaton notified Defendants that 21,114 Kaiser Permanente members intended to seek arbitration of their claims. Opp. at 4. Milberg also claims to have notified Defendants that they intended to arbitrate the claims of 5,494 Kaiser Permanente members, and subsequently purported to commence proceedings on behalf of 7,189 members. *Id.* at 5. But, of the tens of thousands of members identified, ***only ten arbitration proceedings*** were actually initiated in compliance with Kaiser's arbitration rules. *See* Mot. to Stay at 6, *Guevara v. Kaiser Found. Health Plan, Inc.*, No. 25CV121881 (Cal. Super. Ct. Aug. 25, 2025). Now, these thousands of claimants have abandoned arbitration altogether, and instead a mere six individuals seek relief in state court on behalf of a class allegedly including all of the identified claimants who Objectors' counsel claims here should be subject to arbitration proceedings. Opp. at 9. The Settlement Class definition here should not be cast aside simply to allow Objectors to seek to represent a class in a belated, copycat, redundant state court litigation.

Nor is such an objection permissible under the Federal Rules. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 3468376, at *1 (9th Cir. Mar. 2, 2017) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998)) ("There is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights *en masse*, either by making a class-wide objection or by attempting to effect a group-wide exclusion from an existing class. Indeed, to do so would infringe on the due process rights of the individual class members, ***who have the right to intelligently and individually choose whether to continue in a suit as class members***."). Accordingly, courts do not permit putative objectors to seek to exclude entire groups of class members in order to pursue separate class actions. *See Smith v. CRST Van Expedited, Inc.*, 2012 WL 5873701, at *3-4 (S.D. Cal. Nov. 20, 2012) (quoting *Hanlon*, 150 F.3d at 1024) ("[T]o allow representatives in variously asserted class actions to opt a class out without the permission of individual class members would lead to chaos in the management of class actions."); *see also In re:*

*Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2016 WL 4376623, at *4 (N.D. Cal. Aug. 17, 2016) ("Virginia class members can evaluate the Settlement and decide for themselves if they should participate, object, or opt out. Fleshman cannot choose for them."); *Zamora v. Ryder Integrated Logistics, Inc.*, 2014 WL 9872803, at *2, n.2 (S.D. Cal. Dec. 23, 2014) ("Martinez has no standing to intervene here simply because the settlement may impact the size or composition of the class he purports to represent.").

Moreover, while Objectors discuss at length a dispute regarding the applicable procedures for their abandoned arbitrations, not only is that issue not properly before this Court, ***it is not pending before any court or tribunal***. *See* Meltzer Decl., Ex. 2 (failing to seek resolution of the disputed arbitration procedures). Objectors and their counsel never attempted to resolve this dispute in any forum, and instead filed a class action complaint relying on factual allegations developed in this litigation. If Objectors truly wanted to pursue arbitration, rather than repurpose Plaintiffs' efforts for their own self-interest, their counsel could have followed the procedural mechanisms available to do so—they did not. *See* Petition to Compel Arbitration, *Allen v. Bamtech, LLC*, No. 25-cv-03861 (C.D. Cal. Apr. 30, 2025), ECF No. 1 (petitioning to compel arbitration under pre-amendment agreement).

## IV. THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT'S WIDELY-USED OPT-OUT PROCEDURE

The right to opt-out is an individual right, and class members "have the right to intelligently and individually choose whether to continue in a suit as class members." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 3468376, at *1 (quoting *Hanlon*, 150 F.3d at 1024); *see also In re Diet Drugs*, 282 F.3d 220, 241 (3d Cir. 2002) ("[O]pting out is an individual right and it must be exercised individually."). Settlement Class Members who do not want to remain a member of the Settlement Class may request exclusion in accordance with the instructions set forth in the Long Form Notice. Stip. ¶ 2.6; N.D. Cal. Guid. 4. The procedures outlined in the Settlement Agreement and described in the Long Form Notice are commonplace provisions designed to protect the due process rights of Settlement Class Members. *See, e.g., In re VIZIO, Inc., Consumer Priv. Litig.*, 2019 WL

3818854, at *8 (C.D. Cal. Aug. 14, 2019). They should be approved here.[6]

The Settlement Agreement's widely-adopted exclusion procedures have been routinely approved, including by this Court, and utilized by Objectors' counsel in multiple class actions throughout the country, including in this District. *See* Meltzer Decl., Ex. 3 (chart comparing relevant opt-out procedures in Motions for Settlement of Preliminary Approval, Ex. 3, *Frasco v. Flo Health, Inc.*, No. 21-cv-00757 (N.D. Cal. Mar. 21, 2025), ECF No. 589-4 at 11 (Labaton); *In re AME Church Emp. Ret. Fund Litig.*, No. 22-md-03035 (W.D. Tenn. Jan. 15, 2025), ECF No. 676-2 at 20 (Milberg); *Yearby v. Am. Nat'l Ins. Co.*, No. 20-cv-09222-EMC (N.D. Cal. Aug. 11, 2023), ECF No. 82-4 at 19; *Remoundos v. LendUS, LLC*, No. 22-cv-00749-EMC (N.D. Cal. Dec. 20, 2022), ECF Nos. 40-7 at 8, 44 at 5; *Martinez v. Costco Wholesale Corp.*, No. 19-cv-05624-EMC (N.D. Cal. July 25, 2022), ECF No. 37-2 at 29, *Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC (N.D. Cal. July 8, 2022), ECF No. 140 at 5-6 (Milberg); *Watson v. Checkr, Inc.*, No. 19-cv-03396-EMC (N.D. Cal. June 16, 2021), ECF No. 66-1 at 17; *In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-03747 (N.D. Cal. July 22, 2020), ECF No. 468 at 17 (Labaton); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752 (N.D. Cal. Apr. 9, 2019), ECF No. 369-7 at 19 (Milberg)).

Individualized requests for exclusions ensure that the due process rights of class members are protected. As this Court explained in *23andMe*, "the requirement that a class member must individually sign is vital, because it ensures that the class member is individually consenting to opt-out, and avoids a third party or lawyer representing that they have that class member's authority, without the class member making an informed, individual decision." 2024 WL 4982986, at *25 (quoting *In re CenturyLink*, 2020 WL 3512807 at *3). In light of these concerns, courts "have routinely enforced the requirement that class members individually sign and return a paper opt-out form" and "frequently reject[] the very sort of 'attempts by lawyers to opt out class members *en masse*' that counsel for the Arbitration Claimants ask the Court to approve here." *In re TikTok*, 565 F. Supp. 3d at 1093; *see also N.Y. State Teamsters Council Health & Hosp. Fund v. Jazz Pharms.*,

[6] Objectors cite *In re Piper Funds, Inc., Institutional Government Income Portfolio Litigation*, 71 F.3d 298 (8th Cir. 1995), which is inapposite. There, the District Court enjoined a settlement class member from arbitrating its claim. *Id.* at 302. Here, not only have Objectors waived their right to arbitration, no such injunction is before the Court.

*Inc.*, 2024 WL 5150632, at *5 (N.D. Cal. Dec. 16, 2024) (denying mass opt-out of class members without individualized authorization); *Stark v. Patreon, Inc.*, 2025 WL 1592736, at *16 (N.D. Cal. June 5, 2025) (invalidating mass opt-outs for failure to comply with settlement agreement). In fact, despite Objectors' counsel representation that are authorized to opt their nearly 20,000 clients out of the settlement, their declarations confirm that their clients have not yet even been fully informed about the Settlement.[7] *See* Waisnor Decl. ¶¶ 28-29, ECF No. 351-2 (representing that "Claimants have each authorized Labaton Keller Sucharow LLP to opt out of the proposed settlement on their behalf" while at the same time acknowledging that "[i]f the Court permits Objectors and Claimants to opt-out of the proposed settlement through a single communication from counsel and otherwise approves the proposed settlement, ***our firm intends to notify Claimants of the proposed settlement terms*** before they exercise their opt-out rights").

Rather than present this option and opportunity to its clients, Objector's counsel wishes to substitute its own judgment for them, signing counsel's name only instead of obtaining client signatures evidencing an informed choice by the client, an acute risk that this Court and others have recognized with such mass opt outs. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 939 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ("[C]ounsel for such mass opt-outs may have breached their fiduciary and ethical duties to their clients; at the very least, the mass unsigned opt outs are highly indicative of a conclusion that such counsel did not spend very much time evaluating the merits of whether or not to opt-out in light of the individual circumstances of each of their client and in consultation with them.").

With over 13 million class members, the standardized opt-out process utilized here is vitally

[7] Moreover, it is also clear that Objectors' counsel did not even inform their clients of the full grounds for the objection, as Objectors' Declarations make clear that their only criticism of the Settlement is that they believe that it does not provide sufficient compensation—not that the opt-out procedures are unduly burdensome or that they are improperly included within Settlement Class definition. Barkho Decl., ECF No. 351-16 ("I have authorized my attorneys . . . to object to the settlement on my behalf, ***as I believe the settlement inadequately compensates me*** for the value of my class claims against Kaiser."); Garcia Decl., ECF No. 351-17 (same); Guevara Decl., ECF No. 351-18 (same); Ocaranza Decl., ECF No. 351-19 (same); Reynolds Decl. ECF No. 351-20 (same); Rodriguez Decl., ECF No. 351-21 (same).

important to ensure that Settlement Class members sufficiently understand their rights and the consequences of opting out, and to ensure that their intentions are clearly conveyed in a manner that is documented and verified. The necessity of these opt-out procedures, which ensure informed client consent, is only further heightened in light of the conflicting positions Objectors' counsel have taken regarding whether their nearly 20,000 clients prefer to proceed through individual arbitrations or as part of a class action. Look no further than one of the declarations submitted by Objectors' counsel, which not only calls into question the extent of the conversations held with the clients but also seems to conflict with the class definition in and any potential resolution of *Guevara*—***which includes Milberg and Labaton clients***. *See* Declaration of Daniel Bryson (ECF No. 351-1 ¶ 9 ("Clients simultaneously represented by the Bryson Firm and Milberg have authorized their Counsel to opt them out of ***any*** class settlement in this matter.") (emphasis added)). Yet another example of inconsistent conduct by counsel for Objectors.

## V. THE SETTLEMENT PROVIDES SUBSTANTIAL RELIEF WHILE BALANCING THE KNOWN RISKS OF CONTINUED LITIGATION

After more than two years of litigation, Plaintiffs and Class Counsel are well aware of the strengths and weaknesses of the claims at issue in this case. With the benefit of multiple rounds of substantive briefing, review of nearly 40,000 documents, and consultation with multiple experts, the risks posed by Defendants' legal and factual defenses, hurdles at class certification, and the wide range of possible recoveries are clear. While Objectors quibble that pro rata distribution of settlement funds could disadvantage class members from California who can assert certain statutory claims, a District Court "evaluat[es] the strength of the plaintiffs' *case* in its entirety rather than on a claim-by-claim basis." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012).

Crucially, Objectors mischaracterize this Court's holdings and their implications for the California class member claims, suggesting they were limited to issues of standing. Opp. at 19. While Plaintiffs believe they should prevail in opposing Kaiser's most recent Motion to Dismiss, the Court's earlier opinion identified challenges to these claims and success is not guaranteed. For example, to prevail on their CIPA claim, Plaintiffs would be required to show "the extent the third parties were subject to Kaiser's control and ability to limit the use of dissemination of the medical data." *Doe*,

2024 WL 1589982, at *18. Moreover, even if successful, Plaintiffs would encounter additional hurdles at class certification. For example, under CMIA, there is caselaw (which Plaintiffs disagree with) finding that CMIA claims are not amenable to class certification. *See Vigil v. Muir Med. Grp. IPA, Inc.*, 300 Cal. Rptr. 3d 32 (Cal. Ct. App. 2022). The mere presence of claims providing statutory damages does not override the real risks of continued litigation, and as such "the accuracy of [Objectors'] valuation is tenuous at best." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 677 (9th Cir. 2025) (rejecting objectors' contention "that they could have notched a more favorable settlement on behalf of the class").

Moreover, Californians are not the only class members with claims providing for statutory damages. In addition to claims brought on behalf of all Kaiser members under the Electronic Communications Privacy Act, Class members from the District of Columbia, Maryland, and Washington asserted claims that provide for statutory damages. *See* ECF No. 271; *see also* D.C. Code § 28-3905(k)(2)(A); Md. Code Ann., Cts. & Jud. Proc. § 10-410(a)(1); Wash. Rev. Code § 9.73.060. However, just as with the claims of California class members, all of these claims face potential risks in ongoing litigation. The proposed Settlement balances its benefits against the very real risks of continued litigation, and that is sufficient under Rule 23. *Lane*, 696 F.3d at 819 ("[T]he question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court.").

Further, the Parties' Settlement was the product of arms-length negotiations held before Hon. Jay C. Gandhi (Ret.), a nationally recognized mediator with extensive experience resolving complex class actions such as this. *In re Zoom Video Commc'ns, Inc. Priv. Litig.*, 2022 WL 1593389, at *2 (N.D. Cal. Apr. 21, 2022) (explaining that Judge Gandhi is "a former magistrate judge and a respected mediator with significant class-action and data-privacy experience"). Judge Gandhi has been instrumental in the resolution of landmark privacy cases, including the settlement in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 2023 WL 8443230, at *3 (N.D. Cal. Oct. 10, 2023) ("[T]he Court is aware, based on communications with mediator Jay Gandhi, that his involvement was critical in brokering a fair settlement."). Judge Gandhi's extensive and widely recognized experience with data privacy class actions provides external validation that the Settlement

appropriately balances its benefits against the risks of continued litigation. *See In re Ring LLC Priv. Litig.*, 2024 WL 2845978, at *3 (C.D. Cal. May 28, 2024) ("As noted in the Preliminary Approval Order, the parties attended three separate mediation sessions with Judge Gandhi. . . . The fact that the parties utilized an experienced mediator to reach the Settlement Agreement supports the notion that it was the product of arm's length negotiation."). Objectors' counsel are of course familiar with Judge Gandhi's ability to reach fair settlements, having mediated their own disputes before him. *See* Motion for Preliminary Approval of Class Settlement at 7, *Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC (N.D. Cal. Feb 15, 2022), ECF No. 120 ("The Parties reached the Proposed Settlement after day-long negotiations overseen by the Hon. Jay C. Gandhi (Ret.) of JAMS., a retired judge with extensive experience and capable of analyzing the strengths and weaknesses of the Parties' cases. Judge Gandhi ensured that the Parties' negotiations were held in good faith and at arm's-length.").

Finally, as the Objectors made clear in their opposition to Defendants' motion to stay in the state court action, if this Court "were to grant preliminary approval of the *Doe* Settlement . . . [Objectors] . . . represented by undersigned counsel, will likely opt out of the *Doe* settlement rather than release their claims." Opp. to Mot. to Stay at 9, *Guevara v. Kaiser Found. Health Plan, Inc.*, No. 25CV121881 (Ca. Super. Ct. Alameda Cnty. Sept. 4, 2025). In fact, Objectors have submitted Declarations here confirming their desire to opt-out of the Settlement. *See* Barkho Decl., ECF No. 351-16 at 2 ("I have further authorized my attorneys . . . to opt me out of the settlement class, should the Court grant preliminary approval of the proposed settlement."); Garcia Decl., ECF No. 351-17 at 2 (same); Guevara Decl., ECF No. 351-18 at 2 (same); Ocaranza Decl., ECF No. 351-19 at 2 (same); Reynolds Decl., ECF No. 351-20 at 2 (same); Rodriguez Decl., ECF No. 351-21 at 2 (same). Thus, given the Objectors' manifest intention not to remain members of the Settlement Class, they lack standing to object to its terms. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *8 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (quoting *Mayfield v. Barr*, 985 F.2d 1090 (D.C.Cir.1993)) ("'[T]hose who are not class members, because they are outside the definition of the class or have opted out' lack standing to object to class settlement."). Further, Objectors have "no standing to intervene here simply because the settlement may impact the size or composition of the class [they] purport[] to represent." *Zamora*, 2014 WL 9872803, at *2 n.2.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant the Motion and enter the proposed Preliminary Approval Order.

Dated: September 23, 2025

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Joseph H. Meltzer*
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

-and-

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Michael A. Innes (*pro hac vice* forthcoming)
minnes@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
Jordan M. Steele (*pro hac* forthcoming)
jsteele@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

*Interim Co-Lead Class Counsel*

**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey, Cal Bar No. 125961
bobmackeyesq@aol.com
16320 Murphy Road
Sonora, CA 95370
Telephone: (412) 370-9110

-and-

**MIGLIACCIO & RATHOD LLP**
Jason S. Rathod
jrathod@classlawdc.com
412 H Street NE, no. 302
Washington, DC, 20002
Telephone: (202) 470-3520

*Additional Counsel for Plaintiff Alexis Sutter*