CROWELL & MORING LLP
Kristin J. Madigan (SBN 233436)
  KMadigan@crowell.com
Anna Z. Saber (SBN 324628)
  ASaber@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone:  415.986.2800
Facsimile:   415.986.2827

CROWELL & MORING LLP
Jennie Wang VonCannon (SBN 233392)
  JVonCannon@crowell.com
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone:  213.622.4750
Facsimile:   213.622.2690

CROWELL & MORING LLP
Jeffrey L. Poston (appearance pro hac vice)
  JPoston@crowell.com
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:  202.624.2500
Facsimile:   202.628.5116

Attorneys for Defendants Kaiser Foundation Health
Plan, Inc., Kaiser Foundation Hospitals, and Kaiser
Foundation Health Plan of Washington

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | Case No. 3:23-cv-02865-EMC<br><br>**DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC.'S MEMORANDUM IN REPLY TO OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        October 23, 2025<br>Time:        1:30 p.m.<br>Ctrm.:        5<br>District Judge:        Hon. Edward M. Chen<br><br>Consolidated Complaint<br>  Filed:  December 6, 2024<br>Trial Date: January 25, 2027 |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

KFHP, INC.'S REPLY TO OPP. TO SETTLEMENT
APPROVAL; CASE NO. 3:23-CV-02865-EMC

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ........................................................................................................... 2

    A.   Kaiser Permanente's Evidence of Coverage for California Members Requires Binding Arbitration to Resolve Member Disputes.................................................... 2

    B.   The Office of the Independent Administrator Administers Arbitrations Between Members and Kaiser Permanente.......................................................................... 3

    C.   As Part of Its Oversight Function, the AOB Is Authorized to Amend the OIA Rules to Deal with Events Not Contemplated Under Existing Rules. ..................... 4

    D.   In June 2023, Plaintiffs Filed this Action Based on Kaiser Permanente's Alleged Use of Third-Party Tracking Technology. ................................................................ 4

    E.   From February to December 2024, Two Firms Provided Notice of Intent to Arbitrate Claims Duplicative of this Action on Behalf of Thousands of Members But Never Paid the Fees to Initiate Arbitrations. ...................................................... 4

    F.   In Response to Unprecedented Mass Arbitration Demands, the AOB Adopted New Rules for the Orderly Administration of Mass Arbitrations. .................................. 6

    G.   In October 2024, Counsel for Plaintiffs, the Objectors, and Kaiser Permanente Participated in Mediation but No Settlement Was Reached. ................................... 7

    H.   In December 2024, Counsel for the Objectors Served Arbitration Demands But Did Not Pay the $150 Fee for Each Claimant to Initiate Arbitration...................... 7

    I.   In May 2025, Two Years After this Action, the Objectors Filed a Duplicative Class Action in State Court Demonstrating Their Intent to Litigate Their Claims In Court Instead of Through Arbitration. ........................................................................... 8

    J.   This Action Settled and the Objectors Served Discovery in the Duplicative Guevara State Class Action and Threatened Motions to Compel........................... 9

    K.   Kaiser Permanente Moved to Stay Objectors' Duplicative Guevara Class Action Because a Nationwide Settlement is Pending in this Action. .............................. 10

III.  ARGUMENT ............................................................................................................. 11

    A.   The Settlement Class Properly Includes the Objectors Who Did Not Pay the $150 Fee to Initiate Arbitrations, and Have Instead Chosen to Litigate Their Claims in State Court....................................................................................................... 11

        1.   The Objectors Chose to Litigate and Not Arbitrate by Filing Their Duplicative Guevara State Class Action. ................................................. 11

        2.   Counsel for the Objectors Have Failed to Pay Filing Fees to Initiate Arbitration for Anyone Other Than Ten Claimants................................. 12

CROWELL
& MORING LLP
ATTORNEYS AT LAW

B.    The Proposed Settlement Properly Requires Each Settlement Class Member to Opt Out Individually and Prohibits Mass Opt Outs Through Counsel. ........................ 14

    1.    Proposed Opt-Out Methods Are Consistent with The Court's Conditional Approval Order in *23andMe* and Other Authorities. ................................. 14

    2.    The Court Should Reject the Objectors' Proposal for Mass Opt Outs Through Counsel to Protect Informed Individual Consent. ........................ 15

C.    The Proposed Settlement Distribution Plan Fairly and Adequately Compensates all Class Members. ....................................................................................... 17

    1.    The Proposed Settlement Provides for Pro Rata Distribution of Funds Because There Is No Evidence of Actual Injury to Any Class Member. .. 17

    2.    Objectors Ignore the Non-California Claims that Provide for Statutory Damages. ........................................................................................ 18

    3.    Objectors' Authorities Do Not Support Their Objections Because Those Cases Are Factually Dissimilar. .................................................... 19

    4.    The Proposed Settlement Properly Represents the Interests of California Residents and Their Claims. ................................................... 20

CROWELL
& MORING LLP
ATTORNEYS AT LAW

KFHP, INC.'S REPLY TO OPP. RE SETTLEMENT
APPROVAL; CASE NO. 3:23-CV-02865-EMC

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 23andMe, Inc. Customer Data Sec. Breach Litig.*,
No. 24-MD-03098-EMC, 2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ........................ *passim*

*Arena v. Intuit Inc.*,
2021 WL 834253 (N.D. Cal. Mar. 5, 2021) ......................................................................... 15

*C.M. v. MarinHealth Med. Grp., Inc.*,
2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ......................................................................... 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2016 WL 3648478 (N.D. Cal. July 7, 2016) ......................................................................... 17

*In re CenturyLink Sales Practices & Sec. Litig.*,
2020 U.S. Dist. LEXIS 114110 (D. Minn. June 29, 2020) ........................................................ 15

*Chabak v. Somnia Inc.*,
2025 WL 1272789 (S.D.N.Y. Apr. 28, 2025) ......................................................................... 20

*Doe, et al. v. Kaiser Foundation Health Plan, Inc., et al.*,
Case No. 3:23-cv- 02865-EMC (N.D. Cal.) ................................................................... 14, 15

*In re Dynamic Random Access Memory Antitrust Litig.*,
2014 WL 12879520 (N.D. Cal. June 27, 2014) ...................................................................... 17

*Gilleo v. Calif. Pizza Kitchen*,
2025 WL 1721880 (C.D. Cal. June 10, 2025) ....................................................................... 20

*In re Google Assistant Priv. Litig.*,
No. 5:19-CV-04286-BLF, 2025 WL 510435 (N.D. Cal. Feb. 14, 2025) .............................. 16

*Grady v. RCM Techs., Inc.*,
671 F. Supp. 3d 1065 (C.D. Cal. 2023) ........................................................................... 18, 19

*Hadley v. Kellogg Sales Co.*,
2020 U.S. Dist. LEXIS 30193 (N.D. Cal. Feb. 20, 2020) ...................................................... 15

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024) ......................................................................................... 12, 13

*Lusk v. Five Guys Enters. LLC*,
2021 WL 2210724 (E.D. Cal. June 1, 2021) ................................................................... 18, 19

*Maree v. Castanares*,
2025 WL 2268254 (9th Cir. Aug. 8, 2025) ........................................................................... 19

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Moulton v. U.S. Steel Corp.*,
    581 F.3d 344 (6th Cir. 2009) ................................................................................... 16

*In re Processed Egg Prods. Antitrust Litig.*,
    130 F. Supp. 3d 945 (E.D. Pa. 2015) ..................................................................... 17

*Rollins v. Dignity Health*,
    336 F.R.D. 456 (N.D. Cal. 2020) ........................................................................... 19

*Smith-Washington v. TaxAct, Inc.*,
    2024 WL 5415448 (N.D. Cal. Dec. 30, 2024) ....................................................... 20

*Stark v. Patreon, Inc.*,
    No. 22-CV-03131-JCS, 2025 WL 1592736 (N.D. Cal. June 5, 2025) .................... 17

*Taafua v. Quantum Glob. Techs., LLC*,
    2020 WL 95639 (N.D. Cal. Jan. 8, 2020) .............................................................. 19

*In re Telescopes Antitrust Litig.*,
    Case No. 5:20-CV-03639-EJD, 2025 WL 1093248 (N.D. Cal. Apr. 11, 2025) ...... 18

*In re TikTok, Inc. Consumer Privacy Litig.*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) ................................................................... 15

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................................... 17

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)......................................................... 17

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................... 8

Cal. Civ. Code § 56.10............................................................................................... 4

Cal. Civ. Code § 1798.100 *et seq.*............................................................................... 8

Cal. Penal Code § 496(c) ........................................................................................... 4

Cal. Penal Code §§ 630 *et seq.*.................................................................................. 4

**Other Authorities**

California Constitution, Art. 1, § 1 ............................................................................ 4

OIA website, *available at* https://oia-kaiserarb.com/1/rules-and-info/rules (last
    visited Sept. 23, 2025)......................................................................................... 3

OIA website, *available at* https://oia-kaiserarb.com/14 (last visited Sept. 23, 2025) ................... 3

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iv-

Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser Permanente" or "Defendant")[1] submits this memorandum in reply to the Opposition to the Motion for Preliminary Approval of the Proposed Class Action Settlement by Jessica Guevara, Nicole Reynolds, Linda Rodriguez, Oscar Ocaranza, Yara Garcia, and Cindy Barkho ("Objectors"). D.N. 352.

## I.    INTRODUCTION

Objectors liken themselves to class members in *23andMe*, wherein this Court excluded from the class Intervenors who were in the midst of arbitrating their claims. Objectors, represented by the same counsel as the *23andMe* intervenors, argue that Objectors have "demanded and initiated" arbitration and should be excluded from the proposed class and allowed to pursue arbitration. Opp. at 1. The problem for Objectors, however, is that Objectors and their counsel have made it crystal clear that they want to litigate their claims in state court, not in arbitration. Objectors had shown some interest in arbitrating, to be sure, but did an about-face after their counsel apparently realized there is a $150 per-claimant arbitration fee, doing nothing further regarding arbitration and instead filing a state court class action that is a virtual mirror image of this case. As in *23andMe*, the claims of those in the follow-on state class are squarely within the release in the federal class action settlement.

Not only have Objectors declared state court to be where they want to litigate, it is also indisputable that they never completed the required straightforward steps to arbitrate their claims. The Office of the Independent Administrator, which administers arbitrations brought by Kaiser Permanente California members, requires each claimant to pay a $150 fee to initiate an arbitration. That was true when Objectors first provided notice of intent to arbitrate in 2024 and it is true today. Of the tens of thousands of individuals whom Objectors' counsel claims to represent, only ten have paid the filing fee for their individual claims. Seven other people, represented by another firm, have each paid their $150 fees. These 17 people are the only people who have maintained an interest in arbitrating.

Assuming they are part of the settlement class, Objectors then argue that the procedures to

---

[1] The parties have stipulated to dismiss Defendants Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington, in connection with settlement approval. D.N. 347.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

KFHP, INC.'S REPLY TO OPP. TO SETTLEMENT
APPROVAL; CASE NO. 3:23-CV-02865-EMC

opt out of the settlement are too burdensome because they require each claimant to individually execute their own opt-out. Instead, Objectors seek mass opt-outs through counsel. The proposed opt-out methods here, however, mirror those the Court approved in *23andMe* and are consistent with relevant caselaw. Moreover, Objectors' counsel cannot claim they have preapproval for a mass opt-out where counsel admits they have not informed any of the would-be Claimants what the settlement terms are. That is not informed consent or authorization to opt out by proxy.

Finally, Objectors assert that pro rata distribution of the settlement fund to the class is unfair because California residents (whom Objectors claim should be excluded) have claims with higher statutory damages than class members in other states. Objectors argue this settlement cannot be approved without acknowledging the strength of the California claims because the Court compelled the California Plaintiff to arbitration, and the Court dismissed the California claims on the grounds of arbitration and lack of standing. This argument is speculative, ignores the absence of actual injury to any class member, and ignores that this settlement already accounts for all relevant California claims and that John Doe, the California plaintiff, is supportive of the settlement.

The Court should reject the arguments advanced in Objectors' opposition to the proposed settlement and grant preliminary approval of the settlement in its entirety.

## II.    BACKGROUND

### A.    Kaiser Permanente's Evidence of Coverage for California Members Requires Binding Arbitration to Resolve Member Disputes.

Kaiser Permanente's Evidence of Coverage ("EOC") is a document provided to health plan members that details their specific health plan's benefits and costs, how the plan works, and how member disputes are resolved. The EOC requires that a claimant pay a $150 fee to arbitrate or seek a waiver. D.N. 352-4 (Waisnor Decl.) Ex. B. The EOC states:

> The **Claimants** shall pay a single, nonrefundable filing fee of $150 per arbitration … regardless of the number of claims asserted in the Demand for Arbitration or the number of **Claimants** … named in the Demand for Arbitration.

*Id.* This does not mean that one $150 fee can cover tens of thousands of arbitrations brought by different members. It means that each member must individually pay a $150 filing fee unless the members are related (*e.g.*, spouse, child), in which case the $150 fee covers those claimants. The EOC states that the term "'***Claimant***' refers to a ***Member Party*** … who asserts a claim as described above." *Id.* The EOC further states that, "[a]s referred to in this 'Binding Arbitration' section, '***Member Parties***' include:

- ***A Member***
- ***A Member's heir, relative, or personal representative***
- ***Any person claiming that a duty to them arises from a Member's relationship to one or more Kaiser Permanente Parties***"

*Id.* (emphases added). Therefore, a fictitious Jane Doe's husband and children may include their claims with Jane Doe's claim that her foot surgery went wrong, all for the $150 fee, but unrelated person John Smith must pay the $150 fee for his claim that his foot surgery went wrong. If a member does not individually pay the $150 filing fee after submitting a demand, the demand is deemed abandoned and no arbitration has been filed. D.N. 352-8 (Waisnor Decl.) Ex. F (OIA Rule 12(d)). Only 17 individuals have filed arbitrations for technology tracking claims against Kaiser Permanente, and none are the Objectors. Declaration of Kristin Madigan ("Madigan Decl.") ¶ 6.

### B.    The Office of the Independent Administrator Administers Arbitrations Between Members and Kaiser Permanente.

In California, Kaiser Permanente established an arbitration system operated by the Office of the Independent Administrator ("OIA"). *See* OIA website, *available at* https://oia-kaiserarb.com/14 (last visited Sept. 23, 2025). The OIA administers arbitrations according to its rules, which are available on its website. *See* OIA website, *available at* https://oia-kaiserarb.com/1/rules-and-info/rules (last visited Sept. 23, 2025); Madigan Decl. Ex. 1. For decades, the OIA has primarily administered medical malpractice and personal injury claims brought by members individually. Declaration of Kenneth R. Pivo ("Pivo Decl.") ¶ 2.

The Arbitration Oversight Board ("AOB") oversees the OIA's administration of the arbitration system. *Id.* The AOB includes a wide range of professionals, including a former

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-3-

KFHP, INC.'S REPLY TO OPP. RE SETTLEMENT
APPROVAL; CASE NO. 3:23-CV-02865-EMC

California Supreme Court justice, a plaintiff's attorney, and others. *Id.* ¶ 3.

## C.    As Part of Its Oversight Function, the AOB Is Authorized to Amend the OIA Rules to Deal with Events Not Contemplated Under Existing Rules.

Under the OIA Rules, the AOB may amend the rules where circumstances not foreseen by the rules arise. Pivo Decl. ¶ 4. Specifically, Rule 50(b) provides that:

> *If … an event occurs which is not contemplated by these Rules, the [AOB] may adopt a new Rule(s) to deal adequately with that event.*

D.N. 352-8 (Waisnor Decl.) Ex. F at 18 (OIA Rule 50) (emphases added). Under the OIA Rules, neither the AOB nor the OIA has an obligation to give public notice that the AOB is considering modifying or adopting new OIA Rules.

## D.    In June 2023, Plaintiffs Filed this Action Based on Kaiser Permanente's Alleged Use of Third-Party Tracking Technology.

On June 9, 2023, Plaintiffs initiated this nationwide class action. It does not arise from or relate to alleged medical malpractice or personal injury claims. The operative Consolidated Complaint ("Complaint") alleges that Kaiser Permanente uses technology from third parties on its websites and mobile applications, including from third parties Quantum Metric, Twitter, Adobe, Microsoft Bing, and Google. D.N. (Compl.) 271 ¶ 4. Plaintiffs allege that these technologies improperly "intercepted" and gave the third parties access to member confidential information without member consent. *Id.* ¶¶ 3-6, ¶¶ 82-369.

Plaintiffs assert 22 causes of action, including eight claims alleging violations of California law, including (1) California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq.*; (2) California Constitution, Art. 1, § 1; (3) California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10; (4) California Statutory Larceny, Cal. Penal Code § 496(c); (5) Common Law Invasion of Privacy – Intrusion Upon Seclusion; (6) Express Breach of Contract; (7) Implied Breach of Contract; and (8) Negligence Per Se. *Id.* ¶¶ 471-625.

## E.    From February to December 2024, Two Firms Provided Notice of Intent to Arbitrate Claims Duplicative of this Action on Behalf of Thousands of Members But Never Paid the Fees to Initiate Arbitrations.

On February 9, 2024, one of the law firms representing Objectors (the "Labaton firm")

sent a letter "notify[ing] [Kaiser Permanente] that certain Kaiser members intend to pursue claims against Kaiser . . . if a resolution cannot be reached before filing arbitration." D.N. 352-3 (Waisnor Decl.) Ex. A. The letter stated that the Labaton firm "is counsel to the 6,847 Kaiser members" listed on an attachment to the letter including Objectors Nicole Reynolds and Linda Rodriguez. D.N. 352-3 (Waisnor Decl.) Ex. A; Madigan Decl. ¶ 3. The letter offered to resolve the matter informally "prior to initiating individual arbitrations" and stated that each member would seek in arbitration more than $12,750 in damages, for a total of $87,299,250. *Id.*

On March 18, 2024, the Labaton firm sent a similar letter to Kaiser Permanente stating counsel's intent to pursue arbitration on behalf of an additional 8,767 members. D.N. 352-2 (Waisnor Decl.) ¶ 3.

On March 27, 2024, the Labaton firm and Kaiser Permanente entered into a tolling agreement. D.N. 352-5 (Waisnor Decl.) Ex. C. The tolling agreement provided that the parties would mediate. *Id.* The tolling agreement also provided that the EOC in effect at the time "shall govern the dispute resolution of the Tolling Claimants' Tolled Claims unless the Parties agree in writing to any changes or modifications." *Id.* ¶ 10. The EOC dispute resolution terms have not changed since the tolling agreement was entered into; California members resolve their disputes in arbitrations administered by the OIA and each member must pay $150 to do so.

On April 26, 2024, the Labaton firm sent a similar letter to Kaiser Permanente stating counsel's intent to pursue arbitration on behalf of another 5,500 members, bringing the total number of members Labaton claimed to represent to 21,114. D.N. 352-2 (Waisnor Decl.) ¶ 7. Assuming each member sought $12,750, the 21,114 Labaton clients were going to seek over $269 million.

On May 23, 2024, a second law firm representing Objectors (the "Milberg firm") wrote to Kaiser Permanente stating counsel's intent to pursue arbitration on behalf of 1,293 members. D.N. 352-1 (Bryson Decl.) ¶ 2. On July 23, 2024, the Milberg firm again wrote to Kaiser Permanente stating counsel's intent to pursue arbitration on behalf of an additional 4,201 members. *Id.* ¶ 3. Kaiser Permanente did not enter into a tolling agreement with the Milberg firm.

On August 5, 2024, the Labaton firm provided Kaiser Permanente with a settlement

demand in anticipation of the mediation held in October 2024, and said again that it was prepared to, but did not in fact file, mass arbitration claims. Madigan Decl. ¶ 4.

### F.    In Response to Unprecedented Mass Arbitration Demands, the AOB Adopted New Rules for the Orderly Administration of Mass Arbitrations.

The AOB took several steps to prepare for the unprecedented experience of tens of thousands of non-medical malpractice arbitrations.

The AOB adopted interim supplemental rules for claims identified as a Tracking Technologies Case ("TTC"). D.N. 352-9 (Waisnor Decl.) Ex. G. Under those interim rules, a TTC claim was exempt from the deadlines set forth in the OIA Rules until such time as the Supplemental Rules took effect and the AOB committed to adopt those rules in short order. *Id.* at Interim Rule 4 (Temporary Exemption from OIA Rules). The interim rules stated that, "[p]ursuant to Rule 50.b., the Arbitration Oversight Board . . . shall develop and approve Supplemental Rules for the administration of the TTC coordination by February 14, 2025." *Id.* The interim rules further stated that "[p]ayment of the $150 filing fee shall not be due until the time defined in the Supplemental Rules." *Id.* at Rule 5 (Filing Fee).

The AOB engaged outside counsel with no ties to Kaiser Permanente in connection with development and adoption of OIA rules for mass arbitrations. Pivo Decl. ¶¶ 5-6. On February 14, 2025, the OIA issued final supplemental rules governing mass arbitrations. *Id.* ¶ 7, Ex. A.

These amendments did not change the requirement that each Claimant, whether bringing a medical malpractice case or a case regarding tracking technology, alone or at the same time as thousands of others, is required to pay a $150 filing fee to commence arbitration. *See supra* Section II.A. The requirement that a member must pay a $150 fee to initiate arbitration is the same for anyone who files, and it would have applied to each of the thousands of individuals purportedly represented by the Labaton firm and the Milberg firm if they filed arbitration demands even if the AOB had not adopted new supplemental mass arbitration rules. As a review of their text shows, the rules simply implement procedures for mass arbitration to prevent chaos and to protect a system that members rely on to adjudicate personal injury claims from being overwhelmed by thousands of individual claims that are part of a mass arbitration.

### G.    In October 2024, Counsel for Plaintiffs, the Objectors, and Kaiser Permanente Participated in Mediation but No Settlement Was Reached.

On October 1 and 2, 2024, counsel for the parties in this action and counsel for the Objectors met with a mediator, retired U.S. District Judge for the Northern District of Illinois, Hon. Wayne R. Andersen, to discuss a potential settlement of this action. Those discussions did not result in a mediated resolution. D.N. 345-4 at 3.

### H.    In December 2024, Counsel for the Objectors Served Arbitration Demands But Did Not Pay the $150 Fee for Each Claimant to Initiate Arbitration.

On December 5, 2024, the Labaton firm informed Kaiser Permanente that it planned to initiate arbitration on behalf of 19,521 members. On December 23, 2024, the Labaton firm provided a list of the claimants that was transmitted to OIA. Madigan Decl. ¶ 5. The Labaton firm does not assert that it paid a filing fee. *See* D.N. 352-2 (Waisnor Decl.).

On December 31, 2024, the Milberg firm delivered a demand for arbitration to Kaiser Permanente attaching a list of thousands of members including Objectors Jessica Guevara, Yara Garcia, and Cindy Barkho that was transmitted to OIA. Madigan Decl. ¶ 6. The prayer for relief requests an award of $74,206,250 in damages and $29,682,500 in attorneys' fees. The Milberg firm does not assert that it paid a filing fee. *See* D.N. 352-1 (Bryson Decl.).

On January 17, 2025, shortly after the winter holidays, OIA provided the Labaton and Milberg firms with the interim supplemental mass arbitration rules (which protected claimants from deadlines while the AOB was building mass arbitration rules, *see supra* Section II.C., F.), and informed them that their claims were exempt from the OIA deadlines and that the mass arbitration rules would be in effect by February 14, 2025. D.N. 352-2 (Waisnor Decl.) ¶¶ 13-15.

On May 30, June 25, and July 10, 2025, the Milberg firm filed demands for arbitration with the OIA for ten individuals and paid the $150 filing fee separately for each one. Those arbitrations are proceeding. Madigan Decl. ¶ 7. The only other individuals who have filed arbitrations with OIA and paid the $150 filing fee for tracking technology cases are seven individuals represented by the Potter Handy law firm. *Id.* None of the Objectors ever paid the $150 fee required to initiate arbitration with the OIA. *Id.*

**I.       In May 2025, Two Years After this Action, the Objectors Filed a Duplicative Class Action in State Court Demonstrating Their Intent to Litigate Their Claims In Court Instead of Through Arbitration.**

On May 6, 2025, the Objectors, represented by the Labaton and Milberg firms, filed their class action Complaint in the Superior Court of the County of Alameda and are named plaintiffs (the "Guevara Complaint"), unequivocally demonstrating their intent, as they put it, to "move forward with litigating their statutory claims in court." Opp. at 19; Madigan Decl. Ex. 2 (Guevara Compl.) Indeed, their counsel has since claimed that the Guevara plaintiffs would be prejudiced by any motion to compel arbitration in that action. Madigan Decl. Ex. 3 (Aug. 15, 2025 Ltr.).

Objectors' counsel made it clear by filing the state court class action case and in their class definition that Objectors and the other thousands of Labaton and Milberg clients do not want to arbitrate. Objectors' counsel excluded from the proposed class "anyone who has previously given notice of an intention to arbitrate *and* is represented by counsel other than the undersigned counsel":

> ***California Citizens who are Kaiser Plan Members and beneficiaries***. Excluded from this Class are Defendant and its officers, directors, and managerial employees. Also excluded is anyone employed by counsel for the parties in this action and any Judge to whom this case is assigned, his or her staff and immediate family, ***anyone who is a named plaintiff in any previously-filed suit against Kaiser*** and ***anyone who has previously given notice of an intention to arbitrate and is represented by counsel other than undersigned counsel***.

Madigan Decl. Ex. 2 ¶ 170 (emphases added).

Like this action, the Guevara Complaint is based on alleged use of third-party vendor tracking technologies on Kaiser Permanente's websites and mobile applications. *See id.* ¶¶ 3-6. Like this action, Objectors allege they used the Kaiser Permanente website, Patient Portal, and mobile applications for their healthcare needs. *Id.* at ¶¶ 10, 14, 18, 22, 26, 30. Also like this action, Objectors allege that confidential communications were shared with third parties without consent through technology from Google, Microsoft Bing, Adobe, Twitter/X, and Quantum Metric embedded on Kaiser Permanente's websites and mobile applications. Compare Madigan Decl. Ex. 2 (Guevara Compl.) ¶¶ 3-6 with D.N. 271 (Compl.) ¶¶ 1-6.

Objectors' Guevara Complaint asserts nine causes of action under California law. Six

have already been litigated in this action. The three new claims in the Guevara action are duplicative (California Privacy Rights Act, Cal. Civ. Code § 1798.100 *et seq.*; California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; Unjust Enrichment). Notably, the Guevara Complaint alleges the same wiretapping theory that this Court criticized in this action, independent of ruling on a motion to compel arbitration, setting the stage for a conflict between this Court and the Guevara court on how CIPA and related claims should be interpreted on the same facts. *See* D.N. 124 at 26 ("To the extent Plaintiffs argue that a third party should *per se* be considered an eavesdropper – *i.e.*, even if hired by a party to the communication to do work solely for the party's benefit and with strict limits on the ability of the third party to use the information for any other purpose – the Court does not agree.").

Finally, as shown in the above-quoted class definition, the Guevara Complaint defines a putative class already covered in this action. Madigan Decl. Ex. 2, ¶ 170. This class definition specifically covers all of the California members, including those who threatened arbitration, but failed to pay the requisite fee and have now thrown their lot in with the Guevara Plaintiffs. *See id.*

### J. This Action Settled and the Objectors Served Discovery in the Duplicative Guevara State Class Action and Threatened Motions to Compel.

On May 13, 2025, counsel for the parties in this action met with a different mediator, retired U.S. Magistrate Judge for the Central District of California, Hon. Jay C. Gandhi. D.N. 345-4 at 3. Through those discussions, the parties exchanged information about the size and scope of the putative class, the relief to which the Settlement Class may be entitled if Plaintiffs prevailed at trial or on appeal, the benefits provided in the Doe Settlement, and the parties' positions on the merits of Plaintiffs' claims. The mediated arm's-length discussions culminated in a preliminary settlement ("Settlement Agreement"). D.N. 345-4.

The Settlement Agreement releases all claims

> [T]hat have been pled in the Action or that **could have been pled in the Action**, that arise out of or relate to the causes of actions, allegations, practices, or **conduct at issue** in the Consolidated Class Action Complaint, including but not limited to **use of third-party code on the Kaiser Permanente websites and mobile applications** …"

*Id.* at Section 1.14 (emphases added).

In the Settlement Agreement, the parties agree to certify the following "Settlement Class" for purposes of effectuating the Settlement:

> ***Any and all Kaiser members in the Kaiser Operating States, including those members who have not completed a Perfected Arbitration Claim*** as defined in Paragraph 1.11 of the Stipulation, ***who accessed the authenticated pages of the Kaiser Permanente websites or mobile applications listed below from November 2017 to May 2024*** [listing specific websites and mobile application].

*Id.* at Section 1.18 (emphases added). The Settlement Class definition covers the same Kaiser Permanente members that Objectors claim to represent in their putative class action. The California Plaintiff the Court compelled to arbitration in this action, John Doe, has authorized the settlement (instead of appealing the arbitration order or pursuing arbitration) and submitted a declaration in support of preliminary approval of the Settlement, stating under penalty of perjury that he believes this Settlement is in the best interest of all Settlement Class Members. Declaration of John Doe ("Doe Decl.") D.N. 345-6 ¶¶ 7, 8, 13.

On May 14, 2025, the parties in this action filed a Notice informing the Court of the settlement. D.N. 342 (Joint Notice of Preliminary Settlement and Request for Stay). Notwithstanding that Notice of Settlement, on June 18 and June 26, 2025, Objectors served discovery on Kaiser Permanente in the Guevara action comprising 57 requests for production, 32 requests for admission, 23 special interrogatories, and form interrogatories. Madigan Decl. ¶ 10. In addition, Objectors served third-party subpoenas in the Guevara action on Adobe, Alphabet, Microsoft, the OIA, Qualtrics, Quantum Metric, Salesforce, and X Corp. *Id.* Objectors then threatened to file a motion to compel further responses from Kaiser Permanente to those discovery requests. *Id.*

### K.    Kaiser Permanente Moved to Stay Objectors' Duplicative Guevara Class Action Because a Nationwide Settlement is Pending in this Action.

On August 25, 2025, Kaiser Permanente moved to stay Objectors' state class action until this Court concludes the settlement approval process and enters final judgment in this action. Madigan Decl. ¶ 11. The state court has continued the hearing on the motion to stay until November 4, 2025, and ordered that the parties must file supplemental briefs in advance

informing the state court regarding whether this Court grants preliminary approval of the proposed class settlement at the hearing on October 23, 2025, a copy of any order, and the opt-out date for any federal settlement. Madigan Decl. Ex. 4 (Arneja Order).

## III. ARGUMENT

### A. The Settlement Class Properly Includes the Objectors Who Did Not Pay the $150 Fee to Initiate Arbitrations, and Have Instead Chosen to Litigate Their Claims in State Court.

Objectors argue that "[j]ust like in *23andMe*, Kaiser now seeks to force tens of thousands of individuals who have noticed or initiated arbitration into a settlement negotiated without any participation by their counsel. *See In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, No. 24-MD-03098-EMC, 2024 WL 4982986, at *1 (N.D. Cal. Dec. 4, 2024)." Opp. at 1:11-14. Objectors further contend that "[a]s in *23andMe*, this Court should hold that any person who invoked or noticed an intent to arbitrate is excluded from the class definition." *Id.* at 1:14-15. This argument fails for the reasons set forth below.

### 1. The Objectors Chose to Litigate and Not Arbitrate by Filing Their Duplicative Guevara State Class Action.

Unlike the intervenors in *23andMe* who clearly chose to arbitrate, Objectors have made it crystal clear that they seek to litigate—not arbitrate—their claims. Objectors have filed a putative class action in state court on behalf of themselves and their counsel's other clients who previously provided notice of intent to arbitrate. Objectors and their counsel are actively litigating that case. *See supra* Section II.I, J. Objectors and their counsel have demonstrated unequivocally they intend to stay in court and not arbitrate. Therefore, the reasoning in *23andMe* protecting the right to arbitrate simply does not apply here.

Unlike *23andMe*, the class settlement does not risk forcing Objectors "into litigation in derogation of their **right to arbitrate**." *In re 23andMe*, 2024 WL 4982986 at *11 (emphasis added). In *23andMe*, the intervenors sought to arbitrate and did not file any court action. Here, Objectors left the arbitration threshold and chose to become plaintiffs in the Guevara state class action. Objectors have chosen to litigate their claims in a duplicative state class action—centered on a class that their counsel defined to exclude people, unlike them, *represented by other law*

*firms* who "[have] previously given notice of an intention to arbitrate and [are] represented by counsel other than undersigned counsel." *See supra* Section II.I. (Guevara Compl. ¶ 170). And Objectors are not standing still in the state court case. Their counsel has served multiple sets of discovery on Kaiser Permanente and subpoenas on eight third parties, threatened a motion to compel further responses to those discovery requests, and sent a letter to Kaiser Permanente's counsel claiming they will be prejudiced if compelled to arbitration. *See supra* Section II.I., J.

The Court should deny Objectors' request to be excluded from the settlement class because "federal class settlements often sweep within its ambit class members who fall into putative classes in state class action lawsuits." *In re 23andMe*, 2024 WL 4982986, at \*25. The same reasoning applies here. "Those involved in state court suits may opt out of the federal class action settlement and continue to pursue their claims in state court." *Id.*

## 2. Counsel for the Objectors Have Failed to Pay Filing Fees to Initiate Arbitration for Anyone Other Than Ten Claimants.

It is a basic threshold requirement under the OIA Rules that Claimants each pay $150 to initiate an arbitration. With the exception of the 17 plan members who have each paid the filing fee, Objectors have failed to pay a single penny in filing fees for the remaining tens of thousands of would-be arbitration Claimants whom Objectors' counsel claim to represent. Objectors' reliance on *23andMe* does not relieve them of this basic filing requirement.

Objectors argue the failure to pay is not their fault because OIA rules supposedly changed after the Labaton and Milberg firms threatened, in 2024, to bring arbitration claims unless there was a settlement. But the $150 fee requirement existed in the OIA rules in effect when the Labaton and Milberg firms first surfaced and was carried into the mass arbitration rules in 2025. Either way, as single claims or with a mass of claims and whether in 2024 or 2025, Objectors needed to pay a $150 fee per claimant and did not do so. Objectors further argue that "[b]eyond the increase in filing fees for members, the New Rules imposed several substantively unconscionable burdens on claimants similar to those found unconscionable by courts", and rely on *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), in support. Opp. at 6-7.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-12-

Objectors identify no prejudice to them caused by any changes to the OIA rules, and any challenge to the OIA rules is not before this Court. In any event, *Heckman* does not help Objectors. The AOB amended the OIA rules to accommodate mass arbitrations and ensure the ability to process thousands of claims. *Heckman* does not forbid developing new processes to manage large volumes of claims simultaneously. Instead, in *Heckman* the Ninth Circuit invalidated a post-demand overhaul of the arbitration agreement rules between consumers and an entertainment event promoter and ticket seller that are substantively different from the rule amendments here. *Heckman*, 120 F.4th at 683-87 (citing *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). Specifically, the Ninth Circuit affirmed the district court's finding that certain features were unconscionable that are not found in the amended OIA rules. The *Heckman* amendments at issue included a mass arbitration protocol that automatically applied precedent from the bellwether decisions to other claimants, procedural limitations such as a ban on discovery, and procedures allowing the respondent company to unilaterally choose the arbitrator—none of which are part of the OIA rules. *See* D.N. 352-12. *Id.* Here, unlike *Heckman*, the AOB engaged counsel that has no tie to Kaiser Permanente to set up a framework for dealing with unprecedented mass arbitration demands that threatened overloading a system designed for personal injury claims. *See supra* Section II.F. That is not the type of "bait-and-switch" the Ninth Circuit criticized in *Heckman*, 120 F. 4th at 682.

This case is also very different from *23andMe*, where some claimants filed arbitrations before the wrong arbitrator. In *23andMe*, some customers filed arbitrations before JAMS pursuant to 23andMe contract terms, but other JAMS demands were never invoiced or processed because counsel was required to submit them to a different provider, NAM. Madigan Decl. Ex. 5 at 8:11-9:15, 11:3-16 (Nov. 3, 2024 Hrg. Tr., *In re 23andMe* Preliminary Approval Hearing, Case No. 3:24-3098-EMC). The parties did not dispute that claimants who had properly filed JAMS arbitrations could be excluded. The dispute centered on those who filed with the wrong arbitration provider. This Court addressed whether the claimants who had filed their claims before the wrong arbitration provider fell within the definition of those who "demanded and initiated" arbitration. The Court viewed filing before the wrong arbitrator as a technicality and excluded that group of

claimants from the class, finding they had fundamentally complied with the applicable rules. *In re 23andMe*, 2024 WL 4982986 at *12; Madigan Decl. Ex. 5 at 8:11-9:15, 11:3-16.

The *23andMe* fact pattern simply does not exist here. No one other than 17 members has initiated arbitration. *See supra* Section II.H. Objectors' failure to pay the $150 filing fee is not a technicality; it is a fundamental failure to comply with the OIA rules for those who wish to arbitrate. Objectors have not completed the steps to bring arbitrations—not only that, they have chosen instead to litigate in a state court class action—and therefore cannot be excluded under the *23andMe* rationale. *In re 23andMe*, 2024 WL 4982986 at *12 (modifying settlement class definition "to exclude those 23andMe customers who have chosen to exercise their right to arbitrate, whether by making a mere demand for arbitration or by filing a formal complaint with the arbitral forum (but not, e.g., simply threatening to arbitrate).").

**B.      The Proposed Settlement Properly Requires Each Settlement Class Member to Opt Out Individually and Prohibits Mass Opt Outs Through Counsel.**

The proposed settlement provides two ways in which class members may opt out to exclude themselves from the settlement class. *See* D.N. 345-4 (Settlement Agreement) at Ex. B. Assuming they remain in the Settlement class, Objectors contend these opt-out procedures are unduly burdensome and violate due process. Opp. at 14-16. Objectors are wrong.

**1.      Proposed Opt-Out Methods Are Consistent with The Court's Conditional Approval Order in *23andMe* and Other Authorities.**

Contrary to Objectors' arguments, the proposed opt-out methods match procedures this Court approved in *23andMe*. In *23andMe*, this Court approved opt-out procedures requiring personal signatures, eligibility affirmations (*e.g.*, residency and user status), ID verification (Claim ID/PIN), and individualized online/mail submissions. *In re 23andMe*, 2024 WL 4982986 at *26. The proposed opt-out process here mirrors those requirements. A class member may opt out by timely sending a written statement to the Settlement Administrator by U.S. mail that must "(i) state the full name, residential address, telephone number and email address of the Person requesting exclusion; (ii) state "I request exclusion from the Settlement Class in *Doe, et al. v. Kaiser Foundation Health Plan, Inc., et al.*, Case No. 3:23-cv- 02865-EMC (N.D. Cal.);"

(iii) include [their] Unique ID as provided by the [Settlement] Administrator and (iv) include a wet ink signature (*i.e.*, no /s/ signature by permission) or electronically imaged written (*e.g.*, "DocuSign")." *See* D.N. 345-4 (Settlement Agreement) at Ex. B. Exclusion letters must be signed by the Settlement Class Member personally, and not a lawyer or anyone else acting on their behalf. *See id.* Alternatively, members may opt out online using a personalized ID from the Settlement Administrator. *See id.* As in *23andMe*, these steps ensure that exclusion from the settlement is based on informed individual consent and will help prevent unauthorized or abusive mass filings. *See In re TikTok, Inc. Consumer Privacy Litig*., 565 F. Supp. 3d 1076, 1093 (N.D. Ill. 2021) (enforcing individual signatures to guard against "unauthorized mass opt-outs"); *In re CenturyLink Sales Practices & Sec. Litig*., 2020 U.S. Dist. LEXIS 114110, at *13 (D. Minn. June 29, 2020) (rejecting mass opt-out letters lacking signatures or IDs to confirm genuine consent).

None of Objectors' other authorities helps their argument because they involve far more restrictive procedures. In *Arena v. Intuit Inc*., 2021 WL 834253, at *10 (N.D. Cal. Mar. 5, 2021), denial stemmed from a wet-ink signature requirement with no option for electronic signatures. Here, opt-out requests can be made by U.S. mail with a member's wet ink or DocuSign signature, or alternatively online where the member verifies their identity using a personalized ID from the Settlement Administrator. *See* D.N. 345-4 (Settlement Agreement) at Ex. B. *Cf. Hadley v. Kellogg Sales Co*., 2020 U.S. Dist. LEXIS 30193, at *22 (N.D. Cal. Feb. 20, 2020) (rejecting a proposal that required opt-out by U.S. mail and no electronic alternative); *Newman v. AmeriCredit Fin. Servs.,* Inc., 2014 WL 12789177, at *6 (S.D. Cal. Feb. 3, 2014) (similar).

### 2. The Court Should Reject the Objectors' Proposal for Mass Opt Outs Through Counsel to Protect Informed Individual Consent.

Finally, Objectors argue that "[e]ach Claimant has authorized their counsel to submit an opt out on their behalf" and that "[i]n similar circumstances, courts in this district have accepted opt outs through counsel without requiring an individual signature or submission by each class member." Opp. at 15-16. In support, each of the Objectors has submitted a declaration stating their intent to opt out individually. These arguments do not withstand scrutiny.

First, counsel does not have informed consent to opt out on behalf of all Claimants. This is

demonstrated by the declaration of Objectors' counsel filed in support of the Objectors' brief. The declaration states that Claimants have each authorized counsel to opt out on their behalf:

> ***Claimants have each authorized Labaton Keller Sucharow LLP to opt out of the proposed settlement on their behalf***, and to provide the Court with notice that they have elected to opt out of the proposed settlement.

D.N. 352-2 (Waisnor Decl.) ¶ 28 (emphases added).

But in the next paragraph, the declaration demonstrates that counsel has not yet notified Claimants of the proposed settlement terms—including benefits of the settlement to members, the scope of the release, and the risks of continuing with litigation—and will not do so until after the Court rules on whether counsel may opt out on behalf of Claimants:

> ***If the Court permits Objectors and Claimants to opt-out of the proposed settlement through a single communication from counsel*** and otherwise approves the proposed settlement, ***our firm intends to notify Claimants of the proposed settlement terms*** before they exercise their opt out rights. The contents of such communications would be subject to attorney-client privilege.

*Id.* ¶ 29 (emphases added).

If counsel has not yet informed tens of thousands of Claimants of the proposed settlement terms, any purported "prior authorization" to opt out on their behalf lacks informed consent.

This critical flaw is no different from the mass opt-out request this Court rejected in *23andMe. In re 23andMe*, 2024 WL 4982986 at *25 ("The Potter clients may opt out of the settlement but en masse objections will not be permitted.") (quoting *In re CenturyLink Sales Practices & Sec. Litig.*, 2020 U.S. Dist. LEXIS 114110, at *9 ("[T]he requirement that a class member must individually sign is vital, because it ensures that the class member is individually consenting to opt out, and avoids a third party or lawyer representing that they have that class member's authority, without the class member making an informed, individual decision.").

Second, Objectors lack legal support for their position. Objectors cite no case prohibiting the individual signature requirement. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 355 (6th Cir. 2009) (no case "***requires*** district courts to accept opt-out forms signed by attorneys" because "[t]o impose such an unbending rule would unduly interfere with the district court's broad authority to manage class actions by governing the conduct of counsel and the parties") (emphasis added).

Instead, Objectors rely on *In re Google Assistant Priv. Litig.*, No. 5:19-CV-04286-BLF, 2025 WL 510435, at *3 (N.D. Cal. Feb. 14, 2025), where no settlement had been reached and the parties had not submitted a settlement for preliminary or permanent approval, to argue that individual signature is a "technical detail." Opp. at 15-16. But Objectors ignore that other courts in this district have reached the opposite conclusion. *See Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2025 WL 1592736, at *16 (N.D. Cal. June 5, 2025) (failure to comport with opt-out requirement of settlement agreement was "not 'hyper-technical'").

Finally, Objectors' argument ignores the general principle that courts require a "reasonable indication" of desire to opt out through actions "unambiguously inconsistent with an intention to participate in the settlement." *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d 945, 952 (E.D. Pa. 2015). Retaining counsel and noticing but never initiating arbitration claims and then filing a duplicative class action lawsuit in state court does not demonstrate intent by thousands of would-be Claimants to opt out or otherwise justify their exclusion from the class.

### C.    The Proposed Settlement Distribution Plan Fairly and Adequately Compensates all Class Members.

Objectors' final argument is that the Proposed Settlement should not be approved because it "fails to provide fair and adequate compensation to California class members, whose statutory privacy claims are significantly stronger and more valuable than those of the nationwide class." Opp. at 10. Objectors argue that the availability of statutory damages, and the fact that the Court compelled the California Plaintiff to arbitration and dismissed the California claims on arbitration and standing grounds, makes the California claims more valuable than other settlement class claims. These arguments miss the mark for several reasons.

#### 1.    The Proposed Settlement Provides for Pro Rata Distribution of Funds Because There Is No Evidence of Actual Injury to Any Class Member.

It is well-settled that courts should "allocate the settlement proceeds according to the degree of injury suffered by the class." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *14 (N.D. Cal. July 7, 2016); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *4 (N.D. Cal. Oct. 27, 2015) (granting preliminary approval of settlement where class members

receive a *pro rata* share of the settlement based on number of shares purchased); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (same); *In re Dynamic Random Access Memory Antitrust Litig.*, 2014 WL 12879520, at *1 (N.D. Cal. June 27, 2014) (granting final approval of class settlement with pro rata distribution and without distinction between class members who lived in the repealer states versus those that lived in non-repealer states); *In re Telescopes Antitrust Litig.*, Case No. 5:20-CV-03639-EJD, 2025 WL 1093248, at *6 (N.D. Cal. Apr. 11, 2025) ("A *pro rata* allocation treats all Settlement Class Members fairly.").

Here, there is no evidence that Kaiser Permanente's alleged conduct injured any class member and there are no allegations of resulting identity theft or medical fraud to support a different allocation of settlement funds. To the extent Objectors claim they have suffered financial harm because information allegedly disclosed has some inherent monetary value (D.N. 271 (Compl.) ¶¶ 370-73), courts have consistently rejected the notion that personal information has independent monetary value that is diminished by an alleged disclosure. *See*, *e.g.*, *C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841 (N.D. Cal. Jan. 19, 2024). Because no class member has suffered any actual injury, it is appropriate to treat all class members the same and allocate settlement funds *pro rata*.

### 2. Objectors Ignore the Non-California Claims that Provide for Statutory Damages.

Objectors argue the Proposed Settlement does not fairly and adequately compensate the *California* class members because the *California* causes of actions provide for statutory damages. Opp. at 17. What this argument ignores, however, is that the Complaint includes other causes of action arising under the laws of different states that also provide for statutory damages, including Maryland and others. *See* D.N. 271 (Compl.) (Claims 1, 10, 12, 13, 14, 19, 20). Given that the Complaint includes non-California claims that provide for statutory damages and the proposed settlement resolves all claims, the proposed settlement accounts for all claims that provides for statutory damages. Objectors provide no explanation as to why the "strength" of California class members' claims should be viewed differently.

### 3. Objectors' Authorities Do Not Support Their Objections Because Those Cases Are Factually Dissimilar.

Objectors rely on inapt authority to oppose *pro rata* distribution of settlement funds, citing cases that turn on different issues and facts or involve different procedural postures.

For example, Objectors rely on *Lusk v. Five Guys Enters. LLC*, 2021 WL 2210724 (E.D. Cal. June 1, 2021) and *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065 (C.D. Cal. 2023) (Opp. at 17-18) for the proposition that a *pro rata* allocation is unfair and inadequate. But this case is distinguishable from both *Lusk* and *Grady* because the proposed settlement would not account for the class members' **different actual injuries**. *Lusk*, 2021 WL 2210724, at *9 (concluding that class members who worked longer shifts or incurred more unreimbursed business expenses would have endured greater violations of the law for which the settlement compensates); *Grady*, 671 F. Supp. 3d at 1082-83 (the distribution formula which compensated based on weeks worked did not adequately compensate class members because a class member who worked four shifts in two weeks and ten shifts in two weeks would be compensated the same). Where, as in this case, Objectors incurred no actual injury, Objectors' reliance on *Lusk* and *Grady*—which turn on the differences in actual injury incurred by class members—is misplaced. Objectors also cite *Maree v. Castanares*, 2025 WL 2268254 (9th Cir. Aug. 8, 2025) (unpublished). Opp. at 17. But the Ninth Circuit remanded the case to the district court to determine if subclasses were necessary and whether Maree was an adequate class representative—with no holding on substantive issues before this Court. *Id.* at *2.

Objectors next cite *Taafua v. Quantum Glob. Techs., LLC*, 2020 WL 95639 (N.D. Cal. Jan. 8, 2020 (Opp. at 19) and *Rollins v. Dignity Health*, 336 F.R.D. 456, 467 (N.D. Cal. 2020) to argue that there is an inter-class conflict that prevents approval. Opp. at 20. In *Taafua*, the Court found that the class representative and half of the class members had significant statute of limitations issues, calling into question whether they even had a case. The court found that awarding all class members the same settlement amount, regardless of whether their case was time-barred, was not fair and adequate. *Taafu*, 2020 WL 95639, at *12. In *Rollins*, the Court found that there was such a degree of conflict between the parties that approving the settlement

and awarding the relief sought would actually harm other members of the class. 336 F.R.D at 467. Objectors overstate the "conflict" here (to the extent there is any, which Kaiser denies). Unlike Objectors' cited authority, this case is not one where half of the class members are being compensated even though their case is procedurally defective. Nor is this a case where approving the settlement would cause affirmative harm to portions of the class. There is no conflict between the class members who reside in California versus other states where Kaiser Permanente operates.

Objectors argue that it is "routine" in data privacy settlements "to afford a premium to California class members based on these statutory differences." Opp. at 18. But here, too, Objectors overstate their authority. *Gilleo v. Calif. Pizza Kitchen*, 2025 WL 1721880, at *5 (C.D. Cal. June 10, 2025) (Opp. at 18) simply stated that the settlement provides an additional statutory damages award to members of the California subclass; there was no analysis of the import of such award. *Id. Chabak v. Somnia Inc.*, 2025 WL 1272789, at *2 (S.D.N.Y. Apr. 28, 2025) (Opp. at 18), an out-of-district case, approved a final settlement that included a distinction between the California and non-California class, but the Court did not make any statements as to whether inclusion of a statutory damages award was a prerequisite for approval. Likewise, Objectors' reliance on *Smith-Washington v. TaxAct, Inc.*, 2024 WL 5415448, at *1 (N.D. Cal. Dec. 30, 2024) (Opp. at 18) is unavailing. The court in *Smith-Washington* awarded a "slightly higher" share to California members that had access to claims that the other class members did not. Here, Objectors ignore the fact that non-California class members ***had*** access to claims that provide for statutory damages (*e.g.*, Maryland and others), *see supra* Section III.C.2.

### 4.    The Proposed Settlement Properly Represents the Interests of California Residents and Their Claims.

Objectors contend that because this Court compelled the California Doe Plaintiff to arbitration, and the motion to dismiss order dismissed California claims for arbitration and lack of standing, the claims of California residents are not adequately represented in the class settlement. Opp. at 19. Objectors are wrong. This is a nationwide settlement that includes the California Doe Plaintiff as well as every other California member within the settlement class definition. The Doe Plaintiff has joined this settlement to resolve his claims, declining to appeal the Court's prior

orders and waiving without prejudice his right to arbitration pending final settlement approval. *See supra* Section II.J. (citing the Doe Decl., D.N. 345-6 ¶¶ 7, 8, 13).

Regarding the Court's motion to dismiss order, Objectors ignore that the Guevara Complaint alleges the same wiretapping theory that this Court criticized in this action, independent of ruling on a motion to compel arbitration. *See* D.N. 124 at 26 ("To the extent Plaintiffs argue that a third party should *per se* be considered an eavesdropper – *i.e.*, even if hired by a party to the communication to do work solely for the party's benefit and with strict limits on the ability of the third party to use the information for any other purpose – the Court does not agree."). *See supra* Section II.I. The Court's motion to dismiss order is not as narrow as Objectors claim and is not a basis to exclude them or other California members from the settlement class.

## CONCLUSION

For the foregoing reasons and as set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement, Kaiser Permanente respectfully requests that the Court grant preliminary approval of the Settlement in its entirety.

Dated:  September 23, 2025

Respectfully submitted,

CROWELL & MORING LLP

By: _____
Kristin J. Madigan
   KMadigan@crowell.com
Anna Z. Saber
   ASaber@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone:  415.986.2800
Facsimile:  415.986.2827

CROWELL & MORING LLP
Jennie Wang VonCannon (SBN 233392)
   JVonCannon@crowell.com
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone:  213.622.4750
Facsimile:  213.622.2690

CROWELL
& MORING LLP
ATTORNEYS AT LAW

KFHP, INC.'S REPLY TO OPP. RE SETTLEMENT
APPROVAL; CASE NO. 3:23-CV-02865-EMC

CROWELL & MORING LLP
Jeffrey L. Poston (appearance pro hac vice)
   JPoston@crowell.com
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:  202.624.2500
Facsimile:   202.628.5116

Attorneys for Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington