POTTER HANDY, LLP
Mark Potter, Esq., SBN 166317
Tehniat Zaman, SBN 321557
Mail: 100 Pine St., Ste. 1250
San Francisco, CA 94111
(858) 375-7385; (888) 422-5191 fax
serve@potterhandy.com
Attorneys for Objectors

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | CASE NO.: 3:23-cv-02865-EMC<br><br>Assigned to the Honorable Edward M. Chen<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

## I. INTRODUCTION

Adia Johnson, Aaron Beaudreau, Yvonne Cipressi, and Carolynn Colbert (hereinafter "Objectors") respectfully submit this Memorandum of Law in Opposition to the Motion for Preliminary Approval of the Proposed Class Action Settlement and the settlement proposed therein ("Proposed Settlement").

The Objectors oppose the Proposed Settlement as they believe the proposed Settlement Class[1] is overly broad and should exclude any Kaiser members that have filed

[1] Stipulation of Settlement p. 8 at Dkt 345-4.

arbitration demands, noticed the intent to arbitrate their claims and/or filed State Actions[2] in response to the changed arbitration rules against Kaiser Foundation Health Plan, Inc. (hereinafter "Kaiser"). These Kaiser Members are included in the proposed Settlement Class as part of Kaiser's strategy to settle their high value claims for cheap.

The Objectors also oppose the Proposed Settlement as the opt out procedure as it currently stands is intentionally ambiguous and therefore confusing, unduly burdensome and oppressive. The notice Kaiser created provides minimal information, requires a visit to a third-party website, and provides a settlement ID number that must be included on the form instead of the widely known Kaiser ID number that each and every Kaiser Member is assigned. Even the slightest error in this confusing and arduous process would void a member's attempt to opt-out and that member would unwittingly remain a Settlement Class Member, receiving no compensation, while all of the actions taken to bring an individual's claims, by arbitration or state action would be wasted.

Finally, the Objectors oppose the Proposed Settlement as the settlement amount currently expected for each Settlement Class Member is woefully inadequate and unreasonable in comparison to the value of their claims.

## II. Procedural History and Factual Background

Objectors are Kaiser members whose personal, private and sensitive medical information was unlawfully disclosed to third parties, without their consent, by Kaiser. Objectors belong to a group of 15,369 individuals (together "Claimants") who retained Potter Handy LLP ("Potter Handy" or "Counsel") to hold Kaiser accountable for this gross injustice. All the Claimants have filed arbitration claims, noticed an intent to arbitrate, and/or have filed lawsuits which are currently pending in Alameda County Superior Court to resolve their claims against Kaiser. That is, every Claimant has taken affirmative steps to assert his or her individual claim against Kaiser for its illegal conduct, seeking individual damages in a forum apart from the instant class action litigation. Upon finding out about the gross misconduct, these Claimants read and considered the data privacy issues,

---

[2] *Arneja v. KFPH* (25CV116428), *Johnson et al. v. KFPH* (25CV115293), *Beaudreau et al. v. KFPH* (25CV116459), *Colbert v. KPFH* (25CV117332), and *Cipressi et al. v. KFPH* (25CV113042).

conducted sufficient research to gain an understanding of their options, then researched those options, leading to a decision to retain a law firm and then, upon retention of Potter Handy, agreed to take the next step; submitting to arbitration or filing a lawsuit in state court.

On or around July 30, 2024, Potter Handy informed Kaiser that approximately 7,000 Kaiser members were prepared to file arbitration claims regarding the data privacy issue. Shortly thereafter, Kaiser was provided a list of 9,246 members that were prepared to file arbitration claims. Counsel provided the list in anticipation of a mediation scheduled to take place in October 2024. The mediation was supposed to address claims of Claimants, the members of this class action and approximately 26,710 Kaiser members represented by Milberg and Labaton.[3] The mediation did not result in any meaningful settlement discussions.

On November 24, 2024, 800 Kaiser Members represented by Potter Handy filed 200 arbitration demands with 4 Kaiser Members joining together in a single demand to minimize costs. On December 17, 2024, the Office of the Independent Administrator ("OIA"), the single-client arbitration company that exclusively handles Kaiser claims, confirmed receipt of the arbitration demand and attached a copy of The Interim Rules: Tracking Technology Cases ("Interim Rules") along with the confirmation. OIA stated the Interim Rules were in effect and therefore the filing fees had not been accepted.

The Interim Rules were not published on the Kaiser website or otherwise made public at any point before OIA shared them with Counsel. Despite being on notice that almost 30,000 Kaiser members sought to opt out of the class action by pursuing arbitration or litigation in state court, Kaiser did not inform Counsel it was going to change the arbitration rules affecting their claims, did not publish these rules, nor inform counsel that they were changing the rules affecting 13.1 million Kaiser members.[4] Based on the title of the document, Counsel believes the Interim Rules went into effect on September 23, 2024, approximately two months after Kaiser was informed of the number of arbitrations claims that were expected to be filed against it. The changes to the Interim Rules did not consist of a substantive, robust reworking of the rules, as they only included six rules, taking up

[3] P. 5, Memorandum in Opposition to the Motion for Preliminary Approval ("Memo in Oppo to MPA"), Dkt. 351.

[4] *See also* P. 6, Memo in Oppo to MPA. *Supra* Note 3.

less than two pages. The unilateral changes to the Interim Rules essentially offered Claimants a stay until the supplemental rules, which were drafted in consultation with Kaiser, were issued.[5] Potter Handy filed an objection to the Interim Rules on behalf of Claimants.

On February 14, 2025, OIA issued the Supplemental Rules Governing Mass Arbitrations ("Supplemental Rules").[6] The Supplemental Rules changed the filing costs, filing requirements, and procedures significantly, resulting in prejudice to Claimants and additional hurdles to seeking an individual remedy in arbitration.[7] Potter Handy filed an objection to the Supplemental Rules on behalf of Claimants as the Supplemental Rules were prejudicial and violated *Heckman v. Live Nation*, 120 F.4th 670 (9th Cir. 2024).

Between January 29, 2025, and April 11, 2025, Claimants filed five separate actions in Alameda County on behalf of 15,361 Kaiser Members.[8] Claimants have a substantial interest in ensuring that any resolution of claims arising from Kaiser's conduct adequately protects their rights and provides meaningful compensation. Kaiser's gamesmanship forced the Claimants to file State Actions, as the previously planned arbitration route became highly prejudicial and four times as expensive.

In the State Actions, Claimants have a right to statutory damages from claims in this class action that are not addressed by the Proposed Settlement such the California Medical Information Act claim which provides for $5,000 per violation. Additionally, Claimants have alleged specific causes of action not alleged in this action or in the Proposed Settlement that provide Claimants with specific statutory damages of at least $10,000.[9]

---

[5] *See* Memo in Oppo to MPA, Waisnor Decl. Ex. G

[6] https://www.oia-kaiserarb.com/uploadedfiles/Supplemental-Rules-Effective-2-14-25.pdf (Last accessed September 20, 2025)

[7] *Id.* at §§ 7 & 8.

[8] Supra Note 2.

[9] Violation of the Comprehensive Computer Data Access and Fraud Act (CDAFA), Cal. Penal Code §§ 502 et seq. with damages of $1,000 for first violation and $5,000 for subsequent violations; Violation of the California Trap and Trace Law, Cal. Penal Code § 638.51 with statutory damages of $5,000 for each violation; California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq. with restitutionary damages including they money received through the sale of this private information; and Violation of the California Consumer Privacy Act (CCPA), Cal. Civ. Code (footnote continued)

Kaiser seeks an overly broad Settlement Class to force Claimants into the Proposed Settlement so it can escape liability on such high value claims. Kaiser's intentional restructuring of the arbitration rules after Claimants noticed an intent to arbitrate their claims should be viewed with extreme scrutiny and suspicion and arguably constitute unfair business practices under California law.

**1. The Class Action and Proposed Settlement.**

The Proposed Settlement in this class action against Kaiser purports to resolve claims of 13.1 million Kaiser members whose medical and personal data were revealed without their permission. The Settlement Amount is $46 million, with a potential to increase to $47.5 million. Of this amount, roughly $11.7 million is allocated to Loadstar fees, $900,000 to litigation costs, approximately $1.7–2.4 million to administration, and up to $40,000 in awards to class representatives. After these deductions, the Proposed Settlement provides a nominal recovery of approximately $2.44 per Settlement Class Member, which is grossly inadequate in comparison to individual damages of at least $5,000 per Settlement Class Member and $10,000 per Claimant. Kaiser and class counsel state that only 5-10% of the class is expected to submit a claims form, ostensibly increasing the potential payout to approximately $20 to $40 per class member.

Claimants have repeatedly and clearly informed Kaiser that they did not wish to be a part of any class action settlements. To ensure it could settle the high value claims for the minimal amount offered to Settlement Class members, Kaiser drafted an over inclusive Settlement Class and made the opt-out process overly burdensome and confusing. If included in the Proposed Settlement, Claimants intend to opt out of the settlement to preserve their rights to pursue full recovery of their damages.

Claimants simply wish to protect their interests and ensure that the Proposed Settlement does not unfairly deprive them of meaningful compensation for the harm they suffered. Without intervention, Claimants will have no meaningful ability to protect their substantial legal and

---

§§ 1798.100 et seq with statutory damages of up to $750 per violation.

financial interests.

## III. ARGUMENT

A Settlement Class action presents "unique due process concerns for absent class members" and the court has a "fiduciary duty" to look after their interests. *Allen v. Bedrolls,* 787 F.3d 1218, 1223 (9th Cir. 2015). Under FCRP 23(e)(2), a court may approve a settlement "only after a hearing" and on finding a proposed settlement to be "fair, reasonable, and adequate." Preliminary approval should only be granted when the proposed settlement has "no obvious defects, does not improperly grant preferential class treatment to class representatives or segments of the class, and falls within the range of possible approval." *Rich v. AM Retail Grp., Inc*., 2016 WL 1161453 at *7 (N.D. Cal. Mar. 24, 2016). Any settlement that is negotiated before a class action certification requires an "even higher standard of scrutiny for evidence of collusion or other conflicts of interest" *Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1048-49 (9th Cir. 2019)

When a settlement class is proposed, the Court should give heightened attention to fairness, in addition to the baseline judicial finding that the settlement is fair, reasonable, and adequate See *Kim v. Allison,* 8 F.4th 1170, 1182 (9th Cir. 2021), *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997*); In re Hyundai & Kia Fuel Economy Litig*., 926 F.3d 539, 557 (9th Cir. 2019). Courts should scrutinize the settlement for collusion and ensure that class counsel does not receive a disproportionate benefit compared to the unnamed class members. *See In re Volkswagen*, 895 F.3d at 611-12; *In re Dry Max Pampers Litig*., 724 F.3d at 718.

Courts have found class settlements to have a tendency to yield benefits for stakeholders *other than* the class. *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1352 (7th Cir. 1996). The incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judges approve a settlement involving a meager recovery for the class but generous compensation for the lawyers—the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." *Eubank v. Pella Corp*., 753 F.3d 718, 720 (7th Cir.2014), quoting *Creative*

*Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir.2011). Therefore, "objectors play an essential role in judicial review of proposed settlements of class actions and why judges must be both vigilant and realistic in that review." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014).

Here, Objectors also concur with the arguments in the Memorandum of Opposition to the Motion for Preliminary Approval of the Proposed Class Action Settlement filed on September 9, 2025 ("Memorandum of Oppo").

**A. Claimants should be excluded from the Settlement Class**

The court has broad discretion to amend the class in the interest of serving justice throughout the legal proceedings, and "may rescind, modify, or amend the class." *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 47374 (S.D. Cal. 2015). *See* FRCP 23(c)(1)(C), (an order that grants or denies class certification may be altered or amended before final judgment). The focus of a Rule 23(a) inquiry is on "inequity and potential inequity at the precertification stage." *Ortiz v. Fibreboard Corp.,* 527 U.S. 815 at 858 (1999). A court certifying the class at the same time it approves a settlement, should "demand undiluted, even heightened, attention." *Amchem*, 521 U.S. at 620.

In fact, this court previously held that a settlement class definition "should be modified to exclude those who have demanded or initiated arbitration." *In re 23andMe, Inc. Customer Data Sec. Breach Litig.,* 2024 WL 4982986 at *11. (N.D. Cal.)

Kaiser intentionally drafted the Settlement Class to be overinclusive, with only Kaiser members that have "perfected arbitration claims" to be excluded. There is no justification in fact or law for this narrow carve out. Claimants participated in a mediation to settle their claims along with the Proposed Settlement Class but once Kaiser understood the real value of their claims, it changed the arbitration rules with the obvious goal of severely prejudiced Claimants' right to bring their claims in an alternate forum. Kaiser then engaged in additional mediation that excluded the Claimants despite being aware of their high value claims and their intention to remain outside of the Settlement Class. Thereafter, Kaiser proposed a Settlement Class that effectively binds Claimants to a minimal payout, if any, by using a confusing and overly burdensome opt-out process.

Given these considerations, Claimants have a compelling interest in ensuring that the proposed Settlement Class receives a higher standard of scrutiny for evidence of collusion, and the Proposed Settlement is fair and adequate. The current Proposed Settlement, Settlement Class definition, and procedural hurdles to opting out of the Settlement put the Claimants' interests at risk. A modification of the Proposed Settlement is necessary to protect the Claimants' rights and ensure that the settlement process is conducted in a manner that is just and equitable for the entire Settlement Class. Claimants should simply be excluded from the Settlement Class.

**B. The Opt-Out Process should be made less burdensome and confusing**

In the alternative to carving Claimants out of the Proposed Settlement Agreement, the Court should require Kaiser to simplify the opt-out requirements. The Supreme Court has long recognized that due process under Rule 23 requires more than a mere opportunity to opt out; it demands a mechanism that is both practicable and meaningful. See *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 n.3 (1985) ("[A] fully descriptive notice… together with an opportunity to be heard and to withdraw from the class… satisfies the due process requirements."). A procedure that frustrates rather than facilitates that right is legally defective.

The opt-out process embedded in the Proposed Settlement fails the most basic tests of procedural fairness.

**i. An individual must clear several hurdles to successfully submit an opt out form**

First, the Short Form Notice[10] does not lay out the opt-out process but adds an additional step of visiting the settlement website to obtain this information. Objectors have no way of knowing where on the website the information will be found or how many additional hurdles they will face when attempting to opt-out of the Proposed Settlement.

Individuals already weary of stolen identities and their personal and private information being compromised, may be hesitant to visit a third-party website to enter their information. If they

[10] Exhibit E of the MPA, Dkt. 345-4

do visit the website, a website that is hard to navigate, slow to load, or offline for even a short period of time would further discourage individuals from opting out of the settlement. Once an individual makes it to the website, they must locate the long form notice and review a 15-page document to obtain information on how they can opt-out of the Proposed Settlement.

An individual that clears the hurdle of reviewing a 15-page notice without confusion or exhaustion will then have to re-locate their notice to obtain their unique Settlement ID number for the opt-out form. This presents multiple issues: 1) Proposed Class Members that hear of the Proposed Settlement before the Settlement Administrator publishes notices are unable to opt themselves out of the Settlement Class and must wait for the notice to arrive; 2) all the relevant information required to opt out is stored in multiple places to make the process burdensome and 3) requiring individuals to use a Settlement ID number instead of their Kaiser member ID number which is a number all Kaiser members know and frequently interact with is confusing. It is likely that many Settlement Class Members would accidentally enter their Kaiser member ID number instead of the Settlement ID number causing their opt-outs to be deemed invalid.

**ii. The restriction against mass opt-outs is burdensome**

Claimants' intention to be treated as separate from this class action have been known and represented to counsel on numerous occasions. Requiring Claimants to once again memorialize their desire to be excluded from the Proposed Settlement through a signed form with a specific Settlement ID number, rather than allowing statements with the relevant information such as their name and email address along with attorney certification, is arbitrary, burdensome, and likely to mislead.

Kaiser has excluded "mass opt-out" primarily to target Claimants' high value claims and include these Claimants into the Settlement Class against their wishes. Counsel has a duty to provide all Claimants with complete information on the Proposed Settlement and their individually filed claims. Once the Court approves a Proposed Settlement, counsel would provide Claimants with details of the Proposed Settlement and how it affects their own claims in arbitration and/or State Actions. As officers of the court, counsel can obtain the Claimants' informed consent and provide

a list to the Settlement Administrator without all the hurdles Kaiser has unnecessarily placed in the opt-out process. The requirement for a DocuSign or wet signature along with a unique Kaiser Settlement ID is burdensome and only exists to confuse and exhaust the Claimants into remaining in the Settlement Class against their will and receive no compensation for their high value claims.

In fact, Courts have allowed opt outs through counsel without requiring an individual signature or submission by each class member and found that such a "technical detail" should not "defeat the Claimants expressed intention to exclude themselves from a Class." *In re Google Asistant Priv. Litig.,* 2025 WL 510435 at *3 (N.D. Cal. Feb. 14, 2025).

The opt-out process is lined with barriers creating a substantial risk that a majority of the Settlement Class will inadvertently forfeit its rights and any compensation it is contemplated to receive under the Proposed Settlement. Approving the Settlement Agreement without the requested modifications would irreparably impair the interests of Claimants and any other individuals that wish to opt out of the Proposed Settlement.

**C. The Proposed Settlement should be denied**

Before approving a class action settlement, the Court must find that it "is fair, reasonable, and adequate," and is not the product of collusion between the parties. Fed. R. Civ. P. 23(e). To make that finding, the Court considers (1) whether the parties engaged in arms-length negotiations, (2) the terms of the settlement compared to the strength of Plaintiffs' case, (3) the stage of the litigation when the settlement is proposed, (4) the reaction of the class to the proposed settlement, and (5) the opinion of experienced counsel. *See Stephens v. US Airways Group, Inc.*, 102 F.Supp.3d at 226.

**i. The Proposed Settlement Amount is woefully inadequate**

The Proposed Settlement, which provides an average distribution of approximately $2.44 per proposed Settlement Class Member, is facially inadequate in light of the actual harm suffered. After deductions for attorneys' fees (lodestar of $11.7 million), litigation costs ($900,000),

administrative expenses ($1.7–2.4 million), and incentive awards ($40,000), the recovery for each of the 13.1 million class members is reduced to a nominal amount that bears no reasonable relationship to the damages incurred.

The payout of $26 million, approximately $14 million of which will be distributed to class counsel and the Settlement Administrators, is even more egregious in light of Kaiser's financial statements. In the second quarter of 2025, Kaiser had a net income of $3.3 billion which is a significant improvement compared to the same period last year.[11] Kaiser and its affiliates reported operating revenue of $29.1 billion in 2024.[12]

Kaiser and class counsel argue that because only 5-10% of the class is expected to submit a claims form, the potential payout would increase to approximately $20 to $40 for each class member that submits a claims form. In reality, the negotiated Settlement amount remains $2.44 for each proposed Settlement Class and Kaiser and class counsel have created hurdles that limit the payout to a tiny percentage of the proposed Settlement Class while the remainder of the proposed Settlement Class will release their claims for no compensation.

Even so, a $40 payout remains a minimal amount in comparison to the damage caused by Kaiser's deliberate choice to implement policies in clear violation of its legal obligation to keep the private and sensitive medical information of its members safe.

In contrast, each Settlement Class member has statutory damages of at least $5,000 for violation of the California Invasion of Privacy Act, which can be brought against 'any person' against Kaiser as it operated and sold their private and confidential communications in California. Claimants' damages are estimated to be at least $10,000. The discrepancy in the potential damages and the payout to the Settlement Class in the Proposed Settlement showcases just how undervalued this Proposed Settlement is.

---

[11] Kaiser Permanente and Risant Health Q2 2025 financial update (8/8/2025) https://www.publicnow.com/view/CA853C7DBE150B4C324E580FA418674EA9ECCC4A

[12] *Id.*

Courts have consistently held that Rule 23(e) requires that settlements provide "a fair, reasonable, and adequate" recovery in proportion to the rights released. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622–23 (1997). (settlement must provide structural assurance of fairness and cannot sacrifice the interests of absent class members). See In *re Bluetooth Headset Prods*. *Liab. Litig.,* at 946–47 (rejecting settlements where class recovery was "illusory" compared to the claims released); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) (noting that "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). A recovery of approximately $2.44 per Settlement Class Member, or $40 for each person that submits a claim form, in exchange for extinguishing statutory privacy claims of thousands of dollars per Proposed Settlement Class Member cannot be squared with Rule 23(e)'s requirement that a settlement be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The substantial disparity between the estimated damages and the proposed award demonstrates that the settlement is not the product of fairness, but rather of expedience, and it should not be approved in its current form.

"No class action settlement that yields zero benefits for the class should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand." *In re Walgreen Co. S'holder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016). While the Proposed Settlement does not yield zero benefit for the class here, the amount allocated for each Settlement Class Member is dangerously close to it. The fact that 10% of this proposed Settlement Class is expected to receive a payout while the other 90% is expected to have their claims extinguished for no compensation makes this inadequate settlement considerably worse.

The Court also has in front of it two separate memorandums of law objecting to the Proposed Settlement and discussing the flaws with the Proposed Settlement at length. The memorandums are filed on behalf of a significant portion of the proposed Settlement Class who believe their rights are being sold cheaply so attorneys and administrative companies can make significant money while their claims are extinguished for close to nothing.

**ii. The Proposed Notice is inadequate**

The Proposed Short Form Notice ("Notice") that is provided to the Settlement Class is also inadequate and confusing. *See Declaration of Yeates, Exhibit E*. [Dkt 345-4]. The Settlement Class will receive a short form notice that directs them to a third-party website. The Settlement Class must then navigate through a potentially confusing or slow website that could be rife with technical issues without any recourse.

To add insult to injury, once a determined Proposed Settlement Class Member has located the claim form, they will now be forced to disclose their personal information to yet another third party. They must choose between disclosing their information to a claims administrator they have no relation with or forgo a payout for the unauthorized disclosure of their information by Kaiser. Further, the Settlement Class has no way of knowing what their estimated payout would be. The Long Form Notice fails to state that administrative costs are expected to take up to 2.4 million off the settlement or the number of Class Settlement Members that are eligible for the award.

The Notice does not provide information about the class size for the Settlement Class to calculate the approximate payout of a meagre $2.44. Alternative, the Notice does not indicate an expected payout of $20-$40 or provide a range that can be expected after submission of a claims form. Without this information, Claimants are unable to make an informed decision regarding their expected settlement

If the Settlement Class clears all these hurdles, they must now provide a specific settlement identification number on this claim form instead of their regularly used and readily accessible Kaiser member ID form. The failure to provide this information on the claims notice could potentially result in a rejected claim. Therefore, a Proposed Settlement Class Member may jump through all the hoops and yet fail to receive any compensation. Failure to provide personal information to a party the proposed Settlement Class Member does not know will be punished by a release of all claims without any compensation.

The Proposed Settlement is unfair and should be rejected as it releases the claims of the proposed Settlement Class for negligible or no consideration.

## IV. CONCLUSION

Kaiser seeks to force Claimants into an undesirable settlement by including them an overly broad Settlement Class that Claimants have already sought to avoid. Further, Kaiser has deliberately proposed a confusing and arduous opt out process to keep Claimants in the proposed Settlement Class so it can force them to release their much more valuable claims.

For the foregoing reasons, Objectors respectfully request that this Court remove all Claimants, who are individuals who have noticed an intent to arbitrate their claims against Kaiser, filed arbitrations against Kaiser, and/or filed State Actions in retaliation to the changing arbitration rules, from the Proposed Settlement Class.

In the alternative, the Objectors respectfully request the Court find the Proposed Settlement is inadequate, or in the alternative, order the notice and opt-out procedure be changed to allow the Settlement Class to easily remove themselves from the Proposed Settlement.

Dated: October 6, 2025

POTTER HANDY, LLP

By: /s/
Tehniat Zaman
Attorneys for Objectors