CROWELL & MORING LLP
Kristin J. Madigan (SBN 233436)
KMadigan@crowell.com
Anna Z. Saber (SBN 324628)
ASaber@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

CROWELL & MORING LLP
Jennie Wang VonCannon (SBN 233392)
JVonCannon@crowell.com
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

CROWELL & MORING LLP
Jeffrey L. Poston (appearance pro hac vice)
JPoston@crowell.com
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: 202.624.2500
Facsimile: 202.628.5116

Attorneys for Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | Case No. 3:23-cv-02865-EMC<br><br>**DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC.'S RESPONSE TO OCTOBER 3, 2025 ORDER REGARDING MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT**<br><br>Date: October 23, 2025<br>Time: 1:30 p.m.<br>Ctrm.: 5<br>District Judge: Hon. Edward M. Chen<br><br>Consolidated Complaint Filed: December 6, 2024<br>Trial Date: January 25, 2027 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 2
A. Objectors Have Declined to Arbitrate by Refusing to Pay the Invoiced $150 Fee for Each Claimant .......... 2
B. This Case Is Materially Different Than 23andMe. .......... 5
III. RESPONSES TO THE OTHER ISSUES IN THE COURT'S ORDER .......... 6
A. Size of Class .......... 6
B. Class Definition .......... 7
C. Monetary Relief for the Settlement Class .......... 8
D. Confidential Portion of the Settlement Agreement .......... 8
E. Class Notice .......... 10
F. Plan of Allocation .......... 10
G. Attorneys' Fees .......... 10
H. Statutory Damages .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 23andMe, Inc. Customer Data Sec. Breach Litig.*,
No. 24-MD-03908-EMC, 2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ........................ *passim*

*Friedman v. Guthy-Renker*,
LLC, No. 2:14-CV-06009-ODW(AGRx), 2016 WL 5402170 (C.D. Cal. Sept. 26, 2016) ........................ 9

*In re Lyft Inc. Sec. Litig.*,
No. 19-CV-02690-HSG, 2023 WL 2960006 (N.D. Cal. Mar. 16, 2023) ........................ 9

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 1:12-MD-2343, 2015 WL 1486709 (E.D. Tenn. Mar. 31, 2015) ........................ 9

*Thomas v. Magnachip Semiconductor Corp.*,
No. 14-CV-01160-JST, 2016 WL 3879193 (N.D. Cal. July 18, 2016) ........................ 9

Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser Permanente" or "Defendant")[1] respectfully submits this response to the Court's Order re Supplemental Briefing ("Order") dated October 3, 2025 (D.N. 362) regarding the Motion for Preliminary Approval of the Proposed Class Action Settlement that is set for hearing on October 23, 2025. Kaiser Permanente specifically responds to the Court's questions regarding Class Definition and whether this case is similar or not to the class approval in *In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, No. 24-MD-03908-EMC, 2024 WL 4982986 (N.D. Cal. Dec. 4, 2024). Kaiser Permanente then responds to the Court's other questions or, where appropriate, defers to Class Counsel and their Responses.

## I. INTRODUCTION

This Court has asked the parties to "explain why a perfected arbitration claim includes the requirement that the arbitration filing fee be paid[?]" Order at 1. The answer is that under the Office of the Independent Administrator ("OIA") arbitration system, a claimant has not exercised their right to arbitrate until the claimant pays the $150 fee. Until that fee is paid, there is no arbitrator, there is no schedule, there are no parties, and there is no choice to arbitrate. Here, the OIA has repeatedly asked Objectors if they are going to pay the filing fee and perfect their arbitration claims. Indeed, the OIA has invoiced Objectors multiple times to pay the fee and commence the arbitration. With the exception of 17, Objectors have declined to exercise their arbitration rights by paying the fee. Rather they have affirmatively chosen to pay a state court filing fee to launch a state court class action, and have since pursued aggressive and extensive discovery. The deliberate refusal to pay the fee and the choice to litigate in state court are why all but the 17 have failed to perfect their arbitration claims and why this matter is distinguishable from *23andMe*.

Objectors claim that this case is exactly like *23andMe* and that they should be automatically carved out from the settlement class. But *23andMe* was decided on its unique facts, and this case is fundamentally and materially different. In *23andMe*, the Intervenors clearly chose

[1] The parties have stipulated to dismiss Defendants Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington, in connection with settlement approval. D.N. 347.

to arbitrate, but confronted administrative and procedural roadblocks that impeded their ability to proceed and complete the process. For example, in *23andMe*, JAMS did not invoice the Intervenors to pay the applicable $230 filing fee, so they could not complete the process and perfect their claims despite their intent to do so. In contrast, Objectors here have faced no such obstacles; they have repeatedly been invoiced the $150 fee and repeatedly declined to pay. The 17 members who paid their invoices have chosen to arbitrate; the remainder have declined to arbitrate and chosen to litigate in state court. The filing of the duplicative state class action alone should preclude Objectors' exclusion from the class. Under these circumstances, there is no basis—especially under *23andMe*—to carve out these Objectors from the class.

## II. ARGUMENT

### A. Objectors Have Declined to Arbitrate by Refusing to Pay the Invoiced $150 Fee for Each Claimant.

As set forth in Kaiser Permanente's Reply to Objectors' brief, individual arbitration claimants have always been required to pay the $150. D.N. 355 (Reply) at 2-3, Section II.A. Objectors claim that the OIA changed its rules after Objectors served their arbitration demands and for the first time required each Claimant to pay the $150 filing fee. Not so. The OIA required each Claimant to pay $150 before and after adopting rules for what constitutes a mass arbitration and how to manage a mass arbitration. *Id.* at 6, Section II.F. Kaiser Permanente's Evidence of Coverage ("EOC") requires that a claimant pay a $150 fee to arbitrate or seek a waiver. D.N. 351-4 (Waisnor Decl.) Ex. B at 3 (p. 76). The EOC states:

> The ***Claimants*** shall pay a single, nonrefundable filing fee of $150 per arbitration … regardless of the number of claims asserted in the Demand for Arbitration or the number of ***Claimants*** … named in the Demand for Arbitration.

*Id.* Objectors' position is that Kaiser Permanente's previous rules permitted an infinite number of Claimants with independent separate claims to pay a single $150 fee to perfect their arbitration claims. On its face, the notion that 30,000, or for that matter 30 million, individuals could file separate arbitration claims for a single $150 fee is unserious and flatly untenable under the plain

language of the EOC and the OIA Rules. *See* D.N. 355 (Reply) at 2-3, 6. Unless members are related to one another (e.g., spouse, child), each must pay the fee. *See* D.N. 351-4 (Waisnor Decl.) Ex. B (EOC) at 3 (p. 76) ("Claimant" refers to a "Member Party … who asserts a claim"; "Member Parties include: A Member, A Member's heir, relative, or personal representative …").[2]

Arbitration cannot commence until the $150 fee is paid. Once it is paid, the OIA notifies the parties, the parties choose an arbitrator, the arbitrator convenes a scheduling conference, discovery and motion practice begins, and ultimately the case is arbitrated on an agreed upon schedule. If the fee is not paid, none of that happens, and there is no pending arbitration. *See, e.g.*, D.N. 355-1 (OIA Rules, Feb. 14, 2025) at Rule 16 (List of Possible Arbitrators provided after OIA receives the filing fee), Rules 17 to 20 (Selection of the Neutral Arbitrator, Acceptance, Disclosure and Challenge), Rule 25 (Arbitration Management Conference to be held within 60 days of the Letter Confirming Services of the Neutral Arbitrator).

To date, 17 members have each paid the $150 fee to arbitrate. The Bryson firm (attorneys formerly at Milberg) represents 10 of those members and paid the $150 fee on May 30, June 25, and July 10, 2025. D.N. 355-1 (Decl.) ¶ 7. The Potter Handy firm represents the remaining 7 members. *Id.* These 17 members complied with the rules, paid the invoices from the OIA, and commenced arbitrations unimpeded. There is no dispute that these 17 members chose arbitration and should be excluded from the settlement class.

In contrast, Objectors and the 29,870 individuals that the Labaton and Milberg firms claim to represent have declined to comply with the rules and pay the $150 fee and should not be rewarded by being excluded from the class. On February 14, 2025, OIA invoiced the Labaton and Milberg firms to pay the filing fees of $150 per claimant. These firms refused to pay and allowed the filing deadline to pass. OIA sent a second invoice in April 2025, and again these firms refused to pay the fees. Declaration of Kristin Madigan ("Madigan Decl.") Exs. 1, 2. OIA then sent a third notice in May 2025, informing Labaton and Milberg that if OIA "does not receive the filing fees by May 13, 2025, we will deem this arbitration abandoned for non-payment of the filing

[2] To be clear, Objectors' argument regarding OIA rules is extraneous and not before the Court. In any event, the argument fails. *See* D.N. 355 (Reply) at 13.

fees." *Id.* Exs. 3, 4. Labaton again refused to pay the invoice and opted to buy more time by seeking multiple extensions, offering only a vague reason for the extension; Milberg refused to pay the invoice and did not ask for an extension, so the OIA deemed their arbitration demand abandoned. *Id.* Ex. 5. On May 12, 2025, OIA granted Labaton's request to extend the deadline to pay the filing fees to June 12, and informed Labaton the file would be closed on June 26, 2025 "as abandoned for non-payment." But again, Labaton both refused to pay the filing fees and sought additional extensions, again on vague grounds (and without mentioning that it had filed a case on behalf of its clients in state court). On June 26, 2025, and again on September 25, 2025, OIA granted Labaton's additional requests to extend the deadline until November 25, 2025 to pay the filing fees. *Id.* Ex. 6. Labaton's stated basis for the most recent extension is that "Claimants do intend to move forward with their claims, but the proposed settlement in *Doe* may impact that." *See id.* This is a delay tactic. Regardless of what this Court does on October 23, 2025, Objectors will still have to pay the $150 filing fee, which they have made clear they will not pay. There can be no dispute that the Labaton and Milberg firms have not paid the arbitration filing fees despite being invited multiple times to do so. Rather, Objectors have taken their claims to state court and abandoned arbitration.

On May 6, 2025, Objectors filed a putative class action in state court on behalf of themselves and the 29,870 individuals that Labaton and Milberg claim to represent asserting the same claims they contend they would pursue in arbitration. D.N. 355-1 (Decl.) Ex. 2. The putative class in the complaint includes "anyone who has previously given notice of an intention to arbitrate" ***and*** is represented by the Labaton and Milberg firms. *See* D.N. 355 (Reply) at 8, Section II.I; D.N. 355-1 (Decl.) Ex. 2 ¶ 170. That class definition clearly states that the individuals who had "previously given notice of an intention to arbitrate" were abandoning that effort and jumping to state court. Having chosen litigation, Objectors and their counsel are actively litigating that case. *See* D.N. 355 (Reply) at 8-12, Section II.I.-K. and III.A.1. Yet Objectors are saying different things in different venues. Objectors are telling this Court they wish to arbitrate while they are telling the state court that they want to litigate, not arbitrate.

Indeed, Objectors have affirmatively rejected arbitration before the state court, claiming that a motion to compel arbitration in the state action would cause "palpable" prejudice to their clients. *See* D.N. 355 (Reply) at 8; D.N. 355-1 (Decl.) Ex. 3 (Aug. 15, 2025 Waisnor Letter). Objectors cannot be in multiple venues at once. They have chosen litigation and abandoned arbitration in this matter. *Cf. 23andMe*, No. 24-MD-03908-EMC, 2024 WL 4982986, at *11 ("If an individual has chosen to arbitrate, they have chosen not to litigate; including the individual in the class [sic] would force them into litigation in derogation of their right to arbitrate.") (citation omitted).

### B. This Case Is Materially Different Than 23andMe.

Objectors urge this Court to create a legal standard that would exclude from class settlements parties who repeatedly reject arbitration by refusing to pay a nominal fee (required by courts and arbitration rules alike) and instead choose litigation so long as they merely continue to claim an interest in arbitration. There is no legal support for this notion. Moreover, it departs from the decision in *23andMe* where the intervenors' *conduct* demonstrated that they had chosen arbitration and where they were blocked from perfecting their claims.

In *23andMe*, this Court excluded Intervenors from the class based on their clear choice to arbitrate. The Intervenors there chose to arbitrate but were impeded from pursuing arbitration. In *23andMe*, some putative class members opted for arbitration early in the process, paid their fees, and commenced arbitration. Others waited and attempted to begin the arbitration process through JAMS, the administrator that 23andMe identified in their arbitration rules. Unbeknownst to them, 23andMe had changed its rules and switched to a different arbitration administrator—NAM. Accordingly, JAMS declined to invoice these Intervenors leaving their fees unpaid. At the hearing for Preliminary Approval of the Class Settlement on October 29, 2024, counsel for the Intervenors explained to the Court:

> Your Honor, just to address the specific question, we did file 11,061 claims before JAMS. Before JAMS could invoice us, 23andMe submitted letters indicating that they refused to arbitrate the claims before JAMS and because the parties didn't agree to arbitrate before JAMS, JAMS declined to administer and did not even invoice us. And so that's why fees have not been paid in our cases. D.N. 355-1 (Madigan Decl.) Ex. 5 (*23andMe* Hearing Tr.) at 8:14-20.

That is easily distinguished from the circumstances here. Unlike the Intervenors in *23andMe*, OIA invoiced their counsel at least three different times, and each time Objectors chose not to pay. Instead, Objectors filed a state court class action and have aggressively pursued discovery in that case. *See* D.N. 355 (Reply) at 8-12, Section II.I.-K. and III.A.1.

At the *23andMe* hearing, this Court asked Intervenors regarding next steps, and they responded with, "the claimants that I represent will file before NAM[ ]" and will pay fees of "nearly a million dollars." D.N. 355-1 (Madigan Decl.) Ex. 5 (*23andMe* Hearing Tr.) at 8:24-9:15. Unlike the Intervenors in *23andMe*, the Objectors here have been invoiced repeatedly and have repeatedly failed to pay, while turning their focus to their state court class action. They now ask this Court to carve them out from the Class Definition based on the very arbitration rights that they have clearly and repeatedly chosen to abandon. All that Objectors can point to is their counsels' rote pronouncements that they remain interested in arbitration. But, as *23andMe* shows, actions speak louder than words. Under these circumstances, Objectors have not "demanded," "filed," "initiated," or "chosen" arbitration. Accordingly, they should not be carved out, like the 17 members who paid their fees, on the grounds that they have "chosen" to arbitrate. Rather, Objectors and the 29,870 individuals that Labaton and Milberg claim to represent should be included in the class, and they are then free to opt out and pursue either their duplicative arbitration or individual state law claims if they choose.

## III. RESPONSES TO THE OTHER ISSUES IN THE COURT'S ORDER

### A. Size of Class

#### 1. The Court's question(s):

The parties' papers indicate that the size of the settlement class is estimated to be about 13.1 million individuals. The parties and/or Kaiser shall provide a rough estimate of how many individuals live in each Operating state, including but not limited to California. Order at 1.

#### 2. Kaiser Permanente's response:

Kaiser Permanente currently operates in California, Colorado, Georgia, Hawaii, Maryland, Oregon, Virginia, Washington, and the District of Columbia. The 13.1 million

individuals in the proposed settlement class are current and former Kaiser Permanente members (from November 2017 to May 2024) of each of the Operating states as shown in the chart below:

| Operating States | Count |
|---|---|
| California | 9,153,876 |
| Colorado | 723,461 |
| Georgia | 421,752 |
| Hawaii | 263,071 |
| Mid-Atlantic States (Maryland, Virginia, the District of Columbia) | 861,511 |
| Northwest (Oregon and Southern Washington State) | 671,394 |
| Washington | 1,039,843 |
| **Grand Total** | **13,134,908** |

Kaiser Permanente has the last known mailing address for each of the 13.1 million individuals, which is typically an address within the current or former member's Operating state. In some instances, however, current and former members during the relevant time period of November 2017 to May 2024 have out-of-state mailing addresses for a variety of reasons (e.g., a child on a family health plan attends college out of state, a former member has moved).

**B. Class Definition**

**1. Why the class period (of November 2017 to May 2024) was chosen?**

The class period was chosen because it covers all potentially relevant Kaiser Permanente members. Kaiser Permanente used a conservative start date of November 2017 tos May 2024 to notify its current and former members who may have been impacted by the challenged conduct.

**2. Why a perfected arbitration claim includes the requirement that filing fees be paid?**

Kaiser Permanente addresses this question above. *See supra* Sections I. and II.

**3. If arbitrating individuals are excluded from the settlement class, shall they receive notice of the settlement and an opportunity to opt-in?**

Kaiser Permanente takes no position on whether the seventeen arbitrating individuals shall receive notice of the settlement and an opportunity to opt-in.

Kaiser Permanente objects to excluding from the settlement class Objectors and their counsel's other clients. Kaiser Permanente respectfully urges this Court not to exclude those individuals.

If the Court does exclude Objectors and Labaton and Milberg's other clients, the Court should retain jurisdiction over them to resolve any future disputes that may arise if they attempt to pursue their claims in state court instead of arbitration, because their putative class claims are subject to the release in the Settlement Agreement and should be barred.

#### 4. Have Labaton and Milberg Informed Any of Their Clients Other Than Objectors About the Terms of the Settlement?

Kaiser Permanente does not respond to this question from the Court because it is directed to the Labaton and Milberg firms.

### C. Monetary Relief for the Settlement Class

Kaiser Permanente defers to Class Counsel and their Responses to these questions.

### D. Confidential Portion of the Settlement Agreement

#### 1. The Court's question(s):

The parties have referred to a confidential settlement agreement related to the number of opt-outs. A copy of that agreement shall be promptly provided to the Courtroom Deputy for in camera review at emccrd@cand.uscourts.gov. The parties shall explain why that term should be kept confidential and provide legal authorities supporting their position. Order at 2.

#### 2. Kaiser Permanente's response

The Court has asked the parties to explain why the confidential Supplemental Agreement term related to the number of opt-outs should be kept confidential, and to provide legal authorities in support. Kaiser Permanente responds as follows:

The Supplemental Agreement is a confidential agreement between the Parties that permits Kaiser Permanente to terminate the Settlement under certain specified terms and conditions related to the number of Settlement Class Members who may opt out.

The Parties have agreed to keep this agreement confidential consistent with prevailing practices and caselaw in complex litigation to prevent any individuals from attempting to vitiate the Settlement. *See* Manual for Complex Litigation (Fourth) § 21.631 (2004) (explaining that "[k]nowledge of the specific [conditions] that will vitiate a settlement might encourage third parties to solicit class members to opt-out. A common practice is to receive information about such agreements in camera."). Such agreements are typically confidential because "[k]nowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out." David F. Herr, ANN. MANUAL FOR COMPLEX LIT. § 21.631 (4th ed. May 2020 Update); *see also* MCLAUGHLIN ON CLASS ACTIONS § 6.22 (16th ed. Oct. 2019 Update) ("'blow up' or termination provision allowing the defendant to terminate the settlement agreement if a designated number or percentage of class members opt out of the settlement may remain non-public.").

Courts routinely permit Supplemental Agreement terms like the ones here to remain confidential given the risk that public disclosure of the opt-out threshold could result in a coordinated mass opt-out campaign. *See, e.g.*, *In re Lyft Inc. Sec. Litig*., No. 19-CV-02690-HSG, 2023 WL 2960006, at *2 (N.D. Cal. Mar. 16, 2023) ("As courts have recognized, the threshold should be kept confidential to discourage third parties with ulterior motives from soliciting class members to opt out."); *Friedman v. Guthy-Renker*, LLC, No. 2:14-CV-06009-ODW(AGRx), 2016 WL 5402170, at *2 (C.D. Cal. Sept. 26, 2016) ("Publicly disclosing the opt-out threshold would practically invite professional objectors to threaten the settlement by soliciting opt-outs."); *Thomas v. Magnachip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 3879193, at *7 (N.D. Cal. July 18, 2016) (sealing prevents use of opt-out threshold to leverage "higher payouts" on threat "of obstructing the settlement[.]"); *In re Skelaxin (Metaxalone) Antitrust Litig*., No. 1:12-MD-2343, 2015 WL 1486709, at *2 (E.D. Tenn. Mar. 31, 2015) (similar).

Here, it is in the Parties' interest to keep confidential Supplemental Agreement terms that could vitiate the Settlement Agreement.

**E. Class Notice**

Kaiser Permanente defers to Class Counsel and their Responses to these questions.

**F. Plan of Allocation**

**1. The Court's question(s):**

The cy pres beneficiaries are Institute for Public Health Innovation and National Council for Behavioral Health dba National Council for Mental Wellbeing. Do the parties know whether either of these organizations conduct activity related to protection of personal health information? Order at 4.

**2. Kaiser Permanente's response**

The Settlement Agreement identified two possible cy pres recipients. Kaiser Permanente wishes to put forward the Institute for Public Health Innovation ("IPHI") only as the proposed cy pres recipient. IPHI is the fiscal sponsor for the Common Health Coalition.

The Coalition brings together America's leading health organizations in pursuit of public health goals. *See* https://commonhealthcoalition.org/ (last visited Oct. 7, 2025). The Common Health Coalition engages in work regarding the exchange of data between health care and public health systems, coordination between health care and public health, emergency preparedness, and real-time disease detection. *See id.* The Coalition's work is not focused specifically on the protection of personal health information.

**G. Attorneys' Fees**

**1. The Court's question(s):**

Plaintiffs' counsel shall provide an estimate of the number of hours they have spent on each major litigation task. They shall also provide their hourly rates.

In addition, the parties shall address what changes there have been to Kaiser's privacy notification practices. *See* Mot. at 14. Order at 4.

**2. Kaiser Permanente's response**

Kaiser Permanente defers to Class Counsel and their Response to the questions regarding estimated hours spent on major litigation tasks, and their hourly rates.

The Court has asked the parties to address what changes there have been to Kaiser Permanente's privacy notification practices. Kaiser Foundation Health Plan ("KFHP") has made several changes to Kaiser Permanente's privacy notification practices over the last two years. KFHP has implemented a consent banner on its websites and mobile applications. *See* D.N. 96 at 1-4 and Exhibits 1-5. KFHP has also implemented a consent management tool on its websites to allow users to manage their consent preferences for tracking technologies and cookies placed by KFHP or third-party service providers. *See* https://healthy.kaiserpermanente.org/northern-california/front-door. In addition, KFHP updated its Privacy Statement and Terms and Conditions for its websites and mobile applications. *See* https://healthy.kaiserpermanente.org/privacy; https://healthy.kaiserpermanente.org/termsconditions (last visited Oct. 10, 2025).

**H. Statutory Damages**

**1. The Court's question(s):**

Plaintiffs have identified several non-California jurisdictions that provide for statutory damages. *See* Pls.' Reply at 14 (citing D.C., Maryland, and Washington). Do Kaiser and Objectors agree, or do they know of other relevant jurisdictions that provide for statutory damages? Order at 4.

**2. Kaiser Permanente's response**

Kaiser Permanente agrees Washington D.C., Maryland, Washington, as well as Oregon and the Electronic Communications Privacy Act of 1986 (ECPA), 18 U.S.C. §§ 2510-2523, provide for statutory damages, but Kaiser Permanente does not believe those types of damages are recoverable in this case. Kaiser Permanente is not aware of any other non-California jurisdictions that provide for statutory damages relevant to the allegations in the Complaint.

Dated: October 10, 2025

Respectfully submitted,

CROWELL & MORING LLP

By: ______________________

Kristin J. Madigan
KMadigan@crowell.com
Anna Z. Saber (SBN 324628)
ASaber@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

CROWELL & MORING LLP
Jennie Wang VonCannon (SBN 233392)
JVonCannon@crowell.com
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

CROWELL & MORING LLP
Jeffrey L. Poston (appearance pro hac vice)
JPoston@crowell.com
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: 202.624.2500
Facsimile: 202.628.5116

Attorneys for Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Health Plan of Washington