**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, PC**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Michael A. Innes (*pro hac vice* forthcoming)
minnes@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Interim Co-Lead Class Counsel*
(*Additional Attorneys Listed on Signature Page*)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,

Defendants.

Case No. 3:23-cv-02865-EMC

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, NOTICE TO SETTLEMENT CLASS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Judge: Hon. Edward M. Chen
Date: October 23, 2025
Time: 1:30 p.m.
Court: 5

CMC Filed: December 6, 2024
Trial Date: January 25, 2027

Plaintiffs, on behalf of the proposed Settlement Class, respectfully submit this Supplemental Brief in support of their Motion for Preliminary Approval of the Settlement, in response to the Court's October 3, 2025 Order (ECF No. 362) ("Order").

A. Size of Class

Plaintiffs received confidential information concerning the breakdown of the Class during the litigation including information concerning the number of logins from each class member separated by state of login. *See* ECF No. 250 at 3 ("As stated at the October 18th DMC, the Court ORDERS Kaiser to serve a supplemental interrogatory response (or, at their option, produce a document such as a spreadsheet or chart which tabulates this data pursuant to Rule 33(d)) showing the aggregate number of days for which there was a login per each putative class member (identified by MRN or GUID) per state per year."). In light of the confidentially provisions, Plaintiffs understand that Kaiser will be submitting the requested breakdown in its submission in response to the Order.

B. Class Definition

The Class Period is November 2017 to May 2024. First, November 2017 was selected as the beginning of the Class Period because this is the date Kaiser used as the start date of the privacy breach in connection with its privacy breach notifications. This date is also approximately six years before October 25, 2023, the date that Kaiser stated it had "confirmed that certain third-party online technologies previously installed on some portions of its website and mobile application were configured to transmit limited information about Kaiser members and patients to the vendor-developer as part of the technology's standard functionality" (*see* ECF No. 127-1) and shortly after Plaintiffs filed their original complaint on June 9, 2023 (*see* ECF No. 1). Thus, it encompasses a roughly six year statute of limitations period. Second, the Class Period end date of May 2024 was selected because, although Kaiser removed the offending technology from its Site and Apps in November 2023 (*see* ECF No. 96), Plaintiffs also allege in their Consolidated Amended Complaint that Kaiser did not provide timely notice of the privacy breach to regulators and Class members. *See* CAC, ¶ 589. This notice to regulators was not provided until April 12, 2024, one day after this Court issued an opinion on Kaiser's Motion to Dismiss Plaintiffs' First Amended Complaint. *See* CAC, ¶ 8. Kaiser then proceeded to issue individual notifications of the privacy breach to its members,

which Plaintiffs understand was completed in May 2024. Accordingly, May 2024 was selected as the Class Period end date.

The Settlement Class expressly excludes Kaiser Permanente members with a "Perfected Arbitration Claim," who by definition must have paid the $150 filing fee required or submitted a filing fee waiver. This provides an objective and definite criterion to determine whether and which individuals have truly chosen to arbitrate their claims and follows well-established precedent recognizing that *en masse* opt-outs are not permitted; a finding that a class member must individually sign is vital because it ensures that the class member is individually consenting to opt out. It is not sufficient to simply exclude those whose names may have appeared on a list at some point as purportedly having considered arbitration. This is particularly true given the unique circumstances of this case.

In negotiating and determining the Settlement Class definition, the Parties were mindful of the Court's guidance from *In re 23andMe* noting that ***individuals who have chosen*** to adjudicate their claims in an arbitral forum should be excluded from the Settlement while those who have ***merely threatened arbitration*** should not. *In re 23andMe*, 2024 WL 4982986, at *11-12 (N.D. Cal. Dec. 4, 2024). At the time of settlement in this case, Plaintiffs understood that certain individuals had chosen to proceed with arbitration before Kaiser's Office of the Independent Administrator ("OIA"), paid the $150 filing fee, and thus should be excluded. There were also individuals represented by Labaton, Milberg, and Potter Handy who had previously threatened arbitration, but had since filed state court class actions and/or abandoned the pursuit of arbitration claims. *See* ECF No. 353 at 7-9 ("Reply"). Excluding only those with "Perfected Arbitration Claims" provides an objective measure to determine whether an individual has chosen the arbitration path rather than litigation in court. Of course, to the extent that individuals now choose to arbitrate their claims after receiving notice of the Settlement, such individuals can opt out like any other class member.

Notably, Labaton, Milberg, and Potter Handy all maintain that they seek to ***both litigate in state court and maintain the option to arbitrate***. *See* ECF No. 354, ¶ 170 (California state court lawsuit brought by Labaton and Milberg on behalf of Objectors, defining the class to include all California citizens who are Kaiser Plan Members and beneficiaries, including Labaton and Milberg

clients who have "previously given notice of an intention to arbitrate."); *see also* ECF No. 363 at 14. This is unprecedented. Objectors' counsel also confirm that their clients did not "choose" the arbitration path; rather, upon retention they authorized counsel to pursue "privacy-related claims against Kaiser, including to file claims on their behalf in individual arbitration ***and/or to file claims in court***." ECF No. 369-3 at ¶ 5; ECF No. 369-4 at ¶ 4. This is puzzling. Given that even counsel for these Objectors are unclear as to how these claims are being pursued, inclusion of an objective factor —perfecting the arbitration claim—is particularly important under these circumstances and ensures clarity as to whether these individuals have affirmatively chosen or instead merely threatened to arbitrate.

Plaintiffs do not oppose giving anyone, including individuals with Perfected Arbitration Claims, notice of the settlement and an opportunity to be part of the settlement. However, Plaintiffs oppose converting this "opt-out" class into an "opt-in" class. Even setting aside that individuals who have threated arbitration have had nearly two years to commence arbitration, those who wish to arbitrate but who do not have a Perfected Arbitration Claim can simply execute a one page opt-out form. There is no reason to allow such opt-outs *en masse*, or alter well-established opt-out procedures, particularly where counsel for these individuals has filed a state court class action and purports to represent them in court.

C. Monetary Relief for the Settlement Class

Depending on several factors, including the number of opt-outs, the net settlement fund could at its lowest be approximately $27.48 million. This calculation assumes the high end of claims administration costs ($2,400,000), expenses ($900,000), attorneys' fees ($15,180,000), service awards ($40,000), and the lowest possible recovery of $46,000,000 (instead of $47,500,000). Using this lowest net settlement fund figure and the estimated claims rates of 5-10%, the Court's calculation of an estimated payment per claiming class member of $20.98-$41.95 is correct.

D. Confidential Portion of Settlement Agreement

Pursuant to this Court's Order, on October 6, 2025, the Parties provided the Court with a copy of the confidential portion of the Settlement Agreement (the "Supplemental Agreement"). The Supplemental Agreement details certain conditions that may prevent the Settlement from being

consummated, *i.e*, "blow provisions," and/or could increase the settlement amount from $46 million to $47.5 million. Courts in this District have accorded such agreements with confidential treatment so that they are not used as leverage to improperly obstruct settlements. *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."); *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017) (same); *In re Anthem, Inc. Data Breach Litig.*, 2017 WL 9614789, at *2 (N.D. Cal. Aug. 25, 2017) ("This Court and other courts have found that [the number of opt-outs from the settlement that would trigger the defendant's right to terminate the settlement agreement] is sealable."); Order at 4, *In re Animation Workers Antitrust Litigation*, No. 14-cv-04062 (N.D. Cal. Mar. 2, 2017), ECF No. 379 (granting the motion to seal an attachment to the settlement agreement that contains the percentage of opt-outs that trigger the defendants' right to terminate the settlement).

E. Class Notice

1. Email Notice

The Parties have confirmed the Settlement Administrator can determine whether an email is undeliverable (*e.g.*, bounceback) and in many cases whether an email is not opened; however, as explained in the attached declaration, the method for making such a determination will vary by email provider. *See* Exhibit A (Supplemental Declaration of Paul Mulholland of Strategic Clams Services, Inc. in Response to Certain Administration-Related Questions in the Court's October 3, 2025 Order re Supplemental Briefing) ("Supplemental Mulholland Declaration"), ¶¶ 3-6. If undeliverable (*i.e.*, the email does not reach the intended recipient's inbox), Strategic Clams Services ("SCS") will receive a notification. *Id.* ¶ 3. With respect to opened and unopened messages, SCS will utilize transactional email services (SendGrid, AWS Simple Email Service, etc.) for email delivery to maintain the best possible deliverability rates and inbox placements. *Id.* ¶ 4. These services will provide detailed reports on open rates, clicks, bounce backs, and spam reports to track email performance. *Id.* However, it may not always be possible to determine whether an email has been "Opened" due to the possibility that certain technologies may generate "false positives." *Id.* ¶ 5.

However, SCS intends to send at least one additional email to Settlement Class Members during the course of the administration to remind them to submit a Claim, providing the Settlement Class Members with multiple opportunities to hear about the Settlement. *Id*.

2. Changes to the Long-Form Notice

As set forth below, we have accepted the Court's edits to the Long Form Notice, with redlines and clean versions submitted herewith as Exhibits B and B-1 (respectively)

- On page 1 of the Long Form Notice, we have added a range of estimated payment.
- On page 2 of the Long Form Notice, the section titled "Statement of the Settlement Class's Recovery," dollar has been amended to include amounts for attorneys' fees, litigation expenses, and service awards.
- On page 3 of the Long Form Notice, the section titled "Attorneys' Fees and Expenses Sought," has been amended to include dollar amounts for attorneys' fees.
- On page 4 of the Long Form Notice, the column that states "EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS" has been amended to also state "SUBMIT A REQUEST FOR EXCLUSION" (i.e., to be parallel to the option of staying in the class and submitting a claim form).
- On page 4 of the Long Form Notice, the column describing the option of objecting has been amended to include a statement that an objector must still submit a claim form if they want a payment.
- On page 11 of the Long Form Notice, Question 8 has been amended to include the word "signature" at the end of the sentence "(iv) include a wet ink signature (i.e., no /s/ signature by permission) or electronically imaged written (e.g., 'DocuSign')".
- On page 12 of the Long Form Notice, Question 10 has been amended to clarify that an objector must still submit a claim form if they want any monetary relief.
- On page 13 of the Long Form Notice, Question 12 has been amended to include a dollar amount for attorneys' fees.

3. Changes to the Short-Form Notice

As set forth below, we have accepted the Court's edits to the Short Form Notice, with redlines and clean versions submitted herewith as Exhibits C and C-1 (respectively)

- The top of the postcard has been amended to include a statement about the expected range of potential payment under the Settlement.
- The first paragraph has been amended to omit the term "inadvertently."

- The fourth paragraph has been amended to included that an objector must still submit a claim form in order to get a payment.

- The fifth paragraph has been amended to include the dollar amount for attorneys' fees.

4. Plaintiffs' Responses to the Court's Questions About the Claim Form (Exhibit F)

With respect to the Court's question as to whether the default means of payment should be a physical check, rather than an electronic form of payment, Plaintiffs had previously evaluated this option and determined that an electronic form of payment is in the best interest of the Settlement Class due to the high number of potential claimants and the unnecessary incursion of postage expenses for physical checks. As set forth in the Supplemental Mulholland Declaration, converting the default from electronic payment to physical check would substantially increase the administration costs. *See* Supplemental Mulholland Declaration, ¶¶ 6-8. Plaintiffs have further ensured that there are no potential conflicts by the Claims Administrator with any of the payment companies or improper remuneration for using any of these products. *Id*. ¶ 8. An electronic form of payment is a particularly reliable method of delivering relief to the Class, as this case involves electronic communications and all Settlement Class members should also be able to receive electronic communications. An electronic form of payment also helps to account for Class Members who may not have ready access to bank accounts.

Additionally, if a claim is submitted electronically, it is deemed "actually received" by the settlement administrator on the date and time that it is submitted online. Settlement Class Members submitting their Claims electronically via the Settlement Website are required to complete all fields on the online Claim Form and then press "submit" or "send." *Id*. ¶ 9. Once submitted, the Settlement Administrator will immediately record receipt of the Claim as the date of submission. *Id*.

F. Plan of Allocation

Plaintiffs understand that Kaiser will be responding to the Court's question as to whether the proposed *cy pres* recipient conducts activity related to protection of personal health information.

G. Attorneys' Fees

Plaintiffs submit as Exhibit D, a breakdown of the hours by litigation task as well as by attorneys. The rates and title for each attorney is provided as well. These reflect the records of Co-

Lead Counsel firms through September 30, 2025.

Additionally, as set forth in the Declaration of Bill D. Vourthis in Support of Defendant's Opposition to Plaintiffs' Preliminary Injunction Motion (ECF No. 96) ("Vourthis Declaration"), Kaiser made significant changes to the internet technologies that were embedded in the Kaiser website ("Website") and mobile applications ("Apps"). Most significantly, as of November 8, 2023, five months after Plaintiffs filed suit and one month after Plaintiffs moved for a preliminary injunction, Kaiser disabled, deleted, or modified the internet technologies provided by Adobe, Bing, Google, Twitter, and Quantum Metric that are at the heart of Plaintiffs' claims from its website. *Id*. ¶ 3. Kaiser also disabled, deleted, or modified those same internet technologies from its mobile applications by releasing new versions of the mobile applications on October 31, November 1, and November 10, 2023. *Id*. ¶¶ 5-6. All users were then required to implement and update to the latest version of the mobile applications by November 10, 2023, or November 13, 2023 for users of the Kaiser Permanente Washington App. *Id*. As of September 14, 2024, Kaiser also completed its migration of Dynatrace technology to the on-premises deployment model offered by Dynatrace, such that all Website and App visitor data was then collected and stored solely on Kaiser's on-premises server. *Id*. ¶ 9.

Moreover, after Plaintiffs brought this lawsuit and moved for a preliminary injunction, Kaiser also implemented a consent banner on the Website. As described in the Vourthis Declaration:

> KFHP has also implemented a consent banner on the pages of the Website which informs Website visitors that: Kaiser Permanente uses web tracking technologies on this site and may share such data with its third parties to enhance your experience and optimize our ability to make users aware of our services. By navigating the site, you agree to the use of these web technologies as described in our Privacy Statement." Attached as Exhibit 1 is a print out of the Site homepage showing the banner that is now in place. The banner will remain until the Website visitor either clicks on the "X" to manually close the banner or clicks on the link to the Privacy Statement. A user cannot navigate to any of the Site's pages until the user clicks the "X" or views the Privacy Statement.

*Id.* ¶ 10. While Plaintiffs maintain that such banners alone would not have been sufficient to alert Kaiser Permanente members as to the pre-November 2023 conduct at issue, with the offending technology removed from the Website and Apps as of November 2023, Plaintiffs believe that the

implementation of this banner provided Kaiser Permanente members with meaningful information about Kaiser's post-November 2023 conduct.

Kaiser similarly implemented two permanent banners on the new versions of the Apps that were released in early November 2023. As described in the Vourthis Declaration:

> When a user opens the new version of the Kaiser Permanente App, a permanent banner is displayed at the top of the log-in page. This banner is permanent, meaning it stays on the log-in page. This banner informs users that: "Kaiser Permanente uses tracking technologies in this application and may share data with its third parties. By using this application, you agree to the use of these technologies as described in our Privacy Statement." A second permanent banner is on the home page of the App and contains the same wording.

*Id.* ¶ 11. The same banner notifications were implemented for Kaiser Permanente members in Washington. *Id.* ¶ 12.

Accordingly, not only have Plaintiffs' efforts here resulted in significant monetary amounts being paid to the class, which as described above are currently estimated to range between $20.98 and $41.95 per class member, but Plaintiffs' efforts have also already caused Kaiser to (1) take the offending technology off of its Website and Apps, (2) provide more noticeable and readily available disclosures about its privacy practices through banner notifications, (3) notify state and federal regulators of its privacy breach, (4) individually notify Kaiser members of the privacy breach through privacy breach letters, and (5) commit to paying tens of millions of dollars, which in itself serves as a further deterrent to future misconduct.

H. Statutory Damages

Plaintiffs understand that the Court's questions regarding statutory damages are directed to Kaiser and Objectors and that they will be responding to this question.

Dated: October 10, 2025

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Joseph H. Meltzer*
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com

Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

-and-

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Michael A. Innes (*pro hac vice* forthcoming)
minnes@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
Jordan M. Steele (*pro hac* forthcoming)
jsteele@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

*Interim Co-Lead Class Counsel*

**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey, Cal Bar No. 125961
bobmackeyesq@aol.com
16320 Murphy Road
Sonora, CA 95370
Telephone: (412) 370-9110

-and-

**MIGLIACCIO & RATHOD LLP**
Jason S. Rathod

jrathod@classlawdc.com
412 H Street NE, no. 302
Washington, DC, 20002
Telephone: (202) 470-3520

*Additional Counsel for Plaintiff Alexis Sutter*