Jonathan Gardner (Pro Hac Vice Application Pending)
jgardner@labaton.com
Jonathan D. Waisnor (SBN 345801)
jwaisnor@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Daniel Bryson (Pro Hac Vice Application Forthcoming)
dbryson@brysonpllc.com
**BRYSON HARRIS**
**SUCIU DEMAY, PLLC**
900 West Morgan Street
Raleigh, NC 27603
Telephone: (919) 815-4843

Alex R. Straus (SBN 321366)
astraus@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Telephone: (866) 252-0878
Facsimile: (865) 522-0049

*Counsel for Objectors*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, AND JANE DOE V, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>Defendant. | Case No. 3:23-cv-02865-EMC<br><br>CLASS ACTION<br><br>**OBJECTORS' SUPPLEMENTAL BRIEFING IN OPPOSITION TO THE MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Edward M. Chen |

**TABLE OF CONTENTS**

**Page**

I. The Class Definition Should be Modified to Exclude Arbitration Claimants, Regardless of Whether Their Claims Are "Perfected." .......... 1

II. The Court Should Follow the Procedure Outlined in *23andMe* .......... 4

III. California Claimants Have Comparatively Strong Claims, Even Considering Other Relevant Jurisdictions Providing For Statutory Damages .......... 5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 23andMe, Inc. Customer Data Security Breach Litigation*,
No. 24-MD-03098-EMC, 2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ........................ *passim*

*Abernathy v. DoorDash, Inc.*,
438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................................................ 3

*Adams v. Postmates, Inc.*,
414 F. Supp. 3d 1246 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020) .................... 3

*Arena v. Intuit Inc.*,
No. 19-CV-02546-CRB, 2021 WL 834253 (N.D. Cal. Mar. 5, 2021) ................................ 2, 5

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........................................................................... 6

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........................................................................... 7

*Frasco v. Flo Health, Inc.*,
No. 21-CV-00757-JD, 2025 WL 1476905 (N.D. Cal. May 22, 2025) .................................... 7

*In re Google Assistant Priv. Litig.*,
No. 5:19-CV-04286-BLF, 2025 WL 510435 (N.D. Cal. Feb. 14, 2025)............................. 4, 5

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024), *cert. denied sub nom. Live Nation v. Heckman*,
No. 24-1145, 2025 WL 2823733 (U.S. Oct. 6, 2025)........................................................... 3

*Intuit Inc. v. 9,933 Individuals*,
No. B308417, 2021 WL 3204816 (Cal. Ct. App. July 29, 2021) ........................................... 3

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. Dec. 22, 2022)................................................................ 7

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)........................................................................................................ 2

*In re Oil Spill by Oil Rig "Deepwater Horizon"*,
910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir. 2014) ............................. 5

*In re TikTok Consumer Privacy Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ........................................................................... 5

**Statutes**

9 U.S.C. § 4 .......... 4

Cal. Penal Code §§ 631(a), 632, 637.2(a), 638 .......... 6

Cal. Civ. Code §§ 56.36(b), 1798.150(a)(1) .......... 6

Colo. Rev. Stat. § 6-1-113(2) .......... 6

D.C. Code §§ 23–554(a)(2), 28-3905(k)(2)(A)(i) .......... 6

Federal Arbitration Act .......... 2

Haw. Rev. Stat. §§ 480-13, 803-48 .......... 6

Md. Code Ann., Cts. & Jud. Proc. § 10-410(a)(1) .......... 6

Or. Rev. Stat. § 646.638(1) .......... 6

Va. Code Ann. §§ 19.2-69, 59.1-204 .......... 6

Wash. Rev. Code § 9.73.060 .......... 6

Objectors Jessica Guevara, Nicole Reynolds, Linda Rodriguez, Oscar Ocaranza, Yara Garcia, and Cindy Barkho ("Objectors") respectfully submit this Memorandum of Law in response to the Court's October 3, 2025 order (ECF No. 362, the "Order") requesting supplemental briefing addressing a number of issues concerning the motion for preliminary approval of the proposed settlement (ECF No. 345, the "Proposed Settlement") filed by Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V, and Alexis Sutter (collectively, "Plaintiffs").

## I. The Class Definition Should be Modified to Exclude Arbitration Claimants, Regardless of Whether Their Claims Are "Perfected."

The Court asked whether "the settlement class can be defined simply to exclude those who have demanded arbitration or filed an arbitration complaint[.]" Order at 1. The answer is plainly yes. The settlement class can and should be defined simply to exclude those who have demanded arbitration or filed an arbitration demand, consistent with this Court's holding in *In re 23andMe, Inc. Customer Data Security Breach Litigation*, No. 24-MD-03098-EMC, 2024 WL 4982986, at *12 (N.D. Cal. Dec. 4, 2024).

Class Counsel and Kaiser's position that the definition must exclude only those with a "Perfected Arbitration" claim is based on the incorrect assumption that Claimants have "merely threatened arbitration" and that "thousands of claimants have abandoned arbitration altogether." Pls. Reply at 8-9.[1] With regards to the former, Plaintiffs' Reply contradicts itself, arguing that Claimants "merely threatened arbitration" in the very same paragraph that explains that Claimants "commence[d]" arbitrations in December 2024.[2] *Id.* at 8. Regarding abandonment, while the *Guevara* Plaintiffs expected Kaiser to try to defend its rule changes in Court, the remaining

[1] Unless otherwise stated, references to "Plaintiffs' Reply" or "Pls. Reply" are to the Pls. Reply in Support of Their Mot. for Preliminary Approval of Proposed Class Action Settlement, Certification of Settlement Class, Notice to Settlement Class, & Mem. of Points & Authorities in Support, ECF No. 353; "Waisnor Sur-Reply Decl." and "Bryson Sur-Reply Decl." are to the declarations filed in support of Objectors' Administrative Motion for Leave to File Sur-Reply, ECF Nos. 369-1 and 369-2; "Kaiser Reply" or "Def. Reply" refer to Def. Kaiser Found. Health Plan, Inc.'s Mem. In Reply to Opposition to Preliminary Approval of Class Action Settlement, ECF No. 355.

[2] Where Plaintiffs' Reply claims, "Objectors and their counsel did not even attempt to commence an arbitration until December 23 and 27, 2025," Claimants construe this to mean 2024.

Claimants still have live arbitrations pending with the OIA and the Labaton Claimants have until at least November 25, 2025 to perfect their arbitrations.[3] Waisnor Sur-Reply Decl. ¶6; Bryson Sur-Reply Decl. ¶12. The *Guevara* state court action does not constitute waiver for any Claimant not a named plaintiff. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) ("[t]o decide whether a waiver has occurred, the court focuses on the actions of the person who held the right").

The requirement of a "perfected" arbitration claim would also conflict with the principles of the FAA which favor the enforcement of arbitration agreements according to their terms. Kaiser argues that, without paying the $150 filing fee, "Objectors have not completed the steps to bring arbitration . . . and therefore cannot be excluded under the *23andMe* rationale." Def. Reply at 14. Yet, *23andMe* rejected any notion that formal perfection was required—holding that the settlement class "exclude those . . . who have chosen to exercise their right to arbitrate, whether by making a mere demand for arbitration or by filing a formal complaint with the arbitral forum." 2024 WL 4982986 at *12. In *23andMe*, not all claimants that notified the defendant of the intent to arbitrate had filed with an arbitral forum and *23andMe* had not even moved to compel arbitration. *See* Motion to Intervene at 9, *In re: 23andMe, Inc., Customer Data Sec. Breach Litig.*, No. 3:24-MD-03098-EMC, ECF No. 114 (explaining that a "notice of dispute" was sent "on behalf of thousands of Claimants" but only "one hundred (100) Claimants filed individual demands" and "paid their respective filing fees"). Other cases involving arbitrating claimants who seek to opt-out of class actions also involved many claimants whose arbitrations had yet to be "perfected." *Arena v. Intuit Inc.*, No. 19-CV-02546-CRB, 2021 WL 834253, at *7 (N.D. Cal. Mar. 5, 2021) (only 37,000 of over 120,000 arbitration claimants represented by counsel had paid filing fees); Arbitration Claimants' Opposition To Google's Motion To Enforce Order Approving Class Notice Plan And Reject Mass Exclusion Request, at 2-3 *In re Google Assistant Priv. Litig.*, No. 5:19-CV-04286-BLF (N.D. Cal.),

[3] Kaiser's Reply likens this situation to the Objectors represented by Potter Handy, LLP in *23andMe*, but those objectors (1) were all named parties to the state actions, and (2) *only* filed in state court, never filed or demanded arbitration, and maintained no contractual right to arbitrate. *See 23andMe*, 2024 WL 4982986, at *25 ("exclusion of those individuals in arbitration was predicated on a contractual right to arbitration and the inability of this Court to adjudicate their rights in circumvention of their contractual right to arbitration, as recognized by the Federal Arbitration Act. There is no comparable right here."). Potter Handy, LLP also did not attest to obtaining authorization to opt out from each client that it sought to exclude, as Objectors' counsel does here. Waisnor Sur-Reply Decl. ¶4; Bryson Sur-Reply Decl. ¶4.

ECF No. 464 (only 10,383 arbitrations pending before an arbitrator out of 69,507 individuals that sent notice).

Plaintiffs also argue their proposed definition is "necessary" to provide certainty in the class definition. *See* Pls. Reply at 8-9. Excluding those "who have chosen to exercise their right to arbitrate, whether by making a mere demand for arbitration or by filing a formal complaint with the arbitral forum," provides even clearer boundaries without penalizing individuals who have already invoked arbitration or encouraging the misuse of the class device or reverse auction settlements. *23andMe*, 2024 WL 4982986 at *12. Mid or post-dispute rule changes by companies have become increasingly common in a post-mass arbitration landscape.[4] Further, companies often refuse to participate in arbitration after the demands are filed, making it impossible to perfect the claim until the company is compelled to participate by court intervention. *See Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067 (N.D. Cal. 2020); *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1250 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020); *Intuit Inc. v. 9,933 Individuals*, No. B308417, 2021 WL 3204816, at *2 (Cal. Ct. App. July 29, 2021).

Importantly, Claimants have always maintained their right to arbitrate and their challenge to the OIA's rule change. Plaintiffs' Reply is wrong that "Objectors and their counsel never attempted to resolve this dispute in any forum[.]" Pls. Reply at 10. Claimants objected to the application of the new rules in front of the OIA before the Objectors filed *Guevara*. And the *Guevara* Plaintiffs compelled Kaiser to withdraw an affirmative defense arguing that Claimants had waived arbitration. *Compare* Opposition Ex. L (Kaiser's Answer, arguing waiver in its third affirmative defense of arbitration) *with* Opposition Ex. M (Kaiser's Amended Answer, withdrawing the affirmative defense of arbitration). Plaintiffs' argument that Objectors should have moved to compel rather than file *Guevara* collapses under its own logic. *See* Pls. Reply at 10 (citing *Allen v. Bamtech, LLC*, No. 25-CV-03861 (C.D. Cal. Apr. 30, 2025)). A petition to compel arbitration is a court proceeding, and

---

[4] *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 677 (9th Cir. 2024) (finding unconscionable and unenforceable new terms of use handed down after "Defendants foresaw that … they would be faced with a large number of parallel individual claims" and "[i]n anticipation of such claims, Defendants sought to gain in arbitration some of the advantages of class-wide litigation while suffering few of its disadvantages"), *cert. denied sub nom. Live Nation v. Heckman*, No. 24-1145, 2025 WL 2823733 (U.S. Oct. 6, 2025).

the definition of "Perfected Arbitration Claim" does not exclude Kaiser members who have commenced a petition to compel arbitration, so Objectors would have still needed to object. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court. . .").

Thus, the Court can modify, "the settlement class definition … to exclude those [] customers who have chosen to exercise their right to arbitrate, whether by making a mere demand for arbitration or by filing a formal complaint," consistent with its holding in *23andMe*. 2024 WL 4982986, at *12 (emphasis added). In the alternative, the Court can construe "Perfected Arbitration Claims" to include claimants that have attempted to arbitrate by filing a demand or noticed Kaiser of their intent to arbitrate under the EOC without determining which rules apply.

## II. The Court Should Follow the Procedure Outlined in *23andMe*

The Court further requests the Parties to clarify whether "the parties would like to give notice of the settlement to the arbitrating individuals and give them an opportunity to be a part of the settlement," and asks Objectors' counsel to "clarify whether they have informed any of their clients (other than Objectors) about the terms of the settlement." Order at 2. Milberg and Labaton each agree that arbitrating individuals should be given the opportunity to *opt in* to the proposed settlement, consistent with *23andMe*.

Milberg and Labaton have notified Claimants of the Proposed Settlement, and will continue to notify Claimants of their rights, including their right to participate in any settlement approved by the Court. Once the settlement is preliminarily approved, counsel will also inform Claimants of the specific settlement terms as soon as possible, ensuring Claimants have complete information. Waisnor Supp. Decl. ¶¶3-4. The Parties incorrectly assume that Objectors' counsel intends to opt their clients out of the proposed settlement *automatically* without informing them of the terms first. *See* Pls. Reply at 12. For example, in *Google Assistant*, some clients represented by Objectors' counsel did not opt out—demonstrating that claimants make their own decisions whether to opt out or not. *See In re Google Assistant Priv. Litig.*, No. 5:19-CV-04286-BLF, 2025 WL 510435, at *3

(N.D. Cal. Feb. 14, 2025). Objectors approach would also conserve class resources that would otherwise be used to process tens of thousands of individual opt-outs.

Plaintiffs' reliance on *Deepwater Horizon* is misplaced. That case involved "mass" opt-outs that were unsigned, duplicative, or submitted on behalf of individuals who were not even class members—raising legitimate concerns about whether clients had ever retained or authorized the lawyers purporting to represent them, and whether blanket advice had been given without consultation. Compounding those issues, *Deepwater Horizon* involved multiple overlapping classes and a settlement program where payments were highly individualized, depending on a myriad of factors unique to each claimant. Those circumstances heightened the court's concern that absent class members had not made informed, individualized decisions. *See In re Oil Spill by Oil Rig "Deepwater Horizon"*, 910 F. Supp. 2d 891, 935-39 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir. 2014); *but cf.*, *Arena v. Intuit, Inc.,* No. 19-CV-02546-CRB, 2021 WL 834253, at *10 (N.D. Cal. Mar. 5, 2021) (in the consumer context finding opt out requirements "troubling" and "unduly burdensome" in a consumer settlement where the potential recovery was around $28).[5]

## III. California Claimants Have Comparatively Strong Claims, Even Considering Other Relevant Jurisdictions Providing For Statutory Damages

Finally, the Court asks whether "Objectors agree" that D.C., Maryland, and Washington "provide for statutory damages," and whether there are "other relevant jurisdictions that provide for statutory damages." Order at 4. The Stipulation of Settlement filed in this case defines "Kasier Operating States" to mean "California, Colorado, Georgia, Hawaii, Maryland, Oregon, Virginia, Washington, and the District of Columbia." ECF No. 345-4 at 13 n.5.

---

[5] *In re TikTok, Inc., Consumer Privacy Litigation*, 565 F. Supp. 3d 1076, 1092 (N.D. Ill. 2021) was decided in 2021, before the Northern District of California's more recent rulings in *Google Assistant* and *23andMe*. Moreover, the arbitration claimants in *TikTok* notified the court of their claims only after preliminary approval had been granted, and the court had no assurances of counsel's retention or authority comparable to those provided here. *See In re TikTok*, 565 F. Supp. 3d at 1093 (declining to follow Northern District of California cases "that did not require individual signatures to opt out"); *see* Waisnor Sur-Reply Decl. ¶¶2-4; Bryson Sur-Reply Decl. ¶¶2-4; Objection of Brian Behnken & Joshua Dugan to Proposed Class Action Settlement, *In re TikTok Consumer Privacy Litig.*, No. 20-CV-04699 (N.D. Ill. Apr. 2, 2021), ECF No. 142. Even so, at final approval the court accepted a mass opt-out of 851 arbitration claimants submitted by counsel. *See* Order & Final Judgment*, TikTok*, ECF No. 264.

Objectors agree that D.C., Maryland, and Washington provide for statutory damages, including under the following statutes:

- the Maryland Wiretapping and Electronic Surveillance Act provides statutory damages equal to "[a]ctual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher" (Md. Code Ann., Cts. & Jud. Proc. § 10-410(a)(1));
- the District of Columbia Consumer Protection Procedures Act provides statutory damages of "[t]reble damages, or $1,500 per violation, whichever is greater" (D.C. Code § 28-3905(k)(2)(A)(i)); and
- the Washington Privacy Act permits recover of "liquidated damages computed at the rate of one hundred dollars a day for each day of violation, not to exceed one thousand dollars" (Wash. Rev. Code § 9.73.060).

Plaintiffs also bring claims under the Oregon Unlawful Trade Practices Act which permits recovery of "actual damages or statutory damages of $200, whichever is greater." Or. Rev. Stat. § 646.638(1). While Plaintiffs are aware that some statutes in other Kaiser Operating States provide for statutory damages, those statutes were not pled in this case. These have additional substantive or procedural hurdles that discourage them from being brought as class actions.[6]

California's statutory scheme remains by far the most protective and provides the highest potential recovery per claimant. California law provides for *$5,000 per privacy violation*, including wiretapping *and* the unauthorized use of a pen register under CIPA (Cal. Penal Code §§ 631(a), 637.2(a), 638), $750 dollars for unauthorized access to personal information under the CPRA (Cal. Civ. Code § 1798.150(a)(1)) as well as an additional $1,000 for violations of the CMIA, a statute specifically protecting health and medical information (Cal. Civ. Code § 56.36(b)). Unlike other states' wiretap laws, California explicitly requires the consent of all parties involved. Cal. Penal Code § 632. Further, there is more well-developed precedent involving disclosure of Pixel

[6] Colo. Rev. Stat. § 6-1-113(2); D.C. Code § 23–554(a)(2); Haw. Rev. Stat. §§ 480-13, 803-48; Va. Code Ann. § 59.1-204; Va. Code Ann. § 19.2-69.

technology under sensitive health information under CIPA and the CMIA. *See, e.g. Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 974-976 (S.D. Cal. 2023); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023); *In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 798-99 (N.D. Cal. Dec. 22, 2022).

Taken together, these overlapping statutes yield a significantly higher per-violation recovery than any other jurisdiction identified in Plaintiffs' briefing. No other "Kaiser Operating State" affords such a broad array of remedies spanning consumer, medical, and electronic privacy harms. California claimants' claims are categorically stronger, both in statutory measure and in the breadth of rights at stake.

Dated: October 10, 2025

Jonathan D. Waisnor (SBN 345801)
jwaisnor@labaton.com
Jonathan Gardner (Pro Hac Vice Application Pending)
jgardner@labaton.com
Morris Dweck (Pro Hac Vice Application Pending)
mdweck@labaton.com
Brent Mitchell (Pro Hac Vice Application Pending)
bmitchell@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Daniel Bryson (Pro Hac Vice Application Forthcoming)
dbryson@brysonpllc.com
**BRYSON HARRIS SUCIU DEMAY, PLLC**
900 West Morgan Street
Raleigh, NC 27603
Tel.: (919) 815-4843

Alex R. Straus (SBN 321366)
astraus@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite

Beverly Hills, CA 90212
Telephone: (866) 252-0878
Facsimile: (865) 522-0049

*Counsel for Objectors*