1
2
3
4                   UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7   JOHN DOES 1-5, et al.,                    Case No.  23-cv-02865-EMC
8                  Plaintiffs,
9          v.                                 **ORDER RE PLAINTIFFS' MOTION
                                              FOR PRELIMINARY APPROVAL**
10  KAISER FOUNDATION HEALTH PLAN,
    INC., et al.,                             Docket No. 345
11
                   Defendants.
12
13
14        Plaintiffs are individuals who have filed a class action against three Kaiser entities[1]

15  (collectively, "Kaiser").  Plaintiffs allege that Kaiser violated their privacy rights, and those of

16  others similarly situated, in violation of various federal and state laws.  According to Plaintiffs,

17        unbeknownst to Plaintiffs and other Kaiser Plan Members, Kaiser
          has installed code from multiple third parties throughout the Kaiser
18        website and mobile applications that allows third party companies,
          including but not limited to Quantum Metric, Twitter, Adobe,
19        Microsoft Bing, . . . Google[,] [and Dynatrace] (collectively, "Third
          Party Wiretappers") to intercept the content of Plaintiffs and Class
20        Members' patient status, identifying information, medical topics
          researched, choices made, information shared and communications
21        with their medical providers, including personally identifiable
          medical information, Protected Health Information ("PHI") that
22        Kaiser was required to protect under the Health Insurance Portability
          and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6,
23        and other confidential information and communications, when that
          information is in transit.
24
25  CAC ¶ 4.
26        Now pending before the Court is Plaintiffs' motion for preliminary approval of a class
27  ────────────────────
28  [1] The entities are: Kaiser Foundation Health Plan, Inc. ("KFHP"); Kaiser Foundation Hospitals;
    and Kaiser Foundation Health Plan of Washington.

United States District Court
Northern District of California

1    action settlement.  The settlement is between Plaintiffs and only one Kaiser entity: KFHP.  The

2    parties have stipulated to a dismissal of the other two Kaiser entities.  *See* Docket No. 347

3    (stipulation).  The dismissal of those two entities would be without prejudice but would convert to

4    a dismissal with prejudice once, in essence, there is final approval of the class action settlement

5    and a final judgment.

6            Objections have been filed with respect to the motion for preliminary approval.  One set of

7    objectors is represented by the three law firms: Labaton, Milberg, and Bryson.  The firms also

8    represent thousands of other Kaiser plan members.  The other set of objectors is represented by the

9    Potter firm.  Potter also represents thousands of other Kaiser plan members.  For convenience, the

10   first set of objectors shall hereinafter be referred to as the Labaton Objectors and the second set as

11   the Potter Objectors.[2]

12           Having considered both the parties and the Objectors' submissions, as well as the oral

13   argument of counsel, the Court hereby rules as follows.

## I.    DISCUSSION

14

15   A.    Settlement Terms

16           Here, the parties have agreed to a gross settlement fund of $46 million (which could

17   increase up to $47.5 million) for a settlement class of approximately 13.1 million people.  The net

18   settlement fund is expected to be about $27.48 million once deductions are taken for, *e.g.*,

19   attorneys' fees, litigation expenses, settlement administration fees, and incentive awards.  If there

20   is a claims rate of 5-10% (as anticipated by the settlement administrator), the payout to each

21   claiming class member would be about $20.98-$41.95.  Each class member has already benefited

22   from Plaintiffs' litigation of this case because, after Plaintiffs moved for a preliminary injunction,

23   "Kaiser disabled, deleted, or modified the internet technologies provided by Adobe, Bing, Google,

24   Twitter, and Quantum Metric" and further migrated "Dynatrace technology to the on-premises

25   deployment model offered by Dynatrace"; in addition, Kaiser implemented consent banners on its

26

27   [2] The Potter Objectors did not timely file their brief.  Nor did the Potter Objectors provide any
     explanation as to why they failed to timely file.  Their attorneys have been well aware of this
28   litigation.  While the Court could disregard their papers on that basis, it shall, in the interest of
     justice, still consider the brief.

1    website and apps.  Docket No. 374 (Pls. Supp. Br. at 7-8).

2    B.    <u>Judicial Review of Proposed Class Action Settlement</u>

3         Under Federal Rule of Civil Procedure 23(e), a court may approve a proposed settlement

4    of a class action if it is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2) (listing factors

5    for a court to consider); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (same).

6    The Court has considered the factors identified in Rule 23(e)(2) and *Hanlon*.  It finds that the

7    proposed settlement falls within the range of reasonableness such that notice of the proposed

8    settlement should be given to the class.[3]  The risk of continuing litigation is significant.  As

9    indicated by the Court's order granting in part Kaiser's motion to dismiss the first amended

10   complaint, it is not clear that Kaiser allowed the code on its website and apps for the benefit of the

11   third parties (as opposed to itself).  The parties have also pointed to additional risks in the opening

12   brief, including the following:

13        • Individuals could be subject to arbitration (such as the named California plaintiff).

14          *See* Mot. at 12.

15        • For the nationwide claims, choice of law could be a problem.  *See* Mot. at 12.

16        • Privacy breach case law is still developing (*e.g.*, damages methodologies).  *See*

17          Mot. at 13 n.11.

18        • Not all claims would necessarily survive – *e.g.*, in its order granting in part the

19          motion to dismiss the first amended complaint, the Court dismissed Plaintiffs'

20          claims for violations of the Electronic Communications Privacy Act, the California

21          Invasion of Privacy Act, and the California Confidentiality of Medical Information

22          Act.  *See* Mot. at 13.

23        • If claims with statutory damages were dismissed, then there might only be nominal

24          damages or damages could be too individualized.  *See* Mot. at 12-13.

25        Notably, Objectors do not make any contention that the relief provided for by the proposed

26

27   _____

[3] In so ruling, the Court is not holding, *e.g.*, that the attorneys' fees sought is appropriate and
28   should be awarded.  In this regard, the Court notes that this is a no-reverter settlement.  In other
     words, any fees not awarded would be distributed to the class rather than revert back to Kaiser.

United States District Court
Northern District of California

settlement is unreasonable as a substantive matter – *e.g.*, that the gross settlement fund is too low. Rather, Objectors' main challenge is to the definition of the class; Objectors seek to be excluded from the class. Objectors also contend that, if they are included within the definition of the class, then they should be permitted to do "mass opt-outs"; for example, individuals represented by the same counsel should be able to opt out by their attorney submitting an opt out that covers all of them in one fell swoop. Finally, Objectors suggest that California Kaiser plan members have better claims compared to non-California plan members and that the allocation of the settlement fund should reflect this.

C.    Settlement Class Definition

The definition of the settlement class in the case at bar takes into account this Court's rulings in *In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, No. 24-md-03098-EMC, 2024 U.S. Dist. LEXIS 219622 (N.D. Cal. Dec. 4, 2024). There, the Court held that the settlement class definition should be "modified to exclude those 23andMe customers who have chosen to exercise their right to arbitrate, whether by making a mere demand for arbitration or by filing a formal complaint with the arbitral forum (but not, *e.g.*, simply threatening to arbitrate)." *Id.* at *43 (conditioning preliminary approval on a modification to the settlement class definition); *see also id.* at *41 (indicating that those in arbitration cannot "be included in a certified class given potential concerns about typicality/adequacy").[4]

Here, the parties have agreed to a settlement class definition that recognizes exclusion of those in arbitration but only on certain terms. Essentially, the settlement class definition provides that, if an individual did not *perfect* their arbitration request, they are *included* in the settlement class.

> "Perfected Arbitration Claim" means the Claim of a current or former Kaiser Permanente member who **completed** either of the following on or before the filing of the Motion for Preliminary Approval of the Settlement:
>
> (a)    Preparing and serving an **individual demand** for arbitration

---

[4] In addition, there may be concerns of lack of commonality under Rule 23(a) and predominance under Rule 23(b)(3) if issues being arbitrated cannot be adjudicated in the litigation before the court.

United States District Court
Northern District of California

pursuant to Rules 7 and 8 of the Rules for Kaiser Permanente Member Arbitrations of the Office of the Independent Administrator (the "Rules"); and the claimant or their counsel has paid the $150 filing fee required by Rule 12 or submitted a filing fee waiver pursuant to Rule 13; or

(b)   Where the current or former Kaiser Permanente member was included on a **Demand for Arbitration on behalf of 25 or more claimants** that was prepared and served pursuant to Rules 7 and 8 of the Rules, the Demand complies with Rule 4(a) of the Supplemental Rules Governing Mass Arbitrations (the "Supplemental Rules") and the claimant or their counsel has paid the $150 filing fee required by Supplemental Rule 5 and Rule 12

for claims that refer to, relate to, or are otherwise based on any act, omission, practice, or conduct alleged or at issue in the Consolidated Class Action Complaint.

Sett. Agmt. ¶ 1.11 (emphasis added).

As an initial matter, the Court notes that – though not entirely clear – Objectors seem to argue that something *less* than a formal demand for arbitration (or a formal filing of an arbitration complaint) should be good enough to take someone out of the settlement class definition. *See* Labaton Opp'n at 3 (asking for exclusion of "all individuals who have attempted to arbitrate or provided notice of their intent to arbitrate"). But in *23andMe*, this Court essentially rejected that position, stating that "the settlement class definition agreed to by the parties must be modified to exclude those 23andMe customers who have chosen to exercise their right to arbitrate, whether by making a mere demand for arbitration or by filing a formal complaint with the arbitral forum (*but not, e.g., simply threatening to arbitrate*)." *23andMe*, 2024 U.S. Dist. LEXIS 219622, at *43 (emphasis added). The Court thus rejects Objectors' contention here.

That being said, the Court agrees with Objectors that the settlement class definition as phrased inappropriately includes the requirement that a class member must have paid the filing fee. The *23andMe* settlement class definition did not include that requirement, and the Court sees no reason to impose such a requirement. If an individual chose arbitration with Kaiser and then (for whatever reason) did not pay the filing fee, then the arbitration would go no further. That would not necessarily then give the person the right to jump back into litigation. Requiring payment of the arbitration filing fee would be particularly problematic in this case where the parties have a dispute about whether the OIA Rules that existed *before* the supplemental rules

1    allowed a consolidated demand for arbitration with payment of only $150 total.

2         This leaves the Court with one final issue regarding the settlement class definition: should

3    the Labaton clients and some of the Potter clients be excluded from the settlement class definition

4    because they *did* demand arbitration even if they subsequently *abandoned* arbitration by initiating

5    lawsuits in state court?  The Labaton clients have filed a class action lawsuit in state court,

6    asserting not clarification and enforcement of arbitration, but the same substantive privacy claims

7    against Kaiser asserted in the instant case.  Likewise, nearly all the Potter clients (with the

8    exception of a small number of individuals who are still actively pursuing arbitration) have joined

9    one of five mass actions filed in state court, asserting substantive claims similar to those asserted

10   in the instant case.  Labaton and Potter argue that their clients who have filed suit should still be

11   excluded from the class even though they are no longer actively pursuing arbitration.  Labaton and

12   Potter suggest that they were forced to file lawsuits on their clients' behalf because, even though

13   the clients *wanted* to arbitrate, Kaiser improperly had the arbitral rules changed once the mass

14   arbitrations were initiated.  Thus, Labaton and Potter essentially argue that, as an equitable matter,

15   their clients should be counted as arbitrating individuals and thus categorically excluded from the

16   defined class herein.  But even if the Labaton and Potter clients were "forced" to file lawsuits,[5] the

17   Court in *23andMe* did not exclude those in arbitration because of equitable reasons; rather, it did

18   so because of Rule 23's requirements on, *e.g.*, typicality and adequacy where such putative class

19   members would be litigating in two independent fora.  Because the Labaton and Potter clients are

20   all now in litigation and have effectively withdrawn from arbitration (at least for purposes of this

21   Court's adjudication of the class definition for purposes of the present proposed settlement), the

22   Rule 23 concerns that drove the exclusion in *23andMe* no longer apply.

23        Therefore, so long as the settlement class definition is modified so that exclusion extends

24   only to those who have demanded or initiated arbitration and are still in the arbitration track, and

25   not to those who are now in the state court litigation track, the Court would be inclined to grant

26

27   _____

[5] In the case filed by the Labaton clients (*Guevara*), the complaint did not contain any allegations
28   about asking for a return to arbitration because of inappropriate conduct by Kaiser.  Although the
     parties have not provided all of the complaints filed by the Potter clients, it appears the same
     seems to be true of their complaints as well.

1    preliminary approval.  The Labaton and Potter clients would fall within the settlement class

2    definition by virtue of having, at least for purposes of the current motion before this Court,

3    effectively abandoned arbitration by filing and joining a suit in state court.

4    D.    <u>Mass Opt-Outs</u>

5        In *23andMe*, the Court already indicated that it would not permit mass opt-outs.  *See*

6    *23andMe*, Inc. 2024 U.S. Dist. LEXIS 219622, at *84 (not permitting en masse objections; citing

7    in support *In re CenturyLink Sales Pracs. & Sec. Litig.*, MDL No. 17-2795 (MJD/KMM), 2020

8    U.S. Dist. LEXIS 114110, at *9-10 (D. Minn. June 29, 2020), where court explained that "'the

9    requirement that a class member must individually sign is vital, because it ensures that the class

10   member is individually consenting to opt out, and avoids a third party or lawyer representing that

11   they have that class member's authority, without the class member making an informed, individual

12   decision'").

13       The Court acknowledges that, in a decision that issued subsequently, Judge Freeman

14   allowed for mass opt-outs.  Specifically, she accepted a mass opt-out from the Labaton firm,

15   which claimed to represent approximately 69,500 individuals.

16              Here, Labaton has represented under oath that each of the
17              Arbitration Claimants did make an individualized decision to retain
                Labaton's legal services and to opt out from the Class in order to
18              pursue claims in arbitration.  The Court sees no reason why the
                Arbitration Claimants may not act through their attorneys in
19              executing those requests to opt out of the Class.  As the Court noted
                at the hearing, should it turn out that any of the Arbitration
20              Claimants did not so retain and authorize Labaton, those individuals
                would have a malpractice remedy.  And for any opt-out claimant
21              who does not have an arbitration agreement with Google, Labaton
                has confirmed that its representation will cover their pursuit of their
22              claims in other judicial forums.  In short, the Court rejects Google's
                argument that accepting these opt-outs presents a due process issue.

23   *In re Google Assistant Priv. Litig.*, No. 5:19-cv-04286-BLF, 2025 U.S. Dist. LEXIS 28914, at *9-

24   10 (N.D. Cal. Feb. 14, 2025).  This Court respectfully disagrees.  It is questionable whether a

25   malpractice suit is a real remedy: malpractice claims generally have rigorous standards (including

26   having to prove prejudice which often requires the plaintiff to demonstrate a likelihood she would

27   have prevailed in the underlying case but for the malpractice), and an individual may not be in a

28   position to pursue a suit at all if only limited damages are available.  Furthermore, the Court has,

United States District Court
Northern District of California

United States District Court
Northern District of California

1    in essence, a fiduciary duty to the class.

2         The Potter firm argues that, even aside from the mass opt-out issue, the opt-out process is

3    burdensome and confusing.  It makes, for example, the following criticisms:

4         • The short-form notice is what the settlement class members will receive (the long-

5           form is available only on the settlement website), and it does not spell out the

6           details of the opt-out process in and of itself but rather requires members to refer to

7           the long-form notice.  *See* Opp'n at 8.

8         • Settlement class members may not want to opt out online given that their personal

9           information has already been compromised.  *See* Opp'n at 8-9.

10        • Online opt-outs are also problematic because settlement class members could be

11          discouraged from opting out if the settlement website is confusing, is slow to load,

12          or goes offline.  *See* Opp'n at 9.

13        • The long-form notice is too long (15 pages).  *See* Opp'n at 9.

14        • A settlement class member cannot opt out without having their unique settlement

15          ID number; it would be easier for members to opt out by using their Kaiser member

16          ID numbers instead.  *See* Opp'n at 9.

17        These criticisms largely lack merit.  For example, it makes sense to have a short-form

18    notice go out in the first instance for several reasons: (1) given the number of settlement class

19    members, it would be more expensive to send out long-form notices, at least by mail, *cf.* Supp.

20    Mulholand Decl. ¶ 3 (noting that to mail the short-form notice to 13.1 million settlement class

21    members would cost about $9 million); and (2) even though e-mail notice could accommodate the

22    long-form notice, it would likely be more of a deterrent to have the long-form notice in the e-mail

23    (*i.e.*, settlement class members likely would not want to read an email of any significant length).

24    As for the means of opting out, a settlement class member can opt out by mail, not just online.  To

25    the extent Potter argues that there is no need for a settlement ID number given that the class

26    members should have Kaiser member IDs, a Kaiser member ID is, in and of itself, private

27    information.  Requiring disclosure of such personal health-related information on an opt-out form

28    could deter members from opting out.  If Potter's concern is that a settlement class member cannot

8

1    find their unique settlement ID number, that should be easily addressable – *i.e.*, the settlement ID

2    number can be place prominently on the notice, and the member can contact the settlement

3    administrator for help.

4    While the Court rejects Objectors' arguments above, it emphasizes that the individualized

5    opt-out process should not be cumbersome or burdensome.  In this regard, the Court does not take

6    issue with, *e.g.*, a longer opt-out period so that Labaton and Potter can have more time to get the

7    individualized opt-outs.  The individualized opt-outs should also be acceptable with either a wet-

8    ink signature or an electronic one (*e.g.*, Docusign).  If Labaton and Potter wish to collect the

9    individualized opt-outs and then give them to the settlement administrator (rather than requiring

10   each member opting out to send their form to the class action administrator or the Court), that

11   would appear to be a reasonable request.  The Court orders the parties and Objectors to meet and

12   confer to determine a reasonable process for individualized opt-outs to be made.  The parties

13   and/or Objectors may wish to include the settlement administrator in these discussions.

14   Finally, the Court notes that both the parties and Objectors have agreed that, should there

15   be any individuals who are excluded from the settlement class because they have demanded or

16   initiated arbitration, they should be given notice of the settlement so that they have an opportunity

17   to "opt in."[6]  The Court directs the parties and Objectors to discuss the opt-in process as well.

18   E.    California Plan Members

19   Finally, Objectors claim that California plan members (such as themselves) have higher-

20   value claims compared to non-California plan members, but the parties' settlement agreement – or

21   rather, the plan of allocation established by Plaintiffs – does not recognize such.  But Objectors'

22   position fails to take into account that this Court already indicated in its prior order granting in part

23   Kaiser's motion to dismiss that there were problems with the California claims.  Given the

24   litigation risk, it is not clear that California plan members are in a stronger position compared to

25   non-California plan members.  Furthermore, all class members face the same litigation risk of

26   whether Kaiser intentionally or negligently allowed third parties to use plan member information

27

28   _____
[6] This does not make the settlement here an "opt-in" settlement for purposes of Rule 23.

United States District Court
Northern District of California

for their *own* benefit (as opposed to Kaiser's).  It is also worth noting that a reallocation does not make much sense given the relatively small payouts that are expected in this case.  If a given class member believes that they are entitled to a higher payout, they can opt out.

## II.    CONCLUSION

For the foregoing reasons, the Court is inclined to grant preliminary approval to the proposed class action settlement but that will turn on modification of the settlement class definition and opt-out means, as discussed above.

The Court continues the hearing on preliminary approval to November 25, 2025, at 1:30 p.m.  The hearing will be held via Zoom.  By November 13, 2025, the parties and Objectors shall file supplemental papers addressing the results of their meet and confer.  (If the settlement agreement, class notice, etc. are modified, such papers shall also be filed at that time.)  If there are disagreements, each party or Objector shall state its last offer of compromise.  The Court strongly prefers a **joint** filing by the parties and Objectors.

**IT IS SO ORDERED**.

Dated: October 24, 2025

_____
EDWARD M. CHEN
United States District Judge