**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, PC**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Class Counsel*
(*Additional Attorneys Listed on Signature Page*)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,

Defendants.

Case No. 3:23-cv-02865-EMC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. Edward M. Chen
Date: May 7, 2026
Time: 1:30 p.m.
Court: 5

CMC Filed: December 6, 2024

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 7, 2026 at 1:30 p.m., the Honorable Edward M. Chen presiding, Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V, and Alexis Sutter (collectively, the "Plaintiffs" or "Settlement Class Representatives"), will and hereby do move pursuant to Federal Rule of Civil Procedure ("Rule") 23 for orders: (i) granting final approval of the proposed settlement of the above-captioned class action ("Action") as set forth in the Amended Stipulation of Settlement dated December 1, 2025 (ECF Nos. 390-1; 392-1) ("Stipulation" or "Stip.") between Plaintiffs and Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser" or "Defendant" and, together with Plaintiffs, the "Parties"), and (ii) approving the proposed method for allocating the net Settlement proceeds to eligible Settlement Class Members ("Plan of Allocation").

Plaintiffs' Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities that follows, the accompanying Declaration of Tyler S. Graden in Support of (i) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (ii) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards ("Graden Declaration" or "Graden Decl."), the supporting declarations of the eight Plaintiffs (collectively, "Plaintiffs' Declarations"), the Stipulation and exhibits attached thereto, the papers and pleadings filed in this Action, the arguments of counsel, and any other matters properly before the Court. The Graden Declaration is an integral part of this submission and, for the sake of brevity in the Memorandum of Points and Authorities, Plaintiffs refer the Court to the Graden Declaration for a detailed description of, *inter alia*: the procedural history of the Action, the Settlement negotiations, the risks of continued litigation, the Court-approved notice plan, and the proposed Plan of Allocation.[1]

Pursuant to the Court's Order as Modified Preliminarily Approving Settlement and Approving Notice of Proposed Settlement of Class Action and Fairness Hearing dated December 5, 2025 (ECF No. 393) ("Preliminary Approval Order"), any objections to the Settlement and/or Plan of Allocation

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulation or in the Graden Declaration. Citations to "¶ _" and "Ex. _" refer respectively to paragraphs in and exhibits to the Graden Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

must be filed by March 12, 2026 and will be addressed in Plaintiffs' reply papers to be filed on April 2, 2026. A proposed judgment and order granting the relief requested herein will be submitted with Plaintiffs' reply papers, after the objection deadline has passed.

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 1

II. THE SETTLEMENT WARRANTS FINAL APPROVAL ..... 4

A. Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class in the Action ..... 6

B. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel with the Assistance of Experienced Neutrals ..... 8

C. The Settlement Provides Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors ..... 10

1. The Amount Offered in Settlement ..... 10

2. The Strengths and Weaknesses of Plaintiffs' Case ..... 11

3. The Complexity, Expense, and Duration of Continued Litigation ..... 13

4. Risk of Maintaining Class Action Status ..... 14

5. The Extent of Discovery Completed and the Stage of Proceedings ..... 14

6. The Experience and Views of Counsel ..... 15

7. Existence of a Governmental Investigation ..... 16

8. The Reaction of Settlement Class Members to Date ..... 17

D. The Remaining Rule 23(e)(2) Factors Also Support Final Approval ..... 17

III. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND WARRANTS FINAL APPROVAL ..... 18

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..... 20

V. NOTICE OF THE SETTLEMENT WILL SATISFY THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ..... 20

VI. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**


*In re 3D Sys. Sec. Litig.*,
2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ........ 11

*In re Amgen Inc. Secs. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ........ 15

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ........ 9, 11, 13

*In re Apollo Grp., Inc. Sec. Litig.*,
2010 WL 5927988 (9th Cir. June 23, 2010) ........ 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........ 8, 9

*Browning v. Yahoo! Inc.*,
2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ........ 13

*Calhoun v. Google LLC*,
349 F.R.D. 588 (N.D. Cal. 2025) ........ 3, 12

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........ 4, 5

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) ........ 6

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ........ *passim*

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........ 19

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........ 10

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ........ 20

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........ 6

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) .......... 13

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
794 F. Supp. 3d 1203 (S.D. Fla. 2025) .......... 12

*In re Google LLC St. View Elec. Commc'ns Litig.*,
2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .......... 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 5, 8

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) .......... 14

*Hashemi v. Bosley, Inc.*,
2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) .......... 13

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sep. 4. 2018) .......... 9, 18

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......... 5

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .......... 4

*Joh v. Am. Income Life Ins. Co.*,
2020 WL 109067 (N.D. Cal. Jan. 9, 2020) .......... 8

*Knapp v. Art.*
*com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017) .......... 11

*Kuraica v. Dropbox, Inc.*,
2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) .......... 17

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .......... 5

*In re LendingClub Secs. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) .......... 6

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) .......... 13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......... 11, 14

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) .......... 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) .......... 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......... 10, 15

*In re Netflix Priv. Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......... 9, 12

*Nguyen v. Radient Pharm. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .......... 19

*Nobles v. MBNA Corp.*,
2009 WL 1854965 (N.D. Cal. June 29, 2009) .......... 11

*Officers for Just. v. Civil Serv. Comm'n of S.F.*,
688 F.2d 615 (9th Cir. 1982) .......... 10

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......... 14

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .......... 7

*Quiruz v. Specialty Commodities, Inc.*,
2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) .......... 15

*In re Rambus Inc. Deriv. Litig.*,
2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .......... 14

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .......... 20

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) .......... 21

*Stewart v. Applied Materials, Inc.*,
2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .......... 9

*Stollenwerk v. Tri-West Healthcare All.*,
No. 03-cv-0185 (D. Ariz. June 10, 2008) .......... 12

*Taafua v. Quantum Glob. Techs., LLC*,
2021 WL 579862 (N.D. Cal. Feb. 16, 2021) .......... 4

*In re TD Ameritrade Acct. Holder Litig.*,
2011 WL 4079226 (N.D. Cal. Sep. 13, 2011) .......... 3, 12

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
2018 WL 828199 (S.D. Cal. Feb. 9, 2018) .......... 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847 (N.D. Cal. May 10, 2019) ..... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052 (N.D. Cal. 2017) ..... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) ..... 4

*Young v. LG Chem Ltd.*, 783 F. App'x 727 (9th Cir. 2019) ..... 21

**Federal Statutes**

15 U.S.C. § 78u-4(a)(7) ..... 21

28 U.S.C. § 1715(b) ..... 16

**Rules**

Fed. R. Civ. P. 23 ..... *passim*

**Other Authorities**

7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.) ..... 12

Common Health Coalition, https://commonhealthcoalition.org/ (last visited Dec. 22, 2025) ..... 19

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs, on behalf of the Settlement Class, respectfully submit this Memorandum of Points and Authorities in support of their Motion for Final Approval of the Proposed Class Action Settlement and Plan of Allocation.

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Court should approve the proposed Settlement of the Action as fair, reasonable, and adequate under Rule 23(e)(2).

2. Whether the Court should approve the Plan of Allocation as fair and reasonable.

3. Whether the Court should finally certify the Settlement Class pursuant to Rules 23(a) and (b)(3) for purposes of effectuating the Settlement only.

## I. PRELIMINARY STATEMENT

After extensive litigation and motion practice—including a motion for preliminary injunction, three rounds of motion to dismiss briefing, three rounds of briefing on Defendant's motions to compel arbitration, extensive discovery, and protracted settlement negotiations—Plaintiffs and their counsel Kessler Topaz Meltzer & Check, LLP ("KTMC") and Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella Byrne" and together with KTMC, "Class Counsel") have succeeded in securing a significant common-fund recovery of $46 million, which could increase to $47.5 million if certain conditions are met, for the Settlement Class. If approved by the Court, the Settlement will dismiss the Action in its entirety and release all claims against Defendant Kaiser Foundation Health Plan, Inc. ("Defendant" or "Kaiser") and the other Released Parties. Notably, this is in addition to the substantial non-monetary relief that Plaintiffs already achieved during the litigation, namely succeeding in having Kaiser remove the offending internet technologies embedded in the Kaiser website ("Website") and mobile applications ("Apps") and change its privacy notification practices. *See* Plaintiffs' Supplemental Brief in Support of their Motion for Preliminary Approval, ECF No. 374, at 7-8 (citing Declaration of Bill D. Vourthis in Support of Defendant's Opposition to Plaintiffs' Preliminary Injunction Motion (ECF No. 96)). The Settlement and Plaintiffs' efforts here deliver a clear benefit and excellent result for the Settlement Class and warrants final approval under Rule 23(e)(2).

As described herein, the Settlement provides a substantial recovery for the Settlement Class in a case that presented very serious risks of no monetary recovery at all. Over the course of the Action, Plaintiffs and Class Counsel vigorously pursued relief on behalf of the Settlement Class. These efforts included: (i) conducting an extensive investigation into the alleged misconduct and legal research into potential causes of action under various laws and statutes; (ii) preparing an initial complaint, two amended complaints, and one consolidated master complaint; (iii) submitting a motion for preliminary injunction resulting in Kaiser's removal of the offending code at issue in the Action from its Website and Apps; (iv) opposing three motions to dismiss; (v) opposing three motions to compel arbitration; (vi) participating in extensive discovery, including the review of nearly 40,000 documents produced by Defendant; (vii) Plaintiffs' service and negotiation of subpoenas on nine third parties; (viii) multiple days of in-person review of highly confidential designated source-code material by experts; (ix) attending and arguing at six in-person discovery conferences before Magistrate Judge Peter H. Kang addressing an array of pressing discovery disputes; and (x) engaging in protracted settlement negotiations, including mediations before two separate, highly experienced and respected retired federal judges who served as JAMS mediators. ¶¶ 9, 102. Through these efforts (and others), at the time of settlement, Plaintiffs were steeped in the record and had a thorough understanding of the strengths and weaknesses of the Settlement Class's claims, enabling them to fully evaluate the risks of continued litigation against the recovery obtained for the Settlement Class.

While Plaintiffs determinedly believe in the strength of their claims, the Settlement is in the best interests of the Settlement Class when weighed against the very serious risk of continued litigation—through class certification, summary judgment, a trial, and likely post-trial appeals. The risks Plaintiffs faced were many. As this Court recognized in its October 24, 2025 Order regarding preliminary approval: "The risk of continuing litigation is significant." Order re Plaintiffs' Motion for Preliminary Approval, ECF No. 384, at 3 ("October 24 Order"). For example, this Court has already raised questions as to whether "Kaiser allowed the code on its website and apps for the benefit of the third parties (as opposed to itself)." *Id*. Kaiser has also asserted significant legal arguments challenging Plaintiffs' claims under federal law and various state statutory laws concerning privacy, common law, and state constitutional law, which could have presented potential choice of law issues

for some of Plaintiffs' nationwide claims. ¶ 58. Kaiser has also argued that individualized issues, such as arbitration of certain member's claims, predominated. ¶ 59. Privacy breach law is still developing and, if Plaintiffs' statutory damages claims did not survive, Plaintiffs may only be left with nominal damages or damages could be too individualized. ¶ 60. Despite Plaintiffs' confidence in their ability to achieve class certification in this case, courts have recognized the significant risks that privacy and data breach cases face at this stage. *See, e.g.*, *Calhoun v. Google LLC*, 349 F.R.D. 588, 592 (N.D. Cal. 2025) (denying class certification of damages class in privacy breach action); *In re TD Ameritrade Acct. Holder Litig.*, 2011 WL 4079226, at *5 (N.D. Cal. Sep. 13, 2011) ("[D]efendants in data breach cases have been successful in thwarting plaintiffs' efforts to obtain class certification.") (citing *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify class of banks alleging damages resulting from retailer's data breach because of individual causation issues)). Thus, even if Plaintiffs succeeded in proving liability, these arguments, if accepted, had the potential to significantly diminish, or even eradicate, any recovery for the Settlement Class.

The Settlement was no easy feat and was reached only after negotiations between the Parties spanning mediations before two highly experienced and respected retired federal judges. ¶¶ 9, 38-39, 43-44. The second mediation before retired U.S. Magistrate Judge for the Central District of California, Hon. Jay C. Gandhi on May 13, 2025 culminated in the Parties' agreement in principle to resolve the Action. ¶ 44. On May 14, 2025, the Parties filed a notice of preliminary settlement with the Court. ECF No. 342. Importantly, there is no possibility of any part of the recovery reverting back to Kaiser. All Settlement proceeds, after the deduction of Court-approved fees and costs, will be distributed to Settlement Class Members who submit valid Claims, and any remaining funds (from uncashed checks or otherwise) that are not cost effective to redistribute to eligible Settlement Class Members will be contributed to the Institute for Public Health Innovation as set forth in the Plan of Allocation, subject to Court approval. *See* ECF No. 390-1, Ex. G, § C.2.

Following hearings on October 23, 2025 and November 25, 2025 and additional submissions and negotiations by and among the Parties and Objectors, the Court preliminarily approved the Settlement, finding it likely that the Court will approve the Settlement as fair, reasonable, and adequate at the final approval stage. ECF No. 393, ¶ 5. The Settlement has the full support of

Plaintiffs. *See* Exs.1A-H. Pursuant to the Preliminary Approval Order, notice of the Settlement will be disseminated to Settlement Class Members no later than January 16, 2026. The notice program will provide Settlement Class Members with the opportunity to submit a Claim in order to receive a payment from the Settlement, as well as request exclusion from the Settlement Class or submit an objection to the Settlement. The Settlement Class's reaction to the Settlement will be addressed in Plaintiffs' reply submission on April 2, 2026, after the exclusion and objection deadline has passed. ¶¶ 64, 95.

Given the foregoing considerations and the factors addressed below, Plaintiffs and Class Counsel respectfully submit that: (i) the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class; and (ii) the Plan of Allocation is a fair and reasonable method for equitably distributing the Net Settlement Fund to the Settlement Class. Plaintiffs also request that the Court grant final certification to the Settlement Class for purposes of effectuating the Settlement.

## II. THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) requires judicial approval of any class action settlement. Fed. R. Civ. P. 23(e). A district court has discretion to grant or not grant approval of the settlement. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). In exercising this discretion, a court should be guided by the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also Taafua v. Quantum Glob. Techs., LLC*, 2021 WL 579862, at *3 (N.D. Cal. Feb. 16, 2021) ("The Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions.").

Under Rule 23(e)(2), a district court may approve a class action settlement if it finds it to be "fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 n.10 (9th Cir. 2020). In making that determination, Rule 23(e)(2) provides that a court should consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e)(2)'s guidance, the Ninth Circuit has identified additional considerations for courts to weigh in deciding whether to approve a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors . . . and the factors identified in" Ninth Circuit case law).[2] Further, the Ninth Circuit has explained that a court's review of a settlement should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

This Court considered the Rule 23(e)(2) factors in assessing the Settlement at the preliminary approval stage and found that it would likely be able to finally approve the Settlement as fair,

---

[2] The "goal" of the 2018 amendments to Rule 23(e)(2) was "not to displace" any of the factors historically articulated by the various Circuits, "but rather to focus the court . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Campbell*, 951 F.3d at 1121 n.10. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

reasonable, and adequate, subject to further consideration at the Fairness Hearing. ECF No. 393, ¶ 5. Nothing has changed to alter the Court's analysis in granting preliminary approval of the Settlement, and the factors supporting the Court's determination at preliminarily approval continue to apply. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"). Accordingly, the Court should find the Settlement to be fair, reasonable, and adequate and grant final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

### A. Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class in the Action

The first factor that the Court must consider when evaluating a class action settlement is whether Plaintiffs and Class Counsel "have adequately represented the class." To determine adequacy, "courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [have] the named plaintiffs and their counsel prosecute[d] the action vigorously on behalf of the class?" *In re LendingClub Secs. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017) (quoting *Hanlon*, 150 F.3d at 1020). On August 27, 2024, the Court appointed KTMC and Carella Byrne as Interim Co-Lead Class Counsel pursuant to Rule 23(g) (ECF No. 233) and on December 5, 2025 found it would be likely to appoint Plaintiffs as Class Representatives and appoint KTMC and Carella Byrne as Class Counsel for purposes of this settlement (ECF No. 393, at ¶ 4). ¶ 34. Plaintiffs and their counsel have amply demonstrated their adequacy as representatives of the Settlement Class by devoting significant time to vigorously litigating this Action against Defendant and its highly proficient counsel—Sheppard, Mullin, Richter & Hampton LLP and Crowell & Moring LLP—for two years. This factor weighs in favor of the Settlement.

Plaintiffs' claims, all of which are based on Plaintiffs' experiences that match those of the millions of other Settlement Class Members, are typical of other Settlement Class Members, and Plaintiffs have no interests antagonistic to the Settlement Class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of

antagonism" and "a sharing of interest" between representatives and absent class members). As argued and briefed at length in connection with Preliminary Approval, and incorporated into the terms of the Settlement, Kaiser Permanente Members Who Have Chosen to Arbitrate are excluded from the Settlement Class. *See* ECF No. 390.

In addition, Plaintiffs—like all other Settlement Class Members—have an interest in obtaining the largest possible recovery from Kaiser. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). As detailed in their supporting Declarations, Plaintiffs have actively participated in the prosecution and resolution of the Action. Plaintiffs provided Class Counsel with necessary factual information—allowing Class Counsel's expert to conduct extensive searches of their computers and mobile devices in order to obtain specific information about the personal and confidential information (i.e., patient status, identifying information, personal and sensitive health information, and confidential communications with health care providers) that Plaintiffs allege Kaiser was improperly sharing with third parties. ¶¶ 17-18. Plaintiffs also reviewed relevant Court pleadings and other case documents, had ongoing communications with Class Counsel regarding various issues pertaining to this case as well as strategic litigation decisions, searched for and gathered documents and other information in response to Defendant's discovery requests, and conferred with Class Counsel during the Parties' discussions regarding the possible resolution of the Action. *See* Ex. 1A, ¶¶ 4-9; Ex. 1B, ¶¶ 4-9; Ex. 1C, ¶¶ 4-9; Ex. 1D, ¶¶ 4-9; Ex. 1E, ¶¶ 4-9; Ex. 1F, ¶¶ 4-9; Ex. 1G, ¶¶ 4-9; Ex. 1H, ¶¶ 4-8.

Furthermore, Plaintiffs retained counsel who are highly experienced in complex litigation and have successfully prosecuted many significant actions throughout the United States. *See* Graden Decl. Ex. 7; Ex. 4. *See Churchill*, 361 F.3d at 576-77 (instructing courts to consider "*experience and views of counsel*") (emphasis in original). Here, Class Counsel's work on this case began over a year before their initial appointment as Interim Co-Lead Class Counsel in August 2024 and has included preparing pleadings, addressing issues of appropriate representative plaintiffs, consulting with experts, briefing three motions to dismiss and three motions to compel arbitration, evaluating ongoing discovery, preparing for and attending mediations, including analyzing documents prepared for or

produced in connection therewith, evaluating options for settlement benefits that meet the needs of the Settlement Class, negotiating the terms of the Settlement over the course of several months (and renegotiating certain of these terms in connection with preliminary approval), and expending the resources necessary to finance every aspect of the litigation. ¶ 9. These efforts all contributed to the guaranteed $46 million recovery (with the possibility of up to $47.5 million) achieved for the Settlement Class, as well as the removal of the offending code from Kaiser's Website and Apps and changes to Kaiser's privacy policies. ¶ 6.

### B. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel with the Assistance of Experienced Neutrals

In determining approval of a class action settlement, courts also consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This factor concerns the circumstances bearing on the procedural fairness of the settlement, including: (i) counsel's understanding of the strengths and weakness of the case based on "the extent of discovery completed and the stage of the proceedings," *Hanlon*, 150 F.3d at 1026; (ii) the presence or absence of any indicia of collusion (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)); and (iii) the involvement of a mediator. *See Joh v. Am. Income Life Ins. Co.*, 2020 WL 109067, at *7 (N.D. Cal. Jan. 9, 2020) ("The involvement of a neutral mediator is evidence that settlement negotiations were conducted at arm's length."). Plaintiffs satisfy this factor, which supports final approval of the Settlement.

Here, the Parties engaged in mediation sessions with two highly-experienced mediators. The first mediation before retired U.S. District Judge for the Northern District of Illinois, Hon. Wayne R. Andersen was held in October of 2024 over two-days. ¶ 43. The Parties did not reach an agreement to resolve the Action at that time. Following the October 2024 mediation, litigation continued in earnest, and approximately seven months later the Parties agreed to participate in a second mediation before retired U.S. Magistrate Judge for the Central District of California, Hon. Jay C. Gandhi. ¶ 44. This second mediation, held on May 13, 2025, was hard fought and ultimately resulted in the resolution of the Action. *Id.*

As courts in this District have found, the fact that the Parties reached a settlement through arm's-length negotiations between experienced counsel creates a presumption of fairness. *See In re Netflix Priv. Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel."). The involvement of two experienced mediators, retired federal Judges Anderson and Ghandi, in the settlement process further "confirms that the settlement is non-collusive." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (quoting *G. F. v. Contra Costa Cnty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015)). *See also Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sep. 4. 2018) ("[I]n light of the fact that the Settlement was reached after the parties engaged in motion practice and participated in multiple days of formal mediation, the Court concludes that the negotiations and agreement were non-collusive.").

Given their extensive litigation efforts, Plaintiffs were fully informed about the value of the Settlement Class's claims and the propriety of resolving the Action when they did. Plaintiffs' thorough understanding of the strengths and weaknesses of the case was further informed by the Parties' extensive settlement negotiations. ¶ 10. *See Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). Here, Class Counsel had the necessary understanding of the merits and risks of the Action to support their conclusion that the Settlement is a favorable result for the Settlement Class.

Finally, the Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a "clear sailing" fee agreement or a provision allowing settlement proceeds to revert to Kaiser. *See In re Bluetooth Headset Prods. Liab. Litig*, 654 F.3d at 947. Indeed, the Settlement is non-reversionary, meaning, if approved, Kaiser will have no right to the return of any portion of the Settlement Fund based on the amounts to be paid to Authorized Claimants. *See* ECF No. 390-1, Ex. G, Section C.2. Moreover, "[n]othing in th[e] Stipulation or Settlement shall be construed to prohibit

the Kaiser Foundation Health Plan from opposing a request for an award of attorneys' fees and costs []." Stip., ¶ 2.13.

In short, the Settlement was reached after arm's-length negotiations assisted by experienced mediators, conducted by well-informed counsel, and was not a product of fraud, overreaching, or collusion among the Parties.

### C. The Settlement Provides Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors

The remaining Rule 23(e)(2) factors overlap considerably with those articulated by the Ninth Circuit, and entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide" to the Settlement Class. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment; *see also Churchill*, 361 F.3d at 575-77. These factors weigh in favor of the Settlement.

#### 1. The Amount Offered in Settlement

"The critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). By definition, a settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Just.*, 688 F.2d at 624 (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971)); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair.").

The $46 million common fund, which could increase to $47.5 million if certain conditions are met, represents a favorable result for the Settlement Class. The recovery provides a near-term, tangible cash benefit to the Settlement Class (namely a payment currently estimated to range between $20 and $40 per Settlement Class member) and "[is] preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed.2002)). This substantial amount also serves as a deterrent against similar conduct recurring in the

future, both within and outside of Kaiser. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 322 ("The . . . settlement amount . . . sends a strong message to deter discrimination by other employers.") (quoting *United States v. N.J.*, 1995 WL 1943013, at *14 (D.N.J. Mar. 14, 1995)). Moreover, in terms of the Settlement Amount, Plaintiffs assert that, if successful at trial, there is a relatively wide range of possible recoveries—ranging from a significant fraction of the Settlement Amount at the low end if only nominal damages were awarded to multiples of the Settlement Amount at the high end if the Court were to find that Plaintiffs had successfully re-pled claims providing for statutory damages. *See In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 (E.D.N.Y. Jan. 4, 2024) ("Based on the substantial litigation risks . . . and because the settlement here was reached with the assistance of an experienced mediator, the Court concludes that the settlement amount is within a reasonable range."). Plaintiffs and Class Counsel submit that the recovery obtained for the Settlement Class is within a reasonable recovery range (*see* ECF No. 345, Ex. 1) and is particularly favorable in light of the significant challenges Plaintiffs would face if the Action continued. Considered against the risks involved with continued prosecution of this Action, the amount provided by the Settlement is fair, reasonable, and adequate.

**2. The Strengths and Weaknesses of Plaintiffs' Case**

When evaluating proposed class action settlements, courts consider the strengths and the weaknesses of the case and the risks of further litigation. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). To determine whether the Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

While Plaintiffs and Class Counsel believe they had meritorious claims and would have prevailed had the Action continued, Defendants raised various factual and legal defenses to Plaintiffs' claims. ¶¶ 53-61. Indeed, as this Court previously recognized: "The risk of continuing litigation is significant." October 24 Order, at 3. Plaintiffs and Class Counsel also recognize that there are many instances where plaintiffs believed their claims were meritorious, only to lose at trial or on appeal. *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (noting that, although

"[p]laintiff's claim has survived a motion to dismiss, [] success is not guaranteed if this matter were to proceed to jury trial"); *see, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988, at *1 (9th Cir. June 23, 2010) (granting judgment to defendants and nullifying jury verdict for plaintiff following trial).

Here, Plaintiffs' claims are brought under federal law as well as various state statutory laws concerning privacy, common law, and state constitutional law. ¶ 57. Throughout the Action, Defendants asserted numerous legal arguments challenging Plaintiffs' claims under these statutes. *See* ECF Nos. 205, 223, 303, 334. As such, choice of law issues presented a real hurdle for some of Plaintiffs' nationwide claims. *See* 7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.) (noting that class actions requiring application of multiple state laws can implicate Rule 23(b)(3)'s requirements of predominance and superiority). For other claims, Defendants would argue that individualized issues predominate.

Throughout the Action, Defendants repeatedly sought to compel members to arbitration, relief which the Court granted (ECF Nos. 119, 335), posing a considerable risk for certain Settlement Class Members. Further, even if Plaintiffs successfully certified one or more litigation classes, there is a risk of decertification. *See In re Netflix Priv. Litig.*, 2013 WL 1120801, at *6 ("The notion that a district court could decertify a class at any time, is one that weighs in favor of settlement."). Plaintiffs are also cognizant of the fact that data breach cases face certain risks at this stage. Notably, Judge Gonzalez Rogers recently denied class certification on a Rule 23(b)(3) damages class in a privacy case, finding that individualized issues relating to Google's implied consent defense would overwhelm the damages claims for all causes of action. *Calhoun*, 349 F.R.D. at 598. *See also In re TD Ameritrade Acct. Holder Litig.*, 2011 WL 4079226, at *5 ("[D]efendants in data breach cases have been successful in thwarting plaintiffs' efforts to obtain class certification.") (citing *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. at 397 (refusing to certify class of banks alleging damages resulting from retailer's data breach because of individual causation issues)); Order at 5-6, *Stollenwerk v. Tri-West Healthcare All.*, No. 03-cv-0185 (D. Ariz. June 10, 2008), ECF No. 139 (finding individualized issues relating to proof of causation predominate over common questions involving theft of computer equipment containing personal information); *see also In re Fortra File*

*Transfer Software Data Sec. Breach Litig.*, 794 F. Supp. 3d 1203, 1220 (S.D. Fla. 2025) (quoting *In re Mednax Servs. Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1554329, at *7 (S.D. Fla. Apr. 10, 2024)) ("[D]ata breach class actions are risky cases.").[3] When considering the potential risks of continued litigation, the Settlement provides a significant recovery.

Class Counsel carefully analyzed each of Kaiser's potential defenses and related risks prior to agreeing to the Settlement. If realized, any of these risks could have resulted in no recovery for Settlement Class Members. By resolving the Action through the Settlement, in contrast, Plaintiffs have guaranteed the Settlement Class a recovery of $46 million (with the potential of increasing to $47.5 million). This factor supports the Settlement.

**3. The Complexity, Expense, and Duration of Continued Litigation**

In addition to the risk of continued litigation, in evaluating the Settlement's fairness, the "expense, complexity, and likely duration of further litigation," *Churchill*, 361 F.3d at 576, or "delay of trial and appeal" should be taken into account. Fed. R. Civ. P. 23(e)(2)(C)(i). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015); *see also Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *5 (N.D. Cal. July 15, 2022) ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case."). The highly contested motion practice and substantial discovery efforts in this Action, as well as the issues presented and resolved during the preliminary approval process itself, are a testament to the complexity of the factual and legal issues present in this case.

[3] Because the law on privacy breach is still developing, plaintiffs bringing privacy breach cases face more risks and uncertainty in class action litigation. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 317 ("Data-breach litigation is in its infancy with threshold issues still playing out in the courts."). For example, "damages methodologies in data breach cases are largely untested and have yet to be presented to a jury." *Hashemi v. Bosley, Inc.*, 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022). As the *Hashemi* court noted, "it is difficult to estimate Plaintiffs' expected recovery . . . given the relative dearth of precedent and exemplar cases that have proceeded to trial." *Id.* Given these uncertainties, "[c]ourts have noted that legal uncertainty supports approval of a settlement." *In re Anthem*, 327 F.R.D. at 317; *see Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) (noting "legal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval.").

Class Counsel also incurred considerable expenses in prosecuting the Action, including the cost of Plaintiffs' experts and consultants, their two formal mediations, online research, data hosting, and travel for, among other things, the Court's monthly in-person status conferences. These expenses would have increased significantly had the case not settled.

In contrast, the Settlement avoids the risk, cost, and delay of further litigation while providing a certain, near-term recovery for the Settlement Class. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."). This factor supports final approval of the Settlement.

**4. Risk of Maintaining Class Action Status**

Given the posture of the case at the time of settlement, Plaintiffs had not moved for class certification. And, as noted above, privacy breach cases face significant risks at this stage. While Plaintiffs are confident that, had the Action continued, they would have ultimately obtained certification of a class, the Settlement removes this uncertainty. *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1041-42 ("If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely. . . As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed."). This factor favors the Settlement.[4]

**5. The Extent of Discovery Completed and the Stage of Proceedings**

Courts next consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case. *See, e.g.*, *Mego Fin*., 213 F. 3d at 459; *In re Rambus Inc. Deriv. Litig*., 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009). Moreover, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."

[4] This factor would support the Settlement even if Plaintiffs had obtained class certification, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also Omnivision*, 559 F. Supp. 2d at 1041 ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *5 (S.D. Cal. Feb. 9, 2018) (quoting *DIRECTV, Inc.*, 221 F.R.D. at 528).

The Settlement was reached after two years of contentious litigation. From the commencement of this Action on June 9, 2023 to the Parties' agreement to resolve the Action after their second mediation in May 2025, the Parties engaged in substantial discovery efforts. ¶¶ 21-42. Before reaching the Settlement, the Parties participated in six discovery management conferences, served written discovery requests followed by numerous meet-and-confers, engaged in multi-day expert-led review of highly confidential source code, presented several oral arguments on discovery disputes before Magistrate Judge Kang, undertook third-party discovery, exchanged expert reports in connection with Plaintiffs' Motion for Preliminary Injunction, and extensively negotiated ESI keywords and custodians over two discovery phases which allowed Class Counsel to review and analyze tens of thousands of documents. ¶¶ 26-41.

In addition, Plaintiffs engaged in substantial motion practice, litigating a motion for preliminary injunction, three motions to dismiss, and three motions to compel arbitration. *See generally* ¶¶ 19-42. This record demonstrates that, at the time of settlement, Plaintiffs and Class Counsel had more than "enough information to make an informed decision about settlement based on the strengths and weaknesses" of their case. *In re Amgen Inc. Secs. Litig.*, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016) (finding "in favor of granting final approval" where discovery was complete and "case was on the verge of trial").

**6. The Experience and Views of Counsel**

The informed opinion of experienced Class Counsel that the Settlement is in the best interest of the Settlement Class should be afforded significant weight. *DIRECTV, Inc.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel . . . because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."); *Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020) (quoting *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980)) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). As described above,

Class Counsel had a thorough understanding of the merits and risks of the Action prior to agreeing to the Settlement. Class Counsel also have extensive prior experience in complex class action litigation (*see* Graden Decl., Ex. 4 and Ex. 7 ). Class Counsel's conviction that the Settlement is an excellent outcome thus further favors approval of the Settlement.

**7. Existence of a Governmental Investigation**

Plaintiffs and Class Counsel are unaware of any active governmental investigation regarding the conduct at issue in this Action. As such, the Settlement is the *only* recovery for the Settlement Class related to the allegations in this case. This factor strongly supports final approval. Through discovery, it was disclosed that Kaiser was in communication with certain governmental regulators regarding code and/or cookies on the Website or Apps. *See* ECF No. 188, at 8-9. Additionally, Kaiser confirmed a privacy breach to state and federal regulators on April 12, 2024—just one day after the Court denied in part Kaiser's motion to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC"). *See* ECF No. 127. However, to date, it does not appear that any of these regulators have ongoing, active investigations regarding the privacy breach. Accordingly, this private action provides the only form of relief for the vast majority of Settlement Class members who are not individually represented by their own counsel.

Likewise, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), Defendants were required to provide notice of the Settlement to appropriate state and federal officials within 10 days from when the Stipulation was initially filed with the Court on August 19, 2025 (Stip.¶ 2.29) and, to date, Plaintiffs have not been advised of any objections by such officials. Courts have found the absence of objections by state or federal officials after receiving notice pursuant to CAFA to weigh in favor of final approval. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) (quoting *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010)) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.").

**8. The Reaction of Settlement Class Members to Date**

"In addition to the enumerated fairness factors of Rule 23(e)(2), courts within the Ninth Circuit typically consider the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946); *see also Churchill*, 361 F.3d at 577. Moreover, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc.*, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021) (quoting *Knapp*, 283 F. Supp. 3d at 833-34). Here, notice of the Settlement is scheduled to be disseminated to the Settlement Class by January 16, 2026. At that time, Settlement Class Members will be able to object to the Settlement if they choose to do so. Any objections will be addressed in Plaintiffs' reply submission to be filed with the Court on April 2, 2026.

**D. The Remaining Rule 23(e)(2) Factors Also Support Final Approval**

In evaluating the Settlement pursuant to Rule 23(e)(2), courts are instructed to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These additional factors also weigh in favor of approval.

*First*, the proposed method of distribution and claims processing ensures equitable treatment of the Settlement Class Members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D). The Settlement does not improperly grant preferential treatment to Plaintiffs or any Settlement Class Member, and the Net Settlement Fund will be distributed *pro rata* by dividing the Net Settlement Fund by the total number of valid Claims. Importantly, the Settlement is non-reversionary, meaning that, if approved, Kaiser will have no right to the return of any portion of the Settlement Fund based on the amounts to be paid to Settlement Class Members. *See* ECF No. 390-1, Ex. G. § C.2.

*Second*, the relief provided by the Settlement remains adequate upon consideration of the terms of the proposed award of attorneys' fees and litigation expenses incurred in prosecuting this Action, including the timing of any such Court-approved payments. *See* Fed. R. Civ. P.

23(e)(2)(C)(iii). And, approval of attorneys' fees is entirely separate from approval of the Settlement and neither Plaintiffs nor Class Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* ECF No. 390-1, ¶ 5.2. In any event, as more fully explained in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards filed concurrently herewith ("Fee and Expense Memorandum"), the requested attorneys' fees of 33% of the Settlement Fund are reasonable in light of Class Counsel's efforts in prosecuting this Action, which culminated in significant monetary and non-monetary recovery, and accounts for the significant risks shouldered by Class Counsel.[5] Additionally, the 33% request is supported by other fee awards in this Circuit and throughout the country. *See* Fee and Expense Memorandum, § I.C.

*Third*, as part of the Settlement, the Parties have agreed to a confidential provision that gives Defendant the option to terminate the Settlement in the event that requests for exclusion exceed certain agreed-upon conditions. *See* Fed. R. Civ. P. 23(a)(3). This type of agreement has no negative impact on the fairness of the Settlement and in this case, may result in an increase in the Settlement Amount—up to $47.5 million—and a greater recovery for the Settlement Class. *See Hefler*, 2018 WL 4207245, at *11 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). This confidential agreement was submitted to the Court on October 6, 2025. *See* ECF No. 374, at 3-4.

For the reasons set forth above and in the Graden Declaration, the Settlement is fair, reasonable, and adequate when evaluated under any standard, and, therefore, warrants the Court's final approval.

## III. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND WARRANTS FINAL APPROVAL

When evaluating the proposed Settlement, the Court must also determine whether the Plan of Allocation is fair and reasonable to the Settlement Class. A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a

[5] Class Counsel also seek payment of Plaintiffs' Counsel's litigation expenses in the amount of $605,103.06. ¶ 15. Class Counsel's application for attorneys' fees and litigation expenses also includes a request for Service Awards to Plaintiffs in the aggregate amount of $40,000 (i.e., $5,000 each) as compensation for Plaintiffs' service on behalf of the Settlement Class as well as the risks associated with their involvement in the Action.

whole—the plan must be fair, reasonable, and adequate. *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). Moreover, "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (quoting *In re Broadcom Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sep. 12, 2005)).

Here, the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit a valid Claim Form. *See* ECF No. 390-1, Ex. F. The Claim Form requires Settlement Class Members to provide certain information, including their Identification Number assigned by the Settlement Administrator and their preferred payment method. *See id.* at §§ 1, 3. Settlement Class Members will receive his or her *pro rata* share of the Net Settlement Fund, which will be calculated by dividing the Net Settlement Fund by the total number of valid Claim Forms received.

Payments will be issued to Authorized Claimants following the Effective Date. ECF No. 390-1, Ex. G. If any funds remain following the initial distribution of the Net Settlement Fund, as a result of uncashed or returned checks or other reasons, and a redistribution is determined to be cost effective by Class Counsel in consultation with the Settlement Administrator, these funds will be redistributed to Authorized Claimants on a *pro rata* basis. *See Id*. If it is determined that a redistribution of the funds remaining in the Net Settlement Fund is not cost effective, the funds will be contributed, subject to Court approval, to Institute for Public Health Innovation ("IPHI"). *Id*. The Parties do not have a relationship with this organization. *See* ECF No. 345, at 26. The IPHI is the fiscal sponsor for the Common Health Coalition, which engages in work regarding the exchange of data between health care and public health systems, coordination between health care and public health, emergency preparedness, and disease detection. *See* Common Health Coalition, https://commonhealthcoalition.org/ (last visited Dec. 22, 2025).

In accordance with the Court's Preliminary Approval Order, the Settlement Administrator will conduct an extensive notice campaign advising Settlement Class Members of the Plan of Allocation and their right to object to the Plan of Allocation. Plaintiffs will address any objections to the Plan of Allocation in their reply submission to be filed with the Court on April 2, 2026. Class

Counsel and Plaintiffs believe the Plan of Allocation is fair, reasonable, and adequate and warrants approval. Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D).

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

As set forth in Plaintiffs' Motion for Preliminary Approval, the Settlement Class satisfies all of the requirements of Rules 23(a) and (b)(3). ECF No. 345 at 20-25; *see also* ECF No. 393, ¶¶ 2-4 (finding the Court will likely be able to certify the Settlement Class for purposes of the proposed Settlement). None of the facts supporting certification of the Settlement Class have changed since Plaintiffs submitted their preliminary approval motion and the Court entered the Preliminary Approval Order. Accordingly, Plaintiffs respectfully request that the Court certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## V. NOTICE OF THE SETTLEMENT WILL SATISFY THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Plaintiffs are in the process of providing the Settlement Class with adequate notice of the Settlement. Here, notice, as outlined in the Preliminary Approval Order, will satisfy both: (i) Rule 23, as it will be "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement. Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); and (ii) due process, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

In accordance with the schedule set forth in the Preliminary Approval Order, the Court-appointed Settlement Administrator, Strategic Claims Services ("SCS"), will email or mail the Short Form Notice to Settlement Class Members as set forth the May 2024 Notice List provided by Kaiser. ECF No. 393, ¶¶ 8-9. In connection with the emailing/mailing of the Short Form Notice, SCS will develop a website dedicated to the Settlement, http://www.KaiserPrivacySettlement.com, where Settlement-related information and deadlines, including copies of the Long Form Notice, Claim Form, and Plan of Allocation will be posted. *Id.* at ¶ 19. In addition, under the Settlement, Kaiser was

required to issue notice pursuant to CAFA within ten (10) days from filing the Settlement, proof of which will be filed with the court at least forty-five (45) days before the Fairness Hearing. ECF No. 390-1, at ¶ 2.29.

Collectively, the Short and Long Form Notices will apprise the Settlement Class Members of:

> (i) [T]he nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The notices also set out the procedures and deadlines for submitting Claims, objecting to the Settlement (or any aspect thereof), and requesting exclusion from the Settlement Class. In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The notices satisfy this requirement as well: the notices specifically advise Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees not to exceed 33% of the Settlement Fund and for expenses in an amount not to exceed $900,000, to be paid from the Settlement Fund and the Fee and Expense Motion will be available on the settlement website. This notice campaign is more than adequate, as it "generally describe[s] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 567).; *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)) ("Settlement notices must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'").

In sum, the notices provide sufficient information for Settlement Class Members to make informed decisions regarding the Settlement, fairly apprise them of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and will comply with the Court's Preliminary Approval Order, Rule 23, and due process. Class Counsel will provide the Court with

information on the notice campaign, including the reaction of the Settlement Class to the Settlement and Plan of Allocation, in their reply submission to be filed with the Court on April 2, 2026.

## VI. CONCLUSION

For the reasons set forth herein and in the Graden Declaration, Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation.

Dated: December 22, 2025

Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

*/s/ Tyler S. Graden*
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza

Chicago, Illinois 06606

*Class Counsel*

**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey, Cal Bar No. 125961
bobmackeyesq@aol.com
16320 Murphy Road
Sonora, CA 95370
Telephone: (412) 370-9110

-and-

**MIGLIACCIO & RATHOD LLP**
Jason S. Rathod
jrathod@classlawdc.com
412 H Street NE, no. 302
Washington, DC, 20002
Telephone: (202) 470-3520

*Additional Counsel for Plaintiff Alexis Sutter*