**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, PC**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Class Counsel*
(*Additional Attorneys Listed on Signature Page*)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | Case No. 3:23-cv-02865-EMC<br><br>**CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Edward M. Chen<br>Date:  May 7, 2026<br>Time:  1:30 p.m.<br>Court: 5<br><br>CMC Filed: December 6, 2024 |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 7, 2026 at 1:30 p.m., the Honorable Edward M. Chen presiding, Kessler Topaz Meltzer & Check, LLP ("KTMC") and Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella Byrne" and, together with KTMC, "Class Counsel"), counsel for Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V, and Alexis Sutter (collectively, "Plaintiffs") and the proposed Settlement Class, will and hereby do move pursuant to Rule 23(h) of the Federal Rules of Civil Procedure ("Rule") for an order awarding attorneys' fees, litigation expenses and service awards in the above-captioned action ("Action").

Class Counsel's Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities that follows, the accompanying declarations, including the Declaration of Tyler S. Graden in Support of (I) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards ("Graden Declaration" or "Graden Decl."), the Amended Stipulation of Settlement dated December 1, 2025 (ECF Nos. 390-1; 392-1) ("Stipulation" or "Stip."), the papers and pleadings filed in the Action, the arguments of counsel, and any other matters properly before the Court. The Graden Declaration is an integral part of this submission and, for the sake of brevity in the Memorandum of Points and Authorities, Class Counsel refer the Court to the Graden Declaration for a detailed description of the history of the Action and Class Counsel's litigation efforts (¶¶ 17-42); the settlement negotiations (¶¶ 43-47); and the risks of continued litigation (¶¶ 53-61).[1]

Pursuant to the Court's Order as Modified Preliminarily Approving Settlement and Approving Notice of Proposed Settlement of Class Action and Fairness Hearing dated December 5, 2025 (ECF No. 393) ("Preliminary Approval Order"), Settlement Class Members have until March 12, 2026 to object to the requests for attorneys' fees, litigation expenses, and/or Service Awards. Any objections received will be addressed in Plaintiffs' reply papers due on April 2, 2026. A proposed judgment and

---

[1] Citations to "¶ _" and "Ex. _" refer respectively to paragraphs in and exhibits to the Graden Declaration. All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulation or in the Graden Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

order granting the relief requested herein will be submitted with Plaintiffs' reply, after the objection deadline has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve Class Counsel's request for attorneys' fees in the amount of 33% of the Settlement Fund.

2.      Whether the Court should approve Class Counsel's request for payment of litigation expenses reasonably and necessarily incurred by Class Counsel in prosecuting and resolving the Action in the amount of $605,103.06 from the Settlement Fund.

3.      Whether the Court should approve the requested Service Awards to Plaintiffs in the aggregate amount of $40,000 (i.e., $5,000 each) for their efforts in representing the Settlement Class in the Action.

# **TABLE OF CONTENTS**

I.   THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD ............................ 3

    A.   Class Counsel Are Entitled to a Reasonable Fee from the Common Fund Created by the Settlement ............................................................................... 4

    B.   The Court Should Calculate the Fee as a Percentage of the Common Fund ............... 4

    C.   Class Counsel's 33% Fee Request Is Warranted ......................................................... 5

        1.   Class Counsel Achieved an Excellent Result for the Settlement Class ........... 6

        2.   Class Counsel Undertook Substantial Risk in the Action ............................... 7

        3.   Successfully Prosecuting the Case Against Kaiser Required Skill and High-Quality Work .................................................................................. 9

        4.   Class Counsel Litigated the Case on a Fully Contingent Basis ..................... 11

        5.   The Requested Fee Is in Line With Fee Awards in this Circuit .................... 12

    D.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee ......... 13

        1.   The Number of Hours Devoted to the Action Was Reasonable .................... 13

        2.   Class Counsel's Hourly Rates Are Reasonable ............................................ 14

        3.   The Multiplier Is Justified Given the Results Obtained and the Contingent Nature of the Representation ...................................................... 15

II.   CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ................................................................................................ 16

III.   THE REQUESTED SERVICE AWARDS ARE WARRANTED AND SHOULD BE APPROVED ...................................................................................................... 18

IV.   CONCLUSION .................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re Activision Sec. Litig.*,
　　723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................... 5

*AdTrader, Inc. v. Google LLC*,
　　2022 WL 16579324 (N.D. Cal. Nov. 1, 2022) ........................................... 7

*In re Am. Apparel, Inc. S'holder Litig.*,
　　2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................................ 10

*In re Am. Fin. Res., Inc. Data Breach Litig.*,
　　No. 22-cv-1757 (D.N.J. Oct. 3, 2024) ..................................................... 15

*In re Amgen Inc. Sec. Litig.*,
　　2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......................................... 5

*Anixter v. Home-Stake Prod. Co.*,
　　77 F.3d 1215 (10th Cir. 1996) ................................................................ 11

*In re Anthem, Inc. Data Breach Litig.*,
　　327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ................................................ 8

*In re Apple Inc. Device Performance Litig.*,
　　2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ................................... 4, 5, 11

*In re Apple Inc. Device Performance Litig.*,
　　50 F.4th 769 (9th Cir. 2022) ................................................................ 5, 18

*Atlas v. Accredited Home Lenders Holding Co.*,
　　2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) ............................................. 6

*Beaver et al. v. Tarsadia Hotels*,
　　2017 WL 4310707 (S.D. Cal. Sep. 28, 2017) ...................................... 12, 16

*Boeing Co. v. Van Gemert*,
　　444 U.S. 472 (1980) ................................................................................. 4

*Brown v. Wal-Mart Store, Inc.*,
　　No. 09-cv-03339 (N.D. Cal. Mar. 28, 2019) ........................................... 12

*Cabot East Broward 2 LLC v. Cabot*,
　　2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) ........................................... 12

*Cabot East Broward 2 LLC v. Cabot*,
    No. 16-cv-61218 (S.D. Fla. Aug. 10, 2018) ................................................................ 12

*Cabrera v. Google LLC*,
    2025 WL 2494429 (N.D. Cal. Aug. 29, 2025) .......................................................... 15

*Calhoun v. Google LLC*,
    349 F.R.D. 588 (N.D. Cal. 2025) .............................................................................. 9

*In re Charles Schwab Sec. Litig.*,
    2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) .......................................................... 4

*Ching v. Siemens Indus., Inc.*,
    2014 WL 2926210 (N.D. Cal. June 27, 2014) ....................................................... 11

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................... 4, 7, 9, 15

*Doe v. Eating Recovery Ctr. LLC*,
    2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........................................................... 8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ....................................................... 12

*In re Extreme Networks, Inc. Secs. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) ....................................................... 13

*In re Facebook Internet Tracking Litig.*,
    2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) ................................................ 14, 16

*Ferris v. Wynn Resorts Ltd.*,
    No. 18-cv-00479 (D. Nev. Jan. 31, 2025) ......................................................... 12, 15

*Fischel v. Equitable Life Assurance Society of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ................................................................................. 14

*Fleming v. Impax Labs. Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022) .................................................. 14, 16

*Fowler v. Wells Fargo Bank, N.A.*,
    2019 WL 330910 (N.D. Cal. Jan. 25, 2019) .......................................................... 14

*Glass v. UBS Fin. Servs., Inc.*,
    331 F. App'x 452 (9th Cir. 2009) ............................................................................ 4

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) .................................................................................... 4

*Hale v. State Farm Mut. Auto Ins. Co.*,
    2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ........................................................ 12

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .................................................................................... 16

*Hashemi v. Bosley, Inc.*,
  2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ........................................................ 8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .............................................................................................. 6

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005)....................................................... 10

*Hernandez v. Dutton Ranch Corp.*,
  2021 WL 5053476 (N.D. Cal. Sep. 10, 2021) .................................................... 2, 6

*Howard v. Arconic Inc.*,
  No. 17-cv-01057 (W.D. Pa. Aug. 9, 2023) .......................................................... 12

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
  2019 WL 4734396 (S.D.N.Y. Sep. 23, 2019) ...................................................... 12

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
  2018 WL 2183253 (N.D. Cal. May 11, 2018)....................................................... 18

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sep. 20, 2018) .................................................. 6, 12

*In re MacBook Keyboard Litig.*,
  2023 WL 3688452 (N.D. Cal. May 25, 2023) ...................................................... 14

*Martinelli v. Johnson & Johnson*,
  2022 WL 4123874 (E.D. Cal. Sep. 9, 2022) ........................................................ 11

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................................. 14

*Mobile Emergency Hous. Corp. v. HP Inc.*,
  2025 WL 844412 (N.D. Cal. Mar. 18, 2025) .................................................. 18, 19

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019).............. 19

*In re Neurontin Antitrust Litig.*,
  2014 WL 12962880 (D.N.J. Aug. 6, 2014) .......................................................... 13

*Nitsch v. DreamWorks Animation SKG Inc.*,
  2017 WL 2423161 (N.D. Cal. June 5, 2017)........................................................ 18

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................................. 6, 13

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .................................................................................. 5, 19

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009) ............................................................... 11

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ........................................................................................... 5

*Peace Officers' Annuity & Benefit Fund of Ga. v. Davita, Inc.*,
   2021 WL 2981970 (D. Colo. July 15, 2021) ................................................................ 12

*Pearlstein v. BlackBerry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sep. 29, 2022) .............................................................. 12

*Perez v. Rash Curtis & Assocs.*,
   2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) .......................................................... 12, 16

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .................................................................................... 11

*Rodman v. Safeway Inc.*,
   2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ............................................................... 7

*Siqueiros v. Gen. Motors LLC*,
   No. 16-cv-07244 (N.D. Cal. Oct. 8, 2025) (Chen, J.) .................................................. 19

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
   No. 17-cv-8457 (S.D.N.Y. Apr. 24, 2025) ................................................................... 15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ......................................................................................... 4

*Stdandard Iron Works v. ArcelorMittal*,
   2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) ............................................................... 12

*Stollenwerk v. Tri-West Healthcare All.*,
   No. 03-cv-0185 (D. Ariz. June 10, 2008) ...................................................................... 9

*In re TD Ameritrade Acct. Holder Litig.*,
   2011 WL 4079226 (N.D. Cal. Sep. 13, 2011) ............................................................... 9

*Thomas v. MagnaChip Semiconductor Corp.*,
   2018 WL 2234598 (N.D. Cal. May 15, 2018) ............................................................. 16

*Uschold v. NSMG Shared Servs., LLC*,
   333 F.R.D. 157 (N.D. Cal. 2019) ................................................................................ 20

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) ......................................................................................... 4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................................. *passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...................................................... 14, 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .................................................................................. 4, 11

*White v. Experian Info. Solutions, Inc.*,
  2018 WL 1989514 (C.D. Cal. Apr. 6, 2018), *aff'd in part, rev'd in part sub nom.*,
  *Radcliffe v. Hernandez*, 794 F. App'x 605 (9th Cir. 2019) ........................................ 14

*Williamson v. McAfee, Inc.*,
  2017 WL 6033070 (N.D. Cal. Feb. 3, 2017) ............................................................... 4

*Zepeda v. PayPal, Inc.*,
  2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) .......................................................... 10

**Other Authorities**

7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.)............... 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

Following two years of hard-fought litigation, Class Counsel have achieved an excellent result for the Settlement Class—Kaiser Foundation Health Plan, Inc. ("Kaiser" or "Defendant") has removed the offending code from its website and mobile applications and will be making a $46 million cash payment (with the possibility of increasing to $47.5 million if certain conditions are met) to settle the claims in the Action (the "Settlement"). The Settlement is the product of extensive negotiations, including formal mediation before two highly experienced and respected retired federal judges, with the Parties reaching an agreement to settle the Action following the second mediation. Importantly, the $46 million cash recovery is *in addition to* the substantial non-monetary relief Class Counsel achieved earlier in the litigation—(i) the removal of the offending internet technologies embedded in the website and mobile applications at the heart of this litigation and (ii) changes to Kaiser's privacy notification practices. This Settlement is the product of Class Counsel's proprietary investigation and development of the case, and dedication and hard work throughout the litigation. The Settlement provides relief to the Settlement Class now and eliminates the uncertainty of litigating the Settlement Class's claims through risky class certification proceedings, summary judgment and trial as well as the substantial delay and expense of further litigation.

As set forth in the Graden Declaration, Class Counsel vigorously pursued this Action on behalf of the Settlement Class, devoting more than 19,100 hours to the litigation, and were fully prepared to continue litigating had the Settlement not been reached. To succeed in this Action, Class Counsel worked closely with experts to investigate, develop and support the claims in the Action and deployed a dedicated team of professionals, including litigators skilled in complex class action and privacy litigation, as well as experienced investigators, paralegals and administrative staff. Among their substantial efforts, Class Counsel conducted a far-reaching investigation, drafted four detailed complaints, successfully moved for a preliminary injunction (securing the non-monetary relief noted above), opposed three motions to dismiss, worked closely with experts, and engaged in extensive discovery, including the review of nearly 40,000 documents produced by Kaiser, service and negotiation of subpoenas on nine third parties, multiple days of in-person review of designated source-code material by experts, and six in-person discovery conferences before Magistrate Judge

1   Peter H. Kang, successfully negotiating and arguing an array of pressing discovery disputes including

2   claims of privilege. Class Counsel also engaged in protracted settlement negotiations with Kaiser,

3   exchanging mediation briefs and participating in two in-person mediation sessions (roughly seven

4   months apart), with the assistance of retired federal judges Hon. Wayne R. Anderson (ret.) and Hon.

5   Jay C. Gandhi (ret.), reaching this excellent result for the Settlement Class.

6        Achieving the Settlement was no small feat. Kaiser was represented by highly skilled and

7   determined litigators at Sheppard, Mullin, Richter & Hampton LLP and Crowell & Moring LLP who

8   fervently defended their clients at every stage of the litigation. Class Counsel litigated the Action on

9   a fully contingent basis and faced numerous obstacles from the outset including the substantial risk

10  of non-payment. In total, Class Counsel devoted over 19,100 hours to this case and outlaid over

11  $605,103 of their own money, with no guarantee of it ever being recovered. Of course, a class action

12  litigated on contingency is fundamentally different from a case where litigation expenses are funded

13  by the client and attorneys are continuously paid, even if they lose. As such, Class Counsel are entitled

14  to compensation that "reflect[s] the risk of non-payment in [these] cases." *Vizcaino v. Microsoft*

15  *Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).

16       As compensation for Class Counsel's successful efforts and commitment to bringing the

17  Action to a successful conclusion—*including securing both monetary and non-monetary benefits for*

18  *the Settlement Class*—as well as the significant risk of prosecuting and funding this Action with no

19  guarantee of recovery, Class Counsel seek attorneys' fees in the amount of 33% of the Settlement

20  Fund. "District Courts within this circuit . . . routinely award attorneys' fees that are one-third of the

21  total settlement fund," and "[s]uch awards are routinely upheld by the Ninth Circuit." *Hernandez v.*

22  *Dutton Ranch Corp.*, 2021 WL 5053476, at *6 (N.D. Cal. Sep. 10, 2021). And, while the requested

23  fee exceeds the 25% "benchmark" used as a "starting point" by courts in this Circuit, *Vizcaino*, 290

24  F.3d at 1047-48, Class Counsel's efforts here and the results obtained for the Settlement Class warrant

25  an upward adjustment to the benchmark. Notably, the requested fee, if approved, will result in a

26  multiplier of approximately 1.3 on Class Counsel's lodestar, which is on the lower end of the

27  multiplier range commonly awarded in class actions with significant contingency risk. *See id.* at 1051

28  n.6 (noting multipliers ranging from 1 to 4 are common).

1

2

3

Class Counsel also request payment of $605,103.06 from the Settlement Fund for Class Counsel's litigation expenses as well as Service Awards to Plaintiffs in the aggregate amount of $40,000 (i.e., $5,000 each).

4

5

6

7

8

9

10

Plaintiffs—who closely supervised the prosecution of the Action—have evaluated Class Counsel's fee and expense request and endorse it as fair and reasonable in light of the significant results achieved, the quality of the work performed by Class Counsel, and the risks of the litigation. *See* Graden Decl., Exs. 1A-1H. Once the notice campaign commences, Settlement Class Members will have the opportunity to fully assess Class Counsel's requests for attorneys' fees and expenses as well. The deadline for objecting to the requests for attorneys' fees and litigation expenses is March 12, 2026.[2]

11

12

13

14

15

16

17

18

19

20

In light of the recovery obtained, the time and effort devoted by Class Counsel to the Action, the skill and expertise required, the quality of the work performed, the wholly contingent nature of the representation, and the considerable risks involved in litigating the Settlement Class's claims, Class Counsel respectfully submit that the requested fee is fair and reasonable under the applicable legal standards and should be approved by the Court. Class Counsel also respectfully submit that the expenses for which they seek payment were reasonable and necessary for the successful prosecution of the Action and that the requested Service Awards to Plaintiffs for their efforts on behalf of the Settlement Class are likewise reasonable and appropriate and should be approved. Accordingly, Class Counsel respectfully request that their Motion for Attorneys' Fees, Litigation Expenses, and Service Awards be granted in full.

21

## I.    THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD

22

23

24

25

26

27

Class Counsel vigorously pursued this Action in the face of significant risks, achieved significant non-monetary relief, and negotiated a resolution that provides a non-reversionary Settlement Fund of $46 million (with the possibility of increasing up to $47.5 million) for the benefit of the Settlement Class. In consideration of those efforts, Class Counsel respectfully submit that an award of attorneys' fees in the amount of 33% of the Settlement Fund—which represents a 1.3 multiplier on Class Counsel's lodestar—is fair and reasonable and warrants the Court's approval.

28

---

[2] Class Counsel will address any objections received in their reply to be filed on April 2, 2026.

### A. Class Counsel Are Entitled to a Reasonable Fee from the Common Fund Created by the Settlement

Courts have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees"). The policy rationale for awarding attorneys' fees from a common fund is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). In addition to providing just compensation, an award of fair attorneys' fees from a common fund ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

### B. The Court Should Calculate the Fee as a Percentage of the Common Fund

"[A] court must ensure that attorney's fees . . . awarded to class counsel are fair, reasonable, and adequate." *In re Charles Schwab Sec. Litig.*, 2011 WL 1481424, at *7 (N.D. Cal. Apr. 19, 2011); *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003). In awarding attorneys' fees, courts in this Circuit have discretion to employ either the percentage-of-recovery method or the lodestar method. *See Vizcaino*, 290 F.3d at 1047; *Williamson v. McAfee, Inc.*, 2017 WL 6033070, at *1 (N.D. Cal. Feb. 3, 2017). Notwithstanding that discretion, the percentage-of-recovery method has become the prevailing method used in this Circuit. *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage-of-recovery method in awarding fees); *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) (finding "use of the percentage-of-the-fund method in common-fund cases [to be] the prevailing practice in the Ninth Circuit for awarding attorneys' fees"); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys' fees using the percentage method.").

Additionally, courts have found the percentage-of-recovery method to be preferable in cases with a common fund because it: (i) parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; (ii) aligns the lawyers' interests with those of the class in achieving the maximum possible recovery; and (iii) reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See, e.g.*, *Apple*, 2021 WL 1022866, at *2; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of percentage method over lodestar method). When awarding a percentage fee, courts often cross-check the requested fee with counsel's lodestar to ensure its reasonableness. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that a "cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness"); *see also* § II.D, *infra* (for Lodestar Analysis).

## C.    Class Counsel's 33% Fee Request Is Warranted

In the Ninth Circuit, the "starting point" for calculating attorneys' fees is 25% of the common fund. *Vizcaino*, 290 F.3d at 1048; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). As the Circuit has observed, "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases" and "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Here, Class Counsel's fee request above the 25% benchmark is well justified. Courts in this Circuit routinely grant fee awards above 25% when supported by: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the quality of work; (iv) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (v) awards made in similar cases (commonly referred to as the "*Vizcaino* factors"). *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (in assessing an upward adjustment to benchmark, courts consider "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some

circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis"). "The relative degree of importance to be attached to any particular [*Vizcaino*] factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009).

Courts in the Ninth Circuit award fees that exceed the benchmark "in most common fund cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see Hernandez*, 2021 WL 5053476, at *6 ("District courts within this circuit . . . routinely award attorneys' fees that are one-third of the total settlement fund," and "[s]uch awards are routinely upheld by the Ninth Circuit"); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sep. 20, 2018) (awarding 33⅓% of $104,750,000 settlement and noting "a fee award of one-third is within the range of awards in this Circuit").

As detailed below, each *Vizcaino* factor weighs strongly in favor of Class Counsel's fee request. Additionally, and as demonstrated by a lodestar cross-check (*see* § II.D below), the requested 33% fee would not constitute a windfall to Class Counsel as it results in a modest 1.3 lodestar multiplier, and that multiplier will decrease given the work Class Counsel will continue to perform on behalf of the Settlement Class leading up to the Fairness Hearing and through the completion of the case. *See Lidoderm*, 2018 WL 4620695, at *4 (noting in awarding 33% fee that "rationales for awarding fees at or below the 25% benchmark in some cases—i.e. to avoid a windfall for class counsel—do not apply here" given the 1.37 multiplier).

### 1.    Class Counsel Achieved an Excellent Result for the Settlement Class

The benefit counsel secured for the class is an important factor in evaluating the reasonableness of a requested fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 (noting "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees). Courts recognize that "the law appropriately provides for some upward adjustment [from the 25% benchmark] where the

results achieved are significantly better than the norm." *Rodman v. Safeway Inc.*, 2018 WL 4030558, at *3 n.3 (N.D. Cal. Aug. 23, 2018).

In addition to the substantial non-monetary relief Class Counsel achieved earlier in the litigation—i.e., Kaiser's removal of the offending internet technologies embedded in its website and mobile applications and change to its privacy notification practices (¶ 6)—Class Counsel have secured $46 million (with the possibility of up to $47.5 million) for the Settlement Class. Thus, through the substantial efforts of Class Counsel, not only may Settlement Class Members receive monetary compensation for their damages arising from the unlawful conduct alleged in the Action, they also substantially benefit from the fact that Class Counsel, by investigating and developing this Action and moving for a preliminary injunction early in the litigation, were able to stop the conduct at issue altogether. This is an excellent result for the Settlement Class and one that supports a 33% fee.

Moreover, with respect to the $46 million Settlement Amount, Plaintiffs assert that there is a relatively wide range of possible monetary recoveries if Plaintiffs' claims were successful at trial, ranging from a significant fraction of the Settlement Amount at the low end if only nominal damages were awarded to multiples of the Settlement Amount at the high end if the Court were to find that Plaintiffs had successfully re-pled claims providing for statutory damages. It is highly unlikely, however, that Plaintiffs would be able to obtain the full amount of damages. ¶¶53-61, 74-75. As such, the Settlement Amount is particularly favorable in light of the significant challenges Plaintiffs would face if the Action continued.[3]

### 2.    Class Counsel Undertook Substantial Risk in the Action

The risk of the litigation is another key factor in determining a reasonable fee. *See Vizcaino*, 290 F.3d at 1048; *Destefano*, 2016 WL 537946, at *17 (approving requested fee, in part, because the "risks associated with [the] case were substantial"); *AdTrader, Inc. v. Google LLC*, 2022 WL 16579324, at *7 (N.D. Cal. Nov. 1, 2022) (33% fee award justified by "substantial risk" and results).

---

[3]    The Settlement Amount is also in line with recoveries obtained in cases involving similar claims. *See* ECF No. 345, Ex. 1.

As this Court recognized in its October 24, 2025 Order regarding preliminary approval: "The risk of continuing litigation is significant." ECF No. 384, at 3.

Notably, privacy breach cases are among the riskier and more uncertain areas of class action litigation, as the case law addressing these cases remains relatively undeveloped. Indeed, in granting summary judgment for defendants in a privacy breach action regarding browsing activity, Judge Chhabria recently remarked that language of the California Invasion of Privacy Act:

> [I]s a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies. Indeed, we have reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute.

*Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). The risk of litigation in privacy breach cases is particularly acute with respect to damages. *See generally In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 317 (N.D. Cal. Aug. 15, 2018) ("Data-breach litigation is in its infancy with threshold issues still playing out in the courts."); *Hashemi v. Bosley, Inc.*, 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) ("damages methodologies in data breach cases are largely untested and have yet to be presented to a jury"). This Court has also raised questions as to whether "Kaiser allowed the code on its website and apps for the benefit of the third parties (as opposed to itself)." ECF No. 384, at 3. Had the Action continued, this question (and others) would undoubtedly have been a key defense raised at summary judgment and trial. ¶ 55.

Had the Action continued, Kaiser would also continue to assert significant legal arguments challenging Plaintiffs' claims under federal law as well as various state statutory laws concerning privacy, state common law, and state constitutional law. Some of these arguments had already been accepted by the Court in its decision initially dismissing Plaintiffs' claims for violation of the Federal Electronic Communications Privacy Act, the California Invasion of Privacy Act, the California Confidentiality of Medical Information Act, common law claims for intrusion upon seclusion and other state statutory claims. *See* ECF No. 124. While Plaintiffs re-pled many of these claims, with additional factual support as part of the CMCAC, the risk of dismissal remained as Defendant's motion to dismiss the CMCAC was pending at the time of settlement. ¶¶ 8, 57.

1   Choice of law issues also had the potential to present a significant hurdle for some of

2   Plaintiffs' nationwide claims, as Plaintiffs asserted claims violations of various common and statutory

3   laws of California, the District of Columbia, Georgia, Maryland, Oregon, Virginia, and Washington.

4   ¶ 58. *See* 7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1780.1 (3d ed.)

5   (noting class actions requiring application of multiple state laws can implicate Rule 23(b)(3)'s

6   requirements of predominance and superiority). For other claims, Defendant would argue that

7   individualized issues, such as consent, predominated, which would present hurdles at the class

8   certification stage. To illustrate, District Judge Gonzalez Rogers recently denied class certification

9   on a Rule 23(b)(3) damages class in a privacy case, finding that individualized issues relating to

10  Google's implied consent defense would overwhelm the damages claims for all causes of action.

11  *Calhoun v. Google LLC*, 349 F.R.D. 588, 592 (N.D. Cal. 2025); *see also In re TD Ameritrade Acct.*

12  *Holder Litig.*, 2011 WL 4079226, at *5 (N.D. Cal. Sep. 13, 2011) ("[D]efendants in data breach cases

13  have been successful in thwarting plaintiffs' efforts to obtain class certification.") (citing *In re TJX*

14  *Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify class of banks

15  alleging damages resulting from retailer's data breach because of individual causation issues)); Order

16  at 5-6, *Stollenwerk v. Tri-West Healthcare All.*, No. 03-cv-0185 (D. Ariz. June 10, 2008), ECF No.

17  139 (finding individualized issues relating to proof of causation predominate over common questions

18  involving theft of computer equipment containing personal information). Even if Plaintiffs were able

19  to obtain a certified litigation class here, there would be a risk of decertification. ¶ 59.

20  In short, there were serious risks attendant to the continued prosecution of the Action, and no

21  guarantee that further litigation would have resulted in a larger recovery for the Settlement Class, or

22  any recovery at all. Class Counsel submit that this risk is appropriately compensated by an upward

23  adjustment to the Circuit's fee benchmark and this factor further supports the requested 33% fee.

24          **3.    Successfully Prosecuting the Case Against Kaiser Required Skill and**
             **High-Quality Work**
25

26  The quality of Class Counsel's representation is another important factor that supports the

27  reasonableness of a 33% fee. This Action involved unique and complex issues that were successfully

28  prosecuted and managed by Class Counsel. *See Destefano*, 2016 WL 537946, at *17 ("[P]rosecution

and management of a complex national class action requires unique legal skills and abilities."). KTMC and Carella Byrne are nationally recognized firms specializing in complex class action litigation, with long and successful track records in these types of cases throughout the country. *See* Exs. 4 & 7.

Class Counsel's experience and skill was demonstrated by the effective prosecution of the Action and the record is replete with examples of counsel's high-quality work. One such example is Plaintiffs' preliminary injunction motion, which resulted in Kaiser's immediate removal of the offending internet technologies embedded in its website and mobile applications and changes to its privacy notification practices. Class Counsel's work here also resulted in Kaiser notifying regulators —**one day** after the Court issued its opinion on Kaiser's Motion to Dismiss the FAC—that it had shared patients' personally identifiable and protected health information ("PHI"), including, *inter alia*, IP address, name, member status, symptom searches, and information showing how the member interacted with and navigated through the website or mobile applications. ¶ 31. As Kaiser's counsel subsequently acknowledged during a discovery hearing: "**This litigation was part and parcel of what spurred the investigation into those technologies**." Disc. Hr'g Tr. at 53:25-54:1 (July 18, 2024), ECF No. 217. Another example of Class Counsel's high-quality work was at the settlement stage, where they engaged in two separate mediation sessions before two well-qualified mediators, requiring months of extremely hard-fought negotiations over certain Settlement terms prior to the execution of the Stipulation. *See Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (finding counsel's expertise allowed for result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of case).

The quality of opposing counsel is also important in evaluating the services rendered by Class Counsel. *See In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully."). Kaiser was represented in this Action by Sheppard, Mullin, Richter & Hampton LLP and Crowell & Moring LLP, both prominent nationwide defense firms. *See In re Heritage Bond*

*Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("[P]laintiffs were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients."). Notwithstanding this formidable opposition, Class Counsel's ability to present a strong case and to demonstrate their willingness to take the Action to trial if necessary, helped secure the Settlement. Accordingly, this factor supports the fee request.

### 4.    Class Counsel Litigated the Case on a Fully Contingent Basis

The significant risks that Class Counsel shouldered for the benefit of the Settlement Class in prosecuting this Action on a fully contingent basis further support the requested fee award. "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Apple*, 2021 WL 1022866, at *6; *see also Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *In re Washington Pub. Power*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

The risk of no recovery for a class and its counsel in complex cases of this type is very real. There are many examples of plaintiffs' counsel taking on the risk of pursuing claims on contingency, expending thousands of hours and millions of dollars, and receiving no remuneration despite their diligence and expertise. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict after two decades of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation).

Class Counsel committed significant resources, time, and money to prosecute this Action against Kaiser (and related entities), without any payment or any guarantee of a fee. *See Martinelli v. Johnson & Johnson*, 2022 WL 4123874, at *9 (E.D. Cal. Sep. 9, 2022) (33.3% award justified based on contingent risk assumed by counsel in case involving "extensive discovery" and "contested motion

1   practice"). Class Counsel's fees and expenses have always been at risk and contingent on the result

2   achieved and on this Court's approval. The significant contingency fee risk here supports the 33%

3   fee requested by Class Counsel.

4           **5.      The Requested Fee Is in Line With Fee Awards in this Circuit**

5           A review of fee awards in other common fund cases in the Ninth Circuit supports the

6   reasonableness of the fee requested here. In this Circuit, courts presiding over common fund

7   settlements routinely award 33% of the class recovery. *See, e.g.*, *Lidoderm*, 2018 WL 4620695, at *4

8   (awarding 33⅓% of $104,750,000 settlement and noting "a fee award of one-third is within the range

9   of awards in this Circuit"); Order & Final Judgment Approving Settlement at 4-5, *Brown v. Wal-Mart*

10  *Store, Inc.*, No. 09-cv-03339 (N.D. Cal. Mar. 28, 2019), ECF No. 302 (awarding 33% of $65 million

11  settlement); *Perez v. Rash Curtis & Assocs.*, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021)

12  (awarding 37% of $75.6 million settlement); *see also Beaver et al. v. Tarsadia Hotels*, 2017 WL

13  4310707, at *13, 17 (S.D. Cal. Sep. 28, 2017) (awarding 33% of $51.2 million settlement); Order at

14  2, *Ferris v. Wynn Resorts Ltd.*, No. 18-cv-00479 (D. Nev. Jan. 31, 2025), ECF No. 442 (awarding

15  33⅓% of $70 million settlement).

16          A 33% fee award is also consistent with awards in other circuits. *See, e.g.*, *Pearlstein v.*

17  *BlackBerry Ltd.*, 2022 WL 4554858, at *11 (S.D.N.Y. Sep. 29, 2022) (awarding 33% of $165 million

18  settlement); Order at 2, *Howard v. Arconic Inc.*, No. 17-cv-01057 (W.D. Pa. Aug. 9, 2023), ECF No.

19  253 (awarding 33⅓% of $74 million settlement); *Peace Officers' Annuity & Benefit Fund of Ga. v.*

20  *Davita, Inc.*, 2021 WL 2981970, at *2-3 (D. Colo. July 15, 2021) (awarding 33.33% of $135 million

21  settlement); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at *1, *4

22  (S.D.N.Y. Sep. 23, 2019) (awarding 33.33% of $75 million settlement); *Hale v. State Farm Mut. Auto*

23  *Ins. Co.*, 2018 WL 6606079, at *16 (S.D. Ill. Dec. 16, 2018) (awarding 33.33% of $250 million

24  settlement); *Cabot East Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *8 (S.D. Fla. Nov. 9, 2018)

25  & Pls.' Mot. for Att'ys Fees, Ex. 1, *Cabot East Broward 2 LLC v. Cabot*, No. 16-cv-61218 (S.D. Fla.

26  Aug. 10, 2018), ECF No. 295-1 (awarding 33.33% of $100 million settlement); *Erica P. John Fund,*

27  *Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12-13 (N.D. Tex. Apr. 25, 2018) (awarding 33.33%

28  of $100 million settlement); *Stdandard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *1-2 (N.D.

Ill. Oct. 22, 2014) (awarding 33% of $163.9 million settlement); *In re Neurontin Antitrust Litig.*, 2014 WL 12962880, at *5 (D.N.J. Aug. 6, 2014) (awarding 33.33% of $191 million settlement).

A 33% award is supported by awards made in other class action cases and is appropriate here, especially given the recovery obtained for the Settlement Class.

### D.  A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

As noted above, "[a]s a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Extreme Networks, Inc. Secs. Litig.*, 2019 WL 3290770, at *10 (N.D. Cal. July 22, 2019) (noting that "lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Under the lodestar method, courts routinely award positive multipliers to account for the contingent nature or risk involved in a case and the quality of the attorneys' work. *See Vizcaino*, 290 F.3d at 1051 (noting "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases").

### 1.  The Number of Hours Devoted to the Action Was Reasonable

As detailed in the Graden Declaration and supporting declarations, Class Counsel performed a significant amount of work in this Action. These efforts included: (i) conducting an extensive investigation into the alleged misconduct, working with experts to investigate and develop the claims, and conducting legal research into potential causes of action under various laws and statutes; (ii) preparing an initial complaint, two amended complaints, and one consolidated master complaint; (iii) submitting a motion for preliminary injunction resulting in Kaiser's removal of the offending code at issue in the Action from its website and mobile applications; (iv) opposing three motions to dismiss; (v) opposing three motions to compel arbitration; (vi) participating in extensive discovery, including the review of nearly 40,000 documents produced by Defendant; (vii) Plaintiffs' service and negotiation of subpoenas on nine third parties; (viii) multiple days of in-person review of highly confidential designated source-code material by experts; (ix) attending and arguing at six in-person discovery conferences before Magistrate Judge Peter H. Kang; and (x) engaging in protracted settlement negotiations, including mediations before two separate, highly experienced and respected retired federal judges who served as JAMS mediators. ¶ 9. In total, through September 30, 2025,

Class Counsel devoted over 19,000 hours of attorney and other professional support staff time to the Action for the benefit of the Settlement Class. ¶ 14.[4] Class Counsel's total lodestar, derived by multiplying the hours each attorney and professional support staff employee spent on the Action by their current hourly rates, is $11,985,717. *See id.*[5]

## 2. Class Counsel's Hourly Rates Are Reasonable

A reasonable hourly rate is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Fowler v. Wells Fargo Bank, N.A.*, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019). The hourly rates utilized by Class Counsel in calculating their lodestar range from: (i) $805 to $1,300 per hour for partners; (ii) $370 to $900 per hour for other attorneys; (iii) $300 to $400 per hour for in-house investigators; and (iv) $225 to $405 per hour for paralegals. ¶ 86 n.12.[6] These hourly rates are within the range of reasonable rates for attorneys and professional support staff working on sophisticated class action litigation in this District. *See, e.g.*, *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving rates of up to $1,195 for partners and $850 for associates); *In re Facebook Internet Tracking Litig.*, 2022 WL 16902426, at *12 (N.D. Cal. Nov. 10, 2022) (finding rates up to $1,200 "reasonable and commensurate with those charged by attorneys with similar experience in the market"); *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding rates of $760 to $1,325 for partners to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales*

---

[4] Since September 30, 2025, Class Counsel have spent additional time on the preliminary approval process and will continue to perform work on behalf of the Settlement Class overseeing the Settlement Administrator and the distribution of payments to eligible Settlement Class Members. Graden Decl. 82. No additional attorneys' fees will be sought for this work and this time is not included in Class Counsel's lodestar calculation.

[5] It is well-established and appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment and the loss of interest on the funds. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Fischel v. Equitable Life Assurance Society of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002); *White v. Experian Info. Solutions, Inc.*, 2018 WL 1989514, at *15 (C.D. Cal. Apr. 6, 2018) ("Courts in this Circuit regularly apply current billing rates in evaluating fee requests in multi-year litigation to account for the delay in payment."), *aff'd in part*, *rev'd in part sub nom.*, *Radcliffe v. Hernandez*, 794 F. App'x 605 (9th Cir. 2019).

[6] A breakdown of Class Counsel's lodestar by task category is attached as Exhibit 3 to the Graden Declaration and Exhibit 2 to the Cecchi Declaration.

*Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee using "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"). In addition, the rates of Class Counsel have been approved by numerous courts throughout the country, including in this district. *See, e.g.*, *Cabrera v. Google LLC*, 2025 WL 2494429, at *9 (N.D. Cal. Aug. 29, 2025); Order Awarding Att'ys Fees & Litig. Expenses, *Sjunde AP-Fonden v. Gen. Elec. Co.*, No. 17-cv-8457 (S.D.N.Y. Apr. 24, 2025), ECF No. 500; Order & Judgment Granting Final Approval of Class Action Settlement & Awarding Att'ys Fees, Expenses, & Service Awards to Class Representatives, *In re Am. Fin. Res., Inc. Data Breach Litig.*, No. 22-cv-1757 (D.N.J. Oct. 3, 2024), ECF No. 81.

### 3.    The Multiplier Is Justified Given the Results Obtained and the Contingent Nature of the Representation

Under the lodestar method, courts routinely award positive multipliers to account for the contingent nature or risk involved in a case and the quality of the attorneys' work. *See Destefano*, 2016 WL 537946, at *18 ("Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented."); *Vizcaino*, 290 F.3d at 1051 (noting "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases").

Based on their collective hours and hourly rates, Class Counsel's total lodestar amounts to $11,985,717. ¶ 87. Accordingly, the requested fee of 33% of the Settlement Fund, which equates to $15,180,000 (or, $15,675,000 if the Settlement Amount increases to $47.5 million), represents a multiplier of approximately 1.3 on Class Counsel's lodestar. *Id.* Such a multiplier is well within the range of multipliers regularly approved by courts in this Circuit. *See Vizcaino*, 290 F.3d at 1043, 1050 (noting "most" multipliers are in the range of 1 to 4, but citing numerous examples of higher multipliers); *Volkswagen*, 2017 WL 1047834, at *5 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Destefano*, 2016 WL 537946, at *21 (approved 1.7 multiplier was "towards the lower end of the Ninth Circuit's scale"); Mot. for Att'ys Fees, *Ferris v. Wynn Resorts Ltd.*, No. 18-cv-00479 (D. Nev. Dec. 23, 2024), ECF. No. 438

1
2
3
4
5
6

(awarding 33⅓% of $70 million settlement, representing 1.98 multiplier); *In re Facebook Internet Tracking*, 2022 WL 16902426, *aff'd sub nom. In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985 (9th Cir. Feb. 21, 2024) (awarding 29% of $90 million settlement, representing 3.28 multiplier); *Perez*, 2021 WL 4503314, at *5 (awarding 37% of $75.6 million settlement, representing 4.8 multiplier); *Tarsadia Hotels*, 2017 WL 4310707, at *13, *17 (awarding 33% of $51.2 million settlement, representing 2.89 multiplier).

7
8
9
10

Here, given the extensive effort required to prosecute this Action, the risks and complexity of the issues litigated, and the excellent result obtained for the Settlement Class through the Settlement (as well as the non-monetary relief obtained during the litigation), the lodestar cross-check and resulting multiplier are more than reasonable, fully justified, and should be approved.

11

## II.     CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

12
13
14
15
16
17
18
19
20
21

Class Counsel also request payment of $605,103.06 from the Settlement Fund for expenses reasonably incurred in prosecuting the Action. These expenses are properly recovered by counsel. *See Fleming*, 2022 WL 2789496, at *9 ("Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation costs from that fund."); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel may recover "those out-of-pocket expenses that would normally be charged to a fee-paying client"); *Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) (granting requests for costs consisting of "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation charges, and travel costs"). A breakdown of Class Counsel's litigation expenses by category is set forth in Exhibit 10 to the Graden Declaration.[7]

22
23
24
25
26
27

The expenses sought by Class Counsel are of the type that are charged to hourly paying clients and were required to prosecute the litigation. These expense items were incurred separately by counsel, and such charges are not duplicated in the firms' hourly rates. From the beginning of the Action, Class Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Class Counsel also

28

---

[7] These expenses are also set forth in the individual firm declarations attached as Exhibit 8 to the Graden Declaration and Cecchi Declaration Exhibit 3.

understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate them for the lost use of the funds advanced to prosecute this Action. Thus, Class Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. ¶¶ 97-98.

As discussed in the Graden Declaration, a the largest component of Class Counsel's expenses (i.e., $234,129.17, or approximately 39% of total expenses) was the cost of Plaintiffs' experts and consultants, including Dr. Ross Malaga who worked with Plaintiffs to identify the Third-Party Wiretapper's code transmitted from their devices during the investigation stage of the litigation and who also prepared an expert report submitted in support of Plaintiffs' Motion for a Preliminary Injunction, among others. ¶ 20. Class Counsel worked extensively with these experts and their retention and work was critical to the prosecution and resolution of the Action, as their expertise allowed Class Counsel to fully frame the issues and make a realistic assessment of their claims. ¶¶ 9, 20, 22, 28, 40, 76.

Class Counsel also incurred expenses (i.e., $119,427.28, or approximately 20% of total expenses) for travel. ¶ 102(e). Over the course of this Action, Class Counsel incurred out-of-town travel-related expenses (e.g., transportation, lodging, and meals) in connection with attendance at monthly status conferences and Court hearings and mediations. *Id.* Notably, Judge Kang held multiple, monthly discovery conferences which required Class Counsel located in Pennsylvania and New Jersey to frequently travel across the country to attend in-person conferences in San Francisco. ¶ 9. Another large component of Class Counsel's expenses ($88,760.14) reflects the costs of online legal and factual research, which was necessary to, among other things, conduct Plaintiffs' factual investigation, prepare the four detailed complaints, research the law pertaining to the claims asserted in the Action, oppose three motions to dismiss and three motions to compel arbitration, prepare Plaintiffs' motion for preliminary injunction, and brief/argue multiple discovery disputes. ¶ 102(c). Class Counsel also incurred $109,169.02 for an outside vendor to host the document database that enabled Class Counsel to effectively and efficiently search and review the over 40,000 documents produced by Kaiser. ¶ 102(h)-(i). The ability to code, search, and pull relevant documents was of the utmost importance to the development of the record of evidence in this Action.

In addition to the foregoing expenses, counsel also incurred: (i) $39,470.26 for Plaintiffs' share of the charges related to the private mediation with Hon. Wayne R. Anderson (ret.) and Hon. Jay C. Gandhi (ret.); (ii) $5,935.42 for copying/printing; and (iii) $1,675.25 for court reporters and transcripts in connection with the numerous status conferences/hearings in the Action. ¶¶ 102(d), (f), (k); *see also* Exs. 9 & 10. The other expenses for which Class Counsel seek payment are the types of expenses necessarily incurred in litigation and routinely charged to clients billed by the hour, including, among others, court fees, process servers, and delivery expenses. ¶ 102(a), (b), (j).

The notices to be disseminated in January 2026 inform recipients that Class Counsel intend to seek litigation expenses in an amount not to exceed $900,000. ¶ 63. The total amount of expenses requested is below the maximum expense amount set forth in the notices.[8] As such, Class Counsel's expenses are reasonable and should be approved.

## III.    THE REQUESTED SERVICE AWARDS ARE WARRANTED AND SHOULD BE APPROVED

Finally, Class Counsel request that the Court approve $5,000 Service Awards to each of the eight Plaintiffs, for an aggregate amount of $40,000. The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted." *Apple*, 50 F.4th at 785-87. Indeed, "[s]ervice awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities and risks of representing the class and recognize the time and effort spent in the case." *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *14 (N.D. Cal. June 5, 2017). In determining the amount of a service award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . and the amount of time and effort the plaintiff expended in pursuing the litigation." *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *8 (N.D. Cal. May 11, 2018). Moreover, a $5,000 award is "presumptively reasonable . . . in this district." *Mobile Emergency Hous. Corp. v. HP Inc.*, 2025 WL 844412, at *2 (N.D. Cal. Mar. 18, 2025).

Here, Plaintiffs were willing to step forward to represent and protect the interests of the Settlement Class—despite the risk that their PHI would become public at or before trial. Over the

---

[8] Any objections to the expense request will be addressed in Class Counsel's April 2, 2026 reply.

course of the Action, Plaintiffs: (i) participated in and assisted counsel in their investigation of their claims, including allowing Class Counsel's expert to conduct searches of their computers and mobile devices in order to obtain specific information about the personal and confidential information Kaiser was improperly sharing with third parties; (ii) received frequent communications from counsel on the status of the litigation and court rulings and orders; (iii) discussed strategic decisions and various legal rulings with counsel; (iv) reviewed significant Court submissions and other case documents, including the four detailed complaints and motions to dismiss; and (v) actively participated in discovery, including responding to discovery requests, which among other things, required the collection of highly sensitive data from third parties. Plaintiffs also communicated with counsel regarding the possible resolution of the Action at various times during the case and reviewed relevant settlement documents. *See* Graden Decl., Exs. 1A-1H. In their supporting declarations, each Plaintiff provides an estimate of the hours they spent on the Action (at the expense of other activities). *Id.* Plaintiffs were fully committed to hold Kaiser accountable for its alleged unlawful conduct and, because of these efforts, Settlement Class Members may be able to recover monetarily.

For the foregoing reasons, Service Awards of $5,000 are reasonable here, and Ninth Circuit courts regularly approve similarly-sized (and larger) service awards in cases where class representatives participated in ways comparable to Plaintiffs' efforts here. *See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) ("Awards of $20,000 each" for assisting in litigation, preparing for and having their depositions taken, searching for and producing documents spanning many years, and conferring with counsel throughout the litigation are justified and "consistent with service awards in other cases."); *see also* Order, *Siqueiros v. Gen. Motors LLC*, No. 16-cv-07244 (N.D. Cal. Oct. 8, 2025), ECF No. 735 (Chen, J.) (awarding $30,000 service awards to three plaintiffs); *Mobile Emergency Hous. Corp.*, 2025 WL 844412, at *2 (awarding $5,000 service awards to three plaintiffs). Moreover, if approved by the Court, the service awards, totaling $40,000, would constitute a mere 0.0009% of the Settlement Amount and will have a minimal impact on the amount of Settlement proceeds available for distribution to Settlement Class Members. *See Online DVD-Rental*, 779 F.3d at 947-48 (approving service awards in part because they amounted to 0.17% of

settlement amount); *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (approving service awards amounting to 0.36% of settlement amount). Accordingly, the Service Awards requested are reasonable and justified and should be granted.[9]

## IV.    CONCLUSION

For the reasons stated herein and in the Graden Declaration, Class Counsel respectfully request the Court award attorneys' fees in the amount of 33% of the Settlement Fund, approve payment of Class Counsel's litigation expenses in the amount of $605,103.06, and approve service awards to Plaintiffs in the amount of $5,000 each, for an aggregate amount of $40,000.


Dated: December 22, 2025

Respectfully submitted,

**KESSLER TOPAZ**
**  MELTZER & CHECK, LLP**

*/s/ Tyler S. Graden*
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

-and-

**KESSLER TOPAZ**
**  MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com

---

[9] The notices to be disseminated to Settlement Class Members (beginning in January 2026) will advise that Plaintiffs may seek Service Awards in an aggregate amount not to exceed $40,000. Any objections to this request will be addressed in Class Counsel's April 2, 2026 reply submission.

5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

*Class Counsel*

**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey, Cal Bar No. 125961
bobmackeyesq@aol.com
16320 Murphy Road
Sonora, CA 95370
Telephone: (412) 370-9110

-and-

**MIGLIACCIO & RATHOD LLP**
Jason S. Rathod
jrathod@classlawdc.com
412 H Street NE, no. 302
Washington, DC, 20002
Telephone: (202) 470-3520

*Additional Counsel for Plaintiff Alexis Sutter*