**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, PC**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,<br><br>Defendants. | Case No. 3:23-cv-02865-EMC<br><br>**DECLARATION OF TYLER S. GRADEN IN SUPPORT OF (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS**<br><br>Judge: Hon. Edward M. Chen<br>Date: May 7, 2026<br>Time: 1:30 p.m.<br>Court: 5<br><br>CMC Filed: December 6, 2024<br>Trial Date: January 25, 2027 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION .......................................................................................... 2

II.    BACKGROUND OF THE ACTION ............................................................. 5

       A.     Factual and Procedural Background ................................................. 5

       B.     The Parties' Settlement .................................................................. 13

III.   RISKS OF CONTINUED LITIGATION ................................................... 15

IV.    NEXT STEPS AND PLAINTIFFS' COMPLIANCE WITH THE COURT'S
       PRELIMINARY APPROVAL ORDER ...................................................... 18

V.     THE PROPOSED PLAN FOR ALLOCATING THE NET SETTLEMENT
       FUND TO SETTLEMENT CLASS MEMBERS .......................................... 19

VI.    THE FEE AND EXPENSE APPLICATION .............................................. 20

       A.     The Fee Application........................................................................ 21

              1.     The Favorable Results Achieved ............................................. 21

              2.     The Work Performed by Class Counsel.................................... 22

              3.     The Experience and Standing of Class Counsel ...................... 26

              4.     The Standing and Caliber of Defendant's Counsel.................. 27

              5.     The Risks of Litigation and the Need to Ensure the Availability of
                     Competent Counsel in High-Risk Contingent Cases ................ 27

              6.     The Reaction of Settlement Class Members to the Fee Application ........ 28

       B.     The Expense Application ............................................................... 28

              1.     Class Counsel's Request for Litigation Expenses Is Fair and
                     Reasonable and Warrants Approval.......................................... 28

              2.     Service Awards to Plaintiffs Are Fair and Reasonable............. 31

VII.   CONCLUSION........................................................................................... 31

**TABLE OF EXHIBITS**

| Exhibit 1 A | Declaration of John Doe in Support of (I) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards |
|---|---|
| Exhibit 1 B | Declaration of John Doe II in Support of (I) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards |
| Exhibit 1 C | Declaration of Jane Doe in Support of (I) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards |
| Exhibit 1 D | Declaration of Jane Doe II in Support of (I) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards |
| Exhibit 1 E | Declaration of Jane Doe III in Support of (I) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards |
| Exhibit 1 F | Declaration of Jane Doe IV in Support of (I) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards |
| Exhibit 1 G | Declaration of Jane Doe V in Support of (I) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards |
| Exhibit 1 H | Declaration of Alexis Sutter in Support of (I) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Awards |
| Exhibit 2 | KTMC Time Report |
| Exhibit 3 | KTMC Task-Based Lodestar Report |
| Exhibit 4 | Declaration of James E. Cecchi on Behalf of Carella Byrne Cecchi Brody & Agnello, P.C. in Support of Class Counsel's Motion for Attorneys' Fees and Litigation Expenses |
| Exhibit 5 | Summary of Class Counsel's Lodestar and Litigation Expenses |

| **Exhibit 6** | Breakdown of Class Counsel's Hours by Task Category |
|---|---|
| **Exhibit 7** | KTMC Firm Resume |
| **Exhibit 8** | KTMC Expense Report |
| **Exhibit 9** | Litigation Fund Contributions and Expenses |
| **Exhibit 10** | Breakdown of Counsel's Litigation Expenses by Category |

I, Tyler S. Graden, hereby declare as follows:

1.      I, Tyler S. Graden, am a partner at the law firm of Kessler Topaz Meltzer & Check, LLP ("KTMC"). KTMC, together with Carella Byrne Cecchi Brody & Agnello, PC ("Carella Byrne"), serve as counsel for Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V, and Alexis Sutter (collectively, "Plaintiffs" or "Settlement Class Representatives") and the proposed Settlement Class ("Settlement Class" or "Class") in the above-captioned matter ("Action"). I have personal knowledge of the matters set forth herein, based on my active supervision of and participation in the prosecution and resolution of the Action. If called upon to do so, I could and would testify competently thereto.

2.      I submit this Declaration in support of Plaintiffs' Motion pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rules") for final approval of the proposed Settlement with Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser" or "Defendant" and, together with Plaintiffs, the "Parties"). If approved, the Settlement will resolve all claims asserted against Defendant and certain related entities for a common-fund recovery of $46 million (with the possibility of an increase to $47.5 million).

3.      This Settlement amount is in addition to the substantial non-monetary relief that Class Counsel already achieved during the litigation, namely succeeding in having Kaiser remove the offending internet technologies that were embedded in the Kaiser website ("Website") and mobile applications ("Apps") and change its privacy notification practices. The Court preliminarily approved the Settlement and directed notice thereof to the Settlement Class by Order dated December 5, 2025 (ECF No. 393) ("Preliminary Approval Order").[1]

4.      I also respectfully submit this Declaration in support of: (i) the proposed plan for allocating the net proceeds of the Settlement to eligible Settlement Class Members ("Plan of Allocation" or "Plan"); and (ii) Class Counsel's Motion for an award of attorneys' fees in the amount of 33% of the Settlement Fund, payment of Class Counsel's litigation expenses in the total

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings provided in the Amended Stipulation of Settlement dated December 1, 2025 (ECF Nos. 390-1; 392-2) ("Stipulation" or "Stip.").

amount of $605,103.06, and Service Awards to Plaintiffs in the aggregate amount of $40,000 ($5,000 for each of the eight (8) Settlement Class Representatives) as compensation for Plaintiffs' service on behalf of the Settlement Class as well as the risks associated with their involvement in the Action ("Fee and Expense Application").

5.       For the reasons discussed below and in the accompanying memoranda,[2] I, on behalf of Class Counsel, respectfully submit that: (i) the terms of the Settlement are fair, reasonable, and adequate in all respects and should be approved by the Court; (ii) the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved by the Court; and (iii) the Fee and Expense Application is fair, reasonable, supported by the facts and the law, and should be granted in full. The Settlement, Plan of Allocation, and Fee and Expense Application have the full support of Plaintiffs. *See* Exs. 1A through 1H hereto.

## I.       INTRODUCTION

6.       The proposed Settlement before the Court provides for the resolution of all claims in the Action in exchange for a cash payment of $46 million, which may increase up to $47.5 million if certain conditions are met, for the benefit of the Settlement Class. This is in addition to the substantial non-monetary recovery already obtained, namely the removal of the offending internet technologies embedded in the Website and Apps at the heart of this litigation and changes to Kaiser's privacy notification practices. As detailed herein, the Settlement provides a significant benefit to the Settlement Class by conferring a substantial, certain, and near-term monetary recovery—and serving as a substantial deterrent against Kaiser and other healthcare providers repeating similar conduct in the future—while avoiding the risks of continued litigation, including that Settlement Class Members could recover less than the Settlement Amount or nothing at all.

7.       Privacy breach cases such as this are among the riskier and more uncertain areas of class action litigation, as the case law addressing these cases remains relatively undeveloped. As

---

[2] In conjunction with this Declaration, Plaintiffs and Class Counsel are submitting: (i) Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation, and Memorandum of Points and Authorities in Support Thereof ("Settlement Memorandum"); and (ii) Class Counsel's Motion for Attorneys' Fees, Litigation Expense and Service Awards, and Memorandum of Points and Authorities in Support Thereof ("Fee and Expense Memorandum").

this Court recognized in its October 24, 2025 Order in connection with preliminary approval: "The risk of continuing litigation is significant." Order re Pls.' Mot. for Preliminary Approval, at 3, ECF No. 384 ("October 24 Order").

8.      Indeed, in its first Motion to Dismiss Order, this Court dismissed seventeen (17) of twenty-one (21) counts brought in the First Amended Complaint. *See* ECF No. 124. After this initial dismissal, Plaintiffs re-pled many of these claims, including additional factual support, as part of their Consolidated Master Class Action Complaint ("CMCAC"). However, the risk of dismissal remained and had Kaiser prevailed on these challenges (or others), the Settlement Class's recovery would have been significantly reduced or eliminated.

9.      The Settlement is the result of extensive efforts by Plaintiffs and Class Counsel over the course of two years. These efforts included: (i) conducting an extensive investigation into the alleged misconduct, working with experts to investigate and develop the claims, and conducting legal research into potential causes of action under various laws and statutes; (ii) preparing an initial complaint, two amended complaints, and one consolidated master complaint; (iii) submitting a motion for preliminary injunction resulting in Kaiser's removal of the offending code at issue in the Action from its Website and Apps; (iv) opposing three motions to dismiss; (v) opposing three motions to compel arbitration; (vi) participating in extensive discovery, including the review of nearly 40,000 documents produced by Defendant; (vii) Plaintiffs' service and negotiation of subpoenas on nine third parties; (viii) multiple days of in-person review of highly confidential designated source-code material by experts; (ix) attending and arguing at six in-person discovery conferences before Magistrate Judge Peter H. Kang[3]; and (x) engaging in protracted settlement negotiations, including mediations before two separate, highly experienced and respected retired federal judges who served as JAMS mediators.

---

[3] The Discovery Management Conferences were held on July 18, 2024 (ECF No. 213), October 18, 2024 (ECF No. 242), November 15, 2024 (ECF No. 263), December 17, 2024 (ECF No. 276), January 24, 2025 (ECF No. 296), and March 13, 2025 (ECF No. 322).

1      10.     Due to these efforts (and others), Plaintiffs and Class Counsel were well-informed

2  of the strengths and weaknesses of the claims against Kaiser at the time they achieved the

3  Settlement, and believe that the Settlement is in the best interests of the Settlement Class.

4      11.     As described in their declarations submitted herewith, Plaintiffs also actively

5  participated in the Action and supervised the work of Class Counsel, and they strongly endorse final

6  approval of the Settlement and Class Counsel's fees and expenses. *See* Exs. 1A through 1H hereto.

7      12.     As further detailed below, the proposed plan for allocating the Net Settlement Fund

8  provides for the equitable distribution of the Net Settlement Fund to Settlement Class Members

9  who submit valid claims on a *pro rata* basis.

10      13.     For two years, Class Counsel worked diligently in prosecuting this Action on a fully

11  contingent basis and advanced all litigation-related expenses, and thus exclusively bore the risk of

12  an unfavorable result. For their efforts in achieving the Settlement, Class Counsel respectfully

13  request attorneys' fees in the amount of 33% of the Settlement Fund and payment of the reasonable

14  litigation expenses incurred in connection with the institution, prosecution, and settlement of the

15  Action on behalf of the Settlement Class.

16      14.     As discussed in the Fee and Expense Memorandum, a 33% fee award is merited here

17  and is in line with fee awards in other cases in this Circuit which similarly resulted in substantial

18  recoveries for class members following contentious litigation. Moreover, the present fee request

19  will result in a fee that is approximately 1.3 times Class Counsel's total lodestar as of September

20  30, 2025—i.e., $11.9 million which is based on over 19,000 hours of attorney and professional

21  support staff time at their current billing rates. Class Counsel respectfully submit that the requested

22  33% fee is fair and reasonable in light of Class Counsel's extensive efforts, the result achieved in

23  the Action, and the risks and complexity of the litigation.

24      15.     Class Counsel also respectfully submit that the expenses incurred in litigating this

25  Action ($605,103.06) were expended for the benefit of the Settlement Class and warrant the Court's

26  approval. In addition, Plaintiffs' request for Service Awards in the aggregate amount of $40,000

27  (i.e., $5,000 each) also warrants approval.

28

16.    Class Counsel are proud of the achievements embodied by this Settlement and respectfully submit that the Court should grant final approval of the Settlement, approve the Plan of Allocation, and grant Class Counsel's request for fees, expense reimbursement, and service awards.

## II.    BACKGROUND OF THE ACTION

### A.    Factual and Procedural Background

17.    Plaintiffs are members of Kaiser's health plans who used Kaiser's Websites and Apps for various healthcare-related functions. *See* CMCAC ¶¶ 1-2, 24-69, ECF No. 271. Plaintiffs allege that they reasonably expected that their communications and interactions on the Websites and Apps would not be shared with a third-party, but Kaiser disclosed sensitive personal and confidential patient communication and information to third parties, such as Quantum Metric, Twitter, Adobe, Microsoft Bing, and Google (collectively, "Third-Party Wiretappers")— unbeknownst to Plaintiffs and other Kaiser members. *Id.* ¶¶ 3, 23.

18.    Specifically, Plaintiffs allege that Kaiser installed third-party code that allowed the Third-Party Wiretappers to intercept the content of patients' communications with Kaiser in real-time as users "access[ed] specific medical information, click[ed] buttons that divulge[d] sensitive and protected patient status, and personal and health information, and enter[ed] information into various fields on Kaiser's [Websites] or [Apps]." *Id.* ¶ 6. Plaintiffs further alleged that Kaiser embedded the third-party code on its Websites and Apps even though it knew that the code would disclose and permit Third-Party Wiretappers to intercept and collect user information. The intercepted information included medical histories, prescriptions and test results, appointment schedules, online medical evaluations, symptoms searches, messages to insurance providers, healthcare-related bills and payments, and information associated with other tasks performed while on the Websites and Apps. *Id.*

19.    Plaintiffs filed their initial Complaint in the Action on June 9, 2023 (*see* ECF No. 1), followed by the First Amended Class Action Complaint ("FAC") on September 15, 2023 (*see*

ECF No. 44), which included plaintiffs from additional states and claims under additional state laws.[4]

20.     Prior to filing these complaints, Class Counsel worked with one of their expert, Ross Malaga, Ph.D., who was able to identify and capture the transmission of highly sensitive, Personally Identifiable Information ("PII"), including Protected Health Information ("PHI"), via Third-Party Wiretappers' code when Plaintiffs communicated with their Kaiser healthcare providers through the Website and Apps. This information was specifically detailed in the FAC and later served as the basis for Dr. Malaga's declaration in support of Plaintiffs' motion for preliminary injunction.

21.     After filing the Complaint, Class Counsel immediately began seeking discovery. On August 9, 2023, Plaintiffs served Kaiser with Notices of Plaintiffs' subpoenas issued to Adobe, Inc., Alphabet, Inc., Microsoft Inc., and X Holdings Corp. (f/k/a Twitter, Inc.), all of which Plaintiffs identified as Third-Party Wiretappers in Plaintiffs' initial Complaint and the. later filed FAC. Kaiser also immediately began pushing back, with the Parties filing a joint discovery letter on September 28, 2023, with Kaiser seeking a Protective Order and asking the Court to quash the subpoena. *See* ECF No. 55. After the dispute was referred to Magistrate Judge Kang, on December 17, 2023, the Court rejected Kaiser's efforts. *See* ECF No. 102. On October 6, 2023, Plaintiffs also served Kaiser with a First Request for Production of Documents, which led to months of meet-and-confers and letter briefing on discovery disputes before Judge Kang. *See* ECF No. 128.

22.     On October 4, 2023, Plaintiffs also filed a Motion for Preliminary Injunction, requesting Kaiser's removal of the offending code from its Websites and Apps. ECF No. 58. In connection with this Motion, Plaintiffs submitted a detailed declaration prepared by their expert, Ross Malaga, who explained not just the way the offending technology worked, but also provided specific examples of how Plaintiffs' PHI had been compromised and sent to the Third-Party Wiretappers through code embedded on the Website and Apps. *See* ECF No. 60.

---

[4] These Complaints included Defendants: Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Group, Inc.

23.    In response to Plaintiffs' Motion for Preliminary Injunction, Kaiser argued that an injunction was not necessary because Kaiser had removed the third-party code trackers at the heart of Plaintiffs' claims and implemented banners to provide more fulsome disclosure of Kaiser's privacy policy. Specifically, Kaiser submitted the Declaration of Bill D. Vourthis who explained that, as of November 8, 2023, five months after Plaintiffs filed suit and one month after Plaintiffs moved for a preliminary injunction, Kaiser disabled, deleted, or modified the internet technologies provided by Adobe, Bing, Google, Twitter, and Quantum Metric that are at the heart of Plaintiffs' claims from its website. ECF No. 96 ¶ 3. Mr. Vourthis further explained that Kaiser had also disabled, deleted, or modified those same internet technologies from its Apps by releasing new versions of the Apps on October 31, November 1, and November 10, 2023. *Id*. ¶¶ 5-6. All users were then required to implement and update to the latest version of the Apps by November 10, 2023, or November 13, 2023 for users of the Kaiser Permanente Washington App. *Id.* As of September 14, 2024, Kaiser also completed its migration of Dynatrace technology to the on-premises deployment model offered by Dynatrace, such that all Website and App visitor data was then collected and stored solely on Kaiser's on-premises server. *Id*. ¶ 9.

24.    Moreover, after Plaintiffs brought this lawsuit and moved for a preliminary injunction, Kaiser also implemented a consent banner on the Website. As described in the Vourthis Declaration:

> KFHP has also implemented a consent banner on the pages of the Website which informs Website visitors that: Kaiser Permanente uses web tracking technologies on this site and may share such data with its third parties to enhance your experience and optimize our ability to make users aware of our services. By navigating the site, you agree to the use of these web technologies as described in our Privacy Statement." Attached as Exhibit 1 is a print out of the Site homepage showing the banner that is now in place. The banner will remain until the Website visitor either clicks on the "X" to manually close the banner or clicks on the link to the Privacy Statement. A user cannot navigate to any of the Site's pages until the user clicks the "X" or views the Privacy Statement.

*Id.* ¶ 10. While Plaintiffs maintain that such banners alone would not have been sufficient to alert Kaiser Permanente members as to the pre-November 2023 conduct at issue, with the offending technology removed from the Website and Apps as of November 2023, Plaintiffs believe that the

implementation of this banner provided Kaiser Permanente members with meaningful information about Kaiser's post-November 2023 conduct.

25.     Kaiser similarly implemented two permanent banners on the new versions of the Apps that were released in early November 2023. As described in the Vourthis Declaration:

> When a user opens the new version of the Kaiser Permanente App, a permanent banner is displayed at the top of the log-in page. This banner is permanent, meaning it stays on the log-in page. This banner informs users that: "Kaiser Permanente uses tracking technologies in this application and may share data with its third parties. By using this application, you agree to the use of these technologies as described in our Privacy Statement." A second permanent banner is on the home page of the App and contains the same wording.

*Id.* ¶ 11. The same banner notifications were implemented for Kaiser Permanente members in Washington. *Id.* ¶ 12. Accordingly, having achieved the relief they sought through their Motion for a Preliminary Injunction, Plaintiffs withdrew their Motion. *See* ECF Nos. 95, 101.

26.     On October 17, 2023, the Court held the Initial Case Management Conference. ECF No. 77. In the Joint Case Management Statement (ECF No. 68), Kaiser argued that discovery should be stayed until a decision on Kaiser's forthcoming Motions to Dismiss and Motions to Compel Arbitration. *See* ECF No. 68 at 9. The Court declined to stay discovery, and allowed discovery necessary for class certification, calculation of damages, and settlement to proceed. The Court also rejected any bifurcation between class discovery and merits discovery.

27.     Shortly after the Initial Case Management Conference, on November 14, 2023, Kaiser then filed a Motion to Compel Arbitration of Plaintiff John Doe's claims and a Motion to Dismiss the FAC. ECF Nos. 82, 88. Plaintiffs opposed these Motions on January 15, 2024 (ECF Nos. 108, 109) and Kaiser filed replies on February 14, 2024 (ECF Nos. 110, 112). Oral argument was held on March 14, 2024. ECF No. 117.

28.     While Kaiser's Motions to Dismiss and Compel Arbitration remained *sub judice*, Plaintiffs continued moving discovery forward. The Parties negotiated, and briefed issues relating to, unique issues related to the contents of the Protective Order such as the handling of highly confidential source code, which were ultimately resolved by Judge Kang. *See* ECF No. 100. On December 29, 2023, Plaintiffs also served their First Set of Interrogatories on Kaiser. Class Counsel

also engaged in numerous meet-and-confers with Kaiser's counsel, attempting to reach agreement on the types of documents that would or would not be produced pursuant to this Court's guidance at the Case Management Conference. During this period, Class Counsel also continued working with their experts, including Ross Malaga and other consulting experts, regarding the operation of the Third-Party Wiretapper's code. Between December 2023 and April 1, 2024, Kaiser made nine (9) separate document productions.

29.     In February 2024, Kaiser also served its First Set of Requests for Production of Documents on Plaintiffs, to which Plaintiffs responded in March 2024.

30.     On March 26, 2024, the Court granted Kaiser's Motion to Compel Arbitration of Plaintiff John Doe's claims (ECF No. 119) and on April 11, 2024, the Court denied and granted in part Kaiser's Motion to Dismiss the FAC (ECF No. 124). More specifically, the Court dismissed without prejudice federal and state statutory privacy claims, including claims brought under the California data privacy statutes. *Id.* The Court's orders were largely without prejudice.

31.     On April 12, 2024, ***one day*** after the Court issued its opinion on Kaiser's Motion to Dismiss the FAC, Kaiser began notifying regulators that it had shared patients' PII and PHI, including, *inter alia*, IP address, name, member status, symptom searches, and information showing how the member interacted with and navigated through the Website or Apps. *See* ECF No. 127. In these notices, Kaiser further admitted:

> [O]n October 25, 2023, Kaiser confirmed that certain third-party online technologies previously installed on some portions of its website and mobile application were configured to transmit limited information about Kaiser members and patients to the vendor-developer as part of the technology's standard functionality. These online technologies (sometimes called "cookies" or "pixels") were provided by Google, Microsoft Bing, and Twitter, third-party vendors engaged by Kaiser to support the performance and use of the Kaiser website and mobile application.

*Id.* As Kaiser's counsel subsequently acknowledged during a discovery hearing: "**This litigation was part and parcel of what spurred the investigation into those technologies**." Disc. Hr'g Tr. at 53:25-54:1 (July 18, 2024), ECF No. 217 (emphasis added).

32.     In addition to notifying regulators of the privacy breach, Kaiser proceeded to issue individual notifications of the privacy breach to its members, which Class Counsel understand was

completed in May 2024. *See* ECF No. 374 at 1-2. As these notifications were disseminated, additional follow-on suits were filed in state and federal court and other firms were retained by Kaiser members subject to arbitration provisions.

33.     On May 9, 2024, Plaintiffs filed their Second Amended Class Action Complaint ("SAC"). ECF No. 131. On July 3, 2024, Kaiser filed a Motion to Compel Arbitration and a Motion to Dismiss the SAC. ECF Nos. 195, 205. Plaintiffs opposed these Motions on August 22, 2024. ECF Nos. 223, 226. Kaiser's Motion to Dismiss and Motion to Compel were mooted by the Court following the consolidation of two related cases—*Sutter v. Kaiser Foundation Health Plan, Inc.*, Case No. 24-cv-03352 and *Newton v. Kaiser Foundation Health Plan, Inc.*, Case No. 24-cv-03625—with the Action after an in-person hearing on August 27, 2024. *See* ECF Nos. 220, 233. *See also* ECF No. 222 (Joint Status Conference Statement).

34.     On June 7, 2024, KTMC and Carella Byrne moved for appointment as co-lead counsel pursuant to Federal Rule of Civil Procedure 23(g). ECF No. 167. Noting the *Sutter* and *Newton* plaintiffs' agreement with respect to the appointment of KTMC and Carella Byrne as co-lead counsel and in consideration of their efforts in litigating the Action, the Court appointed KTMC and Carella Byrne as Interim Co-Lead Class Counsel on August 27, 2024. *See* ECF No. 233.

35.     On December 6, 2024, Plaintiffs filed the operative CMCAC. ECF No. 271. The CMCAC asserted that Kaiser's disclosure of Kaiser members' protected information and communications violated their privacy and rights under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, HIPAA, and various state statutes. CMCAC ¶ 23. More specifically, Plaintiffs asserted claims under federal and state data privacy statutes, state consumer protection statutes, state data breach statutes, and the common law among others, repleading several claims that had previously been dismissed.

36.     In the meantime, with the Motions to Dismiss and Compel Arbitration decided, Class Counsel continued seeking discovery. On April 30, 2024, the Parties submitted a Joint Discovery Letter Brief regarding Kaiser's responses to Plaintiffs' First Request for Production of Documents. *See* ECF No. 128. On May 10, 2024, after having reviewed Kaiser's initial production and ensuing

events, Plaintiffs served Kaiser with a Second Request for Production of Documents. Kaiser also continued making rolling document productions, and supplemented its interrogatory responses, as the Parties' meet-and-confers continued. On June 27, 2024, the Parties submitted a second Joint Discovery Letter Brief, this time concerning Kaiser's responses to Plaintiffs' Second Request for Production of Documents. *See* ECF No. 185.

37.     Kaiser also continued seeking discovery from Plaintiffs, with the Parties filing a Joint Discovery Letter Brief re Plaintiffs' Reponses and Objections to Defendants' First Set of Requests for Production of Documents on June 26, 2024. ECF No. 183. On July 29, 2024, Kaiser also served a Second Set of Request for Production of Documents on Plaintiffs, and on August 8, 2024, Kaiser served demands for inspection of Plaintiffs' personal electronic devices.

38.     On June 28, 2024, Judge Kang entered an Order Resolving Discovery Dispute Letter Brief Dated April 30, 2024. ECF No. 188. Judge Kang also held an in-person discovery hearing on July 18, 2024 (ECF No. 169) and entered an Order regarding the dispute on July 23, 2024 (ECF No. 216). In light of the consolidation of the *Doe, Newton,* and *Sutter* actions, and the mediation planned for October 2024, the Parties requested that the Discovery Management Conference originally scheduled to be held before Judge Kang on September 24, 2024, be continued to a date after October 7, 2024. *See* ECF No. 234.

39.     After the Parties did not reach agreement at the October 2024 mediation, the Parties entered a period of intense discovery, with Judge Kang holding monthly, in-person discovery conferences. Throughout this period, the Parties were able to quickly bring disputes to Judge Kang's attention for resolution. These conferences also, in many cases, had the added benefit of helping the Parties reach agreement leading up to the conferences, without the need for judicial intervention. During this period:

- On October 11, 2024, the Parties filed a Discovery Management Statement detailing (1) the status of discovery; (2) the Parties' progress in meeting discovery deadlines (including deadlines set by Court order or directive); (3) discovery disputes which are ripe for (and for which the Parties request) resolution; (4) discovery issues on which the Parties are still meeting and conferring and do not presently require Court action; and (5) any other issues or obstacles to discovery the Parties have encountered which would risk impacting the overall discovery schedule. ECF No. 239.

- On October 16, 2024, the Parties filed a Joint Discovery Letter Brief re Kaiser's Response to Interrogatory No. 1 (ECF No. 240) and a Joint Discovery Letter Brief re Plaintiffs' Production of Records in Response to Defendant's Request for Production Nos. 16 and 18 (ECF No. 241).

- On October 18, 2024, the Parties attended an in-person discovery conference before Judge Kang. ECF No. 242.

- On October 30, 2024, Judge Kang issued Discovery Management Order No. 1. ECF No. 250.

- On November 6, 2024, the Parties filed a Joint Discovery Letter Brief Regarding Kaiser's Response to Interrogatory No. 4. ECF No. 257.

- On November 8, 2024, the Parties filed a Discovery Management Statement. ECF No. 258.

- On November 15, 2024, the Parties attended an in-person discovery conference before Judge Kang. ECF No. 263.

- On November 20, 2024, Judge Kang issued Discovery Management Order No. 2. ECF No. 267.

- On December 10, 2024, the Parties filed a Joint Discovery Letter Brief re Plaintiffs' Responses to Defendants' Requests for Production Nos. 11-12 and 23-30. ECF No. 272. On the same date, the Parties also filed a Discovery Management Statement. ECF No. 273.

- On December 17, 2024, the Parties attended an in-person discovery conference before Judge Kang. ECF No. 276.

- On January 17, 2025, the Parties filed a Joint Discovery Letter Brief Regarding Defendants' Privilege Logs. ECF No. 291. On the same date, the Parties also filed a Discovery Management Statement. ECF No. 292.

- On January 21, 2025, Judge Kang issued Discovery Management Order No. 3. ECF No. 293.

- On January 24, 2025, the Parties attended an in-person discovery conference before Judge Kang. ECF No. 296.

- On March 6, 2025, the Parties filed a Discovery Management Statement. ECF No. 318.

- On March 13, 2025, the Parties attended an in-person discovery conference before Judge Kang. ECF No. 322.

- On March 14, 2025, Judge Kang entered an Order resolving the Parties' dispute regarding Kaiser's privilege longs. ECF No. 325.

- On April 8, 2025, the Parties filed a Discovery Management Statement. ECF No. 332. Judge Kang subsequently reset the Discovery Management Conference, initially scheduled for April 29, 2025, for May 5, 2025. However, the May 5, 2025 Discovery Management Conference was subsequently adjourned after the parties agreed to attempt a second mediation. ECF Nos. 338, 339.

40.    Class Counsel also attended multiple days of in-person review of Kaiser's highly-confidential source code at Defendant's Counsel's offices in New York City led by two experts—Ross Malaga on November 8, 2024 and Christopher Wilson on March 10, 2025—during which both experts reviewed and analyzed hundreds of documents related to the implementation of third-party code on Kaiser's Websites and Apps. Specifically, they analyzed, among others, code contained within Kaiser's Adobe Launch files and an Android application package.

41.    As discovery progressed, Class Counsel also identified additional third-party advertising and marketing agencies with relevant information, which were subpoenaed in January 2025. Class Counsel also continued conferring with the Third-Party Wiretappers, who were subpoenaed at the outset of the litigation, serving amended subpoenas in January 2025.

42.    On January 28, 2025, Kaiser filed its third Motion to Compel Arbitration and Request to Stay and Motion to Dismiss the CMCAC. ECF Nos. 300, 301, 303, 304. Plaintiffs opposed these motions on March 4, 2025. ECF Nos. 313, 314, 315. On April 13, 2025, the Court granted Kaiser's Motion to Compel Arbitration and Request to Stay as to California Plaintiff John Doe. ECF No. 335. Oral argument on the Motion to Dismiss was taken off calendar following the Parties' Joint Notice of Preliminary Settlement. ECF No. 343.

### B.    The Parties' Settlement

43.    The proposed Settlement was reached only after extensive, arm's-length negotiations, including two mediations with retired federal judges. The first mediation before Hon. Wayne R. Andersen (Ret.) was held in October of 2024 over the course of two days. The Parties exchanged detailed mediation submissions and supporting evidence in advance of the mediation session.

44.    Following this mediation, litigation continued in earnest, and approximately seven months later, the second mediation before retired Hon. Jay C. Gandhi (Ret.) was held on May 13, 2025. This second mediation was hard fought. Both before and during the May 2025 mediation, the Parties exchanged information about the size of the class, the relief to which class members may be entitled if Plaintiffs prevailed at trial or on appeal, the benefits to be provided if a settlement was

reached, and the Parties' positions on the merits. The Parties ultimately reached an agreement in principle to resolve the Action at the mediation.

45. In the ensuing months, the Parties negotiated the full terms of the Settlement set forth in the Stipulation and related exhibits. The negotiations over the documents were extensive and resulted in the exchange of numerous drafts and many meet and confers.

46. During the same time, Class Counsel also requested and reviewed detailed bids obtained from several organizations specializing in class action notice and claims administration, and conducted follow-up communications with certain of these firms. As a result of this bidding process, Class Counsel selected Strategic Claims Services ("SCS") to serve as the Settlement Administrator for the Settlement.

47. On August 13, 2025, the Parties executed the Stipulation. ECF No. 345-4, Ex. 1. On August 19, 2025, Plaintiffs filed their Motion for Preliminary Approval of Proposed Class Action Settlement with the Court ("Preliminary Approval Motion"). ECF No. 345.

48. Following the filing of the Preliminary Approval Motion, two groups of Settlement Class members ("Objectors")[5] raised objections to their being included in the Settlement Class, among other issues (ECF Nos. 351, 352, 363) to which Plaintiffs and Kaiser responded (ECF Nos. 353, 355, 376). On October 3, 2025, the Court also ordered supplemental briefing on the Preliminary Approval Motion (ECF No. 362), to which Plaintiffs and Kaiser responded on October 10, 2025 (ECF Nos. 373, 374). As part of their response, the Parties responded to certain questions, and agreed to make certain modifications to the notices, as requested by the Court. *Id*. Certain Objectors also filed a response. ECF No. 375.

49. On October 23, 2025, the Court held an in-person hearing on Plaintiffs' Preliminary Approval Motion. Following the hearing, the Court entered its Order re Plaintiffs' Motion for Preliminary Approval concluding it was inclined to grant preliminary approval but advising the Parties that certain modifications to the class definition and the procedure for opting out should be

---

[5] One set of objectors are represented by Labaton Keller Sucharow LLP, Milberg Coleman Bryson Phillips Grossman, PLLC, and Bryson Harris Suchiu Demay, PLLC (together, "Labaton Objectors") and the other set of objectors are represented by Potter Handy, LLP ("Potter Objectors").

1   made. October 24 Order. The Court also scheduled a further hearing on the Preliminary Approval

2   Motion on November 25, 2025 at 1:30 p.m., and directed the Parties to confer with each other and

3   with the Objectors on opt-out procedures.

4          50.    In the following weeks, the Parties agreed to revised the Class Definition, lengthen

5   the opt-out period, institute a procedure so that the Settlement Administrator could receive large

6   groups of opt-outs, configure the Settlement Website to allow opt-outs and claims to be submitted

7   electronically through prepopulated online forms. *See* ECF No. 388. The Objectors did not agree

8   to the revised Class Definition, and also requested that they be directly provided with their clients'

9   Class Identification Numbers. *Id.*

10         51.    Following the November 25, 2025 hearing, the Parties agreed to additional

11  modifications to the Class Definition and to institute a procedure to provide Objectors' counsel with

12  their clients' Class Identification Numbers, as directed by the Court. ECF No. 390. On December 1,

13  2025, the Parties filed the Amended Stipulation of Settlement instituting these changes. *Id.* On

14  December 2, 2025, the Parties also agreed to revise certain language in the Appendices to the

15  Settlement Agreement, as requested by certain Objectors. ECF No. 392.

16         52.    The Court entered its Amended Order Preliminarily Approving Settlement and

17  Approving Notice of Proposed Settlement of Class Action and Fairness Hearing on December 5,

18  2025. Preliminary Approval Order. By the Preliminary Approval Order, the Court found that

19  preliminary approval of the Settlement was appropriate and that "it will likely be able to finally

20  approve the proposed Settlement under Rule 23(e)(2) as being fair, reasonable, and adequate to the

21  Settlement Class, subject to further consideration at the Fairness Hearing[.]" ECF No 393 ¶ 5. The

22  Court set the final hearing for May 7, 2026 at 1:30 p.m. *Id.* ¶ 23.

23  **III.    RISKS OF CONTINUED LITIGATION**

24         53.    In addition to the substantial, non-monetary relief already achieved, the Settlement

25  provides a certain and near-term benefit to the Settlement Class in the form of a $46 million (which

26  could increase up to $47.5 million) cash payment. Plaintiffs and Class Counsel believe that the

27  Settlement is a favorable result for the Settlement Class in light of the substantial risks that Plaintiffs

28

would face in continuing to litigate the Settlement Class's claims—through class certification, summary judgment, trial, and post-trial appeals.

54.     Although Plaintiffs and Class Counsel believe that the Settlement Class's claims are meritorious and that they would have prevailed had the Action continued, Kaiser raised various factual and legal defenses that could not be ignored. Plaintiffs and Class Counsel appreciated that there were multiple obstacles and risks that they would have encountered in the Action had the Parties not agreed to settle.

55.     For example, this Court has already raised questions as to whether "Kaiser allowed the code on its website and apps for the benefit of third parties (as opposed to itself)." October 24 Order at 3. The question would undoubtedly have been a key defense raised at summary judgment and trial.

56.     Throughout the Action, Kaiser has also repeatedly sought to compel members to arbitration, relief which the Court granted (ECF Nos. 119, 335), posing a considerable risk for Settlement Class Members in California with similar arbitration agreements. The risk here is particularly heightened considering that nearly every Kaiser Member in California, approximately 70% of the Settlement Class (*see* ECF No. 373), is arguably subject to the same arbitration provision that this Court previously found enforceable.

57.     Kaiser has also asserted significant legal arguments challenging Plaintiffs' claims under federal law as well as various state statutory laws concerning privacy, state common law, and state constitutional law. Some of these arguments had already been accepted by the Court, with this Court initially dismissing seventeen (17) of the twenty-one (21) claims Plaintiffs brought in their FAC, including Plaintiffs' claims for violation of the Federal Electronic Communications Privacy Act, California Invasion of Privacy Act, California Confidentiality of Medical Information Act, common law claims for intrusion upon seclusion and other state statutory claims. *See* ECF No. 124. While Plaintiffs re-pled many of these claims as part of the CMCAC, including additional factual support, the risk of dismissal remained.

58. Choice of law issues could have presented a potential hurdle, as Plaintiffs have asserted claims violations of various common and statutory laws of California, the District of Columbia, Georgia, Maryland, Oregon, Virginia, and Washington,

59. Kaiser would also undoubtedly argue that individualized issues predominate, such as consent, and that class certification should not be granted. This poses considerable risk in class actions alleging privacy violations through internet technology. To illustrate, District Judge Gonzalez Rogers recently denied class certification on a Rule 23(b)(3) damages class in a privacy case, finding that individualized issues relating to Google's implied consent defense would overwhelm the damages claims for all causes of action. *Calhoun v. Google LLC*, 349 F.R.D. 588, 592 (N.D. Cal. 2025); *see also In re TD Ameritrade Acct. Holder Litig.*, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011) ("[D]efendants in data breach cases have been successful in thwarting plaintiffs' efforts to obtain class certification.") (citing *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify class of banks alleging damages resulting from retailer's data breach because of individual causation issues)); Order at 5-6, *Stollenwerk v. Tri-West Healthcare All.*, No. 03-cv-0185 (D. Ariz. June 10, 2008), ECF No. 139 (finding individualized issues relating to proof of causation predominate over common questions involving theft of computer equipment containing personal information). And, even if Plaintiffs were able to obtain a certified litigation class here, there would be a risk of decertification.

60. In addition, because privacy breach case law is still relatively undeveloped, particularly with respect to damages, privacy breach cases are among the more risky and uncertain areas of class action litigation. To the extent the Court found that Plaintiffs had not successfully re-pled claims providing for statutory damages, or dismissed those statutory claims at summary judgment, Plaintiffs may have only been left with a claim for nominal damages.

61. To be sure, there were serious risks attendant to the continued prosecution of the Action, and no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

1

2

**IV.    NEXT STEPS AND PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER**

3

4        62.    In its Preliminary Approval Order, the Court appointed SCS as the Settlement

5   Administrator to supervise and administer the notice procedure in connection with the Settlement

6   as well as to process Claims and issue payments to eligible Settlement Class Members. *See* ECF

7   No. 393 ¶ 9. In accordance with the Preliminary Approval Order, SCS, working under Class

8   Counsel's supervision, will, among other things: (i) disseminate notice to the individuals listed on

9   the May 2024 Notice List provided by Kaiser (i.e., all current or former Kaiser Permanente

10  members) by no later than January 16, 2026; and (ii) develop and maintain the Settlement Website,

11  www.KaiserPrivacySettlement.com, which will provide information regarding the Settlement and

12  relevant documents as well as portals for submitting Claims and opt outs.[6]

13       63.    The Short Form Notice to be mailed/emailed to Settlement Class Members contains

14  important information concerning the Settlement and direct recipients to the Settlement Website

15  for additional information regarding the Settlement (and the Action), including the Long Form

16  Notice, Claim Form, and Plan of Allocation. Collectively, the notices provide the definitions for

17  the Settlement Class, a description of the Settlement, information regarding the claims asserted in

18  the Action and information to enable Settlement Class Members to determine whether to: (i)

19  participate in the Settlement by submitting a Claim Form; (ii) object to any aspect of the Settlement,

20  the Plan of Allocation, and/or Class Counsel's Fee and Expense Application; or (iii) request to be

21  excluded from the Settlement Class. The notices also inform Settlement Class Members of Class

22  Counsel's intent to: (i) apply to the Court for attorneys' fees in an amount not to exceed 33% of the

23  Settlement Fund; (ii) request reimbursement/payment of litigation expenses in an amount not to

24  exceed $900,000; and (iii) request Service Awards to Plaintiffs in an aggregate amount not to

25  exceed $40,000.

26

27  _____

[6] In accordance with the Stipulation and Preliminary Approval Order, Kaiser agreed to issue notice
28  of the Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 within ten (10) days
from when the Stipulation was originally filed with this Court.

64.     As will be set forth in the notices, the deadline for Settlement Class Members to submit an objection to the Settlement or any aspect thereof, to request exclusion from the Settlement Class, or to submit a Claim in order to be eligible to receive a payment from the Settlement is March 12, 2026. Any objections or requests for exclusion received will be addressed in Plaintiffs' reply submission to be filed on April 2, 2026.

65.     Settlement Class Members with questions regarding the Settlement will be able to contact SCS by sending an email to info@KaiserPrivacySettlement.com or calling 1-855-783-3816. Questions from Settlement Class Members can also be directed to Class Counsel.

## V.     THE PROPOSED PLAN FOR ALLOCATING THE NET SETTLEMENT FUND TO SETTLEMENT CLASS MEMBERS

66.     As explained in the Stipulation (and notices to be disseminated), Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund (i.e., the portion of the Settlement Amount (plus interest) remaining after the deduction of Court-order payments for attorneys' fees and costs (if any), and Court-awarded Service Awards, the Settlement Administrator's expenses and fees, and any taxes) must fill out and submit a Claim to the Settlement Administrator. The Net Settlement Fund will be distributed to Authorized Claimants[7] in accordance with the Plan of Allocation (previously submitted to the Court at ECF No. 390-1 and to be posted on the Settlement Website), or other plan of allocation approved by the Court.

67.     The Plan of Allocation ("Plan") proposed by Plaintiffs provides a simple and equitable method for allocating the Net Settlement Fund to eligible Settlement Class Members— i.e., each eligible Settlement Class Member will receive his or her *pro rata* share of the Net Settlement Fund, where the *pro rata* share will be calculated by dividing the Net Settlement Fund by the total number of valid Claims.

---

[7] As defined in Paragraph 1.2 of the Stipulation, an "Authorized Claimant" is a "Settlement Class Member who submits a Claim to the Settlement Administrator that is approved by the Court for payment from the Net Settlement Fund."

68.     Settlement payments will be issued to eligible Settlement Class Members following the Effective Date.[8] Any funds remaining after an initial distribution to Authorized Claimants will be redistributed, if cost effective, to Authorized Claimants on a *pro rata* basis. Any amounts that are not cost effective to redistribute to eligible Settlement Class Members will be contributed to the Institute for Public Health Innovation ("IPHI").[9] The IPHI is a non-profit organization dedicated to creating healthier, more equitable communities across the District of Columbia, Maryland, and Virginia. *See* https://www.institutephi.org. The IPHI is the fiscal sponsor for the Common Health Coalition, which engages in work regarding the exchange of data between healthcare and public health systems, coordination between health care and public health, emergency preparedness, and disease detection. *See* https://commonhealthcoalition.org/.

## VI.     THE FEE AND EXPENSE APPLICATION

69.     In addition to seeking final approval of the Settlement and approval of the Plan of Allocation, Class Counsel are applying for an award of attorneys' fees and payment of litigation expenses incurred during the course of the Action. Specifically, Class Counsel are applying to the Court for an award of attorneys' fees in the amount of 33% of the Settlement Fund ("Fee Application") and payment of litigation expenses in the total amount of $605,103.66 ("Expense Application"). Class Counsel further request Service Awards of $5,000 to each of the eight Plaintiffs for their efforts in the Action and for their assistance in achieving a strong Settlement for the Settlement Class, as well as the reputational and other risks they undertook in bringing this Action. The legal authorities supporting the requested fees and expenses are discussed in Class Counsel's Fee and Expense Memorandum. The primary factual bases for the requested fees and expenses are set forth below.

---

[8] As defined in Paragraph 1.7 of the Stipulation, the "Effective Date" is the Final Order and Judgment Approving Settlement becomes final as a matter of law and non-appealable (i.e., 30 days from entry of the Order).
[9] Plaintiffs do not have a relationship with IPHI and Defendant has represented to Plaintiffs that it does not have a relationship to IPHI that would involve any offset of costs Defendant would otherwise incur.

A.    **The Fee Application**

70.    For their efforts on behalf of the Settlement Class, Class Counsel are applying for a fee award to be paid from the Settlement Fund on a percentage basis. The percentage method is the standard and appropriate method of fee recovery in a common-fund case like this one, because it aligns the lawyers' interest in being paid a fair fee with the interests of Plaintiffs and the Settlement Class in achieving the maximum recovery in the shortest amount of time required under the circumstances. Use of the percentage method has been recognized as appropriate by the U.S. Supreme Court and the Ninth Circuit for cases of this nature where an all-cash common fund has been recovered.

71.    Based on the result achieved, the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Class Counsel respectfully submit that the requested fee award of 33% of the Settlement Fund is fair and reasonable in light of all the circumstances in this case.

72.    As discussed in the Fee and Expense Memorandum, a 33% fee award is merited here and is in line with fee awards in other cases in this Circuit which similarly resulted in substantial recoveries for class members following contentious litigation. Further, the requested fee represents a lodestar multiplier of approximately 1.3 on the time devoted to the Action by Class Counsel from inception through September 2025, based on their current hourly rates. As discussed in the Fee and Expense Memorandum, a lodestar multiplier of approximately 1.3 falls on the lower end of the range of multipliers commonly awarded in class actions, including in this District.

73.    Plaintiffs, who have been actively involved in this Action, have evaluated the Fee Application and support the fee requested. *See* Exs. 1A through 1H.

1.    **The Favorable Results Achieved**

74.    As described above, the $46 million Settlement (which could increase to $47.5 if certain conditions are met) is particularly favorable in light of, and takes into consideration, the significant challenges Plaintiffs would face if the Action continued. When considered in view of the substantial risks to obtaining a larger recovery (or any recovery) were the Action to continue,

the Settlement is an excellent result. The Settlement is also in line with recoveries obtained in cases involving similar claims. *See* ECF No. 345-2, Ex. 1 (comparable settlements chart).

75.    Moreover, Plaintiffs and Class Counsel already succeeded in having Kaiser remove the offending code at issue in the Action from its Website and Apps and notify regulators and Kaiser members of the privacy breach. *See supra* ¶¶ 6, 23-25, 31. This conduct change provides an additional and substantial non-monetary benefit to the Settlement Class.

### 2.    The Work Performed by Class Counsel

76.    As also detailed above, Class Counsel zealously advocated for their clients and the Settlement Class over the course of two (2) years, pressing for discovery, working with multiple experts, briefing, and arguing several motions, reviewing documents, subpoenaing numerous third parties, among other efforts. *See supra* ¶¶ 19- 42.

77.    Throughout the litigation, Class Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of the Action. As one of the lead partners on the case, I personally monitored and maintained control of the work performed by other lawyers at KTMC and Carella Byrne throughout the litigation. More junior attorneys and paralegals worked on matters appropriate to their skill and experience level.

78.    KTMC has reviewed its time and expense records. The purpose of this review was to confirm both the accuracy of the time entries and expenses and the necessity for, and reasonableness of, the time and expenses committed to the Action. I believe that the time reflected in my firm's lodestar calculation and the expenses for which payment is sought as stated in this Declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the Action.

79.    Attached hereto as Exhibit 2 is a detailed summary indicating the amount of time spent by each KTMC attorney and professional support staff employee who devoted ten (10) or more hours to the Action from its inception through and including September 30, 2025, and the lodestar calculation for those individuals based on their current hourly rates. Exhibit 2 was prepared from contemporaneous daily time records regularly prepared and maintained by KTMC, which are

available at the request of the Court. Time expended in preparing Class Counsel's application for fees and expenses and this Declaration is not included in my firm's lodestar calculation.

80.    The hourly rates for the KTMC attorneys and professional support staff employees included in Exhibit 2 are their standard rates. My firm's hourly rates are largely based upon a combination of the title, cost to the firm, and the specific years of experience for each attorney and professional support staff employee, as well as market rates for practitioners in the field. These hourly rates are the same as, or comparable to, rates submitted by KTMC and accepted by courts in other complex class actions. *See, e.g., Cabrera v. Google LLC*, 2025 WL 2494429, at *9 (N.D. Cal. Aug. 29, 2025); *Sjunde AP-Fonden, et al. v. General Electric Company, et al.*, No. 1:17-cv-8457-JMF (S.D.N.Y. Apr. 24, 2025), ECF No. 500; *In re: Intuniv Antitrust Litig.*, No. 16-cv-12653-ADB (D. Mass. Nov. 6, 2024), ECF No. 750; *The Electrical Welfare Trust Fund, et al. v. United States of America*, No. 19-353 C (Fed. Cl. May 16, 2024), ECF No. 150; *Matthew Opheim, et al. v. Volkswagen Aktiengesellschaft et al.*, No. 2:20-cv-02483-AME (D.N.J. Aug. 14, 2024), ECF No. 185.

81.    The total number of hours expended on this Action by my firm from its inception through September 30, 2025, is 15,238.90 hours. The total lodestar for my firm for that period based on the timekeepers' current hourly rates is $8,994,587. My firm's lodestar figures do not include costs for expense items.

82.    In addition, KTMC has expended time on this matter since September 30, 2025 in connection with preliminary approval of the Settlement (e.g., preparing supplemental submissions in support of preliminary approval of the Settlement, preparing for and attending preliminary approval conferences, and conferring with Kaiser's Counsel and counsel for the Objectors regarding Settlement terms) and preparing the Motion for final approval of the Settlement, which hours are not included in Exhibit 2 (nor in KTMC's total lodestar figure). KTMC will continue to work on this matter following approval of the Settlement, including devoting time to overseeing the efforts of the Settlement Administrator in disseminating notice of the Settlement to the Settlement Class,

processing Claims and distributing the Net Settlement Fund to eligible Settlement Class Members. Class Counsel are not seeking compensation for this additional time.

83.     Attached hereto as Exhibit 3 is a chart that reflects the hours spent by each KTMC timekeeper on each of the following litigation task categories during the course of the Action:[10]

(1)     **Administrative**: This category includes time spent on administrative tasks, including finalizing and preparing court filings, maintaining case files, and corresponding within the firm regarding various aspects of the case;

(2)     **Attorney Meetings / Litigation Strategy**: This category includes time spent on meetings between attorneys, including time devoted to discussing litigation strategies at various postures of the case and conferences with defense counsel;

(3)     **Case Management**: This category includes time spent on general case management, including ad-hoc preparations for a hearing or logistics coordination;

(4)     **Client Communications**: This category includes time spent on communications with the clients, including regular case updates and plaintiff discovery-related matters;

(5)     **Court Appearances**: This category includes time spent on appearing in front of the Court, including monthly status conferences and discovery management conferences as well as oral argument on motions;

(6)     **Discovery**: This category includes time spent on discovery efforts, including serving discovery requests on Kaiser, meeting and conferring with Kaiser on the scope of these requests, preparing plaintiff discovery production and interrogatory responses, and conducting third-party discovery;

(7)     **Document Review Tier 1**: This category includes time spent on reviewing documents produced by Kaiser by a junior-level attorney;

---

[10] Time entries that related to more than one major litigation task category were allocated to the litigation task category that most of the billed time fit into.

(8)    **Document Review Tier 2**: This category includes time spent on reviewing documents produced by Kaiser by a supervising attorney;

(9)    **Experts / Consultants**: This category includes time spent on consulting with experts, including time spent on expert-led review of highly confidential source-code and calculation of potential damages;

(10)    **Investigation / Factual Research**: This category includes time spent on investigating the alleged misconduct and potential claims asserted in the Action, including investigating potential plaintiffs and researching potential causes of action;

(11)    **Legal Research**: This category includes time spent on various ad-hoc legal research assignments, including research into discovery issues;

(12)    **Pleadings / Motions / Briefs**: This category includes time spent on preparing, filing, and opposing pleadings and motions filed with the Court, including researching the legal claims alleged in the multiple complaints as well as the arguments and issues raised in the multiple motions to dismiss; and

(13)    **Mediations & Settlement**: This category includes time spent on extended settlement negotiations with Kaiser's counsel, including two mediation sessions and preparation of mediation briefing; drafting and negotiating the initial Stipulation and related documents; drafting the motion for preliminary approval of the settlement as well as supplemental briefings; and preparing for the related hearing on the motion.

84.    I believe that the number of hours expended and the services performed by the attorneys and professional support staff employees at KTMC were reasonable and necessary for the effective and efficient prosecution and resolution of the Action.

85.    Attached hereto as Exhibit 4 is the Declaration of James E. Cecchi on behalf of Carella Byrne ("Cecchi Declaration" or "Cecchi Decl."), which includes schedules summarizing the lodestar and the litigation expenses Carella Byrne incurred.

86.    Exhibit 5 contains a chart that summarizes the information set forth herein for KTMC and in the Cecchi Declaration, listing the total hours expended, lodestar amounts (i.e., hours multiplier by hourly rates), and litigation expenses for each law firm. Exhibits 2 through 4 further indicate the amount of time spent on the Action by the attorneys and professional support staff of each firm and the lodestar calculations based on their current hourly rates.[11] Exhibits 2 through 4 also provide a breakdown of counsel's time by task category (by timekeeper). A summary of Class Counsel's lodestar by task category is attached hereto as Exhibit 6. Exhibits 2 through 4 were prepared from contemporaneous daily time records maintained and prepared by the respective firms.

87.    As set forth in Exhibit 5, Class Counsel collectively expended a total of 19,072.00 hours in the investigation, prosecution, and resolution of the Action from its inception through September 30, 2025. The resulting total lodestar is $11,985,717.00. Thus, pursuant to a lodestar "cross-check," Class Counsel's fee request of 33% of the Settlement Fund, if awarded, would yield a lodestar multiplier of approximately 1.3 on Class Counsel's combined lodestar even if Kaiser contributed the maximum amount of $47.5 million to the Settlement Fund. The requested fee multiplier falls on the lower end of the range of multipliers typically awarded in comparable class actions involving significant contingency risk in this Circuit. *See* Fee and Expense Motion at 2.

88.    Class Counsel's time and lodestar calculations are reasonable and were necessary for the effective and efficient prosecution and resolution of the Action.

### 3.    The Experience and Standing of Class Counsel

89.    As demonstrated by the firm resumes included as Exhibit 7 and Cecchi Decl., Ex. 4, KTMC and Carella Byrne are experienced law firms in the class action field, with long and successful track records representing plaintiffs in such cases. Class Counsel's extensive experience

---

[11] Class Counsel have submitted hourly rates ranging from $805 to $1,300 per hour for partners, $370 to $900 per hour for other attorneys, $225 to $405 per hour for paralegals, and $300 to $400 per hour for in-house investigators, with most of the hourly rates falling well below the top end of these amounts. *See* Exs. 2-4. These hourly rates are reasonable for this type of complex litigation. *See* Fee and Expense Motion at § D(2).

in litigating and trying consumer fraud class actions and the ability of their attorneys added valuable leverage during the Parties' settlement negotiations.

### 4.    The Standing and Caliber of Defendant's Counsel

90.    The quality of work performed by Class Counsel in obtaining the Settlement should also be evaluated in light of the quality of opposing counsel. Kaiser was represented in the Action by a team of extremely able counsel from Sheppard, Mullin, Richter & Hampton LLP and Crowell & Moring LLP, who vigorously litigated the Action at every stage.

### 5.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Cases

91.    The prosecution of Plaintiffs' claims was undertaken entirely on a contingent-fee basis, and the considerable risks assumed by Class Counsel in bringing this Action to a successful conclusion are described above. The risks assumed by Class Counsel here, and the time and expenses incurred by Class Counsel without any payment, were substantial.

92.    From the outset, Class Counsel understood that they would be engaging in complex, expensive, lengthy, and hard-fought litigation with no guarantee of ever being compensated for the substantial investment of time and the outlay of money that the prosecution of the case would require. In undertaking that responsibility, Class Counsel were obligated to ensure that sufficient resources (in terms of attorney and professional support staff time) were dedicated to the litigation. Class Counsel also advanced all of the costs necessary to pursue the case vigorously on a fully contingent basis, including funds to compensate experts, consultants, court reporters, and vendors, and to cover the considerable out-of-pocket costs that a case like this typically demands. Because complex class action litigation often proceeds for several years before reaching a conclusion, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Class Counsel have received no compensation during the course of this Action and no reimbursement of out-of-pocket expenses, yet they have incurred substantial time and expenses in prosecuting this Action for the benefit of Settlement Class Members who were allegedly harmed by Kaiser's alleged misconduct.

93.     Class Counsel also bore the risk that no recovery would be achieved in the Action. As discussed above, this case presented a number of significant risks and uncertainties from the outset, including challenges in pleading and ultimately proving the alleged misconduct and damages.

94.     Class Counsel's persistent efforts in the face of substantial risks and uncertainties have resulted in a substantial monetary recovery for the Settlement Class as well as Kaiser's removal of the offending code at issue in the Action from its Websites and Apps and changes to its privacy notification policies. In circumstances such as these, we believe the requested fee is reasonable and should be approved.

### 6.     The Reaction of Settlement Class Members to the Fee Application

95.     Settlement Class Members will be able to weigh in on Class Counsel's Fee Application once the notice campaign has commenced. Class Counsel will address any objections to the Fee Application in its April 2, 2026 reply submission.

### B.     The Expense Application

### 1.     Class Counsel's Request for Litigation Expenses Is Fair and Reasonable and Warrants Approval

96.     Class Counsel also respectfully seek payment of $605,103.06 from the Settlement Fund for expenses that were reasonably and necessarily incurred in connection with the prosecution and resolution of the Action. The notices inform the Settlement Class that Class Counsel will be seeking payment of litigation expenses in an amount not to exceed $900,000.

97.     From the outset of the Action, Class Counsel were aware that they might not recover any of their expenses and, even in the event of a recovery, would not recover any of their out-of-pocket expenditures until such time as the Action might be successfully resolved. Class Counsel also understood that, even assuming the case was ultimately successful, an award of expenses would not necessarily compensate them for the lost use of funds advanced to litigate the claims. Thus, Class Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

98. Class Counsel maintained strict control over the expenses in this Action. Many of the expenses incurred were paid out of a litigation fund created and collectively contributed to by Class Counsel, and which was maintained by KTMC ("Litigation Fund"). KTMC and Carella Byrne collectively contributed $220,000.00 to the Litigation Fund,[12] in addition to payments made directly by each firm.

99. Expense items are reported separately and are not duplicated in my firm's hourly rates. As set forth in Exhibit 8 hereto, KTMC is seeking payment for $454,464.20 in expenses incurred in connection with the prosecution and resolution of the Action

100. Carella Byrne's expenses are detailed in the Cecchi Declaration, attached hereto as Exhibit 4, which identifies each category of expenses and the amount incurred for each category.

101. A summary of Class Counsel's total expenses is set forth in Exhibit 10.

102. The following is additional information regarding Class Counsel's combined requested expenses, as set forth in Exhibit 10.

(a) **Court Filings & Other Fees** ($2,678.00). This amount includes: (i) fees paid to obtain Certificates of Good Standing for submission with Northern District of California *pro hac vice* applications; and (ii) Northern District of California filing and *pro hac vice* application fees.

(b) **Express / Overnight Mail & Postage** ($1,714.77). In connection with the prosecution of the Action, Class Counsel incurred charges associated with overnight delivery via FedEx Corporation and postage.

(c) **Research** ($88,760.14). During the course of this Action, Class Counsel incurred costs associated with online legal and factual research necessary to the investigation, prosecution, and resolution of the Action. These costs include charges from online vendors such as Westlaw, LexisNexis, PACER, and others, and reflect costs associated with obtaining access to court filings and performing legal and factual research. The expenses in this category are tracked using

---

[12] The Litigation Fund has earned $3,854.18 in interest, and there is a residual of $328.01 remaining in the Litigation Fund.

the specific client-matter number for the Action and are based upon the costs assessed by each vendor. There are no administrative charges in this figure.

(d)    **Printing & Copying** ($5,935.42). KTMC incurred costs related to document reproduction. For internal printing and copying, my firm charges $0.10 per page. Each time a photocopy is made or a document is printed, KTMC's billing system requires that a case or administrative billing code be entered into the copy-machine or computer being used, and this is how the 50,085 pages copied or printed (for a total of $5,008.50) were identified as attributable to this Action. KTMC also incurred $926.92 for external printing costs (e.g., charges from an outside copy vendor).

(e)    **Travel (Transportation, Lodging & Meals)** ($119,427.28). Over the past two years, KTMC and Carella Byrne attorneys have incurred travel-related expenses for travel to, among other things, mediations in Chicago and Los Angeles, monthly in-person appearances in San Francisco, and in person code-review of Defendant's data in New York City. KTMC and Carella Byrne applied "caps" to certain of these travel expenses. Also included in this amount are meals related to working late hours on filings and in-office team meetings.

(f)    **Court Reporters** ($1,672.25). This amount consists of charges from court reporters for transcription services at Court hearing/conferences, and for copies of transcripts paid by Class Counsel.

(g)    **Experts / Consultants** ($234,129.17). This amount reflects payments to Plaintiffs' experts and IMS Consulting & Expert Services (n/k/a IMS Legal Strategies) for their expert services during the litigation.

(h)    **Litigation Fund Contributions** ($145,000.00). KTMC maintained a joint litigation fund on behalf of Class Counsel for the management of large expenses (such as expert/consultant expenses) in the Action ("Litigation Fund"). KTMC contributed $145,000.00 to the Litigation Fund, which held a combined total of $223,854.18 when Carella Byrne's contribution and interest are included. As detailed in Exhibit 9, payments were made from the Litigation Fund

for: Experts/Consultants ($125,266.25), Document Hosting/Management & Review ($69,781.22), Court Reporters ($85.15), Service of Process ($799.55), and Mediation ($27,594.00).

(i)    **Document Hosting / Management & Review** ($39,387.80). This amount reflects payment made by KTMC outside of the Litigation Fund to an outside vendor, Innovative Driven, for hosting/managing the document database utilized to review and analyze the documents produced by Kaiser.

(j)    **Process Service** ($2,134.75). This amount reflects payments for service of third-party subpoenas.

(k)    **Mediation** ($39,470.26). The Parties participated in two mediations during the course of the Action. This amount reflects payment by Class Counsel for Plaintiffs' share of the first mediation in October 2024 before Hon. Wayne R. Andersen (Ret.) of JAMS Mediation and the second mediation before retired Hon. Jay C. Gandhi (Ret.) was held on May 13, 2025.

### 2.    Service Awards to Plaintiffs Are Fair and Reasonable

103.    In addition, Plaintiffs seek Service Awards in the aggregate amount of $40,000 (i.e., $5,000 each) for their efforts in representing the Settlement Class in the Action. As set forth in their accompanying declarations, Plaintiffs have been committed to pursuing the Settlement Class's claims and have provided valuable assistance to Class Counsel during the prosecution and resolution of the Action. These efforts are precisely the types of activities courts have found to support service awards

104.    As described in their declarations, attached hereto as Exhibits 1A through 1H, Plaintiffs have been actively involved in this case and have devoted a substantial amount of time to this litigation, all while taking the risk that their PHI would become public at or before trial. Plaintiffs were dedicated to ensuring that Kaiser protect Class Members' PHI and without their efforts Kaiser may not have stopped Kaiser's misconduct.

## VII.    CONCLUSION

105.    For all the reasons set forth above, Class Counsel respectfully submit that the Settlement and Plan of Allocation should be approved as fair, reasonable, and adequate. Class

Counsel further submit that: (i) the requested fee in the amount of 33% of the Settlement Fund should be approved as fair and reasonable, and (ii) the requests for Class Counsel's litigation expenses in the amount of $605,103.06 and Plaintiffs' Service Awards in the aggregate amount of $40,000 should also be approved.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of December, 2025.

By:    */s/ Tyler S. Graden*
Tyler S. Graden

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

*Counsel for Plaintiffs and the proposed Settlement Class*