**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, PC**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Counsel for Plaintiffs and the Settlement Class*
(*Additional Attorneys Listed on Signature Page*)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,

Defendants.

Case No. 3:23-cv-02865-EMC

**CLASS COUNSEL'S OPPOSITION TO OBJECTORS' FEE APPLICATION AND LIMITED OBJECTION TO MOTION FOR ATTORNEYS' FEES**

Judge: Hon. Edward M. Chen
Date: May 7, 2026
Time: 1:30 p.m.
Court: 5

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. Class Counsel's Litigation Efforts Result in Removal of Offending Technology ..... 2

B. Following Class Counsel's Early Success, LKS Advertises for Clients To Pursue Mass Arbitration ..... 3

C. While Class Counsel Aggressively and Successfully Litigated the Settlement Class's Claims, LKS Was Content to Watch from the Sidelines ..... 3

D. On the Eve of the Parties' Mediation, LKS Abandons Arbitration and Files a Copycat Class Action ..... 4

E. The Court Broadly Denies LKS's Objections to the Settlement ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. LKS's Suggestion that It Helped Drive the Settlement Is Baseless ..... 7

B. LKS's Objections Benefitted Only Its Own Efforts at Continued Litigation ..... 9

C. LKS's Requested Fee Amount Is Unreasonable ..... 11

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cohorst v. BRE Props., Inc.*,
2012 WL 2001754 (S.D. Cal. June 5, 2012) ..........11

*Fleury v. Richemont N. Am., Inc.*,
2008 WL 4829868 (N.D. Cal. Nov. 4, 2008) (Chen, J.) ..........7

*In re Homestore.com, Inc.*,
2004 WL 2792185 (C.D. Cal. Aug. 10, 2004) ..........11

*In re Leapfrog Enters., Inc. Sec. Litig.*,
2008 WL 5000208 (N.D. Cal. Nov. 21, 2008) ..........6, 7, 10

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) ..........9, 10, 11

*Rose v. Bank of Am. Corp.*,
2015 WL 2379562 (N.D. Cal. May 18, 2015) ..........10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ..........10

*In re Veritas Software Sec. Litig.*,
2006 WL 463509 (N.D. Cal. Feb. 24, 2006) ..........7

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ..........6, 11

Class Counsel respectfully submit this Opposition to Objectors' Fee Application and Limited Objection to Motion for Attorneys' Fees and request that the Court deny Objectors' Fee Application and Limited Objection to Motion for Attorneys' Fees ("Objector's Motion") (ECF No. 411).

## I. INTRODUCTION[1]

This motion is yet another attempt by counsel for the Objectors, Labaton Keller Sucharow LLP ("LKS"),[2] to squeeze money from this action without doing any real work. For the entirety of this litigation, LKS has attempted to leverage the time, effort, and skill employed by Class Counsel to reap a windfall payment while making no attempt to actually vindicate the wrongs committed against its clients or, as more relevant here, the Class. LKS's efforts were wholly self-serving, did nothing to benefit the Class, and are not the type of litigation efforts for which courts award fees. If anything, Class Counsel should be entitled to a portion of any fees that LKS ultimately obtains for their opt-out clients based on the common benefit that Class Counsel created through its successful work in this action.

Over the three years this action has been pending, Class Counsel has expended significant effort to pursue relief on behalf of the proposed class. During that same time, LKS failed to advance any proceeding—either in arbitration or in court—beyond its initial stages. In fact, aside from submitting fee waivers on behalf of certain clients, LKS has to date not filed or moved forward with a single arbitration. This is nothing more than a transparent and unfortunate attempt by a group of lawyers who want to get paid without doing any heavy lifting or actually achieving results.

Notwithstanding its failure to do any work on behalf of the Settlement Class, LKS brazenly seeks an award of more than $1 million in attorneys' fees, claiming it has provided benefits to the Settlement Class and provided settlement leverage. All of this adds up to little more than bluster, devoid of any proof to support their unprecedented position—to say nothing of the complete failure to quantify any supposed benefit. In truth, LKS's threat of arbitration and copycat state court complaint did nothing to advance this litigation. Moreover, the Court broadly rejected LKS's

[1] Unless otherwise noted, all emphases are added, all internal citations and quotations are omitted, all defined terms have the meaning in the Motion for Final Approval (ECF No. 401).

[2] While Milberg Coleman Bryson Phillips Grossman, PLLC appears on the first page of LKS's motion, they are not included in the definition of Objector's in the brief, do not appear on the signature page, and do not provide time records in support of the request.

objections to the proposed settlement, which only would have supported LKS's efforts to exclude its own clients and did not benefit the Settlement Class.[3]

LKS's self-serving conduct provided no benefit to the Settlement Class and their fee request is unsupported by the record. As to the law, there is simply no support for the position LKS asks this Court to adopt.

## II. FACTUAL BACKGROUND

LKS devotes over a quarter of its brief to misconstruing the factual background. LKS's timeline—which begins on February 9, 2024—wholly ignores that Class Counsel started this action eight (8) months earlier, with the initial Complaint filed on June 9, 2023, and a thorough investigation, including expert analysis, before that. Far from its assertions of proceeding in parallel or strengthening any bargaining position, in truth, LKS did nothing to materially advance claims on behalf of its own clients, much less the Class, in the two years that have passed since they first started advertising for clients.

### A. Class Counsel's Litigation Efforts Result in Removal of Offending Technology

Following Class Counsel's investigation revealing that Kaiser's website permitted third parties—including Adobe, Bing, Google, Twitter (now X), and Quantum Metric—to intercept Kaiser members' personally identifiable medical information, Plaintiffs filed an initial complaint on June 9, 2023. *See* ECF No. 1. Plaintiffs subsequently filed a First Amended Class Action Complaint ("FAC") on September 15, 2023, which included additional plaintiffs and claims. ECF No. 44. Recognizing the continuing harm of allowing Third Party Wiretappers to intercept Kaiser Permanente members' communications on Kaiser's website and mobile applications, Plaintiffs moved for a preliminary injunction on October 4, 2023 to compel the removal of the offending code. ECF No. 58.

In response, Kaiser confirmed that, following an investigation, it had removed the trackers at the heart of Plaintiffs' claims and implemented banners to provide more fulsome disclosure of Kaiser's privacy policy by November 13, 2023. ECF No. 96. As Kaiser's counsel later explained, "[t]his litigation was part and parcel of what spurred the investigation into those technologies." Disc.

[3] Preliminary estimates indicate roughly two thirds of LKS clients previously identified sought to exclude themselves from the Settlement Class. LKS is of course able to seek compensation from its own clients for its efforts on their behalf.

Hr'g Tr. at 53:25-54:1 (July 18, 2024), ECF No. 217. Having achieved the relief sought, Plaintiffs withdrew their motion. *See* ECF No. 101.

### B. Following Class Counsel's Early Success, LKS Advertises for Clients To Pursue Mass Arbitration

In late January 2024—seven months after Plaintiffs' action was filed, nearly two months after Plaintiffs' successful removal of the offending technology, and weeks after Plaintiffs had opposed Kaiser's motion to dismiss—LKS commenced an advertising campaign seeking clients for a mass arbitration against Kaiser Permanente, riding off of the coattails of Class Counsel. Meltzer Decl., Ex. 1, ECF No. 354. Mere weeks after LKS began advertising for clients, it contacted Kaiser on behalf of 6,847 purported claimants, asserting that Kaiser's conduct violated many of the same statutes already alleged in Plaintiffs' complaint. *See* Objector's Motion at 4. While LKS notified Kaiser of these potential claims, it did not formally demand or initiate any arbitration. *Id.* at 4-5. It just sat on the threat of arbitration.

### C. While Class Counsel Aggressively and Successfully Litigated the Settlement Class's Claims, LKS Was Content to Watch from the Sidelines

By its own admission, after threatening arbitration in early 2024, LKS did not even attempt to initiate any arbitration until the very end of that year, on December 23, 2024. During this same time, Class Counsel aggressively litigated this case on behalf of the putative class to push it towards a successful resolution. Plaintiffs opposed Kaiser's first Motion to Dismiss, which the court denied and granted in part. ECF Nos. 88, 109, 110, 124. One day after the Court issued its Order, Kaiser notified regulators of the privacy breach identified by its investigation conducted in the wake of Plaintiffs' allegations. ECF No. 127. Plaintiffs filed a Second Amended Class Action Complaint ("SAC") (ECF No. 131), and opposed Kaiser's second Motion to Dismiss (ECF Nos. 205, 223). Following consolidation with two related cases filed in the wake of Kaiser's notice regarding the privacy breach, Plaintiffs filed a Consolidated Master Class Action Complaint ("CMCAC"). ECF Nos. 233, 271.

Class Counsel engaged in substantial discovery efforts, including in-person attendance at six discovery management conferences, which involved extensive pre-conference negotiations and briefing. Plaintiffs served and responded to written discovery, engaged in regular meet-and-confers regarding the scope and status of these requests, and reviewed the nearly 40,000 documents produced

by Kaiser. Plaintiffs also conducted multiple days of in-person, expert-led review of discovery designated as highly confidential source-code by Kaiser. Plaintiffs litigated several discovery disputes before Magistrate Judge Kang, which involved substantial letter briefing regarding various factual and legal aspects of this case, as well as in-person oral argument regarding the same. And Plaintiffs served subpoenas on nine third parties, and engaged in highly contested third-party discovery.

As Class Counsel diligently pushed through a series of challenges relating to first and third-party discovery, they applied constant litigation pressure, clarified the issues for both sides, and allowed the Parties to approach a second mediation with a full understanding of the potential liabilities and defenses. LKS, for its part, remained content to watch from the sidelines.

### D. On the Eve of the Parties' Mediation, LKS Abandons Arbitration and Files a Copycat Class Action

As stated above, LKS first purported to demand arbitration on December 23, 2024. While LKS purportedly disagreed with Kaiser's interpretation of the arbitration rules, LKS neither sought to compel Defendants to arbitration nor sought a judicial determination as to the applicable rules. ***And, notably, of the tens of thousands of members identified, LKS has not proceeded with a single arbitration to date beyond simply submitting fee waivers.***

On April 25, 2025, following extensive briefing on Kaiser's Motion to Dismiss, the Parties informed the Court in a Joint Status Report that a second mediation was scheduled for May 13, 2025.

Almost immediately thereafter, in a stunning heel turn, LKS completely abandoned its arbitration threat—and arbitration proceedings generally—and instead filed a copycat class action complaint in California state court on May 6, 2025. *See* Declaration of Morris Dweck in Support of Objector's Motion, ECF No. 411-1, ¶ 20. The *Guevara* complaint—brought by the six Objectors here, Jessica Guevara, Nicole Reynolds, Linda Rodriguez, Oscar Ocaranza, Yara Garcia, and Cindy Barkho—was clearly based on Plaintiffs' Consolidated Complaint and includes factual allegations only made possible by Class Counsel's efforts in vigorously prosecuting this litigation on behalf of the Class. While there was a purported dispute regarding the arbitration rules, LKS made no attempt to compel Kaiser to arbitration under their preferred rules or seek a declaratory judgment as to the operative rules, further underscoring that LKS had no real intention to actually prosecute their clients'

claims or proceed through arbitration. Rather, LKS was content to undertake a scattershot approach that was seemingly at odds with prior acts in order to try to pressure Kaiser—and now Class Counsel—for fees.[4] In reality, LKS simply represents a group of individuals who have opted out of the settlement, a possibility that is inherent in every class action settlement and in no way benefits the Settlement Class.

During the Parties' mediation on May 13, 2025 before Hon. Jay C. Gandhi, retired U.S. Magistrate Judge for the Central District of California, the Parties reached an agreement in principle to resolve this litigation. As part of that mediation, and ultimate settlement, Class Counsel anticipated that LKS would proceed separately on behalf of its clients and the negotiated settlement amount reflected that eventuality. The Parties finalized their agreement and sought preliminary approval in August 2025. ECF No. 345. On September 9, 2025, the same six state court plaintiffs represented by LKS filed an objection to preliminary approval of the Parties' proposed Class Settlement. ECF No. 351.

### E. The Court Broadly Denies LKS's Objections to the Settlement

In its opposition to preliminary approval, LKS raised three objections to the proposed settlement—***none of which benefitted the Class***. First, LKS argued that Settlement Class Definition was overly expansive, because it included members who had notified Kaiser of their intent to pursue arbitration but never actually pursued arbitration. ECF No. 352 at 11. That is, LKS sought to have its thousands of claimed clients automatically excluded from the Settlement without any further input or consultation. Second, LKS claimed that the settlement's requirement that class members who wish to opt out must do so individually, as is standard practice in class settlements, was unfairly burdensome. *Id.* at 14-16. Third, LKS challenged the pro rata distribution of the settlement fund in favor of allocating a greater share to California class members. *Id.* at 17-20. Two of the three objections focused on the ability for LKS to remove its clients from the Settlement, while only one objection purportedly sought to bring benefits beyond LKS and its clients.

[4] This Court noted that by filing *Guevara*, "there's a pretty good argument these folks, by filing -- by the nature of this case, it looks like, at least tentatively, a disavowal of arbitration and intent to go forward on the merits in another court . . . ." Preliminary Approval Hr'g Tr. at 25:2-5 (Oct. 23, 2025), ECF No. 385.

On October 24, 2025, the Court issued an order rejecting LKS's argument that "something *less* than a formal demand for arbitration" should be "good enough to take someone out of the settlement class definition." ECF No. 384 at 5. The Court ultimately rejected LKS's insistence that all of its clients should be excluded from the settlement class definition, finding instead that class members wishing to opt-out needed to express that intention themselves. Further, LKS's improper demand that they should be able to effectuate mass, non-individualized opt-outs of all of their clients without further consultation was roundly rejected. *Id.* at 6-8. Finally, the Court denied LKS's objection to the pro rata distribution of the settlement, explaining that "[g]iven the litigation risk, it is not clear that California plan members are in a stronger position compared to non-California plan members." *Id.* at 9.

At LKS's request, and at the Court's direction, the parties modified the class definition to remove (i) any threshold requirement relating to the payment of arbitration fees and (ii) language regarding the "abandonment" of arbitration. *See* ECF Nos. 388, 390-2, 392-2. The Parties also agreed to an additional opt-out procedures to make it easier for counsel like LKS who represent large groups of clients to submit opt-outs. ECF No. 388. But, to put a fine point on it, these changes were to benefit LKS and its evolving strategy of how to get paid in this case. None of these changes materially changed the number of individuals excluded by the Class Definition, nor did these changes inure to the benefit of the Class here and any argument to the contrary is belied by even a cursory examination of the record.

At the Court's suggestion, the Parties also incorporated a longer opt-out period and ensured that arbitration claimants—such as LKS's clients—had an opportunity to opt-in to the benefits of the settlement, rather than continue in arbitration. *Id.* at 7-12; *see also* ECF No. 392.

On December 5, 2025, the Court granted preliminary approval of the Parties' settlement. ECF No. 393.

## III. LEGAL STANDARD

An award of attorneys' fees to an objector's counsel is only justified where the objector "increase[d] the fund or otherwise substantially benefit[ted] the class members." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *see also In re Leapfrog Enters., Inc. Sec. Litig.*,

2008 WL 5000208, at *3 (N.D. Cal. Nov. 21, 2008) ("[T]he test is not whether the objections were meritorious or whether they helped the court in some way, but whether they conferred a 'substantial benefit' on the class or contributed to the common fund."). Furthermore, no fees may be awarded with respect to objections that are overruled. *See, e.g.*, *In re Veritas Software Sec. Litig.*, 2006 WL 463509, at *5 (N.D. Cal. Feb. 24, 2006).

Importantly "[I]f an objector's actions have not produced a monetary benefit for the class, the court must carefully scrutinize the benefits conferred to determine whether the objector has conferred more than a technical or coincidental benefit." *In re Leapfrog Enters., Inc. Sec. Litig.*, 2008 WL 5000208, at *3. To constitute a "substantial benefit," the objector must achieve "something more than technical in its consequence." *Fleury v. Richemont N. Am., Inc.*, 2008 WL 4829868, at *5 (N.D. Cal. Nov. 4, 2008) (Chen, J.).

## IV. ARGUMENT

### A. LKS's Suggestion that It Helped Drive the Settlement Is Baseless

Over the nearly three years since Class Counsel investigated, developed, and initiated this litigation, it has been Class Counsel's significant efforts that have moved the Parties towards settlement. As Kaiser's counsel recognized, it was Class Counsel's efforts that spurred the internal investigation that not only led to the removal of the offending technologies and improved disclosure of Kaiser's privacy practices, but also resulted in Kaiser's April 2024 notice to regulators, Kaiser members, and the public about the breach. *See* Disc. Hr'g Tr. at 53:25-54:1 (July 18, 2024), ECF No. 217. It was Class Counsel's diligent management of discovery efforts and commitment to litigating discovery disputes which revealed—even as the Parties continued to litigate motions to dismiss—the extent of the technology deployed on Kaiser's Site and Apps, as well as Kaiser's inadequate controls to ensure Kaiser members' privacy. And it was the continued risk of hard-fought litigation in this forum, including the potential appeal of this Court's order compelling arbitration, that drove the Parties' Settlement in advance of the Court's hearing on Kaiser's Motion to Dismiss Plaintiffs' Consolidated Complaint. *See* ECF No. 342.

LKS, on the other hand, made no such efforts nor produced any results on behalf of the Class. Despite providing initial notice to Kaiser on February 9, 2024 of its intention to pursue arbitration, ***LKS did not even attempt to arbitrate*** these claims until December 23, 2024. *See* Objector's Motion

at 4-5. LKS did not seek to compel Kaiser to arbitration, or seek a judicial determination as to the applicable rules in any such action. And, LKS's decision to file the *Guevara* action (based in part on discovery from Class Counsel's case) was in no way calculated to benefit the Class; it was merely a continuation of the same flawed strategy it has pursued from the outset: avoid doing any real work or commit any resources and instead attempt to profit from the developments in this litigation.

The gist of LKS's argument is that, by signing up individuals following the Court's order compelling arbitration, it was responsible for creating a "multi-front litigation" and created settlement leverage that now entitles it to a fee. Of course, the proof contained in their motion amounts to nothing more than their self-serving statements: no affidavits from Kaiser saying this is what drove the settlement; no emails or documents from Kaiser (or anyone else) supporting this position; nothing but pure speculation and rhetoric. LKS's conduct merely sets a bad precedent with a perverse incentive for firms to sign up individuals as a means for creating purported "multi-front" litigations and seeking fees. In fact, during the meet and confer on this motion, LKS agreed that it was not seeking a traditional common benefit award, but a "reverse common benefit award"—it is difficult to overstate the potential for abuse arising from such a poor precedent.

Notably, no firms representing individuals other than LKS have staked out this extraordinary position—a position which notably is not supported by a single case in their brief. This is hardly surprising. LKS's scattershot efforts over the course of some eighteen months—during which it was unwilling to adjudicate any of its clients' substantive or procedural rights—were well-known to the Parties at the time of their mediation. Indeed, the Parties' settlement expressly contemplated the possibility of Kaiser's continued engagement with arbitration claimants, and the total value of the settlement amount fully contemplated that LKS and other firms would file a significant number of opt-outs. As such, the parties expressly intended, including in memorializing the Supplemental Agreement to the Settlement, that arbitration claimants opting out of the settlement (whether through LKS or one of the other firms signing up clients) would deal directly with Kaiser. Any suggestion that LKS's arbitration/state court gambit drove this settlement is farfetched.

Finally, LKS does not even attempt to quantify the monetary benefit conferred on the Settlement Class, much less demonstrate that it exceeds the more than $1 million in fees that it seeks.

LKS does not, for instance, identify any substantive term of the settlement agreement that is attributable to its efforts, and instead only points to ancillary procedures that benefitted its own opt-out clients. Nor can LKS explain how the amount recovered by Settlement Class members increased due to its efforts. Indeed, as this Court recognized, LKS did "not make any contention that the relief provided for by the proposed settlement is unreasonable as a substantive matter—*e.g.*, that the gross settlement fund is too low." ECF No. 384 at 3-4. On this basis alone, LKS's request for fees must be denied. *See Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) (objectors must "produce an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class").

### B. LKS's Objections Benefitted Only Its Own Efforts at Continued Litigation

LKS insists it is entitled to fees based on its objections, which somehow purportedly benefited the Class. First, LKS points to the proposed Settlement Class Definition that was "overly expansive" because it potentially included individuals seeking to arbitrate their claims. Objector's Motion at 14. The Court, however, broadly rejected LKS's arguments regarding the Settlement Class Definition. While certain changes were made clarifying that class members were not required to have paid a filing fee to be excluded, the Court "reject[ed] Objectors' contention" that "something *less* than a formal demand for arbitration . . . should be good enough to take someone out of the settlement class definition," because "*simply threatening to arbitrate*" was insufficient. ECF No. 384 at 5. Similarly, the Court declined to exclude LKS clients who had demanded arbitration but subsequently "initiat[ed] lawsuits in state court," because those clients "are all now in litigation and have effectively withdrawn from arbitration." *Id.* at 6. Overall, the Court noted it was "inclined to grant preliminary approval" if the Settlement Class Definition excluded "those who have demanded or initiated arbitration and are still in the arbitration track." *Id.* at 6, 10.

Next, LKS claims its objections successfully challenged "unduly burdensome" opt-out requirements in the settlement. Objector's Motion at 15. However, far from endorsing its position, the Court ***rejected*** LKS's demand for mass opt-outs, and instead endorsed the widely accepted opt-out procedure the Parties provided for in their settlement agreement, which required individualized opt-outs with a wet-ink or electronic signature. ECF No. 384 at 7-9. Indeed, the Court explained that

individual opt-outs are “vital” because they “avoid[] a third party or lawyer representing that they have that class member’s authority, without the class member making an informed, individual decision.” *Id.* at 7 (quoting *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020)). Courts in this District roundly reject requests for attorneys’ fees where “the court did not rely on the Objectors’ arguments in issuing its decision.” *Rose v. Bank of Am. Corp.*, 2015 WL 2379562, at *2 (N.D. Cal. May 18, 2015).

Finally, LKS seeks to claim credit for (1) the longer opt-out period suggested ***by the Court***; and (2) additional provisions facilitating the submission of LKS’s clients’ individualized opt-outs by counsel. Objector’s Motion at 15-16. Neither support an award of fees. First, as noted, the longer opt-out period was adopted by the Parties at the suggestion of the Court, not LKS. *See* Preliminary Approval Hr’g Tr. at 43:22-25 (Oct. 23, 2025), ECF No. 385 (“And maybe we need to give more time, give the numbers here, looks like we have about 30,000 people. But I think it’s worth the extra -- we can extend it by, you know, some period of time. I’m happy to do that.”). Second, not only did the Parties’ original agreement not prohibit counsel from submitting individualized opt-outs, but a change to reduce counsel’s burden and costs associated with submitting opt outs has little relevance to the over 13 million class members who remained in the settlement class. And, the accommodations through the opt-out verification process provided to counsel like LKS who represent groups of potential opt-outs actually increased the settlement administration costs to the detriment of the Settlement Class.

Fundamentally, these minor changes fall far short of the sort of substantial benefits that entitle an objector’s counsel to recover fees. Indeed, courts routinely deny such requests even where they entail more substantial procedural protections than those at issue here. *See Rodriguez*, 688 F.3d at 658 (“[O]bjectors who do ‘not increase the fund or otherwise substantially benefit the class members’ are not entitled to fees, even if they bring ‘about minor procedural changes in the settlement agreement.’”) (quoting *Vizcaino*, 290 F.3d at 1051-52); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *15 (N.D. Cal. Apr. 3, 2013) (procedural changes, including correction of an improper notice provision regarding the attorneys’ fees motion and requiring class counsel to document their expenses, did not provide substantial benefit to class); *In re Leapfrog Enters., Inc.,*

*Sec. Litig*., 2008 WL 5000208, at *3 (finding that a procedural benefit did not constitute "a substantial benefit on its class or contribution to the common fund").[5]

But more to the point, LKS's objections were self-serving and amounted to little more than trying to protect its own interests notwithstanding the potential negative consequences to the Settlement Class. In fact, had LKS been successful, thousands of its purported clients would have automatically been excluded from the settlement ***with no further notice or opportunity to make an informed choice*** about whether to participate in the settlement; and not only did the Court roundly reject LKS's demand for a mass opt-out in violation of its clients' due process rights, it expressly required that prior arbitration claimants be provided with the opportunity to ***opt-in*** to the settlement. *See* ECF No. 384 at 9.

And, of course, LKS still represents roughly 12,000 individuals that have, to date, sought to exclude themselves from the litigation. Class Counsel did not seek to release or bar any of those claims as part of the Settlement. LKS is now free to pursue those claims, or not, as it deems appropriate and to seek fees pursuant to any retainer agreement. The work LKS did in this case was for its own benefit and to protect its right to proceed on behalf of these individuals. In essence, this is what LKS wanted—that it now seeks a fee from Class Counsel, based on this record, is puzzling.

### C. LKS's Requested Fee Amount Is Unreasonable

Even if LKS's efforts did result in a substantial benefit to the settlement class (they did not), they would only be entitled to a fee for work that "increase[d] the fund or otherwise substantially benefit[ted] the class members." *Vizcaino*, 290 F.3d at 1052. Moreover, a court may "deny fees to objectors whose work is duplicative . . . and confer[s] no unique benefit to the class." *Rodriguez*, 688 F.3d at 658-59.

LKS seeks to recover from the settlement class attorney time dedicated solely to the interests of its clients who opted out of this settlement. For example, LKS seeks to charge members of the settlement class for its communications with its own clients (461 hours; $203,467), its management

[5] LKS's authority is inapposite and does not compel a different result. There, the objectors' efforts ***increased*** the number of class members participating in the settlement. *See Cohorst v. BRE Props., Inc.*, 2012 WL 2001754, at *3 (S.D. Cal. June 5, 2012) (objector's efforts "resulted in the inclusion of 345 additional class members"); *In re Homestore.com, Inc.*, 2004 WL 2792185, at *1 (C.D. Cal. Aug. 10, 2004) (objector's efforts to have the class re-noticed "was crucial to the ability of the class members' ability to recover money from the general fund").

of its clients' cases (123.20 hours; $56,966), and its administrative tasks (39.70 hours; $16,514). ECF No. 411-9 at 2. Similarly, the Settlement Class realized no advantage from LKS's unsuccessful efforts to settle its clients' claims at a mediation (134.50 hours; $115,599.50) in which Class Counsel represented the interests of the class. ECF No. 411-10 at 2. These tasks, carried out on behalf of clients who have opted out of this settlement, provided no benefit, substantial or otherwise, to the Settlement Class. Nor can LKS seek reimbursement for tasks which are wholly duplicative of Class Counsel's efforts. LKS's belated pursuit of discovery (10.40 hours; $4,712), or its significantly more limited investigations and factual research (95.50 hours; $43,760.50), pale in comparison to the significant time invested by Class Counsel and achieved, if anything, minimal results. ECF No. 411-9 at 2. It is unclear, for instance, how discovery served in the stayed state court litigation after the Parties here agreed to a settlement provided any benefit to class members whatsoever. What is clear, however, is that LKS spent practically no time at all investigating the facts, digging into discovery, and briefing the dispositive motions that ultimately brought this case to a successful resolution on behalf of the Settlement Class. It was undeniably Class Counsel's efforts in this regard that resulted in relief for the Settlement Class.

Ultimately, there is no basis to award LKS fees for its efforts, which only benefitted its clients who have opted out of the settlement—not the Settlement Class. Nor should LKS be compensated for duplicative, nonproductive work that was not authorized by the court-appointed Class Counsel in this action. Even if LKS's efforts provided a benefit to the Settlement Class (they did not), there is no basis to award fees for unnecessary work.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny LKS' Motion.

DATED: March 26, 2026

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Tyler S. Graden*
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

-and-

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

*Counsel for Plaintiffs and the Settlement Class*

**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey, Cal Bar No. 125961
bobmackeyesq@aol.com
16320 Murphy Road
Sonora, CA 95370
Telephone: (412) 370-9110

-and-

**MIGLIACCIO & RATHOD LLP**
Jason S. Rathod
jrathod@classlawdc.com
412 H Street NE, no. 302
Washington, DC, 20002
Telephone: (202) 470-3520

*Additional Counsel for Plaintiff Alexis Sutter*