**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com
Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, PC**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Class Counsel*
(*Additional Attorneys Listed on Signature Page*)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE, JOHN DOE II, JOHN DOE III, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, JANE DOE V, and ALEXIS SUTTER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and KAISER FOUNDATION HEALTH PLAN OF WASHINGTON,

Defendants.

Case No. 3:23-cv-02865-EMC

**REPLY IN FURTHER SUPPORT OF (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. Edward M. Chen
Date: May 7, 2026
Time: 1:30 p.m.
Court: 5

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 4

A. The Extensive Court-Approved Notice Program Supports Approval of the Motions ..... 4

B. The Reaction of the Settlement Class Supports Approval of the Motions ..... 6

1. The Settlement Class's Positive Reaction Supports Approval of the Settlement and Plan of Allocation ..... 6

2. The Settlement Class's Positive Reaction Supports Approval of Class Counsel's Request for Attorneys' Fees, Litigation Expenses, and Service Awards ..... 7

C. The Objections Should Be Overruled ..... 8

1. Objections to the Amount of Individual Recovery Are Without Merit ..... 8

2. Objections to the Court-Approved Notices Are Without Merit ..... 11

3. Objections to the Plan of Allocation Are Without Merit ..... 11

4. Objections to the Requested Fee Award Are Without Merit ..... 12

5. Objections to the Proposed Service Awards Are Without Merit ..... 14

D. Result of Claims Process ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**


*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ....................9

*AdTrader, Inc. v. Google LLC*,
2022 WL 16579324 (N.D. Cal. Nov. 1, 2022) ....................14

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ....................14

*In re Apple Inc. Device Performance Litig.*,
2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ....................14

*In re Apple iPhone 4 Prods. Liab. Litig.*,
2012 WL 3283432 (N.D. Cal. Aug. 10, 2012) ....................16

*In re Apple iPhone/iPod Warranty Litig.*,
2014 WL 12640497 (N.D. Cal. May 8, 2014) ....................11

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ....................11

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ....................8

*Churchill Vill. LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ....................7

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ....................8, 14

*In re Easysaver Rewards Litig.*,
906 F.3d 747 (9th Cir. 2018) ....................13

*In re Facebook Biometric Info. Priv. Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) ....................10

*In re Facebook Internet Tracking Litig.*,
2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) ....................10

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. April 22, 2010) ....................7

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004)........ 7

*Gong-Chun v. Aetna Inc.*,
2012 WL 2872788 (E.D. Cal. July 12, 2012)........ 8

*Hernandez v. Dutton Ranch Corp.*,
2021 WL 5053476 (N.D. Cal. Sep. 10, 2021)........ 15

*Hubbard v. Google LLC*,
2026 WL 92062 (N.D. Cal. Jan. 13, 2026)........ 15

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012)........ 10

*Miller v. Ghirardelli Chocolate Co.*,
2015 WL 758094 (N.D. Cal. Feb. 20, 2015)........ 15

*Moore v. Verizon Commc'ns Inc.*,
2013 WL 4610764 (N.D. Cal. Aug. 28, 2013)........ 15

*Nwabueze v. AT&T Inc.*,
2013 WL 6199596 (N.D. Cal. Nov. 27, 2013)........ 11

*O'Brien v. Brain Rsch. Labs, LLC*,
2012 WL 3242365 (D.N.J. Aug. 9, 2012)........ 15

*Pollard v. Remington Arms Co., LLC*,
320 F.R.D. 198 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018)........ 16

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)........ 7

*Rodriquez v. It's Just Lunch Int'l*,
2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020)........ 9

*Schuchardt v. L. Office of Rory W. Clark*,
314 F.R.D. 673 (N.D. Cal. 2016)........ 8

*Senne v. Kan. City Royals Baseball Corp.*,
2023 WL 2699972 (N.D. Cal. Mar. 29, 2023)........ 8, 10

*Terry v. Hoovestol, Inc.*,
2019 WL 2061105 (N.D. Cal. May 9, 2019)........ 8

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022)........ 15

*In re TracFone Unlimited Service Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) (Chen, J.) .......... 10

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .......... 14

*Waldbuesser v. Northrop Grumman Corp.*,
2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) .......... 9

*Will v. Gen. Dynamics Corp.*,
2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) .......... 9

*Wren v. RGIS Inventory Specialists*,
2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .......... 7

Plaintiffs John Doe, John Doe II, Jane Doe, Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V, and Alexis Sutter (collectively, the "Plaintiffs"), respectfully submit this reply, along with the Third Supplemental Declaration of Paul Mulholland of Strategic Claims Services, Inc. ("Supp. Mulholland Decl.") and Supplemental Declaration of Tyler S. Graden on behalf of Class Counsel ("Supp. Graden Decl."). Plaintiffs and Class Counsel make this submission in further support of their (I) Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation (ECF No. 401) and their (II) Motion for Attorneys' Fees, Litigation Expenses, and Service Awards (ECF No. 402) (together, the "Motions" and collectively with ECF No. 403 the "Opening Papers").[1]

## I. INTRODUCTION

As detailed in Plaintiffs' and Class Counsel's Opening Papers, the proposed Settlement—providing for a significant common-fund recovery currently anticipated to be $47,500,000 in addition to the important non-monetary relief already obtained through Plaintiffs' and Class Counsel's efforts—is an excellent result for the Settlement Class.[2] The Settlement is the culmination of years of hard-fought litigation and protracted arm's-length negotiations between the Parties including mediations before two highly experienced and respected retired federal judges. ECF No. 403, ¶ 9.

As detailed in the Opening Papers, the Settlement, if approved, will provide a substantial recovery for the Settlement Class and avoids the very serious risk of continued litigation—through class certification, summary judgment, a trial, and likely post-trial appeals. ECF No. 403, ¶¶ 53-61. The Settlement Amount (after deduction of Court-approved fees and expenses) will be distributed to Settlement Class Members on a *pro rata* basis pursuant to the Plan of Allocation. In addition, Class Counsel's request for attorneys' fees in the amount of 33% of the Settlement Fund and litigation

[1] Unless otherwise defined, all capitalized terms shall have the meanings ascribed to them in the Stipulation of Settlement dated August 13, 2025 and all exhibits thereto as amended by agreement of the Parties (*see* ECF Nos. 373, 374, 388) and Court Order (*see* ECF Nos. 362, 384, 387), and October 23, 2025 and November 25, 2025 hearings) (the "Stipulation"), as filed with the Clerk of the Court (comprehensively referred to as the "Settlement").

[2] As represented in Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, Certification of Settlement Class, Notice to Settlement Class and Memorandum of Points and Authorities in Support, the proposed $46 million Settlement could increase to $47.5 million under certain conditions. ECF No. 345, at 1. Currently those conditions have been met and the Settlement will be increased to the maximum amount of $47.5 million. *See* Supp. Graden Decl. ¶ 3. To the extent this changes before the Fairness Hearing, supplemental papers will be submitted.

expenses in the amount of $605,103.06 is fair and reasonable considering the result achieved for the Settlement Class, including removal of the offending technologies at the heart of the action, and the dedication and hard work performed by Class Counsel through highly contentious motion practice, extensive discovery efforts, and protracted settlement negotiations. ECF No. 403, ¶ 9.

Given the quality of the Settlement, it is not surprising that the Settlement Class's response has been overwhelmingly positive. In accordance with the Court's December 5, 2025 Order Preliminarily Approving Settlement and Approving Notice of Proposed Settlement of Class Action and Fairness Hearing (ECF No. 393) ("Preliminary Approval Order"), the Settlement Administrator, Strategic Claims Services, Inc. ("SCS"), conducted an extensive notice campaign, including disseminating the Short Form Notice (by mail and/or email) to 13,134,307 Settlement Class Members; sending supplemental notices to 454,693 Settlement Class Members whose emails were returned as undeliverable; and posting Settlement-related information and deadlines, including copies of the Long Form Notice, Claim Form, and Plan of Allocation on the Settlement Website, www.KaiserPrivacySettlement.com.[3] Moreover, this was not the first time Settlement Class Members were made aware of the privacy breach as Kaiser previously sent a privacy breach notice to Settlement Class Members on April 12, 2024—one day after the Court ruled on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

In addition, the Settlement has attracted a significant amount of publicity, with multiple news organizations reporting on the Settlement and claims process, thus providing notice beyond what was initially contemplated as part of the notice plan submitted at preliminary approval.[4] As required,

---

[3] *See* Supp. Mulholland Decl., ¶¶ 5-14.

[4] *See, e.g.*, Irene Wright, *Kaiser Permanente reaches $46 million settlement. Are you owed money?*, USA Today (Jan. 14, 2026), https://www.usatoday.com/story/news/2026/01/14/heres-how-to-make-a-claim-for-part-of-kaiser-permanente-settlement/88175728007/; KIRO 7 News Staff, *Kaiser Permanente to pay up to $46M over alleged data breach, here's how to file a claim*, KIRO 7 (Jan. 13, 2026), https://www.kiro7.com/news/local/kaiser-pay-up-46m-over-alleged-data-tracking-websites-apps-heres-how-file-claim/EIHH57P3LNBUDKVWJIBLENZZAE/; KTVU Staff, *Kaiser Permanente $46M settlement: How to claim your payout*, KTVU FOX 2 San Francisco (Jan. 15, 2026), https://www.ktvu.com/news/kaiser-permanente-46m-privacy-settlement-see-you-qualify; Madilynne Medina, *Kaiser Permanente members could get cash in $46M privacy settlement*, SFGATE (Jan. 14, 2026), https://www.sfgate.com/bayarea/article/kaiser-members-get-cash-46-million-privacy-21295417.php; Alexa Mae Asperin, *Kaiser Permanente's $46M settlement: See if you qualify for a payout and how to file a claim*, FOX 11 Los Angeles (Jan. 15, 2026), https://www.foxla.com/news/kaiser-permanente-data-privacy-breach-settlement-file-claim; Top

Kaiser also issued notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, *et seq*., to the U.S. Department of Justice, Office of Attorney General, Colorado Department of Law, Georgia Office of the Attorney General, Hawaii Department of the Attorney General, Maryland Office of the Attorney General, Oregon Department of Justice, Virginia Office of Attorney General, Washington Attorney General's Office, and Washington, D.C. Office of the Attorney General, and no State Attorney General has objected or sought to intervene. ECF No.418. As a result of these notice efforts, Settlement Class Members were well informed of the Settlement, the Plan of Allocation, the requested attorneys' fees, litigation expenses, and service awards, as well as, *inter alia*, the procedures and deadlines for filing an objection, requesting exclusion from the Settlement Class, and submitting a Claim Form in order to share in the Settlement.

In response to this robust notice campaign, there have been ***only nineteen objections*** received—eight filed pursuant to the Court's Preliminary Approval Order and the Long Form Notice,[5] and eleven informal objections received by SCS and/or Class Counsel[6]—a miniscule number compared to the more than 13 million Settlement Class Members and the 753,150 timely Claims Forms received from Settlement Class Members. *See* Supp. Mulholland Decl., ¶¶ 5, 15. As discussed below in Section II.C, the objections assert general complaints regarding the Settlement Amount; the Notices; the Plan of Allocation; and the requested attorneys' fees and service awards, without any substantive consideration of the salient facts of this case or the work performed by Class Counsel. All objections should be overruled. In addition, SCS reports that 22,853 Settlement Class Members have requested exclusion from the Settlement Class, representing an exceedingly small portion (roughly 0.2%) of the Settlement Class. *See* Supp. Mulholland Decl., Ex. C (list of exclusion

---

Class Actions, *$47.5M Kaiser Permanente data privacy class action settlement*, Top Class Actions (Jan. 20, 2026), https://topclassactions.com/lawsuit-settlements/closed-settlements/47-5m-kaiser-permanente-data-privacy-class-action-settlement/; Tracy Bagdonas, *Up to $47.5M Kaiser Settlement Ends Class Action Lawsuit Over Alleged Disclosure of Patient Info [UPDATE]*, ClassAction.org (Jan. 8, 2026), https://www.classaction.org/news/up-to-47.5m-kaiser-settlement-ends-class-action-lawsuit-over-alleged-disclosure-of-patient-info; Steve Alder, *Kaiser Permanente Agrees to Pay Up to $47.5 Million to Settle Web Tracker Litigation*, The HIPPA Journal (Dec. 3, 2025), https://www.hipaajournal.com/kaiser-permanente-website-tracker-breach-affects-13-4-million-individuals/.

[5] *See* ECF Nos. 404, 405, 406, 407, 408, 409, 410, 415.

[6] The informal objections are attached to the Supplemental Graden Declaration as Exhibits A-K.

requests). Of the 22,853 requests for exclusion received, roughly 20,717 are part of mass opt-outs, meaning only approximately 2,136 individuals not represented by mass opt-out counsel (or roughly 0.02% of the Settlement Class) decided to request exclusion after receiving the Notice.[7] *Id.*

Thus, for the reasons herein and in the Opening Papers, the Motions should be approved.

## II. ARGUMENT

Plaintiffs and Class Counsel respectfully submit that their Opening Papers demonstrate that approval of the Motions is warranted. Now that the deadline for objecting and requesting exclusion from the Settlement Class has passed, the overwhelmingly positive response from Settlement Class Members lends additional support for the Court's approval of the Motions.

### A. The Extensive Court-Approved Notice Program Supports Approval of the Motions

Pursuant to the Court's Preliminary Approval Order, on December 28, 2025, SCS established the Settlement Website, www.KaiserPrivacySettlement.com. *See* Supp. Mulholland Decl., ¶ 13. The Settlement Website includes information regarding the Settlement, including important dates and deadlines, and downloadable copies of key case documents. *Id.*

On January 3, 2026, SCS began disseminating the Short Form Notice to Settlement Class Members, and posted the Long Form Notice on the Settlement Website, in advance of the January 16, 2026 notice deadline. *Id.* ¶¶ 7, 13. The Court was closely involved in substantively finalizing the Notices and establishing the opt-out procedure prior to preliminarily approving the Settlement. *See* ECF Nos. 373, 374, 388, 390, 392 (Court-ordered briefing regarding modifications to Notices, Settlement Class definition, and the procedure for opting out). Pursuant to the Preliminary Approval Order, SCS emailed the Short Form Notice ("Email Notice") to 12,943,035 Settlement Class Members whose email addresses were provided by Kaiser. *Id.* ¶ 7. SCS also sent Short Form Notices by first-class U.S. mail ("Mail Notice") to 191,272 Settlement Class Members whose email addresses were not provided. *Id.* Prior to mailing the Mail Notices, SCS ran each of the mailing addresses through the National Change of Address database to ensure the most current address was used. *Id.*

[7] Counsel representing the mass opt-outs are Labaton Keller Sucharow LLP ("Labaton"); Bryson Harris Suciu & DeMay, PLL; Potter Handy, LLP; and Shay Legal, APC.

SCS has disseminated a total of 13,134,307 Short Form Notices (i.e., 12,943,035 by email and 191,272 by mail). *Id.* ¶ 7. Of the 12,943,035 Email Notices, 1,240,366 were returned as undeliverable. *Id.* ¶ 8. SCS sent a second Email Notice to the 762,304 email addresses identified as "soft" bounces, with 94,455 of those second Email Notices returned as undeliverable. *Id.* After these unsuccessful attempts to deliver the Email Notices to certain Settlement Class Members, SCS requested that Kaiser provide mailing addresses so that SCS could send these Settlement Class Members a Short Form Notice by mail. *Id.* ¶ 9. Defendants provided SCS with mailing addresses for these Settlement Class Members on January 15, 2026, January 21, 2026, February 25, 2026, March 9, 2026, and March 10, 2026. *Id.* Following the receipt of these mailing addresses, SCS, between February 2, 2026 and March 19, 2026, prepared and mailed 454,693 Short Form Notices by first-class U.S. mail to the Settlement Class Members whose emails were undeliverable and for whom mailing addresses were provided. *Id.* Of the total 645,965 Mail Notices disseminated,[8] 51,382 Mail Notices (or 7.95%) were initially returned as undeliverable. *Id.* ¶ 10. Of these, the United States Postal Service provided forwarding addresses for 1,843, and SCS promptly mailed another Mail Notice to each updated address. *Id.* The remaining 49,539 Mail Notices returned as undeliverable were "skip-traced" to obtain updated addresses, and 27,829 were re-mailed to the updated addresses. *Id.*

Consistent with the Preliminary Approval Order, the mailed/emailed Short Form Notice, along with the Long Form Notice posted on the Settlement Website, informed Settlement Class Members of the terms of the proposed Settlement and Plan of Allocation, and that Class Counsel would be applying for: (i) an award of attorneys' fees in an amount not to exceed 33% of the Settlement Fund; (ii) litigation expenses not to exceed $900,000; and (iii) service awards to Plaintiffs in an aggregate amount not to exceed $40,000 (i.e., $5,000 to each). *See* Supp. Mulholland Decl., Exs. A, B. The Notices also advised Settlement Class Members of their right to request exclusion from the Settlement Class and to object to the proposed Settlement, the proposed Plan of Allocation and/or the requested attorneys' fees, litigation expenses, and service awards to Plaintiffs, and the

[8] This number combines the initial 191,272 Mail Notices disseminated based on physical mailing addresses provided by Kaiser and the 454,693 supplemental Mail Notices that were disseminated to Settlement Class Members whose Email Notices were returned as undeliverable.

March 12, 2026 deadline for doing so. *See* Supp. Mulholland Decl., Exs. A, B. Additionally, SCS and Class Counsel responded to over 29,487 calls and 24,935 email inquiries regarding the Settlement. Supp. Graden Decl., ¶ 4; Supp. Mulholland Decl., ¶¶ 12, 14.

Accordingly, the notice campaign was extensive and robust, sufficiently providing Settlement Class Members with information about the Settlement as well as their rights and obligations in connection with the Settlement.

### B. The Reaction of the Settlement Class Supports Approval of the Motions

#### 1. The Settlement Class's Positive Reaction Supports Approval of the Settlement and Plan of Allocation

The overwhelmingly positive reaction of the Settlement Class supports approval of the Settlement and Plan of Allocation. As noted above, there have been ***only nineteen objections*** received (eight filed pursuant to the Court's Preliminary Approval Order[9] and eleven additional informal objections received by SCS and/or Class Counsel[10])—an exceedingly small number compared to the size of the Settlement Class and the number of Claims Forms submitted. The low number of objections to the Settlement supports final approval. *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *14 (N.D. Cal. April 22, 2010) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (quotation omitted); *see also, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming approval of settlement where court found "a favorable reaction to the settlement" based on the submission of 54 objections and 376,301 notices); *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement given 45 objectors relative to 90,000 potential class members); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *10-11 (N.D. Cal. Apr. 1, 2011) (16 objections relative to 62,594 notices "strongly supports approval of the settlement"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457-58 (S.D.N.Y. 2004) (twelve objections (six timely and six untimely) out of a class of approximately one million "constitutes a ringing endorsement of the settlement by class members").

---

[9] *See* ECF Nos. 404, 405, 406, 407, 408, 409, 410, 415.

[10] *See* Supp. Graden Decl., Exs. A-K.

Likewise, the fact that only 22,853 Settlement Class Members have requested exclusion—20,717 of which were part of mass opt-outs coordinated by counsel, and only 2,136 submitted by individual Settlement Class Members following extensive notice efforts (including the emailing/mailing of over 13,134,307 notices)—also provides strong support for approval of the Settlement. *See, e.g.*, *Senne v. Kan. City Royals Baseball Corp.*, 2023 WL 2699972, at *7 (N.D. Cal. Mar. 29, 2023) ("[T]he response of the class members has been overwhelmingly positive, with only a very small percentage of the class of . . . opting out."); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *14 (N.D. Cal. Feb. 11, 2016) (noting that a low number of exclusions supports the reasonableness of a class action settlement); *Terry v. Hoovestol, Inc.*, 2019 WL 2061105, at *5 (N.D. Cal. May 9, 2019) (finding reaction of class highly favorable where 5% of the class opted out); *Schuchardt v. L. Office of Rory W. Clark*, 314 F.R.D. 673, 686 (N.D. Cal. 2016) (finding reaction of class strongly in favor of the settlement where 3% of the class opted out); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding reaction of class to the proposed settlement to be overwhelmingly positive where opt-outs comprised 4.86% of the class); *Gong-Chun v. Aetna Inc.*, 2012 WL 2872788, at *16 (E.D. Cal. July 12, 2012) (finding the fact that "less than two percent of Class Members opted out of the Settlement" supported approval). By way of comparison, SCS has received over 750,000 Claim Forms from Settlement Class Members seeking to receive a distribution from the Settlement, dwarfing the number of opt-outs.[11] Supp. Mulholland Decl., ¶¶ 22-23.

### 2. The Settlement Class's Positive Reaction Supports Approval of Class Counsel's Request for Attorneys' Fees, Litigation Expenses, and Service Awards

The positive reaction of the Settlement Class should also be considered with respect to Class Counsel's request for attorneys' fees, litigation expenses, and service awards. Here, following the mailing/emailing of more than 13 million Short Form Notices, only eight[12] of the nineteen total objections received (a tiny fraction of 1% of the Settlement Class) took issue with the requested attorneys' fees, litigation expenses, and/or service awards. This small percentage of objections to the

[11] Of the Claims submitted, 8,388 were submitted after the claims filing deadline. Supp. Mulholland Decl., ¶ 23. Class Counsel believes that all valid Claims received on or before May 6, 2026—one day before the Fairness Hearing—should be honored.

[12] *See* ECF Nos. 404, 406, 407, 408, 410, 415; Supp. Graden. Decl., Exs. A, G.

requested attorneys' fees, litigation expenses, and service awards supports approval of these requests, especially here where Class Counsel's efforts resulted in not just a large monetary fund but also removal of the offending technology. *Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818, at *5 (C.D. Cal. Oct. 24, 2017) (finding objection by 0.00001% of the class was "remarkably small given the wide dissemination of notice," which justified fee award of 33 1/3%); *Rodriquez v. It's Just Lunch Int'l*, 2020 WL 1030983, at *11 (S.D.N.Y. Mar. 2, 2020) (finding the "relatively low number of objections weighs in favor of approving the attorneys' requested fees as reasonable" where 0.00001% of the class members objected); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015) (noting 0.00003% objected to attorneys' request for fees and costs out of 181,000 class members mailed); *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *1 (S.D. Ill. Nov. 22, 2010) (finding 0.00003% objections out of total class notices was a "remarkably small number of objections" and "an indication of the class's overwhelming and justified support for their Class Counsel and Class Counsel's Application"). Further, as discussed below in Section C.4, the eight objections to the requested attorneys' fees lack substantive merit.

In sum, the favorable reaction of the Settlement Class strongly supports approval of the Settlement, Plan of Allocation, attorneys' fees, litigation expenses, and service awards.

### C. The Objections Should Be Overruled

A total of nineteen individuals have submitted objections.[13] As an initial mater, eleven objections failed to comply with the procedures set forth in the Court's Preliminary Approval Order and Long Form Notice[14]and three provided no grounds for their objection.[15] Regardless, all nineteen objections lack any factual or legal basis, are without merit, and should be overruled.

#### 1. Objections to the Amount of Individual Recovery Are Without Merit

Twelve Settlement Class Members objected to the Settlement Amount, with seven claiming

---

[13] [redacted] (ECF No. 404), [redacted] (ECF No. 405), [redacted] (ECF No. 406), [redacted] (ECF No. 407), [redacted] (ECF No. 408), [redacted] (ECF No. 409), [redacted] (ECF No. 410), [redacted] (ECF No. 415), D.J. (Supp. Graden Decl., Ex. A), W.E.G. (Supp. Graden Decl., Ex. B), S.T. (Supp. Graden Decl., Ex. C), E.S. (Supp. Graden Decl., Ex. D), K.H. (Supp. Graden Decl., Ex. E), K.L.S. (Supp. Graden Decl., Ex. F), M.F. (Supp. Graden Decl., Ex. G), T.H. (Supp. Graden Decl., Ex. H), T.T. (Supp. Graden Decl., Ex. I), C.C. (Supp. Graden Decl., Ex. J), and T.W. (Supp. Graden Decl., Ex. K).

[14] *See* Supp. Graden Decl., Exs. A-K.

[15] *See* Supp. Graden Decl., Exs. C, D, H.

the Settlement Amount is too low,[16] four claiming the Settlement Amount is too high,[17] and one asserting the amount is both too low and too high.[18] These objections are conclusory and do not provide any basis to warrant the Court's rejection of the Settlement. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 823-24 (9th Cir. 2012) (affirming rejection of objector's complaint regarding the settlement amount based on lack of any legal support); *In re TracFone Unlimited Service Plan Litig.*, 112 F. Supp. 3d 993, 1002 (N.D. Cal. 2015) (Chen, J.) ("[Objector's] specific arguments regarding the alleged inadequacy of the monetary relief in this settlement are all predicated on untenable assumptions, and must be rejected."); *Senne*, 2023 WL 2699972, at *14 (rejecting objectors' assertion that "the overall amount of the settlement is inadequate" after finding the settlement amount to be fair and reasonable); *In re Facebook Internet Tracking Litig.*, 2022 WL 16902426, at *6-9 (N.D. Cal. Nov. 10, 2022) (rejecting five objections to the settlement amount); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 627 (N.D. Cal. 2021) ("But simply pointing out, as objectors do, that the $650 million settlement amount is less than the theoretical possibility of billions of dollars were the class to hit a home run at trial is not illuminating."). Indeed, the Court has already considered the benefit conferred on the Settlement Class by the Settlement at the preliminary approval stage. *See* Preliminary Approval Hr'g Tr. at 40:15-25 (10/26/25), ECF No. 385 ("[The Court:] I will just say this for the record – that the terms of the settlement . . . seems to be fair, adequate, and reasonable for all the reasons stated . . . The main thing is that we're getting, you know, real money to people."); Preliminary Approval Order, ECF No. 393, ¶ 5 (considering proposed Settlement Amount and finding "that it will likely be able to finally approve the proposed Settlement"); ECF No. 384 at 3-4 (recognizing Labaton did "not make any contention that the relief provided for by the proposed settlement is unreasonable as a substantive matter—*e.g.*, that the gross settlement fund is too low").

The objectors asserting that the Settlement Amount is too low provide no basis for the amount they believe would be fair (indeed, all but one fail to even suggest an alternative amount), and instead

[16] *See* ECF Nos. 404, 405, 406, 408; Supp. Graden Decl., Exs. B, G, K.
[17] *See* [redacted] Objection, ECF No. 415 ("[redacted]"); Supp. Graden Decl., Exs. A, E, F.
[18] *See* ECF No. 407 at 2 (stating first that [redacted]," and later that [redacted]").

simply state that the sensitivity of the information at issue renders the Settlement Amount inadequate.[19] These arguments ignore that the personal information exposed to the Third Party Wiretappers' offending technology is now protected because of Class Counsel's efforts which resulted in the removal of the offending technology.[20] Moreover, these objectors fail to acknowledge the serious risks to continued litigation (and the likelihood of obtaining a recovery greater than the Settlement Amount)—something the Court recognized in preliminarily approving the Settlement. *See* ECF No. 393, ¶ 5 ("The Court finds that the proposed Settlement . . . bears a reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of Plaintiffs as well as Defendant."). These conclusory objections that lack any analysis of the specifics of the case do not diminish the sufficiency of the Settlement and should be rejected.[21] *See, e.g., In re Apple iPhone/iPod Warranty Litig.*, 2014 WL 12640497, at *10 (N.D. Cal. May 8, 2014) (overruling objections "consist[ing] solely of conclusory boilerplate statements that are devoid of authority or explanation"); *Nwabueze v. AT&T Inc.*, 2013 WL 6199596, at *8 (N.D. Cal. Nov. 27, 2013) (rejecting objections that were "largely conclusory and fail to provide legal support or evidence").

As in any privacy case, putting a monetary value on personal information is a difficult task, subject to differing expert opinions and legal standards. The objective of this Settlement was to balance the strengths and weaknesses of those competing factors to come to a reasonable compromise between the Parties. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015) ("[T]he court's assessment of the likelihood of success is 'nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'"). The Settlement has achieved that result.

---

[19] *See* ECF Nos. 404, 405, 406, 407, 408; Supp. Graden Decl., Exs. B, G, K. The [redacted] Objection points to unidentified "[redacted] However, at the preliminary approval stage, Plaintiffs cite a comparator providing approximately $11.64 per claimant in a data privacy case involving tracking pixels. *See* ECF No. 345-2.

[20] For the same reason the [redacted], and [redacted] Objections' contention that the Settlement should have injunctive/forward looking relief also fails.

[21] The [redacted] Objection also makes unfounded claims of nationwide healthcare fraud, questions the legitimacy of all parties involved and points to a third-party disclosure at the bottom of a Kaiser email as purported proof that Kaiser's privacy violations continue. ECF No. 406, at 4-5. However, these issues are different from the claims resolved by this action, concerning Kaiser's Website and Apps.

**2. Objections to the Court-Approved Notices Are Without Merit**

One objection, the [redacted] Objection, raises issue with the Court-approved Notices and claims that the Notices could have been clearer. ECF No. 408, at 2. The Parties closely coordinated with the Court to create the Notices, which included the address for the Settlement Website, a case-dedicated email address, and a toll-free number that Settlement Class Members can access to obtain additional information regarding the Settlement and answers to frequently asked questions. For the reasons discussed in Plaintiffs' Motion for Preliminary Approval of the Settlement and Opening Papers, the form, method, and content of the Notices satisfy Rule 23 and due process. *See* ECF Nos. 373, 374, 388, 390, 392 (Court-ordered briefing regarding modifications to Notices, Settlement Class definition, and the procedure for opting out). There are no deficiencies in the Notices.

**3. Objections to the Plan of Allocation Are Without Merit**

Two of the nineteen objections raise concerns about the Plan of Allocation.[22] First, the [redacted] Objection discusses the high value of protected health data and proposes a tiered plan of allocation for individuals claiming that acute medical conditions or mental health records were disclosed by Kaiser to third parties. *See* ECF No. 404. However, it is Plaintiffs' position that because all Settlement Class Members had sensitive data, namely protected health information, exposed as a result of the offending technologies, no tiering was necessary or required. Moreover, the Settlement is a result of the Parties' arm's-length negotiations which took into account the multiple state statutes involved, as well as the sensitive nature of the data at issue. *See* ECF No. 403, ¶ 9. There would also be tremendous cost (and time) involved with administering a tiered payment system. And notably, the Court has suggested that tiering would be inappropriate. Preliminary Approval Hr'g Tr. at 40:19-24 (10/26/25), ECF No. 385 ("I understand there's issues about California and others, but I think you have answered those. I think there's not enough basis to have to try to reallocate. . . I'm not sure it's worth that."). Here, the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds (in a cost-effective manner) among Settlement Class Members who submit a valid Claim Form.

Second, the Parties have considered the [redacted] Objection[23] and have agreed to include a

[22] ECF Nos. 404, 410.
[23] ECF No. 410.

second potential *cy pres* recipient with a focus on data privacy: the Privacy Rights Clearinghouse. Supp. Graden Decl., ¶ 7. A recipient of many privacy-related *cy pres* awards, the Privacy Rights Clearinghouse "use[s] funding from *cy pres* awards to educate people about their privacy rights and choices, research emerging consumer privacy issues, create and improve research tools like our Data Breach Chronology and our Data Broker Database, and weigh in on policy proceedings with a consumer rights perspective."[24] Further, insofar as [redacted] objects to the selection of Institute for Public Health Innovation ("IPHI") as the *cy pres* recipient,[25] IPHI is a non-profit organization that is dedicated to improving health equity through partnerships and innovation and will confer an "indirect benefit" to absent Settlement Class Members. *In re Easysaver Rewards Litig*., 906 F.3d 747, 760 (9th Cir. 2018) (quoting *Lane*, 696 F.3d at 819) (recognizing that "class members receive an indirect benefit (usually through defendant donations to a third party)"). In addition, IPHI is the fiscal sponsor for the Common Health Coalition, which engages in work regarding the exchange of data between health care and public health systems, coordination between health care and public health, emergency preparedness, and disease detection. *See* Common Health Coalition, https://commonhealthcoalition.org/ (last visited Apr. 1, 2026). The [redacted] Objection's geographic challenge also fails because it admits that IPHI's work involves improving "[redacted]," which are states where Kaiser operates and Settlement Class Members reside. ECF No. 409, at 1; *see* ECF No. 373, at 10. IPHI works with various partners, such as the Common Health Coalition, in promoting collaboration between health care and public health organizations working across geographic borders. *See* Common Health Coalition, *2026 Common Health Challenge*, https://commonhealthcoalition.org/2026-challenge/ (last visited Apr. 1, 2026). The amount of any *cy pres* amount will be presented to the Court before distribution.

### 4. Objections to the Requested Fee Award Are Without Merit

Eight Settlement Class Members have objected to the amount of the requested attorneys' fees.[26] While the specific objections to the attorneys' fees varied—with one objection proposing a

---

[24] Privacy Rights Clearinghouse, *Cy Pres Awards*, https://privacyrights.org/cypres (last visited Apr. 1, 2026).

[25] [redacted] has filed similar objections in multiple other cases. *See* ECF No. 409.

[26] *See* ECF Nos. 404, 406, 407, 408, 410, 415; Supp. Graden. Decl., Exs. A, G.

25% cap on attorneys' fees and one objection rejecting the percentage-of-recovery method,[27] none of the objections contemplated the substantial risk undertaken by Class Counsel in prosecuting this privacy breach case (among the riskier and more uncertain areas of class action litigation) on a fully contingent basis. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *AdTrader, Inc. v. Google LLC*, 2022 WL 16579324, at *7 (N.D. Cal. Nov. 1, 2022) (33% fee award justified by "substantial risk" and results); *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *6 (N.D. Cal. Mar. 17, 2021) ("When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."); *Destefano*, 2016 WL 537946, at *17 (approving requested fee, in part, because the "risks associated with [the] case were substantial"). Furthermore, prosecuting this case against prominent nationwide defense firms required significant skill and high-quality work in order to achieve a positive result for the Settlement Class. *See Id.* ("[P]rosecution and management of a complex national class action requires unique legal skills and abilities."); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.").

The objections to the requested attorneys' fees also fail to consider the specific legal and factual circumstances of this case, as Class Counsel have done in supporting their fee request.[28] Specifically, Class Counsel have, *inter alia*, reviewed nearly 40,000 documents produced by Kaiser, conducted multiple days of in-person source code review with an expert, participated in regular discovery management conferences, successfully litigated discovery disputes including challenges to Kaiser's privilege designations, and litigated multiple rounds of motions to dismiss with multiple claims prevailing over Kaiser's challenges. ECF No. 403, ¶¶ 19-42.

These types of unsubstantiated objections have been consistently rejected by courts across the country. *See, e.g.*, *Miller v. Ghirardelli Chocolate Co.*, 2015 WL 758094, at *11 (N.D. Cal. Feb. 20, 2015) ("[C]onclusory and unsubstantiated objections are not sufficient to warrant a reduction in

---

[27] *See* ECF Nos. 404, 409.
[28] *See* ECF No. 402, at 5-13; ECF No. 403, Exs. 5, 6.

fees."); *Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *10 (N.D. Cal. Aug. 28, 2013) (overruling four objections to the requested attorneys' fees because the objections did not contain any reasons or substantive grounds for the objection); *O'Brien v. Brain Rsch. Labs*, *LLC*, 2012 WL 3242365, at *25 (D.N.J. Aug. 9, 2012) (rejecting objection that "embodie[d] the objector's personal views about class action litigation generally and is not addressed to the specifics of this settlement"); *cf. In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (approving 33.3% fee because it aligned with "contingency fee[s] routinely charged by class action lawyers").

Further, with respect to the objection that Class Counsel's fee should be capped at 25%, such a fee of $11,875,000 would result in a negative lodestar multiplier of 0.9 based on Class Counsel's total lodestar of $12 million which is based on over 19,100 hours of attorney and professional support staff time through the end of September 2025. ECF No. 402, at 13-14. And, this does not account for the additional 547.4 hours spent by Class Counsel on the Settlement from October 2025 through February 2026. Supp. Graden Decl., ¶ 6; *see also Hubbard v. Google LLC*, 2026 WL 92062, at *2 (N.D. Cal. Jan. 13, 2026) (noting that the lodestar multiplier will be lower once counsel's total hours by the end of the case are included). Moreover, "District Courts within this circuit . . . routinely award attorneys' fees that are one-third of the total settlement fund," and "[s]uch awards are routinely upheld by the Ninth Circuit." *Hernandez v. Dutton Ranch Corp*., 2021 WL 5053476, at *6 (N.D. Cal. Sep. 10, 2021). As such, particularly in light of Class Counsel's development of this case, vigorous litigation over the course of multiple years, and substantial benefits for the Class obtained, the 33% fee requested by Class Counsel is reasonable and appropriate and the objections should be rejected.

**5. Objections to the Proposed Service Awards Are Without Merit**

The [redacted] Objection, takes aim at the proposed $5,000 service awards for the named Plaintiffs, noting that only eight Plaintiffs are receiving service awards while there are nine Plaintiffs in the case caption. *See* ECF No. 406. However, as the Court is aware, this is due to the fact that Class Counsel have been unable to reach John Doe III despite numerous attempts by phone calls, text messages, emails, and FedEx mail. ECF No. 419. Accordingly, counsel for John Doe III has moved to withdraw him from the Action. ECF No. 346. Pursuant to the Court's March 16, 2026 Order (ECF No. 416), Class Counsel provided final notice to John Doe III on March 23, 2026. ECF No. 419.

**D. Result of Claims Process**

As set forth in the Notices, Settlement Class Members were required to submit a completed Claim Form either by mail or through the online claims portal available on the Settlement Website in order to be eligible to receive a distribution from the Settlement. *See* Supp. Mulholland Decl., Exs. A, B. As of March 26, 2026, SCS has received 753,150 timely Claim Forms (i.e., submitted before the March 12, 2026 claims deadline) and 8,388 Claim Forms submitted after the March 12, 2026 claims deadline through March 26, 2026. *See* Supp. Mulholland Decl., ¶¶ 22-23. In light of the extensive notice campaign, this claims rate of 5.7% is in line with the results of similar data privacy case settlements and within the range that SCS originally estimated. ECF No. 345-5, ¶ 23 ("[T]he claims rates for these settlements range from 1.95% to 9.17% (mid-point 5.56%) with an average claims rate of 4.63%."). Settlements with significantly lower claims rates have been approved both in this District and around the country. *See, e.g.*, *In re Apple iPhone 4 Prods. Liab. Litig*., 2012 WL 3283432, at *1-3 (N.D. Cal. Aug. 10, 2012) (approving claims rate between 0.16% and 0.28%); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214-15 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) (observing that "Courts around the country have approved settlements where the claims rate was less than one percent" and collecting cases).

**III. CONCLUSION**

For the foregoing reasons and those set forth in the Opening Papers, Plaintiffs and Class Counsel respectfully request that the Court approve the Settlement, the Plan of Allocation, and the request for attorneys' fees, litigation expenses, and service awards. Copies of (i) the Proposed Final Approval Order and Judgment and (ii) the Proposed Order Awarding Attorneys' Fees, Litigation Expenses, and Service Awards are attached hereto as **Exhibits 1 and 2** and submitted in Word format to Your Honor's email.

Dated: April 2, 2026

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Tyler S. Graden*
Joseph H. Meltzer (appearance *pro hac vice*)
jmeltzer@ktmc.com

Melissa L. Yeates (appearance *pro hac vice*)
myeates@ktmc.com
Tyler S. Graden (appearance *pro hac vice*)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

-and-

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi (appearance *pro hac vice*)
jcecchi@carellabyrne.com
Kevin G. Cooper (appearance *pro hac vice*)
kcooper@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
Zachary Jacobs (appearance *pro hac vice*)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

*Class Counsel*

**LAW OFFICES OF ROBERT MACKEY**
Robert Mackey, Cal Bar No. 125961
bobmackeyesq@aol.com
16320 Murphy Road
Sonora, CA 95370
Telephone: (412) 370-9110

-and-

**MIGLIACCIO & RATHOD LLP**
Jason S. Rathod
jrathod@classlawdc.com
412 H Street NE, no. 302
Washington, DC, 20002
Telephone: (202) 470-3520

*Additional Counsel for Plaintiff Alexis Sutter*