Mark E. Silvey (Admitted Pro Hac Vice)
msilvey@brysonpllc.com
Natalie M. Rico (Admitted Pro Hac Vice)
nrico@brysonpllc.com
**BRYSON HARRIS SUCIU & DeMAY**
201 Sevilla Avenue, Suite 200,
Coral Gables, Florida 33134
Telephone: (865) 919-8839

*Counsel for Objectors*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**San Francisco Division**

| | |
|---|---|
| JOHN DOE, JOHN DOE II, JANE DOE, JANE DOE II, JANE DOE III, JANE DOE IV, AND JANE DOE V, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>Defendant. | Case No. 3:23-cv-02865-EMC<br><br>CLASS ACTION<br><br>**BRYSON OPT OUTS' REPLY IN SUPPORT OF MOTION TO AMEND FINAL APPROVAL ORDER**<br><br>Judge: Hon. Edward M. Che |

The Bryson Opt Outs' seek only a narrow correction recognizing 1,031 additional Bryson claimants who validly opted out of the class settlement by timely submitting opt-out forms and later executing written confirmations expressly reaffirming that election. Exs. A–E, ECF Nos. 463-1 through 463-5. Neither Kaiser's Opposition nor Class Counsel's Response gives the Court a legitimate reason to deny the requested relief, particularly since Class Counsel takes no position and has no objection so long as timely payment to other class members is not disrupted. ECF No. 466 at 2, 5. For the reasons set forth below, the Court should grant Bryson Opt Outs' Motion.

**BACKGROUND**

There are two possible ways in which the Bryson Opt Outs could have appeared as dual filers. First, as was the case with the majority of the Bryson claimants, a claim form was submitted prior to execution and submission of the Court's required opt out form. In that instance, the subsequent execution of the opt out form rendered the initial claim submission a nullity. Alternatively, if a claim form was submitted after the execution and submission of the opt out form, it reflects confusion on the part of the claimant (who had already clearly indicated a desire to opt out of the class settlement by means of individually executing the opt out form). Confusion of this kind often occurs when individuals receive correspondence from multiple attorneys at once. During the notice period, some Bryson Opt Outs who had submitted opt-out forms also submitted claim forms. Class Counsel communicated an end-of-April deadline for dual filers to confirm their election. ECF No. 466, Ex. B at 2. At a hearing on May 7, 2026, the Court stated that individuals "who have not responded or decided they don't want to opt out" should "presumptively . . . be treated as if they did not opt out since they did file a claim form." Hrg. Tr. at 11:15–21, ECF No. 452. The Court then continued the fairness hearing to July 2, 2026, allowing additional time to finalize the opt-out list. *Id*. at 39:21–40:6.

Class Counsel wrote to the Bryson Opt Outs' counsel on April 20, 2026, demanding that the Opt Outs submit an additional confirmation by April 30, 2026, stating that they wished to opt out. Decl. Mark E. Silvey, Email dated April 29, 2026, **Exhibit G**. This new requirement was added a week before the scheduled final approval hearing, giving Counsel practically no time to collect the non-court ordered additional forms. Despite believing the opt out procedure as articulated by the Court had been completed for all these individuals, Bryson began gathering a "re-opt out" forms

from dual filers confirming their decision to opt out. *E.g.,* Exs. A–E, ECF Nos. 463-1 through 463-5. Each confirmation states:

> I acknowledge that I previously submitted both an opt-out form and a claim form in the Kaiser Foundation Health Plan, Inc. matter. Through this confirmation, I affirm my decision to opt out of the Doe Settlement and confirm that I do not wish to participate in the settlement.

ECF No. 463-1 at 4. This process, however, was not completed for all 1,031 Bryson dual filers though before the Settlement Administrator submitted its June 18, 2026, certification. At that time, Bryson had collected a total of 264 re-opt out forms. To eliminate all possible confusion, Bryson counsel attaches all 264 re-opt out forms it was able to collect. Decl. Mark E. Silvey, **Collective Exhibit F**. The Administrator therefore classified the 1,031 Bryson dual filers as "Invalid Exclusions" because they had a "Claim Also Filed" and omitted them from the certified opt-out count. Fifth Supp. Mulholland Decl. ¶ 6, ECF No. 449.

On July 14, 2026, the Court entered the Final Approval Order stating that "22,599 individuals" had opted out of the class. Final Approval Order at 4, ECF No. 454. The Court entered final judgment on July 22, 2026. ECF No. 459. Bryson Claimants filed the present Motion on August 10, 2026, seeking to amend the Final Approval Order to add the additional 1,031 Bryson Claimants who confirmed their election to opt out. ECF No. 463.

## <u>ARGUMENT</u>

### I. Kaiser's Opposition Does Not Defeat the Motion.

#### A. The Final Approval Order Contains a Manifest Error of Fact, Which Should Be Corrected Under Rule 59(e).

Relief under Rule 59(e) is warranted here because the Final Approval Order incorporates a verifiable factual error, not an error presenting a contested legal question. The Bryson Opt Outs' position is that once the initial opt out form required by the Court had been submitted, they had

fully complied and were opted out of the class action settlement. Any claim form submitted after that would have been a result of confusion as the Bryson Opt Outs had all individually indicated that their intent to be excluded from the settlement class in accordance with the procedure articulated by the Court. It would be unjust for the Court not to allow them to be excluded because of what amounts to a numerical error. *See Sparkman v. Comerica Bank*, No. 2:24-CV-01206-DJC-DMC, 2026 WL 76444, at *2 (E.D. Cal. Jan. 9, 2026) (amending order to correct restitution figure from $7,619,059.00 to $7,789,835.00); *Cartledge v. Am. Meter Co.*, No. CIV.A. 86-4106, 1988 WL 27007, at *2 (E.D. Pa. Mar. 21, 1988), *aff'd*, 860 F.2d 1074 (3d Cir. 1988) (amending judgment under Rule 59(e) to correct mathematical error in back-pay award).

Kaiser's attempt to distinguish *Sparkman* and *Cartledge* is unpersuasive. ECF No. 467 at 6 n.3. Kaiser points to the fact that *Sparkman* proceeded under Rule 60(a), 2026 WL 76444, at *2, and that *Cartledge* involved a jury's arithmetic calculation, 1988 WL 27007, at *2. But those procedural differences do not alter the reason why *Sparkman* and *Cartledge* are relevant. In each case, the judgment reflected a *factual* inaccuracy, and the court corrected it so that the judgment conformed to the underlying record. The same principle applies here. Whether the inaccurate figure originated with a jury's calculation or (here) with a Claims Administrator's inaccurate certification, the Court has the same interest in ensuring that its judgment accurately reflects the facts before it, as well as the Bryson Opt Outs' express wishes. A Rule 59(e) amendment is particularly appropriate where, as here, the amendment reflects the "purely clerical task of incorporating undisputed facts into the judgment." *Allstate Ins. Co.*, 634 F.3d at 1111–12. Such an amendment does not raise the concern that a party is using Rule 59(e) to "raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate*

*of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Bryson counsel had been in the process of contacting all 1,031 of their dual filers before entry of the Final Approval Order.

Kaiser and Class Counsel argue that no correction is warranted because the Court's treatment of dual filers at the May 7, 2026, hearing resolved the issue, leaving no factual inaccuracy left to correct. While the Court referenced dual filers who "decided they don't want to opt out," Hrg. Tr. at 11:15–21, ECF No. 452, there is no express indication in the record that any of the Bryson Opt Outs changed their minds. To opt out, the Court required a claimant to individually execute an form expressly opting out of the class settlement. That was done by all the Bryson Opt Outs. Now though, Kaiser and Class Counsel suggest an implied renunciation of that express act is sufficient to supersede their express statement, nullifying it.

Moreover, the Court's use of "presumptively" in its Order appears to contemplate a later determination as to whether a dual filer had, in fact, chosen to opt out. That presumption has, in fact, been rebutted. At the time the Claims Administrator submitted its report on June 18, 2026, of the 1,031 Bryson Opt Outs identified as dual filers, Bryson had been able to reach 264 of them and collect their re-opt out forms. **Collective Exhibit F**. This number translates into a positive response rate of 25.6062%—in an outreach process that was still ongoing—and exceeds the response rate for the class settlement by a factor of five.[1] An express reaffirmation of a desire to opt out by 25% of the dual filers Bryson had been able to contact in a process that had not been completed, surely calls into question any implied presumption that *all* 1,031 wished to revoke their opt out status to participate in the class settlement.

[1] "As of the March 12, 2026, claims filing deadline, the number of individuals who have submitted claims is 755,551, *see* Docket No. 436 (Mulholland Decl. ¶ 13) (adding that, after the claims filing deadline, an additional 17,932 claim forms were received) – representing a claims rate of approximately 5.7% (i.e., 755,551/13,134,307)." Final Approval Order at 4, ECF No. 454.

Kaiser's assertion that Bryson failed to explain why this issue was not raised before entry of final judgment, ECF No. 467 at 5-6, asks a legitimate question. While the collection of the initial opt out forms was labor intensive and difficult, the second round of collection proved to be unexpectedly more so. Rather than submitting re-opt out forms piecemeal as they came in a few at a time, the Bryson firm thought it to collect all the re-opt out forms into a single batch before sending them to the Settlement Administrator. That process took much more time than anticipated with the result that no additional confirmation forms were transmitted before the Settlement Administrator sent its certification. It is worth noting that at no time did the Settlement Administrator or Class Counsel advise Bryson that they would recommend that the dual filers' original opt out notices be ignored. With the benefit of hindsight, the better choice would have been to have either requested additional time from the Court to complete the process (and risk delaying final approval) or to have forwarded re-opt out forms to the Claims Administrator as they were obtained. At this juncture, the immutable fact is that at least 264 Bryson Opt Outs were reached and provided re-opt out forms.

The Final Approval Order as it stands rests on a manifest error of fact. The Court's opt-out count omitted 1,031 Bryson dual filers who properly completed the opt-out procedure articulated by the Court. Accordingly, an amendment under Rule 59(e) is warranted.

**B. Amendment is Also Necessary to Prevent Manifest Injustice.**

Kaiser also fails to rebut the manifest injustice identified in the Motion. Kaiser argues that no plain error was "direct, obvious, and observable," and faults Bryson for not resolving the dual filer issue before entry of final judgment. ECF No. 467 at 5–6. But each of the 1,031 individuals timely submitted an opt-out form in accordance with the procedure set out in the Court's Order Granting Preliminary Approval, ECF No. 393, thereby expressing an intent to be excluded from

the settlement and pursue arbitration. ECF No. 463 at 4. That written reaffirmation of this fact could not all be obtained and submitted to the Settlement Administrator before entry of the Final Approval Order does not diminish the manifest injustice which results from binding those claimants—who followed the procedure articulated by the Court—to the settlement despite their express statements to the contrary.

Nor does the Court's prior statement regarding dual filers resolve the issue presented by the Motion. The Court stated that unresolved dual filers should "presumptively" be treated as having not opted out. Hrg. Tr. at 11:15–21, ECF No. 452; Kaiser Resp., Ex. 1 at 11, ECF No. 467-2. As discussed above, the 1, 031 Bryson Opt Outs who were identified as dual filers complied with the Court's Order Granting Preliminary Approval, ECF No. 393. The fact that Bryson was able to successfully reach 264 of them and obtain re-opt out forms provides the Court with a statistically significant indication that *all* should still be considered to have opted out.

Kaiser identifies no prejudice from the requested amendment beyond having to "re-litigate the dual filer issue." ECF No. 467 at 6. But the Bryson Opt Outs' do not seek to re-litigate anything. The Court described a "presumption" that has been rebutted. All that remains is for it to correct the numerical error in the Final Approval Order and recognize the additional 1,031 individuals who elected to opt out. ECF No. 463 at 5. Denying relief would bind those individuals to a settlement they sought to avoid and foreclose the right to arbitration they sought to preserve. *Id*. at 4. Amendment is therefore warranted to prevent manifest injustice.

## II. Class Counsel's Response Does Not Warrant a Different Result.

Class Counsel's exhibits simply confirm the Bryson Opt Outs' position that they did all that the Court required to opt out of the class settlement. On April 29, 2026, Bryson Opt Outs' counsel expressly advised that "[a]ll of the names on the opt-out list we supplied to the claims administrator

pursuant to the procedure devised by the parties and approved by Judge Chen should be considered opted-out of the class regardless of whether they filed claims." Ex. B, ECF No. 466-2 at 2. Counsel further stated that "any claims that were filed may be disregarded." *Id.* Given that the Bryson Opt Outs were represented by counsel who (following the Court's directions) contacted the claimants to obtain individual opt out forms, Class Counsel's imposition of a new requirement that an additional re-opt out form (not required by the Court) be executed or else the claimant would be implied to have recanted the prior opt out notice is unfair and unjust. When Bryson agreed to try to obtain the unnecessary re-opt out forms, it expressly restated its May 4, 2026, position that "[w]hile we maintain additional notices are completely unnecessary," it would "mirror what [the other firms] have done" and communicate with its already opted-out clients. *Id.* The Bryson Opt Outs' position on the dual filer issue has been consistent. More importantly, the re-opt out forms Bryson was able to collect establish that the dual filing Bryson Opt Outs intended to remain excluded from the settlement and pursue arbitration. **Collective Exhibit F**. Bryson's unfinished collection of additional re-opt out forms does not justify binding any of the 1,031 Bryson Opt Outs to the settlement contrary to their election.

## CONCLUSION

For the foregoing reasons, the Bryson Opt Outs respectfully request that the Court grant the Motion to Amend Final Approval Order and amend the Final Approval Order to recognize the additional 1,031 individuals as valid opt-outs, bringing the total number of Bryson Opt Outs to 5,022. Alternatively, should the Court still have concerns about the Bryson Opt Outs' true intent, they ask the Court to allow them sufficient time to reinitiate collection of re-opt out forms from the remaining 767 Bryson Opt Outs and to provide those to the Court.

Dated this 31st day of August 2026.

*/s/ Mark E. Silvey* .
Mark E. Silvey (Admitted *Pro Hac Vice*)
msilvey@brysonpllc.com
Natalie M. Rico (Admitted *Pro Hac Vice*)
nrico@brysonpllc.com
**BRYSON HARRIS SUCIU & DeMAY**
201 Sevilla Avenue, Suite 200,
Coral Gables, Florida 33134
(865) 919-8839